IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRILEGIANT LOYALTY            )
 SOLUTIONS, INC.,             )
                             )
            Plaintiff,        )
                             )        Civil Action No. 04-360-JJF
     v.                       )
                             )
MARITZ INC.,                  )
                             )
            Defendant.        )

**REDACTED VERSION OF AMENDED ANSWER AND COUNTERCLAIM**

Defendant Maritz Inc. ("Maritz"), for its Amended Answer and Counterclaim, states as follows:

1.    Maritz is without information or belief as to the truth of the allegations of Paragraph 1, and therefore denies them.

2.    Maritz admits that it is a Missouri corporation with offices at 1375 North Highway Drive, Fenton, Missouri. Maritz admits that part of its business includes loyalty incentive programs, some of which have internet-related aspects. Maritz denies the remaining allegations of Paragraph 2.

3.    Maritz admits the allegations of Paragraph 3.

4.    Maritz denies the allegations of Paragraph 4.

5.    Maritz denies the allegations of Paragraph 5.

6.    Maritz admits that plaintiff has brought this action alleging infringement of United States Patent Nos. 5,774,870 ("'870 patent"), 6,009,412 ("'412 patent"), and 6,578,012 ("'012 patent") and that copies of these patents are attached to the Complaint

as Exhibits A, B, and C.  Maritz denies that it infringes the claims of any of these three patents.

7.    Maritz admits that the '870 patent is entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program" and was issued by the U.S. Patent and Trademark Office on June 30, 1998.  Maritz denies the remaining allegations of Paragraph 7.

8.    Maritz admits that the '412 patent is entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program" and was issued by the U.S. Patent and Trademark Office on December 28, 1999.  Maritz denies the remaining allegations of Paragraph 8.

9.    Maritz admits that the '012 patent is entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program" and was issued by the U.S. Patent and Trademark Office on June 10, 2003.  Maritz denies the remaining allegations of Paragraph 9.

10.    Maritz admits that it develops and operates incentive programs, some of which have internet-related aspects.  Maritz denies the remaining allegations of Paragraph 10.

11.    Maritz is without sufficient information or belief as to the truth of the allegations of Paragraph 11, and therefore denies them.

12.    Maritz admits that Exhibit D is attached to the Complaint and purports to be an assignment of Netcentives' rights in the '870 and '412 patents to Trilegiant Corporation, apparently plaintiff's parent company.  Maritz is without information or

2

belief as to the truth of the remaining allegations of Paragraph 12, and therefore denies them.

13.     Maritz is without sufficient information or belief as to the truth of the allegations of Paragraph 13, and therefore denies them.

14.     Maritz is without sufficient information or belief as to the truth of the allegations of Paragraph 14, and therefore denies them.

## CLAIM I

15.     Maritz incorporates its responses to Paragraphs 1 through 14 by reference as if fully set forth.

16.     Maritz denies the allegations of Paragraph 16.

17.     Maritz denies the allegations of Paragraph 17.

18.     Maritz denies the allegations of Paragraph 18.

## CLAIM II

19.     Maritz incorporates its responses to Paragraphs 1 through 18 by reference as if fully set forth.

20.     Maritz denies the allegations of Paragraph 20.

21.     Maritz denies the allegations of Paragraph 21.

22.     Maritz denies the allegations of Paragraph 22.

## CLAIM III

23.     Maritz incorporates its responses to Paragraphs 1 through 22 by reference as if fully set forth.

24.     Maritz denies the allegations of Paragraph 24.

25.     Maritz denies the allegations of Paragraph 25.

26.    Maritz denies the allegations of Paragraph 26.

**ADDITIONAL AND AFFIRMATIVE DEFENSES**

A.    The Complaint fails to state claims upon which relief can be granted.

B.    The claims of the '870 Patent are invalid under one or more provisions of the Patent Laws, 35 U.S.C. § 1, *et seq*., including, but not necessarily limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

C.    The claims of the '412 Patent are invalid under one or more provisions of the Patent Laws, 35 U.S.C. § 1, *et seq*., including, but not necessarily limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

D.    The claims of the '012 Patent are invalid under one or more provisions of the Patent Laws, 35 U.S.C. § 1, *et seq*., including, but not necessarily limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

E.    Maritz does not infringe any valid claim of the '870 patent.

F.    Maritz does not infringe any valid claim of the '412 patent.

G.    Maritz does not infringe any valid claim of the '012 patent.

H.    The '870 patent is unenforceable due to inequitable conduct.

I.    The '412 patent is unenforceable due to inequitable conduct.

J.    The '012 patent is unenforceable due to inequitable conduct.

K.    Trilegiant is barred by the doctrine of unclean hands from enforcing the '870, '412, and '012 patents.

L.    Trilegiant is barred from recovering damages for any activities prior to Trilegiant's filing of the present suit due to its failure to mark its products pursuant to 35 U.S.C. § 287(a).

M.     For at least some portion of the accused activities, Trilegiant is barred from enforcing the '870, '412, and '012 patents because Maritz had authority, express or implied, to conduct such activities.

N.     Maritz incorporates the allegations of its Counterclaim by reference herein as if fully set forth.

WHEREFORE, having fully answered, Maritz requests the Court to dismiss the Complaint, award Maritz its costs and attorneys' fees incurred in this case, and order such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

This Counterclaim seeks declaratory judgment in favor of counterclaim-plaintiff Maritz Inc. ("Maritz") and against counterclaim-defendant Trilegiant Loyalty Solutions, Inc. ("Trilegiant") as to U.S. Patent Nos. 5,774,870 ("the '870 patent"), 6,009,412 ("the '412 patent"), and 6,578,012 ("the '012 patent").  In support of this Counterclaim, Maritz states:

1.     Maritz is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business in Fenton, Missouri.

2.     Trilegiant has alleged that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Richmond, Virginia.

3.     Paragraphs 1 through 26 of Maritz's Amended Answer to Complaint, as well as its Additional and Affirmative Defenses, are incorporated by reference herein as if fully set forth.

5

4.      This counterclaim arises under the Federal Declaratory Judgment Act and the patent laws of the United States of America.  Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201 and Federal Rule of Civil Procedure 13.  Venue is proper under 28 U.S.C. §1391.

5.      As a result of the allegations made by Trilegiant in its Complaint and statements made previously, an actual controversy exists between Trilegiant and Maritz as to the non-infringement and/or invalidity of the '870, '412 and '012 patents.

## FIRST CLAIM

### Declaratory Relief for Noninfringement and
### Invalidity of the '870 patent

6.      Maritz incorporates by reference the allegations of Paragraphs 1 through 5 of this Counterclaim as if fully set forth.

7.      Trilegiant claims to be the assignee and owner of the '870 patent, entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program" and issued by the U.S. Patent and Trademark Office on June 30, 1998.  A copy of the '870 patent is attached to the Complaint in this case as Exhibit A.

8.      Trilegiant has charged Maritz with infringement and/or inducement of infringement of the '870 patent on account of Maritz's alleged operation of on-line incentive programs.

9.      Maritz has never infringed, directly, or indirectly, the '870 patent.

10.     Each claim of the '870 patent is invalid under the provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112, or otherwise.

6

## SECOND CLAIM

### Declaratory Relief for Noninfringement and
### Invalidity of the '412 patent

11.    Maritz incorporates by reference the allegations of Paragraphs 1 through 5 of this Counterclaim as if fully set forth.

12.    Trilegiant claims to be the assignee and owner of the '412 patent, entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program" and issued by the U.S. Patent and Trademark Office on December 28, 1999.  A copy of the '412 patent is attached to the Complaint in this case as Exhibit B.

13.    Trilegiant has charged Maritz with infringement and/or inducement of infringement of the '412 patent on account of Maritz's alleged operation of on-line incentive programs.

14.    Maritz has never infringed, directly or indirectly, the '412 patent.

15.    Each claim of the '412 patent is invalid under the provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112, or otherwise.

## THIRD CLAIM

### Declaratory Relief for Noninfringement and
### Invalidity of the '012 patent

16.    Maritz incorporates by reference the allegations of Paragraphs 1 through 5 of this Counterclaim as if fully set forth.

17.    Trilegiant claims to be the assignee and owner of the '012 patent, entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program" and issued by the U.S. Patent and Trademark Office on June 10, 2003.  A copy of the '012 patent is attached to the Complaint in this case as Exhibit C.

18.    Trilegiant has charged Maritz with infringement and/or inducement of infringement of the '012 patent on account of Maritz's alleged operation of on-line incentive programs.

19.    Maritz has never infringed, directly or indirectly, the '012 patent.

20.    Each claim of the '012 patent is invalid under the provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112, or otherwise.

## FOURTH CLAIM

### Declaratory Relief for Unenforceability
### of the '870 and '412 patents

21.    Maritz incorporates by reference the allegations of Paragraphs 1 through 5 of this Counterclaim as if fully set forth.

22.    Thomas Storey is listed as the sole inventor of the '870 and '412 patents, originally filed as Application Number 572,017 on December 14, 1995.

23.    Mr. Storey is also listed as one of five inventors on U. S. Patent No. 5,483,444, entitled SYSTEM FOR AWARDING CREDITS TO PERSONS WHO BOOK TRAVEL-RELATED RESERVATIONS ("the '444 patent"). The '444 patent issued on January 9, 1996. Upon information and belief, the five inventors listed on the '444 patent assigned it to Radisson Hotels.

24.    Mr. Storey began working for Radisson Hotels as an Executive Vice President of Sales and Marketing in approximately 1991 and left Radisson in August 1994.

25.    On information and belief, Mr. Storey's responsibilities as Executive Vice President included overseeing Radisson's incentive programs operations.

8

26.    Mr. Storey, at most, was one of numerous Radisson employees who conceived of and developed an incentive program for travel agents called "Look to Book." Mr. Storey has previously testified that "Look to Book" used a computer to book travel related reservations. According to Mr. Storey, he had never worked with an incentive program that required participants to use computers prior to his employment with Radisson.

27.    Mr. Storey testified in a previous deposition that "[t]he Look to Book program was the commercial embodiment of the '444 patent."

28.    The "Look to Book" program was described by Mr. Storey in ███████

████████████████████████████████████████████████████

██████

29.    Mr. Storey has previously testified that he publicly disclosed the "Look to Book" program at an American Society of Travel Agents conference in 1992.

30.    The "Look to Book" program was publicized by Radisson in press releases and advertising materials ("the 'Look to Book' publications") at least as early as November 1992. Among the "Look to Book" publications was a brochure and ██████

████████████████████████████████████████████████████

█████████. ███████████████████████████████████████

████████████████████████████████████.

31.    Mr. Storey's heavy involvement in the development, operation, disclosure, and sale of the "Look to Book" program provided him with thorough knowledge of the existence and content of the "Look to Book" publications.

32.    Claiming priority to an application filed on or about October 26, 1993, Radisson filed a patent application on February 7, 1995, in the United States Patent Office that later issued as the '444 patent.

33.    On or about May 26, 1994, Radisson filed Patent Cooperation Treaty Application No. WO 95/12175 ("the PCT Application"). The PCT Application has the same specification as the '444 patent. The PCT Application was published on May 4, 1995, over seven months before Mr. Storey filed the application that eventually issued as the '870 patent and which was used to claim priority for the '412 and '012 patents ("the Storey application").

34.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

35.    On information and belief, Radisson employees besides Mr. Storey contributed to the conception of any invention(s) claimed in the '870, '412, and '012 patents.

36.    Mr. Storey's employment with Radisson ended in August 1994.

37.    Mr. Storey took a position with Doubletree Hotels after his employment with Radisson, working for Doubletree Hotels for approximately five and one half years.

38.    In 1995, while employed by Doubletree Hotels, Mr. Storey established and was co-owner of Interactive Promotions Online, Inc. ("IPO").

39.    Mr. Storey established IPO to market an on-line incentive program he named "ADDemup." Mr. Storey has testified that although he had not reduced the

"ADDemup" program to practice, the "ADDemup" program was intended to be a commercial embodiment of the '870 patent.

40.    Mr. Storey retained Joseph Bach as patent counsel to assist in preparing and filing the Storey Application.

41.    Prior to the drafting of the Storey Application, Mr. Storey conducted a prior art search. Among the prior art reviewed by Mr. Storey was United States Patent No. 4,750,119 ("the Cohen patent"), entitled PURCHASING SYSTEM WITH REBATE FEATURE. The Cohen patent was filed on October 19, 1986 and issued on June 7, 1988.

42.    The Cohen patent discloses, *inter alia*, "a computer program, utilized in combination with a purchasing or transactional system, which allows subscriber-purchasers to buy goods and services and obtain future guaranteed rebates based upon the cost of that purchase."

43.    The Storey Application was filed on December 14, 1995.

44.    Pursuant to 35 U.S.C. § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability."

45.    Neither Mr. Storey nor Mr. Bach disclosed the Cohen patent to the PTO at any time during the prosecution of the '870 patent. Despite knowledge of the Cohen patent at the time of filing the original application, the Cohen patent was first disclosed during the prosecution of the '012 patent.

46.    As to the '444 patent, Mr. Storey testified that he informed Mr. Bach that he was listed as an inventor on the '444 patent and that he had a confidentiality

11

agreement with Radisson.  Mr. Storey further testified that Mr. Bach informed him that, due to Mr. Storey's confidentiality agreement, the "Look to Book" program could not be disclosed to the PTO if it was not in the public domain.

47.     However, according to Mr. Storey, he did not inform Mr. Bach that the "Look to Book" program had been in the public domain since at least 1992 through a variety of media.

48.     On or about December 14, 1995, Mr. Storey, through his patent attorney, filed an Information Disclosure Statement ("IDS") with the Patent and Trademark Office ("PTO") in relation to the prosecution of the Storey Application.

49.     Mr. Storey did not disclose the Radisson "Look to Book" publications, the '444 patent, the published PCT Application, or the Cohen patent in this IDS or any other filing with the PTO during the prosecution of the Storey Application that issued as the '870 patent.

50.     On or about July 21, 1997, Mr. Storey assigned the Storey Application to Netcentives.

51.     The Storey Application first issued as the '870 patent on June 30, 1998.

52.     On or about June 25, 1998, Netcentives filed a continuation application, which later issued as the '412 patent, claiming priority to the original Storey Application.

53.     Netcentives did not disclose the Cohen patent to the PTO at any time during the prosecution of the '412 patent.  Despite knowledge of the Cohen patent at the time of filing the original application, the Cohen patent was first disclosed during the prosecution of the '012 patent.

12

54.     On or about October 26, 1998, Netcentives, through its patent attorneys, filed a Petition to Make Special the continuation application citing, *inter alia*, the '444 patent.

55.     In its Petition to Make Special, Netcentives and its attorneys failed to disclose that Mr. Storey was a named inventor of the '444 Patent.  Further, Netcentives characterized the '444 Patent as "not disclos[ing] or suggest[ing] an on-line incentive system that offers products for sale on an Internet web page."

56.     The '412 patent issued on December 21, 1999.

57.     On June 21, 2000, Radisson filed United States Application No. 09/598,586 ("the '586 application").  The '586 application is a continuation of the '444 patent and Mr. Storey is listed as a co-inventor.  The '586 application claims priority to the specification of the '444 patent.

58.     Contrary to Netcentives' characterization of the '444 patent in its Petition to Make Special, the '586 application claims a "computerized on-line incentive system for awarding points to a user conducting an on-line purchase."

59.     The '444 patent, the published 95/12175 PCT application, the Radisson "Look to Book" publications, and the Cohen patent were material to the patentability of the '870 patent.

60.     On information and belief, Mr. Storey's, Netcentives', and/or their patent attorneys' failure to disclose the '444 patent, the published 95/12175 PCT application, the Radisson "Look to Book" publications, and the Cohen patent during the prosecution of the '870 patent was the result of an intent to deceive the PTO.

13

61.    The published 95/12175 PCT application, Radisson's "Look to Book" publications, and the Cohen patent were material to the patentability of the '412 patent.

62.    On information and belief, Mr. Storey's, Netcentives', and/or their patent attorneys' failure to disclose the published 95/12175 PCT application, the Radisson "Look to Book" publications, and the Cohen patent during the prosecution of the '412 patent was the result of an intent to deceive the PTO.

63.    On information and belief, Mr. Storey, Netcentives, and/or their patent attorneys intentionally failed to name and disclose other Radisson employees as inventors on the '870 and '412 patents.

64.    On information and belief, Mr. Storey's, Netcentives', and/or their patent attorneys' failure to name and disclose all of the inventors of the '870 and '412 patents was the result of an intent to deceive the PTO.

65.    The '870 and '412 patents are unenforceable as a result of the inequitable conduct committed by Mr. Storey, Netcentives, and/or their patent attorneys.

## FIFTH CLAIM

### Declaratory Relief for Unenforceability
### of the '012 patent

66.    Maritz incorporates Paragraphs 1 though 5 and 21 through 65 of this Counterclaim as if fully set forth.

67.    On or about November 11, 1999, Netcentives filed the application which later issued as the '012 patent.  The '012 patent is a continuation of the '870 and '412 patents and claims priority to the Storey Application.

68.    Pursuant to 35 U.S.C. § 1.56, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability."

69.    Netcentives did not disclose the published 95/12175 PCT application or Radisson's "Look to Book" publications to the PTO during the prosecution of the application that issued as the '012 patent.

70.    The published 95/12175 PCT application and Radisson's "Look to Book" publications were material to the patentability of the '012 patent.

71.    On information and belief, Netcentives', Storey's, and/or their patent attorneys' failure to disclose the published 95/12175 PCT application and the Radisson "Look to Book" publications during the prosecution of the '012 patent was the result of an intent to deceive the PTO.

72.    During the prosecution of the '012 patent, Netcentives, Storey, and their patent attorneys had an affirmative duty to disclose to the PTO any litigation activities, including questions of inventorship, prior art, allegations of inequitable conduct, and allegations of invalidity, that involved the subject matter of the then pending application. Section 2001.06(c) of the Manual of Patent Examining Procedure.

73.    Litigation based on the '870 and '412 patents, which have the same specification as the '012 patent, involved the subject matter of the application that issued as the '012 patent.

74.     On or about March 19, 1999, Mypoints.com, Inc. ("Mypoints") filed a Complaint For Declaratory and Injunctive Relief in the United States District Court for the Northern District of California alleging that the '870 patent was invalid.

75.     On or about December 2, 1999, Netcentives filed an Information Disclosure Statement with the PTO regarding the patent application that later issued as the '012 patent.  This IDS did not contain reference to any of the then-pending litigation or any of the allegations that the '870 patent was invalid.

76.     On or about February 17, 2000, The Sperry and Hutchinson Company, Inc. ("S&H") filed a Complaint for Declaratory Judgment in the United States District Court for the District of Massachusetts against Netcentives seeking a declaration that the '870 and '412 patents were invalid.

77.     On or about February 28, 2000, Netcentives filed suit against S&H and Webmiles.com Corp. ("Webmiles") alleging infringement of the '870 and '412 patents in the United States District Court for the Northern District of California.

78.     On or about March 21, 2000, Netcentives filed suit against Massmedium.com, Inc. ("Massmedium"), TelAmerica Media Inc. ("TelAmerica"), Smart Net Corp. ("Smart Net"), and Pointsurf.com, Inc. ("Pointsurf") in the United States District Court for the Northern District of California.

79.     On or about May 24, 2000, Webmiles, Smartnet, and Massmedium filed their Answers to Netcentives' Complaint, each alleging that the '870 and '412 patents were invalid.

80.     On or about June 28, 2000, Webmiles filed its Initial Prior Art Disclosure in the lawsuit against Netcentives.  This Disclosure contained, *inter alia*, references not

cited during prosecution of the '870, '412, or '012 patents, including U.S. Patent Nos. 5,710,887 ("the Chelliah patent"), 5,638,457, 5,592,560, 5,991,736, 5,937,391, 5,915,244, 5,999,914 and 5,448,471.

81.     The Chelliah patent, entitled COMPUTER SYSTEM AND METHOD FOR ELECTRONIC COMMERCE, was filed on August 8, 1995, and issued on January 20, 1998.

82.     The Chelliah patent discloses an electronic commerce system that, among other things, allows a retailer to offer frequent buyer points to customers who purchase products online.

83.     Despite being put on notice of this reference by Webmiles, neither Netcentives nor Storey disclosed the Chelliah patent to the PTO during the prosecution of the '012 patent.

84.     On or about June 29, 2000, MassMedium and TelAmerica each filed an Initial Prior Art Disclosure in the lawsuit against Netcentives.  These disclosures contained, *inter alia*, references not cited during prosecution of the '870, '412, or '012 patents, including U.S. Patent Nos. 5,448,471, 5,592,560, 5,638,457, the Chelliah patent, 5,915,244 and 5,956,695 and PCT Patent Application Nos. 93/12489 and 95/12175.

85.     On or about July 21, 2000, Netcentives filed a Complaint in the United States District Court for the Northern District of California against Beenz.com, Inc. ("Beenz"), Carlson Companies Inc. ("Carlson"), Passpoints, Inc. ("Passpoints"), Freeride.com, LLC ("Freeride"), and Stario, Inc. ("Stario"), alleging infringement of the '870 and '412 patents.

17

86.     On or about July 24, 2000, Smartnet filed its Initial Prior Art Disclosure in the lawsuit against Netcentives. This disclosure contained, *inter alia*, references not cited during prosecution of the '870, '412, or '012 patents, including U.S. Patent Nos. 5,448,471, 5,592,560, 5,638,457, and the Chelliah patent.

87.     On or about July 28, 2000, Radisson Hotels International, Inc., *et al.* filed a Complaint against Netcentives alleging invalidity, unenforceability, and incorrect inventorship of the '870 and '412 patents in the United States District Court for the District of Minnesota.

88.     On or about August 11, 2000, Passpoint filed its Answer to Netcentives' Complaint, alleging the '870 and '412 patents were invalid and unenforceable.

89.     On or about August 24, 2000, Stario filed its Answer to Netcentives' Complaint, alleging the '870 and '412 patents were invalid and unenforceable.

90.     On or about September 5, 2000, Beenz filed its Answer to Netcentives' Complaint, alleging the '870 and '412 patents were invalid and unenforceable.

91.     On information and belief, Netcentives amended its Complaint against Beenz, Carlson, Passpoints, Freeride, and Stario sometime after September 5, 2000.

92.     On or about October 10, 2000, Radisson, *et al.* again filed pleadings alleging the '870 and '412 patents were invalid and/or unenforceable.

93.     In their respective Answers to Netcentives' Amended Complaint, Beenz, Freeride, Stario, and Carlson renewed their allegations of invalidity and unenforceability regarding the '870 and '412 patents.

94.     On or about February 15, 2001, Beenz filed its Initial Prior Art Disclosure in the litigation against Netcentives. This disclosure contained, *inter alia*, references not

18

cited during prosecution of the '870, '412, or '012 patents, including U.S. Patent Nos. 5,592,560, 5,638,457, the Chelliah patent, 5,915,244, 5,956,695, 5,991,736, 5,983,196, 5,970,469, 5,937,391, and 5,999,914 and PCT Patent Application Nos. 93/12489 and 95/12175.

95.    On or about February 15, 2001, Carlson filed its Initial Prior Art Disclosure in the litigation against Netcentives.  This disclosure contained, *inter alia*, references not cited during prosecution of the '870, '412, or '012 patents, including U.S. Patent Nos. 5,448,471, 5,592,560, 5,638,457, the Chelliah patent, 5,915,244, and 5,956,695 and PCT Patent Application Nos. 93/12489 and 95/12175.

96.    On or about February 23, 2001, S&H filed a Complaint for Declaratory Judgment in the United States District Court for the Northern District of California alleging the '870 patent was invalid and unenforceable based upon Netcentive's and Mr. Storey's failure to disclose the '444 patent and/or its commercial embodiments to the PTO during the prosecution of the '870 patent.

97.    On or about April 23, 2001, Netcentives filed and served its Proposed Claim Construction regarding the '870 and '412 patents in the S&H and Massmedium, *et al.* suits.

98.    On or about July 16, 2001, Carlson filed its Response to Netcentives' Proposed Claim Construction as well as its Responsive Claim Charts and Submissions ("Carlson's Claim Charts").

99.    Carlson's Claim Charts provide an element by element anticipation and obviousness analysis of the '870 patent and '412 patents in light of the "Look to Book"

19

program, as well claim charts identifying which elements of the '870 and '412 patents are disclosed in numerous other pieces of prior art.

100.    On or about July 25, 2001, S&H filed its Response to Netcentives' Proposed Claim Construction and Preliminary Invalidity Contentions ("Invalidity Contentions") regarding the '870 and '412 patents.

101.    S&H's Invalidity Contentions contains an element by element anticipation and obviousness analysis of the '870 and '412 patents in light of numerous prior art references, including, *inter alia*, the '444 patent.

102.    On or about July 25, 2001, S&H also disclosed to Netcentives two pieces of prior art, U.S. Patent Nos. 5,809,144 and 5,878,141, which Netcentives had not disclosed to the PTO during the prosecution of the '870, '412, or '012 patent applications.

103.    On or about December 7, 2001, Trilegiant claims to have acquired the rights to the '870, '412, and '012 patents through assignment by Netcentives.

104.    During the prosecution of the '012 patent, Trilegiant, Storey, and their patent attorneys had an affirmative duty to disclose to the PTO any litigation activities, including questions of inventorship, prior art, allegations of inequitable conduct, and allegations of invalidity, that involved the subject matter of the then pending application. Section 2001.06(c) of the Manual of Patent Examining Procedure.

105.    On or about April 4, 2002, Trilegiant, through its patent attorneys, filed an IDS relating to the application that issued as the '012 patent. This IDS contained none of the allegations of incorrect inventorship, prior art, allegations of unenforceability,

20

allegations of invalidity, or other litigation activities identified in Paragraphs 74 through 102 of this Counterclaim.

106. The prior art, the allegations of incorrect inventorship, the allegations of unenforceability, the allegations of invalidity, and the other litigation activities identified in Paragraphs 74 through 102 of this Counterclaim were material to the patentability of the '012 patent.

107. On information and belief, Trilegiant's failure to disclose the litigation activities, prior art references, and allegations of incorrect inventorship, unenforceability, and invalidity identified in Paragraphs 74 through 102 of this Counterclaim, was the result of an intent to deceive the PTO.

108. On information and belief, Netcentives' failure to disclose the litigation activities, prior art references, and allegations of incorrect inventorship, unenforceability, and invalidity identified in Paragraphs 74 through 102 of this Counterclaim, was the result of an intent to deceive the PTO.

109. On information and belief, Storey's failure to disclose the litigation activities, prior art references, and allegations of incorrect inventorship, unenforceability, and invalidity identified in Paragraphs 74 through 102 of this Counterclaim, was the result of an intent to deceive the PTO.

110. Trilegiant and Storey also failed to disclose U.S. Patent Nos. 5,448,471, 5,638,457, 5,710,887 (the Chelliah patent), 5,592,560, 5991,736, 5,956,695, 5,937,391, 5,915,244, 5,999,914, 5,970,469, 5,983,196, 5,809, 144, or 5,878,141 or PCT Patent Application Nos. 93/12489 or 95/12175 in its April 4, 2002 IDS, despite each being

21

disclosed to Netcentives and/or Trilegiant at least once during the litigation activities involving the '870 and '412 patents.

111.    U.S. Patent Nos. 5,448,471, 5,638,457, 5,710,887 (the Chelliah patent), 5,592,560, 5,991,736, 5,956,695, 5,937,391, 5,915,244, 5,999,914, 5,970,469, 5,983,196, 5,809,144, and 5,878,141 and PCT Patent Application Nos. 93/12489 and 95/12175 were material to the patentability of the '012 patent.

112.    On information and belief, Trilegiant's failure to disclose U.S. Patent Nos. 5,448,471, 5,638,457, 5,592,560, 5,710,887, 5,991,736, 5,956,695, 5,937,391, 5,915,244, 5,999,914, 5,970,469, 5,983,196, 5,809,144, or 5,878,141 or PCT Patent Application Nos. 93/12489 or 95/12175 during the prosecution of the '012 patent was the result of an intent to deceive the PTO.

113.    On information and belief, Netcentives' failure to disclose U.S. Patent Nos. 5,448,471, 5,638,457, 5,592,560, 5,710,887, 5,991,736, 5,956,695, 5,937,391, 5,915,244, 5,999,914, 5,970,469, 5,983,196, 5,809,144, or 5,878,141 or PCT Patent Nos. 93/12489 and 95/12175 during the prosecution of the '012 patent was the result of an intent to deceive the PTO.

114.    On information and belief, Storey's failure to disclose U.S. Patent Nos. 5,448,471, 5,638,457, 5,592,560, 5,710,887, 5,991,736, 5,956,695, 5,937,391, 5,915,244, 5,999,914, 5,970,469, 5,983,196, 5,809,144, or 5,878,141 or PCT Patent Nos. 93/12489 and 95/12175 during the prosecution of the '012 patent was the result of an intent to deceive the PTO.

115.    On information and belief, Netcentives, Trilegiant, Storey and/or their patent attorneys intentionally failed to name other Radisson employees as inventors on the '012 patents.

116.    On information and belief, Netcentives', Trilegiant's, Storey's and/or their patent attorneys' failure to disclose all of the inventors of the '012 patent was the result of an intent to deceive the PTO.

117.    The '012 patent is unenforceable as a result of the inequitable conduct committed by Netcentives, Trilegiant, Storey, and/or their patent attorneys.

## SIXTH CLAIM

### Declaration of Patent Misuse

118.    Maritz incorporates Paragraphs 1 though 5 and 21 through 117 of this Counterclaim as if fully set forth.

119.    On information and belief, Trilegiant knew the '870, '412, and '012 patents were unenforceable due to Mr. Storey's, Netcentives', Trilegiant's and/or their patent attorneys' inequitable conduct when it filed the present suit.

120.    On information and belief, Trilegiant knew the '870, '412, and '012 patents were invalid when it filed the present suit.

121.    Trilegiant's attempt to enforce the '870, '412, and '012 patents with knowledge of their unenforceability and/or invalidity constitutes patent misuse.

122.    The '870, '412, and '012 patents are unenforceable due to Trilegiant's misuse.

WHEREFORE, Maritz respectfully requests that judgment be entered in its favor and against Trilegiant providing that:

23

A.    Maritz has not infringed, directly or indirectly, any claim of the '870,

'412, or '012 patents;

B.    The '870, '412 and '012 patents and each of their claims are invalid;

C.    The '870, '412, and '012 patents are unenforceable;

D.    The case be declared exceptional pursuant to 35 U.S.C. § 285; and

E.    Maritz be rewarded its costs of suit, attorneys' fees, and such other relief

as the Court deems just.

Dated: September 27, 2005                Respectfully submitted,

                                         CONNOLLY BOVE LODGE & HUTZ LLP

                                         By: _____

                                         Rudolf E. Hutz (#484)
                                         Patricia Smink Rogowski (#2632)
                                         The Nemours Building
                                         1007 Orange Street
                                         P.O. Box 2207
                                         Wilmington, DE 19899
                                         (302) 658-9141

                                         J. Bennett Clark
                                         Jennifer E. Hoekel
                                         Marc W. Vander Tuig
                                         SENNIGER POWERS
                                         One Metropolitan Square, 16th Floor
                                         St. Louis, MO 63102
                                         (314) 231-5400

                                         Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, Paul E. Crawford, hereby certify that on August 30, 2005, I electronically filed the **AMENDED ANSWER AND COUNTERCLAIM** with the Court Clerk using CM/ECF which will send notification of such filing(s) to Jack B. Blumenfeld.  I hereby further certify that on August 30, 2005, I have also served this document on the attorneys of record at the following addresses as indicated:

**Via Hand Delivery**
Jack B. Blumenfeld
Maryellen Norieka
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-11347

**Via Facsimile**
Steven Lieberman
Sharon L. Davis
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

**Redacted Version Filed on September 27, 2005**     _/s/ Paul E. Crawford_
                                                      Paul E. Crawford (#493)