# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TRILEGIANT LOYALTY SOLUTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>MARITZ, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-360-JJF<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF TRILEGIANT LOYALTY SOLUTIONS, INC.'S
FIRST REQUEST FOR DOCUMENTS AND TANGIBLE THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") hereby requests that defendant Maritz, Inc. ("Maritz") produce each of the documents and tangible things specified in the "Documents and Tangible Things Requested" identified below for inspection and copying at the offices of Rothwell, Figg, Ernst & Manbeck, P.C., 1425 K Street, N.W., Washington, D.C. 20005, within thirty (30) days, or such other time and place as counsel for the parties agree.

### INSTRUCTIONS

1. You are requested to produce for inspection and/or photocopying all documents specified in the "Documents and Tangible Things Requested" below, in your possession or custody or subject to your control or otherwise known or available to you, or by your agents, employees, representatives or investigators, or by your attorneys or their agents, employees, representatives or investigators at the time and place indicated.

2. The requests are of continuing effect, and to the extent that at any time after the production of documents called for by this request you become aware of or acquire additional documents responsive to this request, such documents shall be produced promptly.

3. References to natural persons shall be deemed to include, in addition to the person named, his or her agents, representatives, and attorneys, members of his or her immediate family, any partnership of which such person is a member or general partner, and any other business entity in which such person has a controlling direct or indirect interest.

4. References to entities other than natural persons, including Maritz, shall be deemed to include, in addition to the entity named, its predecessors, officers, directors, employees, agents, representatives, accountants, and attorneys.

5. In the event that any document or tangible thing called for herein has been discarded or destroyed, other than in the ordinary course of business, you shall identify such document tangible thing and, in addition, specify (i) the date of its destruction; (ii) the reason for its destruction; (iii) the person authorizing its destruction; and (iv) the custodian of the document immediately preceding its destruction.

6. Each request for documents seeks production of all documents described, along with any attachments, drafts and non-identical copies as the documents are found or located in either your business or personal files together with a copy of the descriptive file folder or database category in its entirety, without abbreviation, redaction or expurgation.

7.  Each request for a document calls for and requires production of the document in its entirety, without abbreviation, redaction or expurgation.

8.  The request for a specific document or a communication with a specific person shall not be read to narrow the scope of any other document request.

9.  If any document request cannot be complied with in full, it shall be complied with to the extent possible, with an explanation as to why full compliance is not possible.

10. In the event that any document responsive to this request is not produced for any reason, including any claim of privilege (including work product), you shall furnish a list identifying each such document by:

    (a) identifying the person who prepared or authored the document and, if applicable, the persons to whom the document was sent and the date on which the document was prepared or transmitted;

    (b) describing the nature of the document (e.g., letter, inter-office memorandum, telegram, notes, etc.) and, to the extent possible, the subject matter thereof; and

    (c) stating briefly the nature of the privilege asserted.

## DEFINITIONS

1.  The term "Maritz" means defendant Maritz Inc. and any of its divisions, departments, subsidiaries, affiliates or predecessors, including but not limited to Maritz Incentives, Maritz Interactions, Maritz Learning, Maritz Loyalty, Maritz Research, Maritz Rewards, Maritz Travel, Maritz Marketing Research, Maritz Ltd., Maritz Canada, Maritz de Mexico, Maritz Espana, Maritz Europa, Maritz

GMBH, and any present or former officer, director, employee, consultant, expert or agent thereof, and all other persons acting or purporting to act on behalf of Maritz Inc., its divisions, departments, subsidiaries, affiliates, or predecessors.

2. The term "Trilegiant" means plaintiff Trilegiant Loyalty Solutions, Inc., Trilegiant Corporation, Cendant Corporation, and any subsidiaries, affiliates, divisions, or corporate predecessors.

3. The term "VAULT" means the technology program/application also referred to as "Value-Added Loyalty Technology" and "E-VAULT."

4. The term "WARP" means the technology program/application also referred to as "Web Award Redemption Program."

5. For purposes of these requests, the term "on-line incentive program" encompasses any program by which a person who transacts business with a company receives credits, rewards, points, awards, or benefits for doing so, and may access any information about that program through a networked computer or the internet, including VAULT and WARP.

6. The term "'870 patent" means U.S. Patent No. 5,774,870.

7. The term "'412 patent" means U.S. Patent No. 6,009,412.

8. The term "'012 patent" means U.S. Patent No. 6,578,012.

9. The term "document" as used herein has the broadest meaning permissible under the Federal Rules and the Local Rules of the District of Delaware, and includes the original and every non-identical copy or reproduction in the possession, custody or control of Maritz.

## DOCUMENTS AND TANGIBLE THINGS REQUESTED

1. All documents that describe, reflect, or relate to the design, development, implementation, operation, or features of any on-line incentive program designed, developed, implemented, or operated by Maritz, including but not limited to VAULT and WARP.

2. All documents that mention, describe or relate to the '870 patent, the '412 patent and/or the '012 patent.

3. All documents that mention, describe or relate to Trilegiant or Thomas W. Storey.

4. All documents reflecting, describing or concerning any revenues, profits, or costs associated with VAULT, WARP, or any other on-line incentive program designed, developed, implemented, or operated by Maritz.

5. All documents relating to any communications between Maritz and Trilegiant.

6. All documents relating to any communications between Maritz and Thomas W. Storey or Netcentives, Inc.

7. All documents identifying past or present clients or customers or potential future clients or customers for VAULT, WARP, or any other on-line incentive program designed, developed, implemented, or operated by Maritz.

8. All documents relating to communications between Maritz and any company (including but not limited to anyone acting on behalf of or representing a company), including but not limited to Advanta, AMD, American Express, Army Air Force Exchange Services, AT&T, Bank of America, Bank One, CitiBank, Discover Financial Services, ExxonMobil, Fisher-Price, FleetBoston Financial, HSBC, IBM, JP Morgan Chase, Kimberly Clark, Motorola, Nestle Purina

PetCare, NetScreen, Nissan, Smith Barney, Sprint, Toyota, UBS, PaineWebber, Wells Fargo, concerning design, development, implementation, or operation of VAULT, WARP, or any other on-line incentive program, the '870 patent, the '412 patent, the '012 patent, and/or Trilegiant.

9. All documents discussing, disclosing, referring to, or relating to any of Maritz's on-line incentive programs, including but not limited to VAULT and WARP.

10. All documents and tangible things, including but not limited to electronic records, website materials, drawings, sketches, photographs or video recordings, constituting, discussing, disclosing, referring to, or relating to prior art to the '870 patent, '412 patent, and/or '012 patent.

11. All opinions, studies, analyses, reports, or other examinations of the '870 patent, '412 patent, and/or '012 patent, including any opinions of counsel, whether formal or informal.

12. All marketing plans or studies relating to Maritz's design, development, implementation or operation of VAULT, WARP, or any other on-line incentive programs, including all draft plans, all supporting documents for such plans or studies, all documents concerning marketing practices and implementation of such plans, studies, reports or other documents concerning the actual or potential existence or size of the market for design, development, implementation, or operation of VAULT, WARP, or any other on-line incentive programs, all studies, reports, or other documents concerning the market share planned or anticipated by Maritz for the design, development, implementation, or operation of VAULT, WARP, or any other on-line incentive programs, and all documents

discussing, disclosing, referring to, or relating to the actual or proposed development or implementation of such marketing plans or studies by Maritz.

13. All bids, proposals, responses to requests for proposals or requests for quotations, studies, or sales presentations made to or for past or present clients or customers, or potential future clients or customers, concerning the design, development, implementation or operation of VAULT, WARP, or any other on-line incentive program.

14. All documents constituting, disclosing, referring to, or relating to the promotion or advertising of VAULT, WARP, or any other on-line incentive program designed, developed, implemented, or operated by Maritz.

15. All documents constituting, disclosing, referring to, or relating to any communications with actual or potential investors in Maritz regarding the '870 patent, '412 patent, and/or '012 patent.

16. All documents constituting, disclosing, referring to, or relating to any communications or meetings with investment advisors, brokerage firms, or stock analysts regarding the '870 patent, '412 patent, '012 patent, and/or Trilegiant.

17. All documents that refer to, relate to, or support Maritz's contention that the '870 patent, '412 patent, and/or '012 patent is invalid for any reason.

18. All documents that refer to, relate to, or support Maritz's contention that it does not infringe the '412 patent, '870 patent, and/or '012 patent.

19. Reports of all searches for prior art to the '870 patent, '412 patent, and/or '012 patent conducted by or on behalf of Maritz, its attorneys, or representatives, or any third party.

20. The most current organizational chart for Maritz.

21. All documents comprising, relating to and/or referring to strategic planning reports related to VAULT, WARP, or any other on-line incentive program designed, developed, implemented, or operated by Maritz.

22. All documents describing the contents, design, development, implementation, or operation of any Maritz, client, or customer website that uses VAULT, WARP, or any other on-line incentive program designed, developed, implemented, or operated by Maritz.

23. All documents relating to the work done by Maritz reflected in the "Case Histories" referred to at http://www.maritzloyalty.com/loyalty-case-histories.html, or referred to on p. 11 of the Maritz "Loyalty Marketing Brochure" found at http://www.maritzloyalty.com/loyalty-brochure.html, for "Major National Packaged Goods Provider," "Nationwide Telecom Provider," "Major debit card provider."

24. Copies of all marketing materials for Maritz's VAULT, WARP or any other on-line incentive program designed, developed, implemented or operated by Maritz, including materials used for presentations to potential clients or customers.

25. Screen shots for any websites, reflecting or incorporating Maritz's VAULT, WARP or any other on-line inventive program designed, developed, implemented or operated by Maritz.

26. An electronic or computer readable copy of any on-line incentive program designed, developed, implemented or operated by Maritz.

27. All documents relating to any consideration by Maritz of placing a bid for, purchasing or licensing the '870 patent, '412 patent and/or '012 patent from Thomas Storey, Netcentives, Inc. or any other individual or entity.

28. All documents relating to the features of on-line incentive systems developed by Maritz's competitors, including any comparisons of the features of Maritz systems to others.

29. All documents relating to or describing customer interest in features of on-line incentive programs, including interest in on-line product catalogs, on-line awards catalogs, and on-line account information.

30. All documents relating to any patent application by Maritz concerning on-line incentive systems, including but not limited to VAULT and WARP.

31. All documents provided to or received by any expert retained by Maritz in this action.

32. All documents relating to the Your Rewards Online catalog from Maritz Rewards.

33. All documents relating to any on-line catalog for awards designed, developed, implemented or operated by Maritz.

34. All contracts relating to Maritz's provision of services relating to on-line incentive programs.

35. All documents relating to any programs designed, developed, implemented or operated by Maritz containing a product catalog or providing any mechanism for the purchase of any good or service on-line.

36. All documents relating to the display, storage and/or retrieval of account information for users in any on-line incentive programs designed, developed,

implemented or operated by Maritz.

37. Documents sufficient to show revenues and profits earned by Maritz since June 1998 and documents showing which divisions or subsidiaries are responsible for such revenues and profits.

38. Copies of all Maritz document retention policies or procedures from 1998 to the present.

Date: March 9, 2005

*signature: Sharon L. Davis*

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, NW
Washington, DC 20005
(202) 783-6040

Jack B. Blumenfeld (Del. Bar # 1014)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street, P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiff*
*Trilegiant Loyalty Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF TRILEGIANT LOYALTY SOLUTIONS, INC.'S FIRST REQUEST FOR DOCUMENTS AND TANGIBLE THINGS**, was served on this 9th day of March, 2005, in the manner indicated, upon the following counsel of record:

**Via Federal Express Overnight Courier:**

J. Bennett Clark, Esq.
Senniger, Powers, Leavitt & Roedel
One Metropolitan Square; 16th Floor
St. Louis, MO 63102

**Via Hand Delivery:**

Patricia Smink Rogowski, Esq.
Connolly Bove Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

*Counsel for Defendant Maritz Inc.*

_____
Matthew T. Felten

# EXHIBIT 2

**SENNIGER**
**POWERS**

| ATTORNEYS | PATENTS | LITIGATION | TECHNOLOGY | ONE METROPOLITAN SQUARE |
| AT LAW | TRADEMARKS | COPYRIGHTS | ANTITRUST | 16TH FLOOR |
| | | | | SAINT LOUIS, MISSOURI 63102 |

314-231-5400 v
314-231-4342 f

J. BENNETT CLARK
BCLARK@SENNIGER.COM

SENNIGER.COM

December 27, 2005

*Via E-Mail and U.S. Mail*
Steven Lieberman, Esq.
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W., Suite 800
Washington, D.C. 20005
slieberman@rothwellfigg.com

Re:   *Trilegiant v. Maritz*:  **Inadvertent Disclosure of Work Product Material**

Dear Steve:

During the recent deposition of Ms. Beller, as an individual and Rule 30(b)(6) designee, charts prepared by our firm analyzing how the Chelliah '887 patent invalidates the independent claim elements of the patents-in-suit were inadvertently marked as Exhibits 76 and 77.

Under paragraph 20 of the Protective Order, upon identification of inadvertently produced materials, such materials are to be returned within three days, and no waiver is deemed to have occurred. Consistent with that provision, please return all copies of those exhibits to me. We also withdraw the exhibits from the record of the case, and assuming you agree (please confirm) will (a) secure return of the originals from the court reporter and (b) request that portions of the deposition in which these documents were referenced be stricken.

I apologize for any inconvenience that may be caused by this.

Very truly yours,

J. Bennett Clark

JBC/mjm
cc:   Sharon Davis, Esq. (via e-mail)

# EXHIBIT 3



**ROTHWELL, FIGG, ERNST & MANBECK, P.C.**

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone 202-783-6040
Facsimile 202-783-6031
www.rfem.com

G. Franklin Rothwell
E. Anthony Figg
Barbara G. Ernst
Harry F. Manbeck, Jr.
George R. Repper
Steven Lieberman
Joseph A. Hynds
Elizabeth A. Leff
Richard Wydeven
Martin M. Zoltick
Minaksi Bhatt
Sharon L. Davis
Robert B. Murray
Carla C. Calcagno
Jeffrey L. Ihnen
Glenn E. Karta
Martha Cassidy, Ph.D.
Brian S. Rosenbloom

Anne M. Sterba
Lisa N. Phillips
Leigh Z. Callander
C. Nichole Gifford
Patrick T. Skacel
Monica C. Kitts
Brian A. Tollefson
Joo Mee Kim*
Steven M. Giovannetti
Hyunkweon Ryu
R. Elizabeth Brenner
Adam M. Treiber
Daniel L. Shores
Joseph E. Green

Of Counsel
John A. McCahill
Barbara Webb Walker, Ph.D.

*Not Admitted in D.C.

***VIA FACSIMILE***

January 17, 2006

J. Bennett Clark, Esq.
Senniger, Powers, Leavitt & Roedel
One Metropolitan Square, 16th Floor
St. Louis, MO 63102

Re:   Trilegiant Loyalty Solutions v. Maritz
      Our Reference: 2829-179

Dear Ben:

I write in response to your letter of January 6, 2006.

The parties did not agree that "post-litigation privilege matters were not to be included on either side's privilege log, and therefore such matters cannot be the subject of discovery." In a letter dated November 29, 2005, Sharon Davis clearly informed Jennifer Hoekel that it is Trilegiant's position that a distinction between opining counsel and litigation counsel is artificial, that Trilegiant does not agree to limit discovery this way without knowing what documents exist, and that we expect such documents to be included on Maritz's privilege log if they were being withheld. Trilegiant's position remains that (1) in asserting its advice of counsel defense, Maritz voluntarily waived all attorney-client privileged communications and related attorney work product regarding its invalidity, unenforceability, and non-infringement contentions, (2) such documents are not shielded from discovery merely because they were created by Maritz's litigation counsel or after the commencement of suit, and (3) any documents so withheld should properly be logged on Maritz's privilege log so that Trilegiant can assess Maritz's claim of privilege.

Moreover, Maritz voluntarily produced an opinion of counsel that was dated <u>after</u> the commencement of suit and thus cannot reasonably deny that other documents so dated are properly the subject of discovery. Maritz cannot selectively disclose privileged communications dated after the commencement of suit that it considers helpful while claiming privilege to other communications so dated. Maritz's withholding of documents on the basis of date is unquestionably improper, particularly in light of Maritz's continuing infringement activities.

ROTHWELL, FIGG, ERNST & MANBECK, P.C.

J. Bennett Clark, Esq.
January 17, 2006
Page 2

      With respect to the privilege logs, there was not "agreed-upon cut off date" for discovery, only our response to Ms. Hoekel's inquiry about our plans for Trilegiant's privilege log with respect to which we indicated that "as a general rule" Trilegiant was logging documents through that date. In any event, that date cut-off was designed to prevent the creation of unduly large volumes of privileged documents concerning the litigation has <u>no</u> impact on the scope of permissible discovery or on the need for production of all documents relating to Maritz's invalidity, unenforceability and non-infringement contentions. With regard to Defendant's Exhibits 66 and 67, Trilegiant still does not know the dates of these documents, who created them, or if they relate to opinions that were provided to Maritz.

      Nevertheless, we will agree in the interest of professional courtesy to return the copies of those documents in our possession, but Trilegiant continues to maintain that these documents should be produced in their entirety. Please provide the information requested above as to the documents containing Exhibits 66 and 67 as soon as possible.

                                       Very truly yours,

                                       Steven Lieberman

SL:REB:erh

CLARK.L20.DOC

**SENNIGER POWERS**

ATTORNEYS AT LAW    PATENTS TRADEMARKS    LITIGATION COPYRIGHTS    TECHNOLOGY ANTITRUST

ONE METROPOLITAN SQUARE
16TH FLOOR
SAINT LOUIS, MISSOURI 63102

314-231-5400 v
314-231-4342 f

J. BENNETT CLARK
BCLARK@SENNIGER.COM

SENNIGER.COM

January 6, 2006

*Via E-Mail and U.S. Mail*
Steven Lieberman, Esq.
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W., Suite 800
Washington, D.C. 20005
slieberman@rothwellfigg.com

    Re:    *Trilegiant v. Maritz*: **Inadvertent Production of Work Product Material**

Dear Steve:

    I am very surprised by the position taken in your recent letter. I will represent to you that the documents in question were created by litigation counsel, after the commencement of the case, and not shared with a client. They cannot conceivably be producible.

    The noted provision in the Protective Order was included to protect against an inadvertent production, which you concede occurred here. The refusal to abide by the Protective Order is troubling.

    I am particularly concerned about the assertion that the documents are subject to production, in light of the many communications leading up to exchange of privilege logs. The parties agreed that post-litigation privilege matters were not to be included on either side's privilege log, and, therefore, such matters cannot be the subject of discovery. Importantly, this agreement was well after we indicated the intent to rely on advice of counsel and produced the opinions. In fact, based on your request and the parties' agreement, and as indicated in Ms. Hoekel's letter of December 2, 2005, we produced documents related to Mr. Evans' letter of 2002 and related to the Netcentives bankruptcy. Acting in good faith on the parties' understanding, we did not withhold such materials on the basis of privilege or work product. We expect that you will abide by this agreement.

**SENNIGER POWERS**

Steven Lieberman, Esq.
January 6, 2006
Page 2

    I hope you will revisit this issue, and agree to comply with terms of the Protective Order. Please advise, either way, so that I can know how to proceed.

                                  Very truly yours,

                                  J. Bennett Clark

JBC/mjm
cc:    Sharon Davis, Esq. (via email)