IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION LOYALTY GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-360-JJF |
| v. | ) | |
| | ) | **REDACTED** |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MARITZ' RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DISMISS DEFENDANT'S COUNTERCLAIMS

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
Jennifer E. Hoekel
Marc W. Vander Tuig
David J. Harlan
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Attorneys for Defendant

Dated: April 5, 2005

# TABLE OF CONTENTS

I.   INTRODUCTION..........................................................................................1

II.  SUMMARY OF ARGUMENT.....................................................................2

III. ARGUMENT.................................................................................................5

    A.   The Court Is Justified in Conditioning
        Amendment on Certain Prerequisites.............................................5

        1.   Affinion Should Be Required to Reimburse Maritz
            for Wasted Litigation Expense...........................................5

        2.   The Court Should Require Modification of the
            Covenant Not to Sue...........................................................6

    B.   Maritz Should Be Permitted to Prove an Overall Pattern of Inequitable
        Conduct, Unclean Hands and Patent Misuse Involving the
        '870, '412 and '012 Patents..............................................................8

    C.   Plaintiff's Rationale for Its Actions Falls Flat..................................9

    D.   Plaintiff's Proposed Addition of Claims Related to Mismarking
        And Unfair Competition Would Be Futile.....................................11

IV.  CONCLUSION............................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
172 F.3d 852 (Fed. Cir. 1999) ........................................................................................... 7

*Anderberg v. Masonite Corp.*,
176 F.R.D. 682 (N.D. Ga. 1997) .................................................................................... 6, 8

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ........................................................................................... 8

*Arista Records, Inc. v. Flea World, Inc.*,
356 F. Supp. 2d 411 (D.N.J. 2005) .................................................................................... 5

*Cemar, Inc. v. Nissan Motor Corp.*,
678 F. Supp. 1091 (D. Del. 1988) ...................................................................................... 6

*Clontech Labs., Inc. v. Invitrogen Corp.*,
406 F.3d 1347 (Fed. Cir. 2005) ........................................................................................ 11

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
910 F.2d 804 (Fed. Cir. 1990) ........................................................................................... 8

*Cultor Corp. v. A.E. Staley Mfg. Co.*,
224 F.3d 1328 (Fed. Cir. 2000) ........................................................................................ 11

*DeLoach v. Woodley*,
405 F.2d 496 (5th Cir. 1968) ............................................................................................ 11

*Espeed, Inc. v. Brokertec USA, LLC*,
2006 WL 416860 (D. Del. Feb. 22, 2006) ......................................................................... 9

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) ............................................................................................... 12

*Gen. Signal Corp. v. MCI Telecomm. Corp.*,
66 F.3d 1500 (9th Cir. 1995) .............................................................................................. 5

*Glick v. Koenig*,
766 F.2d 265 (7th Cir. 1985) ............................................................................................ 12

*M-3 & Assocs., Inc. v. Cargo Sys. Inc.*,
2004 U.S. Dist. LEXIS 6005 (N.D. Ind. Mar. 18, 2004) .................................................. 12

*In re Metoprolol Succinate Patent Litig.*,
2006 WL 120343 (E.D. Mo. Jan. 17, 1006)......................................................................9

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*,
324 U.S. 806 (1945).............................................................................................9

*SL Waber, Inc. v. Am. Power Conversion Corp.*,
135 F. Supp. 2d 521, 528 (D.N.J. 1999)..................................................................6

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
57 F.3d 1054 (Fed. Cir. 1995)..........................................................................7, 8

*Truth Hardware Corp. v. Ashland Prods., Inc.*,
No. 02-1541-GMS, 2003 WL 22005839 (D. Del. Aug. 19, 2003)................................2

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971).............................................................................................5

## Statutes and Rules

Fed. R. Civ. P. 15 ................................................................................................2

35 U.S.C. §292..................................................................................................11

**MARITZ'S RESPONSE TO PLAINTIFF'S MOTION TO
AMEND COMPLAINT AND DISMISS DEFENDANT'S COUNTERCLAIMS**

Defendant-Counterclaim Plaintiff Maritz Inc. makes this response to the "Motion of Plaintiff Affinion Loyalty Group, Inc. for Leave to Amend its Complaint and to Dismiss Defendant's Counterclaims Relating to the '870 and '012 Patents." (D.I. 101).[1]

## I. INTRODUCTION

Though it chooses its words carefully, Affinion's motion is tell-tale in several respects. The motion represents a tacit acknowledgment that the long-pending allegations of infringement of the '870 and '012 patents[2] are so frivolous that they should never have been brought.[3] Affinion now hangs its case on the slender thread of the '412 patent, hoping for an unlikely claim construction that will justify the commencement and continuation of this groundless suit.

Plaintiff's motion also represents an attempt to suppress the substantial evidence of inequitable conduct that has pervaded the prosecution of the three patents in suit. Questions concerning the actual inventorship of this patent estate have been withheld from the U.S. Patent and Trademark Office ("PTO") during prosecution of each of the three patents, and in

---

[1] The plaintiff will sometimes be referred to as "Affinion" in this brief, although Affinion Loyalty Group, Inc. no longer has standing to maintain suit. See Maritz' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 81), now pending before the Court.

[2] The three patents in suit are very closely related; the latter two (the '412 and '012) were rejected for double patenting by the PTO based on the '870 patent claims. Clark Decl. (Ex. 1), ¶ 3. These rejections were overcome when terminal disclaimers were filed by the patent owners. Id.

[3] The patents are directed to a "Fully Integrated On-Line Interactive Frequency and Award Redemption Program," and generally require the immediate award of points in a frequency program for on-line product purchases, which points are immediately made available for on-line award redemption. Plaintiff has known since early in deposition discovery that Maritz has never employed such a system. As discussed below, its claims that amendment at this late stage is justified by recent discovery concerning eVAULT is pretextual.

1

connection with a continuation application which Affinion recently expressly abandoned.[4]

**REDACTED** - the Trilegiant and Affinion entities acquiring the rights have, with guidance of outside counsel (who also serves as litigation counsel here and in other enforcement actions), intentionally withheld highly material information from the PTO, despite their knowledge of extensive litigation proceedings challenging inventorship, ownership and validity of the patents.

## II. SUMMARY OF ARGUMENT

Maritz opposes plaintiff's motion to dismiss, and also requests that the Court deny the request to add new claims to the case at this late stage. The law gives the Court wide discretion with respect to motions brought under Fed. R. Civ. P. 15(a), and amendments to the complaint are not automatic.

In view of the late timing of the motion to dismiss and relief being requested by Affinion, Maritz will be prejudiced if the motion is granted unconditionally. Maritz, therefore, requests that if Counts I (relating to the '870 patent) and III (relating to the '012 patent) are dismissed, the Court condition the dismissals as follows.

---

[4] As discussed more fully below, Affinion has recently filed two new continuation applications resulting from the same initial disclosure as the patents in suit. Ex. 1, ¶ 2. Faced with Maritz's allegations of inequitable conduct in this case, disclosure (albeit incomplete) of previously suppressed litigation material has now been made to the USPTO. This partial disclosure, made only in January 13, 2006, is a telling admission of past failures and an obvious attempt to obtain untainted patent rights. However, as Maritz will prove, the broad pattern of prosecution misconduct attending these patents renders all of them unenforceable as a matter of inequitable conduct, and further constitutes unclean hands and patent misuse. *See, e.g., Truth Hardware Corp. v. Ashland Prods., Inc.*, No. Civ. A. 02-1541-GMS, 2003 WL 22005839, at *1 (D. Del. Aug. 19, 2003) (*quoting Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245-46 (1933) ("It is well-settled that a patentee's inequitable conduct renders unenforceable all patent claims having 'an immediate and necessary relation' to that conduct, regardless of whether the claims are contained in a single patent or a series of related patents.")).

First, if the Court grants the motion, Maritz should be entitled to make its full proofs on the subject of inequitable conduct, despite plaintiff's attempt to limit same.[5] Non-disclosure concerning inventorship and prior art has permeated the prosecution of the three patents, rendering all of this activity relevant to: (a) the enforceability of any of the patents; (b) plaintiff's unclean hands in bringing and maintaining this suit seeking injunctive relief; and (c) plaintiff's patent misuse. Maritz's counterclaims detail the long-standing course of inequitable conduct that renders these patents, individually and collectively, unenforceable.

Second, if amendment of the complaint is to be allowed, at threshold, plaintiff should be required to reimburse Maritz for all of the fees and expenses incurred in addressing claims that plaintiff seeks to remove at this untimely stage of the case. If the motion is granted unconditionally, Maritz will have spent very considerable time and effort demonstrating that the asserted claims of the three patents—as identified by plaintiff in its interrogatory responses of April 15, 2005 and July 18, 2005[6]—are neither infringed nor valid.

As but one example, Maritz retained expert witnesses in defense of these claims. These experts invested substantial time in analyzing the invalidity of the three patents, and drafting expert reports. Then, without warning, the week the reports were due, Affinion contacted Maritz's counsel and advised of its intent to file the instant motion on the very next day. Ex. 1,

---

[5]Shortly after the filing of the instant motion, plaintiff engaged in a "self-help" remedy, unilaterally announcing that it now refuses to produce for deposition Monica Davis, the Rothwell Figg attorney who prosecuted the '012 patent and apparently, along with Trilegiant personnel and other Rothwell Figg attorneys, affirmatively chose to suppress allegations of incorrect inventorship and substantial prior art made in earlier litigations. Ex. 1, ¶7. This will be the subject of a separate motion to compel.

[6]In another telling after-the-fact gesture, only *after* Maritz's counsel pointed out that it has relied on the April 15, 2005 and July 18, 2005 interrogatory responses in defending the case, preparing expert reports, et al., has Affinion served amended interrogatory answers, setting forth the same claims as contained in the current motion. Ex. 1, ¶4.

3

¶5. This action is particularly nettlesome, because it seeks to change the scope of the case so dramatically through a motion filed on the eve of expert reports. Maritz had no real choice but to serve on Affinion the expert reports as written, reflecting substantial analysis directed to claims that Affinion now seeks to remove, and not addressing others it now seeks to introduce.

Third, plaintiff's proposed covenant not to sue is not sufficient to protect Maritz. Under applicable Federal Circuit precedent, Maritz is still in reasonable apprehension of suit under each of the patents; the covenant not to sue tendered by Affinion extends only through March 8, 2006, and applies "solely for infringement of [the '870 and '012 patents] with respect to any product made, used or sold by Maritz Inc. or its subsidiaries prior to this date." Because Maritz continues to engage in the accused business activity (in reliance on noninfringement opinions of counsel), the Court should either deny plaintiff's motion to dismiss Maritz's counterclaims as moot or require plaintiff to clarify that the covenant extends to all future activity with respect to any product, system or method of a configuration the same as or substantially similar to that made, used, sold or offered for sale by Maritz at any time through the date of the covenant.

Barring submission of an effective covenant not to sue, Affinion's tacit admission that there is no infringement of the '870 and '012 patents should permit the Court to dispose of such allegations in short order, freeing Maritz from the continued threat of enforcement of these patents. (It is telling that Affinion has opted not to address the '870 or '012 patents in its expert reports, notwithstanding that they are still in the case pending the Court's ruling on this motion.)

Finally, Affinion's allegations of timeliness and surprise, as a premise for this motion, are completely illegitimate. Plaintiff has known since very early in discovery that the Maritz systems do not employ interactive on-line product sale and immediate point-awarding functions. For several months it has also known, specifically, that eVAULT was never implemented.

4

Excusing its attempt to change the scope of the case and avoid a thorough inequitable conduct analysis in the name of the purported recent discovery that the eVAULT system was never implemented is, at best, a red herring, as will be shown. So, too, is the futile contention that there has been mismarking.

### III. ARGUMENT

A.  <u>The Court Is Justified in Conditioning Amendment on Certain Prerequisites</u>

   1.  *Affinion Should Be Required to Reimburse Maritz for Wasted Litigation Expense*

Amendment under Federal Rule of Civil Procedure 15(a) is not automatic; the Court has the discretion to deny an amendment or to impose conditions upon amendment to ameliorate undue prejudice to the adverse party. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971); *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1515 (9th Cir. 1995) (collecting cases). The most common condition imposed upon an amending party is costs, which may include litigation expense unnecessarily incurred in defending against the later-abandoned claims and allegations. *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 419 (D.N.J. 2005) (*citing* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1486).

In its April 15, 2005 and July 18, 2005 interrogatory responses (Ex. 1C), plaintiff identified certain claims at issue in the case: '870 patent claims 1 and 29; '412 patent claims 1, 10, 18, 27, 35, and 36; and '012 patent claim 1. At no time prior to the day before filing of this motion on March 8, 2006, was any indication given that these were not the claims at issue. Ex. 1, ¶5. While plaintiff points to an agreement between counsel that the contention responses could be supplemented, this does not excuse plaintiff's delay in giving notice of its intent to re-define the case, through months of substantial discovery, retention of experts, and up until the

5

eve of filing expert reports. The entire report of Dr. Arthur Keller would be obviated by amendment, as would much of the report of Bruce Bolger. *Id*, ¶¶ 8-9. Maritz has incurred these and other substantial expenses in connection with the claims Affinion now seeks to withdraw. *Id.*

Maritz should be reimbursed for the unnecessary expenses it has incurred in defending unwarranted charges of infringement involving the patents plaintiff only now seeks to drop from this suit. *See Cemar, Inc. v. Nissan Motor Corp.*, 678 F. Supp. 1091 (D. Del. 1988) (allowing amendment of plaintiff's complaint on the condition that plaintiff, *inter alia*, reimburse the defendant for unnecessarily-incurred expenses caused by the amendment); *Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 687 (N.D. Ga. 1997) (allowing plaintiffs to amend their complaint "only on the condition that they compensate Defendants" for the unnecessary discovery fees and expenses defendant incurred).[7]

2. *The Court Should Require Modification of the Covenant Not to Sue.*

As noted, Affinion seeks to avoid (a) having to prove infringement, and (b) facing charges of inequitable conduct and invalidity, by purporting to grant the scantiest of covenants not to sue. Federal Circuit case law suggests that a patentee defending against an action for

---

[7]Plaintiff may attempt to rely on *SL Waber, Inc. v. Am. Power Conversion Corp.*, or similar precedent, for the proposition that Maritz should not be awarded the costs and attorneys' fees it has incurred, in defending against plaintiff's claims of infringement of the '870 and '412 patents. 135 F. Supp. 2d 521, 528 (D.N.J. 1999). The *Waber* court recognized that an amending party could be required to conditionally reimburse the opposing party for costs and fees to prevent undue prejudice. *Id.* at 527. However, in denying the defendant costs and fees, that court incorrectly reasoned that the costs defendant had incurred were "valuable consideration" for the covenant not to sue tendered by plaintiff. *Id.* While the covenant not to sue in *Waber* would protect defendant from incurring unnecessary expenses defending future baseless allegations, the covenant did nothing to compensate defendant for the expenses unnecessarily incurred defending past baseless charges. Here, plaintiff should be held accountable for the unnecessary expenses it has imposed on Maritz by forcing it to defend claims that Affinion now effectively acknowledges had no basis when brought.

declaratory relief, can "divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, *present, or future acts.*" *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995) (emphasis added). The *Super Sack* rationale is that the covenant not to sue resolved the entire dispute between the parties as to products presently or previously made by the defendant. *Id.* The covenant plaintiff has offered here, however, fails to resolve the entire dispute between the parties.

Because the Affinion covenant is ambiguous and appears to have a critical gap in coverage, an actual controversy remains. An actual controversy exists where there are "both (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which would constitute infringement or concrete steps taken with the intent to conduct such activity." *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (*quoting BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).

Here Maritz continues to "conduct such activity" that triggered plaintiff to file suit against Maritz in the first instance alleging infringement of the '870 and '012 patents. In the absence of a clear covenant not to sue in the future for continuing the conduct released by the tendered covenant, Maritz continues to face a reasonable apprehension of suit. This is unlike the situation where declaratory judgment jurisdiction based on an accused infringer's future acts is "simply too speculative a basis for jurisdiction." *See, e.g., Super Sack*, 57 F.3d at 1060; *Amana*, 172 F.3d at 855-56

Because Maritz's accused business activities continue past the date of the tendered covenant, it faces a present, reasonable apprehension of an infringement suit. Therefore,

plaintiff's covenant not to sue, in its current form and without further assurances, is not enough to deprive this court of jurisdiction over Maritz's declaratory judgment counterclaims. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) (stating that for a declaratory judgment plaintiff to have jurisdiction, it "must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity"); *Super Sack*, 57 F.3d at 1059-60 (collecting cases and noting that the patentee's covenant not to sue eliminates a justiciable controversy because the accused has never contended that it has taken meaningful steps toward an infringing activity). As a result of Maritz's continued activity, in order to make this controversy moot, Affinion's covenant must, in addition to past activity, apply to Maritz's *present and future* activity of the same character as that being released.

In sum, plaintiff has shown a propensity to sue under the '870 and '012 patents, notwithstanding an insufficient factual basis. As a condition of amendment and dismissal of certain counterclaims, Affinion should be required to make plain that no claim will ever be brought with respect to products, systems or methods sold in the future having the same or a substantially similar configuration as those employed by Maritz on or prior to March 8, 2006.

B.  Maritz Should Be Permitted to Prove an Overall Pattern of Inequitable Conduct, Unclean Hands, and Patent Misuse Involving the '870, '412 and '012 Patents.

Should the Court permit the filing of the amended complaint and grant dismissal of Maritz's counterclaims related to the '870 and '012 patents, it should be with the understanding that this action does not preclude Maritz from offering evidence of an ongoing course of inequitable conduct, unclean hands, and misuse involving all three of the patents that have been asserted against Maritz. *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 809 - 10 (Fed. Cir. 1990)(unclean hands in prosecution of one patent which has an "immediate and

necessary relation" to other patents in suit may make them equally unenforceable); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*, 324 U.S. 806, 819 (1945)(inequitable conduct "impregnated Automotive's entire cause of action"). *See also Espeed, Inc. v. Brokertec USA, LLC*, 2006 WL 416860, at *10-11 (D. Del. Feb. 22, 2006) ("Inequitable conduct during the prosecution of a patent application can therefore render unenforceable not only the claims of that patent, but claims that issue from related applications as well"). If Maritz is not allowed to present evidence of inequitable conduct involving all three patents, plaintiffs "could avoid the consequences of that conduct through a scheme of divisional and continuation applications. The law does not countenance such a manipulation of the patent process." *Espeed, Inc.* 2006 WL 41680 at *11.

The evidence here will show that, throughout the prosecution of the '870, '412 and '012 patents, serious questions surrounding inventorship were suppressed from the USPTO. Nothing in the Court's order addressing the current motion should undermine Maritz's ability to present evidence concerning this broad course of conduct, and the related decisions not to disclose the existence of litigation in which inventorship and ownership were challenged. *See In re Metoprolol Succinate Patent Litig.*, 2006 WL 120343, at *25 (E.D. Mo. Jan. 17, 1006) (inventorship disputes are "highly material"). Nor should Maritz be limited in demonstrating the suppression of material prior art in each of the three prosecutions, some of which was brought to the patent owner's attention through litigation proceedings going back several years, and which proceedings were not disclosed, either.

C.    Plaintiff's Rationale for its Actions Falls Flat

Affinion claims essentially that it only recently realized that its claims as to the '870 and '012 patents have no basis. It states "[b]ecause Maritz has apparently been unable to implement

9

eVAULT, Affinion need not pursue its claims for infringement of those patents." Pl. Mot. at 2. This eVAULT excuse is a smokescreen for an exit strategy designed to avoid having to put forth a showing of infringement of the '870 and '012 patents where plainly there is none, and to attempt to lessen the scope of inquiry into inequitable conduct, unclean hands, and patent misuse.

Affinion's suggestion that it is only recently gained knowledge of non-infringement is demonstrably incorrect. Early in the case, Maritz agreed to produce deposition witnesses for the specific purpose of permitting plaintiff to learn about its programs and then to declare which of them it contended were infringing. (This was an early sign that plaintiff filed suit without any notion of whether there was a basis to allege infringement). In depositions of Travis Carpenter, Janet Lister and Fran Schuster, taken nearly a year ago in May 2005, plaintiff learned that Maritz's VAULT and AWARD HQ programs did not involve the purchase of products on-line and the related award of points for such on-line purchases. Carpenter Dep., pp. 22-23 (Ex. 2A); Schuster Dep., pp. 8 – 12, 15 - 16, 22 (Ex. 2B); Lister Dep., pp. 7, 10 (Ex. 2C). *See also* Altemueller Dep. of December, 2005 pp. 75 – 77 (Ex. 2D).

Further, in three instances of deposition testimony adduced by plaintiff in November and December, 2005, *witnesses specifically testified that eVAULT was never implemented.* Sigman Dep., pp. 38 – 41 (Ex. 3A); Altemueller Dep., pp. 80 – 81 (Ex. 3B); Shipley Depo., pp. 79 – 80 (Ex. 3C)( plaintiff's counsel herself stating explicitly that "I understand that [eVAULT] was never implemented").

In view of the foregoing, plaintiff's suggestion that it did not learn of eVAULT's non-implementation until the March, 2006 depositions of Messrs. Agovino and Bushold is badly inaccurate. *See* Pl. Motion at 4, with accompanying citation. So, too, is its attempt to depict something significant in the need to reschedule Mr. Bushold's deposition, which was related

10

solely to circumstances surrounding his recent departure from Maritz and had nothing to do with an attempt to suppress testimony concerning eVAULT.[8]

Notably absent from the moving papers is any indication that suit was commenced in the belief, based on reasonable investigation, that Maritz utilized eVAULT or that eVAULT infringed either the '870 or '012 patents. As may be seen from the foregoing discussion, Affinion's attempts to justify its actions based on a purported recent discovery concerning eVault's non-implementation is nothing more than misdirection.

D.  Plaintiff's Proposed Addition of Claims Related to Mismarking and Unfair Competition Would Be Futile

Futility is a well-established ground for denying amendment of pleadings. "The liberal amendment rules of Fed. R. Civ. P. 15(a) do not require that courts indulge in futile gestures." *DeLoach v. Woodley*, 405 F.2d 496, 496-97 (5th Cir. 1968). *See also Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328 (Fed. Cir. 2000) (holding that the district court did not abuse its discretion by denying the patentee leave to amend the complaint when the amendment would be frivolous). Particularly where, as here, a party seeks to interject a new claim late in the proceedings, there should be a threshold showing of evidence sufficient to support the proffered cause of action.

To prove mismarking under 35 U.S.C. § 292, the proponent must advance evidence of an actual intent to deceive the public. *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). None of the paltry information cited by plaintiff comes close to reflecting such an intent. Affinion's counsel states that "[t]he first document reflecting that Maritz has described its VAULT system 'patent pending' in its sales presentations was produced on

---

[8] The irony is that eVAULT, even had it been implemented, would not have infringed any of the three patents. The reasons for this are beyond the scope of this motion.

11

September 23, 2005." Pl. Ex. 4, ¶2. Upon inquiry, counsel for plaintiff indicated that this referenced Plaintiff's Deposition Exhibits 76 and 77. Ex. 1 at ¶4; Exs. 1E, 1F. These exhibits are not samples of marked advertising materials, but simply indicate an intent to mark unspecified presentation materials.

Similarly, plaintiff's extremely dubious Lanham Act claim[9] premised on mismarking should be rejected. There is no "proof of widespread dissemination within the relevant industry," as required to demonstrate a Lanham Act claim. *Fashion Boutique of Short Hills*, Inc. v. *Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002). To the contrary, Affinion pleads that the alleged mismarking was "likely to influence the purchasing decisions of Maritz's clients and potential clients." Pl. Proposed Amd. Cplt., ¶ 39.

At this stage of the case, in the absence of meaningful evidence or substantive pleadings, the Court should deny the request to add these claims. *Cf., Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985) (denying plaintiff's motion to amend because the proposed amendment could not withstand a motion to dismiss).

### III. CONCLUSION

By this motion, Affinion attempts to remove some of the warts growing from its extremely aggressive institution of suit. Doing so on the eve of expert reports, and premised in part on a flimsy covenant not to sue, threatens to cause unwarranted prejudice to Maritz.

Amendment, in the form of dropping claims of infringement of the '870 and '012 patents, should be denied, or alternatively conditioned on the prerequisites discussed above.

---

[9]Affinion cites an unreported district court case from Indiana in an effort to suggest that mismarking, by itself, establishes a Lanham Act violation. *M-3 & Assocs., Inc. v. Cargo Sys. Inc.*, 2004 U.S. Dist. LEXIS 6005 (N.D. Ind. Mar. 18, 2004). However, Affinion's proposed amended complaint is notably deficient in alleging a factual basis to support all of the elements of a Lanham Act violation. Affinion's unpersuasive precedent merely purports to relate to one element of a Lanham Act claim.

Amendment, so as to add futile claims of mismarking and unfair competition, should be denied. Finally, nothing in the Court's action on this motion should prevent Maritz from presenting the overall pattern of misconduct related to these patents, under its defenses of inequitable conduct, unclean hands, and patent misuse.

Respectfully submitted,

Date:  April 5, 2006

*/s/ Patricia Smink Rogowski*
Patricia Smink Rogowski (#2632)
Rudolf E. Hutz (#494)
CONNOLLY BOVE LODGE & HUTZ LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
(302) 658-9141

Attorneys for Defendant, Maritz Inc.

OF COUNSEL:
J. Bennett Clark
Jennifer E. Hoekel
Marc W. Vander Tuig
David J. Harlan
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400