IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AFFINION LOYALTY GROUP, INC. | ) C.A. No. 04-360 (JJF) |
| Plaintiff, | ) |
| v. | ) |
| MARITZ, INC. | ) PUBLIC VERSION |
| Defendant. | ) |

**REPLY BRIEF IN SUPPORT OF MOTION OF PLAINTIFF AFFINION LOYALTY GROUP, INC. FOR LEAVE TO AMEND ITS COMPLAINT AND TO DISMISS DEFENDANT'S COUNTERCLAIMS RELATING TO THE '870 AND '012 PATENTS**

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST
& MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC 20005
(202) 783-6040

Original Filed: April 17, 2006
Redacted Version Filed: April 24, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

    I.    Maritz Is Not Entitled to Costs as a Condition of Amendment. .............................. 2

    II.    Affinion's Release and Covenant Not To Sue Requires No Modification. ............. 5

    III.    Maritz Is Not Entitled To Present Evidence To Prove Claims Relating
To the '870 or '012 Patents, or To Conduct Discovery Relating Only
To These Claims. ..................................................................................................... 7

    IV.    Maritz Has Not Shown that Affinion's New Claims Are Futile. ........................... 10

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                                          <u>Page</u>

*Anderberg v. Masonite Corp.*
    176 F.R.D. 682 (N.D. Ga. 1997)..................................................................................4

*Arista Records, Inc. v. Flea World, Inc.*
    356 F. Supp. 2d 411 (D.N.J. 2005).............................................................................4, 5

*Cemar, Inc. v. Nissan Motor Corp.*
    678 F. Supp. 1091 (D. Del. 1988)..................................................................................4

*Consolidated Aluminum Corp. v. Foseco International Ltd.*
    910 F.2d 804 (Fed. Cir. 1990).........................................................................................7

*Corning v. SRU Biosystems, Inc.*
    No. 03-633, 2005 U.S. Dist. LEXIS 22699 (D. Del. Oct. 5, 2005) ................................7

*Dixie-Vortex Co. v. Paper Container Manufacturing Co.*
    130 F.2d 569 (7th Cir. 1942) ..........................................................................................5

*eSpeed, Inc. v. Brokertec U.S.A., L.L.C.*
    No. 03-612, 2006 WL 416860 (D. Del. Feb. 22, 2006)..................................................7

*Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*
    No. 04-0038 (D. Del. Sept. 20, 2005).............................................................................1

*Foman v. Davis*
    371 U.S. 178 (1962).....................................................................................................10

*Gambro Lundia AB v. Baxter Healthcare Corp.*
    110 F.3d 1573 (Fed. Cir. 1997).......................................................................................9

*In re Certain Excimer Laser Systems for Vision Correction Surgery*
    USITC Inv. No. 337-TA-419, 2000 WL 126070 (Jan. 2000).........................................8

*Kulwicki v. Dawson*
    969 F.2d 1454 (3rd Cir. 1992) ......................................................................................10

*Lewis v. Foster*
    No. 04-1350, 2006 U.S. Dist. LEXIS 4548 (D. Del. Feb. 7, 2006)..............................10

*Matsushita Battery Industries Co. v. Toyota Motor Corp.*
    No. 96-101, 1997 U.S. Dist. LEXIS 21016 (D. Del. Dec. 23, 1997) .............................6

*Pharmacia Corp. v. Par Pharmaceutical, Inc.*
    417 F.3d 1369 (Fed. Cir. 2005).....................................................................................10

*Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*
   106 F. Supp. 2d 761 (D.N.J. 2004) ............................................................................. 8

*Ristvedt-Johnson, Inc. v. Brandt, Inc.*
   805 F. Supp. 549 (N.D. Ill. 1992) ............................................................................ 8, 9

*Shane v. Fauver*
   213 F.3d 113 (3rd Cir. 2000) .................................................................................... 10

*SL Waber, Inc. v. American Power Conversion Corp.*
   135 F. Supp. 2d 521 (D.N.J. 1999) .......................................................................... 3, 4

*Spectronics Corp. v. H.B. Fuller Co.*
   940 F.2d 631 (Fed. Cir. 1991) ...................................................................................... 6

*SSIH Equip. S.A. v. International Trade Commission*
   718 F.2d 365 (Fed. Cir. 1983) ...................................................................................... 8

*SuperSack Manufacturing Corp. v. Chase Packaging Corp.*
   57 F.3d 1054 (Fed. Cir. 1995) ...................................................................................... 6

*Truth Hardware Corp. v. Ashland Products, Inc.*
   No. 02-1541, 2003 WL 22005839 (D. Del. Aug. 19, 2003) ........................................ 7

<u>Rules</u>

Rule 15(a) of the Federal Rules of Civil Procedure ............................................................ 3

Rule 26(b)(1) of the Federal Rules of Civil Procedure ...................................................... 7

<u>Other Authorities</u>

6 Charles Alan Wright et al. al., Federal Practice and Procedure § 1486 (2nd ed. 1990) ............... 4

**ARGUMENT**

Affinion seeks to streamline this complex patent case by filing a Release and Covenant Not to Sue on two of the three patents in suit, and by seeking leave to amend its Complaint to delete all claims relating to these patents. Of the three patents and 100 claims originally at issue, Affinion will focus its case at trial on the three independent claims and fourteen dependent claims of U.S. Patent No. 6,009,412 in which Maritz's infringement is clearly established.[1] Affinion thus merely seeks to do what the Court would have it to do in any case: focus and narrow the number of patents and claims for trial, and thereby reduce the time expended by the Court and the parties before and during trial.[2]

A defendant normally would welcome a narrowing of the claims asserted against it. Instead, Maritz makes a litany of demands: (1) that Affinion be forced to pay Maritz's litigation expenses on the two patents eliminated in the case, (2) that Affinion promise not to sue on future as-yet unidentified Maritz products, and (3) that Maritz be permitted to introduce irrelevant evidence that a later-issued patent, that is not being asserted, is unenforceable for inequitable conduct. Maritz's response appears to be driven by the fact that it has no substantial noninfringement defense to the claims on which Affinion's case now focuses. As discussed below, there is no basis for awarding costs or requiring Affinion to promise not to sue on future products as conditions to amendment. Moreover, there is no legal support for Maritz's assertion that conduct occurring after the issuance of a patent in suit could render that patent unenforceable.

---

[1] Affinion seeks to assert claims 10-17, 27-34, and 36 of the '412 patent. Claims 11-17 and 28-34 are identical except that they depend from different independent claims (10 and 27).

[2] *See, e.g., Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.* No. 04-0038 (D. Del. Sept. 20, 2005) (Memorandum Opinion and Order) (requiring plaintiff to narrow case from eight patents and 90 claims to ten claims), Ex. 1.

I.   **MARITZ IS NOT ENTITLED TO COSTS AS A CONDITION OF AMENDMENT.**

Maritz asks the Court to award it the costs it incurred in preparing expert reports on invalidity as a condition of amendment. If what Maritz asserts is true -- that it would have not prepared invalidity reports on claims in U.S. Patent Nos. 5,774,870 and 6,578,012 patents had it been notified earlier -- the delay was a problem of its own making. Maritz identified Thomas Bushold as a witness with knowledge relating to infringement in its Rule 26(a)(1) disclosure, and in May 2005 (when document production was just underway), a Maritz witness testified that **REDACTED** After Affinion had the opportunity to review the 111,854 documents produced by Maritz, it noticed Mr. Bushold's deposition on October 12, 2005, Ex. 2, and notified Maritz in December 2005 that it believed him to be a key witness whose deposition should not be put off to the end of discovery. *See* December 20, 2005 letter from Sharon Davis to J. Bennett Clark, Ex. 3 ("Particularly after Mr. Shipley's testimony, it is plain that Mr. Bushold is a critical witness in the case whose deposition cannot be pushed to the end of the discovery period without prejudice to Trilegiant's preparation of its case.").

Maritz put off the deposition of this key witness on infringement *for five months* -- until March 2, 2006 -- knowing full well that Affinion's expert reports on infringement were due the next week, on March 10, 2006. Mr. Bushold's deposition was twice scheduled, and cancelled by Maritz, in December 2005. In the interim, Affinion learned that **REDACTED** and thus Affinion needed to question him about that issue as well.

Affinion could not be expected to withdraw infringement claims before deposing the key witness who actually developed the programs accused of infringement. Affinion did all that it

could to depose Mr. Bushold in November, December, January, and February.[4] Had Maritz produced Mr. Bushold for deposition as Affinion requested, Affinion would have been able to decide whether or not to seek amendment earlier. Affinion notified Maritz *within two business days* of Mr. Bushold's deposition (on Monday, March 6, 2006) that it would seek amendment. It is Maritz, not Affinion, that has dragged its feet in this matter.

The same argument Maritz makes for costs here was flatly rejected by the court in *SL Waber, Inc. v. American Power Conversion Corp.*, 135 F. Supp. 2d 521 (D.N.J. 1999). In *SL Waber*, Plaintiff filed a "Statement of Nonliability and Covenant Not to Sue" on one of the patents in suit, and served Defendant with a motion to dismiss counterclaims relating to that patent and for leave to file an amended Complaint deleting its infringement claims. *Id.* at 523. The court granted Plaintiff's motion and denied Defendant's motion for the fees it incurred in defending the claim of infringement as a condition of dismissal under both Rule 15(a) of the Federal Rules of Civil Procedure, and 35 U.S.C. § 285. The court denied the motion under Rule 15(a) because it found no undue prejudice to Defendant and viewed the Release and Covenant as "valuable consideration" for the fees expended by the defendant. *Id.* at 527-28. Maritz recognizes that *SL Waber* is on all fours to the present case, and thus asserts that it is "incorrectly reasoned," merely denying only that such a covenant constitutes compensation for past expenses. Maritz does not deny that Affinion's Release and Covenant is valuable. In this case, as in *SL*

---

[4] *See* January 10, 2006 e-mail from Sharon Davis to Jennifer Hoekel, Ex. 5 ("Given the problems we have had with scheduling Mr. Bushold and getting his appearance, we would like to take his deposition as soon as possible."); January 23, 2006 letter from Sharon Davis to J. Bennett Clark, Ex. 6 ("In terms of scheduling the remaining Maritz witnesses, the first priority is Tom Bushold. Please provide me with his available dates as soon as possible."); January 31, 2006 letter from Sharon Davis to J. Bennett Clark, Ex. 7 ("I am greatly concerned about Maritz's continuing inability to produce Tom Bushold to be deposed. As you know, we view completion of his deposition (originally noticed on October 12, 2005) as a crucial part of fact discovery. Please provide dates on which Mr. Bushold is available to be deposed by close of business on February 2….").

*Waber*, "[Defendant] should consider the costs and attorneys' fees it has incurred in defending against [Plaintiff's] claim of infringement ... money well spent" for the Release and Covenant Not to Sue. *Id.* at 528.

The authorities cited by Maritz support the award of discovery costs under Rule 15(a) only for certain discovery expenses *forced* upon it, or for costs incurred for preparing unnecessary pleadings. *See* 6 Charles Alan Wright et al. al., Federal Practice and Procedure § 1486 (2nd ed. 1990) ("An amendment frequently will *force* other parties to undertake additional preparation in order to meet the new issues or theories that are asserted. ... If this preparation results in further expense, the court may order that the amending party bear part or all of it. The award may include costs that were incurred by the opposing party in connection with preparing to meet those portions of the original pleading that have been eliminated.") (emphasis added); *Cemar, Inc. v. Nissan Motor Corp.*, 678 F. Supp. 1091, 1106 (D. Del. 1988) (Plaintiff must reimburse Defendant "for any duplicative discovery not initiated by it and caused by the amended complaint."). Moreover, costs are not usually awarded if the discovery could be relevant to issues in the pending, or possible future, litigation. *See Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 687 (N.D. Ga. 1997) (requiring Plaintiffs who sought to amend their complaint to delete their nationwide class allegation to reimburse Defendant for reasonable discovery fees relating solely to the class issue because such discovery would not be relevant in present or future suit).[5]  Here, Maritz has not identified any discovery it has conducted that would be irrelevant to any of the issues remaining in the litigation. None of the cases relied upon by

---

[5] Contrary to Maritz's contention, *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411 (D.N.J. 2005) does not support the award of "litigation expense unnecessarily incurred in defending against the later-abandoned claims and allegations." *Arista Records* merely stated that "the imposition of conditions upon leave to amend an answer has been recognized where a defendant seeks to withdraw a damaging judicial admission." *Id.* at 419. It has no application here.

Maritz involved a Plaintiff who was providing Defendant with a Release and Covenant Not To Sue, or a Defendant whose costs were caused by its own delay. Indeed, if costs were awarded on the facts of this case, a patent holder would be discouraged from voluntarily narrowing its case during or at the end of discovery, as the courts ordinarily encourage, lest it be ordered to pay its opponent's costs.

Affinion's proposed amendment does not require Maritz to take additional discovery. To the contrary, it relieves Maritz of a need to defend infringement claims under two patents. Moreover, invalidity is an optional defense that Maritz chose to assert, and the costs now sought were voluntarily assumed by Maritz, not forced upon it. *See, e.g., Dixie-Vortex Co. v. Paper Container Mfg. Co.*, 130 F.2d 569 (7th Cir. 1942) (a plaintiff might anticipate an invalidity defense, but it is optional with the pleader). Maritz can reduce its future costs by not preparing unnecessary noninfringement reports for claims not being asserted, and not persisting in seeking discovery relating to inequitable counterclaims now rendered moot by Affinion's proposed Amended Complaint.

## II. AFFINION'S RELEASE AND COVENANT NOT TO SUE REQUIRES NO MODIFICATION.

Maritz contends that Affinion's Release and Covenant Not To Sue fails to eliminate the case or controversy requirement for jurisdiction because it does not promise "not to sue for continuing the conduct released by the tendered covenant." D.I. 115 at 7. That is incorrect. Affinion has released Maritz for infringement occurring prior to March 8, 2006, and promised not to sue Maritz in the future for infringement of the '870 and '012 patent for "any product made, used, or sold by Maritz Inc. prior to that date." *See* Ex. 8. Maritz has no reasonable apprehension that it will face an infringement suit on the '870 and '012 patents with respect to any products that it has actually made, used, or sold since March 8, 2006, and thus cannot satisfy

5

the first part of the two-part test for justifiability.

Maritz also contends that Affinion's promise not to sue fails to eliminate the controversy between them because the promise does not cover products that Maritz may make, use, or sell *in the future* having a "substantially similar configuration" to those products employed by Maritz before March 8, 2006. *Id.* at 8. Maritz must identify present activity that places it at risk of infringement liability to establish an actual controversy. *SuperSack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059-60 (Fed. Cir. 1995); *see also Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("The accused infringer must have actually produced or prepared to produce an allegedly infringing product."); *id.* at 636 ("Spectronics is required to demonstrate that it is engaged in potentially infringing conduct...."); *Matsushita Battery Indus. Co. v. Toyota Motor Corp.*, No. 96-101, 1997 U.S. Dist. LEXIS 21016, at *17 (D. Del. Dec. 23, 1997) (accused infringer presented no evidence that it was taking steps toward producing a possibly infringing product). Maritz has not identified any products that it has taken meaningful preparatory steps to make or identified any product that it intends to sell in the future. The residual possibility of a future infringement suit based on Maritz's future sale of unspecified products, only vaguely described as "substantially similar" to existing products, is simply too speculative a basis for jurisdiction over Maritz's counterclaim for declaratory judgments of invalidity and unenforceability. *SuperSack*, 57 F.3d at 1060. The proper course is to dismiss these claims. *Id.*

### III. MARITZ IS NOT ENTITLED TO PRESENT EVIDENCE TO PROVE CLAIMS RELATING TO THE '870 OR '012 PATENTS, OR TO CONDUCT DISCOVERY RELATING ONLY TO THESE CLAIMS.

There is no jurisdiction over Maritz's counterclaims that the '870 and '012 patent are invalid and unenforceable due to inequitable conduct or patent misuse.[6] Thus Maritz may not present evidence at trial to prove these claims. *Corning v. SRU Biosystems, Inc.*, No. 03-633, 2005 U.S. Dist. LEXIS 22699, at *6-7 (D. Del. Oct. 5, 2005). It also is not entitled to discovery relevant only to these claims. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, Maritz is entitled only to "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

Maritz argues that, even though the '012 patent is no longer being asserted in the case, Maritz should be permitted to present evidence of alleged inequitable conduct with respect to that patent, all of which occurred after the '412 patent issued. That is incorrect as a matter of law. Courts have recognized that inequitable conduct in the prosecution of an earlier-filed patent application can, in some circumstances, "infect" a later-filed application and, if not "cured," also render the later-filed patent unenforceable." That is the proposition supported by the cases cited by Maritz. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 809-11 (Fed. Cir. 1990) (inequitable conduct infected later-filed patents with related subject matter); *eSpeed, Inc. v. Brokertec U.S.A., L.L.C.*, No. 03-612, 2006 WL 416860, at *10-11 (D. Del. Feb. 22, 2006) (inequitable conduct in parent patent infected patent claiming priority therefrom); *Truth Hardware Corp. v. Ashland Prods., Inc.*, No. 02-1541, 2003 WL 22005839, at *1-2 (D. Del. Aug. 19, 2003) (same).

Affinion did not object to Maritz's deposition of the attorney for Trilegiant who took over

---

[6] Contrary to Maritz's brief, D.I. 115 at 2 n.4, 3, it has not asserted any counterclaim for unclean hands. See D.I. 8, D.I. 61.

7

'012 patent's prosecution when the enforceability of the '012 patent was still an issue in the case. That deposition was scheduled for December 28, 2005 but was unilaterally cancelled by Maritz. This testimony is now not relevant or discoverable, however, because Trilegiant's conduct in prosecuting the '012 patent is not relevant to the enforceability of the '412 patent. It is well-settled that conduct in the prosecution of a later patent application cannot render an earlier patent unenforceable as a matter of law:

> [Defendant] asserts that one or more of the other patents originally asserted by [Plaintiff] were "procured through inequitable conduct" and that such activity also taints the '762 patent and renders it wholly unenforceable....
>
> The "inequitable conduct" is said to arise from a failure on the part of [Plaintiff] to inform the patent examiner of certain acts alleged to constitute a possible on-sale bar under 35 U.S.C. § 102(b) to all but the '762 patent. *This inequitable conduct is not said to have occurred in connection with procurement of the '762 patent. Rather, [Defendant] relies solely on the supposition that all of the patents are so interrelated that [Plaintiff's] "unclean hands" with respect to the later patents renders the '762 patent unenforceable. We reject this contention as a matter of law. The acts which are alleged to have taken place all occurred after the '762 patent issued* and do not deal with the invention claimed in the '762 patent.

*SSIH Equip. S.A. v. Int'l Trade Comm'n*, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (emphasis added); *see also Pharmacia Corp. v. Par Pharmaceutical, Inc.*, 417 F.3d 1369, 1374 (Fed. Cir. 2005) ("Par asserts that a terminal disclaimer can bind two related patents together so that inequitable conduct in procuring a later prosecuted patent will automatically infect an earlier issued patent. The district Court correctly rejected that assertion."); *In re Certain Excimer Laser Sys. for Vision Correction Surgery*, USITC Inv. No. 337-TA-419, 2000 WL 126070 (Jan. 2000) (patent not unenforceable due to inequitable conduct or unclean hands as a matter of law where the conduct complained of occurred after the patent issued and thus lacked the "immediate and necessary" relationship to the allegedly "infected" patent); *Ristvedt-Johnson, Inc. v. Brandt, Inc.*,

8

805 F. Supp. 549, 556 (N.D. Ill. 1992) (rejecting argument that "a party's act of inequitable conduct should reach back in time to cancel any patent protection which might inure to that party's benefit" and finding patents filed before conduct complained of not unenforceable). This is perfectly logical because "[i]nequitable conduct is ... the submission of false material information, during the prosecution of a patent with an intent to deceive." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1580 (Fed. Cir. 1997).

In addition to the legal infirmity of Martiz's argument, Maritz's "pattern" theory simply does not fit the facts here. Affinion's parent company (Trilegiant Corporation) bought the '412 patent from Netcentives, Inc. at Netcentives' bankruptcy auction, and thus had no involvement in its prosecution. Maritz is well aware of this because **REDACTED**

> The '012 patent is a *continuation* of the issued '412 patent; it was filed by Netcentives and was part of the patent portfolio purchased by Trilegiant at that auction. Trilegiant took over the prosecution of the '012 patent application after acquiring it from Netcentives.[8]

---

[7] Maritz mischaracterizes Trilegiant's purchase of this patent by stating that Affinion "acquir[ed] the patent rights... pursuant to a 'keep quiet' agreement with Carlson Companies, Inc." D.I. 115 at 2. When Netcentives declared bankruptcy it was in the midst of a number of lawsuits concerning the infringement of the '870 and '412 patents, including a lawsuit against Carlson, which settled when the patents were sold.

[8] The application resulting in the '870 patent was filed on December 14, 1995 and prosecuted by Joseph Bach, Esq., at the direction of the inventor, Thomas Storey, until Mr. Storey sold the patent application to Netcentives, Inc. on July 21, 1997. Prosecution was continued by John Stattler, of Fliesler, Dubb, Meyer & LoveJoy. The '870 patent issued on June 30, 1998. Mr. Stattler filed on June 25, 1998 a continuation application that resulted in the '412 patent. On March 22, 1999, Netcentives substituted Philip Albert, of Townsend and Townsend and Crew, as the prosecuting attorney for this application. The '412 patent issued on December 28, 1999. Mr. Albert filed on November 12, 1999 the continuation application that eventually issued as the '012 patent. Netcentives declared bankruptcy in the fall of 2001 and sold this patent portfolio to Trilegiant Corporation for approximately $2,000,000. The prosecution of the '012 patent was continued by Monica Davis, of Rothwell Figg, Ernst & Manbeck. The '012 patent

### IV. MARITZ HAS NOT SHOWN THAT AFFINION'S NEW CLAIMS ARE FUTILE.

Maritz's sole basis for opposing Affinion's motion to add claims for false marking and unfair competition is that the claims are futile.[9] A liberal standard is applied to the amendment of pleadings, and Maritz has a heavy burden of proving futility. *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2004). In seeking leave to amend its pleadings Affinion merely needs to set forth allegations sufficient to state a claim upon which relief may be granted:

> An amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss."

*Lewis v. Foster*, No. 04-1350, 2006 U.S. Dist. LEXIS 4548, at *29-30 (D. Del. Feb. 7, 2006) (internal citation omitted); *see also Shane*, 213 F.3d at 115; *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3rd Cir. 1992).

Affinion's proposed false marking claim properly alleges that (1) Maritz has used the term "patent pending" in its sales presentations advertising its VAULT system to its clients, (2) VAULT was not then, and has never been, within the scope of any claims of any Maritz pending patent application, (3) Maritz and its executives knew that its pending patent application did not cover VAULT when they authorized the use of the term "patent pending" to describe VAULT in

---

issued on June 10, 2003.

[9] The grounds that may justify denying leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Shane v. Fauver*, 213 F.3d 113, 115 (3rd Cir. 2000). In the absence of any of these reasons the leave sought should be "freely given." *Foman*, 371 U.S. at 182. Maritz does not allege undue delay, bad faith, or that it would be prejudiced by the Court's granting Affinion's motion for leave to amend its complaint to allege false marking or violation of the Lanham Act. It also does not allege that Affinion's new claims fail for a lack of specificity.

its advertising to clients, and (4) Maritz used the term "patent pending" in connection with VAULT with the intent to deceive its clients and potential clients. Affinion's Amended Complaint at ¶¶ 30-34. Maritz does not dispute that **REDACTED**

It only disputes the evidence of deceptive intent, an issue of fact. D.I. 115 at 11. This is a motion for leave to amend, not a motion for summary judgment. The issue is sufficiency of Affinion's allegations, not the sufficiency of its proof. For purposes of the present motion, the admitted false marking is assumed to have done with deceptive intent, and it would be improper for the Court to decide that issue at this time.

Similarly, Affinion's Lanham Act claim properly alleges that (1) Maritz's statements in sales presentations and materials that VAULT was "patent pending" were literally false, (2) Maritz has put VAULT and its sales presentations and materials concerning VAULT into interstate commerce through its sale of loyalty marketing services to clients throughout the United States, (3) Maritz's intentionally false statements were material and likely to influence the purchasing decisions of Maritz's clients and potential clients, (4) Affinion and Maritz are direct competitors in the market for loyalty marketing services, and (5) upon information and belief, Maritz's false statements have caused Affinion substantial injury, loss and damage. Affinion's Amended Complaint at ¶¶ 35-41. The only disputed allegations are whether there is sufficient proof of intent and of "widespread dissemination." D.I. 115 at 12. These are issues of fact. Assuming the truth of the facts as alleged in the Affinion's pleading, there is no dispute that the Court could find a violation of the Lanham Act.

Lastly, Maritz sets forth no reason for denying Affinion's request for relief from the Court's Scheduling Order with respect to the timing for amendment of pleadings.

## CONCLUSION

For the reasons set forth in its opening brief and herein, Affinion's Motion for Leave to Amend Its Complaint and To Dismiss Defendant's Counterclaims Relating to the '870 and '012 Patents should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

/s/ *Maryellen Noreika*

---
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST
& MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC 20005
(202) 783-6040

April 17, 2006

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on April 24, 2006, I electronically filed Reply Brief in Support of Motion of Plaintiff Affinion Loyalty Group, Inc. for Leave to Amend its Complaint and to Dismiss Defendant's Counterclaims Relating to the '870 and '012 Patents (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on April 24, 2006 upon the following in the manner indicated:

### BY HAND

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE  19801

### BY FEDERAL EXPRESS

> J. Bennett Clark
> Senniger Powers
> One Metropolitan Square
> St. Louis, MO  63102

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com