IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AFFINION LOYALTY GROUP, INC.,      )
                                   )
                Plaintiff,         )        Civil Action No. 04-360-JJF
                                   )
        v.                         )
                                   )
MARITZ INC.,                       )
                                   )
                Defendant.         )

## OPENING CLAIM CONSTRUCTION BRIEF OF MARITZ INC.

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Date: May 9, 2006                      Attorneys for Maritz Inc.

## TABLE OF CONTENTS

I.      Introduction ................................................................................................... 1

II.     Law Regarding Claim Construction ........................................................... 3

III.    Argument ....................................................................................................... 5

        A.    "On-line Incentive Program" ................................................................. 6

              1.   The Claim Language Mandates This Construction. .................................. 6

              2.   The Only "On-Line Incentive Program" Reflected in the Specification  is a
                   Frequency Program that Awards Points for On-Line Product Purchases ................ 7

              3.   The Prosecution History Provides Further Support for this Construction. ............... 8

              4.   The Extrinsic Evidence Also Supports this Construction. ....................................... 10

        B.    "Issues Award Points to Users, Wherein Said Award Points are Redeemable by Said
              User for an Award" ................................................................................. 11

              1.   "Issu[ing] Award Points to Users" Requires Determining Whether the User is a
                   Registered User, Calculating the Award Points According to a Predetermined
                   Formula, and Adding the Calculated Points to the User's Award Account ........... 11

              2.   Points Must Be Immediately Available for Redemption Upon Completion of a
                   Qualifying On-Line Purchase From the Product Catalog ...................................... 11

        C.    "Implementing an On-Line Incentive Program that Issues Points to Users" ................ 15

        D.    "implementing an Internet webpage accessible...to at  least one user of said on-line
              incentive program for on-line interactive communications between said user and said
              Internet webpage" ....................................................................................... 16

        E.    "Permitting a User to Preview Information About Said On-Line Incentive Program
              from Said Internet Webpage" ...................................................................... 18

        F.    "On-Line Link to an Award Computer" ........................................................... 18

IV.     Conclusion ..................................................................................................... 19

## TABLE OF AUTHORITIES

### Cases

*Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004) ........................................ 12

*Cephalon, Inc. v. Barr Laboratories, Inc.*, 389 F.Supp. 2d 602 (D. Del. 2005)............................ 4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) .... 3

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ...................................................... 3

*On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331 (Fed. Cir. 2006) .............. 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 3

*Salazar v. P&G Co.*, 414 F.3d 1342 (Fed. Cir. 2005) .................................................................. 9

## OPENING CLAIM CONSTRUCTION BRIEF OF MARITZ INC.

Defendant Maritz Inc. ("Maritz") submits the following brief on claim construction.[1]

### I.    INTRODUCTION

Plaintiff Affinion Loyalty Group, Inc. ("Affinion") now accuses Maritz only of infringing certain claims of U.S. Patent No. 6,009,412 ("the '412 Patent").[2] Plaintiff asserts infringement of Claims 10 through 17, 27 through 34, and 36.

The title of the '412 Patent,[3] like the specification that follows it, is significant: "FULLY INTEGRATED ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM." Essentially, the invention concerns a system and method for implementing an on-line frequency program that immediately awards points to users for on-line product purchases. Those points are tracked in a "frequency database" and can be redeemed on-line, immediately upon issuance, for an award from an award catalog.

When the '870 Patent (of which the '412 Patent is a continuation) was allowed, the examiner indicated that it was the specific combination of an on-line product catalog, frequency

---

[1] A summary of Maritz's proposed claim construction is attached as Exhibit 1.

[2] Plaintiff filed suit alleging infringement of U.S. Patent Nos. 5,774,870 ("the '870 Patent") and 6,578,012 ('the '012 Patent'), as well as the '412 Patent (collectively, "the Storey Patents"). After considerable litigation expense, and on the eve of expert reports, Affinion announced its intention to drop its allegations as to the '870 and '012 Patents, and to modify the identification of claims in the '412 Patent it deems to be at issue. This took the form of a motion for leave to amend the complaint and dismiss counterclaims (Docket No. 113).

By agreement, the parties address only the newly-identified '412 Patent claims in this briefing. This is without prejudice to Maritz's opposition (Docket No. 115) to Affinion's motion to amend and dismiss.

[3] U.S. Patent No. 6,009,412 is attached as Exhibit 2.

1

database, and award catalog that was deemed patentable over the prior art, because e-commerce systems and incentive programs were both known in the art.[4]

> And as acknowledged by the inventor himself in deposition testimony,

> [I]n one session, somebody could sit down and purchase a product, pay for it, receive points, and, at the same time, get their new balance. They could redeem the points for an award, order the award, review the award, and change any aspect of their profile within the program.

> That is what I mean when I talk about an on-line interactive fully integrated award program.

Further:

> For it to be a fully integrated web-based or on-line interactive system, the capability needs to exist to allow the product or service purchaser to interact directly with any aspect of the home page, whether it is a program home page or a product home page, in real-time.

Thomas Storey Deposition, *Netcentives, Inc. v. 24k.com, et al.* (Exhibit 3), pp. 210, 213.

Despite the teachings of the specification, the prosecution history, and the inventor's own characterizations of the invention, Affinion appears ready to argue that the asserted claims do not require either (1) on-line purchasing activity or (2) immediacy in issuing award points based on those purchases.[5] To do so, Affinion must ignore or misconstrue the limitation "implementing an on-line incentive program." The only such program reflected in the '412 Patent, and the only means of implementing same, involve a fully-integrated frequency program, with on-line

---

[4] *See* discussion at pp. 8-10, below.

[5] Now that it has taken discovery and recognizes the fruitlessness of its infringement claims, Affinion has no choice but to make this argument because Maritz's accused VAULT and AwardHQ programs do not issue award points for on-line purchases through a product catalog. There are several other differences between the Storey Patents and the accused programs, which will be the subject of summary judgment briefing in coming weeks.

purchasing activity, accompanied by immediate receipt of award points, and the ability to immediately redeem such points for a reward on-line.

The Federal Circuit has made plain that the claims must be construed to implement the invention reflected in the specification. Affinion's strained construction efforts, designed to reach Maritz's distinct technology, run afoul of this basic rule. The Court should adopt Maritz's proposed interpretations, which are consistent with the content of the '412 Patent itself and the underlying prosecution history.

## II.    LAW REGARDING CLAIM CONSTRUCTION

The "bedrock principle" of claim construction is "that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is a matter of law for the court to determine. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91 (1996).

Claim terms are generally given their ordinary and customary meaning as they would be understood by one of ordinary skill in the art at the time of the invention, *i.e.*, as of the effective filing date of the patent application. *Phillips*, 415 F.3d at 1313. The claims do not stand alone, but are part of a "fully integrated written instrument." *Id*. at 1315. Thus, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313. "[T]he court must determine how such a person would understand the claim in the context of the particular technology and the description in the specification, with due reference to the prosecution history." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442

F.3d 1331, 1337 (Fed. Cir. 2006). Significantly, "the claims cannot be of broader scope than the invention that is set forth in the specification." *Id.* at 1340.[6]

The Federal Circuit in *Phillips* "stressed the dominance of the specification in understanding the scope and defining the limits of the terms used in the claim." *On Demand*, 442 F.3d at 1337-38. Thus, when engaging in the claim construction analysis, it must be remembered that the specification "is the single best guide to the meaning of a disputed term" and is usually "dispositive" of any such disputes. *Phillips*, 415 F.3d at 1315; *Cephalon, Inc. v. Barr Labs., Inc.*, 389 F. Supp. 2d 602, 604 (D. Del. 2005). In concluding that a court may "rely heavily" on the specification when construing patent claims, the *Phillips* court relied on the rules of the Patent Office. *Phillips*, 415 F.3d at 1316-17. These rules require the claims to "conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." *Id.* (*quoting* 37 C.F.R. § 1.75(d)(1)).

Other sources "available to the public" may also be considered, such as the prosecution history, and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314. Courts may also "rely on dictionary definitions when construing claim terms," because "dictionaries . . . are often useful to assist in understanding the commonly understood meaning of words." *Id.* at 1322.

Once these sources are examined—particularly the specification of the '412 Patent—it is apparent that the claims asserted in this case require, *inter alia*, *on-line product purchases* and

---

[6] Generally, the scope and outer boundary of claims are set by the patentee's description of the invention in the specification. *Phillips*, 415 F.3d at 1316-17.

the *immediate issuance of award points that are immediately redeemable* on-line once a

purchase is completed.

### III.    ARGUMENT

Claim 10 of the '412 Patent provides:

A method for redeeming incentive awards in an **on-line incentive program**, said method

comprising the steps of:

> **implementing** an **on-line incentive program** that **issues award points to users,
> wherein said award points are redeemable by said user for an award**;
>
> **implementing an Internet webpage accessible, via a computer system, to at least one
> user of said on-line incentive program for on-line interactive communications
> between said  user and said Internet webpage;**
>
> offering, on said Internet webpage, at least one redeemable award available to said user
> for exchange of said award points; and
>
> permitting said user to initiate a process to receive said at least one redeemable award for
> exchange of said award points issued to said user through said **on-line incentive
> program.**

Col. 10, ll. 13 - 29.[7]  Independent Claims 27 and 36 are directed to a "computer readable

medium" and a "computer system ... comprising software" for implementing the steps of Claim

10.  The remaining claims asserted in this matter are dependent on Claims 10 or 27.

Accordingly, the limitations of Claim 10 are found in each of the asserted claims.

This brief also addresses certain limitations in two dependent claims.  Claims 13 and 30

require an "on-line link to an award computer," and Claims 16 and 33 add the limitation

"permitting a user to preview information about said on-line incentive program from said

Internet webpage."

---

[7]  The language in bold is addressed in this brief.  Additional language from dependent claims is
discussed below.  Maritz reserves the right to address other claim language, as appropriate, in the second
round of claim construction briefing, presently due May 24, 2006.

## A.    "ON-LINE INCENTIVE PROGRAM"

"On-line incentive program," as properly interpreted, means a frequency program that awards points to users for on-line product purchases.  As discussed below in Section D, "on-line" means "connected to a computer network that allows for the real-time exchange of information." A "frequency program,"[8] as that term is used in the field of the invention, is a program that awards points to "users" for making purchases.  In the context of the '412 Patent, those purchases must be made on-line.

*Phillips* teaches that the Court should start the process of claim interpretation by inquiring how the patentee used the claim term in the claims and specification.  The Federal Circuit has recently reiterated that claim terms must be construed to "implement the invention described in the specification." *On Demand*, 442 F. 3d at 1344.  Accordingly, "the claims cannot be of broader scope than the invention that is set forth in the specification." *Id.* at 1340.

### 1.    The Claim Language Mandates This Construction.

The language of Claim 10 requires that the "on-line incentive program" "issue award points"[9] to "users."  Thus, the "user" is awarded points for "using" the on-line incentive program.  The specification makes clear that the only "use" which qualifies for the award of points is the on-line purchase of products.

Claim 36 of the '412 Patent also comes to bear on the meaning of "on-line incentive program."  Claim 36 provides for "a computer system for implementing an on-line incentive program, said computer system comprising software for offering, on an Internet webpage, at least one redeemable award available to said user for exchange of at least one award point . . .

---

[8] Frequency programs may also be referred to as "loyalty programs."

[9] The limitation "issues award points to users" is defined below.  *See* pp. 11-14.

said award points being issued from said on-line incentive program." Col. 14, ll. 58-63.[10]  The

software for implementing the on-line incentive program must issue points to the users.  Thus,

there is necessarily some user activity that the software recognizes as qualifying for the issuance

of points.  As the specification shows, the only activity that qualifies for the issuance of points is

an on-line product purchase through the frequency program.

### 2.    The Only "On-Line Incentive Program" Reflected in the Specification  is a Frequency Program that Awards Points for On-Line Product Purchases

The '412 Patent's disclosure makes clear that the claimed on-line incentive program is a

frequency program, *i.e.*, a program that awards a user for on-line patronage.[11]  The title of the

'412 Patent is "Fully Integrated On-Line Interactive *Frequency* and Award Redemption

Program" (emphasis added).  In the Background of the Invention, the applicant states that "[t]he

present invention relates to [a] *frequency* and award program.  More particularly, the present

invention relates to an on-line, interactive *frequency* and award redemption program which is

fully integrated."  Col. 1, ll. 10-15 (emphasis added).  The **only prior art discussed** in the

Description of Related Art section of the specification are "frequency programs."  Col. 1, ll. 16 -

59 (discussing "conventional incentive programs" such as frequent flyer programs and credit

card programs that issue points, *i.e.*,  programs where participants are rewarded for repetitive

purchasing activity).

---

[10] Claim 27 also claims software for "implementing an on-line incentive program that issues award points to users." Col. 12, ll. 58-62.

[11] Affinion apparently will contend – contrary to the intrinsic evidence discussed in this brief – that the term "on-line incentive program" should be expanded to include not only "frequency programs," but also programs such as "employee motivational programs," that is, programs that award employees for reaching predetermined goals, such as sales.  This is further indication that plaintiff "leapt before it looked" in filing suit, since many of the accused programs are not frequency programs.  Employee motivational programs do not involve participants making on-line purchases, or, for that matter, any purchases at all.  An interpretation that encompasses such programs ignores the fact that the specification of the '412 patent discloses no activity that qualifies for the award of points other than the purchase of products from an on-line product catalog.

The Summary of the Invention also makes plain the '412 Patent is directed to a frequency program:

> The disclosed invention is also advantageous in that it provides an on-line access to **product** information, **product purchases** using an on-line electronic order form, award catalogs, and award redemption using an on-line electronic redemption forms [*sic*]. Col. 1, l. 65 - col. 2, l. 2;
>
> Another advantage of the subject invention is that it awards bonus points immediately upon **purchase of a merchandise** [*sic*]. Col. 2, ll. 3-5;
>
> Upon gaining of an access, the customer is able to browse through a **merchandize [*sic*] catalog** ... The program also enables the customer to **order merchandize [*sic*] on-line**. Col. 2, ll. 23-30. (Emphasis supplied).

In fact, the only activity associated with the "incentive program" disclosed in the specification is the on-line purchase of products or gift certificates through an Internet web page. *See* Col. 4, l. 1 - col. 8, l. 7; Figs. 1, 2, 3, 5. The program disclosed in the specification also repeatedly refers to a "*frequency* database" (emphasis supplied), which stores customer information, including the number of points that have been awarded to the customer based on the purchases through the program. *See, e.g.*, Col. 5, l. 44 - 58; Figs 2, 3, and 4.

### 3.    The Prosecution History Provides Further Support for this Construction.

The prosecution history of '412 Patent also indicates that the patented program is a frequency program. In rejecting some of the claims for double patenting, the examiner of the '412 Patent stated "[c]laim 40 (which became Claim 10) is similar to patented [c]laim 17 [of the '870 Patent]." '412 May 18, 1999 Office Action, p. 3 (attached as Exhibit 4). Claim 17 covers "an on-line shopping and frequency award program," that allows for access to an on-line product catalog, on-line purchasing, awarding and tracking points based on those purchases, access to an on-line award catalog, and on-line redemption of points.[12] The examiner found that claim 10 was

_____

[12] Claim 17 of the '870 Patent provides: A method for providing an **on-line shopping and frequency award program** comprising the steps of.

8

nothing more than an "obvious variation" of claim 17. *Id*. at p. 2. The only difference the examiner found between these claims was "that patented claim 17 does not specifically show [an] Internet webpage." *Id*. at p. 3.[13]

Thus, the examiner viewed present Claim 10 as being limited to a frequency program that awarded points to users for making on-line purchases. The examiner's understanding of claim 10 is relevant to claim interpretation. *See Salazar v. P&G Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) (stating that statements by the examiner during prosecution "may be evidence of how one of skill in the art understood the term at the time the application was filed").

Other examiners at the United States Patent Office shared this view of the nature of the invention disclosed and claimed in the Storey Patents. In allowing the claims of the '870 Patent, of which the '412 Patent is a continuation, and with which it shares a common specification, the examiner made clear that it was the ***specific combination of an on-line product catalog, frequency database, and award catalog that was deemed patentable over the prior art***:

> maintaining **a frequency database** for storing award points in award accounts corresponding to subscribed users;
> providing an **on-line access to a product catalog**;
> providing an **on-line purchase order form**, said on-line purchase order form including at least a register for a credit account number of a credit card and a register for a product identifier;
> allowing a user to electronically send entries for said **purchase order form**;
> establishing an on-line link to a credit computer and verifying availability of funds for said user;
> establishing **an on-line link to a computer of a seller of a product** identified in said product identifier and electronically communicating said **purchase order form** together with said entries to said seller;
> calculating award points by a predetermined formula taking into account a price of **said product**, and updating an award account of said user in said frequency database;
> providing an on-line access to an award catalog having a plurality of files corresponding to various award articles;
> providing an on-line award redeem form;
> receiving electronic entries corresponding to queries in said award redeem form to allow said user to electronically redeem award points towards a chosen award from said award catalog; and,
> subtracting from said award account of said user a number of points corresponding to the award points of said chosen award. (Emphasis supplied).

---

[13] To circumvent the examiner's double patenting rejection, the patentee filed a terminal disclaimer. Ex. 5. Upon receipt, the examiner allowed the claims of the application, which issued as the '412 Patent.

It is the specific embodiment of the frequency database, coupled with a product catalog, from which purchases of goods may be made, and an awards catalog, from which may[ ]be redeemed, that renders the invention distinct over the prior art. Several references have been cited giving specific embodiments of electronic commerce systems and incentive award programs, however, none suggest or disclose combining the features of both to create the invention of the instant application. For this reason the claim is allowed.

'870 Patent Notice of Allowability, p. 2 (attached as Exhibit 6).[14]

### 4.     The Extrinsic Evidence Also Supports this Construction.

Netcentives, the original owner of the '412 patent, clearly stated that an "on-line incentive program" is one in which users earn points for on-line purchases. On its website, www.netcentives.com, Netcentives stated:

> Netcentives® holds two patents on its "shop, reward, track, and redeem" process. U.S. Patent Number 5,774,870, issued in June 1998, and U.S. Patent No. 6,009,412, issued in December 1999, cover the business methods, systems, and software developed by Netcentives, including those related to our "on-line interactive frequency and award redemption programs." **An on-line frequency and award redemption program is one in which consumers earn points for making on-line purchases, store and track points via computer, and then redeem points for various rewards**, including, but not limited to, frequent flyer miles . . .
>
> Netcentives' SecureReward Architecture™ - the core of our loyalty programs - is built on these patents. This sophisticated platform enables Netcentives to provide major corporations with the end-to-end creation, delivery and management of **ecommerce loyalty programs**.

Exhibit 7 (November 13, 2001 screen shot, MAR115744-48) (emphasis added). *See also* Storey Depo, Exhibit 3, at pp. 210, 213.

---

[14] The prosecution history of U.S. Patent No. 6,578,012 ("the '012 Patent"), which is a continuation of the '412 patent, also illustrates this point. In discussing two pieces of art, the examiner of the '012 Patent stated: "Quinn teaches an on-line award catalog…" and "[t]he closest non-patent prior art is Quinn, which fails to teach or suggest an on-line product catalog. That is taught by Peterson, but the combination is not suggested by the prior art." '012 Patent Notice of Allowance, p. 2 (attached as Exhibit 8). Thus, according to the examiner of the '012 patent, the only reason the claims were allowed was the specific combination of an awards catalog with a product catalog and frequency database.

It is clear from the claim language, specification, prosecution history, and extrinsic evidence that the "on-line incentive program" referenced in the '412 Patent claims is a frequency program that awards points to users for on-line product purchases.

**B.      "ISSUES AWARD POINTS TO USERS, WHEREIN SAID AWARD POINTS ARE REDEEMABLE BY SAID USER FOR AN AWARD"**

     **1.      "Issu[ing] Award Points to Users" Requires Determining Whether the User is a Registered User, Calculating the Award Points According to a Predetermined Formula, and Adding the Calculated Points to the User's Award Account**

The specification makes plain that the term "issues award points to users" requires that the "on-line incentive program:" (1) determine whether the behavior qualifying for award points is by an enrolled user; (2) calculate the award points to be issued according to a preprogrammed formula; and (3) add the calculated points to the enrolled user's account.

The specification describes the process for "issuing points to users" as requiring each of the above discussed features:

> As shown in FIG. 2, while the communication link is established to the product company, the program also proceeds to the FREQUENCY DATABASE, **170**. In FREQUENCY DATABASE **170** the user's information is checked against the database of enrolled users. If it is determined that the user is an enrolled user, **180E**, the program proceeds to the step to calculate the award points according to a preprogrammed formula. Thereafter, the program proceeds to add the points to the enrolled user's account.

Col. 5, ll. 44-53. If the user is not an enrolled user, the system is designed to allow the user to enroll in the program on-line. *See* Col. 6, ll. 13-25, Fig. 5. This is the only disclosure of the process for "issuing points" in the specification.

     **2.      Points Must Be Immediately Available for Redemption Upon Completion of a Qualifying On-Line Purchase From the Product Catalog**

The claims of the '412 Patent include the language, ". . .issues points to users, wherein said award points are redeemable by said user for an award." Properly construed, this language

requires that award points be issued to the user's account immediately upon completion of a qualifying on-line purchase and those points must be available for immediate redemption. When the scope of the invention "is clearly stated in the specification, and is described as the advantage and distinction of the invention, it is not necessary to disavow explicitly a different scope." *On Demand*, 442 F.3d at 1340. Thus, "[w]here the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack the same feature, this operates as a clear disavowal of these other products." *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004). The applicant did exactly that with respect to this limitation.

In *On Demand*, the Federal Circuit repeatedly emphasized and relied upon the specification to construe the claims at issue there. One of the claim terms was "customer." *On Demand*, 442 F.3d at 1339-40. The District Court interpreted this term to mean anyone "who buys goods or services," and that it was not limited to an individual consumer or retail customer. *Id*. at 1339. The Federal Circuit reversed, concluding that the specification made clear that the claim was in fact limited to such an individual. *Id*. at 1340.

In reaching this decision, the Federal Circuit found that the applicant in that case had "repeatedly reinforced its usage of the term 'customer' as the retail consumer." *Id*. The Federal Circuit also found that the specification "distinguished 'general purpose machines ... not specifically designed to be consumer operated. . . .'" *Id*. Because the applicant had touted the consumer nature of the invention while distinguishing that feature of the invention from prior art machines, the claim term was properly limited to an individual consumer or retail customer. *Id*.

In the present case, the applicant repeatedly described the immediacy of point issuance and availability for redemption as an advantage of the invention:

Another advantage of the subject invention is that it awards bonus points **immediately** upon purchase of a [*sic*] merchandise.  Col. 2, ll. 3-5;

The present invention is further advantageous in that it provides bonus points which are **immediately made available for redemption**.  Col. 2, ll. 6-9;

Another advantage of the present invention is that it allows the customer to **select a prize immediately upon the award of the bonus points.**  Col. 2, ll. 10-12.

A further advantage of the present invention is that it allows a **customer to order a prize and redeem the awarded points towards the ordered prize immediately upon the award of bonus points**, thus enhancing the **immediacy effect** of the reward program.  Col. 2, ll.  13-17.

Accordingly, the selection of available prizes is expanded by the merchants who join the program, and the bonus award is made **instantly redeemable**.  Col. 2, ll. 30-32.  (Emphasis added).

Further, the applicant specifically noted the absence of such immediacy in distinguishing the prior art:

According to another type of frequency and award program, a credit instrument is provided and credit points are accumulated instead of the millage [*sic*] points ...  However, while such programs may enhance the selection of prizes, there is still the problem of obtaining the credit instrument for redeeming the awarded points.  In addition, the enrolee [*sic*] **must *allow for processing time before the bonus points are recorded and made available as redeemable credit.  Thus, the immediacy effect of the reward is lacking in these conventional incentive programs*.**

Col. 1, l. 41 – 59.  (Emphasis added).[15]

The applicant repeatedly described the immediate issuance and redeemability of award points as an advantage and distinction of the invention while criticizing other products that lacked the same immediacy.  Accordingly, the claim term "issues points to users, wherein said award points are redeemable by said user for an award" is necessarily construed as requiring that

---

[15] Programs operated by Maritz receive transactional information or point calculations from its clients through periodic batch files.  Points earned by participants are not available to be redeemed until the batch files are sent and the accounts are updated.  Thus, as the evidence on summary judgment will show, Maritz's programs require "processing time" of the sort the applicant considered to be a disadvantage of prior art systems.

the award points be immediately issued upon completion of a qualifying on-line transaction, and that those points be immediately available for redemption. *See On Demand*, 442 F.3d at 1340.

This construction is also supported by the remainder of the specification:

- The program proceeds to calculate and add the award points to the user's account "while the communication link is established to the product company." Col. 5, ll. 44-53.

- This "communication link" is established to perform a "CREDIT CHECK routine" after the user has decided to purchase an item. Col. 4, ll. 60 - 65.

- Points are awarded to an enrolled user's account immediately after the "CREDIT CHECK" is performed and approved, and, as stated above, while the "communication link" is still established. Col. 5, ll. 44-53.

- After the points are calculated and added to the user's account, the program "return[s] to ORDER FORM **130**, to step Ai . . ., **to PROGRAM HOMEPAGE to view the awards catalog** . . . or proceed[s] to SELECTION MENU." Col. 5, ll. 54-58. (Emphasis added).

In short, the specification makes clear that, once the purchase is approved by the CREDIT CHECK, the points are immediately awarded and the user can proceed directly to the award catalog to redeem them.

The inventor's own pre-application notes reflect his perception of the invention as one where points are awarded and redeemable immediately. In distinguishing his invention from U.S. Patent No. 4,750,119, issued to Cohen, Mr. Storey specifically noted that Cohen used a "batch" process where "orders are input over [a] short period of time" whereas his invention operated in "real-time" and awarded points "per transaction." Exhibit 9, TRL-MTZ 14286-319 at 14310-12. Mr. Storey also distinguished his invention from the Cohen Patent because it did not provide for "an immediate accumulation of award points for redemption." *Id.*

The referenced term must be interpreted to require the immediate issuance of points upon completion of a qualifying on-line purchase, which can be redeemed immediately for an award.

**C.     "IMPLEMENTING AN ON-LINE INCENTIVE PROGRAM THAT ISSUES POINTS TO USERS"**

The asserted claims require that the method, system, or computer readable medium "implement" the on-line incentive program that issues points to users, wherein said points are redeemable by said user for an award.  *See, e.g.*, Claims 10, 27, and 36.[16]

The word "implementing" does not appear in the specification of the '412 Patent, but the verb "implement" is found.  As used, each means to provide the necessary plan or procedure for carrying out or putting into effect a given action.  *See, e.g.*, Col. 3, ll. 29 - 32 ("In the preferred embodiment, the capability to view information regarding the various products is enhanced by providing the user with various 'browsing' options, generally **implemented** in the form of icons"); col. 5, l. 62 - col. 6, l. 13 ("For example, during particular periods certain awards or products may be designated as under a 'special program' . . . In order to **implement** the 'special program,' the information regarding the award/product needs to be read. The number of points required to redeem the particular qualifying award is then fetched. Similarly, the user's account is accessed and the number of points in the user account is fetched. The number of points read from the user's account is subtracted from the number of points read from the award information and the result is displayed as the number of points the user is short of to redeem the particular qualified award. An exemplary flow chart is provided in FIG. 6").

This definition is also consistent with that found in Webster's College Dictionary: "implement: 4. to fulfill; carry out . . . 5. to put into effect according to a definite plan or procedure." *See* Exhibit 10.  Thus, to "implement" an "on-line incentive program that issues points to users, wherein said points are redeemable by said user for an award," one must provide the plan or procedure to carry out a frequency program that immediately issues points to users

---

[16] The remaining asserted claims depend from Claims 10 or 27, and hence also contain this limitation.

after completing a qualifying on-line transaction, wherein said points are immediately redeemable for an award.[17]  No other construction ensures that the claims are not given a broader scope than the invention set forth in the specification, as required by *Phillips* and *On Demand*. *See* 442 F.3d at 1340, 1343.

**D.     "IMPLEMENTING AN INTERNET WEBPAGE ACCESSIBLE . . . TO AT LEAST ONE USER OF SAID ON-LINE INCENTIVE PROGRAM FOR ON-LINE INTERACTIVE COMMUNICATIONS BETWEEN SAID USER AND SAID INTERNET WEBPAGE"**

The asserted claims require that the method, system, or computer readable medium "implement" an Internet webpage.  These claims also require "on-line interactive communications."  Thus, the claimed webpage must be accessible to a user of the on-line incentive program and permit the user to interactively communicate with the on-line incentive program.

The term "on-line" appears throughout the claims of the '412 Patent, as well as the '870 and '012 Patents.   Properly interpreted, "on-line" means "connected to a computer network that allows for the real-time exchange of information."  This interpretation is consistent with the specification, which refers to, *inter alia*, "on-line" access to product information, "on-line order forms," "on-line electronic redemption forms," and "on-line providers" with access to the Internet, such as "AOL, CompuServe, etc."  *See, e.g.*, Col. 1, l. 65 - Col. 2, l. 2; Col. 2, l. 62-64; Col. 4, l. 66 - Col. 5, l. 8; Fig. 1.[18]  All of the activities that occur on-line are performed in real-time.

---

[17] If this claim element were *not* construed to include the referenced acts, the claim language would effectively be left reciting simply a step for achieving the function of "implementing an on-line incentive program" without including specific acts to accomplish this function.  In that case, the rules of 35 U.S.C. § 112, ¶ 6 could apply and, under the statutory analysis, the Court would then need to determine which "corresponding acts" are required by this claim element.  In the event 35 U.S.C. § 112, ¶ 6 is deemed applicable, Maritz reserves the right to supplement its briefing on this point.

[18] Numerous technical dictionaries support this definition of "on-line" as well:

"Interactive communications," as used in this claim element, means the immediate two-way communication between the on-line incentive program and a user via an Internet webpage. *See* Random House Webster's College Dictionary, 1995, definition of "interactive," p. 701 (attached as Exhibit 14). The interactive nature of the on-line incentive program was touted as one of the advantages of the invention. Col. 1, ll. 60-64 ("the present invention is advantageous in that it provides an on-line, *interactive* incentive program which is fully integrated") (emphasis added).

The specification provides numerous examples of the interactive communications between the on-line incentive program and the users that are enabled by the claimed invention.

- A user can access product information on-line and purchase these products. *See* Col. 1, ll. 65-67; Col. 3, l. 13-Col. 5, l. 43; Figure 2.

- In response to a user's purchase, the on-line incentive program immediately awards points to users. *See* Col. 2, ll. 3-5; Col. 5, ll. 44-58, Figure 2.

- A user can access award information on-line and redeem their earned points for prizes. *See* Col. 1, l. 67-Col. 2, l. 2; Col. 2, ll. 10-12; Col. 8, l. 8-Col. 10, l. 12; Figure 4.

- A user can access different parts of the on-line incentive program by selecting different links from the selection menu 40 or PROGRAM HOMEPAGE 300. Col. 2, l. 65-Col. 3, l. 4; Figure 1; Col. 7, ll. 30-39; Figure 3.

These examples show that the claim limitation, "implementing an Internet webpage accessible...to at least one user of said on-line incentive program for on-line interactive

---

- The "Internet Business Book" (1994): "any activity carried out while your computer is connected to another computer or network..." (attached as Exhibit 11);

- Microsoft Press, Computer Dictionary, 2nd Ed., (1994): "Activated and ready for operation; capable or communicating with or being controlled by a computer..." (attached as Exhibit 12); and

- Microsoft Press, Computer Dictionary, 3rd Ed. (1997): "In reference to one or more computers, connected to a network; In reference to a user, currently connected to the Internet, an on-line service, or a BBS or using a modem to connect to another modem") (attached as Exhibit 13).

communications between said user and said Internet webpage," requires immediate two-way communication between the on-line incentive program and a user via the Internet.

### E.  "PERMITTING A USER TO PREVIEW INFORMATION ABOUT SAID ON-LINE INCENTIVE PROGRAM FROM SAID INTERNET WEBPAGE"

Dependent Claims 16 and 33 add the step of "permitting a user to preview information about said on-line incentive program from said Internet webpage" to independent Claims 10 and 27, respectively.  This limitation requires a webpage that contains information about the "on-line incentive program;" this feature corresponds to the "ABOUT AWARD PROGRAM **320**" disclosed in the specification.  *See* Figure 3; Col. 7, ll. 40-44.

### F.  "ON-LINE LINK TO AN AWARD COMPUTER"

Dependent Claims 13 and 30 of the '412 Patent require, *inter alia*, "establishing an on-line link to an award computer and sending, via said on-line link, entries of said on-line redeeming form to said award computer."  An "on-line link to an award computer" is properly interpreted to mean "a real-time link to a computer operated by a fulfillment house or product manufacturer."

As discussed above, "on-line" means "connected to a computer network that allows for the real-time exchange of information."  Accordingly, the "link" to the "award computer" must be a real-time link.

The term "award computer" appears but once in the specification.  After the program subtracts the redeemed points from the user's award account in the frequency database, "[a] link is then established **to the fulfillment house or directly to the product manufacturer** and an award order is communicated.  Thereafter, the program returns to the PROGRAM HOMEPAGE."  Col. 10, ll. 7-12 (emphasis added).  *See also* Fig. 4 (**530**).  Because the program returns the user to the PROGRAM HOMEPAGE immediately after the award order is

18

communicated to the fulfillment house or product manufacturer, there is no delay between communicating the order and returning the user to the PROGRAM HOMEPAGE. Therefore, it is again clear that the link to the fulfillment house or product manufacturer is a real-time link.

### IV.    CONCLUSION

Maritz believes that its proposed interpretations are consistent with controlling Federal Circuit law on claim construction. Affinion's efforts to change the invention reflected in the patent document and prosecution history, in an attempt to reach Maritz's different technology, should not be countenanced. Maritz requests the Court to adopt its interpretations, in the form proposed.

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ

Dated: May 9, 2006                   By: _____
Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Attorneys for Maritz Inc.

## CERTIFICATE OF SERVICE

I, hereby certify that on **May 9, 2006**, I electronically filed **Opening Claim Construction Brief of Maritz Inc.** with the Court Clerk using CM/ECF which will send notification of such filing(s) to Jack B. Blumenfeld and Maryellen Noreika.

I hereby further certify that on May 9, 2006, I have also served this document on the attorneys of record at the following addresses as indicated:

**Via Hand Delivery**
Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-11347

**Via Federal Express**
Steven Lieberman
Sharon L. Davis
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

*/s/ Patricia Smink Rogowski*
Patricia Smink Rogowski  (#2632)