# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| AFFINION LOYALTY GROUP, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| MARITZ, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

C.A. No. 04-360-JJF

**REDACTED PUBLIC VERSION**

## OPENING BRIEF OF PLAINTIFF AFFINION LOYALTY GROUP, INC. CONCERNING CLAIM CONSTRUCTION

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

*Of Counsel:*
Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 783-6040

Original Filed: May 9, 2006
Redacted Public Version Filed: May 15, 2006

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Nature and Stage of the Proceedings ........................................................................1

Summary of the Argument .......................................................................................1

Statement of Facts ...................................................................................................6

Argument ...............................................................................................................6

I.     Legal Standards Governing Claim Construction ...............................................6

II.    Construction of the Terms in Independent Claims 10, 27 and 36
       of the '412 Patent ........................................................................................8

                A.     "On-Line Incentive Program .............................................................9

                       1.     "On-line" ...........................................................................9

                       2.     "Incentive Program: ........................................................12

                       3..    "On-Line Incentive Program" .........................................15

                B.     On-Line Incentive Program "That Issues Award Points to Users" ............19

                C.     "On-Line Interactive Communications" ................................................21

                D.     "Redeemable Award" ......................................................................22

                E.     "Users" ..........................................................................................23

                F.     Remaining Terms of Claims 10, 27 and 36 ..........................................24

III.   Construction of the Terms in Asserted Dependent Claims......................................24

       A.     Claims 11 and 28 ....................................................................................25

       B.     Claims 12 and 29 ....................................................................................25

                1.     Claim 12 Properly Depends from Claim 11, Not Claim 10......................26

                2.     "Awards Catalog" or "Catalog of Awards" ................................................28

       C.     Claims 13 and 30 ....................................................................................28

|     | 1. | "On-Line Link to an Award Computer | 29 |
|     | 2. | "On-Line Redeeming Form" | 29 |
| D.  | Claims 14 and 31 | | 29 |
| E.  | Claims 15 and 32 | | 30 |
| F.  | Claims 16 and 33 | | 30 |
| G.  | Claims 17 and 34 | | 30 |
| Conclusion | | | 31 |

# TABLE OF AUTHORITIES

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003)...................................7

*Advanced Med. Optics, Inc. v. Alcon, Inc.*, 361 F. Supp.2d 370 (D. Del. 2005) ..................26

*Cephalon, Inc. v. Barr Labs., Inc.*, 389 F.Supp.2d 602 (D. Del. 2005) ...........................8

*Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ...............................26, 27

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ......................................6, 8

*N. Telecom Ltd. v. Samsung Electrics Co.*, 215 F.3d 1281 (Fed. Cir. 2000) ..................................8

*Novo Industrial, L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003)..............................26

*Nystrom v. Trex Co.*, 424 F.3d 1136 (Fed. Cir. 2005) ......................................................8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)........................................................7, 8, 21

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, No. 04-1371,
2006 U.S.Dist. LEXIS 14291 (D. Del. March 31, 2006)................................................................8

*SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) ........................19

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) ...........................................8

*Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325 (Fed. Cir. 2004)....................................18

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...........................................7

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Affinion Loyalty Group, Inc. ("Affinion"), submits this Opening Brief concerning claim construction in preparation for the <u>Markman</u> hearing scheduled in this matter for June 7, 2006. This matter is scheduled for a pretrial conference on September 14, 2006, and trial is set to commence on October 23, 2006.

The patent at issue in this patent infringement case is U.S. Patent No. 6,009,412 (the "'412 patent") (Exh. B), which generally relates to the operation of incentive programs through Internet webpages.[1] The '412 patent is a continuation of U.S. Patent No. 5,774,870 (the "'870 patent") (Exh. E), and claims priority to a patent application filed on December 14, 1995. Affinion asserts in this case that defendant Maritz, Inc. ("Maritz") infringes independent Claims 10, 27 and 36 and dependent Claims 11-17, and 28-34 of the '412 patent by using two of its computer systems to implement incentive programs for its corporate clients that permit participants in the program to redeem their award points through the Internet.[2]

## SUMMARY OF ARGUMENT

Affinion and Maritz are both in the business of developing and operating systems for corporate clients that implement the clients' programs for rewarding customers, employees or others for certain behaviors. These programs generally award points to participants for the desired behavior and then provide awards to the participants in exchange for those points. Since the late 1990s, a key component of both Affinion's and Maritz's programs has been the operation

---

[1]     Affinion's initial complaint asserted infringement of three related patents. The narrowing of this case to the '412 patent for purposes of trial is the subject of Affinion's pending Motion for Leave to Amend.

[2]     For the Court's convenience, the text of each of the asserted claims is set forth at Exhibit A in the accompanying Appendix filed herewith. The '412 patent is Exhibit B in that Appendix.

of Internet websites that permit the program participant to interact with the program through the Internet by checking point balances, reviewing available awards and choosing the award he wishes to receive through the program website. See, e.g., Sigman Dep. at 25-29.

The '412 patent relates to "frequency and award redemption programs" and in particular to "on-line, interactive frequency and award redemption programs." See Exh. B at Col. 1, lines 11-15. The central feature of the invention of the '412 patent is the use of the technology of Internet access and homepages to permit a participant in a frequency and award redemption program to interact directly with the program. See, e.g., id. at Col. 1, lines 62-64 ("In view of the above [the problems in the prior art], the present invention is advantageous in that it provides an on-line, interactive incentive program which is fully integrated"); Col. 2, lines 21-24 ("The above and other advantages are provided by the disclosed invention which includes provisions for access over the Internet").

The inventor of the '412 patent, Thomas Storey, identified two shortcomings of traditional incentives programs that could be addressed by applying Internet technology – one having to do with awarding points for on-line purchases, the other having to do with the on-line redemption using those points. Specifically, one shortcoming of traditional incentive programs identified by Mr. Storey in the '412 patent specification was the delay in the process of receiving award points after taking the action (such as the purchase of a product) being incentivized. See Exh. B at Col. 1, lines 22-25, 54-56. The other shortcoming of traditional incentive programs identified in the specification is the delay and inconvenience that occurred in those programs because the user had to go through the process of obtaining a physical certificate or credit

2

instrument so that he could <u>redeem</u> his award points for an award. <u>See</u> <u>id</u>. at Col. 1, lines 29-33, 38-40 ("another disadvantage is that the customer generally needs to plan ahead in sufficient time to order and receive the award certificate"), 52-55 ("there is still the problem of obtaining the credit instrument for redeeming the awarded points").

The asserted claims of the '412 patent (independent claims 10, 27, and 36 and claims depending therefrom) are the inventor's solution to the problem of the slowness in the award redemption process that required a program participant to plan for the time necessary to request a certificate or credit instrument and to receive it. By using Internet web pages to permit on-line <u>redemption</u> of award points in the on-line incentive program, Mr. Storey's invention eliminates that identified deficiency in the prior art. Mr. Storey's views have been validated by the fact that the incentives industry, as even Maritz's witnesses have admitted, now considers the use of the Internet as a mechanism for award redemption to be a standard part of an incentive program. <u>See</u> Exh. Q at 151-52. Other claims – not being asserted against Maritz – relate to the award of points for on-line purchases of products and thereby address the other deficiency in the prior art identified by Mr. Storey. <u>See</u>, <u>e.g.</u>, Exh. B at Claims 1-9.

Claim 10 of the '412 patent is exemplary of the asserted claims and contains most of the terms that need construction in this case. Claim 10 provides:

> A method for redeeming incentive awards in an <u>on-line</u> <u>incentive program</u>, said method comprising the steps of:
>
> implementing an on-line incentive program that <u>issues award</u> <u>points to users</u>, wherein said award points are redeemable by said <u>user</u> for an award;
>
> implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program

> for <u>on-line interactive communications</u> between said user and
> said Internet webpage;
>
> offering on said Internet webpage, at least one <u>redeemable award</u>
> available to said user for exchange of said award points; and
>
> permitting said user to initiate a process to receive said at least one
> redeemable award for exchange of said award points issued to
> said <u>user</u> through said on-line incentive program.

(emphasis added).

The proper construction of the underlined terms is in dispute.

Asserted independent claims 27 and 36 contain the same four steps as Claim 10, but apply to "a computer readable medium comprising a plurality of instructions, which when executed by a computer, causes the computer to perform the steps" and "computer system comprising software" for performing those steps, respectively. Neither party's experts have identified any disagreement regarding these additional limitations in Claims 27 and 36. The claim terms used in Claims 10, 27 and 36 are addressed below in Section II.

Dependent claims 11-13 and 28-30 include limitations directed toward a user redeeming award points for an award. <u>See</u> Exh. D at 3. Dependent claims 14-17 and 31-34 are directed towards permitting a user to conduct activity related to the award program (<u>i.e.</u>, review an awards catalog, review the user's account, preview information about the on-line incentive program, and apply for membership). <u>Id</u>. To the extent these asserted dependent claims contain claim terms that warrant additional construction by the Court, those terms are addressed below in Section III. Section III also addresses a claim construction issue relating to the proper dependency of Claim 12.

4

For the reasons set forth below, Affinion asks that the Court construe the following terms to have the following meanings in the asserted claims of the '412 patent:

1. **"On-line"** means "accessible through the Internet."

2. **"Incentive program"** means "a program that uses the award of points (which may be denoted as miles, points, credits or any other similar measurement) that are redeemable as awards to incentivize certain behaviors."

3. **"On-line incentive program"** means "a program that uses the award of points that are redeemable for awards to incentivize certain behaviors and which operates a program webpage which permits users to interact with the incentive program on-line."

4. **"Issues award points to users"** means "adds points to a user's account that are redeemable by said user for an award."

5. **"On-line interactive communications"** means "communications via the Internet that allow the user to provide and receive information to and from the website."

6. **"Redeemable award"** means "a product or service that can be obtained as a prize or award in exchange for award points."

7. **"Users"** means "persons enrolled in the incentive program as well as others who may be eligible to enroll in the incentive program, merchants, product manufacturers and award program administrators."

8. **"Awards catalog"** means "a compilation of award descriptions and point values."

9. **"On-line link to an award computer"** means "a link through the Internet to the computer that accepts award information from the user."

10. **"On-line redeeming form"** means "an electronic form accessible through the

5

Internet that specifies an award for redeeming award points."

## STATEMENT OF FACTS

The '412 patent issued on December 28, 1999 as a continuation of the application, filed on December 14, 1995, that had led to the issuance of U.S. Patent No. 5,774,870 (the "'870 patent"). See Exhs. B, E. The examiner allowed the claims of the '870 patent with no rejections, stating that "[s]everal references have been cited giving specific embodiments of electronic commerce systems and incentive award programs, however, none suggest or disclose combining the features of both to create the invention of the instant application." See Exh. F.

During prosecution of the '412 patent, the applicant filed a Petition to Make Special with the Patent and Trademark Office ("PTO"), requesting that the PTO expedite its consideration of that application. As a requirement of the submission of the Petition to Make Special, the applicant submitted the results of a prior art search and addressed the prior art disclosed by that search. In doing so, the applicant grouped the claims of the '412 patent into two groups: those that required that products be made available for on-line purchase (and not on-line redemption) and those that required on-line redemption (and not on-line purchase). See Exh. D. All of the claims were allowed after a terminal disclaimer was filed, and the '412 patent issued on December 28, 1999. See Exh. B. An additional related patent, U.S. Patent No. 6,578,012 (the "'012 patent"), was issued on June 10, 2003. See Exh. G.

## ARGUMENT

## I.    LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

Claim construction is a matter of law for the Court to decide. Markman v. Westview Instruments, Inc., 52 F.3d 967, 977-78 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "It

is a 'bedrock principle' of patent law that 'the claims of the patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc), cert. denied, 126 S. Ct. 1332 (2006) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In construing the claims of a patent, the meaning of the claim terms "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1313.

When the meaning of a claim term is not immediately apparent, the Court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (quoting Innova, 381 F.3d at 1116). In doing so, the Court looks to how a person of ordinary skill in the art would understand the claim terms in light of the intrinsic evidence, including the claims and the rest of the specification, as well as the prosecution history. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). As an initial matter, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." Phillips, 415 F.3d at 1314; see also ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").

In addition to the language of the claims, the Court looks to the specification as the "single best guide" to the meaning of disputed claim terms. Phillips, 415 F.3d at 1315. In some cases, "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess" and if it does so "the inventor's lexicography governs." Id. at 1316. In addition, "[w]hether or not there was an explicit disclaimer, the consistent use of a claim term by the inventor in the specification may serve to

7

limit the scope of a claim." Cephalon, Inc. v. Barr Labs., Inc., 389 F. Supp. 2d 602, 606 (D. Del. 2005) (citing Nystrom v. Trex Co., 424 F.3d 1136 (Fed. Cir. 2005)).

Despite the importance of the specification in interpreting patent claims, limitations should not be read from the specification into the claims. N. Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1290 (Fed. Cir. 2000). It is a fundamental principle of patent law that it "is the function and purpose of claims," not the "written description part of the specification itself," to "delimit the right to exclude." Markman, 52 F.3d at 980. Moreover, the Federal Circuit reiterated in Phillips its oft-repeated caution that although the specification often describes very specific embodiments, the claims are not confined to those embodiments. See Phillips, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"); see also Specialty Composites v. Cabot Corp., 845 F.2d 981, 987 (Fed. Cir. 1988). Therefore, it is improper to import (i.e., "read in") a limitation from the specification's general discussion, embodiments and examples.

Although the Court may in its discretion use extrinsic evidence as an aid to its interpretation, "extrinsic evidence is considered less reliable and less useful in claim construction than the patent and its prosecution history." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., No. 04-1371, 2006 U.S. Dist. LEXIS 14291, at *4-5 (D. Del. Mar. 31, 2006) (citing Phillips, 415 F.3d at 1318-1319).

## II.    CONSTRUCTION OF THE TERMS IN INDEPENDENT CLAIMS 10, 27 AND 36 OF THE '412 PATENT

The three asserted independent claims (Claims 10, 27 and 36), as noted above, comprise

the same four steps and, therefore, the claim terms that the Court needs to construe with respect to those claims are the same for each of these claims.

### A.     "On-Line Incentive Program"

Claims 10, 27 and 36 use the claim term "on-line incentive program" multiple times in the steps of the claim and the construction of this term is central to understanding the scope of the asserted claims. This three-word phrase itself raises multiple issues of claim construction. First, Maritz disagrees with Affinion's construction that the term "on-line" means "accessible through the Internet." Second, Maritz argues that an "incentive program" includes only programs that reward consumers, and excludes programs that reward employees or other non-consumers. Third, Maritz argues that an "on-line incentive program" does not mean an incentive program comprising an Internet website to allow interaction between the user and the incentive program, but instead means an incentive program that rewards on-line product purchases with an immediate award of points.

#### 1.     "On-line"

The term "on-line," when read in the context of the claims in which it is used and of the specification of the '412 patent, would be understood by the person of ordinary skill in the art at the time of invention to mean "accessible through the Internet."[3] See Exh. I at 5; Exh. J at 6.

---

3       Affinion defines the person of ordinary skill in the art of loyalty programs as a person with at least about four years experience working with or in the loyalty industry, which may be gained either through work in-house in the companies offering loyalty programs, or at outside vendors who design or operate such programs, or through consulting on loyalty program issues for corporations. See Exh. K at 3. Maritz's experts offer an opinion that the person of ordinary skill in the art would be a person with less experience (one to two years experience designing, selling, and/or implementing incentive programs). See Exh. M at 10.

9

First, all of the independent claims of the '412 patent use the term "on-line" in conjunction with the use of an "Internet webpage" to perform the functions of the invention and, particularly, to communicate with the users of the "on-line incentive program." See, Exh. B at Claim 1 ("on-line interactive communications between said user and said Internet webpage") (emphasis added); Claim 10 (using same language as Claim 1); Claim 27 ("implementing an Internet webpage accessible via a computer system, to at least one user of said on-line incentive program"); Claim 35 ("said Internet webpage being accessible to said user for on-line interactive communications between said user and said Internet webpage) (emphasis added); Claim 36 (using same language as Claim 1). The claims of the related '870 patent and '012 patents also link the term "on-line" to the use of Internet homepages. See, e.g., Exh. E at Claim 2 (providing user "with an on-line access to a product homepage") (emphasis added); Exh. G at Claim 2 (same); Exh. E at Claim 24 ("providing on-line access to a product homepage") (emphasis added). Because access to an Internet webpage or homepage requires use of the Internet, the person of ordinary skill in the art would understand the claim language to indicate that when the patent refers to an aspect of the invention as being "on-line" it means "through the Internet." See Exh. J at 5.

Second, the specification of the '412 patent uses the term "on-line" consistently to mean use of the Internet. In particular, the specification describes use of internet access, reached either "via an on-line provider such as AOL™, CompuServe™ etc." or "direct access to the internet, such as via Netscape™." See Exh. B at Col. 2, lines 60-67. The specification then states that "upon gaining an access to the internet" the program proceeds with the steps of the invention. See id. at Col. 2, lines 65-67 (emphasis added). This interpretation is further supported by Figure

10

1 of the specification, which plainly shows the use of those two different means to obtain

"Internet Access."



Fig. 1

See id. at Fig 1.

      The specification includes numerous additional references to the invention's use of the

Internet.  See id. at Col. 2, lines 21-26 (the disclosed invention "includes provisions for access

over the internet"); Col. 5, lines 1-2 ("the user may access the internet using an on-line provider

or an internet direct access"); Col. 6, lines 43-50 (same account "used to access the internet");

Col. 7, lines 61-63 ("if the user has entered the internet via an on-line provider"); Col. 2, lines

43-45 and Figure 2 (explaining that Figure 2, reflecting use of internet homepages, reflects "on-

line purchase").  Moreover, throughout the specification, the system involved is described as

using multiple "homepages" for the operation of the system.  See, e.g., id. at Col. 3, line 13-Col.

4, line 59; Col. 7, lines 31-60.  There are no references in the specification to including any non-

Internet computer network to operate the invention.

Finally, there is nothing in the prosecution history of the '412 patent (or any of the related patents) that suggests that "on-line" should be given any different construction. Indeed, when

# REDACTED

See Exh. P at 17

(SP00137).

Thus, when read in light of its consistent use with a particular meaning in the claims and specification of the '412 patent, the term "on-line" is properly construed to mean "accessible through the Internet."

### 2.     "Incentive Program"

An "incentive program" in the context of the '412 patent means "a program that uses the award of points (which may be denoted as miles, points, credits or any other similar measurement) that are redeemable for awards to incentivize certain behaviors." See Exh. K at 5. There is no reason to narrow this term–as Maritz now argues–to exclude programs that reward persons other than "consumers."

The asserted claims, on their face, are not limited to consumer programs, while other patent claims, not at issue in this case, are directed to incentivizing consumer purchases. See Exh. B at Claims 1-9, 18-26, 35; see also Exh. E at Claim 17, Exh. G at Claim 10.

The specification uses the term "incentive program" to encompass both consumer and non-consumer programs. In particular, in describing the prior art, the '412 patent specification refers to both a program that incentivizes consumer purchases, see Exh. B at Col. 1, lines 12-24, and a program that incentivizes employee achievement, see id. at Col. 1, lines 17-24, 51-52. The

12

'412 patent specification cites as an example of the prior art the programs described in European

Patent (EP) 0 308 224. EP 0 308 224 discloses an incentive award system providing awards to

"participants [who] perform to a designated level of achievement." See Exh. H at Abstract. As

EP 0 308 224 describes, "the usual participants in such incentive programs comprise the

sponsor's employees, the sponsor's customers and their employees, and/or independent

contractors for the company's products or services." See id. at Col. 1, lines 16-21 (emphasis

added). The '412 patent specification does not distinguish the programs identified in EPA 0 308

224 on the basis of the nature of the incentivized behavior and does not limit the scope of the

term "incentive program" to programs rewarding consumer behavior. Therefore, the

specification should not be read to narrow the ordinary meaning of "incentive program" to

consumer-oriented programs.

In addition, the portion of the '412 specification referring to an "incentive program," see

Exh. B at Col. 4, lines 1-33, makes clear that it includes non-consumer programs through its

discussion of the operation of multiple programs restricted to those who meet certain

requirements. Some of those requirements relate to consumer purchasing behavior ("certain

level of purchasing during a given period"), others do not. Thus, the specification at Col. 4, line

23 specifies that "users who satisfy set requirements" such as "gross salary" may participate in an

incentive program. This language indicates that a multi-level incentive program encompasses

distinguishing users who could be ranked by a factor such as gross salary, e.g., employees, whose

behaviors are to be incentivized. This language in the specification therefore suggests to the

person of ordinary skill in the art that an "incentive program" includes programs that incentivize

non-consumers. See Exh. K at 17-18 (applying this claim language to Maritz's non-consumer

13

AwardHQ program).

The prosecution history does not address this issue directly. It is noteworthy, however, that prior art that disclosed only non-consumer programs was not distinguished on that basis in the prosecution history. See, e.g., Exh. D at 8-9 (addressing '444 patent, which involves rewards for travel agents). The fact that prior art was not distinguished on this basis further suggests that the claimed invention was not intended to be limited to consumer-oriented programs.

Affinion's construction is consistent with the definition that Maritz's experts cite as extrinsic evidence of the ordinary meaning of "incentive program." See Exh. N at 13 (the term "incentive program" covers "a broad spectrum of marketing programs and refers to 'merchandise or travel offered to consumers, salesmen, or dealers as a tangible reward for a purchase or sales performance'"). That definition taken from an extrinsic source expressly includes programs that reward consumers for purchases and programs that reward employees or others. This understanding in the art of the term "incentive program" to include programs for incentivizing persons other than consumers, such as employees or sales people, is further reflected in Maritz's own use of the terminology. Maritz itself uses the term "incentive program" to refer to non-consumer programs such as programs for employees, channel partners, wholesalers, brokers or agents (consumer programs are referred to within Maritz as "loyalty programs"). See Exh. R at 9. Therefore, the person of ordinary skill in the art, by Maritz's own admission, would understand the ordinary meaning of "incentive program" to include both sales or employee incentive programs and consumer focused programs. See Exh. N at 13-14.

14

### 3.     "On-Line Incentive Program"

Having construed the claim terms "on-line" and "incentive program," it nonetheless remains necessary to construe the combined term "on-line incentive program" to determine what aspects of an incentive program need to be "on-line" (accessible through the Internet) to make the program an "on-line incentive program." This additional construction is necessary because Maritz argues that an "on-line incentive program" requires that the incentive program reward on-line purchase of products with an immediate award of points on-line. As discussed below, Maritz's argument, however, simply ignores the claim language, the specification and the prosecution history. When these are taken into account, an "on-line incentive program" is properly construed to mean "an incentive program (as defined above) which operates a program webpage which permits users to interact with the incentive program on-line (as defined above)."

The central feature of the invention of the '412 patent is the use of the technology of Internet access and homepages to permit the participant in a frequency and award redemption program to interact directly with the program. See, e.g., Exh. B at Col. 1, lines 62-64 ("In view of the above [the problems in the prior art], the present invention is advantageous in that it provides an on-line, interactive incentive program which is fully integrated"); Col. 2, lines 21-24 ("The above and other advantages are provided by the disclosed invention which includes provisions for access over the Internet"). The specification of the '412 patent describes the "PROGRAM HOMEPAGE" as "the main internet address for the incentive program system." See id. at Col. 4, lines 1-5 (emphasis added). Thus, the specification defines an on-line incentive program as an incentive program with a homepage, which permits interactive communications with the users. The program homepage is described throughout the specification as a component

15

of the invention. See, e.g., id. at Col. 4, lines 4-6 (identifying aspects of program homepage that are "features of the program of the present invention."). Figures 1, 2 and 4 depict the role of the program homepage in allowing the user to interact on-line with the other homepages (product homepage and award homepages) used in various functions of the invention. In light of the centrality of the Program Homepage in the invention description, including the representation of the Program Homepage as part of the flow charts for both the product purchase and the award redemption parts of the preferred embodiment, see id. at Figures 2 and 4, the person of ordinary skill in the art would have recognized and understood that any "on-line incentive program" according to the invention means a program that includes a homepage for the incentive program that would permit the user to interact with the program through the Internet. See Exh. K at 5.

The prosecution history of the '412 patent further supports the construction of an "on-line incentive program" to require the use of an Internet webpage for the program to interact with users. The Petition to Make Special filed during the prosecution of the '412 patent confirms that the claim term "online incentive program" means an incentive program operated through an Internet webpage allowing for interaction between the users and the program. In distinguishing U.S. Patent No. 5,715,314, the applicant stated that "[a]lthough the '314 patent discloses a network sales system, it does not disclose an incentive system implemented with on-line interactive communications between the user and an Internet web page as claimed in the present application." See Exh. D at 8. The Petition to Make Special also distinguishes other prior art as not being directed toward an incentive program that operates "via on-line interactive communications between a user and an Internet web page." See id. at 11. Thus, the person of ordinary skill in the art would understand that the invention of an "on-line incentive program"

16

means the use of an Internet webpage for the operation of the incentive program that allows the user to communicate interactively with the program. See Exh. K at 5; see also Exh. D at 10 (Claim 10 and other award redemption claims are patentable over the prior art "because the limitations to redeem incentive points are conducted via an on-line interactive communications between the user and an Internet web page").

Based on this intrinsic evidence, the person of ordinary skill in the art would have understood at the time of the invention that an "on-line incentive program" means "an incentive program that is operated through a program homepage that permits interactive communications between the user and the incentive program." See Exh. K at 5.

Further, contrary to Maritz's arguments, an "on-line incentive program" does not require that an immediate award of points be made for the on-line purchase of products or for other on-line activity. Reading such limitations into the claim language is contrary to the plain language of the claims and the prosecution history.

Claim 1 of the '412 patent – which is not being asserted against Maritz – requires the step of "implementing an on-line incentive program."[4] It then lists as additional, separate steps of the claimed method, the "offering, . . . on . . . Internet webpage, at least one product for sale" and "determining whether [that] user qualifies for . . . award points based on said user's response to

---

4

16 (SP00135).

**REDACTED**

See Exh. P at 15-

purchase that at least one product." Exh. B at Claim 1. (Claims 10-17; 27 -34 and 36 do not contain these on-line purchase and on-line award steps). If implementing an "on-line incentive program" is construed to mean a program that offers products for sale on a website and immediately awards points for those purchases, then these additional steps in Claim 1 would be superfluous. Moreover, basic principles of claim differentiation suggest that interpreting "on-line incentive program" to incorporate those other steps delineated in Claim 1 is unlikely to be the correct result. See Versa Corp. v. Ag-Bag Int'l Ltd., 392 F.3d 1325, 1330 (Fed. Cir. 2004) ("The doctrine of claim differentiation 'creates a presumption that each claim in a patent has a different scope.'"); SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc) ("when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement").

Claim 1 of the '412 patent is directed to a particular subset of "on-line incentive programs" – those that offer products for sale on the Internet and award points for on-line purchases. By contrast, Claims 10, 27 and 36 and their dependent claims are directed to a different subset of "on-line incentive programs" – those that permit users to redeem points to obtain awards through the program website. This distinction is reflected in the preamble of Claim 10, which describes the claim as "a method for redeeming incentive awards." That prefatory language reinforces the plain language of Claim 10, which relates to the steps of the on-line redeeming portion of the invention, but which (unlike Claim 1) contains no language related to purchasing on-line or earning points on-line.

Any ambiguity as to whether Claims 10, 27 and 36 require on-line purchase of products is eliminated by the statements made by the applicant during the prosecution history. In the

18

Petition to Make Special filed during the prosecution of the '412 Patent, in distinguishing the prior art, the applicant differentiated between those claims that contain elements of an on-line purchase of products and those claims that relate to on-line redemption through an Internet webpage for awards.  See e.g., Exh. D at 2-3; 5; 6-7; 9-10.  For example, the applicant provided the following explanation for why the claims of the '412 patent are distinguishable from a piece of prior art involving a "smart card system":

> Accordingly the '045 Patent does not disclose nor suggest an on-line incentive program that offers products for sale on an Internet web page, and issues award points if a user qualifies as claimed in [issued claims 1-9, 18-26 and 35].  Similarly, the '045 Patent does not teach toward nor disclose implementing a means to redeem awards from an Internet web page as claimed in [issued claims 10-17, 27-34 and 36].

Id. at 6 (emphasis added).

This distinction – repeatedly made in the Petition to Make Special – between the claims that involve the offer of products for sale on an Internet web page and the claims that involve a means to redeem awards from an Internet web page confirms that the latter category of claims does not require that points be awarded immediately for on-line product purchase.

**B.     On-Line Incentive Program "That Issues Award Points to Users"**

An on-line incentive program that "issues award points to users" means a program that "adds points to a user's account that are redeemable by said user for an award."  Contrary to Maritz's argument, the issuing of points to users step of Claim 10 does not require that the on-line incentive program also perform the steps of (1) determining whether the behavior qualifying for award points is by an enrolled user and (2) calculating the award points according to a preprogrammed formula.

19

The claim language used in the unasserted claims of the '412 patent establishes that the issuing of award points does <u>not</u> incorporate or include the steps of determining eligibility for award points or calculating the points.  Claim 1 of the '412 patent provides:

> A method for implementing an on-line incentive program, said method comprising the steps of :
>
> providing an Internet webpage accessible to at least one user, via a computer system, for on-line interactive communications between said user and said Internet webpage;
>
> offering, on said Internet webpage, at least one product for sale to said user;
>
> <u>determining</u> whether said user qualifies for one or more award points based on said user's response to purchase said at least one product;
>
> <u>calculating</u> said award points according to a preprogrammed formula if said user qualifies for said award points; and
>
> <u>issuing</u> said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

(emphasis added).

Thus, the language in Claim 1 requires that issuing points to the user's account is a separate and distinct step from the "determining" step and the "calculating" step.  To interpret a program that "issues award points to users" in Claim 10 to incorporate the steps of determining eligibility and calculating the amount of points is directly contrary to the claim language used in Claim 1.  Because claim terms should be interpreted consistently throughout a patent and issuing award points in Claim 1 <u>cannot</u> include the steps of determining eligibility or calculating points, "issuing the award points" in Claim 10 cannot properly be interpreted to include the steps of

20

determining eligibility and calculating points.  See Phillips, 415 F.3d at 1314 ("Because claim

terms are normally used consistently throughout the patent, the usage of a term in one claim can

often illuminate the meaning of the same term in other claims").

     The fact that the calculation of points is separate from the process of adding points to the

account is further supported by Figure 2 in the specification.  Figure 2 is a flow chart showing the

"product selection and on-line purchase part of the program of the preferred embodiment of the

present invention."  Exh. B at Col. 2, lines 43-45.  In Figure 2, the steps of calculating the award

points (190) and adding points to the account (200) are two distinct steps.

     Nothing in the prosecution history suggests that the step of issuing award points to users

should be construed to include any steps beyond the addition of points to the user's account.

     Therefore, based on the intrinsic evidence, the person of ordinary skill in the art would

understand the limitation of an on-line incentive program that issues award points to users to

mean an on-line incentive program that adds points to a user's account that are redeemable by

said user for an award.

**C.    "On-Line Interactive Communications"**

     The term "on-line interactive communications" as it is used in the claims of the '412

patent means "communications via the Internet that allow the user to provide and receive

information to and from the website."  See Exh. K at 7.  This language means that the user can

engage in communications with the on-line incentive program through an Internet webpage and,

therefore, can transact business with the on-line incentive program in the interactive mode

permitted by that technology.  For the reasons discussed above in Section II, "on-line" means

"accessible through the Internet."  Moreover, Claim 10 explicitly requires that such "on-line

21

interactive communication" be between the user and said Internet webpage. The "use of on-line

interactive communications" through the Internet is central to the inventor's use of Internet

technology to allow users to have the ability to communicate directly with the incentive program,

and, thereby, to obtain the immediacy of redemption of awards that is an object of the invention.

See Exh. B at Col. 2, lines 12-17.

### D.     "Redeemable Award"

Claim 10 includes the limitations that the system offer "at least one redeemable award

available to said user for exchange of said award points" and permit "said user to initiate a

process to receive said at least one redeemable award for exchange of said award points." The

claim term "redeemable award" would have been understood by the person of ordinary skill in

the art to mean "a product or service that can be obtained as a prize or award in exchange for

award points." See Exh. K at 8. Although Maritz's experts have not delineated a proposed

definition of the "redeemable award," they argue, in an effort to make a particular invalidity

argument, that a "redeemable award" includes an offer for price discounts on future store

purchases.

The claim language itself establishes that a "redeemable award" has to mean an award

that the user can "receive" "in exchange for" the award points earned in the program. See Exh.

B at Claim 10. This claim language indicates that the "redeemable award" is a particular good or

service that is sent in exchange for the points, not part of a later purchase transaction between the

user and the program sponsor.

The '412 specification equates the "award" with a "prize" that is sent to the user. See

Exh. B at Col. 2, lines 28-32 (program allows customer "to order prizes on-line"); Col. 2, lines 9-

22

17 (referring to awards available as "prizes").  The specific examples of awards given in the

specification are all products or services obtainable in exchange for points.  See id. at Col. 1,

lines 30-31 ("free flight ticket or free rental car").  The specification further describes the use of

an "award order" as distinguished from a "product order" for the purchase of products.  See id. at

Col. 10, line 7-11.  Moreover, the discussion of the redemption process in the specification in the

preferred embodiment suggests that the redeemable award is a separate item that will be sent to

the user of the program.  See id. at Col. 9, lines 65-Col. 10, line 1 (describing user's selection of

features of the award such as color, size, etc.); Col. 10, lines 7-12.  The specification does not

refer to discounts, price reductions or other types of incentives as constituting "awards."

     The prosecution history further supports this construction.  In the Petition to Make

Special, the applicant describes the award redemption claims as claims in which "a user is

permitted to initiate a process to receive an award for exchange of the award points."  See Exh. D

at 3.  Nothing in the prosecution history suggests that a program offering only discounts on

products being purchased in exchange for award points is contemplated, and the specification

nowhere discloses (or even suggests) that a discount can be an award.

    E.    "Users"

     The specification of the '412 patent makes plain that "users" means persons enrolled in

the on-line incentive programs as well as others who may be eligible to enroll in the incentive

program, merchants, product manufacturers, award program administrators, etc."  See Exh. B at

Col. 10, lines 7-12.  The term "user" cannot be limited to refer only to those who are already

participants in the "on-line incentive program," as Maritz's experts argue.  First, to so limit the

definition of "users" would require completely ignoring the specification's specific instruction

that the term "users" includes other categories of individuals. See id. at Col. 10, lines 7-12.

Second, multiple claims of the '412 patent use the term "users" to apply to persons who are not

yet enrolled in an on-line incentive program. See id. at Claims 17 and 34 ("comprising the step

of permitting a user to apply for membership to said on-line incentive program from said Internet

webpage"); Claim 16 and 33 ("permitting a user to preview information about said on-line

incentive program"). Claim 2 of the '412 patent contains the step of "determining whether said

user is enrolled in said incentive program." See id. at Claim 2 (emphasis added). In light of this

claim language, the term "users" cannot be narrowed, as Maritz's experts argue, to already-

enrolled on-line program participants.

### F.    Remaining Terms of Claims 10, 27 and 36

The remainder of the claim terms of Claims 10, 27 and 36 do not appear to be the subject

of disagreement, based on the expert reports that have been exchanged. Therefore, it does not

appear that any additional construction of the terms used herein is necessary. Should Maritz ask

the Court to construe any additional terms in Claim 10, Affinion will respond thereto in its

answering brief.

### III.    CONSTRUCTION OF THE TERMS IN ASSERTED DEPENDENT CLAIMS

In addition to independent claims 10, 27 and 36, Affinion also asserts that Maritz is

infringing dependent claims 11-17 and 28-34 of the '412 patent. Most of the claim terms used in

those dependent claims do not appear to need additional construction beyond that already

addressed in the context of the independent claims. Should Maritz suggest in its opening claim

construction brief that additional claim terms used in the asserted dependent claims require

additional construction by the Court, Affinion will address any such proposed constructions in its

answering brief. The construction of the dependent claims also requires that the Court make a determination concerning the correct dependency of Claim 12.

A.    **Claims 11 and 28**

Claims 11 and 28 add to Claims 10 and 27 the step of "accessing an account of said user; redeeming a particular award for said user based on said points issued to said user if said user has earned sufficient points to qualify for said particular award; and subtracting said points from said account of said user" to the step of "permitting said user to initiate a process to receive a redeemable award." There are no additional claim terms in Claim 11 that Affinion believes need to be construed by the Court. Should Maritz request that the Court construe any claim terms used in Claim 11, Affinion will address those proposed interpretations in its answering brief.[5]

B.    **Claims 12 and 29**

Claim 12 provides:

> The method as set for in claim <u>10</u>, wherein the step of redeeming a particular award for said user comprises the steps of:
>
> displaying, via said Internet webpage, a <u>catalog of awards</u> redeemable with said award points of said on-line incentive system; and
>
> accepting a selection by said user that indicates an award from said catalog.

(emphasis added).

---

5    With respect to Claims 11 and 28, 14 and 31, 15 and 32, and 16 and 33, Maritz's experts do not make any non-infringement arguments based on the additional limitations contained in the dependent claims.

### 1.    Claim 12 Properly Depends from Claim 11, Not Claim 10

Claim 12 contains a typographical error and properly should depend from Claim 11, not from Claim 10. Because this typographical error is apparent from the face of the patent, the Court has the power to correct it. See Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1354, 1357 (Fed. Cir. 2003) (courts can correct obvious minor typographical and clerical errors). A district court can correct a patent if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Id. at 1354; see also Hoffer v. Microsoft Corp., 405 F.3d 1326, 1331 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1037 (2006); Advanced Med. Optics, Inc. v. Alcon Inc., 361 F. Supp. 2d 370, 383 (D. Del. 2005).

That Claim 12 should depend from Claim 11 is obvious from the face of the patent and is not subject to reasonable debate. First, the language of Claim 12 ties to the language in Claim11, and not Claim 10. Claim 12 of the '412 patent states "the method as set forth in Claim 10, wherein the step of redeeming a particular award for said user comprises the steps of…." Claim 10 does not recite a step of "redeeming a particular award for said user" and thus does not provide the requisite antecedent basis for Claim 12. In contrast, Claim 11 recites verbatim the step of "redeeming a particular award for said user" and thus provides proper antecedent basis for Claim 12.

26

Second, the error becomes clear from comparing claims 10, 11, and 12 to parallel claims 27, 28, and 29, which are nearly identical.[6] Like Claim 11, Claim 28 contains the step of "redeeming a particular award for said user." Like Claim 12, Claim 29 states, "wherein the step of redeeming a particular award for said user comprises the steps of...." The only substantial difference between Claims 12 and 29 is that while Claim 12 depends from Claim 10, Claim 29 depends not from Claim 27 but rather from Claim 28 and thus does not contain the dependency error found in Claim 12. This makes it obvious that Claim 12 was meant to depend from Claim 11.

The prosecution history of the '412 patent does not suggest a different interpretation of the claims. It only reveals that Claim 12 contained this typographical error when it was filed with the Patent and Trademark Office, and thus apparently was not discovered by either the PTO or the prosecuting attorney who drafted the claims. See Exh. C.

The dependency error in Claim 12 is very similar to the dependency error at issue in Hoffer, which the Federal Circuit held should be corrected by the court. In Hoffer, Claim 22 recited "[a] method in accordance with claim 38." The Federal Circuit found the reference to Claim 38 to be obviously incorrect on its face because the patent did not contain a claim 38. 405 F.3d at 1331. It was apparent from the prosecution history that the error arose when the claims were renumbered by the examiner in preparation for printing, and that Claim 22 properly should depend from claim 21. Id. at 1332. The Federal Circuit reversed the district court's decision not to correct Claim 22.

---

6     Claims 10-12 claim a "method for redeeming incentive awards." Claims 27-29 claim a "computer readable medium" that does precisely the same thing.

27

### 2.    "Awards Catalog" or "Catalog of Awards"

Claims 12 and 29 use the claim term "catalog of awards" and Claims 14 and 31 use the claim term "awards catalog." An "awards catalog" or "catalog of awards" means "a compilation of award descriptions and point values." The '412 patent specification indicates that the awards catalog (or catalog of awards) is the mechanism by which the claimed invention displays the awards available to the user of the online incentive program. See Exh. B at Col. 8, lines 8-46 (describing the operation of the award catalog in the preferred embodiment). The language of other claims further demonstrates that the "award catalog" or "catalog of awards" must be separate from any product catalog offering products for sale on a webpage. See Exh. E at Claims 1 and 17; Exh. G at Claims 1 and 15 (requiring separate memory areas for the product catalog and the award catalog).

**REDACTED**

See Exhibit O at 2-3 (SP00979-80)

### C.    Claim 13 and 30

Claim 13 of the '412 patent provides:

> The method as set forth in claim 12, further comprising the steps of:
>
> providing said user with an on-line redeeming form comprising entries that specify an award for redeeming said award points; and
>
> establishing an on-line link to an award computer; and
>
> sending, via said on-line link, entries of said on-line redeeming form to said award computer.

(emphasis added).

28

### 1.    "On-Line Link to an Award Computer"

Claims 13 and 30 involve the steps by which a user informs the incentive program system of his award redemption choice.  First, the user is provided with an on-line redeeming form that specifies the award for redeeming the award points.  The system establishes an on-line (Internet) link from the user to the "award computer" and then sends via that link the entries of the form to the "award computer."  The specification of the '412 patent does not expressly discuss the "award computer."  Based on the claim language, however, the person of ordinary skill in the art would understand the claim term "award computer" to mean the computer within the system that processes the award requests received from the user through the on-line redeeming form.  <u>See</u> Exh. I at Claim Chart at 4.

### 2.    "On-Line Redeeming Form"

Claims 13 and 30 of the '412 patent depend from Claims 12 and 29, respectively and further require the limitation of "providing said user with an on-line redeeming form comprising entries that specify an award for redeeming said award points."  The person of ordinary skill in the art would understand that an "on-line redeeming form" means "an electronic form accessible through the Internet that accepts entries for the items being redeemed through the on-line incentive program."  <u>See</u> <u>id</u>. at Claim Chart at 4.

### D.    Claims 14 and 31

Claims 14 and 31 of the '412 patent add to Claims 10 and 27 the step of "permitting a user to review an awards catalog from said Internet webpage that comprises awards redeemable for said award points."  There are no additional claim terms in Claims 14 or 31 that Affinion

29

believes need to be construed by the Court. Should Maritz propose definitions of any claim terms used in Claims 14 or 31, Affinion will address those proposed interpretations in its answering brief.

### E.     Claims 15 and 32

Claims 15 and 32 of the '412 patent add to Claims 10 and 27 the step of "permitting a user to review an account from said Internet webpage for said user, wherein said account reflects an amount of said award points credited to said user." There are no additional claim terms in Claims 15 and 32 that Affinion believes need to be construed by the Court. Should Maritz propose definitions of any claim terms used in Claims 15 and 32, Affinion will address those proposed interpretations in its answering brief.

### F.     Claims 16 and 33

Claims 16 and 33 of the '412 patent add to Claims 10 and 27 the step of "permitting a user to preview information about said on-line incentive program from said Internet webpage. There are no additional claim terms in Claims 16 and 33 that Affinion believes need to be construed by the Court. Should Maritz propose definitions of any claim terms used in Claims 16 and 33, Affinion will address those proposed interpretations in its answering brief.

### G.     Claims 17 and 34

Claims 17 and 34 of the '412 patent add to Claims 10 and 27 the step of "permitting a user to apply for membership to said on-line incentive program from said Internet webpage." There are no additional claim terms in Claims 17 and 34 that Affinion believes need to be construed by the Court. Should Maritz propose definitions of any claim terms used in Claims 17 and 34, Affinion will address those proposed interpretations in its answering brief.

**CONCLUSION**

For the foregoing reasons, the Court should give the disputed claim terms the constructions set forth by Affinion herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika ((#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

*Of Counsel:*
Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

May 9, 2006

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on May 9, 2006, I electronically filed the

Opening Brief of Plaintiff Affinion Loyalty Group, Inc. Concerning Claim Construction with the

Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on May 9, 2006 upon the following

in the manner indicated:

### BY HAND

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

J. Bennett Clark
Senniger Powers
One Metropolitan Square
St. Louis, MO  63102

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on May 15, 2006, I electronically filed the redacted version of Opening Brief of Plaintiff Affinion Loyalty Group, Inc. Concerning Claim Construction with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on May 15, 2006 upon the following in the manner indicated:

### BY HAND

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE  19801

### BY FEDERAL EXPRESS

> J. Bennett Clark
> Senniger Powers
> One Metropolitan Square
> St. Louis, MO  63102

> */s/ Maryellen Noreika*
> Maryellen Noreika (#3208)
> mnoreika@mnat.com