IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION LOYALTY GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-360-JJF |
| | ) | |
| MARITZ, INC. | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | Original Version Filed: May 22, 2006 |
| | ) | Redacted Version Filed: May 31, 2006 |

## PLAINTIFF'S OPPOSITION TO MARITZ'S MOTION TO COMPEL

Maritz moves to compel the production of certain documents on the ground that the attorney-client privilege was waived by the transfer of those documents from the former patent owner to Affinion Loyalty Group, Inc.'s parent corporation, Trilegiant Corporation. Maritz does not dispute that these documents are privileged—its motion is based solely on a purported waiver. Maritz's motion should be denied because privilege was not waived.

### ARGUMENT

**I.      There Has Been No Waiver.**

On December 7, 2001, Trilegiant and Netcentives executed a Patent and License Purchase Agreement whereby Netcentives sold to Trilegiant a patent portfolio containing U.S. Patent Nos. 5,774,870 and 6,009,412, and the application that issued as the '012 patent, the right to bring infringement actions and to collect damages for past infringement, and the right to collect royalties from licensees—in short, all of the legal and business rights related to the patents. See Ex. 1, ¶¶ 2.1-2.7. At the time of the sale Netcentives had an active patent licensing business and was in the midst of a patent infringement lawsuit against Carlson, Inc. See Ex. 2.[1]

---

[1] Netcentives was also involved in patent infringement lawsuits with other companies; these other lawsuits ended

Pursuant to ¶¶ 2.5 and 2.6 of this agreement, Trilegiant assumed control of the Carlson litigation, Trilegiant's attorneys entered their appearances on behalf of Netcentives in that lawsuit, see Ex. 3, and Trilegiant and Netcentives worked together to settle the litigation with Carlson. Trilegiant was a party to the agreement that settled that lawsuit. See Ex. 4. Trilegiant also took over the collection of royalties from the six companies that had taken licenses under the patents, and the prosecution of the pending patent application that issued as the '012 patent, pursuant to ¶¶ 2.2 and 2.7 of the agreement. Netcentives delivered to Trilegiant substantial documentation regarding the prosecution, litigation, and licensing of these patents, including privileged documents that are the subject of this motion, pursuant to ¶ 2.3 of the agreement.

Netcentives did not waive its attorney-client privilege when it transferred privileged documents to Trilegiant; rather, that privilege was transferred to Trilegiant. When a party sells a business, a claim or cause of action, or assets directly at issue in prior litigation, the attorney-client privilege transfers with that sale. See In re Grand Jury Subpoenas 89-3 and 89-4, 734 F. Supp. 1207, 1211 (E.D. Va. 1990) (privilege transfers with the sale of a business); Excess Ins. Co. v. Saunee, 1996 U.S. Dist. LEXIS 10629, at *8-9 (E.D. La. 1996) (privilege transfers with assignment of claim or cause of action); Graco Children's Prods., Inc. v. Regalo Int'l LLC, 1999 U.S. Dist. LEXIS 11392, at *12-13 (E.D. Pa. 1999) (purchaser of assets previously the subject of a patent infringement action received seller's attorney-client privilege).[2]

The sale here was not a simple patent transfer—a substantial licensing business was sold, as well as rights in ongoing litigation involving the patents. On that basis alone, Affinion is entitled to assert Netcentive's attorney-client privilege.

---

prior to the sale. See Ex. 2.]

[2] By contrast, the cases cited by Maritz involved no more than a "bare transfer of assets." See, e.g., In re In-Store Adver. Sec. Litig., 163 F.R.D. 452, 458 (S.D.N.Y. 1995) (attorney-client privilege accompanied transfer of documents from a bankrupt company to successor corporation, but not from successor's transfer of documents to third company in connection with asset sale).

There also was no waiver because Netcentives and Trilegiant shared identical legal interests in these privileged communications.  See Corning Inc. v. SRU Biosys., LLC, 223 F.R.D. 189, 190 (D. Del. 2004) (For a communication to be protected, the interests must be "identical, not similar, and be legal, not solely commercial.").  It is well settled that a patent assignor and assignee may have a common legal interest in communications relating to the prosecution and enforcement of the assigned patent.  See MPT, Inc. v. Marathon Labels, Inc., 2006 U.S. Dist. LEXIS 4998, at *17-23 (N.D. Ohio Feb. 9, 2006) (patent assignor and assignee have common legal interest in privileged patent prosecution documents); Smithkline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 539 (N.D. Ill. 2000) (patent licensor, the licensor's successor in interest, and the exclusive licensee had a common legal interest in the prosecution of the patent); Tenneco Packaging Specialty & Consumer Prods., Inc. v. S.C. Johnson & Son, Inc., 1999 U.S. Dist. LEXIS 15433, at *7-8 (N.D. Ill. 1999) (patent seller and purchaser have common legal interest in privileged patent opinion letter disclosed in asset purchase deal).[3]  When Trilegiant stepped into Netcentives' shoes and took over Netcentive's litigation against Carlson, its licensing business, and its prosecution of the pending patent application, Netcentives' and Trilegiant's legal interests were identical.  Moreover, the prosecution histories of the '870 and '412 patents are part of the prosecution histories of the '012 patent and the continuation

---

[3] Parties may have a common legal interest in communications relating to patent prosecution and litigation in other circumstances as well.  See In re Regents of the Univ. of Cal., 101 F.3d at 1390 (patent owner and optionee/licensee had common legal interest in patent prosecution); Constar Int'l, Inc. v. Cont'l Pet Techs., Inc., 2003 U.S. Dist. LEXIS 21132, at *5-6 (D. Del. Nov. 19, 2003) (cross-licensees had common legal interest in prosecution and litigation of licensed patents and applications); Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 167 F. Supp. 2d 108, 125 (D. Mass. 2001) (parties who arrange for payment of preparing and prosecuting application had common legal interest); B.E. Meyers & Co., Inc. v. U.S., 41 Fed. Cl. 729, 734 (Fed. Cl. 1998) (U.S. government and supplier had common legal interest in supplier's privileged communications regarding patents); Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., 1996 U.S. Dist. LEXIS 19274, at *5, 17-18 (N.D. Ill. Dec. 9, 1996) (patent owner and licensee had common legal interest in potential patent litigation); Baxter Travenol Labs., Inc. v. Abbott Labs., 1987 U.S. Dist. LEXIS 10300, at *1-6 (N.D. Ill. June 17, 1987) (patent owner and inventors had common legal interest in prosecution and defense of patents); Hewlett-Packard Co. v. Bausch & Lomb Inc., 115 F.R.D. 308, 309-10 (N.D. Cal. 1987) (seller and potential purchaser of assets had common legal interest in patent opinion letter); SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 513-14 (D. Conn. 1976) (joint venturers had common legal interest in exploitation of patents).

applications that Affinion subsequently filed, see Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1167 (Fed. Cir. 2004), and disclosure of privileged prosecution documents would be unfair to Affinion. For each of these reasons, the motion to compel should be denied.

## II.    Maritz's Waiver Argument Does Not Apply To Document No. 111

One of the documents listed in Netcentives' motion to compel, number 111, apparently was erroneously assumed by Maritz to be a Netcentives document. However, it was not a communication to Netcentives. It is a document that contains legal advice rendered directly to NCCI, Inc.—a previous name of Affinion—by one of its attorneys. See Ex. 5 (Declaration of S. Davis). Maritz's waiver argument is therefore inapplicable to this document and its motion should be denied for this additional independent reason.

## III.    Privileged Communications Concerning the '012 Patent Are Not Discoverable.

Even if the Court were to find waiver, it should not permit discovery of communications concerning the prosecution of the '012 patent[4] because the '012 patent is no longer being asserted in the case. As discussed in the Affinion's Reply Brief in support of its Motion for Leave To Amend Its Complaint and To Dismiss Defendant's Counterclaims Relating to the '870 and '012 Patents, communications regarding the prosecution of the '012 patent are not relevant to Maritz's claim that the '412 patent is invalid due to inequitable conduct because the '012 patent is a continuation of the '412 patent and conduct in the prosecution of a later patent application cannot render an earlier patent unenforceable as a matter of law. See D.I. 124 at 7-9 and cases cited therein. Maritz's motion to compel should be denied as to these documents for this additional independent reason.

## CONCLUSION

For the foregoing reasons, Maritz's motion to compel should be denied.

---

[4] Documents 535-544 on Affinion's privilege log.

4

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

*Attorneys for Plaintiff*
*Affinion Loyalty Group*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

May 22, 2006

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on May 31, 2006, I electronically filed Redacted Version of Plaintiff's Opposition to Maritz's Motion to Compel with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on May 31, 2006 upon the following in the manner indicated:

### BY HAND

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

J. Bennett Clark
Senniger Powers
One Metropolitan Square
St. Louis, MO 63102

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com