IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AFFINION NET PATENTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-360-JJF |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| MARITZ, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ANSWERING BRIEF OF PLAINTIFF AFFINION NET PATENTS, INC.
CONCERNING CLAIM CONSTRUCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mnoreika@mnat.com
*Attorneys for Plaintiff
Affinion Net Patents, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

Original Version Filed:  May 24, 2006
Redacted Public Version Filed:  May 31, 2006

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .................................................................................................................. 3

   I.     "ON-LINE INCENTIVE PROGRAM" ........................................................ 3

        A.   The Claim Language ...................................................................... 3

        B.   The Specification ............................................................................ 5

        C.   The Prosecution History ............................................................... 10

        D.   The Extrinsic Evidence ................................................................. 13

   II.    "ISSUES AWARD POINTS TO USERS" ................................................ 16

        A.   The Claim Language ...................................................................... 16

        B.   The Specification ............................................................................ 17

        C.   The Prosecution History and Extrinsic Evidence ........................ 18

   III.   "WHEREIN SAID AWARD POINTS ARE REDEEMABLE BY SAID USER FOR AN AWARD" .......................................................................... 18

   IV.   "IMPLEMENTING AN ON-LINE INCENTIVE PROGRAM THAT ISSUES POINTS TO USERS" ................................................................. 20

   V.    "ON-LINE" ............................................................................................... 21

   VI.   "PERMITTING A USER TO PREVIEW INFORMATION ABOUT SAID ON-LINE INCENTIVE PROGRAM FROM SAID INTERNET WEBPAGE" ............................................................................................. 21

   VII.  "ON-LINE LINK TO AN AWARD COMPUTER" ............................... 22

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*3M Innovative Props. Co. v. Avay Dennison Corp.,*
350 F.3d 1365 (Fed. Cir. 2003)..................................................................................12

*ACTV, Inc. v. Walt Disney Co.,*
346 F.3d 1082 (Fed. Cir. 2003)....................................................................................3

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,*
334 F.3d 1294 (Fed. Cir. 2003)................................................................................7, 8

*Callicrate v. New Age Indus. Corp.,*
2005 U.S. Dist. LEXIS 8934, at \*78 (D. Kan. 2005) ...............................................11

*E-Pass Techs., Inc. v. 3Com Corp.,*
343 F.3d 1364 (Fed. Cir. 2003)..........................................................................1, 7, 13

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
355 F.3d 1327 (Fed. Cir. 2004)....................................................................................7

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
339 U.S. 605 (1950)......................................................................................................3

*Lemelson v. United States,*
752 F.2d 1538 (Fed. Cir. 1985)....................................................................................2

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
358 F.3d 898 (Fed. Cir. 2004)................................................................................2, 10

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996) ...........................9

*Nystrom v. TREX Co. Inc.,*
424 F.3d 1136 (Fed. Cir. 2005)....................................................................................3

*On Demand Machine Corp. v. Ingram Indus. Inc.,*
442 F.3d 1331 (Fed. Cir. 2006)....................................................................................8

*Ortho Pharm. Corp. v. Smith,*
959 F.2d 936 (Fed. Cir. 1992)....................................................................................11

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
182 F.3d 1298 (Fed. Cir. 1999)....................................................................................9

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)................................................................................*passim*

*Resonate Inc. v. Alteon Websys. Inc.,*
    338 F.3d 1360 (Fed. Cir. 2003).........................................................................................5

*RF Del., Inc. v. Pac. Keystone Techs. Inc.,*
    326 F.3d 1255(Fed. Cir. 2003).........................................................................................17

*Salazar v. Procter & Gamble, Co.,*
    414 F.3d 1342 (Fed. Cir. 2005)........................................................................................12

*Solarex Corp. v. Arco Solar, Inc.,*
    805 F. Supp. 252 (D. Del. 1992)........................................................................................5

## STATUTES AND RULES

35 U.S.C. § 121 ...................................................................................................................10

M.P.E.P. § 708.02 VIII ......................................................................................................10

M.P.E.P. Chp. 800 ..............................................................................................................10

## OTHER AUTHORITIES

Giles S. Rich, The Extent of Protection and Interpretation of Claims—American
    Perspectives, 21 Int'l Rev. Indus. Prop. & Copyright L. 497, 499 (1990). ..........................3

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Affinion Net Patents, Inc. ("Affinion") submits this brief in response to the Opening Claim Construction Brief of Maritz, Inc., in connection with the June 7, 2006, claim construction hearing.

## SUMMARY OF ARGUMENT

Maritz's proposed claim construction rests on a fundamentally flawed approach to the issue of claim construction—one that has been repeatedly rejected by the Federal Circuit. As is addressed in detail below, the primary claim construction dispute between the parties is whether the asserted claims of U.S. Patent No. 6,009,412 (the "'412 patent") contain a limitation requiring that award points be issued in response to the on-line <u>purchase</u> of products. Maritz does not—because it cannot—assert that the language of the asserted claims refers to the on-line purchase of products. Claim language concerning on-line purchases is conspicuously absent from the asserted claims, even though such language is used to add precisely such a limitation in other claims (such as Claim 1) of the '412 patent.

Maritz nonetheless seeks to read the on-line purchase limitation into the asserted claims on two theories, neither of which finds support in the Federal Circuit's cases governing the proper construction of patent claims.

<u>First</u>, Maritz asserts that, because the specification of the '412 patent identifies the awarding of points for on-line purchases as one of several enumerated advantages of the patent, each and every claim must be construed to include that advantage. <u>See</u> Maritz's Opening Brief (D.I. 138) at 8, 13. This argument ignores the well-established principle, discussed in detail below, that the claims of a patent need not contain every advantage listed in the specification, and should not be read to be limited to inventions that offer all of the listed advantages. <u>See</u> <u>E-Pass Techs., Inc. v. 3Com Corp.</u>, 343 F.3d 1364, 1370 (Fed. Cir. 2003) (footnote omitted) ("An

invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them."). That is particularly true where, as here, other unasserted claims of the patent do contain limitations expressly providing the advantage at issue, but the asserted claims omit those limitations. In such cases, the asserted claims are not construed as if they contained the omitted limitations. See Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 908-09 (Fed. Cir. 2004) (where applicants rewrote claims having a particular limitation to add claims omitting that limitation, it is a strong indication that the applicants intended those claims to include devices without that limitation, even where the preferred embodiments all include the limitation). Maritz does not – and cannot – dispute that the asserted claims possess at least two of the advantages enumerated in the specification of the '412 patent.

Second, Maritz asserts that because the preferred embodiment of the '412 patent specification describes the award of points for on-line purchases, all the claims of the patent should be construed to contain such a limitation. See D.I. 138 at 7-8. This argument ignores another well-established principle of claim construction: the claims of a patent are not limited to the features of the preferred embodiment. See Lemelson v. United States, 752 F.2d 1538, 1552 (Fed. Cir. 1985) (a claim may be broader than the preferred embodiment, and the claims are not limited to devices operating precisely as the specification-described devices operate).

Because the claim construction proposed by Maritz is contrary to these basic principles of claim construction, Affinion's proposed construction should be adopted.

## STATEMENT OF FACTS

The relevant facts were set forth in the Statement of Facts in Affinion's Opening Brief (D.I. 139). Any additional relevant facts are set forth in the Argument section, as appropriate.

## ARGUMENT

### I.    "ON-LINE INCENTIVE PROGRAM"

In its Opening Brief, Maritz asserts that the term "on-line incentive program" means "a frequency program that awards points to users for on-line product purchases." D.I. 138 at 6. Maritz's proposed construction of "on-line incentive program" is not supported by either the intrinsic or the extrinsic evidence.

#### A.    The Claim Language

As Judge Giles Sutherland Rich, one of the nation's most influential patent law jurists, famously quipped, "the claim is the name of the game." Giles S. Rich, The Extent of Protection and Interpretation of Claims—American Perspectives, 21 Int'l Rev. Indus. Prop. & Copyright L. 497, 499 (1990). The patent claims define the "metes and bounds" of the invention and the claim language must be the starting point for any claim construction analysis. See Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607 (1950) (a claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention); Nystrom v. TREX Co. Inc., 424 F.3d 1136, 1142 (Fed. Cir. 2005) (the claim construction analysis begins "with the words of the claim"). Moreover, in interpreting the meaning of particular claim terms, "the claims themselves provide substantial guidance." See Phillips v. AWH Corp., 415 F.3d 1303, 1304 (Fed. Cir. 2005); see also ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1088 (Fed. Cir. 2003).

The asserted claims make no reference to the on-line purchase of products, or any purchase of products for that matter. Indeed, the claims themselves make plain that they concern the redeeming of points in incentive programs, not the mechanisms by which points are earned. See D.I. 140, Exh. B, at Claim 10 ("method for redeeming incentive awards in an on-line incentive program"). The absence of any claim language relating to on-line product purchase in the

asserted claims is of particular note because the '412 patent contains other claims that expressly include such limitations and, therefore, <u>do</u> require the award of points for on-line product purchase. <u>See, e.g., id.</u> at Claim 1 (containing limitations of "offering, on said Internet webpage, at least one product for sale to said user" and "determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product").

The structure and content of the dependent claims in the '412 patent further suggests that the asserted claims do not require the on-line purchase of products. The independent claims that include a limitation for on-line purchase of products, such as Claim 1 of the '412 patent, are associated with dependent claims that relate to the process for making on-line product purchases described in the specification. <u>See, e.g., id.</u>, at Claim 7 (on-line order form), Claim 8 (on-line link to order computer), Claim 9 (electronic credit check). In stark contrast, the claims depending from the asserted claims, such as Claim 10, all relate to the redemption process and, most significantly, do not refer to any aspects of on-line purchase. <u>See, e.g., id.</u> at Claim 11 (redeeming award and subtracting points from account); Claim 12 (displaying award catalog and accepting selection); Claim 13 (redeeming form); Claim 14 (award catalog).

Maritz's claim construction analysis never focuses on the claim language itself. The <u>only</u> claim language that Maritz points to in support of its claim construction is the language indicating that the "on-line incentive program" "issues award points to users." <u>See</u> D.I. 138 at 6. Maritz then states, without explaining its basis for doing so, that the "user" must be awarded points for "using" the on-line incentive program, and that the only use of such a program disclosed in the specification is the on-line purchase of products. <u>Id.</u> Maritz applies the same illogical analysis to the similar language in Claim 36 of the '412 patent: because the claim states

that the incentive program must "issue points" to users, Maritz asserts, the activity qualifying for the issuance of the points must be an on-line product purchase.[1] D.I. 138 at 6-7.

As discussed in detail in Affinion's Opening Brief (D.I. 139) at 19-21, and addressed below in Section II, issuing points to a user simply means adding points to a user's account. Specifically the "issuing" step is a distinct element from the "determining" and "calculating" steps—neither of which appears in the asserted claims. See D.I. 140, Exh. B, Claim 1. The step of adding points to the user's account does not define the activity or behavior that causes the points to be awarded. Therefore, there is nothing about the issuing of points to a user's account that would limit the asserted claims to the award of points for on-line purchases. Nor can Maritz find any limitation to on-line purchasing in the use of the terms "user" or use of an on-line incentive program. None of the terms Maritz points to in the claim implicate on-line product purchasing.

What Maritz's discussion of the claim language reveals is that there is nothing in the actual claim language "on-line incentive program" relating to the on-line purchase of products. Maritz is plainly asking the Court to do more than interpret the claim language. It is instead asking this Court to rewrite the claims to add limitations that were omitted from the claims. That this Court may not properly do. See Phillips, 415 F.3d at 1312 ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know whereto stop"); Resonate Inc. v. Alteon Websys. Inc., 338 F.3d 1360, 1365 (Fed. Cir. 2003) ("Courts may not rewrite claim language based on what has been omitted from a claim."); Solarex Corp. v. Arco Solar, Inc., 805 F. Supp. 252, 267 (D. Del. 1992) (same).

---

[1] Maritz does not—and cannot—argue that the ordinary meaning of "incentive program" supports its claim construction. In fact, Maritz's expert has conceded that the ordinary meaning of "incentive program" to the person of ordinary skill in the art would not be limited to programs that award points for purchases. See D.I. 138, Exh. N at 13.

### B.    The Specification

Nothing in the specification of the '412 patent purports to limit the scope of the claim language to require on-line product purchase. Maritz cannot identify any specific language in the specification that is alleged to indicate a disclaimer of programs not involving on-line purchases.[2]  Thus, Maritz does not argue that the specification expressly disclaims the implementation of on-line incentive programs that award points for any activity other than the on-line purchase of products. Instead, Maritz's argument is based on the assertion that the specification implicitly requires that each and every claim of the '412 patent contain such a limitation.

Maritz's argument selectively relies on the advantages of the invention iterated in the "Summary of Invention" to assert that the invention requires on-line product purchase. Maritz does not cite to the full list of advantages of the claimed invention because to do so it would have to include the multiple advantages of the invention that <u>are</u> achieved by the claimed invention under Affinion's proposed claim construction. For example, one advantage of the invention is "that it allows a customer to order a prize and redeem the awarded points towards the order prize immediately upon the award of the bonus points, thus enhancing the immediacy effect of the reward program." D.I. 140, Exh. B, at Col. 2, lines 13-17. That advantage is met by the asserted claims, and dovetails with the inventor's stated intent to address the problem of delay in the redemption of awards in incentive programs created by the need to obtain a physical certificate or credit instrument before obtaining an award. See <u>id.</u> at Col. 1, lines 38-40.[3]

---

[2]    Maritz repeatedly refers to the description in the specification of the invention as relating to a "frequency program" but offers no basis to explain why that would support its claim construction, given that the claims use the term "incentive program," not frequency program. Moreover, Maritz does not provide any basis for its position that "frequency programs" are limited to rewarding purchases.

[3]    Maritz also ignores entirely a different advantage of the invention that is not included in the asserted claims: "yet another advantage of the present invention is that it provides an electronic sign-up form for on-line signing up by users." D.I. 140, Exh. B at Col. 2, lines 18-20. That advantage is provided for only in dependent Claims 6, 17, 23 and 34 of the '412 patent.

Similarly, the specification recites the advantage that the invention "allows the customer to select a prize immediately upon the award of the bonus points." Id. at Col. 1, lines 9-12. This advantage too relates solely to the redemption aspects of the invention and provides no support for reading in an on-line purchase limitation.

Thus, each claim of the '412 patent provides certain of the advantages listed in the patent specification, but not necessarily all of the listed advantages. It is well-established that patent claims need not contain each and every advantage of the invention in each and every claim of the patent. See Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1330 (Fed. Cir. 2004) ("The patentees were not required to include within each of their claims all of these advantages or features described as significant or important in the written description."). "An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them." E-Pass Techs., Inc. 343 F.3d at 1390 (footnote omitted). And, as discussed above, Maritz does not contest—and cannot contest—that at least two of the enumerated advantages relate solely to on-line redemption and have nothing whatever to do with on-line purchase.

In Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294 (Fed. Cir. 2003), the Federal Circuit rejected the same sort of reliance on the objectives or advantages of the invention to narrow the scope of the claims that Maritz proposes here. The invention at issue in that case was a device permitting surgical procedures to be performed using robotics. The alleged infringer argued that the claim term requiring that the surgeon be in "a remote location" had to be limited to situations in which the surgeon was outside the operating room, based on the stated advantages of the invention such as "facilitating the performance of operations by surgeons from all over the world." Id. at 1301. The Court rejected these efforts to use the stated advantages to limit the scope of claim terms, holding that "[A]dvantages described in the body of the

specification, if not included in the claims, are not per se limitations to the claimed invention." Id. Therefore, the Court concluded that the performance of surgery from all over the world advantage "is merely one of several objectives that can be achieved through the use of the invention; the written description does not suggest that the invention must be used only in a manner to attain that objective." Id. Here, as in Brookhill, the claims are not properly construed to impose a limitation contained in the advantages of the invention where that limitation is not included in the claim language itself.

In support of its argument, Maritz relies heavily on On Demand Machine Corp. v. Ingram Indus. Inc., 442 F.3d 1331 (Fed. Cir. 2006). That reliance is misplaced. The court in On Demand did not change the well-established principles of claim construction recently reaffirmed by the Federal Circuit in Phillips, but simply applied those principles to the specific claim construction issues raised in that case. See id. at 1337. The intrinsic evidence supporting the limitation of the claims in the On Demand case is utterly absent in this case. Central to the analysis in On Demand was the applicant's positions during patent prosecution and in the patent specification putting forward a narrower interpretation of its claims to overcome prior art. See id. at 1338 ("the prosecution history requires this claim construction, for the inclusion of promotional information was a material distinction from the prior art"); id. at 1340 (relying on fact that specification expressly distinguished prior art that would be covered by the proposed interpretation). Here, in contrast, the applicant did not argue for a narrower view of the claims to overcome the prior art. Indeed, entirely absent from Maritz's analysis is any evidence from the patent specification or the prosecution history of any intent to limit the claims of the invention to the method of using the award of points for on-line purchasing through an Internet webpage or to use such a distinction to overcome the prior art.

    This is not a case in which the claim construction proposed by Affinion would render the invention broader than the invention described in the specification. As discussed in Affinion's Opening Brief (D.I. 139) at 2-3, the specification of the '412 patent expressly refers to the problems with the award redemption process and identifies a technological mechanism to improve that process. <u>See</u> D.I. 140, Exh. B, at Col. 1, lines 38-40, 52-55, Col. 2, lines 21-32. The specification then lists, as among the advantages of the invention, the improvement of that redemption process through the use of the invention. <u>See</u> <u>id.</u> at Col. 2, lines 9-17. Thus, the use of the Internet for on-line redemption is recognized in the specification as an advantage of the invention designed to solve one of the problems specifically delineated in the description of the prior art. As explained in Affinion's Opening Brief (D.I. 139) at 12-13, Maritz's assertion that the prior art described in the '412 patent specification is strictly limited to purchase-based programs is incorrect. EP 0 308 224, cited in the specification's discussion of the prior art specifically <u>includes</u> non-purchase programs, including employee incentive programs. <u>See</u> <u>id.</u>

    Maritz also argues that the claims should be read to include a limitation that points must have been awarded for on-line purchases because the preferred embodiment describes the award of points for on-line purchasing activity. <u>See</u> D.I. 138 at 7-8. In its effort to find a way to avoid infringement of the patent claims, Maritz attempts to equate the claimed "incentive programs" with "frequency programs" and then insists, without any evidence to support doing so, that frequency programs are limited to consumer purchase programs.[4] References in the specification to a preferred embodiment, or an illustrative example, do not limit the scope of the patent claim. <u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 980 (Fed. Cir. 1995) (<u>en banc</u>), <u>aff'd</u> 517 U.S. 370 (1996). Moreover, the claims are not limited to devices operated precisely as the

---

[4]    Maritz's reliance on the title of the patent as a basis for construing the claims is contrary to the Federal Circuit's instruction that the titles of patents are unimportant for construing the claim language. <u>See</u> <u>Pitney Bowes, Inc. v. Hewlett-Packard Co.</u>, 182 F.3d 1298, 1312 (Fed. Cir. 1999) (describing "near irrelevancy" of patent title to claim construction).

preferred embodiment operates, even if only a single embodiment is described, unless the specification requires a certain limitation. See Phillips, 415 F.3d at 1323 ("We have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); Liebel-Flarsheim Co., 358 F.3d at 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope.").

Because it would be improper to read limitations from the specification into the claim under the circumstances set forth herein, the specification supports Affinion's proposed construction of "on-line incentive program."

### C.    The Prosecution History

The prosecution history of the '412 patent supports Affinion's construction, not Maritz's. Maritz completely ignores the applicant's description of the asserted claims in the Petition to Make Special, which repeatedly <u>distinguished</u> the asserted claims from those claims requiring on-line purchase.[5] As set forth in detail in Affinion's Opening Brief (D.I. 139) at 5, 17-19, the applicant separated the claims into two distinct groupings and consistently described the asserted claims (Claims 10, 27, and 36 and claims that depend therefrom) as specific to the redeeming of points and the other, unasserted claims as specific to the awarding of points for on-line product purchasing. See D.I. 140, Exh. D at 2-3 (describing issued claims 1-9, 18-26 and 35 as "implementing an on-line incentive program" where "at least one product is offered for sale to

---

[5]    The applicant stated in the Petition to Make Special that it "believes all claims pending in the present application are directed to a single invention" but that "if the PTO determines that the claims presented are not directed to single invention" it would make an "election, without traverse ... through the established telephone restriction practice." D.I. 140, Exh. D at 1-2. This standard statement relates to the PTO's "restriction" practice and the conditions for obtaining expedited examination. See Exh. T (M.P.E.P.) at § 708.02 VIII. An examiner may require an applicant to elect for examination certain claims and withdraw other claims when he finds the claims to be directed to "independent and distinct inventions." 35 U.S.C. § 121. What constitutes "independent and distinct inventions" can be complex and an entire chapter of the MPEP is devoted to it, but it does not mean that the claims of the patent must all have the same scope or cover the same steps. See id. at Chp. 800.

the user on the Internet web page," but issued claims 10, 27 and 36 and their dependent claims as "directed towards redeeming incentive awards in an on-line incentive program"). If Maritz's interpretation of the asserted claims were correct, the applicant logically would have distinguished all of the claims—including the asserted claims—over the prior art based on the absence in the prior art of awarding points for on-line product purchase. That is, however, not what the prosecution history shows. Instead, the applicant distinguished the asserted claims from the prior art on grounds unrelated to on-line product purchase. For example, in distinguishing U.S. Patent No. 5,794,210, the applicant stated:

> The '210 Patent does not disclose an on-line incentive system wherein a user earns award points based on a response to purchase at least one product offered for sale on an Internet web page, as claimed in [issued claims 1-9, 18-26 and 35]. Similarly, the '210 Patent fails to disclose redeeming incentive awards via an Internet web page, as claimed in [issued claims 10-17, 27-34 and 36].

Id. at 7 (emphasis added).

Ignoring the one portion of the prosecution history in which the applicant actually delineated the scope of the asserted claims, Maritz instead addresses only the patent examiner's obviousness-type double patenting rejection. Maritz takes the examiner's simple assessment that Claim 10 "is similar to" Claim 17 of the earlier-issued '870 patent and attempts to stretch it beyond recognition by concluding incorrectly that the examiner "viewed" Claim 10 as "limited to a frequency program that awarded points to users for making on-line purchases." D.I. 138 at 8-9. There is no evidence that the examiner so believed and the limited written record does not support that conclusion. The examiner did not equate the two claims, but found only that Claim 10 was an "obvious variation" of Claim 17, a claim that includes many elements, including but not limited to the features of an on-line redemption process. See D.I. 140, Exh. E at Claim 17.[6]

---

[6]    This rejection was overcome with a terminal disclaimer. A terminal disclaimer can only be used to overcome "obviousness-type" double patenting, not "same invention" double patenting. Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 940 (Fed. Cir. 1992). The fact that the claims were rejected for obviousness type double patenting indicates that the examiner recognized that the claims are not to the same invention. See id.; see also

Maritz's assertion that the examiner found the absence of reference to an Internet webpage as the "only" difference between the two claims is plainly incorrect, as Claim 17 contains numerous elements that are not contained in Claim 10. Compare D.I. 140, Exh. E at Claim 17 with D.I. 140, Exh. B at Claim 10.[7]

With nothing to point to in the prosecution history of the patent at issue, Maritz turns to the prosecution history of the parent patent application, which issued as the '870 patent. In doing so, however, Maritz improperly ignores the differences between the claims of the two applications. Each of the claims of the '870 patent, except for claims 29 and 30, contain both an on-line product catalog and an on-line award catalog. See D.I. 140, Exh. E. Thus, it is hardly surprising that the examiner would refer to that particular combination of elements in the Notice of Allowability. See id., Exh. F. It in no way follows, as Maritz asserts, that because the examiner concluded that those particular claims were novel and non-obvious, that those were the only novel, non-obvious claims that could be patented.[8]

Moreover, Maritz misinterprets the examiner's statement as to the reasons why he allowed the claims. The examiner states in the Notice of Allowability that what was missing from the prior art was the "combining the features of both [electronic commerce systems and incentive award programs] to create the invention of the instant application." Id. Such a novel combination of the technology of electronic commerce and the art of frequency programs is

---

Callicrate v. New Age Indus. Corp., 2005 U.S. Dist. LEXIS 8934, at *78 (D. Kan. 2005) ("[A] terminal disclaimer is not evidence that two patents are identical, but rather suggests otherwise.").

[7]    As demonstrated by the case relied on by Maritz, Salazar v. Procter & Gamble, Co., 414 F.3d 1342 (Fed. Cir. 2005), the statements by the examiner on which Maritz relies cannot be used to narrow the scope of the claims. Id. at 1345, 1347 (applicant's silence in the face of examiner's statements is not a disavowal of claim scope because "[a]fter all, the applicant has disavowed nothing" and "this court refuses to create a rule or presumption that the applicant in this case disavowed claim scope by silence"). See also 3M Innovative Props. Co. v. Avay Dennison Corp., 350 F.3d 1365, 1373 (Fed. Cir. 2003) ("Prosecution history . . . cannot be used to limit the scope of a claim unless the applicant took a position before the PTO").

[8]    The same issue applies to Maritz's reliance on the examiner's statements in the prosecution history of the later-issued '012 patent, the claims of which also require both an on-line product catalog and on-line award catalog.

exactly what is contained in the asserted claims' combination of using Internet webpages to permit redemption of award points earned in incentive programs.

Thus, when read in its entirety, the prosecution history supports Affinion's proposed construction of the claim term "on-line incentive program."

### D.    The Extrinsic Evidence

Finally, Maritz relies on various pieces of extrinsic evidence as the basis for its construction of the claim term "on-line incentive program."  Closer examination of this evidence demonstrates that it does not provide any support for Maritz's proposed claim construction.

First, Maritz points to snippets of testimony of inventor Tom Storey in prior litigation taken utterly out of context, none of which actually discuss the issue of how to interpret the term "on-line incentive program."[9]  Although Maritz deposed Mr. Storey in this case for an entire day, Maritz never asked him his view of the claim terms at issue in this case, or about the testimony that is quoted out of context in Maritz's brief.  The testimony Maritz quotes and attaches to its brief concerning the meaning of "fully integrated" was part of an answer that ran over four deposition pages.  See Exh. S at 205-09.  More importantly, that question and answer related to the use of the term "fully integrated" in the context of the '870 patent—a term that is not included in any of the asserted claims.  See D.I. 140, Exh. B, at Claims 10-17, 27-34, 36.

Likewise, Maritz's second quotation from Mr. Storey's deposition is truncated to avoid the fact that the testimony of Mr. Storey is actually consistent with Affinion's claim construction, particularly with respect to the importance of a program homepage to the invention.  The full testimony from Mr. Storey is as follows:

---

[9]    Maritz ignores the Federal Circuit's cautions about giving weight to the testimony of inventors concerning the scope of claim terms.  See, e.g., E-Pass Techs., Inc., 343 F.3d at 1370 n. 5 ("This court has often repeated that inventor testimony is of little probative value for purposes of claim construction.").  In any event, the testimony here does not even purport to interpret the claim terms as Maritz proposes.

> Q.   I want to know if the program homepage has to reside on the same server as the product information home page in order for it to be a fully integrated system.
>
> A.   For it to be a fully integrated web-based or online interactive system, the capability needs to exist to allow the product or service purchaser to interact directly with any aspect of the home page, whether it is a program home page or a product homepage in realtime. Which my definition of realtime is within the constraints of the Internet in its latest embodiment. And there are a number of ways technically that those skilled in the art would be able to accomplish that.

Exh. S at 212 (emphasis added). The underlined portions of the testimony were elided from the quote in Maritz's opening brief. As the full quote reveals, this testimony has nothing to do with the meaning of "on-line incentive program."

Second, Maritz points to a statement on the Netcentives website in 2001 (Netcentives was the owner of the patents at that time). See D.I. 138 at 10. The Netcentives statement does not use the words "on-line incentive program" at all and is simply describing the aspects of its then-existing programs that were covered by the patents. See D.I. 138, Exh. 7 at MAR 115747. There is no indication that Netcentives intended its statement to be limiting the scope of the patent claims, particularly since it states in the very section quoted by Maritz that the patents cover methods, systems, and software developed by Netcentives, "including" those related to its on-line interactive frequency and award redemption program. See id. Moreover, on the same page of the document cited by Maritz, Netcentives described the breadth of the patent coverage as extending beyond Netcentives' then-existing products:

> The patents relate to Netcentives' interactive online incentives technology and, among other protections, safeguard processes that enable bonus point rewards and redemptions in real time. They protect Netcentives' business as our products and services expand. For example, some Netcentives customers look to us for large-scale, turnkey loyalty programs. For other customers, we deliver the infrastructure, and they operate part or all of the system. Together, these two patents protect our intellectual property regardless of who operates the system.

Id.

To suggest that Netcentives thought that its patent protection was limited the scope of the programs it was operating in 2001 is contrary to the very document cited by Maritz.

To the extent that Netcentives' view of the scope of its patents is considered at all relevant to claim construction, Netcentives made plain elsewhere that it viewed the scope of the patent as including incentive programs having on-line redemption, regardless of how those points were earned. For example, during that same time period, Netcentives operated the ClickRewards@Work program, which provided a way to "award ClickMiles, a valuable digital currency, to employees, partners, vendors or anyone else you want to keep doing business with you." See Exh. U. The activity being incentivized by the ClickRewards@Work program was not on-line purchasing activity. Nonetheless, Netcentives described the non-purchase programs of Click Rewards@Work as being covered by the patents. Id.

Moreover, in its license agreements, Netcentives also described the on-line incentive programs that were the subject of the license specifically to include incentive programs that provided either the award of points for on-line activity or the on-line redemption of points. See Exh. V at ¶ 2.1 (defining "Online Incentive Program" as one in which "(i) payments of rewards or incentives (including but not limited to cash, points, frequent flier miles or other forms of compensation) are made to participating members of the program in return for taking defined online actions (including but not limited to responding in predetermined ways to information or offers, or making purchases) or (ii) participating members are enabled to spend accumulated awards or incentives in such members' accounts for goods or services, or to donate such rewards or incentives") (emphasis added); Exh. W at ¶ 2.6 (defining "Online Reward/Incentive Program" as one in which "(i) distribution of rewards are incentives . . . are made to participating members of the Program or service in return for taking defined actions (including but not limited to

responding in predetermined ways to information or to offers, or making purchases); or (ii) members are enable to spend accumulated rewards or incentives in such members' account for goods or services, **or** to donate such rewards or incentives or to exchange them with other online or offline reward/incentive Programs or with other members of the Program or other online or offline reward/incentives Programs") (emphasis added).    Therefore, to the extent the Court believes that reference to extrinsic evidence is useful at all, that evidence favors Affinion's proposed construction.

## II.    "ISSUES AWARD POINTS TO USERS"

The asserted claims of the '412 patent each contain the limitation that the on-line incentive program be one that "issues award points to users."  For the reasons discussed in Affinion's Opening Brief (D.I. 139) at 19-21, the program issues award points to users by adding points to the users' accounts.  Maritz asserts, however, that the claim term "issues award points to users" must be read to require that the on-line incentive program "(1) determine whether the behavior qualifying for award points is by an enrolled user; (2) calculate the award points to be issued according to a preprogrammed formula; and (3) add the calculated points to the enrolled user's account." D.I. 138 at 11.  Maritz is wrong.

### A.    The Claim Language

As addressed in Affinion's Opening Brief (D.I. 139) at 20, Maritz's construction of "issues award points to users" is directly contrary to the language of the claims.  The claims of the '412 patent make plain that the step of issuing award points to users is a separate, distinct step in the process from the "determining" and "calculating" steps.  Specifically, Claim 1 of the '412 patent lists these as three separate steps:

> determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product;

> calculating said award points according to a preprogrammed formula if said user qualifies for said award points; and
>
> issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

D.I. 140, Exh. B at Claim 1.

Under Maritz's proposed interpretation, Claim 1 of the '412 patent would make no sense at all because it would require the "determining" and "calculating" steps twice: once as separate, expressly stated steps in the claimed method and then again as part of the construction of what is required by the "issuing" step.[10]

The Court should not adopt a claim construction that would render significant portions of a patent claim redundant. See e.g., RF Del., Inc. v. Pac. Keystone Techs. Inc., 326 F.3d 1255, 1263 (Fed. Cir. 2003)(rejecting proposed claim construction that would render language used in another patent claim redundant). The patent's use of separate claim steps for the limitations of "determining," "calculating," and "issuing" shows that the "issuing" of award points does not incorporate those two separately enumerated steps.

### B.     The Specification

The portion of the specification describing the preferred embodiment cited by Maritz supports Affinion's proposed construction. The specification provides that:

> As shown in Fig. 2, while the communication link is established to the product company, the program also proceeds to the FREQUENCY DATABASE, 170. In FREQUENCY DATABASE 170 the user's information is checked against the database of enrolled users. If it is determined that the user is an enrolled user, 180E, the program proceeds to step 190 to calculate the award points according to a preprogrammed formula. Thereafter the program proceeds to add the points to the enrolled user's account, 200, and display the account information and the added points to the user.

D.I. 140, Exh. B at Col. 5, lines 44-53 (emphasis added).

---

[10]     The additional step of determining whether the user is already enrolled is a limitation of Claim 2. See D.I. 140, Exh. B at Claim 2.

The description of the preferred embodiment describes three steps: determining, calculating, and adding to the account. Claim 1 describes three steps corresponding to the steps described in the specification of the preferred embodiment: determining, calculating and issuing points to the user. Claim 2 further refines the "determining" step to add determining whether said user is already enrolled. The logical conclusion is that the "issuing" step is the adding of points to the user's account. Therefore, because claim terms should be interpreted consistently within a patent, see Phillips, 415 F.3d at 1314, the requirement in the asserted claims that the on-line incentive program be one that "issues award points to users" should be interpreted to mean that the on-line incentive program must add points to the user's account.

### C.    The Prosecution History and Extrinsic Evidence

Maritz does not cite to anything in the prosecution history that it contends supports its construction of "issues award points" and does not point to any extrinsic evidence supporting its construction.

### III.    "WHEREIN SAID AWARD POINTS ARE REDEEMABLE BY SAID USER FOR AN AWARD"

The asserted claims of the '412 patent contain the limitation that the on-line incentive program issues award points, "wherein said award points are redeemable by said user for an award." Affinion did not address this particular phrase of the asserted claims in its Opening Brief because it did not believe that the phrase required any additional construction by the Court. Maritz argues, however, that this phrase carries with it two additional limitations: (1) that the points must be awarded for purchases from an on-line catalog and (2) that the points must be immediately redeemable. Neither of these two limitations can be properly read into the claims as part of the construction of this claim language.

First, for the same reasons set forth above, the asserted claims do not require that the on-line incentive program award points for purchases from an on-line catalog at all. As a result, those claims cannot be interpreted to require the immediate award of points upon completion of such a purchase.

Second, Maritz's proposed claim construction is further flawed because there is no claim term that requires "immediacy" as a limitation of the claim. Maritz purports to find the "immediacy" limitation in the requirement that the points "are redeemable by said user for an award." Once again, Maritz's treatment of the advantages of the invention completely ignores the specification's discussion of the problems the inventor saw with the redemption process in incentive programs. As discussed in Affinion's Opening Brief (D.I. 139) at 2-3, the specification describes the problem of delay in obtaining the physical document traditionally needed to obtain an award, such as a certificate or credit instrument. That problem was the focus of the inventor that he sought to address with an on-line redemption method by using Internet technology.

Maritz incorrectly argues that the applicant distinguished the prior art on the basis of immediate point issuance upon the on-line purchase of products. The quoted portion of the specification, consistent with the remainder of the specification, concludes that the immediacy effect is lacking with respect to programs that have the problem of obtaining the credit instrument for redeeming the awarded points (i.e., those programs that lack on-line redemption), as well as in those programs that require substantial processing time before points are awarded. See D.I. 140, Exh. B, Col. 1, lines 52-55.

Maritz's reliance on its reading of Mr. Storey's notes is also misplaced. First, it is difficult to interpret handwritten notes and Maritz did not bother to obtain testimony from Mr. Storey about what his notes meant.[11] In any event, Mr. Storey testified in his previous deposition

---

[11]    These notes predate the drafting of the asserted claims by several years and therefore cannot be addressing

that when he used the term realtime (as he did in the notes cited by Maritz), he meant only "within the constraints of the Internet." Exh. S at 213. Thus, what Mr. Storey would have meant by notes referring to the scope of his invention in reference to the Cohen patent would have been only that it operated within the time constraints of the Internet.

The "immediacy" described as being among the advantages of the invention in the specification is not a separate claim limitation, rather it is the expected outcome of the use of the technology specified in the claim terms.  Thus, the inventor believed that by using the technology of the Internet to deliver incentive programs, the invention would have the advantage of immediacy.  There is no basis for reading a separate "immediacy" limitation into the claim terms, which contain no mention of the timing of the availability of points for redemption, beyond the fact that the awards can be redeemed through on-line interactive communication through an Internet webpage.[12]

## IV.    "IMPLEMENTING AN ON-LINE INCENTIVE PROGRAM THAT ISSUES POINTS TO USERS"

Maritz apparently argues that the term "implementing" is yet another basis for adding the limitations of on-line purchases with the immediate award of points. D.I. 138 at 15.  For all the reasons set forth above, the asserted claims do not contain those limitations and they certainly cannot be found in the word "implementing."

In its chart of proposed claim constructions, Maritz defines "implementing" as "to carry out" or "to put into effect."  Affinion does not believe that the term "implementing" requires additional explanation by the Court and there does not seem to be any dispute by Maritz's witnesses that Maritz's systems are "implementing" programs for its clients.  See, e.g., Exh. X at

the meaning of the claims in the '412 patent.  The notes refer to a potential commercial embodiment called "Addem Up".  See D.I. 138, Exh. 9 at TRL-MTZ 14311.

[12]      Maritz does not address how this proposed "immediacy" limitation would be defined for purposes of determining infringement or validity.

12-13, 32.  Should the Court believe that "implementing" does warrant construction by the Court, Affinion believes that "to carry out" or "to put into effect" is an acceptable construction.

## V.    "ON-LINE"

As discussed in Affinion's Opening Brief at 9-12, "on-line" in the context of the '412 patent is defined as being accessible through the Internet.  Maritz asks that the Court define the term "on-line" as "connected to a computer network that allows for the real-time exchange of information." D.I. 138 at 16.

Maritz's proposed construction of "on-line" is utterly divorced from the language used in the specification.  The references in the specification cited by Maritz as being "on-line" are also expressly conducted through the Internet.  See, e.g., D.I. 140, Exh. B at Col. 3, line 13-Col. 5, line 43 (discussing use of homepages), Figure 2 (same).  Moreover, as discussed in detail in Affinion's Opening Brief at (D.I. 139) at 10, every one of the asserted claims requires that the on-line interactive communication be done through an Internet webpage, thereby making clear that the communication is limited to the Internet.  For that reason, even Maritz concedes that the limitation when read as a whole "requires immediate two-way communication between the on-line incentive program and a user via the Internet." D.I. 138 at 18.

Finally, Maritz seeks to inject the word "realtime" into the definition of "on-line" even though the term "realtime" is never used in the specification or prosecution history.  The use of the term "on-line" defines the mechanism of the communication, over the Internet.  Nothing in the claims, specification, or prosecution history suggests that the use of the term "on-line" adds an additional limitation that such communications be "realtime."

## VI.    "PERMITTING A USER TO PREVIEW INFORMATION ABOUT SAID ON-LINE INCENTIVE PROGRAM FROM SAID INTERNET WEBPAGE"

Maritz states that this limitation in Claims 16 and 33 "requires a webpage that contains information about the on-line incentive program." Id.  It is not clear from Maritz's sketchy

discussion of this element whether Maritz contends that the preview information must be placed on a separate webpage from the webpage described in independent Claim 10.  If so, that construction would narrow the claim language improperly.  This limitation requires only that a user be permitted to see information about the on-line incentive program from the webpage, not that such information must be on a separate webpage such as the "About Award Program" webpage described in the preferred embodiment.

## VII.    "ON-LINE LINK TO AN AWARD COMPUTER"

Maritz asserts that the claim term "Award Computer" in Claims 13 and 30 is "a computer operated by a fulfillment house or product manufacturer."  Id.  Maritz's proposed construction is incorrect.

The claim language does not support this interpretation of the "award computer" limitation.  The claim explains that the entries of the on-line redeeming form are sent to the "award computer" from the user.  See D.I. 140, Exh. B, at Claim 13 ("sending via said on-line link, entries of said on-line redeeming form to said award computer").  The claim does not mention the fulfillment house or product manufacturer, in contrast to claims of the '870 patent that specifically cite on-line links to product manufacturers, for example.  See id. at Claim 17 ("establishing an on-line link to a computer of a seller of a  product . . . and electronically communicating said purchase order form together with said entries to said seller").  Therefore, for the reasons set forth in Affinion's Opening Brief (D.I. 139) at 29, the award computer is not tied to the fulfillment house or product manufacturer, but instead refers to the computer that receives the interactive communication from the user indicating on the on-line redeeming form which award he seeks to redeem his points to obtain.

Contrary to Maritz's assertion, see D.I. 138 at 18, the term "award computer" is never used in the specification.  The section of the specification cited by Maritz is part of the

description of the preferred embodiment and does not appear to provide a definition of the "award computer." Therefore, the specification does not alter the interpretation based on the claim language. Maritz does not cite to any evidence in the prosecution history or any extrinsic evidence that supports its construction of this claim term. Therefore, Maritz's proposed construction of "award computer" should be rejected.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Affinion's Opening Brief, Affinion requests that the Court adopt the following constructions:

1. **"On-line"** means "accessible through the Internet."

2. **"Incentive program"** means "a program that uses the award of points (which may be denoted as miles, points, credits or any other similar measurement) that are redeemable as awards to incentivize certain behaviors."

3. **"On-line incentive program"** means "a program that uses the award of points that are redeemable for awards to incentivize certain behaviors and which operates a program webpage which permits users to interact with the incentive program on-line."

4. **"Issues award points to users"** means "adds points to a user's account that are redeemable by said user for an award."

5. **"On-line interactive communications"** means "communications via the Internet that allow the user to provide and receive information to and from the website."

6. **"Redeemable award"** means "a product or service that can be obtained as a prize or award in exchange for award points."

7. **"Users"** means "persons enrolled in the incentive program as well as others who may be eligible to enroll in the incentive program, merchants, product manufacturers and award program administrators."

8. **"Awards catalog"** means "a compilation of award descriptions and point values."

9. **"On-line link to an award computer"** means "a link through the Internet to the computer that accepts award information from the user."

10. **"On-line redeeming form"** means "an electronic form accessible through the Internet that specifies an award for redeeming award points."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika ((#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
mnoreika@mnat.com
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Net Patents, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

May 24, 2006
521969

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on May 24, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on May 24, 2006 upon the following in the manner indicated:

### BY HAND

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

J. Bennett Clark
Senniger Powers
One Metropolitan Square
St. Louis, MO  63102

/s/ Maryellen Noreika
Maryellen Noreika (#3208)
mnoreika@mnat.com

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on May 31, 2006, I electronically filed the Redacted Public Version of Answering Brief of Plaintiff Affinion Net Patents, Inc. Concerning Claim Construction with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on May 31, 2006 upon the following in the manner indicated:

### BY HAND

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> J. Bennett Clark
> Senniger Powers
> One Metropolitan Square
> St. Louis, MO 63102

> */s/ Maryellen Noreika*
> Maryellen Noreika (#3208)
> mnoreika@mnat.com