EXHIBIT 26



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#5

| | | |
|---|---|---|
| In re Application | ) | PATENT APPLICATION |
| | ) | |
| Inventor:     Thomas W. Storey | ) | Examiner: |
| | ) | |
| SC/Serial No.:     09/105,227 | ) | Art Unit: 2761 |
| | ) | |
| Filed:     June 25, 1998 | ) | |
| | ) | |
| Title:   **FULLY INTEGRATED, ON-LINE** | ) | RECEIVED |
|      **INTERACTIVE FREQUENCY AND** | ) | |
|      **AWARD REDEMPTION PROGRAM** | ) | NOV 02 1998 |
| | ) | Group 2700 |
| which is a continuation of | ) | |
| SC/Serial No.: 08/572,017 - filed 12/14/95, now | ) | |
| U.S. Patent No. 5,774,870 - issued 6/30/98 | ) | |
| | ) | |

PETITION TO MAKE SPECIAL

The Honorable Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicant hereby petitions that the above-identified patent application be granted special

status so that the examination of the application may be advanced. Applicant files this petition

in accordance with MPEP §708.02, Part VIII. A fee, as required by 37 C.F.R. §1.17(i), is

enclosed herewith.

10/30/1998 AIBRAHIM 00000061 09105227
01 FC:122            130.00 OP

In accordance with the requirements of this petition under MPEP §708.02, Part VIII,

Applicant believes all claims pending in the present application are directed to a single invention.

However, if the PTO determines that the claims presented are not directed to a single invention,

Attorney Docket No.: NETC1001CON1MCF/JCS
jcs/netc/1001con1/1001con1.007

- 1 -

Applicant acknowledges that an election, without traverse, will be made through the established telephone restriction practice.

A. Claims Pending in the Present Application:

Applicant submitted, with the filing of the above-identified application, a preliminary amendment. Applicant submitted in the preliminary amendment 35 claims for consideration. Claims 31, 40, 48, 57, 65 and 66 are independent claims.

Claims 31-39, 48-56, and 65 are directed toward "implementing an on-line incentive program." The on-line incentive program includes an Internet web page, accessible to at least one user via a computer system, to provide interactive communications between the user and the Internet web page. At least one product is offered for sale to the user on the Internet web page. The on-line incentive program determines whether the user qualifies for one or more award points based on the user's response to purchase a product. If the user qualifies for award points, the award points are calculated according to a preprogrammed formula, and the award points are issued to an account of the user. The award points are redeemable by the user for an award. Claims 32 and 49 include additional limitations for an on-line incentive program that determines whether the user is enrolled in the incentive program. Claims 33 and 50 further include the limitation that the on-line incentive program checks a frequency database, which includes user enrollment information, to determine whether the user is enrolled in the incentive program. Claims 34-35 and 51-52 include additional limitations regarding the display of user award points sufficient to qualify for an incentive award. Claims 36 and 53 are directed towards user enrollment in the on-line incentive program. Claims 37-38 and 54-55 contain limitations directed

towards allowing a user to order a product. Claims 39 and 56 are directed towards the use of credit in the on-line incentive program.

Independent claims 40, 57, and 66 are directed towards redeeming incentive awards in an on-line incentive program. An on-line incentive program issues award points to users, and the award points are redeemable by the user for an award. To allow a user to redeem the award points, an Internet web page, accessible via a computer system to a user, is implemented. The Internet web page offers at least one redeemable award available to the user for exchange of the award points. Through interactive communication between the user and the Internet web page, a user is permitted to initiate a process to receive an award for exchange of the award points. Claims 41-43 and 58-60 include limitations directed towards a user redeeming award points for an award. Claims 44-47 and 61-64 are directed towards permitting a user to conduct activity related to the award program (*i.e.*, review an awards catalog, review the user's account, preview information about the on-line incentive program, and apply for membership).

B. U.S. Patent 5,774,780 - Parent Application:

The present application is a continuation of U.S. patent application Serial No. 08/572,012, filed December 14, 1995, now U.S. Patent No. 5,774,870. The '870 Patent contains 30 claims -- claims 1, 17, 24, 29 and 30 are independent claims. Claim 1 sets forth a computer system with first and second memory areas for storing a product catalog and an awards catalog, respectively. The computer system also includes a frequency database that stores account information for enrolled users of the incentive program. Independent claim 17 is a method claim for providing an on-line shopping and frequency award program. Claim 17 includes several features, such as

a "product catalog", an "on-line purchase order form", "award points catalog", and an "on-line award redeem form."

Independent claim 24, a computer readable substrate claim, includes features directed towards: a searchable product database of products available for on-line purchase; an on-line order form to permit a user to order a product for purchase; and the ability to verify billable credit for the user. Independent claim 29, a method claim, is directed towards storing and displaying a database of articles. Features of claim 29 include defining escalating levels for articles in the database and making available, depending upon a request, only those articles corresponding to a level and any lower level. Claim 30, also a method claim, is directed towards storing and displaying a database of articles. Features of claim 30 include defining escalating levels, flagging articles to designate one of the escalating levels, and making available for review only those articles flagged based on the qualification of the request and any lower level than the level corresponding to which the request qualifies.

The claims of the '870 Patent are directed towards numerous features for on-line shopping as well as an on-line incentive program. However, the claims of the present application, directed towards implementing an on-line incentive program, are different in scope and do not constitute anticipatory or obviousness type double patenting.

C. Applicant's Search:

A search by a professional patent searcher has been conducted to identify references that may be relevant to the claims of the present application. The present application is a continuation

of U.S. Patent Application Serial No. 08/572,017, now U.S. Patent 5,774,870 ("the '870 Patent").

The '870 Patent was classified in categories 705/14, 705/17, 705/26, and 705/27. References

were searched in the same areas as the above-identified classification of the '870 Patent. In

addition, a search was conducted in subclasses 705/14, 705/17, 705/26, and 705/27. Furthermore,

a computer text search, using appropriate key words, was conducted on the APS Computer

System at the USPTO. One copy of each of the references identified from the above described

search are enclosed herewith. Applicant discloses these references for purposes of this petition;

however, Applicant makes no admissions regarding the materiality of the references or whether

the references are prior art with respect to the present application.

1.    U.S. Patent 5,761,648 ("the '648 Patent"):

The '648 Patent discloses a data processing system that issues electronic certificates

through an online network of personal computers and other devices. These electronic certificates

may be used as a coupon for a discounted price on a product or service, proof of a gift or reward,

proof of reservation, or proof of payment. The data processing system also issues reports

regarding the electronic certificates issued. As such, the '648 Patent does not disclose or suggest

an on-line incentive system that offers products for sale on an Internet web page, determines user

qualifications for award points, calculates the award points, and issues the award points to an

account of a user as set forth in claims 31-39, 48-56 and 65. Also, the '648 Patent does not

disclose or suggest a system that permits a user, via an Internet web page, to redeem award points

for an award associated with an on-line incentive program as claimed in claims 40-47, 57-64 and

66.

2.    U.S. Patent 5,806,045 ("the '045 Patent"):

The '045 Patent discloses an incentive program system that includes a customer-carried portable device, a provider device, and a base device that coordinates the interaction of the customer device and the provider device.  The customer device and the provider device take the form of a "smart card", which consists of a processor and a read-only memory.    This configuration permits conducting transactions without the need to consult a common authority, and thus transactions may be conducted off-line.  In accordance with the incentive program disclosed in the '045 Patent, incentive credits are allocated through a transaction between a customer and a provider.  From the consumer/provider transaction, a transaction amount is derived.  The consumer may redeem any accrued incentive credits in a future transaction.

The incentive program disclosed in the '045 Patent uses a provider device and a base device.  Accordingly, the '045 Patent does not disclose nor suggest an on-line incentive program that offers products for sale on an Internet web page, and issues award points if a user qualifies as claimed in claims 31-39, 48-56 and 65.  Similarly, the '045 Patent does not teach toward nor disclose implementing a means to redeem awards from an Internet web page as claimed in claims 40-47, 57-64 and 66.

3.    U.S. Patent 5,806,044 ("the '044 Patent"):

The '044 Patent discloses a system for dispensing and redeeming electronic discount coupons.[1]  The system generates electronic coupons from a personal computer after receiving a

---

[1]  The '044 Patent was filed February 20, 1996, and thus is not prior art to the present application.

coupon in a binary format. The coupon data is written onto a portable customer card, and the customer is permitted to redeem the electronic coupon at stores by inserting the card into a checkout station. The customer receives credit according to the value of the electronic coupon.

The '044 Patent does not disclose techniques for earning award points via an Internet web page, and thus is unrelated to the limitations of claims 31-39, 48-56 and 65. Similarly, the '044 Patent does not relate to an on-line incentive program where a user may redeem award points through an Internet web page as claimed in claims 40-47, 57-64 and 66.

4.   U.S. Patent 5,794,210 ("the '210 Patent"):

The '210 Patent discloses a system for "attention brokerage." The system offers users "negatively priced information", such as an advertisement, for which the user is compensated. The negatively priced information or advertisements may be targeted to particular users based on demographic profiles stored in a database. In addition, software agents may actively seek out users on a digital network based on these user profiles. The '210 Patent also discloses the concept of "orthogonal sponsorship", wherein advertisers detach their messages from program content to explicitly target their audience.

The '210 Patent does not disclose an on-line incentive system wherein a user earns award points based on a response to purchase at least one product offered for sale on an Internet web page, as claimed in claims 31-39, 48-56 and 65. Similarly, the '210 Patent fails to disclose redeeming incentive awards via an Internet web page, as claimed in claims 40-47, 57-64 and 66.

5.     <u>U.S. Patent 5,765,141 ("the '141 Patent")</u>:

The '141 Patent discloses a computerized system that generates certificates.  These certificates provide an option to either purchase merchandise from a company or purchase stock from that same company.  The '141 Patent does not disclose an on-line incentive system as claimed in claims 31-66 of the present application.

6.     <u>U.S. Patent 5,715,314 ("the '314 Patent")</u>:

The '314 Patent discloses a sales system that includes a buyer computer, a payment computer, and a merchant computer.  The buyer computer receives a user request to purchase a product, and in turn transmits a payment message to the payment computer.  The payment computer identifies a particular product, and creates an access message for the merchant computer.  The merchant computer, upon receiving and verifying the access message, causes the product ordered to be sent to the user desiring to buy the product.  Although the '314 Patent discloses a network sales system, it does not disclose an incentive system implemented with on-line interactive communications between the user and an Internet web page as claimed in the present application.

7.     <u>U.S. Patent 5,483,444 ("the 444 Patent")</u>:

The '444 Patent discloses a computerized system that awards credits to persons who book travel related reservations.  The system uses a computerized reservation system (CRS) such as the SABRE and APOLLO.  (Col. 3, lines 43-48).  Through the CRS, the system assigns credits to a person identified by a code, wherein the code identifies a person who created or initiated the travel related reservation.  Accordingly, persons who enter travel related reservations build up

credits, and may receive a particular incentive, such as an award or prize. The '444 Patent does not disclose or suggest an on-line incentive system that offers products for sale on an Internet web page as set forth in claims 31-39, 48-56 and 65. Also, the '444 Patent does not disclose or suggest a system that permits a user, via an Internet web page, to redeem award points for an award associated with an on-line incentive program as claimed in claims 40-47, 57-64 and 66.

       8.    U.S. Patent 5,708,780 ("the '780 Patent"):

The '780 Patent discloses a network server that controls client-server sessions over the Internet. The process described involves hypertext files, wherein a client views a document transmitted by the server with a browser. Each hypertext document or page contains links to other hypertext pages which the user may select to traverse. For access control, if a user selects a link that is directed to an access controlled file, the system, through a secondary server, determines whether the client has authorization to view the file. The '780 Patent does not relate to an on-line incentive system that offers products for sale on an Internet web page, and issues award points to an account of a user as set forth in claims 31-39, 48-56 and 65. Similarly, the access control system of the '780 Patent does not relate to an incentive system that permits a user, via an Internet web page, to redeem award points as claimed in claims 40-47, 57-64 and 66.

D.  International Search Report for U.S. Patent Application Serial No. 08/572,017:

An international search was conducted by the U.S.P.T.O., on February 20, 1997, for the parent application of the present application (Serial No. 08/572,017). A copy of this International Search Report is included herein. A detailed discussion of each of the references cited in the International Search Report follows.

1.    <u>U.S. Patent 5,287,268 ("the '268 Patent")</u>:

The '268 Patent discloses a system for accumulating cash value to a consumer from multiple merchants through a central system. After conducting a point-of-sale transaction, cash value is transmitted to the central system along with data identifying the merchant and the corresponding credit value for the transaction. The central location maintains the credit value for the consumer. Consumers may access their accumulated cash values through receiving a check or through a funds dispersing electronic terminal access.

Claims 31-39, 48-56 and 65 of the present application is directed toward an incentive program that operates in conjunction with an Internet web page, such that products are offered for sale over the Internet web page, and a user may qualify to earn award points through the purchase of a product from the web page. Accordingly, because the '268 Patent does not even mention the use of an interactive mechanism, such as an Internet web page, then claims 31-39, 48-56 and 65 are patentable over the '268 Patent. Similarly, claims 40-47, 57-64 and 66 are also patentable over the '268 Patent because the limitations to redeem incentive points are conducted via an on-line interactive communications between the user and an Internet web page.

2.    <u>U.S. Patent 5,056,019 ("the '019 Patent")</u>:

The '019 Patent discloses a data processing system that uses bar-coded membership cards. The card is scanned at the checkout counter at participating retail outlets. The purchase records, generated from the consumer cards, are transferred to a program management computer system. Thereafter, consumers are sent a periodic summary of the purchases and a reward certificate for

the rewards earned. The rewards certificate may be a negotiable check or may be adapted for redemption at the participating retail store.

Claims 31-39, 48-56 and 65 do not include an incentive system that uses cards that are used at participating retail outlets. Instead, claims 31-39, 48-56 and 65 are directed towards an on-line incentive program that includes on-line incentive communications between a user and an Internet web page. Claims 40-47, 57-64 and 66 also set forth limitations for an on-line incentive program conducted via on-line interactive communications between a user and an Internet web page. Accordingly, the '019 Patent is distinguishable from the claims of the present application.

3.    U.S. Patent 5,025,372 ("the '372 Patent"):

The '372 Patent discloses a computer data processing incentive program that allocates money available for expenditure by a user through credit instruments. Levels of performance are calculated and assigned to each participant in the program that designates the monetary amount available through that participants credit instrument. The '372 Patent is not directed towards an on-line incentive program that operates via on-line interactive communications between a user and an Internet web page as claimed in claims 31-66. Accordingly, the claims of the present invention are patentable over the '372 Patent.

4.    U.S. Patent 4,992,940 ("the '940 Patent"):

The '940 Patent discloses an automated system to assist a user in purchasing goods offered by multiple vendors. The system utilizes a database, wherein the database contains information about the products available for purchase. The database also contains additional information,

including price and specification. The user, through a template, queries the database to determine products that match the users specifications for the type of product or service. The '940 Patent does not disclose implementing any type of incentive program as set forth in the claims of the present invention.

5.     Harrah's Casinos Introduces Two 'Firsts' For The Casino Industry

This press release discloses, in part, a gold card issued by Harrah's casinos. The gold card permits customers of the casino to receive rewards and benefits, such as complementary meals and room nights, that are awarded by individual properties based on the cardholders amount of play at the casino. The Harrah's gold card program is not an on-line incentive program, and therefore clearly the press release, or the underlying Harrah's gold card, does not render any claim of the present invention unpatentable.

E.  Information Disclosure Statement of Parent Application (08/572,071):

The following references were cited by Applicant in an Information Disclosure Statement ("the IDS") filed concurrently with the parent application.

1.     PCT Application No., PCT/US92/10868 ("the '868 PCT Application"):

The '868 PCT Application discloses an incentive reward system for use with banks or other financial institutions. A relationship score is calculated by assembling data representing the relationship between the bank and its customers. The incentive rewards are awarded to each customer based on this relationship score. The '868 Patent does not relate to nor disclose an on-line incentive program that includes an on-line incentive communications between the user and

the Internet web page as claimed in claims 31-66.

Applicant submits herewith a copy of the European Patent Application for the corresponding U.S. Patent 5,025,372, discussed above.

## 2. Non-Patent Documents:

Applicant cited, in the IDS, two articles: The Fleet Management Optimizer! P.G. Technologies, Inc.; and RoadMaster Jr., P.G. Technologies, Inc., 1995. The Examiner has crossed out these references. These references were cited in the IDS by mistake, and they are not relevant to the claims of the present application.

## F. References Cited In The Parent Application (PTO - 892):

Applicant submits herewith a copy of Form PTO-892 from the parent application (U.S. Patent Application 08/572,017 - now U.S. Patent 5,774,870). Applicant has discussed all U.S. patent documents and foreign patent documents cited in the PTO-892.

Two non-patent documents were cited in the Notice. Applicant did not receive a copy of either document. With regard to the first document, "Ernex Database Marketing", Applicant's attorney has attempted to review information at the URL at "www.stockgroup.com\csu\ernex\ernex.html." There is no information at this URL address.

Applicant's attorney has tried to obtain a copy of the cited document "B-to-b Tests Interactive Media, Advertising Age, pages B14-14." However, Applicants attorney has failed to

locate such a copy.

Applicant's attorney has had an individual review the prosecution history file at the U.S. Patent and Trademark Office. Although the file does not contain the non-patent documents cited in the USPTO-892 Notice, other documents were found. A discussion of each of these documents follows.

1. GIVE CYBER-READY THE ONCE OVER Computer-savvy, home-shopping segments may drive online sales, offer market includes:

This article discusses the general profile and purchasing habits of on-line users. Specifically, page 2 discloses a table that shows computer access by age group. Also, on page 2, a chart showing consumers remote purchasing habits, such as from on-line, infomercials, shopping channels, etc. As such, this article does not suggest or disclose any of the claimed elements of the present application.

2. Dial-a-Catalog:

This article generally discusses home pages on the world wide web. Examples of home pages and technologies for server access are discussed. The article does not discuss an on-line incentive program.

3. Using the Internet to Reach Clients:

This article discusses the Internet and its potential to complete orders, request additional information, or learn about specific items. This article does not mention an on-line incentive

program, and therefore does not relate to the claims of the present application.

The Commissioner is authorized to charge any underpayment or credit any overpayment to Deposit Account No. 06-1325 for any matter in connection with this response, including any fee for extension of time, which may be required.

Respectfully submitted,

Date: Oct 26, 1998    By: _____
                          John C. Stattler
                          Reg. No. 36,285

FLIESLER, DUBB, MEYER & LOVEJOY LLP
Four Embarcadero Center, Suite 400
San Francisco, California 94111-4156
Telephone: (415) 362-3800

EXHIBIT 27

# Manual of Patent Examining Procedure

## Eighth Edition

## Incorporating Revision No. 4

THOMSON

WEST

(C) Applications for reissues, particularly those involved in stayed litigation (37 CFR 1.176).

(D) Applications remanded by an appellate tribunal for further action.

(E) An application, once taken up for action by an examiner according to its effective filing date, should be treated as special by an examiner, art unit or Technology Center to which it may subsequently be transferred; exemplary situations include new cases transferred as the result of a telephone election and cases transferred as the result of a timely reply to any official action.

(F) Applications which appear to interfere with other applications previously considered and found to be allowable, or which will be placed in interference with an unexpired patent or patents.

(G) Applications ready for allowance, or ready for allowance except as to formal matters.

(H) Applications which are in condition for final rejection.

(I) Applications pending more than 5 years, including those which, by relation to a prior United States application, have an effective pendency of more than 5 years. See MPEP § 707.02.

(J) Reexamination proceedings, MPEP § 2261 >and § 2661<.

See also MPEP § 714.13, § 1207 and § 1309.

## 708.02    Petition To Make Special [R-3]

*37 CFR 1.102. Advancement of examination.*

(a) Applications will not be advanced out of turn for examination or for further action except as provided by this part, or upon order of the Director to expedite the business of the Office, or upon filing of a request under paragraph (b) of this section or upon filing a petition under paragraphs (c) or (d) of this section with a showing which, in the opinion of the Director, will justify so advancing it.<

(b) Applications wherein the inventions are deemed of peculiar importance to some branch of the public service and the head of some department of the Government requests immediate action for that reason, may be advanced for examination.

**>

(c) A petition to make an application special may be filed without a fee if the basis for the petition is:

(1) The applicant's age or health; or

(2) That the invention will materially:

(i) Enhance the quality of the environment;

(ii) Contribute to the development or conservation of energy resources; or

(iii) Contribute to countering terrorism.<

(d) A petition to make an application special on grounds other than those referred to in paragraph (c) of this section must be accompanied by the fee set forth in § 1.17(h).

New applications ordinarily are taken up for examination in the order of their effective United States filing dates. Certain exceptions are made by way of petitions to make special, which may be granted under the conditions set forth below.>Any statement in support of a petition to make special must be based on a good faith belief that the invention in fact qualifies for special status. See 37 CFR 1.56 and 10.18.<

## I.    MANUFACTURE

An application may be made special on the ground of prospective manufacture upon the filing of a petition accompanied by the fee under 37 CFR 1.17(h) and a statement by the applicant, assignee or an attorney/agent registered to practice before the Office alleging:

(A) The possession by the prospective manufacturer of sufficient presently available capital (stating approximately the amount) and facilities (stating briefly the nature thereof) to manufacture the invention in quantity or that sufficient capital and facilities will be made available if a patent is granted;

If the prospective manufacturer is an individual, there must be a corroborating statement from some responsible party, as for example, an officer of a bank, showing that said individual has the required available capital to manufacture;

(B) That the prospective manufacturer will not manufacture, or will not increase present manufacture, unless certain that the patent will be granted;

(C) That the prospective manufacturer obligates himself, herself or itself, to manufacture the invention, in the United States or its possessions, in quantity immediately upon the allowance of claims or issuance of a patent which will protect the investment of capital and facilities; and

(D) That the applicant or assignee has made or caused to be made a careful and thorough search of the prior art, or has a good knowledge of the pertinent prior art.

Applicant must provide one copy of each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record.

Rev. 3, August 2005

708.02                                   MANUAL OF PATENT EXAMINING PROCEDURE

## II.   INFRINGEMENT

Subject to a requirement for a further showing as may be necessitated by the facts of a particular case, an application may be made special because of actual infringement (but not for prospective infringement) upon payment of the fee under 37 CFR 1.17(h) and the filing of a petition accompanied by a statement by the applicant, assignee, or an attorney/agent registered to practice before the Office alleging:

(A) That there is an infringing device or product actually on the market or method in use;

(B) That a rigid comparison of the alleged infringing device, product, or method with the claims of the application has been made, and that, in his or her opinion, some of the claims are unquestionably infringed; and

(C) That he or she has made or caused to be made a careful and thorough search of the prior art or has a good knowledge of the pertinent prior art.

Applicant must provide one copy of each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record.

Models or specimens of the infringing product or that of the application should not be submitted unless requested.

## III.   APPLICANT'S HEALTH

An application may be made special upon a petition by applicant accompanied by any evidence showing that the state of health of the applicant is such that he or she might not be available to assist in the prosecution of the application if it were to run its normal course, such as a doctor's certificate or other medical certificate. No fee is required for such a petition. See 37 CFR 1.102(c).

>Personal/medical information submitted as evidence to support the petition will be available to the public pursuant to 37 CFR 1.11 or 1.14. If applicant does not wish to have this information become part of the application file record, the information must be submitted pursuant to MPEP § 724.02.<

## IV.   APPLICANT'S AGE

An application may be made special upon filing a petition including any evidence showing that the applicant is 65 years of age, or more, such as a birth certificate or applicant's statement. No fee is required with such a petition. See 37 CFR 1.102(c).

>Personal/medical information submitted as evidence to support the petition will be available to the public if the application file and contents are available to the public pursuant to 37 CFR 1.11 or 1.14. If applicant does not wish to have this information become part of the application file record, the information must be submitted pursuant to MPEP § 724.02.<

## V.   ENVIRONMENTAL QUALITY

The U.S. Patent and Trademark Office will accord "special" status to all patent applications for inventions which materially enhance the quality of the environment of mankind by contributing to the restoration or maintenance of the basic life-sustaining natural elements, i.e., air, water, and soil.

All applicants desiring to participate in this program should petition that their applications be accorded "special" status. **>The petition under 37 CFR 1.102 must state that special status is sought because the invention materially enhances the quality of the environment of mankind by contributing to the restoration or maintenance of the basic life-sustaining natural elements.< No fee is required for such a petition. See 37 CFR 1.102(c). >If the application disclosure is not clear on its face that the claimed invention materially enhances the quality of the environment by contributing to the restoration or maintenance of one of the basic life-sustaining natural elements, the petition must be accompanied by a statement under 37 CFR 1.102 by the applicant, assignee, or an attorney/agent registered to practice before the Office explaining how the materiality standard is met. The materiality standard does not permit an applicant to speculate as to how a hypothetical end-user might specially apply the invention in a manner that could materially enhance the quality of the environment. Nor does such standard permit an applicant to enjoy the benefit of advanced examination merely because some minor aspect of the claimed invention may enhance the quality of the environment.<

## VI.  ENERGY

The U.S. Patent and Trademark Office will, on petition, accord "special" status to all patent applications for inventions which materially contribute to (A) the discovery or development of energy resources, or (B) the more efficient utilization and conservation of energy resources. Examples of inventions in category (A) would be developments in fossil fuels (natural gas, coal, and petroleum), hydrogen fuel technologies, nuclear energy, solar energy, etc. Category (B) would include inventions relating to the reduction of energy consumption in combustion systems, industrial equipment, household appliances, etc.

All applicants desiring to participate in this program should petition that their applications be accorded "special" status. **>The petition under 37 CFR 1.102 must state that special status is sought because the invention materially contributes to category (A) or (B) set forth above.< No fee is required for such a petition, 37 CFR 1.102(c).>If the application disclosure is not clear on its face that the claimed invention materially contributes to category (A) or (B), the petition must be accompanied by a statement under 37 CFR 1.102 by the applicant, assignee, or an attorney/agent registered to practice before the Office explaining how the materiality standard is met. The materiality standard does not permit an applicant to speculate as to how a hypothetical end-user might specially apply the invention in a manner that could materially contribute to category (A) or (B). Nor does such standard permit an applicant to enjoy the benefit of advanced examination merely because some minor aspect of the claimed invention may be directed to category (A) or (B).<

## VII.  INVENTIONS RELATING TO RECOMBINANT DNA

In recent years revolutionary genetic research has been conducted involving recombinant deoxyribonucleic acid ("recombinant DNA"). Recombinant DNA research appears to have extraordinary potential benefit for mankind. It has been suggested, for example, that research in this field might lead to ways of controlling or treating cancer and hereditary defects. The technology also has possible applications in agriculture and industry. It has been likened in importance to the discovery of nuclear fission and fusion. At the same time, concern has been expressed over the safety of this type of research. The National Institutes of Health (NIH) has released guidelines for the conduct of research concerning recombinant DNA. These "Guidelines for Research Involving Recombination DNA Molecules," were published in the *Federal Register* of July 7, 1976, 41 FR 27902-27943. NIH is sponsoring experimental work to identify possible hazards and safety practices and procedures.

In view of the exceptional importance of recombinant DNA and the desirability of prompt disclosure of developments in the field, the U.S. Patent and Trademark Office will accord "special" status to patent applications relating to safety of research in the field of recombinant DNA. Upon appropriate petition and payment of the fee under 37 CFR 1.17(h), the Office will make special patent applications for inventions relating to safety of research in the field of recombinant DNA. Petitions for special status should be accompanied by statements under 37 CFR 1.102 by the applicant, assignee, or statements by an attorney/agent registered to practice before the Office explaining the relationship of the invention to safety of research in the field of recombinant DNA research. The fee set forth under 37 CFR 1.17(h) must also be paid.

## VIII.  SPECIAL EXAMINING PROCEDURE FOR CERTAIN NEW APPLICATIONS — ACCELERATED EXAMINATION

A new application (one which has not received any examination by the examiner) may be granted special status provided that applicant (and this term includes applicant's attorney or agent) complies with each of the following items:

(A) Submits a petition to make special accompanied by the fee set forth in 37 CFR 1.17(h);

(B) Presents all claims directed to a single invention, or if the Office determines that all the claims presented are not obviously directed to a single invention, will make an election without traverse as a prerequisite to the grant of special status.

The election may be made by applicant at the time of filing the petition for special status. Should applicant fail to include an election with the original papers or petition and the Office determines that a requirement should be made, the established telephone restriction practice will be followed.

708.02                    MANUAL OF PATENT EXAMINING PROCEDURE

If otherwise proper, examination on the merits will proceed on claims drawn to the elected invention.

If applicant refuses to make an election without traverse, the application will not be further examined at that time. The petition will be denied on the ground that the claims are not directed to a single invention, and the application will await action in its regular turn.

Divisional applications directed to the nonelected inventions will not automatically be given special status based on papers filed with the petition in the parent application. Each such application must meet on its own all requirements for the new special status;

(C) Submits a statement(s) that a pre-examination search was made, listing the field of search by class and subclass, publication, Chemical Abstracts, foreign patents, etc. The pre-examination search must be directed to the invention as claimed in the application for which special status is requested. A search made by a foreign patent office satisfies this requirement if the claims in the corresponding foreign application are of the same or similar scope to the claims in the U.S. application for which special status is requested;

(D) Submits one copy each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record; and

(E) Submits a detailed discussion of the references, which discussion points out, with the particularity required by 37 CFR 1.111 (b) and (c), how the claimed subject matter is patentable over the references.

In those instances where the request for this special status does not meet all the prerequisites set forth above, applicant will be notified and the defects in the request will be stated. The application will remain in the status of a new application awaiting action in its regular turn. In those instances where a request is defective in one or more respects, applicant will be given *one* opportunity to perfect the request in a renewed petition to make special. If perfected, the request will then be granted. If not perfected in the first renewed petition, any additional renewed petitions to make special may or may not be considered at the discretion of the Technology Center (TC) Special Program Examiner.

Once a request has been granted, prosecution will proceed according to the procedure set forth below;

there is no provision for "withdrawal" from this special status.

The special examining procedure of VIII (accelerated examination) involves the following procedures:

(A) The new application, having been granted special status as a result of compliance with the requirements set out above will be taken up by the examiner before all other categories of applications except those clearly in condition for allowance and those with set time limits, such as examiner's answers, etc., and will be given a complete first action which will include *all* essential matters of merit as to all claims. The examiner's search will be restricted to the *subject matter encompassed by the claims*. A first action rejection will set a 3-month shortened period for reply.

(B) During the 3-month period for reply, applicant is encouraged to arrange for an interview with the examiner in order to resolve, with finality, as many issues as possible. In order to afford the examiner time for reflective consideration before the interview, applicant or his or her representative should cause to be placed in the hands of the examiner at least one working day prior to the interview, a copy (clearly denoted as such) of the amendment that he or she proposes to file in response to the examiner's action. Such a paper will not become a part of the file, but will form a basis for discussion at the interview.

(C) Subsequent to the interview, or responsive to the examiner's first action if no interview was had, applicant will file the "record" reply. The reply at this stage, to be proper, must be restricted to the rejections, objections, and requirements made. Any amendment which would require broadening the search field will be treated as an improper reply.

(D) The examiner will, within 1 month from the date of receipt of applicant's formal reply, take up the application for final disposition. This disposition will constitute either a final action which terminates with the setting of a 3-month period for reply, or a notice of allowance. The examiner's reply to any amendment submitted after final rejection should be prompt and by way of form PTOL-303, by passing the application to issue, or by an examiner's answer should applicant choose to file an appeal brief at this time. The use of these forms is not intended to open the door to further prosecution. Of course, where relatively minor issues

or deficiencies might be easily resolved, the examiner may use the telephone to inform the applicant of such.

(E) A personal interview after a final Office action will not be permitted unless requested by the examiner. However, telephonic interviews will be permitted where appropriate for the purpose of correcting any minor outstanding matters.

After allowance, these applications are given top priority for printing. See MPEP § 1309.

## IX. SPECIAL STATUS FOR PATENT APPLICATIONS RELATING TO SUPERCONDUCTIVITY

In accordance with the President's mandate directing the U.S. Patent and Trademark Office to accelerate the processing of patent applications and adjudication of disputes involving superconductivity technologies when requested by the applicant to do so, the U.S. Patent and Trademark Office will, on request, accord "special" status to all patent applications for inventions involving superconductivity materials. Examples of such inventions would include those directed to superconductive materials themselves as well as to their manufacture and application. In order that the U.S. Patent and Trademark Office may implement this procedure, we invite all applicants desiring to participate in this program to request that their applications be accorded "special" status. Such requests should be accompanied by a statement under 37 CFR 1.102 that the invention involves superconductive materials. No fee is required.

## X. INVENTIONS RELATING TO HIV/AIDS AND CANCER

In view of the importance of developing treatments and cures for HIV/AIDS and cancer and the desirability of prompt disclosure of advances made in these fields, the U.S. Patent and Trademark Office will accord "special" status to patent applications relating to HIV/AIDS and cancer.

Applicants who desire that an application relating to HIV/AIDS or cancer be made special should file a petition and the fee under 37 CFR 1.17(h) requesting the U.S. Patent and Trademark Office to make the application special. The petition for special status should be accompanied by a statement explaining how the invention contributes to the diagnosis, treatment or prevention of HIV/AIDS or cancer.

## XI. INVENTIONS FOR COUNTERING TERRORISM

In view of the importance of developing technologies for countering terrorism and the desirability of prompt disclosure of advances made in these fields, the U.S. Patent and Trademark Office will accord "special" status to patent applications **>for inventions which materially contribute to countering terrorism<.

International terrorism as defined in 18 U.S.C. 2331 includes "activities that - (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; [and] (B) appear to be intended - (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by assassination or kidnapping..." The types of technology for countering terrorism could include, but are not limited to, systems for detecting/identifying explosives, aircraft sensors/security systems, and vehicular barricades/disabling systems.

**>All applicants desiring to participate in this program should petition that their applications be accorded special status. The petition under 37 CFR 1.102 must state that special status is sought because the invention materially contributes to countering terrorism. No fee is required for such a petition. See 37 CFR 1.102(c). If the application disclosure is not clear on its face that the claimed invention is materially directed to countering terrorism, the petition must be accompanied by a statement under 37 CFR 1.102 by the applicant, assignee, or an attorney/agent registered to practice before the Office explaining how the invention materiality contributes to countering terrorism. The materiality standard does not permit an applicant to speculate as to how a hypothetical end-user might specially apply the invention in a manner that could counter terrorism. Nor does such standard permit an applicant to enjoy the benefit of advanced examination merely because some minor aspect of the claimed invention may be directed to countering terrorism.<

Rev. 3, August 2005

## XII. SPECIAL STATUS FOR APPLICATIONS RELATING TO BIOTECHNOLOGY FILED BY APPLICANTS WHO ARE SMALL ENTITIES

Applicants who are small entities may request that their biotechnology applications be granted "special" status. Applicant must file a petition with the petition fee under 37 CFR 1.17(h) requesting the special status and must:

(A) state that small entity status has been established or include a statement establishing small entity status;

(B) state that the subject of the patent application is a major asset of the small entity; and

(C) state that the development of the technology will be significantly impaired if examination of the patent application is delayed, including an explanation of the basis for making the statement.

## FORMAL REQUIREMENTS OF PETITION TO MAKE SPECIAL

Any petition to make special should:

(A) be in writing; and

(B) identify the application by application number and filing date.

## HANDLING OF PETITIONS TO MAKE SPECIAL

Applications which have been made special will be advanced out of turn for examination and will continue to be treated as special throughout the entire prosecution in the Office.

Each petition to make special, regardless of the ground upon which the petition is based and the nature of the decision, is made of record in the application file, together with the decision thereon. The part of the Office that rules on a petition is responsible for properly entering that petition and the resulting decision in the file record. The petition, with any attached papers and supporting affidavits, will be given a single paper number and so entered in the "Contents" of the file. The decision will be accorded a separate paper number and similarly entered. To ensure entries in the "Contents" in proper order, the technical support staff in the TC will make certain that all papers prior to a petition have been entered and/or

listed in the application file before forwarding it for consideration of the petition. Note MPEP § 1002.02 (s). For Image File Wrapper (IFW) processing, see IFW Manual.

Petitions to make special are decided by the Special Program Examiner of the TC to which the application is assigned.

## 708.03    Examiner Tenders Resignation [R-2]

Whenever an examiner tenders his or her resignation, the supervisory patent examiner should see that the remaining time as far as possible is used in winding up the old complicated cases or those with involved records and getting as many of his or her amended cases as possible ready for final disposition.

If the examiner has considerable experience in his or her particular art, it is also advantageous to the Office if he or she indicates (in pencil) in the file wrappers of application in his or her docket, the field of search or other pertinent data that he or she considers appropriate. >For Image File Wrapper (IFW) processing, see IFW Manual.<

## 709    Suspension of Action [R-3]

*37 CFR 1.103. Suspension of action by the Office.*

(a) *Suspension for cause.* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph for good and sufficient cause. The Office will not suspend action if a reply by applicant to an Office action is outstanding. Any petition for suspension of action under this paragraph must specify a period of suspension not exceeding six months. Any petition for suspension of action under this paragraph must also include:

(1) A showing of good and sufficient cause for suspension of action; and

**>**

(2) The fee set forth in § 1.17(g), unless such cause is the fault of the Office.<

(b) *Limited suspension of action in a continued prosecution application (CPA) filed under § 1.53(d).* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph in a continued prosecution application filed under § 1.53(d) for a period not exceeding three months. Any request for suspension of action under this paragraph must be filed with the request for an application filed under § 1.53(d), specify the period of suspension, and include the processing fee set forth in § 1.17(i).

(c) *Limited suspension of action after a request for continued application (RCE) under § 1.114.* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph after the filing of a request for continued examina-

EXHIBIT 28



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Mailed

DEC 5 - 1998

Director's Office
Group 2700
Paper No. 6

JOSEPH BACH
527 BEACON HILL TERRACE
GAITHERSBURG, MD. 20878

*In re* Application of Storey                     :
Appl. No.: 09/105,227                             :
Filed: June 25, 1998                              :      **DECISION ON PETITION TO**
For: FULL INTEGRATED ON-LINE INTERACTIVE          :      **MAKE SPECIAL**
      FREQUENCY AND AWARD REDEMPTION    :      *37 CFR 1.102*
      PROGRAM                           :
                                                  :
                                                  :

This is a decision on the petition under 37 CFR 1.102, filed October 29, 1998, to make the above-identified application special.

Petitioner requests that this application be made special under the accelerated examination procedure set forth in MPEP 708.02, Section VIII: Accelerated Examination

A grantable petition to make an application special under 37 CFR 1.102 and in accordance with MPEP 708.02, Section VIII, must be accompanied by:

    (a)    the required fee pursuant to 37 CFR 1.17(i),

    (b)    a statement that all claims are directed to a single invention or an offer to make an oral election without traverse should the PTO hold that the claims are not directed to a single invention,

    (c)    a statement that a pre-examination search has been made, listing the field of search,

    (d)    one copy of each of the references deemed most closely related to the subject matter encompassed by the claims, and

    (e)    a detailed description of the submitted references and discussions pointing out how the claimed subject matter distinguishes over these references.

The petition meets the requirements for special status.

For the above stated reasons, the petition is <u>Granted</u>.

Page 2

If the examiner can make this application special without prejudice to any possible interfering application, and the examiner should make a rigid search for such, the examiner is authorized to do so for the next action. Should the application be rejected, the application will not be considered special for the subsequent action unless the applicant promptly makes a bona fide effort to place the application in condition for allowance, even if necessary to have an interview with the examiner to accomplish this purpose.

If the examiner finds any intervening application for the same subject matter, the examiner should consider such application simultaneously with this application and should state in the official letter of such application that the examiner has taken it out of turn because of a possible interference.

Should an appeal be taken in this application or should this application become involved in an interference, consideration of the appeal and the interference will be expedited by all PTO officials concerned, contingent like upon diligent prosecution by applicant.

Upon allowance, this application will be given priority for printing. See MPEP 1309.

The petition is granted to the extent indicated.

James J. Groody     (703) 308-5461
Special Program Examiner
Technology Center 2700
Communications and Information Processing