# EXHIBIT 36

PART 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION LOYALTY GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-360-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

# EXPERT REPORT OF ARTHUR M. KELLER, PH.D.

# 1. INTRODUCTION AND BACKGROUND

I have been retained by defendant Maritz Inc. ("Maritz") as an expert. In my capacity as an expert, I was asked to offer my opinion on the validity of Claims 10 through 17, 27 through 34, and 36 of U.S. Patent No. 6,009,412 ("the '412 Patent"). If additional claims are asserted, I reserve the right to opine on the validity of those additional claims as well. I am being compensated at a rate of $450/hour for research and $600/hour for testimony. My compensation is not contingent in any way on the outcome of this case.

A list of the materials I considered is attached as Appendix 1.

# 2. QUALIFICATIONS

In 1977, I received a BS *summa cum laude* from Brooklyn College (CUNY) in Mathematics and in Computer and Information Science, with honors in both majors. I received my MS in 1979 and my PhD in 1985, both in Computer Science from the Stanford University. My dissertation was on updating relational databases through views. I have authored over 70 publications, including scientific articles related to databases, programming, distributed systems, and computerized typesetting. I wrote one textbook (translated into Spanish, French, Italian, and Japanese) and its instructors' manual on computer programming. I wrote several book chapters on database management and electronic commerce. My Curriculum Vitae is attached to this report as Appendix 2.

For about thirty-four years, I have been involved in the field of computer systems, for twenty-eight years, I have been involved in the field of database systems, and for about twelve years I have been involved in the field of electronic commerce. In this regard, I have worked in both commercial and academic settings. Since 2001, I have served as Lecturer, Researcher and

Visiting Associate Professor of Computer Science at the University of California at Santa Cruz, where I have taught undergraduate and graduate courses in database management and in systems analysis and design. I am also managing partner of Minerva Consulting, where I advise a variety of companies in the fields of databases, electronic commerce, and distributed systems. Previously, I was a Senior Research Scientist of Computer Science at Stanford University for approximately 12 years. At Stanford, I was responsible for managing research groups on various aspects of database management and electronic commerce as well as teaching courses on database management. The projects I managed at Stanford include the Penguin project on object interfaces to relational databases, the Paradata project on parallel databases, and the Fauve project on distributed databases, and I was also project manager at Stanford for CommerceNet on electronic commerce catalog integration. I also collaborated with the Tsimmis project on heterogeneous database integration.

Based on my experience with the Penguin project, I served as Chief Technical Advisor and a member of the Board of Directors of Persistence Software prior to its IPO in June 1999. I provided technical advice to Persistence Software towards the development of their products, including their first product, a database access system for C++ that cached data from relational databases. Based on my work on electronic commerce, I was co-founder of Mergent Systems, which was acquired by Commerce One in January 2000. Mergent Systems integrated electronic catalogs from multiple companies through the use of database integration technology.

In the last 4 years, I have testified as an expert witness in the following cases: MercExchange v. eBay, et al., for the defense; Business Objects vs. Microstrategy, for the defense; Trilogy Software, Inc., and Trilogy Development Group, Inc. v. Selectica, Inc., and

counterclaims, for the defendant and counterclaimant; Microstrategy v. Business Objects, for the plaintiff; and Hyperion v. OutlookSoft, for the defense of counterclaim.

## 3. LEVEL OF ORDINARY SKILL

I was asked to give an opinion as to the educational and vocational qualifications of one of ordinary skill in the art taught by Claim 10–17, 27–34, and 36 of the '412 Patent at the time of the invention. The '412 Patent relates to the field of electronic commerce systems and interactive frequency and award redemption programs.

In the 1995 timeframe, a hypothetical person of ordinary skill in the art to whom aspects of the subject claims are addressed would have had a range of knowledge roughly equivalent to that of a person holding the degree of Bachelor of Science in Electrical Engineering, Computer Science, or Computer Engineering with knowledge of business and database systems. In reaching this opinion as to the qualifications of the hypothetical person of ordinary skill in the art, I have considered the types of problems encountered in the art, the prior art solutions to those problems, the rapidity with which innovations are made, the sophistication of the technology, and the educational level of active workers in the field.

## 4. LEGAL STANDARDS

In formulating my opinions and conclusions in this case, I have been provided with an understanding of the principles of United States patent law as they relate to claim interpretation and invalidity.

I am informed that, according to basic principles of patent law, a validity determination is a two-step process. First, the claim language must be construed to determine its scope and

counterclaims, for the defendant and counterclaimant; Microstrategy v. Business Objects, for the

plaintiff; and Hyperion v. OutlookSoft, for the defense of counterclaim.

## 3. LEVEL OF ORDINARY SKILL

I was asked to give an opinion as to the educational and vocational qualifications of one

of ordinary skill in the art taught by Claim 10–17, 27–34, and 36 of the '412 Patent at the time of

the invention. The '412 Patent relates to the field of electronic commerce systems and

interactive frequency and award redemption programs.

In the 1995 timeframe, a hypothetical person of ordinary skill in the art to whom aspects

of the subject claims are addressed would have had a range of knowledge roughly equivalent to

that of a person holding the degree of Bachelor of Science in Electrical Engineering, Computer

Science, or Computer Engineering with knowledge of business and database systems. In

reaching this opinion as to the qualifications of the hypothetical person of ordinary skill in the

art, I have considered the types of problems encountered in the art, the prior art solutions to those

problems, the rapidity with which innovations are made, the sophistication of the technology,

and the educational level of active workers in the field.

## 4. LEGAL STANDARDS

In formulating my opinions and conclusions in this case, I have been provided with an

understanding of the principles of United States patent law as they relate to claim interpretation

and invalidity.

I am informed that, according to basic principles of patent law, a validity determination is

a two-step process. First, the claim language must be construed to determine its scope and

existence was recognized by a person of ordinary skill in the field of the invention. Lastly, the disclosure contained in the piece of art must provide sufficient detail as to allow one of ordinary skill in the art to practice the claimed invention.

I am also informed and understand that even though a prior art reference does not fully anticipate a claim of a patent, a claim may, nonetheless, be rendered obvious to one of ordinary skill in the art if the differences between the subject matter set forth in the patent claim and the prior art are such that the subject matter of the claim as a whole would have been obvious at the time the claimed invention was made. In addition, it is my understanding that obviousness is a determination of law based on various underlying determinations of fact. In particular, these underlying factual determinations include (1) the scope and content of the prior art; (2) the level of ordinary skill in the art at the time the claimed invention was made; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness. I understand that the objective indicia that may be considered in such an analysis include commercial success of the patented invention (including evidence of industry recognition or rewards), whether the invention fills a long-felt but unresolved need in the field, the failure of others to arrive at the claimed invention, evidence of copying, unexpected results, and initial skepticism in the field, among others.

To ascertain the scope and content of the prior art, it is necessary to first examine the field of the inventor's endeavor and the particular problem with which the inventor was involved at the time the invention was made. It is also my understanding that in order to render a patent claim invalid as being obvious from a combination of references, there must be some evidence within the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination in such a way that would produce the patented invention. In addition, it is my

understanding that in order to find a patent claim invalid for obviousness, there must be a finding that each element in each limitation of each patent claim is disclosed or taught by the asserted combination of prior art references or somewhere else in the relevant prior art.

In addition, it is my understanding that for a claim to be valid under the definiteness requirement of 35 U.S.C. § 112, it must "particularly point out and distinctly claim the subject matter the applicant regards as his invention." A claim is invalid as indefinite if it does not reasonably apprise those skilled in the art of its scope, such that competitors cannot accurately determine the "metes and bounds" of the patentee's claimed property right.

## 5. INVALIDITY DUE TO INDEFINITENESS OF CLAIMS 12–13 AND 29–30 OF THE '412 PATENT

Claims 12, 13, 29, and 30 of the '412 Patent are indefinite and therefore invalid under 35 U.S.C. § 112, second paragraph.

Despite a thorough attempt to understand the meaning and scope of Claims 12, 13, 29, and 30, I am unable to resolve the ambiguities present in these claims and find them indefinite. It is my opinion that Claims 12, 13, 29, and 30 are invalid for failing to reasonably apprise one of ordinary skill in the art of their scope.

Claims 12, 13, 29, and 30 are all dependent claims. I understand that a patent can include two types of claims, independent and dependent, under the patent laws. Dependent claims must reference a previous claim and they must be construed to incorporate by reference all the limitations of the referenced claims.

Claim 12 incorporates all of the limitations from Claim 10 and purports to provide additional limitations to the step of "redeeming a particular award for said users." Claim 10 contains no such step. Instead, Claim 11 contains the step of "redeeming a particular award for

- 6 -

said user." One of ordinary skill in the art would not be able to discern the scope of Claim 12 due to this ambiguity. Even if one of ordinary skill in the art presumed that the drafter intended Claim 12 to depend from Claim 11 rather than Claim 10, the claim would remain ambiguous to one of ordinary skill in the art for the reasons discussed below with respect to Claim 29.

Claim 13 incorporates all of the limitations of Claims 10 and 12 and provides additional steps to the method described above in those claims. Because Claim 13 depends from Claim 12, it incorporates the ambiguity discussed above for Claim 12. For the reasons discussed above, it is my opinion that Claim 13 is invalid as indefinite because one of ordinary skill in the art would be unable to discern the scope of Claim 13.

Claim 29 incorporates all the limitations of Claim 28, which in turn incorporates all of the limitations of Claim 27. Claim 28, from which Claim 29 depends, reads as follows:

> 28. The computer readable medium as set forth in claim 27, wherein the step of permitting said user to initiate a process to receive a redeemable award comprises the steps of:
> accessing an account of said user;
> *redeeming a particular award for said user based on said points issued to said user if said user has earned sufficient points to qualify for said particular award*; and
> subtracting said points from said account of said user.
> (emphasis added)

One of ordinary skill in the art would understand Claim 28 to provide further details about how the software for implementing an on-line incentive program permits a user to redeem his or her points for an award. The '412 Patent describes these steps relating to the "REDEEM routine" at 9:51–10:11 and Figure 4 (500, 510, 515, 520, and 530).[1] Based on the plain meaning of the above-italicized language of Claim 28 and the corresponding description in the specification, one of ordinary skill in the art would have understood this limitation to mean

---

[1] Figure 4 constitutes "a flow chart showing the award redemption part of the program." '412 Patent 2:49-51.

checking the balance in a user's account to ensure there are sufficient points available to redeem a particular award.

One of ordinary skill in the art would also understand the steps of Claim 28 to necessarily occur sequentially: (1) First, the user's account—which is stored in the FREQUENCY DATABASE 515—is accessed; (2) Next, the user's account balance is checked to determine if he or she has sufficient points to cover the selected award; and (3) Finally, the user's account balance is decremented by the point value of the award redeemed.

Claim 29 purports to further modify the second step of Claim 28, the step of checking the user's point account balance:

> 29.    The computer readable medium as set forth in claim 28, wherein the step of redeeming a particular award for said user comprises the steps of:
> displaying, via said Internet webpage, a catalog of awards redeemable with said award points of said on-line incentive system; and
> accepting a selection by said user that indicates an award from said catalog.

One of ordinary skill in the art would understand the step of "displaying, via said Internet webpage, a catalog of awards..." to mean displaying one or more redeemable awards to the user on a webpage. The specification describes such a webpage as the "AWARD CATALOGUE HOME PAGE 400." '412 Patent, Figure 4, 8:8–21. And one of ordinary skill in the art would understand "accepting a selection by said user..." to mean permitting users to select awards from the award catalog. Neither of these steps relate to checking a user's account balance to authorize an award redemption transaction, much less further limit the scope of that step as Claim 29 purports to do. One of ordinary skill in the art would find this claim ambiguous and would be unable to discern the scope of Claim 29. It is my opinion that Claim 29 is invalid as indefinite.

Claim 30 incorporates all of the limitations of Claims 27, 28, and 29 and provides additional steps to the method described in those claims. Because Claim 30 depends from Claim

29, it incorporates the ambiguity discussed above for Claim 29. For the reasons discussed above, it is my opinion that Claim 30 is invalid as indefinite because one of ordinary skill in the art would be unable to discern the scope of Claim 30.

## 6. INVALIDITY DUE TO OBVIOUSNESS OF CLAIMS 10–17, 27–34 AND 36 OF THE '412 PATENT

Examiner Donald L. Champagne allowed the claims of the '012 Patent in an office action dated 30 November 2002. The examiner stated "the allowed claims differ materially from corresponding claims in Storey (US pat 5,774,870) only in adding the obvious limitation to a means/display for browsing the product catalog/database." '012 Patent File History, Notice of Allowability, 30 November 2002, Page 2. The '870 Patent was clearly granted only because the claims required both product and award catalogs—*i.e.*, combining a frequent buyer program with an electronic commerce system. '870 Patent File History, Notice of Allowability, December 2, 1997, Pages 2–3. The examiner of the '012 Patent further states, "Quinn teaches an online award catalog…" and "The closest non-patent prior art is Quinn, which fails to teach or suggest an online product catalog. That is taught by Peterson, but the combination is not suggested by the prior art."

There are several motivations to combine the Peterson and Quinn articles. The Peterson article itself states, "Before checking out, I learn that it's possible to join the Cyberspace Malls frequent-buyer club; each dollar spent earns one point that I'll be able to use for gifts that aren't yet shown on the site. Within two months, the area promises, it will be possible to tick off shopping selections and have them transfer to an order form. For now, a user must manually record each one and transfer it to the form."

In addition, Chelliah, et al., (US Patent 5,710,887) filed August 29, 1995 ("the '887 Patent") teaches to combine frequent buyer programs with e-commerce systems. For example, the system described in the '887 Patent includes a system for incentives, as shown in Figures 5, 7, 10, and 12, and 7:17–23, among others. In particular, the '887 Patent states, "Likewise, the Incentives Subsystem is a marketing module which allows stores to establish discount programs such as in-store sales, coupon-based discounts, frequent buyer programs, and quantity discount cards." '887 Patent 7:19–23. The frequent buyer incentives are further described at 27:60–28:10.

Furthermore, Daly, et al., (US Patent 5,878,141) filed August 25, 1995 ("the '141 Patent") states, "The pricing system might also use information in the subscriber database for features such as coupons or frequent buyer programs." '141 Patent 10:47–49.

Schrage observed that "frequent browser points" can be earned for online behavior, namely spending time viewing web content online, in an article published November 1995.

Thus, one of ordinary skill in the art in 1995 would have understood how to combine electronic catalogs with online incentive systems, and would have been motivated to do so.

## 6.1. Electronic Catalogs and Award Catalogs

It is my opinion one of ordinary skill in the art at the time the parent patent application was filed could have easily implemented an online interactive award catalog using existing e-commerce tools. One of ordinary skill in the art would have implemented an award catalog in the similar manner as one would implement an electronic catalog. The list of awards would be displayed and searched in the same manner as an electronic catalog displays and allows searches for products for sale. The primary difference between an electronic catalog and an award catalog is that an electronic catalog must interface with a complex payment infrastructure in order to process credit card transactions, while an award catalog uses the much simpler local database

- 10 -

listing the award balance for each user. As understood by the examiner and as described below, prior art known at the time the parent patent was filed described in sufficient detail how to build an electronic catalog. It is my opinion that one of ordinary skill in the art who was creating an online awards catalog would have known how to use the techniques for electronic catalogs and would have been motivated to do so.

## 7. INVALIDITY DUE TO ANTICIPATION OR OBVIOUSNESS OF THE '412 PATENT

Claim 10 of the '412 Patent states:

10. A method for redeeming incentive awards in an on-line incentive program, said method comprising the steps of:
implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award;
implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage;
offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points; and
permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user through said on-line incentive program.

The step of "implementing an on-line incentive program that issues award points to users" is understood by one of ordinary skill in the art as requiring issuing points to users for making purchases from an online product catalog.

In the Notice of Allowability, the examiner of the '412 Patent stated "claim 40 [in the application (which became Claim 10)] is similar to patented claim 17 [of the '870 Patent]." '412 File History, Notice of Allowability, May 10, 1999, Page 3. The examiner also stated, "Claims 31, 32, 37–41, 44, 48, 54–58, 61, 65, and 66 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 17 and 24–27 of U.S.

Patent 5,774,870. Although the conflicting claims are not identical, they are not patentably distinct from each other because they are obvious variations of each other." Ibid., Page 2.

The examiner of the '870 Patent stated, "It is the specific embodiment of the frequency database, coupled with a product catalog, from which purchases of goods may be made, and an awards catalog, from which awards may[ ]be redeemed, that renders the invention distinct over the prior art. Several references have been cited giving specific embodiments of electronic commerce systems and incentive award programs, however, none suggest or disclose combining the features of both to create the invention of the instant application. For this reason the claim is allowed."

The examiners of the '870 Patent and '012 Patent both understood that it was the combination of a product catalog and awards catalog as part of the on-line incentive program that made the otherwise obvious invention patentable.

Thus it is clear that the examiner understood that the on-line incentive program described and claimed in the '412 Patent issues award points to users as a result of making purchases from an online catalog.

This understanding is also dictated by the disclosure of the '412 Patent's specification. '412 Patent Fig. 1, Fig. 2, Fig. 3, 3:13–5:58. For example, the Summary of the Invention of the '412 Patent is consistent with this understanding:

> SUMMARY OF THE INVENTION
> In view of the above, the present invention is advantageous in that it provides an on-line, interactive incentive program which is fully integrated.
> The disclosed invention is also advantageous in that it provides an on-line access to product information, product purchases using an on-line electronic order form, award catalogs, and award redemption using an on-line electronic redemption forms [sic].
> Another advantage of the subject invention is that it awards bonus points immediately upon purchase of a merchandise [sic].
> The present invention is further advantageous in that it provides bonus points which are immediately made available for redemption.

- 12 -