# EXHIBIT 36

PART 2

> Another advantage of the present invention is that it allows the customer to select a prize immediately upon the award of the bonus points.
>
> A further advantage of the present invention is that it allows a customer to order a prize and redeem the awarded points towards the ordered prize immediately upon the award of the bonus points, thus enhancing the immediacy effect of the reward program.
>
> Yet another advantage of the present invention is that it provides an electronic sign-up form for on-line signing up by users.
>
> The above and other advantages are provided by the disclosed invention which includes provisions for access over the internet. Upon gaining of an access [sic], the customer is able to browse through a merchandize catalog, an award catalog, view the bonus points available for redemption in the customer's award bonus account, and get information about the products for purchase, the program, and the customer's account. The program also enables the customer to order merchandize [sic] on-line, order prizes on-line and redeem awarded points on-line. Accordingly, the selection of available prizes is expanded by the merchants who join the program, and the bonus award is made instantly redeemable.
>
> '412 Patent 1:60–2:32.

No mention is made anywhere in the specification of the '412 Patent of any manner of earning points other than through the online purchase of products or gift certificates.

It is also my opinion that one of ordinary skill in the art would understand the asserted claims of the '412 Patent to require the award points to be issued immediately following the online purchase, such that the customer's award account is updated in real time. Thus, the award points are immediately available for redemption. '412 Patent 1:51–59, 2:3–5, 2:6–17, and 2:30–32. Indeed, in the discussion of Related Art, the '412 Patent distinguishes itself from prior art by complaining, "Thus, the immediacy effect of the reward is lacking in these conventional incentive programs." '412 Patent 1:57–59.

### 7.1. Chelliah ('887 Patent)

It is my opinion that Claim 10 of the '412 Patent is anticipated by the '887 Patent under certain claim constructions.

> implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award

Customers visiting the '887 Patent's "electronic storefront" via the "user interface" may purchase products through the Customer Contact System ('887 Patent 3:19–26, 6:4–7:63, 10:56–11:3, 12:1–28, 12:34–42) and participate in a frequent buyers program ('887 Patent 7:19–23, among others). If this claim is interpreted (in my view incorrectly) not to require immediate redemption after earning points, then clearly this claim element is disclosed by the '887 Patent.

> implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage

The system disclosed in the '887 Patent allows a customer to interact with the system via access to an Internet webpage. '887 Patent, Figure 2, 12:1–28, among others. Through this user interface, a customer can purchase products at the "electronic mall" disclosed in the '887 Patent. '887 Patent, Figure 1, 6:26–57, among others.

> offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points

Customers visiting the '887 Patent's "electronic storefront" via the "user interface" may purchase products offered for sale through the Customer Contact System '887 Patent, 3:19–26, 6:4–7:63, 10:56–11:3, 12:1–28, 12:34–42. The customer may use points from a frequent buyer program to obtain discounted or free products. '887 Patent 27:60–28:17.

> permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user through said on-line incentive program

The customer may use points from a frequent buyer program to obtain discounted or free products. '887 Patent 27:60–28:17.

### 7.2. Chelliah ('887 Patent) and Goldhaber ('210 Patent)

The '887 Patent, as discussed above, discloses every element of Claim 10, except possibly the immediacy effect—i.e. the real time awarding of points. Goldhaber (U.S. Patent

5,794,210 filed December 11, 1995) ("the '210 Patent") discloses a system which awards users "digital cash," or "cyber coins," for viewing advertisements over the Internet. Known as "attention brokerage," this system incentivizes consumers to review advertising materials offered by participating merchants. '210 Patent 10:39–57. This incentive, or "digital cash" is delivered to the user's personal computer via the Internet or other computer network. '210 Patent, Claim 26, 23:52–54. In addition, "the compensation…is made available to the user in real time." '210 Patent Claim 29, also 10:9–38.

Because both references disclose incentivizing a consumer's online behavior, one of ordinary skill in the art would have been motivated to combine the teachings of the '887 Patent and the '210 Patent.

### 7.3. Heintzeman ('444 Patent); "Look To Book"

It is my opinion that Claim 10 of the '412 Patent is rendered obvious by Radisson's "Look to Book" program, which is the commercial embodiment of Heintzeman, et al. (U.S. Patent 5,483,444) filed February 7, 1995 with priority date October 26, 1993 ("the '444 Patent").

> implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award

The "Look to Book" program offered travel agents a catalog of products for sale in the "Travel Reservations Network" '444 Patent 3:13–4:13. Travel agents were provided with rate information and sell capabilities directly from Radisson's *Pierre* reservation system. CC 004546 *ff*. Travel agents were awarded points for booking reservations online with Radisson. However, the points are pending to the travel agent until the guest completes the stay for the booking for which the points are awarded. TRL-MTZ 44089. Thus, in the event that immediate redemption

after earning is not required, this claim element is disclosed by the '444 Patent and "Look to Book" system.

implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage

Travel agents enrolled in the "Look to Book" program were provided with paper and electronic versions of a catalog containing awards the travel agents could receive by redeeming their earned points. CC 004568–4583, TRL-MTZ 44088–93. The electronic award catalog contained award descriptions and point values required for redemption. TRL-MTZ 44088–93. Although the interface between the reservation system and the travel agent was a networked computer reservation system rather than an Internet webpage, it is my opinion that one of ordinary skill in the art would have known how to provide the claimed Internet webpage and would have been motivated to do so.

offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points

The electronic award catalog contained award descriptions and point values required for redemption. TRL-MTZ 44088–93. It is my opinion that one of ordinary skill in the art would have known how to display the claimed redeemable award on the claimed Internet webpage and would have been motivated to do so.

permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user through said on-line incentive program

The '444 Patent classifies credits as pending credits and redeemable credits. Since the "Look to Book" system was for a travel reservation system, it would have been obvious to one of ordinary skill in the art to use the system itself to arrange for travel that was awarded through the system, such as the free hotel night. TRL-MTZ 44090.

### 7.4. Quinn and "Look to Book" or '887 Patent

The systems of the "Look to Book" and '887 Patent disclose awarding points to users for online purchases. And redeeming award points online from online award catalogs was known by one of ordinary skill in the art since at least February 1994. The Quinn article disclosed online merchandise award catalogs "where users can view images of items and place orders online" were being tested in the incentive industry at least as early as February 1994.

Because all of these references relate to frequent buyer programs and award point redemption, one of ordinary skill in this art clearly would have been motivated to combine the teachings of each. Based on the combination of the Quinn article and the "Look to Book" program or the '887 Patent, one of ordinary skill in the art would have found the subject matter of Claim 10 obvious.

### 7.5. Incorrect Inventorship of Claim 10 of '412 Patent

It is my understanding that a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). Thomas Storey applied for, and received, '412 Patent as a sole inventor. Thomas Storey was listed as a co-inventor with his Radisson colleagues on the '444 Patent. Because it is my opinion that the '444 Patent claims subject matter that is nearly identical to the subject matter of Claim 10 of the '412 Patent, it is also my opinion that the '444 Patent is invalid under 35 U.S.C. 102(f) for failing to name the correct inventors.

### 7.6. Maritz Itself Developed the Idea of Online Award Catalogs Before December 14, 1995.

Quinn in February 1994 stated that Maritz was testing an awards catalog where "users can view images of items and place orders online." Quinn, p. 23 MAR28746.

The GoldMail program was being developed by October 1995. The GoldMail program involved awarding participants for desired online behavior by loading points to their GoldMail accounts. This online behavior included reading advertisements, visiting a website, and making purchases at a website. See MAR 108139–108145. These points could then been redeemed for merchandise displayed in an online award catalog. See MAR 113139–113142, MAR 113133–113137, MAR 108176–108182. If Claim 10 is interpreted not to require that the points be earned online, then clearly this claim element is disclosed by the GoldMail program. If this claim is interpreted not to require immediate redemption after earning points, then clearly this claim element is disclosed by the GoldMail program.

> implementing an online incentive program that issues award points to users, wherein said award points are redeemable by said user for an award

The GoldMail program was an "online incentive program." See MAR 113139–113142, MAR 113133–113137, MAR 108176–108182. One implementation of the GoldMail program, the "online commerce" offer, awarded points for online product purchases. MAR 108144.

The GoldMail program involved issuing award credits issued to the user's account, which were redeemable for an award. MAR 113136, MAR 113140, MAR 113141.

> implementing an Internet webpage, via a computer system, to at least one user of said online incentive program for online interactive communications between said user and said Internet webpage"

The GoldMail program had an Internet webpage that was accessible by the user for interactive, online communication. Users of the GoldMail program could enroll online via this webpage (MAR 113135, 113139) and could click on hyperlinks enclosed in e-mailed advertisements to the web pages of participating merchants.

> offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points

GoldMail participants were provided with an incentive, such as award credits, for every advertisement they read. One way participants could redeem these credits was through "[a]n online catalog of Maritz merchandise...for immediate orders." MAR 113140.

permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user though said online incentive program

GoldMail participants could order awards through the online catalog of Maritz merchandise. MAR 113140.

Thus, the GoldMail system offered awards online for the exchange of award credits and permitted the user to initiate a process for exchanging those points through an online catalog. In my opinion, Maritz developed the idea of online redemption before the application leading to the '412 Patent was filed.

## 7.7. Claim 11 of '412 Patent

Claim 11 of the '412 Patent states:

> 11. The method as set forth in claim 10, wherein the step of permitting said user to initiate a process to receive a redeemable award comprises the steps of:
> accessing an account of said user;
> redeeming a particular award for said user based on said points issued to said user if said user has earned sufficient points to qualify for said particular award; and
> subtracting said points from said account of said user.

The '887 Patent discloses the additional elements of Claim 11. The '887 Patent includes a "customer information database [that] stores information relating to the customer." '887 Abstract, among others. The customer may redeem frequent buyer points to obtain reduced price or free items. '887 Patent 27:60–28:17. It would have been obvious to one of ordinary skill in the art that sufficient points must be required and that the points are subtracted from the account.

Quinn also discloses users placing orders for award items online. Quinn, p. 23 MAR28746. One of ordinary skill in the art reading this article in 1994 would have known that the steps of accessing the user's account, allowing a user to redeem an award if he or she had sufficient points, and subtracting the redeemed points from the user's account would have necessarily been performed by the interactive award catalog described by Quinn.

The '444 Patent and "Look to Book" system disclose the additional elements of Claim 11. The "Look to Book" system maintains user accounts, allows the redemption of awards if the user has sufficient points, and subtracts the points used from the user's account. TRL-MTZ 44089 *ff.*

The '210 Patent describes allowing a user to redeem "digital cash" earned for certain on-line behavior for "positively priced information." This transaction involves debiting the user's account or "digital cash repository" balance.'210 Patent 10:9–38, 10:58–11:7.

Other prior art references disclose these steps as well. See U.S. Patent No. 5,689,100 ("the '100 Patent"), Fig. 2 (228), Fig. 3 (236), 5:26–31, 6:61–66, 8:35–37, 8:43–45; U.S. Patent No. 5,806,045 ("the '045 Patent), 1:22–67, 2:50–65, 7:14–29, 12:38–13:33, Fig. 2, Fig. 4b.

It is my opinion that the above references render Claim 11 obvious.

### 7.8. Claim 12 of '412 Patent

Claim 12 of the '412 Patent states:

> 12. The method as set forth in claim 10, wherein the step of redeeming a particular award for said user comprises the steps of:
> displaying, via said Internet webpage, a catalog of awards redeemable with said award points of said on-line incentive system; and
> accepting a selection by said user that indicates an award from said catalog.

Section 5 discussed why Claim 12 is indefinite. However, even if the claim had been drafted in a way that added the limitations without the indefiniteness problem discussed above, the claim would still invalid in light of the prior art.

The '887 Patent renders obvious Claim 12. It would have been obvious to one of ordinary skill in the art to display the products that can be redeemed for points in the same manner as is disclosed for displaying products available for purchase. The process for selecting a free or reduced price award is similar to the process of selecting a product for purchase.

The '444 Patent and "Look to Book" system renders obvious Claim 12. The '444 Patent and "Look to Book" system displays a catalog of awards. TRL-MTZ 44089–44093. As discussed above, it would have been obvious to one of ordinary skill in the art for this list of awards to be displayed on a webpage and for the system to accept selections for an award for travel.

As discussed above, Maritz developed the idea of online redemption via an online award catalog before the effective filing date of the '412 Patent. (MAR113133–113137, MAR113139–113142, MAR108176–108182, MAR108196, MAR108210–108211, MAR108217-108220).

One of ordinary skill in the art would understand Quinn to necessarily disclose the additional steps of Claim 12. Quinn, p. 23 MAR28746.

It is my opinion that the above references render Claim 12 obvious.

### 7.9. Claim 13 of '412 Patent

Claim 13 of the '412 Patent states:

13. The method as set forth in claim 12, further comprising the steps of:
providing said user with an on-line redeeming form comprising entries that specify an award for redeeming said award points; and
establishing an on-line link to an award computer; and

sending, via said on-line link, entries of said on-line redeeming form to said award computer.

Section 5 discussed why Claim 13 is indefinite. However, even if the claim had been drafted in a way that added the limitations without the indefiniteness problem discussed above, the claim would still invalid in light of the prior art.

The specification of the '412 describes the "on-line redeeming form" referenced in Claim 13. See SUMMARY OF THE INVENTION: "[t]he disclosed invention is also advantageous in that is provides...award redemption using an on-line electronic redemption forms [sic]." '412 Patent 1:65–2:2), 9:62–10:2, Fig. 4 (REDEEM Step 500). One of ordinary skill in the art would consider the "on-line redeeming form" or "REDEEM 500" to be functionally equivalent to the "ORDER FORM 130" described by the specification as the mechanism for purchasing products online. '412 Patent 4:60–63, 5:12–20, Fig. 2 (130).

The specification also describes "establishing an on-line link to an award computer" and "sending, via said on-line link, entries of said on-line redeeming form to said award computer":

> "The program then electronically places an award redeeming order with the fulfillment house and updates the user's award account." '412 Patent Abstract.
> "A link is then established to the fulfillment house or directly to the product manufacturer and an award order is communicated, 530." '412 Patent 10:9–11.

One of ordinary skill in the art would understand these that additional limitations require immediately placing an order with a fulfillment house or product manufacturer's computer system via a real-time connection. One of ordinary skill in the art would recognize that the technology required to implement an on-line link to an "award computer" is identical to that required for placing orders with manufacturers for non-award transactions. '412 Patent 5:33–37, Fig. 2 ("ORDER FORM 160").

On-line order forms were a well known mechanism for communicating orders from a consumer to an electronic commerce system before December 14, 1995. For example, this feature is found in the following references:

- U.S. Patent No. 5,592,378 8:30–22:14, Figures 8–36.
- U.S. Patent No. 5,724,424 5:18–6:49, Figures 3, 4, 6, and 7.
- The Interactive Marketing News article of June 23, 1995 included in the filed history of the '870 Patent describes known on-line shopping capabilities: "Like catalogs, online stores deliver on-demand product info and hope to spur immediate buying decisions. Instead of mailing back an insert or phoning, online shoppers can pull up electronic order forms—which may have been automatically filled out as they browsed items—and execute their purchases." Give Cyber-Ready Consumers the Once Over—Computer-Savvy Home-Shopping Segments May Drive Online Sales, Offer Marketing Clues, Interactive Marketing News, June 23, 1995.
- The Catalog Age article dated September 1, 1995 also shows online order forms were being used before December, 1995: "Had I wished to order, Tilley provides an online order form. You can fill it out completely with credit card and order info and submit it online." A shopping spree in Cyberspace, Catalog Age, September 1, 1995.

An on-line order form is a necessary feature for any on-line transaction, including an award redemption transaction. One of ordinary skill in the art would have known to use the established on-line ordering capabilities available in other electronic commerce applications to implement an on-line award catalog. It is my opinion that this feature is either inherent in the prior art on-line award catalogs discussed above or would have been an obvious feature of an on-line award catalog.

Establishing an on-line link to a manufacturer or other fulfillment facility was well known by those of ordinary skill in the art before December 14, 1995. For example, this feature can be found in the '887 Patent at 3:57–65, 11:50–60, 12:66–13:10, 17:22–30, Claim 5 (29:57–59).

It would have been obvious to one of ordinary skill in the art to apply these known on-line capabilities to implement an on-line consumer loyalty program for placing both product purchase transactions and award fulfillment transactions through an on-line link with manufacturers or other fulfillment facilities.

One of ordinary skill in the art seeking to implement an on-line awards catalog would have followed the approach of on-line sales catalogs, as implemented in known e-commerce systems. It is my opinion that the only difference between an on-line purchase transaction and an on-line point redemption transaction is the currency involved, and that the product presentation and order placement systems would be identical. It is my opinion that one of ordinary skill in the art would have been motivated to combine the teachings of the above references to implement an award redemption transaction.

It is my opinion that the above references render Claim 13 obvious.

### 7.10. Claim 14 of '412 Patent

Claim 14 of the '412 Patent states:

> 14. The method as set forth in claim 10, further comprising the step of permitting a user to review an awards catalog from said Internet webpage that comprises awards redeemable for said award points.

The '887 Patent discloses the additional elements of Claim 14. The '887 Patent includes a catalog of products for sale, and discloses that some of those products can be offered to a participant in a frequent buyer program for free or at a reduced cost in exchange for frequent

buyer points. It is my opinion that one of ordinary skill in the art would understand that the process for displaying an award catalog is based on the process for displaying a catalog of goods for sale, which is spelled out in detail in the '887 Patent.

The '444 Patent and "Look to Book" system disclose the additional elements of Claim 14. The '444 Patent and "Look to Book" system displays a page with awards. TRL-MTZ 44089. As discussed above, it would have been obvious to one of ordinary skill in the art for the list of awards to be displayed as an awards catalog accessible from a webpage.

Quinn also discloses this step. Quinn, p. 23 MAR28746. And Maritz's GoldMail program involved displaying awards in an online catalog. See MAR 113133–113137, 113139–113142, 108176–108182, 108196, 108210–108211, 108217–108220.

It is my opinion that the above references render Claim 14 obvious.

### 7.11. Claim 15 of '412 Patent

Claim 15 of the '412 Patent states:

> 15. The method as set forth in claim 10, further comprising the step of permitting a user to review an account from said Internet webpage for said user, wherein said account reflects an amount of said award points credited to said user.

Maritz's GoldMail Program discloses this step. MAR108177.

Radisson's "Look to Book" Program discloses this step. TRL-MTZ 44088, CC 003701, CC 004676. The '444 Patent discloses this step. '444 Patent 5:4–8, 6:20–21, Fig. 8 (108), Claim 40. As discussed above, it would have been obvious to one of ordinary skill in the art for this information to be available from the Internet.

Quinn discloses this step. Quinn, p. 23 MAR28746.

The '210 Patent discloses this step. '210 Patent 19:4–18, Fig. 7, Fig. 13.

The American Express ExpressNet discloses this step. "American Express today announced the launch of ExpressNet from American Express, its first electronic interactive service, currently available only on America Online." "EXPRESSNET FROM AMERICAN EXPRESS DEBUT ON AMERICA ONLINE" January 30, 1995 press release, TRL-MTZ 08853. "ExpressNet from American Express offers other special benefits and services for American Express Cardmembers, including the ability to:

- Enroll in rewards programs, such as Membership Miles, or check the status of existing Membership Miles accounts." TRL-MTZ 08854.

The HiltonNet press release discloses this step. "Within the next few weeks, HHonors Program members will have the option of checking their HHonors account information via HiltonNet." Welcome to HiltonNet! New Hilton Internet Concierge Rolls Out the "Virtual" Red Carpet, PC Newswire, August 21, 1995.

It is my opinion that the above references render Claim 15 obvious.

### 7.12. Claim 16 of '412 Patent

Claim 16 of the '412 Patent states:

> 16. The method as set forth in claim 10, further comprising the step of permitting a user to preview information about said on-line incentive program from said Internet webpage.

Maritz's GoldMail Program discloses this step. MAR108196–108197, MAR108199.

The '444 Patent and "Look to Book" system discloses the additional elements of Claim 16. The "Look to Book" system displays a page with information about the awards program awards. TRL-MTZ 44088 *ff*. As discussed above, it would have been obvious to one of ordinary skill in the art for this information to be available from the Internet.

Quinn discloses this step. Quinn, p. 23 MAR28746.

The American Express ExpressNet discloses this step. "American Express today announced the launch of ExpressNet from American Express, its first electronic interactive service, currently available only on America Online." "EXPRESSNET FROM AMERICAN EXPRESS DEBUT ON AMERICA ONLINE" January 30, 1995 press release, TRL-MTZ 08853. "ExpressNet from American Express offers other special benefits and services for American Express Cardmembers, including the ability to:

- Enroll in rewards programs, such as Membership Miles, or check the status of existing Membership Miles accounts." TRL-MTZ 08854.

It is my opinion that the above references render Claim 16 obvious.

### 7.13. Claim 17 of '412 Patent

Claim 17 of the '412 Patent states:

> 17. The method as set forth in claim 10, further comprising the step of permitting a user to apply for membership to said on-line incentive program from said Internet webpage.

Maritz's GoldMail Program allows users to enroll on-line. MAR113135, MAR113139, MAR108177, MAR108180, MAR108196, MAR108200–108207.

The "Look to Book" system supports enrollment of the travel agent online. TRL-MTZ 44088, CC 004585, CC 004545, CC 004676. As discussed above, it would have been obvious to one of ordinary skill in the art for this enrollment to be available from an Internet webpage.

The '210 Patent describes on-line enrollment. '210 Patent 12:38–14:10.

The American Express ExpressNet discloses this step. "American Express today announced the launch of ExpressNet from American Express, its first electronic interactive service, currently available only on America Online." "EXPRESSNET FROM AMERICAN EXPRESS DEBUT ON AMERICA ONLINE" January 30, 1995 press release, TRL-MTZ

08853. "ExpressNet from American Express offers other special benefits and services for American Express Cardmembers, including the ability to:

- Enroll in rewards programs, such as Membership Miles, or check the status of existing Membership Miles accounts." TRL-MTZ 08854.

It is my opinion that the above references render Claim 17 obvious.

### 7.14. Claims 27–34 of '412 Patent

Claims 27 through 34 of the '412 Patent are comparable to Claims 10 through 17, respectively, of the '412 Patent. The difference is that Claims 10–17 are "method" claims, while Claims 27–34 are for "computer readable medium comprising a plurality of instructions, which when executed by a computer, causes the computer to perform the steps" of the corresponding Claims 10–17, respectively.

It is my opinion that one of ordinary skill in the art would understand that the systems of the '887 Patent, the '444 Patent, '210 Patent, the "Look to Book" program, and the other references discussed above would necessarily be programmed on computer readable medium comprising a plurality of instructions, which when executed by a computer, causes the computer to perform the steps of the Claims 10–17 as described above. The same arguments regarding the invalidity of Claims 10–17 also apply to Claims 27–34, because Claims 10–17 includes all the elements of Claims 27–34. It is therefore my opinion that Claims 27–34 are invalid for the same reasons addressed above for Claims 10–17.

### 7.15. Claim 36 of '412 Patent

Claim 36 of the '412 Patent is for a "computer system" implementing the "method" of Claim 10. It is my opinion that one of ordinary skill in the art would understand that the systems

of the '887 Patent, the '444 Patent, the "Look to Book" program, and the other references discussed above would necessarily be computer systems comprising software. The same arguments regarding the invalidity of Claim 10 also apply to Claim 36, because Claim 10 includes all the elements of Claim 36. It is therefore my opinion that Claim 36 is invalid for the same reasons addressed above for Claim 10.

### 7.16. Motivation to Combine References

It is my opinion that one of ordinary skill in the art as of the date the parent patent application was filed would have been motivated to combine the references discussed above. All of the references relate to the field of online electronic commerce systems and/or frequency and award programs. These references are pertinent to the problem the patent aimed to address, and logically would have committed themselves to the attention of one skilled in the art who was faced with this problem.

### 7.17. Secondary Considerations

It is my understanding that certain "secondary considerations" are considered in assessing obviousness. To be relevant, there must be some "nexus" between the evidence and the merits of the claimed invention.

One secondary consideration is commercial success. The "nexus" requirement dictates that the success be due to the claimed features of the invention, as opposed to factors such as advertising and marketing. It is not apparent that any commercial activity by Netcentives or Trilegiant is related to the aspects of Claims 10–17, 27–34, and 36 as opposed to other aspects or sales and marketing efforts. I have been informed by counsel that Netcentives entered bankruptcy, wherein its assets were liquidated despite owning the '412 Patent.

Another potentially relevant secondary consideration is copying of the patented system. I am not aware of any evidence of copying, by Maritz or any other entity.

The existence of licenses may also be relevant to obviousness. Again, the nexus requirement applies. I have been informed by counsel that there have been a number of licenses taken under the '412 Patent. After the Netcentives bankruptcy, the patents were conveyed to Trilegiant Corp., which granted a fully paid-up license to Choice Hotels and to Carlson Marketing and its customers at no cost. I am unaware of any showing that licenses were agreed to based on the method of Claims 10–17, 27–34, and 36 or a belief in the validity of Claims 10–17, 27–34, and 36, or in the belief that the licensee's activity was actually covered by these claims of the '412 Patent. Instead, the licensees could well have been motivated by a desire to avoid litigation, or for some other reason.

Other secondary considerations include long-felt, but unresolved need; prior failure of others; and unexpected results. It is my opinion that there was nothing surprising or unexpected in the method or computer readable medium set forth in Claims 10–17, 27–34, and 36 of the '412 Patent. To my knowledge, no person of ordinary skill in the art had failed to perform the method of Claims 10–17 or computer readable medium of Claims 27–34, and 36.

None of the secondary considerations change my opinion that the subject matter of Claims 10–17, 27–34, and 36 would have been obvious to one of ordinary skill in the art at the time the patent application leading to the '412 Patent was filed.

## 8. TRIAL EXHIBITS

I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions. Examples of these visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory

responses, deposition testimony and deposition exhibits, as well as optical components, charts, diagrams, videos and animated or computer-generated video.

Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## 9. SUPPLEMENTATION OF OPINIONS

I expect to testify regarding the matters set forth in this declaration, if asked about these matters by the Court or the parties' attorneys.

I understand that discovery is ongoing in this case. I therefore reserve the right to adjust or supplement my opinions after I have had the opportunity to review deposition testimony or in light of additional documents or arguments that may be brought to my attention. I also reserve the right to adjust or supplement my analysis in light of any critique of my report or alternative opinions advanced by or on behalf of plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Palo Alto, California on April 10, 2006.

ARTHUR M. KELLER, PH.D.