**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AFFINION NET PATENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-360-JJF |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF OF DEFENDANT MARITZ INC. IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE
  & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

*Attorneys for Maritz Inc.*

Original Filed: May 25, 2006
Redacted Version Filed:  June 6, 2006

# TABLE OF CONTENTS

I.    Nature and Stage of the Proceedings ........................................................... 1

II.   Summary of Argument ................................................................................ 1

III.  Statement of Facts....................................................................................... 2

    A.   The Proper Scope of the Patents-in-Suit ........................................... 2

    B.   The Asserted Claims of the '412 Patent ............................................. 4

    C.   Maritz's Distinct Technology ............................................................. 5

        1.   Maritz's VAULT System..................................................... 6

        2.   The AwardHQ Website........................................................ 7

IV.   Standards Governing Motions for Summary Judgment................................. 8

V.    Argument .................................................................................................... 9

    A.   Legal Standards Governing Infringement........................................... 9

        1.   Literal Infringement. ........................................................... 9

        2.   Doctrine of Equivalents ...................................................... 10

    B.   Maritz Does Not Infringe Claims 10, 27, or 36 of the '412 Patent.................. 11

        1.   The Vault and AwardHQ Sytems Do Not Award Points for On-Line .........
           Purchases................................................................................ 12

           a.   AwardHQ Is Not a Frequency Program.............................. 13

           b.   The VAULT System Does not Award Points for On-Line Product
               Purchases..................................................................... 13

        2.   Maritz's Vault and AwardHQ Systems Do Not Immediately Issue
           Points That Can Be Immediately Redeemed for an Award...................... 14

           a.   AwardHQ Does Not Utilize the Immediacy Effect ............................ 14

           b.   The VAULT System Does Not Utilize the Immediacy Effect ............ 15

C.    Maritz Does Not Infringe Any of the Dependent Claims of the '412 Patent ... 16

VI.  Conclusion ................................................................................................ 17

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................. 9

*Aquatex Industries, Inc. v. Techniche Solutions,*
419 F.3d 1374 (Fed. Cir. 2005) ............................................................................... 9

*Canvas Co. v. Frontier, Inc.,*
870 F.2d 1546 (Fed. Cir. 1989) .......................................................................... 5, 16

*Catalina Mktg. Int'l v. Coolsavings.com,*
289 F.3d 801 (Fed. Cir. 2002) ................................................................................. 9

*DeMarini Sports, Inc. v. Worth, Inc.,*
239 F.3d 1314 (Fed. Cir. 2001) ............................................................................. 10

*Marquip, Inc. v. Fosber Am. Inc.,*
198 F.3d 1363 (Fed. Cir. 1999) ............................................................................. 10

*Matushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ................................................................................................. 9

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.,*
303 F.3d 1294 (Fed. Cir. 2002) ............................................................................. 10

*Pennwalt Corp. v. Durand-Wayland, Inc.,*
833 F.2d 931 (Fed. Cir. 1987) (en banc) ............................................................... 10

*Sage Products, Inc. v. Devon Industries, Inc.,*
126 F.3d 1420 (Fed. Cir. 1997) ............................................................................... 9

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,
242 F.3d 1337 (Fed. Cir. 2001) ............................................................................. 11

*Wahpeton Canvas Co. v. Frontier, Inc.,*
870 F.2d 1546 (Fed. Cir. 1989) .......................................................................... 5, 16

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,*
520 U.S. 17 (1997) ............................................................................................. 9, 10

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,*
904 F.2d 677 ......................................................................................................... 10

**Statutes**

35 U.S.C. §112 ¶ 4 ................................................................................................ 10

**Rules**

Fed. R. Civ. P. 56 ............................................................................................. 8, 9

Fed. R. Civ. P. 56(e) ........................................................................................... 9

## OPENING BRIEF OF DEFENDANT MARITZ INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

### I.    Nature and Stage of the Proceedings

On June 8, 2004, Trilegiant Loyalty Solutions, Inc. filed this action for

infringement of U.S. Patents 5,774,870 ("the '870 Patent"), 6,009,412 ("the '412 Patent")

and 6,578,012 ("the '012 Patent") (collectively "the Storey Patents") against Maritz Inc.

("Maritz"). Docket No. 1. Maritz answered the Complaint and asserted counterclaims

requesting declarations of non-infringement, invalidity, and unenforceability of the

Storey Patents. Docket No. 8. On October 17, 2005, Trilegiant changed its name to

Affinion Loyalty Group, Inc. and assigned the Storey Patents to Affinion Net Patents,

Inc. ("Affinion").[1] Docket No. 148. Currently, Affinion seeks only to enforce the '412

Patent. Docket No. 101.

Affinion and Maritz have submitted their *Markman* briefs, and a *Markman*

hearing is scheduled for June 7, 2006. Trial is set to begin on October 23, 2006.

### II.    Summary of Argument

Maritz requests the Court to grant summary judgment of non-infringement of

Claims 10-17, 27-34, and 36 on each of three independent grounds: (1) Maritz's Vault

and AwardHQ systems do not award points to users of those programs for qualifying on-

line purchases of products or services; (2) Maritz's Vault and AwardHQ systems do not

immediately issue points that are immediately redeemable upon completion of a

qualifying on-line purchase of product or service; and (3) Maritz's AwardHQ system is

not a frequency program.

---

[1] On May 22, 2006, the Court ruled that Affinion Net Patents, Inc. should be substituted for
Affinion Loyalty Group as plaintiff in this matter. Docket No. 148.

1

III.    **Statement of Facts**[2]

    A.    **The Proper Scope of the Patents-in-Suit**

The initial patent application, which eventually issued as the '870 Patent, was filed by named inventor Thomas Storey.   Mr. Storey eventually sold his patent rights to Netcentives, Inc.  These rights have changed hands a number of times and now currently rest with Affinion Net Patents, Inc.  ("Affinion").[3]

    Under oath, Mr. Storey provided the following characterization of the on-line incentive program (dubbed "ADDemup") described in the patents-in-suit:

> [I]n one session, somebody could sit down and purchase a product, pay for it, receive points, and, at the same time, get their new balance.  They could redeem the points for an award, order the award, review the award, and change any aspect of their profile within the program.
>
> That is what I mean when I talk about an on-line interactive fully integrated award program.

Further:

> For it to be a fully integrated web-based or on-line interactive system, the capability needs to exist to allow the product or service purchaser to interact directly with any aspect of the home page, whether it is a program home page or a product home page, in real-time.

Ex. C at 210, 213.

    The title of the Storey patents,[4] like the content of the specification they share, is telling: "FULLY INTEGRATED ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM."  At its essence, the invention concerns a system and method for implementing an on-line frequency program that immediately awards

---

[2] A Statement of Uncontroverted Facts is attached as Exhibit A.

[3] The Court recently ordered Affinion Net Patents, Inc. to be substituted for its non-exclusive licensee, Affinion Loyalty Group, Inc., who does not have standing to continue as co-plaintiff in this lawsuit.  Docket No. 148.

[4] The '412 Patent is attached as Exhibit B.

points to users for on-line product purchases. Those points are tracked in a "frequency database" and can be redeemed on-line, immediately upon issuance, for an award from an award catalog.[5]

The Patent Office has indicated that it was *the specific combination of an on-line product catalog, frequency database, and award catalog that was deemed patentable over the prior art*, because e-commerce systems and incentive programs were both known in the art. Ex. D, '870 Patent, Notice of Allowability; Ex. E, '012 Patent, Notice of Allowability at 2 ("Quinn teaches an on-line award catalog..." and "[t]he closest non-patent prior art is Quinn, which fails to teach or suggest an on-line product catalog. That is taught by Peterson, but the combination is not suggested by the prior art.")

The Quinn reference[6] was published in February of 1994 and is prior art to the patents-in-suit. Ex. F (MAR28743-28747). That reference disclosed incentive programs that permitted on-line interactive communications between participants and the incentive program. *Id.* at MAR28746. As recognized by the Examiner, Quinn also disclosed "interactive award catalogues" which allow "users to view images of items and place orders online." *Id.*

The parties have a basic disagreement as to the proper scope of the asserted claims. The heart of the dispute is whether the claimed "on-line incentive program" is properly defined as one which incentivizes on-line loyalty by awarding users for purchasing products at the program's website that can be

---

[5] Maritz incorporates by reference its briefing on claim construction issues (Docket Nos. 138 and 151).

[6] This reference, which was discovered and cited by the Examiner during prosecution of the '012 Patent, is Quinn, *The Interactive Revolution—How do you get consumers to respond to your promotions? Through new high-tech routes on the emerging information superhighway*, Incentive, February 1994, pages 20-24 (attached as Ex. F)

instantly redeemed at the website for an award. This is the scope envisioned by Mr. Storey and reflected in the patent specification he commissioned.

Maritz demonstrates in its claim construction briefing that the specification, prosecution history, and extrinsic evidence compel the conclusion that an "on-line incentive program" is a frequency program that awards points to users for on-line product purchases. Affinion seeks to divorce the asserted claims from the specification and prosecution history. It also struggles to distinguish the asserted claims from other claims it has tacitly, and belatedly, acknowledged are not infringed by Maritz.

If Maritz prevails on the claim construction issues relating to the primary element of the asserted claims—"on-line incentive program"—it is plainly entitled to summary judgment of non-infringement. This is the subject of the instant motion.[7]

### B.    The Asserted Claims of the '412 Patent

Affinion's remaining infringement allegations relate to Claims 10-17, 27-34, and 36 of the '412 Patent. Ex. G (March 17, 2006 Response to Interrogatory No. 1).

Claim 10 provides: A method for redeeming incentive awards in an on-line incentive program, said method comprising the steps of:

> **implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award;**
>
> implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage;

---

[7] If the Court were to side with Affinion on the disputed claim construction issues, numerous contested fact issues will remain. Maritz believes that, in such event, the jury will find non-infringement on one or more of those grounds. These are beyond the scope of this motion.

offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points; and

permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user through said on-line incentive program.

Ex. C ('412 Patent, col. 11, ll. 13-29). Affinion admits that Claims 27 and 36 contain the same four steps as Claim 10. Docket No. 139 at 8-9. Claim 27 is directed to a "computer readable medium" for carrying out these steps, while Claim 36 claims software for performing them.

Affinion also asserts Claims 11-17, which depend from Claim 10, and 28-34, which depend from Claim 27. Because Maritz does not infringe Claims 10 or 27, as properly interpreted, it cannot infringe dependent Claims 11-17 or 28-34. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed").

## C.    Maritz's Distinct Technology

Affinion essentially accuses two systems used by Maritz of infringing the asserted claims of the '412 Patent: VAULT and AwardHQ. *See* Ex. G, March 17, 2006 Response to Interrogatory No. 1. Both of these systems utilize database and Internet technology to manage loyalty and incentive programs.

Affinion argues that Maritz's mere use of Internet technology -- in conjunction with a business model that Maritz has practiced for decades -- infringes the '412 Patent. As shown below, however, Maritz's VAULT and AwardHQ technologies are markedly distinct from that covered by the asserted claims.

5

1.    **Maritz's VAULT System**

**REDACTED**

Equity programs that use the VAULT system allow consumers who have earned points in a program managed by Maritz to redeem those points for an award. The VAULT system allows points to be redeemed on-line for awards. Notably, *it does not include a website that offers products for sale or award points to participants for on-line product purchases.* **REDACTED** Ex. I, Bushold Dep. at 144:17-145:10.

Nor does the VAULT system award points immediately. There is a delay from when the consumer performs a point-earning activity until the program issues points and makes them available for redemption. In contrast to the patented subject matter, the VAULT system utilizes

**REDACTED**

The VAULT system employs three ways to process a consumer's point earnings and eventually make them available for redemption:

**REDACTED**

6

REDACTED

2.    **The AwardHQ Website**

Maritz's AwardHQ website is one tool used by Maritz to manage its clients'

points-based incentive programs.  Specifically,

REDACTED

Maritz uses the AwardHQ system for a diverse array of incentive programs.  For

example, AwardHQ has been used in conjunction with employee incentive programs,

where employees earn points for certain behavior, like reaching a sales goal.          REDACTED

AwardHQ has also been used in conjunction with other types of incentive

programs, such as incentive programs for distributors or other channel partners for certain

behaviors.  *None of the Maritz Incentives programs that use AwardHQ, however, are*

*frequency programs that award points to users for making purchases.*

REDACTED

7

The AwardHQ website serves as but one of several redemption options for participants, and does not issue points or store point balances for participants.

REDACTED

Maritz-managed programs that offer the AwardHQ website as a redemption option do not award points immediately. As with the VAULT system,

REDACTED

This processing delay is necessary to allow time for the reporting of a participant's behavior and the necessary processing of this data to convert into points. For example, in an employee incentive program, supervisors periodically submit performance information to Maritz for processing.

REDACTED

IV.    **Standards Governing Motions for Summary Judgment**

Fed. R. Civ. P. 56 mandates that summary judgment shall be rendered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." While the comparison of the claims to the accused process is a jury issue, summary judgment should be granted on that issue, like any other issue, when no

reasonable jury could find infringement. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n. 8 (1997); *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

Once the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The mere existence of evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986).

## V.    Argument

### A.    Legal Standards Governing Infringement

In an infringement action, the burden is on the patentee to show that the accused device or method contains each limitation of the asserted claim, either literally or under the doctrine of equivalents. *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 812 (Fed. Cir. 2002).

#### 1.    Literal Infringement

An infringement analysis entails two steps. First, the meaning and scope of the asserted patent claims is determined. *Aquatex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005). Second, the properly construed claims are compared to the accused product or process. *Id.* Literal infringement can only be found if "every limitation recited in the claim appears in the accused device, i.e., when 'the

properly construed claim reads on the accused device exactly.'" *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001).

A dependent claim is properly interpreted to include every limitation of the claim on which it depends. 35 U.S.C. §112 ¶ 4. Thus, "[i]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed[.]" *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 (Fed. Cir. 2002)(citation omitted).

      2.    <u>Doctrine of Equivalents</u>

"To infringe under the doctrine of equivalents, the accused product must contain each claim element or its equivalent." *Marquip, Inc. v. Fosber Am. Inc.*, 198 F.3d 1363, 1366 (Fed. Cir. 1999). "The accused product is equivalent to a claimed element if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Id.* (citing *Warner-Jenkinson Co.*, 520 U.S. at 24. In addition, infringement *may* be found "if an accused product 'performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention.'" *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (*quoting Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (en banc)) (emphasis in original).

In the instant case, Affinion has not set out any claim for infringement by equivalents regarding any of the claim elements addressed in this motion. Ex. N, July 18, 2005 Response to Interrogatory No. 15. And the specification's emphasis on the claimed features discussed below make clear that systems which lack these features could not be an "insubstantial" change. No reasonable jury could find that Maritz's accused activities

infringe under the doctrine of equivalents. *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001) (A patentee that "specifically identified, criticized, and disclaimed" a feature that was not part of the invention "cannot now invoke the doctrine of equivalents" to reclaim said feature.).

### B.    Maritz Does Not Infringe Claims 10, 27, or 36 of the '412 Patent

Affinion has painted its infringement allegations broadly, evidently opting to ignore the nuances of the various systems encompassed by its generalized allegations. Because Maritz customizes its systems to fit the particular needs of its clients, the "accused product" in this case is, in fact, hundreds of different systems. Many of the variations do not infringe the '412 Patent for reasons beyond those presented in this motion.

This request for summary judgment, however, has a narrower focus. *None* of the various implementations of VAULT or AwardHQ are "on-line incentive programs" as described and claimed in the '412 Patent, for the basic reasons described below. As such, Maritz is entitled to summary judgment of non-infringement as to all of its accused systems.

Claim 10 of the '412 Patent provides:  A method for redeeming incentive awards in an on-line incentive program, said method comprising the steps of:

**implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award;**

implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage;

offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points; and

permitting said user to initiate a process to receive said at least one redeemable award for

exchange of said award points issued to said user through said on-line incentive program.

Neither VAULT nor AwardHQ—or any other Maritz system for that matter—performs the first step required by the asserted claims. Specifically, there can be no dispute that these systems do not "implement[] an **on-line incentive program** that issues award points to users, wherein said award points are redeemable by said user for an award," as properly interpreted.

Because Maritz's Vault and AwardHQ systems do not perform all of the steps of Claim 10, those systems cannot infringe Claims 27 or 36.

1.    The Vault and AwardHQ Systems Do Not Award Points for On-Line Purchases

The first step of Claim 10 requires, *inter alia*, implementing an "on-line incentive program." Affinion argues that the required "on-line incentive program" should be interpreted to mean "a program that uses the award of points that are redeemable for awards to incentivize certain behaviors and which operates a program webpage that permits users to interact with the incentive program on-line." Docket Nos. 139, 152.

Maritz submits that Affinion's interpretation is improper, as it is in direct conflict with the specification and prosecution history, and would render other claim limitations superfluous. Docket Nos. 138, 151 at 16-17. Instead, when properly interpreted, this limitation is a frequency program that awards points to users for on-line product purchases. If the Court adopts Maritz's interpretation, none of the programs involving the Vault or AwardHQ systems infringe Claim 10, on this basis alone.

a.    AwardHQ Is Not a Frequency Program

The AwardHQ system supports a wide array of incentive programs. For instance, it has been used to support employee incentive programs, incentivizing activities such as sales performance. The AwardHQ system has also been used in conjunction with other non-consumer based activities, such as incentive programs for distributors or other channel partners for certain behaviors. No program using AwardHQ, however, is a *frequency* program that awards points to users for making purchases, whether on-line or off-line. **REDACTED** Because no frequency programs access the AwardHQ system for redemption, neither AwardHQ nor any of the programs utilizing it infringe Claims 10, 27, or 36.

b.    The VAULT System Does not Award Points for On-Line Product Purchases

The VAULT system manages a wide variety of consumer loyalty programs. Ex. H, Carpenter Dep. at 9:22-10:2. Some programs are referred to as "equity programs," and involve points being awarded to consumers for their loyalty. *Id*. at 8:14-9:18. Other programs, however, do not involve the award of points. *Id*. at 8:19-9:7. These programs do not infringe Claim 10, which requires that the "online incentive program ... *issue*[] *points to users*." Summary judgment of non-infringement is appropriate for non-equity programs that utilize VAULT's technology.

Equity programs, which *do* use the award of points to incite customer loyalty, do not infringe Claims 10, 27, or 36 because they do not implement an "on-line incentive program" as that term is properly interpreted. Specifically, the VAULT system does not support a website that offers products for sale or award points to users for on-line product purchases. Ex. H, Carpenter Dep. at 22:24-23:11; Ex. I, Bushold Dep. at 144:17-145:10.

13

Under the proper interpretation, this claim limitation is plainly not present in the VAULT system. Therefore, summary judgment is appropriate as to all programs, equity and non-equity, which utilize the VAULT system.

2.   Maritz's Vault and AwardHQ Systems Do Not Immediately Issue Points That Can Be Immediately Redeemed for an Award

A second, independent reason to grant summary judgment is that neither VAULT nor AwardHQ immediately issue points upon completion of a qualifying on-line product purchase that can be immediately redeemed for an award ("the immediacy effect"). As demonstrated by Maritz in its *Markman* briefs, the limitation "issues award points to users, wherein said award points are redeemable by said user for an award" is properly interpreted to require awarding points immediately that can be instantly redeemed for awards. The inventor of the '412 Patent touted this "immediacy" effect as the advantage of the invention, and criticized the prior art as lacking the same.

a.   AwardHQ Does Not Utilize the Immediacy Effect

Programs using the AwardHQ system do not immediately issue points to a user's account upon completion of a qualifying on-line product purchase. In fact, as noted, they do not award points for purchases of *any* kind.   REDACTED

Further, the AwardHQ system does not immediately award points to a user's account upon completion of any incentivized behavior.

REDACTED

14

REDACTED

Such delay makes clear that the "immediacy effect" is not achieved by Maritz's incentive programs that utilize AwardHQ as a redemption option.

          b.    <u>The VAULT System Does Not Utilize the Immediacy Effect</u>

Rather than immediately issuing points that are immediately available for redemption, the VAULT system receives batch files from Maritz's clients. These batch files are

REDACTED

                                                For clients that house their own point bank and do not send customer transaction data to Maritz, non-infringement rests on an additional ground. For these programs, Maritz simply provides the vehicle for participants to redeem their points. Because Maritz does not calculate points or add them to the user's account, it does not "issue points to users" as required by the asserted claims. Notwithstanding any delay in the issuance of points for these clients, summary judgment is also appropriate on this additional ground under either Affinion's or Maritz's interpretation.

Both VAULT and AwardHQ use a delayed, batched process, such that points are neither immediately awarded nor redeemable following the participants' point-earning behavior. Instead, the participant must allow for processing time before his or her earned points are issued and made available to redeem for awards. This is precisely the type of "processing time" the on-line incentive program described and claimed in the '412 Patent was designed to eliminate. Ex. C, col. 1, ll. 55-59 ("In addition, the enrolee [sic] must allow for processing time before the bonus points are recorded and made available as

redeemable credit.  Thus, the immediacy effect of the reward is lacking in these conventional incentive programs").  Accordingly, no program using AwardHQ performs the limitation of "issues award points to users, wherein said award points are redeemable by said user for an award" of Claims 10, 27, and 36, as properly interpreted.

**C.    Maritz Does Not Infringe Any of the Dependent Claims of the '412 Patent**

Affinion is asserting Claims 11 - 17, which depend from Claim 10, and Claims 28-34, which depend from Claim 27.   Upon a finding that Maritz does not infringe Claims 10 or 17, summary judgment is appropriate as to their dependent claims as well. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

## VI.     Conclusion

None of the various implementations of the VAULT or AwardHQ systems are "on-line incentive programs" as described and claimed in the '412 Patent. As such, Maritz is entitled to full summary judgment of non-infringement as to these systems and the programs which utilize them.

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ LLP

By: *Patricia S Rogowski*

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
The Nemours Building
1007 N.Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

*Attorneys for Maritz Inc.*

## CERTIFICATE OF SERVICE

I, hereby certify that on **May 25, 2006,** I electronically filed **OPENING BRIEF OF DEFENDANT MARITZ INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** with the Court Clerk using CM/ECF which will send notification of such filing(s) to Jack B. Blumenfeld and Maryellen Noreika.

I hereby further certify that on **May 25, 2006,** I have also served this document on the attorneys of record at the following addresses as indicated:

**Via Hand Delivery**
Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-11347

**Via Federal Express**
Steven Lieberman
Sharon L. Davis
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Patricia Smink Rogowski  (#2632)

18