# EXHIBIT E

9

| | Application No. | Applicant(s) |
|---|---|---|
| *Notice of Allowability* | 09/441,144 | STOREY, THOMAS W. |
| | Examiner | Art Unit |
| | Donald L. Champagne | 3622 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS. This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *TD filed 9 October 2002*.
2. ☒ The allowed claim(s) is/are *1-18 and 21-36*.
3. ☒ The drawings filed on *12 November 1999* are accepted by the Examiner.
4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All   b) ☐ Some*   c) ☐ None   of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____.
5. ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).
   (a) ☐ The translation of the foreign language provisional application has been received.
6. ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE**

7. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

8. ☐ CORRECTED DRAWINGS must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review (PTO-948) attached
      1) ☐ hereto or 2) ☐ to Paper No. _____.
   (b) ☐ including changes required by the proposed drawing correction filed _____, which has been approved by the Examiner.
   (c) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No. _____.

Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the top margin (not the back) of each sheet. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.

9. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)

1. ☒ Notice of References Cited (PTO-892)
2. ☐ Notice of Informal Patent Application (PTO-152)
3. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
4. ☐ Interview Summary (PTO-413), Paper No. _____.
5. ☐ Information Disclosure Statements (PTO-1449), Paper No. _____.
6. ☐ Examiner's Amendment/Comment
7. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

ERIC W. STAMBER
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 3600

U.S. Patent and Trademark Office
PTO-37 (Rev 04-01)    Notice of Allowability    Part of Paper No. 14

Application/Control Number: 09/441,144                                                    Page 2
Art Unit: 3622

## DETAILED ACTION

### Allowable Subject Matter

1. Claims 1-18 and 21-36 are allowed.

2. The following is an examiner's statement of reasons for allowance: the allowed claims differ materially from corresponding claims in Storey (US pat. 5,774,870) only in adding an obvious limitation to a means/display for browsing the product catalog/database. See the final rejection (Paper No. 12, filed 16 July 2002). Applicant has submitted an acceptable terminal disclaimer to overcome that rejection.

3. The closest prior art other than Storey is Kanter, which does not teach memory areas for either product or award catalogs (independent claim 1) or providing online access to an awards catalog (independent claims 10 and 15). Kanter teaches a structure by which a participant can earn awards defined by a plurality of sponsoring companies, so it would not be obvious to add a single online award catalog to the teaching of Kanter.

4. The closest foreign patent prior art is UK application GB 2,274,349 A, which also fails to teach an online awards catalog. Quinn teaches an online award catalog, but the prior art does not suggest adding the teachings of Quinn to those of UK application GB 2,274,349 A.

5. The closest non-patent prior art is Quinn, which fails to teach or suggest an online product catalog. That is taught by Petersen, but the combination is not suggested by the prior art.

6. Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### Conclusion

7. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Donald L Champagne whose telephone number is 703-308-3331. The examiner can normally be reached from 6:30 AM to 5 PM ET, Monday to Thursday. The examiner can also be contacted by e-mail at donald.champagne@uspto.gov, and *informal* fax communications may be sent directly to the examiner at 703-746-5536.

Application/Control Number: 09/441,144            Page 3
Art Unit: 3622

8. The examiner's supervisor, Eric Stamber, can be reached on 703-305-8469. The fax phone numbers for the organization where this application or proceeding is assigned are 703-872-9326 for regular official communications and 703-872-9327 for After Final official communications. Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is 703-306-5771.

DLC
30 November 2002

| Notice of References Cited | Application/Control No. 09/441,144 | Applicant(s)/Patent Under Reexamination STOREY, THOMAS W. | |
|---|---|---|---|
| | Examiner Donald L. Champagne | Art Unit 3622 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,537,314 | 07-1996 | Kanter | 705/14 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | Quinn, Judy, "The incentive industry gets smart", Incentive, vol. 168, no. 2 (February 1994), p. 23. |
| | V | Petersen, Laurie, "A shopping spree in cyberspace", Catalog Age, vol. 12, no. 9 (1 September 1995), pp. 78-80. |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)   Notice of References Cited   Part of Paper No. 14



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 6449 | 7590 | 02/03/2003 |

ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K STREET, N.W.
SUITE 800
WASHINGTON, DC 20005

| EXAMINER |
|---|
| CHAMPAGNE, DONALD |

| ART UNIT | CLASS-SUBCLASS |
|---|---|
| 3622 | 705-014000 |

DATE MAILED: 02/03/2003

| APPLICATION NO | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO |
|---|---|---|---|---|
| 09/441,144 | 11/12/1999 | THOMAS W. STOREY | 2829-136 | 3924 |

TITLE OF INVENTION: FULLY INTEGRATED, ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM

| APPLN TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | YES | $650 | $0 | $650 | 05/05/2003 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE REFLECTS A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR AN EQUIVALENT) MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL BE REGARDED AS ABANDONED.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status is changed, pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above and notify the United States Patent and Trademark Office of the change in status, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check the box below and enclose the PUBLICATION FEE and 1/2 the ISSUE FEE shown above.

☐ Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 4

PTOL-85 (REV 04-02) Approved for use through 01/31/2004.

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail** Box ISSUE FEE
Commissioner for Patents
Washington, D.C. 20231
**Fax** (703) 746-4000

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

6449   7590   02/03/2003

ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K STREET, N.W.
SUITE 800
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/441,144 | 11/12/1999 | THOMAS W. STOREY | 2829-136 | 3924 |

TITLE OF INVENTION: FULLY INTEGRATED, ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | YES | $650 | $0 | $650 | 05/05/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHAMPAGNE, DONALD | 3622 | 705-014000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

   ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

   ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

   1 _____
   2 _____
   3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                 (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent)   ☐ individual  ☐ corporation or other private group entity  ☐ government

| 4a. The following fee(s) are enclosed: | 4b. Payment of Fee(s): |
|---|---|
| ☐ Issue Fee | ☐ A check in the amount of the fee(s) is enclosed. |
| ☐ Publication Fee | ☐ Payment by credit card. Form PTO-2038 is attached. |
| ☐ Advance Order - # of Copies _____ | ☐ The Commissioner is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form). |

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

(Authorized Signature) _____   (Date) _____

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

TRANSMIT THIS FORM WITH FEE(S)

PTOL-85 (REV 04-02) Approved for use through 01/31/2004. OMB 0651-0033   U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/441,144 | 11/12/1999 | THOMAS W. STOREY | 2829-136 | 3924 |

| | EXAMINER |
|---|---|
| 6449   7590   02/03/2003 | CHAMPAGNE, DONALD |
| ROTHWELL, FIGG, ERNST & MANBECK, P.C. | |
| 1425 K STREET, N.W. | |
| SUITE 800 | ART UNIT | PAPER NUMBER |
| WASHINGTON, DC 20005 | 3622 | |
| UNITED STATES | |

DATE MAILED: 02/03/2003

Determination of Patent Term Extension under 35 U.S.C. 154 (b)
(application filed after June 7, 1995 but prior to May 29, 2000)

The patent term extension is 0 days. Any patent to issue from the above identified application will include an indication of the 0 day extension on the front page.

If a continued prosecution application (CPA) was filed in the above-identified application, the filing date that determines patent term extension is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) system. (http://pair.uspto.gov)

Any questions regarding the patent term extension or adjustment determination should be directed to the Office of Patent Legal Administration at (703)305-1383.

Page 3 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/441,144 | 11/12/1999 | THOMAS W. STOREY | 2829-136 | 3924 |

| | | | EXAMINER |
|---|---|---|---|
| 6449 | 7590 | 02/03/2003 | CHAMPAGNE, DONALD |
| ROTHWELL, FIGG, ERNST & MANBECK, P.C. | | | |
| 1425 K STREET, N.W. | | ART UNIT | PAPER NUMBER |
| SUITE 800 | | 3612 | |
| WASHINGTON, DC 20005 | | | |
| UNITED STATES | | | |

DATE MAILED: 02/03/2003

## Notice of Fee Increase on January 1, 2003

If a reply to a "Notice of Allowance and Fee(s) Due" is filed in the Office on or after January 1, 2003, then the amount due will be higher than that set forth in the "Notice of Allowance and Fee(s) Due" since there will be an increase in fees effective on January 1, 2003. See Revision of Patent and Trademark Fees for Fiscal Year 2003; Final Rule, 67 Fed. Reg. 70847, 70849 (November 27, 2002).

The current fee schedule is accessible from: http://www.uspto.gov/main/howtofees.htm.

If the issue fee paid is the amount shown on the "Notice of Allowance and Fee(s) Due," but not the correct amount in view of the fee increase, a "Notice to Pay Balance of Issue Fee" will be mailed to applicant. In order to avoid processing delays associated with mailing of a "Notice to Pay Balance of Issue Fee," if the response to the Notice of Allowance and Fee(s) due form is to be filed on or after January 1, 2003 (or mailed with a certificate of mailing on or after January 1, 2003), the issue fee paid should be the fee that is required at the time the fee is paid. If the issue fee was previously paid, and the response to the "Notice of Allowance and Fee(s) Due" includes a request to apply a previously-paid issue fee to the issue fee now due, then the difference between the issue fee amount at the time the response is filed and the previously paid issue fee should be paid. See Manual of Patent Examining Procedure, Section 1308.01 (Eighth Edition, August 2001).

Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (703) 305-8283.

Page 4 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail** Box ISSUE FEE
Commissioner for Patents
Washington, D.C. 20231
**Fax** (703)746-4000

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS
6449  7590  02/01/2003

ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K STREET, N.W.
SUITE 800
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/441,144 | 11/12/1999 | THOMAS W. STOREY | 2829-136 | 3924 |

TITLE OF INVENTION: FULLY INTEGRATED, ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | YES NO | ~~1660~~ 1300 | $0 | ~~1660~~ 1300 | 05/05/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHAMPAGNE, DONALD | 3622 | 705-014000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

   1. Rothwell, Figg, Ernst & Manbeck, P.C.
   2. _____
   3. _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE: Trilegiant Corporation
(B) RESIDENCE: (CITY and STATE OR COUNTRY): Norwalk, Connecticut

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ individual ☒ corporation or other private group entity ☐ government

4a. The following fees are enclosed:
☒ Issue Fee
☐ Publication Fee
☒ Advance Order - # of Copies ___10___

4b. Payment of Fee(s): #1330
☒ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Commissioner is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number _02-2135_ (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

(Authorized Signature) _____ (Date) 04-30-03
Monica S. Davis, Reg. No. 44,492

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

05/01/2003 YPOLITE2 00000060 09441144
01 FC:1501       1300.00 OP
02 FC:8001         30.00 OP

TRANSMIT THIS FORM WITH FEE(S)

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004. OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# EXHIBIT F



Cover Story

# THE INTERACTIVE REVOLUTION

*How do you get consumers to respond to your promotions? Through new high-tech routes on the emerging information superhighway*

BY JUDY QUINN

T wo months from now, some 4,000 consumers in the Orlando area will be the first to receive Time Warner's new Full Service Network, an interactive cable TV channel, into their homes. According to Time Warner chair and CEO Gerald Levin, this will be no less than the start of "a new electronic superhighway [that] will change the way people use television...It truly will usher in the multimedia age."

Interactive. Multimedia. The information superhighway. Not a day goes by nowadays without these words cropping up in the business pages, as Time Warner or MCI or AT&T or some other communications giant announces grand plans to create cable, TV and phone networks that will incorporate sound, image, data and interactivity with the user in ways and speeds currently unheard of.

It's all enough to give anyone information anxiety, particularly incentive marketers wondering what media vehicle will give their consumer promotion the most pizzazz. "I've counted at least 60 players in interactive TV alone," says Gary Arlen, president of Arlen Communications, a Bethesda, Md.-based technology marketing consulting firm.

And while not every promotion has to be high tech—"any time you ask for consumer response, it's interactive," says Brent Bissell, director of database marketing for Minneapolis-based Carlson Marketing Group—technology's transformation of consumer media and consumer promotion, probably by the end of this century, will be undeniable. In the following pages, a look at how technology is changing the shape of consumer incentives.

## TV: Just How Interactive Will It Get?

While Time Warner CEO Gerald Levin can be expected to hype his company's Full Service Network, saying it "will provide extraordinary benefits," less biased bystanders—among them incentive marketers—are also eagerly awaiting its April debut.

"There should be plenty of consumer promotion opportunities on interactive TV," says Ellen Oppenheim, senior vice president-media director at FCB/Leber Katz Partners, a New York advertising agency that will test-market ads and promotions for its major advertising clients on Time Warner's and other

[right column, partially cut off:]
ers' new in
allows cor
respond, ar
will go wit
ability to p
information
or an entry
can enter
pressing a
device."

Brent Biss
marketing
Carlson Ma
view of how
interactive T
Marketing
"Time Warn
ad for Jeep C
active TV u
dence to cho
screen, like
could then p
set-top print
reason why
coupon prin
on a chance f

**Interactiv**
Time Warner
interactive T
Beaverton, O
tems Inc., wh
rung in Spain
ing Gillette a
The latter pro
through a we
viewers thre
about health a

**Tec**
What's in
homes for
promotion:
Electronic:
tion, this is
rently shak
household
98% have
96% have
91% have
42% have
systems/s
37% have
4% hav

MAR28743



ew interactive TV networks. "It
s consumers to immediately
nd, and the set-top printers that
o with these units will offer the
ty to print material, be it more
mation on the product, a coupon
entry in a sweepstakes. Or they
enter a sweepstakes through
sing a button on their remote
ce."
ent Bissell, director of database
keting for Minneapolis-based
son Marketing Group, got a pre-
of how promotions could run on
active TV during this year's Direct
keting Association conference.
me Warner showed us a prototype
for Jeep Cherokee, where an inter-
tive TV user could use a remote
evice to choose options shown on the
een, like color and price. The user
uld then print out this option on a
et-top printer," he says. "There's no
ason why you couldn't have a
upon print out, or have users click
a chance for a sweepstakes."

### Interactive Infomercials

ime Warner is not the only one in the
Interactive TV game. Others include
eaverton, Ore.-based Interactive Sys-
ms Inc., which is already up and run-
ing in Spain, with advertisers includ-
ng Gillette and Chesebrough-Ponds.
The latter promotes its beauty-products
through a weekly infomercial that takes
viewers through an interactive quiz
about health and beauty issues and then

rewards them with
beauty tip booklets
and other prizes.
Mountain View,
Calif.-based Interac-
tive Network, al-
ready used by 3,000
subscribers in Sac-
ramento and San
Francisco, just
tapped consumer
marketing whiz
Peter Sealey, a for-
mer Coca-Cola mar-
keting executive, as
president, and ex-
pects to provide
national service
within a year. One
of its current programs is QB1, an
interactive football game that is spon-
sored by Miller Beer; the game's
graphics include bright and dominant
displays of the Miller logo. Miller
recently told *Advertising Age* that sales
have increased in the bars and restau-
rants that run QB1, but declined to pro-
vide figures.

### Promises and Problems

Despite interactive TV's promise, how-
ever, there have already been some
troubles to make advertisers and pro-
moters wary of signing aboard a partic-
ular interactive TV system too soon.
There is the issue of hardware: Each of
these systems requires some sort of
remote device, set-top box and printer,
all of which will cost the consumer
and/or advertiser. Some interactive
tests are charging consumers as much as
$200 for an initial hardware setup, with
subscription fees thereafter. Advertisers
also fear that no interactive TV compa-
ny can yet support its promise to be a
promotion intermediary and record and
fulfill all consumer responses.
Still worse, one promising interactive
TV test has already failed. At the end of
last year, the Federal Communications
Commission ordered Stamford, Conn.-
based GTE Corp. to end its interactive
TV service in Cerritos, Calif., by next
month, claiming it had created a monop-
oly of one company providing both cable
and phone service in a community.
These legal battles have given some
advantage to another budding interac-
tive TV service, Reston, Va.-based Eon,
formerly known as TV Answer, which



**Television viewers can now choose the language of the commercials they see.**

operates via radio and satellite communi-
cations instead of cable. Eon spokesman
Paul Sturiale says the cost of setting up a
home with a radio connection is only
$150, compared to the current cost of
$1,200 per home for fiber-optic wiring.
Eon will starts its local testing in Reston
around the time of Time Warner's pilot
and is working with, among others, the J.
Walter Thompson advertising agency
and promotion house Marden Kane to
attract advertising and promotion clients.
The only true arena for interactive TV
promotion testing so far has been the
up-and-running cable home-shopping
shows, which are interactive in that they
allow for call-in response from con-
sumers. This summer, Paramus, N.J.-
based Einson Freeman ran a promotion
for Amtrak on the Home Shopping
Club (HSC), and president Jeff McElnea
says, "The promotion resulted in a
tremendous increase in call volume to
Amtrak's reservations lines." During
HSC's regular "Shopping with Mindy"
program, video segments promoting
Amtrack train travel came up and a
"train whistle" would blow, alerting
viewers to call in and enter a sweep-
stakes to win first-class Amtrak trips for
two anywhere in the United States. "It
definitely helped increase brand aware-
ness," says McElnea. "It's difficult to get
across the idea of train travel in a mailer;
this was definitely a better way."
But ask McElnea about the potential of
the real high-end interactive TV coming
down the pike, and he remains skeptical.
"Home Shopping Club has millions of
viewers," he says "I'll wait until those
systems get *that* kind of audience."

CEO Gerald
d to hype his
ce Network,
e extraordi-
biased by-
m incentive
agerly await-

enty of con-
ortunities on
llen Oppen-
ident-media
r Katz Part-
advertising
rket ads and
of advertiser
r's and oth-

### Technology's Reach

What's in place now in U.S. homes for high-tech consumer promotions? According to the Electronics Industry Associa-tion, this is how technology cur-rently shakes out in American households:

98% have telephones
98% have television
91% have VCRs
42% have video game systems/software
37% have home computers
4% have home fax machines

**Cover Story ■ Interactive Promotions**

# The Telephone: Instrument of Power

"Everyone has one, everyone knows how to use one. It doesn't scare young or old."

That's how Brad Wendkos, president of Phoneworks, a Hoboken, N.J.-based telepromotions company, describes the power of telephone as a promotion tool. Unlike those much touted fiber optic lines, phone lines are already in place nationally. Touchtone technology lends the phone plenty of interactivity, turning the phone receiver into a computer keypad that can select choices and record information. And best of all, Wendkos says that when an interactive telephone number is added to a promotion (for a price, he says, as little as $5,000) it greatly improves the consumer response. One whopping example: When Wendkos added an interactive 800 number instant-win game to JVC's annual Jazz Festival promotion last year, response increased 650 percent from the previous year, in which only point-of-purchase sweepstakes displays were used. Callers, addressed by recognized jazz personality John Faddis, were asked to enter their home phone number to receive a prize code and the location of their local JVC dealer. Consumers took their unique prize code to the dealership to find out if their number matched one of the numbers on display. Prizes ranged from home entertainment equipment to a trip to the JVC Jazz Festival in Nice.

Perhaps the biggest use of telepromotions has been with those ever-warring consumer promoters, Coke and Pepsi. Coke worked with, among others, Sprint's new FonMagic telepromotions division for its Monsters of the Gridiron, a call-in promotion during televised football games that generated more than 32 million calls from consumers. Pepsi chose to make its telepromotion a bit smaller — a mere million — during its "Convert a Million" promotion, which started with a shipment of a million cases of Diet Pepsi to known Diet Coke households. This was followed up with a direct mail piece to the same households, offering them a chance to call an interactive 800 number and "talk" to spokesperson Ray Charles (previously recorded). More than 50 percent of those targeted responded, and they gave Pepsi a wealth of consumer marketing data.

Even more surprising, the prize offered — Pepsi products, like a six-pack or a vending machine — didn't appear to be the main incentive. "The technology had a lot to do with it," says Gerald O'Connell, president of Modem Media, the Westport, Conn.-based technology marketing company that helped plan the promotion.

O'Connell has found, as many technology marketers do, that the entertainment aspect of the interaction allows for a less costly premium attached to it. And as seen in the case of 900-number telepromotions, it also becomes acceptable for consumers to pay to participate in the promotion, helping to defray the cost for the company and to weed out less serious customers. Coors' 900 number in its award-winning "Keystone Fishing Hotline," for example, charges consumers 60 cents per minute for fishing tips that Coors updates weekly from some 500 bait and tackle shops across the country. Callers interact with a touchtone menu that allows them to choose the fishing region, even the type of fish desired. For information, Keystone tracks the market and can track, on information communications, the Minnesota Public Radio house that worked with Modem Media on the promotion and consumer research, giving Coors a great deal of information on its customer loyalty. Keystone modified its promotion "to offer people with different interests, including a separate hotline on information about what's biting on Keystone model." 

The phone lines at Modem promotions "one from Burger King in 1991, in which callers could dial a 900 number to redeem coupons to be mailed in a unique format. You punch in a code and receive the rebate in the form of a credit on their phone bill. But there are still more things to be worked out. All that consumer response demands plenty of phone lines and live operators or an automated response program. While companies like Modem Media and Omaha-based Call Interactive can handle this kind of a call, usually running about 2,000 phone lines and 400 operators for a typical interactive promotion, it's hard to calculate when callers receive busy signals and can't get through. Some of this phone jam — and lost promotion opportunity — could be relieved as the phone companies gradually transform their cable lines into fiber optic ones, allowing for greatly increased data flow. This expanded capability — and phone companies like AT&T's work on "smart" phones that would attach video and computer screens to phone "terminals" — will continue to keep the telephone a serious competitor as a promotional tool in the years to come.

*Callers could "talk" to Ray Charles in Diet Pepsi's 800 promotion.*

22                                    FEBRUARY 1994 / INCENTIVE

QUINN



## The Incentive Industry Gets Smart

The technology revolution is not just affecting the nature of consumer promotions—it's transforming the very nature of incentive management. According to Jack Sorentino, vice president of client information services for St. Louis-based Maritz Inc., "The new technologies are making incentive administration much more sophisticated. And good administration is key to good incentives: communications, the leadback, the reward." Among the technological improvements:

*Audio response tracking:* Similar to those used in consumer telepromotions, audio response telephone numbers can be set up so that program participants can check on their status or call in sales scores. "It used to be that a car dealership would have a punchboard up, and when a salesperson met a certain sales goal, he would pick a prize from the board," says Sorentino. "Now he can call in."

Hoboken, N.J.-based Phoneworks, a telepromotions firm, handles tracking and fulfillment of many incentive programs, including Apple's dealer program to push its Performa model. "Dealers call into the number, put in their personal ID, which could be their social security number or another assigned number, and they can hear how many points they've accrued. They report sales by punching in product serial numbers and codes," says Brad Wendkos, Phoneworks' president. "They can also hear a personalized message, such as 'That's great, John. You've just met the quota.' Even though it's an automated program, it has a warm and fuzzy feel to it."

*Online communications:* Another great paperwork saver is running incentive program announcements and other material right on a company's PC network. Sorentino has done this for many Maritz clients, including one 120-office network, and has also linked clients' networks to Maritz's computer networks so that all announcements, tracking and other communications are running on one system.

*Interactive award catalogues:* "We're going to be able to make awards really come alive with technology," says Sorentino. Maritz is testing a merchandise catalogue where users can view images of items and place orders online. As for travel, the typical promotion videos will be enhanced so that "you could click on a particular dinearound option, then view the experience of that restaurant," says Sorentino. "We're going to really be able to explode the idea of the trip."

## PCs: Connecting to the Techno-Hip

As marketers wonder if consumers will really interact with their television set and play along with promotions on it, they already have an environment where that behavior is a given: the personal computer. Interactive promotions using computer disks, online services and the new CD-ROM and CD-I technologies are already attracting response from an ever-growing population already accustomed to high technology.

The car companies have been among the first to utilize computer disks as a promotion tool. In 1985, Ford, wanting to reach the 18- to 34-year-old male audience (one of the biggest users of PCs), started offering a disk that has a driving simulator game allowing consumers to "drive" through a Grand Prix racetrack. This is followed by a "shopping expedition," a menu of choices (selected by punching the appropriate key on the computer keypad) to display images of certain models as well as accompanying data on specifications and prices. "We wanted to make sure consumers kept the disks in their hard drive," says Paula George, chief executive officer of the Soft Ad Group, the Sausalito, Calif.-based firm that designed the promotion: "It was, in a sense, the premium for the promotion." Consumers are even willing to pay for it: Ford advertises the disk for $6.95—and also charges for a mail-in offer of a T-shirt that displays some of the disk's graphics. The disk also asks consumers to respond to a research survey—and most of them do it. Buick offered the second generation of car promotion disks a few years later. Developed by San Antonio, Tex.-based Inmar Group, this disk offers the car information first, followed by interactive golf or trivia games. Buick's 1993 disk also has an additional incentive: Anyone who buys a car gets a $125 gift certificate from The Sharper Image, a cross-promotion partner whose logo appears in the material on the disk and who also advertises the Buick disk in its catalogue. Inmar president Dennis Snyder says that of the 150,000 consumers who received the targeted mailing of the 1993 disk, 37 percent ended up visiting a Buick dealership and 12 percent of that group

### Virtual Reality

No, this is not a far-out promotion option. Software technology for virtual reality, says Bill Meredith, president of CyberCom, has dropped dramatically in price in the past year, from about $40,000 to $15,000, and programs can run on mere PC terminals. Bubble Yum was one of the first to use this technology, operating a Virtual Reality Mall Tour last year. Each day of the tour, over 1,000 consumers brought five proof-of-purchase seals in order to don goggles and headset, grab a joystick and play a three-dimensional game to experience life on "Planet Yum." Cutty Sark plans to launch its much-hushed virtual reality promotion in two months.

MAR28746

## Cover Story ■ Interactive Promotions

bought cars. Also, Snyder says the disk was copied an average of four times, reaching more users, and consumers can sign up for a "subscription" of yearly promo disks, assuring an ongoing connection to customers.

Now that the U.S. home PC population has penetrated above the 30-percent mark, Snyder says he's getting more interest from mass marketers like the packaged food companies in running some kind of demo, information or offer on disk. "We plan on doing things like 'Save five box tops, get a disk on health and fitness'—or even offer a disk as a premium on pack," he says. Disk promos are also getting cheaper: Costs for disk creation have dramatically dropped since Ford's initial foray; with improved and cheaper software programming technologies, a disk promo can be had for as little as $20 per piece.

### Beyond the Disk

Disks have their drawbacks. Most require installation on a hard drive and viewing on a color monitor, but consumers may not have the space or the money for them. Thus, another option marketers are turning to is to run a promotion on one of the online networks to which PC users are already connected.

A recent online promotion was Coors' Fan Picks Poll, which ran on Prodigy, one of the largest (950,000 households) and currently the most commercially inclined of the online networks. (Others include Compuserve, the new America Online and what many may feel may turn out to be the backbone of the information superhighway, the Internet.) Tied to Coors' ongoing sponsorship of college football, the Poll promotion was posted on Prodigy as well as in print by its promotion partner, *Sporting News* magazine. Prodigy users were alerted to the promotion when they called up the "commercial marketing" menu on Prodigy's menu. Online users could choose what they thought was the best-performing college football team that week, and that data was collected and then posted in *Sporting News'* next issue as well as on Prodigy. "An online service was a great vehicle for the promotion in this case because we needed immediacy—we had to compile those results overnight," says Gerald O'Connell, president of Modem Media, the technology marketing company that worked with Coors

*Bulok's disk included golf and trivia games.*

on the promotion. Coors also ran a tie-in retail promotion, running a sweepstakes where consumers would have to go to retailers to purchase product and get a chance to win a 30-week subscription to *Sporting News* or, as a grand prize, a trip to the college football game of their choice. O'Connell says the promotion paid off big not only in consumer response (one weekend alone netted 100,000 online responses) and some increased sales through the sweepstakes, but in "a halo effect of great PR, with Coors associated with the voice of college football."

However, high marketers get on online services, this promotion vehicle has its glitches. Prodigy, which can usually run a promotion for a basic online connect charge, is often criticized as being clunky and inefficient. Some of the other networks and their users are resisting commercialism, fearing an invasion of privacy, although the online services' various shopping services, bulletin boards and discussion groups seem ripe for promotion tie-ins. As these networks evolve—and perhaps get desperate for upkeep money—this resistance may drop. However, even then, says O'Connell, "It's going to take a sophisticated marketer to know how and when to use this promotion vehicle."

Perhaps an easier PC technology for promotion marketers will be the emerging CD computer disk formats, CD-ROM (read only memory, for information storage only) and CD-I (interactive), which allows users to choose options), both of which will dramatically increase the amount of data and image space. "CDs have tremendous potential," says Gary Arlen, president of Arlen Communications, a Bethesda, Md.-based marketing firm that advises companies on emerging technologies. "In the next few years, 30 to 50 percent of all PCs sold will have a CD drive. And consumers seem to be responding to this product." ■

### Screen Savers

Colorado Springs, Colo.-based Infinity Promotions creates customized screen savers so that corporate messages, logos and even contest information pop up instead of those flying toasters when PCs screens are idle. Infinity Promotions partner Steve Suslow says the typical PC user will see a screen saver image more than 100 times a week.

### Smart Cards

Remember life before bankcards? Not many can, and companies are starting to use the scanning, bar code and voice-chip technology of these cards in consumer promotions. For the award-winning "The Little Engine That Could" 1991 holiday promotion that McCracken Brooks Communications designed for Wisconsin-based ShopKo Stores, consumers were mailed a bar-coded instant-win game card, which they brought into their nearest store. The card activated an interactive voice chip (which included the *Little Engine* train sounds and voice), telling consumers whether they had won prizes including Fun Kits based around the classic children's book.

The promotion, and a similar one the following year, both exceeded the goal of increasing store traffic by 5 percent.

Jack Sorentino, director of client information services at St. Louis-based Maritz Inc. is currently working with a movie chain to develop a "smart card" on which all customer transactions would be recorded, so that the movie company could custom-tailor promotions to individual customers' buying habits.

MAR28747