# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AFFINION LOYALTY GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-360-JJF |
| | ) |
| MARITZ, INC., | ) |
| Defendant. | ) |
| | ) |

## AFFINION LOYALTY GROUP, INC.'S SUPPLEMENTAL RESPONSES TO MARITZ, INC.'S FIRST SET OF INTERROGATORIES

Under Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Affinion Loyalty Group, Inc. ("Affinion") submits the following supplemental responses to Maritz, Inc.'s ("Maritz's") First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

Unless otherwise stated, these general objections apply to each and every Interrogatory as though fully set forth therein:

1.       Each of the following responses is made only for purposes of this action.  Each response is subject to all objections as to relevance, materiality, and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court.  All objections and grounds are expressly reserved.

2.       Affinion objects to the Interrogatories, including the Definitions and Instructions and each individual Interrogatory set forth therein, to the extent that they seek the disclosure of information covered by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable law, privilege, protection, immunity, or doctrine.  Nothing herein is

7.    Affinion objects to the Interrogatories, including the Definitions and Instructions and each individual Interrogatory set forth therein, to the extent that they purport to require Affinion to provide information that is publicly available or within Maritz's possession.

8.    Affinion asserts its General Objections with respect to each and every Interrogatory. Affinion reserves the right to supplement, amend, correct, or clarify its responses and objections to these interrogatories, and to assert general and specific objections arising from matters discovered during the course of the litigation.

## SUPPLEMENTAL RESPONSES TO
## CERTAIN INDIVIDUAL INTERROGATORIES

### Interrogatory No. 1:

Provide a four column claim chart for the claims of the Patents at Issue which identifies, in the far left column each claim element, in the left middle column plaintiff's construction of the language of that element pursuant to *Markman v. Westview Instruments, Inc.*, in the middle column whether and why each element as so construed literally covers or does not literally cover any programs, methods, or systems allegedly used by defendant that plaintiff asserts are covered by one or more of the claims of the Patents at Issue, or any aspect thereof, and identifying the program, method or system, and in the far right column, whether and why each element as so construed covers or does not cover the accused programs, methods, or systems or any aspect thereof under the doctrine of equivalents.

### Response to Interrogatory No. 1:

Affinion reasserts its general objections listed above.  Further, Affinion objects to Interrogatory No. 1 to the extent it seeks the disclosure of information covered by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable law, privilege, protection, immunity, or doctrine.  Affinion further objects to this interrogatory on the basis that

it is premature and to the extent it requires Affinion to disclose information in Maritz's, not Affinion's, possession, custody or control.

Without waiving those objections, all of which Affinion hereby reserves, Affinion responds as follows: Maritz's use of its VAULT system and AwardHQ website infringes claims 10, 11, 12, 13, 14, 15, 16, 17 (VAULT only), 27, 28, 29, 30, 31, 32, 33, 34 (VAULT only) and 36 of U.S. Patent No. 6,009,412. Affinion further states that its construction of those patent claims and the bases for infringement thereof are set forth in the expert reports of Randy Petersen and Robert Young, served March 10, 2006. To the extent the exchange of expert reports reveals the need for additional claim construction or other supplementation of those reports, any such additional opinions from Mr. Petersen or Mr. Young are incorporated herein.

**Interrogatory No. 2:**

Describe in detail the factual basis and/or evidentiary support for plaintiff's contention that Maritz infringes one or more of the claims of the Patents at Issue, including the identification of each document that supports this contention, and the identification of each witness that has knowledge of any facts that support this contention.

**Response to Interrogatory No. 2:**

Affinion objects to Interrogatory No. 2 to the extent it seeks the disclosure of information covered by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable law, privilege, protection, immunity, or doctrine. Affinion further objects to this interrogatory on the basis that it is premature and to the extent that it requires Affinion to disclose information and witnesses in Maritz's, not in Affinion's, possession, custody or control. Affinion further objects to this interrogatory on the basis that it is duplicative of Interrogatory No. 1 and Affinion will not repeat herein its response to Interrogatory No. 1. Without waiving

client privilege, the attorney work-product doctrine and/or any other applicable law, privilege, protection, immunity, or doctrine. Affinion further objects to this interrogatory on the basis that it is premature and to the extent that it requires Affinion to disclose information in Maritz's, not in Affinion's, possession, custody or control. Without waiving those objections, all of which Affinion reserves, Affinion states that its damages position is set forth in the expert report of Dr. Marion Stewart served March 10, 2006. To the extent Dr. Stewart provides additional or updated opinions, those opinions are incorporated herein by reference.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST
  & MANBECK, P.C.
1425 K Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040

March 17, 2006
512010

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2006, I caused copies of the foregoing to be

served upon the following in the manner indicated:

### BY HAND

Patricia Smink Rogowski
CONNOLLY, BOVE, LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

J. Bennett Clark
SENNIGER, POWERS, LEAVITT & ROEDEL
One Metropolitan Square
St. Louis, MO  63102


James W. Parrett, Jr. (#4292)

512010

# Exhibit H to

# Opening Brief of Defendant Maritz Inc. in Support of Its Motion for Summary Judgment of Non-Infringement

# Filed Under Seal

EXHIBIT I

T. Bushold

1

```
1              U.S. DISTRICT COURT
              FOURTH DISTRICT OF DELAWARE
2

   TRILEGIANT LOYALTY SOLUTIONS, INC., )
3                                       )
      Plaintiff,                        )
4                                       ) Cause No.
   vs.                                  ) 04-360-JJF
5                                       )
   MARITZ, INC.,                        )
6                                       )
      Defendant.                        )
7
              VIDEO DEPOSITION OF THOMAS BUSHOLD
8              Taken on behalf of the Plaintiff
                     March 2, 2006
9
              Sheryl A. Pautler, CCR 871
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

VERITEXT/NEW YORK REPORTING COMPANY
212-267-6868                              516-608-2400

T. Bushold

---

**Page 2**

| QUESTIONS BY: | PAGE NO. |
|---|---|
| Mr. Lieberman | 6 |
| Mr. Clark | 168 |
| Mr. Lieberman | 174 |

INDEX OF EXHIBITS

| PLAINTIFF'S | | PAGE MKD. |
|---|---|---|
| 219 | Vault License Discussion Document. | 39 |
| 220 | Description of eVault. | 106 |
| 221 | Vault Locks Up New Sales. | 109 |
| 222 | EVault system requirements. | 111 |
| 223 | Handwritten notes. | 132 |
| 224 | Interoffice correspondence. | 141 |
| 225 | Vault feature index. | 148 |
| 226 | Vault 4.3.2 system documentation. | 167 |

(Whereupon the exhibits were attached to the original and copies.)

---

**Page 4**

A P P E A R A N C E S

For the Plaintiff:
Mr. Steven Lieberman
Ms. R. Elizabeth Bronner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, NW
Suite 800
Washington, D.C. 20005
202-783-6040

For the Defendant:

Mr. Ben Clark
Mr. Michael Hartley
Senniger Powers
One Metropolitan Square
16th Floor
St. Louis, Missouri 63102
314-231-5400

The Video Technician:
Ms. Kimberlee Lauer
Midwest Litigation Services
711 North Eleventh Street
St. Louis, Missouri 63101
314-644-2191

The Court Reporter:

Ms. Sheryl Pautler
Midwest Litigation Services
711 North Eleventh Street
St. Louis, Missouri 63101
314-644-2191

Also Present:
Mr. Steven Gallant

---

**Page 3**

U.S. DISTRICT COURT
FOURTH DISTRICT OF DELAWARE

TRILEGIANT LOYALTY SOLUTIONS, INC., )
                                    )
    Plaintiff,                      ) Cause No.
                                    ) 04-360-JJF
vs.                                 )
                                    )
MARITZ, INC.,                       )
                                    )
    Defendant.                      )

DEPOSITION OF WITNESS, THOMAS BUSHOLD, produced, sworn, and examined on the 2nd day of March, 2006, between the hours of nine o'clock in the forenoon and four o'clock in the afternoon of that day, at Senniger Powers, One Metropolitan Square, St. Louis, Missouri, before SHERYL A. PAUTLER, a Notary Public and Certified Court Reporter within and for the State of Missouri, in a certain cause now pending before the U.S. District Court, Fourth District of Delaware, wherein TRILEGIANT LOYALTY SOLUTIONS, INC. is the Plaintiff, and MARITZ, INC. is the Defendant.

---

**Page 5**

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for Plaintiff and counsel for Defendant, that the deposition of THOMAS BUSHOLD may be taken in shorthand by Sheryl A. Pautler, a notary public and shorthand reporter, and afterwards transcribed into typewriting; and the signature of the witness is expressly reserved.

* * * * *

THOMAS BUSHOLD, of lawful age, being produced, sworn and examined on behalf of the Plaintiff, deposes and says:

THE VIDEO TECHNICIAN: We're on the record. It's 9:01 a.m. Today's date is March 2, 2006. This is the videotaped deposition of Mr. Thomas Bushold in the matter of Trilegiant Loyalty Solutions, Incorporated versus Maritz, Incorporated, Case No. 04-360-JJF, filed in the United States District Court for the District of Delaware. This deposition is being held at Senniger Powers, One Metropolitan Square in St. Louis, Missouri. Our court reporter is Sheryl Pautler. My name is Kimberlee Lauer. I'm the CLVS and we're with Midwest Litigation Services out of St. Louis.

Would the attorneys present please introduce themselves.

MR. LIEBERMAN: Good morning, Mr. Bushold. My

---

T. Bushold

REDACTED

6 (Pages 18 to 21)

T. Bushold

142

1  Maritz's system was not infringing any patents?
2      A.  A role, I don't recall specifically what was
3  asked of me or my involvement.  It would just be
4  speculation.
5      Q.  Do you recall in general what was asked of
6  you?
7          MR. CLARK:  Objection, calls for speculation.
8      A.  Again, I don't know if you're interested in my
9  speculation or not.
10     Q.  (By Mr. Lieberman)  I'm interested in your best
11 recollection.
12         MR. CLARK:  Objection, calls for speculation.
13     A.  My speculation?
14     Q.  (By Mr. Lieberman)  Your best recollection,
15 sir.
16     A.  Again, I don't recall.  I could speculate on
17 what it could be, but I don't recall what my role or
18 participation would have been in this.
19     Q.  Well, tell me what your best understanding was
20 of your role.
21         MR. CLARK:  Objection, calls for speculation.
22     A.  Based on what this says, it would have been my
23 opinion on whether there was any patent infringement.
24     Q.  (By Mr. Lieberman)  And did you render opinions
25 on those subjects?

143

1      A.  I don't know with certainty.  I assume that if
2  someone asked me a question, I would have responded.
3      Q.  Do you recall having any conversations with
4  anyone at Maritz after Triegiant sued Maritz for patent
5  infringement?
6          MR. CLARK:  Could you read that back, please.
7          THE WITNESS:  Yeah.  Can you repeat that
8  question?
9          (Whereupon the reporter read back the previous
10 question.)
11     A.  Again, I think I stated that I would have had
12 a conversation with Mark Shipley, Steve Gallant, Ben's not
13 with Maritz, but it was likely that, you know, there was a
14 conversation about that with him.
15     Q.  (By Mr. Lieberman)  After the lawsuit was
16 brought, immediately after the lawsuit was brought, what
17 was the first thing you and Mark said to each other about
18 the lawsuit?
19     A.  I couldn't recall what we -- what was
20 specifically said or any timeframe.  My opinion all along
21 is that I didn't see any commonality between what
22 Netcentives was doing and what Maritz was doing.
23     Q.  Isn't it true that you said to Mr. Shipley
24 that you understood there was some serious flaws in
25 the non-infringement analysis that had been done and you

144

1  were concerned that Vault would be found to infringe the
2  Netcentives' patents?
3      A.  I don't recall that.  But that sounds far
4  afield of what I would have said.
5      Q.  I'd like you to think carefully about whether
6  or not that's something you believe you said to
7  Mr. Shipley.
8      A.  I don't think I said that.
9      Q.  Tell me anything else you recall saying to
10 Mr. Shipley about the lawsuit.
11     A.  Again, I wasn't very concerned about it.
12 Anything that I knew about the Netcentives' patent and what
13 Loyalty was doing, frankly, didn't register very high on
14 the awareness meter or concern meter.
15     Q.  Now, the Vault platform has links with --
16 Withdrawn.
17         Now, the Vault platform as it was implemented
18 for certain clients has links to pages offering products
19 for sale, correct?
20     A.  For sale, you mean using currency other than
21 points?
22     Q.  Yes.
23     A.  Not that I'm aware of.
24     Q.  You're not aware of any clients for whom there
25 were links between, let's say, an on-line product catalog

145

1  that one could purchase products using dollars in the Vault
2  platform?
3      A.  I'm not aware of any.  If that exists, it
4  would have been a total customization for that specific
5  client, but it wouldn't be what I would consider a standard
6  feature or offering within the Vault platform.
7      Q.  Were there plans to implement such a --
8      A.  Not that I know.
9      Q.  -- use of the Vault platform?
10     A.  Not that I know of.
11     Q.  Discussions about implementing such a use of
12 the Vault platform?
13     A.  Because every client would have their own
14 product catalog or their own products or services and
15 there's no way you can standardize that that I know of.  So
16 that would be, in my mind, that would be by definition
17 customization to a specific client.  So there's no plans to
18 make a general feature or there weren't any plans to make
19 that a general feature of the Vault platform.
20     Q.  Did Maritz ever use the Vault platform with
21 on-line commerce entities like Amazon or EBay?
22         MR. CLARK:  Object to the form of the
23 question.
24     A.  Can you repeat the question?
25     Q.  (By Mr. Lieberman)  Let me try to make it

# EXHIBIT J

J. Altemueller

1

1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
2
3     TRILEGIANT LOYALTY      )
      SOLUTIONS, INC.,        )
4                             )
           Plaintiff,         )
5                             )    Civil Action
      vs.                     )    No. 04-360-JJF
6                             )
      MARITZ, INC.,           )
7                             )
           Defendant.         )
8
9          VIDEOTAPED DEPOSITION OF JEFF ALTEMUELLER,
10    produced, sworn, and examined on DECEMBER 8,
11    2005, between the hours of eight o'clock in the
12    forenoon and six o'clock in the afternoon of that
13    day, at the office of Ms. Jennifer E. Hoekel,
14    Esq., Senniger Powers, One Metropolitan Square,
15    16th Floor, St. Louis, Missouri  63102 before
16    Tammie A. Heet, a Registered Professional
17    Reporter, Certified Shorthand Reporter and Notary
18    Public within and for the states of Illinois and
19    Missouri, in a certain cause now pending in the
20    United States District Court, for the District of
21    Delaware, in re:  TRILEGIANT LOYALTY SOLUTIONS,
22    INC. vs.  MARITZ, INC.; on behalf of the
23    Plaintiff.
24
25

J. Altemueller

**Page 2**

```
 1              APPEARANCES
 2
 3   For the Plaintiff:
 4       Ms. Sharon L. Davis, Esq.
         ROTHWELL, FIGG, ERNST & MANBECK
         1425 K Street, NW, Suite 800
 5       Washington, DC 20005
         202/783-6040
 6       sdavis@rfem.com
 7
 8   For the Defendant:
 9       Ms. Jennifer Hoekel, Esq.
         SENNIGER POWERS
10       One Metropolitan Square, 16th Floor
         St. Louis, Missouri 63101
11       314/231-5400
         jhoekel@senniger.com
12
13
14   Also Present:
15       Mr. Steven Gallant, Esq.
         Associate General Counsel
16       MARITZ, INC.
         1375 North Highway Drive
         Fenton, Missouri 63099
17
18
19   Reported and Videotaped By:
20       Tammie A. Heet, RPR, CSR (IL), CCR (MO)
         John Niehaus
         MIDWEST LITIGATION SERVICES
21       711 North 11th Street
         St. Louis, Missouri 63101
22       314/644-2191
23
24
25
```

**Page 3**

```
 1              INDEX
 2   QUESTIONS BY:           PAGE NO.
 3   Ms. Davis        5
 4
          INDEX OF EXHIBITS
 5
     EXHIBIT NO.   DESCRIPTION    PAGE MKD.
 6
     28   Meeting Minutes       28
 7
     29   2/14/2000 Business Case   63
 8
     30   eVAULT Product Doc.   67
 9
     31   10/10/2000 Doc.       69
10
     32   7/27/2000 Doc.        71
11
     33   Screenshots           100
12
     34   4/22/2003 Doc.        116
13
     35   10/30/2000 Doc.       121
14
     36   Patent Application    126
15
     37   12/1/2004 Doc.        154
16
```

```
17   (The original exhibits were retained by the court
     reporter. The original exhibits will be bound
18   under separate cover, to be delivered with the
     original transcript. A copy of all of the
19   exhibits will be made for Defendant.)
20
21
22
23
24
25
```

**Page 4**

```
 1           IT IS HEREBY STIPULATED AND AGREED
 2   by and between counsel for the Plaintiff and
 3   counsel for the Defendant that this deposition
 4   may be taken in shorthand by Tammie A. Heet, RPR,
 5   CSR and notary public, and afterwards transcribed
 6   into printing, and signature by the witness
 7   expressly reserved.
 8           THE VIDEOGRAPHER. We're on the
 9   record. Today's date is December 8th, 2005, and
10   the time is 9:01 a.m.
11           This is the videotaped deposition
12   of Jeff Altemueller in the matter of Trilegiant
13   Loyalty Solutions versus Maritz, Inc. This
14   deposition is being held in St. Louis, Missouri.
15           The reporter is Tammie Heet. My
16   name is John Niehaus. We are with Midwest
17   Litigation Services in St. Louis, Missouri.
18           Will counsel please identify
19   themselves for the record.
20           MS. DAVIS: Sharon Davis from
21   Rothwell, Figg, Ernst & Manbeck for Plaintiff,
22   Trilegiant Loyalty Solutions, Inc.
23           MS. HOEKEL: I'm Jennifer Hoekel
24   from Senniger, Powers for Maritz, Inc. And then
25   in-house counsel, Steve Gallant, from Maritz.
```

**Page 5**

```
 1           THE VIDEOGRAPHER: Would you swear
 2   the witness, please.
 3           JEFF ALTEMUELLER,
 4   of lawful age, produced, sworn, and examined on
 5   behalf of Plaintiff, deposes and says:
 6                  EXAMINATION
 7   QUESTIONS BY MS. DAVIS:
 8       Q.   Good morning, Mr. Altemueller.
 9   Have you had your deposition taken before?
10       A.   No.
11       Q.   Let me explain to you a little bit
12   about the process today. I'm going to be asking
13   you questions. You understand that you're under
14   oath for purposes of your testimony?
15       A.   Yes.
16       Q.   As you can see, we have a court
17   reporter here taking down everything that is said
18   during the course of the deposition today.
19   Because of that, it's important that you answer
20   the questions verbally rather than by nods or
21   gestures or things like so that she has something
22   to write down.
23           Do you understand that?
24       A.   Of course.
25       Q.   Also, because she's taking down
```

2 (Pages 2 to 5)

J. Altemueller

**38**

1　general consumer public who were members of the
2　Loyalty program could log in.
3　　Q.　And that website would have been
4　considered what you referred to earlier as the
5　public Internet?
6　　A.　Well, the public Internet and the
7　website are not synonymous, but the website was
8　available to the public Internet.
9　　Q.　Did the VAULT system at that time
10　allow customers of the client to check their
11　point account balances?
12　　A.　Yes.
13　　Q.　And that is something they could --
14　they could do through that website?
15　　A.　Yes.
16　　Q.　Did the VAULT program, as of the
17　fall of 1999, allow customers of the client
18　access to a awards catalog?
19　　A.　Yes.
20　　Q.　And that awards catalog contained
21　awards which could be obtained by redeeming
22　points that were earned in the client's Loyalty
23　program?
24　　A.　Yes.
25　　Q.　In the VAULT program used in the

**39**

1　fall of 1999, the customers of the client were
2　able to browse through the awards that were
3　available in the awards catalog through that
4　website?
5　　A.　Yes.
6　　Q.　And they were able to, through that
7　same website, indicate which award they would
8　like to redeem their points to obtain?
9　　A.　Yes.
10　　Q.　The VAULT system, as it was used in
11　the fall of 1999, maintained account information
12　for the individual users in the Loyalty program?
13　　A.　Yes.
14　　Q.　When a customer wanted to redeem
15　points for a particular award, was the VAULT
16　program able to access the account of the user to
17　determine if that user had enough points to
18　obtain a particular award?
19　　A.　Yes.
20　　Q.　If the user's account did not have
21　sufficient points to obtain an award, I take it
22　they would not be permitted to complete the
23　redemption process?
24　　A.　Correct.
25　　Q.　The user of the VAULT program, in

**40**

1　the fall of 1999, was able to view the balance
2　available in his account for the Loyalty program?
3　　A.　Yes.
4　　Q.　So an individual who was a member
5　of a Loyalty program could, through the public
6　Internet, gain access to the website, log in and
7　check and see how many points had been earned in
8　that Loyalty program?
9　　A.　Yes.
10　　Q.　The VAULT -- the VAULT program, as
11　of the fall of 1999, allowed for users to enroll
12　in the program through the website?
13　　A.　Yes, although Providian did not
14　exercise that capability.
15　　Q.　So in the very first VAULT system
16　for Providian that was not used, but the VAULT
17　program had the ability to do that?
18　　A.　That's correct.
19　　Q.　And I take it that customers of
20　Maritz have used that feature in their programs?
21　　A.　Yes.
22　　Q.　How does the VAULT program obtain
23　information about how many points a participant
24　in a Loyalty program has earned?
25　　A.　That varies by client. There are

**41**

1　several techniques for doing that.
2　　Q.　So the -- so the core VAULT
3　function allows for multiple ways for a client to
4　provide VAULT with the information about how many
5　points should be in a customer's account?
6　　A.　Strictly speaking, core VAULT does
7　not provide that function. The function to
8　achieve that is typically customized per each
9　client. So while that function is necessary, it
10　is not a core VAULT function.
11　　Q.　Okay. But all of the core -- let
12　me strike that.
13　　　All of the VAULT programs running
14　equity programs would have some mechanism for
15　providing VAULT with data to determine how many
16　points should be in each user's account?
17　　A.　That's correct.

REDACTED

J. Altemueller



REDACTED

J. Altemueller



REDACTED

13 (Pages 46 to 49)

J. Altemueller



REDACTED

14 (Pages 50 to 53)

# Exhibit K to

# Opening Brief of Defendant Maritz Inc. in Support of Its Motion for Summary Judgment of Non-Infringement

# Filed Under Seal

# Exhibit L to

## Opening Brief of Defendant Maritz Inc. in Support of Its Motion for Summary Judgment of Non-Infringement

## Filed Under Seal

# Exhibit M to

# Opening Brief of Defendant Maritz Inc. in Support of Its Motion for Summary Judgment of Non-Infringement

# Filed Under Seal

# EXHIBIT N

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |  |
|---|---|---|---|
| TRILEGIANT LOYALTY SOLUTIONS, INC. | ) ) ) | | |
| | Plaintiff, | ) ) | |
| v. | | ) ) ) | Civil Action No. 04-360-JJF |
| MARITZ, INC., | | ) ) ) | |
| | Defendant. | ) ) | |

### TRILEGIANT LOYALTY SOLUTIONS, INC.'S OBJECTIONS AND RESPONSES TO MARITZ, INC.'S SECOND INTERROGATORIES DIRECTED TO PLAINTIFF

Under Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") submits the following objections and responses to Maritz, Inc.'s ("Maritz's") Second Set of Interrogatories ("Interrogatories") To Plaintiff.

### GENERAL OBJECTIONS

Unless otherwise stated, these general objections apply to each and every Interrogatory as though fully set forth therein:

1.    Each of the following responses is made only for purposes of this action. Each response is subject to all objections as to relevance, materiality, and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court. All objections and grounds are expressly reserved.

2.    Trilegiant objects to the Interrogatories, including the Definitions and Instructions and each individual Interrogatory set forth therein, to the extent that they seek the disclosure of information covered by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable law, privilege, protection, immunity, or doctrine. Nothing herein is intended

7.     Trilegiant objects to the Interrogatories, including the Definitions and Instructions and each individual Interrogatory set forth therein, to the extent that they purport to require Trilegiant to provide information that is publicly available or within Maritz's possession.

8.     Trilegiant asserts its General Objections with respect to each and every Interrogatory. Trilegiant reserves the right to supplement, amend, correct, or clarify its responses and objections to these interrogatories, and to assert general and specific objections arising from matters discovered during the course of the litigation.

## RESPONSES TO INDIVIDUAL INTERROGATORIES

### Interrogatory No. 15:

State with particularity each claim of the Patents at Issue that you assert is infringed by Maritz under a doctrine of equivalents analysis, state the program that you assert is infringing, and for each such claim provide a full explanation of the function, way, and result and provide a hypothetical claim that allegedly avoids encompassing the prior art and that allegedly covers literally each accused program pursuant to the teachings of *Wilson Sporting Goods v. David Geoffrey & Assoc.*, 904 F.2d 677 (Fed. Cir. 1990).

### Response to Interrogatory No. 15:

Trilegiant reasserts its general objections listed above. Further, Trilegiant objects to Interrogatory No. 15 to the extent it seeks the disclosure of information covered by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable law, privilege, protection, immunity, or doctrine. Trilegiant further objects to this interrogatory on the basis that it is premature and to the extent it requires Trilegiant to disclose information in Maritz's, not Trilegiant's, possession, custody or control. Trilegiant has requested that Maritz produce the relevant information regarding Maritz's VAULT and other on-line incentive programs. Trilegiant further objects to this interrogatory on the basis that both a function-way-

3

result analysis and a *Wilson Sporting Goods* analysis are overly burdensome and not required by

any Federal Rule of Civil Procedure, any Local Rule of the District of Delaware, or the Court's

Rule 16 Scheduling Order.

Without waiving those objections, all of which Trilegiant hereby reserves, Trilegiant

responds as follows. On information and belief, Maritz's VAULT and other on-line incentive

programs infringe at least claims 1 and 29 of the U.S. Patent No. 5,774,870, claims 1, 10, 18, 27,

35, and 36 of U.S. Patent No. 6,009,412, and claim 1 of U.S. Patent No. 6,578,012. Trilegiant

will supplement this response after it receives and analyzes the relevant information from Maritz

regarding Maritz's VAULT and other on-line incentive programs.

### Interrogatory No. 16:

Identify the principal persons involved in the filing and prosecution of the patents at
issue, and for each person identify the patent application with which they were associated, the
time periods each person was associated with each application, and the time period for which
each person was employed or retained by Trilegiant and/or Netcentives.

### Response to Interrogatory No. 16:

Trilegiant objects to Interrogatory No. 16 to the extent it seeks the disclosure of

information covered by the attorney-client privilege, the attorney work-product doctrine and/or

any other applicable law, privilege, protection, immunity, or doctrine. Trilegiant further objects

on the basis that the term "principal persons" is vague.

Without waiving those objections, all of which Trilegiant hereby reserves, Trilegiant

responds as follows. Trilegiant has produced to Maritz the prosecution histories for the patents

in suit, and the burden of deriving or ascertaining the answer to this Interrogatory from these

documents is substantially the same on Maritz as it is on Trilegiant. Accordingly, pursuant to

4

Date: July 18, 2005

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.
1425 K Street, NW, Suite 800
Washington, DC 20005
Telephone: (202) 783-6040

*Attorneys for Plaintiff*
*Trilegiant Loyalty Solutions, Inc.*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **TRILEGIANT LOYALTY SOLUTIONS, INC.'S OBJECTIONS AND RESPONSES TO MARITZ, INC.'S SECOND INTERROGATORIES DIRECTED TO PLAINTIFF**, was served on this 18th day of July, 2005, in the matter indicated, upon the following counsel of record:

**Via Facsimile and First Class Mail:**

J. Bennett Clark, Esq.
Jennifer E. Hoekel, Esq.
Senniger, Powers, Leavitt & Roedel
One Metropolitan Square; 16th Floor
St. Louis, MO 63102

Patricia Smink Rogowski, Esq.
Connolly Bove Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899


Matthew T. Felten