# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

AFFINION NET PATENTS, INC. )
)
)
Plaintiff, )
)
v. )
)
MARITZ, INC. )
)
Defendant. )
)

C.A. No. 04-360-JJF

**REDACTED VERSION**

## OPPOSITION OF AFFINION NET PATENTS, INC. TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PRESUIT DAMAGES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202)783-6040

Original Filed: June 23, 2006
Public Version Filed: July 5, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     NATURE AND STAGE OF THE PROCEEDING ................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................................... 1

III.   STATEMENT OF FACTS ...................................................................................... 2

IV.    ARGUMENT ........................................................................................................... 6

      A.     Summary Judgment Standard and Burden of Proof ................................... 6

      B.     Affinion Is Entitled to Damages From the Date the '412 Patent Issued Because None of the Owners or Licensees of the '412 Patent Had a Duty to Mark Its Products or Website Under § 287 ............................................... 6

            1.     Netcentives .......................................................................................... 9

            2.     Trilegiant and ALG ............................................................................. 9

            3.     ALG's Clients ...................................................................................... 11

            4.     Licensees Under the '412 Patent ......................................................... 12

            5.     The Cases Cited by Maritz Do Not Support Extending the Marking Requirement ........................................................................................ 12

      C.     Maritz Was Put on Notice that Its Online Incentive Programs Infringed the '412 Patent in July 2002 and, Therefore, the Only Issue Before the Court Is Whether Affinion Is Entitled to Damages for Infringement Occurring Before that Date. ...................................................................................... 14

V.     CONCLUSION ....................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

Advanced Med. Optics, Inc. v. Alcon Labs., Inc.
    2005 U.S. Dist. LEXIS 33369 (D. Del. Dec. 16, 2005).......................................................9

American Med. Sys., Inc. v. Medical Eng'g Corp.
    6 F.3d 1523 (Fed. Cir. 1993) ......................................................................... *passim*

Amstead Indus. Inc. v. Buckeye Steel Castings Corp.
    24 F.3d 178,187 (Fed. Cir. 1994).............................................................................14

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986)...............................................................................................6

Bandag, Inc. v. Gerrard Tire Co.
    704 F.2d 1578 (Fed. Cir. 1983)...................................................................... *passim*

Celotex Corp. v. Catrett
    477 U.S. 317 (1986)...............................................................................................6

Clancy Sys. Int'l, Inc. v. Symbol Techs., Inc.
    953 F. Supp. 1170 (D. Col. 1997)..............................................................................8

Devices for Med., Inc. v. Boehl
    822 F.2d 1062 (Fed. Cir. 1987)..........................................................................1, 7, 8

Hanson v. Alpine Valley Ski Area, Inc.
    718 F.2d 1075 (Fed. Cir. 1983)..........................................................................7, 11

IMX Inc. v. LendingTree, LLC
    No. 03-1067-SLR, 2005 U.S. Dist. LEXIS 33179 (D. Del. Dec. 14, 2005)................12, 13

IMX, Inc. v. Lendingtree, LLC
    No. 03-1067-SLR, 2006 U.S. Dist. LEXIS 551 (D. Del. Jan. 10, 2006)...........................12

John L. Rie, Inc. v. Shelley Bros, Inc.
    366 F. Supp. 84 (E.D. Pa. 1973) ............................................................................10

Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.
    906 F. Supp. 813 (E.D.N.Y. 1995) ....................................................................6, 7, 8

Metrologic Instruments, Inc. v. PSC, Inc.
    2004 U.S. Dist. LEXIS 24949 (D.N.J. Dec. 13, 2004)...................................................10

Nike Inc. v. Wal-Mart Stores, Inc.
    138 F.3d 1437, 1443 (Fed. Cir. 1998)..........................................................................6

Soverain Software LLC v. Amazon.com Inc.
    383 F. Supp. 2d 904 (E.D. Texas 2005).................................................12, 13, 14

Stryker Corp. v. Intermedics Orthopedics, Inc.
    891 F. Supp. 751 (E.D.N.Y. 1995) .........................................................9

Tulip Computers Int'l B.V. v. Dell Computer Corp.
    2003 U.S. Dist. LEXIS 5409 (D. Del. Feb. 4, 2003) ........................7, 8

Wine Ry. Appliance Co. v. Enterprise Ry. Equipment
    297 U.S. 387, 395 (1936)................................................................. *passim*

**Statutes and Rules**

35 U.S.C. § 287(a) ......................................................................... *passim*

Fed. R. Civ. P. Rule 56(c) .......................................................................6

Fed. R. Civ. P. Rule 56(e) .......................................................................6

## I.     NATURE AND STAGE OF THE PROCEEDING

Affinion Net Patents, Inc. ("Affinion") is the assignee of U.S. Patent No. 6,009,412 ("the '412 patent"), entitled "Fully Integrated On-Line Interactive Frequency and Award Redemption Program." See Exhs. A, B.  The asserted claims are claims 10-17, 27-34, and 36.  Affinion submits this brief in opposition to Defendant's Motion for Partial Summary Judgment Regarding Presuit Damages, D.I. 156.

## II.     SUMMARY OF ARGUMENT

Maritz's motion for summary judgment should be denied because it is premised on the incorrect view that a patentee is required to mark a website that promotes a patented method. Under controlling Federal Circuit precedent, none of the entities cited in Maritz's motion had a duty to mark those websites.  Therefore, Maritz's motion is premised on the alleged failure to meet an obligation that does not exist.

The claims of the '412 patent fall into three categories:  (1) method claims; (2) claims to the "computer readable medium" containing software to execute the steps of the method; and (3) claims to the "computer system" that executes the steps of the method.

It is well-established that a patentee asserting method claims generally is not required to do any marking in order to recover damages for infringement of the method claims.  See Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co., 297 U.S. 387, 395 (1936); Bandag, Inc. v. Gerrard Tire Co., 704 F.2d 1578, 1581 (Fed. Cir. 1983).  The Federal Circuit has held that patentees must establish marking to recover damages on method claims only where the patentee is also asserting apparatus claims as to a product that it distributes.  See American Med. Sys., Inc. v. Medical Eng'g Corp., 6 F.3d 1523, 1537-38 (Fed. Cir. 1993); Devices for Med., Inc. v. Boehl, 822 F.2d 1062, 1063 (Fed. Cir. 1987).  Here, the evidence is that none of the products

1

covered by the apparatus claims being asserted by Affinion were distributed, either by the owners or licensees of the '412 patent. Therefore, the marking requirement does not apply.

Undisputed evidence shows that Affinion gave Maritz actual notice of infringement of the patent in suit in July 2002. The sole issue before the Court is whether Affinion is entitled to damages for infringement occurring before that date. Affinion is entitled to damages for infringement occurring from the date the patent in suit issued because no duty to mark arises under 35 U.S.C. § 287(a). Accordingly, Maritz's Motion for Summary Judgment Regarding Presuit Damages should be denied.

## III.    STATEMENT OF FACTS

The '412 patent issued to Netcentives, Inc. on December 29, 1999. See Exh. A. The claims of the '412 patent fall into three categories: (1) methods for implementing online incentive programs (claims 1-17), (2) claims to the "computer readable medium" (i.e., computer memory storage)[1] containing software to execute the steps of the methods (claims 18-34), and (3) claims to the "computer system" that executes the steps of the methods (claims 35 and 36). See id.

On December 7, 2001, Netcentives sold the '412 patent to Trilegiant Corporation, Inc. ("Trilegiant").                    Trilegiant has never made or distributed online incentive programs. See Exh. F at 2. It maintains a corporate website, which is promotional in nature. See id. at 3. No incentive program operates through the Trilegiant corporate website. See id.

## REDACTED

---

[1]     Affinion's computer expert, Robert Young has interpreted "computer readable medium" as used in the '412 patent means a medium that is capable of storing program instructions and/or data, and which can be read by a computer. Examples of computer readable medium include (but are not limited to) a hard drive, a diskette, a CD, computer memory (including firmware), and the like. See Exh. E at ¶ 20. Maritz has not disputed this definition and it was not the subject of dispute in claim construction briefing.

**REDACTED**

**REDACTED**

Trilegiant assigned ownership of the '412 patent to its wholly owned subsidiary, Trilegiant Loyalty Solutions, Inc. (now Affinion Loyalty Group, Inc.) ("ALG"), on January 28, 2004. **REDACTED**

ALG is a service provider—its business is running incentive programs for clients. <u>See</u> Ex. F at ¶ 4. ALG uses computer memory and software covered by the '412 patent to run those programs for its clients, but that memory and software at all times is owned by ALG. <u>See id.</u> at ¶ 5. ALG maintains a corporate website, which is promotional in nature. <u>See id.</u> at ¶ 6. No incentive programs operate through the ALG corporate website. <u>See id.</u>

ALG has never distributed computer memory or computer software covered by the '412 patent to other parties. **REDACTED**

4

Since ALG does not distribute products covered by the '412 patent, none of its clients make, use, or sell products covered by the '412 patent. See id. at ¶ 8.

Moreover, none of the corporate websites and servers of ALG's clients run the software ALG uses to operate the incentive program and thus do not implement patented methods. See id. at ¶ 9. The client's corporate website contains a webpage that permits an account holder to enter a username and password that will permit him access to the incentive program of which he is a member. See id. at ¶ 10. The account holder is then redirected from the client's corporate website to a website that includes content and functionality from the servers ALG uses to run the incentive program. See id. at ¶11. When the account holder interacts with the incentive program, he is interacting with the servers run by ALG. See id.

Maritz purports to identify a number of licensees under the '412 patent. D.I. 156 at 8 n.4, Ex. A ¶ 17. Three companies identified by Maritz, were not, in fact, licensees under the '412 patent[2] and three companies became licensees after Maritz received actual notice of infringement.[3] The other companies referred to in Maritz's brief were granted limited, nontransferable licenses that did not permit the licensee to sublicense to others, and there is no evidence that any of those licensees distributed products covered by the patent claims (i.e., computer memory or software) to others.[4]

**REDACTED**

5

## IV.    ARGUMENT

### A.    Summary Judgment Standard and Burden of Proof

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). As the moving party, Maritz bears the initial burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to Affinion to show that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Compliance with the marking statute is a question of fact upon which the patent holder bears the burden of persuasion. See Loral Fairchild Corp. v. Victor Co. of Japan, 906 F. Supp. 813, 816 (E.D.N.Y. 1995).

### B.    Affinion Is Entitled to Damages From the Date the '412 Patent Issued Because None of the Owners or Licensees of the '412 Patent Had a Duty to Mark Its Products or Website Under § 287

Maritz's motion for summary judgment is entirely premised on the unfounded proposition that 35 U.S.C. § 287(a) imposes on any patent owner or licensee who has a corporate website a duty to list the patents it owns or licenses on its corporate website, even when there is no relationship between the website and the patent. No court has so held.

The purpose of § 287(a) is to help avoid innocent infringement by encouraging patentees to give notice to the public that the patented articles it distributes are patented and thereby to help the public identify such patented articles. See Nike Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1443 (Fed. Cir. 1998) and cases cited therein. That does not mean, however, that a patentee must always mark a product in order to recover damages arising before actual notice. If the patentee

**REDACTED**

6

does not sell an article, for example, there is no duty to mark. See <u>Wine Ry. Appliance</u>, 297 U.S. at 395 (the marking statute does not impose a "duty to the public impossible of performance" when no article is sold by the patentee); <u>American Med. Sys.</u>, 6 F.3d at 1537-38; <u>Tulip Computers Int'l B.V. v. Dell Computer Corp.</u>, 2003 U.S. Dist. LEXIS 5409, at *56 (D. Del. Feb. 4, 2003) ("Section 287(a) is triggered by the unmarked sale of patented articles by the patentee and precludes recovery of damages from the date of that triggering event until notice is given to the infringer."); <u>Loral Fairchild</u>, 906 F. Supp. at 816. It is only when the patentee is contributing to the problem of innocent infringement by distributing unpatented articles that § 287(a) is implicated and precludes recovery of infringement damages. See <u>Tulip Computers</u>, 2003 U.S. Dist. LEXIS 5409, at *59-60.

Marking also generally is not required to recover damages for infringement of method claims. See <u>Bandag</u>, 704 F.2d at 1581 (citing <u>Wine Ry. Appliance</u>); <u>Hanson v. Alpine Valley Ski Area, Inc.</u>, 718 F.2d 1075, 1082-83 (Fed. Cir. 1983). "The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed only to a method or process there is nothing to mark." <u>American Med. Sys.</u>, 6 F.3d at 1538. The Federal Circuit has carved out a narrow exception to this rule where (1) the asserted patent contains both claims directed to a product and claims directed to methods for making or using the claimed product, <u>and</u> (2) the patentee distributes a product covered by the product claims to the public. See <u>id.</u> at 1538-39 (asserted patent contained claims to the product and of making and sterilizing the patented product); <u>Devices for Med.</u>, 822 F.2d at 1063 (asserted patents contained claims to an apparatus and methods of using that apparatus). The Federal Circuit held in these cases that the patentee must mark the products covered by the product claims to claim lost profits for infringement of the method claims because marking the distributed product covered by the

7

asserted patent gives notice of the asserted patent and thus also notice of the method claims in the patent. See American Med. Sys., 6 F.3d at 1538-39 ("Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a)"); Devices for Med., 822 F.2d at 1066 ("The claimed method is the use of the product. Having sold the product unmarked, DFM could hardly maintain entitlement to damages for its use by a purchaser uninformed that such use would violate DFM's method patent."); see also Loral Fairchild, 906 F. Supp. at 817 ("American Medical clarifies that a patentee must mark a product covered by a patent with both method and product claims."). Because patented articles have never been sold or distributed, this narrow exception has no application here.

Maritz asserts that all of the owners of the '412 patent had a duty to mark their websites with the '412 patent, that Affinion Loyalty Group Inc.'s clients also had a duty to mark their websites, and that all of the licensees under the '412 patent had a duty to mark their websites. See D.I. 156 at 1. Affinion will address Maritz's arguments regarding the owners of the '412 patent in the order of ownership, and then turn to Maritz's arguments regarding clients and licensees.[5]

---

[5]    Courts have "carved out" time periods where § 287(a) was complied with or not implicated and awarded damages for those time periods, even where those periods were followed by time periods where § 287(a) was not complied with. See Tulip Computers, 2003 U.S. Dist. LEXIS 5409, at * 51-54; Clancy Sys. Int'l, Inc. v. Symbol Techs., Inc., 953 F. Supp. 1170, at *11-12 (D. Colo. 1997). Thus should the Court find that § 287(a) was implicated for some time periods, the Court still should permit Affinion to recover damages for the time periods for which § 287(a) was not implicated.

1.    **Netcentives**

Maritz does not explain why it believes Netcentives, the first owner of the '412 patent, had a duty to mark its website, but ultimately asserts that Netcentives did mark its website as Maritz contends it was required to do. See D.I. 156 at 10 n.5. Thus, Maritz apparently does not dispute that, if there was a marking requirement, Netcentives met that requirement.

2.    **Trilegiant and ALG**

Maritz argues, without giving any basis, that Trilegiant had a duty to mark its website when it was owner of the '412 patent, and that its website was not marked. See D.I. 156 at 1, 2, 8. Maritz also argues that ALG had a duty to mark its website when it was owner of the patent because the website "described and promoted" the patented product. See id. at 1, 2, Ex. A ¶ 5.

Neither Trilegiant nor ALG had a duty to mark its corporate website because those websites are promotional in nature and cannot be viewed as "patented products." As discussed above, no incentive programs operate through either the Trilegiant or the ALG corporate websites. See Exh. F at 3, 6. Indeed, it would be contrary to governing law to hold that a party should mark a website simply because it describes or promotes a patented product. The marking statute contemplates marking on the patented article itself, on a label fixed to it, or on a label fixed to the package containing it.[6]  When the patentee is found to have a duty to mark, numerous courts have deemed marking promotional and other materials associated with the patented product inadequate. See Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp.

---

[6]    The first half of § 287(a) states: "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice."

751, 829 (E.D.N.Y. 1995) (marking product brochures or advertisements not sufficient); see also Advanced Med. Optics, Inc. v. Alcon Labs., Inc., 2005 U.S. Dist. LEXIS 33369, at *6 (D. Del. Dec. 16, 2005) (marking of owners manuals not sufficient); Metrologic Instruments, Inc. v. PSC, Inc. 2004 U.S. Dist. LEXIS 24949, at *55 (D.N.J. Dec. 13, 2004) (marking of user's guide not sufficient); John L. Rie, Inc. v. Shelly Bros., Inc., 366 F. Supp. 84, 90-91 (E.D. Pa. 1973) (marking package not sufficient where article could have been marked). Section 287(a) cannot be interpreted to require Trilegiant and ALG to mark their promotional websites if marking promotional materials has been held insufficient in other cases.

Moreover, Maritz has not presented any evidence that either Trilegiant or ALG has distributed products covered by the '412 patent. As discussed above, Trilegiant has never made or distributed products covered by the '412 patent. See Exh. F at 2. It is well settled that § 287(a) is not implicated when the patentee is not producing patented products. See American Med. Sys., 6 F.3d at 1537-38. ALG also has not engaged in any unmarked distribution of products covered by the asserted claims of the '412 patent. See Exh. F at 7. As discussed above, ALG is a service provider—its business is running incentive programs for clients. See id. at 4. ALG uses computer memory and software covered by the '412 patent to run those programs for its clients, but that memory and software at all times is owned by ALG. See id. at 5. ALG has never distributed computer memory or computer software covered by the '412 patent to other parties. See id. at 7.    **REDACTED**

The mere fact that ALG has used products and implemented methods that are covered by the '412 patent by running

incentive programs for its clients does not give rise to a duty to mark.[7]  Because ALG does not

distribute the computer memory and software covered by the '412 patent, it does not have a duty

to mark those products under § 287(a).  See Wine Ry., 297 U.S. at 395; American Med. Sys., 6

F.3d at 1538; Bandag, 704 F.2d at 1581, Hanson, 718 F.2d at 1083).

    3.    **ALG's Clients**

      Maritz asserts that the websites of ALG's clients should have been marked and refers to

three clients whose websites were not marked with the '412 patent:

## REDACTED

                             As discussed above, since ALG does not distribute

products covered by the '412 patent, none of its clients make, use, or sell products covered by the

'412 patent.  See Exh. F at 8.  Contrary to Maritz's assertions, none of the corporate websites and

servers of ALG's clients run the software ALG uses to operate the incentive program and thus do

not implement patented methods.  See id. at 9.  The client's corporate website contains a

webpage that permits an account holder to enter a username and password that will permit him

access to the incentive program of which he is a member.  See id. at 10.  The account holder is

then redirected from the client's corporate website to a website that includes content and

functionality from the servers ALG uses to run the incentive program.  See id. at 11.  When the

account holder interacts with the incentive program, he is interacting with the servers run by

ALG.  See id.  Because the corporate websites of ALG's clients do not run the patented software

that ALG uses to run incentive programs, § 287(a) is not implicated and the clients do not have a

duty to list the '412 patent on their websites.  See Wine Ry., 297 U.S. at 395; American Med.

Sys., 6 F.3d at 1538; Bandag, 704 F.2d at 1581, Hanson, 718 F.2d at 1083).

---

[7]      Counsel is unaware of any case where a patentee that used but did not distribute a
patented product was found not have complied with § 287(a).

4.    <u>Licensees Under the '412 Patent</u>

Lastly, Maritz argues that the licensees under the '412 patent have a duty to mark their corporate websites. <u>See</u> D.I. 156 at 1, 8.  As discussed above, three companies identified by Maritz were not, in fact, licensees under the '412 patent and three companies became licensees after Maritz received actual notice of infringement.  Whether or not these companies had a duty to mark thus is not pertinent here.  The other companies referred to in Maritz's brief were granted limited, nontransferable licenses that did not permit the licensee to sublicense distributed products covered by the patent claims (i.e., computer memory or software) to others and there is no evidence that any of those licensees did so.  Section 287(a) is not implicated for this reason.

5.    <u>The Cases Cited by Maritz Do Not Support Extending the Marking Requirement</u>

Neither of the two cases cited by Maritz, <u>IMX, Inc. v. LendingTree, LLC</u>, No. 03-1067-SLR, 2005 U.S. Dist. LEXIS 33179 (D. Del. Dec. 14, 2005), and <u>Soverain Software L.L.C. v. Amazon.com, Inc.</u>, 383 F. Supp. 2d 904 (E.D. Tex. 2005), support extending the marking requirement, as Maritz proposes.  In <u>IMX</u>, the patentee, IMX, sold and distributed software for processing loan applications, which was the commercial embodiment of the patent in suit, as the patent contained claims directed to methods and computer systems for processing loan applications.  <u>See IMX, Inc.</u>, 2005 U.S. Dist. LEXIS 33179 at *4-7.  IMX first distributed this software to loan brokers and lenders by CD-ROM, and it was undisputed that the CD-ROMs were not marked with the patent in suit.  <u>See id.</u> at *4-6.  IMX then switched from selling software on CD-ROMs to selling software subscriptions through its Internet website.  <u>See id.</u> at *5.  The lender-customer paid to access and run the software through IMX's Internet website. <u>See id.</u>  The court found that the only mention of the patent in suit on IMX's website was on its "Patent Press Release," and that the Press Release did not provide a clear connection between the

12

patent and the patented product.  See id. at *7, 13; see also IMX, Inc. v. Lendingtree, LLC, No.

03-1067-SLR, 2006 U.S. Dist. LEXIS 551, at *8 (D. Del. Jan. 10, 2006) (memorandum opinion

on request for reconsideration).  The court found that IMX's website was not the patented

invention, see id. at *12, but held that despite this fact, the patented system was accessed and

used through IMX's website and constituted a "tangible item to mark by which notice of the

asserted method claims can be given," see id. at *11-12.  The court's holding that IMX was

required to mark something other than the patented product is of questionable validity because

the first half of § 287(a) states how marking must be done and requires that marking be on the

patented article itself and, only when that is not possible, a label fixed to it, or a label fixed to the

package containing it.  See supra at n. 6.

        In any case, IMX is readily distinguishable from the present case.  First, unlike IMX,

ALG does not distribute software on CD-ROMs or sell software subscriptions over the Internet.

See Exh. F at 5, 7.  Second, in IMX the patent owner sold software subscriptions directly through

its Internet website, whereas ALG's website is only promotional and is not used to distribute

software covered by the '412 patent.  See id. at 6.

        In the second case cited by Maritz, Soverain Software, Soverain asserted three patents

containing both method and apparatus claims.  See Soverain Software, 383 F. Supp. 2d at 909.

The patentee, Soverain, sold a software product that was the commercial embodiment of the

patent claims, and did not dispute that its software should have been marked.  See id. at 908.

Soverain marked its software code and accompanying documentation, but there was no evidence

that two licensees, who also distributed software covered by the patent, marked their software.

See id.  The court also held that 32 licensees should have marked their websites on the ground

that a website was a tangible item that could be marked.  See id. at 909.  The court did not

explain what was the relationship between the patented software and the licensee's websites, did not state whether the licensees' websites were promotional or part of the distributed software covered by the patents in suit, and did not state where or how the licensees' websites should have been marked. See id. Soverain Software thus does not support Maritz's argument that the licensees here had a duty to mark their websites. Moreover, the court in Soverain Software did not find that the patent owner had a duty to mark its corporate website and thus also does not support Maritz's argument that the patent owners here had such a duty.

**C. Maritz Was Put on Notice that Its Online Incentive Programs Infringed the '412 Patent in July 2002 and, Therefore, the Only Issue Before the Court Is Whether Affinion Is Entitled to Damages for Infringement Occurring Before that Date**

The second half of § 287(a) permits recovery of damages for infringement occurring after the date the infringer was notified of the infringement.[8] Because the undisputed evidence is that Affinion gave Maritz actual notice of infringement on or about July 3, 2002, the only issue before the Court is whether Affinion is entitled to damages for infringement occurring before that date.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." Amsted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178,187 (Fed. Cir. 1994). The evidence clearly establishes that on or about July 3, 2002, Trilegiant Corporation (the patent owner at that time) gave notice to Maritz that its Vault products infringed the '412 patent.          **REDACTED**

---

[8] The second half of § 287(a) states as follows:  "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

14

**REDACTED**

# REDACTED

The evidence is thus undisputed that (1) the patentee, Trilegiant Corporation, communicated to Maritz (2) a specific charge of infringement of the '412 and '870 patents with regard to (3) a specific product, namely Vault.  Accordingly, the only issue before the Court is whether Affinion is entitled to damages for infringement occurring before this actual notice was given.

## V.    CONCLUSION

Maritz was given actual notice of infringement of the patent in suit in July 2002, but Affinion is entitled to damages for infringement occurring from the date the patent in suit issued because none of the owners or licensees of the '412 patent had a duty to mark under 35 U.S.C. § 287(a).  Accordingly, Maritz's Motion for Summary Judgment Regarding Presuit Damages should be denied.

16

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika ((#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Loyalty Group, Inc.*

OF COUNSEL:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 783-6040

June 23, 2006
526255

17

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on July 5, 2006, I electronically filed the redacted version of Opposition of Affinion Net Patents, Inc. to Defendant's Motion for Partial Summary Regarding Presuit Damages with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on July 5, 2006 upon the following in the manner indicated:

### BY HAND

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> J. Bennett Clark
> Senniger Powers
> One Metropolitan Square
> St. Louis, MO 63102

*/s/ Maryellen Noreika*
_____
Maryellen Noreika (#3208)
mnoreika@mnat.com