# EXHIBIT A

US006009412A

# United States Patent [19]

Storey

| [11] | Patent Number: | **6,009,412** |
|---|---|---|
| [45] | Date of Patent: | *Dec. 28, 1999 |

[54] **FULLY INTEGRATED ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM**

[75] Inventor: **Thomas W. Storey**, Scottsdale, Ariz.

[73] Assignee: **Netcentives, Inc.**, San Francisco, Calif.

[ * ] Notice: This patent is subject to a terminal disclaimer.

[21] Appl. No.: **09/105,227**

[22] Filed: **Jun. 25, 1998**

**Related U.S. Application Data**

[63] Continuation of application No. 08/572,017, Dec. 14, 1995, Pat. No. 5,774,870.

[51] **Int. Cl.$^6$** ......................................... **G06F 7/00**
[52] **U.S. Cl.** ................................. **705/14**; 705/17; 705/26; 705/27
[58] **Field of Search** ......................................... 705/14, 17

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 4,992,940 | 2/1991 | Dworkin | 364/401 |
| 5,025,372 | 6/1991 | Burton et al. | 364/406 |
| 5,056,019 | 10/1991 | Schultz et al. | 364/405 |
| 5,287,268 | 2/1994 | McCarthy | 364/405 |
| 5,483,444 | 1/1996 | Heintzeman et al. | 385/381 |
| 5,708,780 | 1/1998 | Levergood et al. | 395/200.12 |
| 5,715,314 | 2/1998 | Payne et al. | 380/24 |
| 5,761,648 | 6/1998 | Golden et al. | 705/14 |
| 5,765,141 | 6/1998 | Spector | 705/14 |
| 5,774,870 | 6/1998 | Storey | 705/14 |
| 5,794,210 | 8/1998 | Goldhaber et al. | 705/14 |
| 5,806,044 | 9/1998 | Powell | 705/14 |
| 5,806,045 | 9/1998 | Biorge et al. | 705/14 |

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 0 308 224 A2 | 3/1989 | European Pat. Off. | G06F 15/21 |
| WO 93/1248 | 6/1993 | WIPO . | |

**OTHER PUBLICATIONS**

A copy of International Search Report mailed Mar. 21, 1997.
Press Release dated Aug. 23, 1997, entitled "Harrah's Casinos Introduces Two 'Firsts' For The Casino Industry."
Article entitled "Give Cyber–Ready Consumers The Once Over Computer–Saavy, Home–Shopping Segments May Drive Online Sales, Offer Marketing Clues", Interactive Marketing News, Jun., 1995, V. 2, No. 13.
Article entitled "Dial–a–Catalog", Author: David C. Churbuck, Forbes, Oct. 10, 1994.
Article entitled "Using the Internet to Reach Clients", Author: Norman Hirsch, American Printer, p. 64. date unknown.

*Primary Examiner*—James P. Trammell
*Assistant Examiner*—Yehdega Retta
*Attorney, Agent, or Firm*—Philip H. Albert; Townsend and Townsend and Crew

[57]                    **ABSTRACT**

An fully integrated on-line frequency award program is disclosed. A user may access the program on-line and may browse a product catalog for shopping. The user may electronically place an order, upon which the program automatically checks the user's credit and electronically issues a purchase order to the supplying company. The program also calculates award points, updates the award account of enrolled users, and communicates that number of awarded points to the user. Enrolled users may browse through an award catalog and electronically redeem an amount of awarded points towards an award. The program then electronically places an award redeeming order with the fulfillment house and updates the user's award account.

**36 Claims, 6 Drawing Sheets**





Fig. 1

Fig. 2



Fig. 3



Fig. 4

Fig. 5



Fig. 6

6,009,412

**1**

## FULLY INTEGRATED ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM

This application is a continuation of SC/Ser. No. 08/572,017, filed Dec. 14, 1995, now U.S. Pat. No. 5,774,870, issued Jun. 30, 1998.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to frequency and award redemption program. More particularly, the present invention relates to an on-line, interactive frequency and award redemption program which is fully integrated.

2. Description of Related Art

Frequency programs have been developed by the travel industry to promote customer loyalty. An example of such a program is a "frequent flyer" program. According to such a program, when a traveler books a flight, a certain amount of "millage points" is calculated by a formula using the distance of the destination as a parameter. However, the millage points are not awarded until the traveler actually takes the flight.

When a traveler has accumulated sufficient number of millage points, he may redeem these points for an award chosen from a specific list of awards specified by the program. Thus, for example, the traveler may redeem the points for a free flight ticket or a free rental car. In order to redeem the accumulated points, the traveler generally needs to request a certificate, and use the issued certificate as payment for the free travel.

While the above program may induce customer loyalty, it has the disadvantage that the selection of prizes can be made only from the limited list of awards provided by the company. For example, a traveler may redeem the certificate for flights between only those destinations to which the carrier has a regular service. Another disadvantage is that the customer generally needs to plan ahead in sufficient time to order and receive the award certificate.

According to another type of frequency and award program, a credit instrument is provided and credit points are accumulated instead of the millage points. In such programs, bonus points are awarded by using a formula in which a price paid for merchandise is a parameter. Thus, upon each purchase a certain number of bonus points are awarded, which translate to dollar credit amount. According to these programs, the customer receives a credit instrument which may be acceptable by many enrolled retailers, so that the selection of prizes available is enhanced. An example of such a program is disclosed in E.P.A. 308,224. However, while such programs may enhance the selection of prizes, there is still the problem of obtaining the credit instrument for redeeming the awarded points. In addition, the enrolee must allow for processing time before the bonus points are recorded and made available as redeemable credit. Thus, the immediacy effect of the reward is lacking in these conventional incentive programs.

## SUMMARY OF THE INVENTION

In view of the above, the present invention is advantageous in that it provides an on-line, interactive incentive program which is fully integrated.

The disclosed invention is also advantageous in that it provides an on-line access to product information, product purchases using an on-line electronic order form, award

**2**

catalogs, and award redemption using an on-line electronic redemption forms.

Another advantage of the subject invention is that it awards bonus points immediately upon purchase of a merchandise.

The present invention is further advantageous in that it provides bonus points which are immediately made available for redemption.

Another advantage of the present invention is that it allows the customer to select a prize immediately upon the award of the bonus points.

A further advantage of the present invention is that it allows a customer to order a prize and redeem the awarded points towards the ordered prize immediately upon the award of the bonus points, thus enhancing the immediacy effect of the reward program.

Yet another advantage of the present invention is that it provides an electronic sign-up form for on-line signing up by users.

The above and other advantages are provided by the disclosed invention which includes provisions for access over the internet. Upon gaining of an access, the customer is able to browse through a merchandize catalog, an award catalog, view the bonus points available for redemption in the customer's award bonus account, and get information about the products for purchase, the program, and the customer's account. The program also enables the customer to order merchandize on-line, order prizes on-line and redeem awarded points on-line. Accordingly, the selection of available prizes is expanded by the merchants who join the program, and the bonus award is made instantly redeemable.

## BRIEF DESCRIPTION OF THE DRAWINGS

Other objects and advantages of the present invention will become apparent from the following description of the preferred embodiment with reference to the drawings, in which:

FIG. 1 is a flow chart showing the access part of the program of the preferred embodiment of the present invention;

FIG. 2 is a flow chart showing the product selection and on-line purchase part of the program of the preferred embodiment of the present invention;

FIG. 3 is a flow chart showing the membership part of the program of the preferred embodiment of the present invention;

FIG. 4 is a flow chart showing the award redemption part of the program of the preferred embodiment of the present invention;

FIG. 5 is a flow chart showing an enrollment routine.

FIG. 6 is a flow chart showing an exemplary routine to determine the number of points the user is short of for redeeming a particular product.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The program according to the present invention will be described with reference to FIGS. 1–5. FIG. 1 is a flow chart showing the access part of the program. In FIG. 1, **10** indicates access via an on-line provider such as AOL™, CompuServe™ etc. On the other hand, **20** indicates a direct access to the internet, such as via Netscape™. Upon gaining an access to the internet, **30**, the program proceeds to a selection menu **40**. Depending on the user's choice, from the

6,009,412

**3**

selection menu **40** the program may proceed to PRODUCT A HOMEPAGE **100A** or PROGRAM HOMEPAGE **300**. Alternatively the user may choose to exit the program via EXIT, **50**.

It should be noted from the outset that in the preferred embodiment of the disclosed invention, the user may back-track from any particular point in the program. Notably, the user is able to return to selection menu **40** from any part of the program. This being stated generally, it will be appreciated that this feature is applicable to the further program steps of the preferred embodiment described below and, therefore, it will not be repeated in the following description.

In FIG. 1, PRODUCT A HOMEPAGE, **100A**, is a home-page of a particular type of products. For example, PROD-UCT A HOMEPAGE, **100A**, may be a homepage for men's shirts. In such an example, the PRODUCT A HOMEPAGE, **100A**, may include icons to allow the user to select infor-mation regarding, for example, different brands, price ranges, types (dress shirts, sport shirts, etc.), and thereafter review the products available relating to the particular selection in a manner much similar to reviewing a printed product catalogue.

Alternatively PRODUCT A HOMEPAGE, **100A**, may identify a particular brand. In such an example PRODUCT A HOMEPAGE, **100A**, may include icons to allow the user to review information regarding particular products sold by this particular brand.

In the preferred embodiment, the capability to view information regarding the various products is enhanced by providing the user with various "browsing" options, gener-ally implemented in the form of icons. This is depicted in FIG. 1 as BROWSING OPTION **60**. Thus, for example, the user may choose to list the products alphabetically, list the brands alphabetically, or use a search engine to create a group of products which fit the user's requirements. Any conventional search engine may be used for this purpose. Such a search engine can be implemented for accepting a boolean string, or by collecting the user's response to an inquiry set. The fields for the search engine may include, for example, key words, brands, price range, material etc.

In FIG. 1, BROWSING OPTION **60** is shown at the same level as PRODUCT A HOMEPAGE, **100A**, to indicate that in the preferred embodiment the user may go directly to view the products information, or arrange a new list of products according to the user's needs. However, it will be appreciated by those skilled in the art, that other arrange-ments are possible. For example, BROWSING OPTION, **60**, can be inserted between SELECTION MENU **40** and PRODUCT A HOMEPAGE **100A** so that the user may have to enter his preferred way of viewing the products before the user is able to select the products' homepage.

In the Figures, PRODUCT A HOMEPAGE, **100A**, is depicted as multiple pages. This depiction signifies two features of the program of the present invention. The first feature, is that PRODUCT A HOMEPAGE, **100A**, may include more than one page. Thus, if a large amount of information needs to be included in PRODUCT A HOMEPAGE, **100A**, the homepage may actually comprise several pages and the user will be provided with a scroll option so as to be able to scroll over the information pages. Another feature is that from the selection menu **40** the user may be able to choose other products homepage such as, for example, PRODUCT B HOMEPAGE, PRODUCT C HOMEPAGE, etc., which are depicted impliedly in the drawings as pages following PRODUCT A HOMEPAGE, **100A**.

**4**

In a similar manner, PROGRAM HOMEPAGE, **300**, is shown in the Figures as multiple pages. (It will be under-stood by those skilled in the art that PROGRAM HOMEP-AGE **300** is the main internet address for the incentive program system). This depiction also signifies two features of the program of the present invention. The first feature, is that PROGRAM HOMEPAGE, **300**, may comprise multiple pages with a scrolling feature to allow the user to scroll for viewing the information contained in the pages. The second feature is that several incentive programs, or incentive level programs may be available for access from the selection menu **40**. For example, several different programs may be accessible, each program being managed by a different incentive company. Alternatively, or in addition, several incentive level programs may be accessible from the selec-tion menu **40**.

In the case of several incentive level programs, restric-tions may be imposed for accessibility to the various incen-tive level programs. For example, a particular incentive company may manage three incentive programs: white, silver and gold. The white incentive program can be acces-sible for enrollment by any approved user. On the other hand, the incentive company may allow limited access to the silver and gold incentive programs for providing informa-tion only, while enrollment may be restricted only to those users who satisfy set requirements. These requirements may relate, for example, to a certain level of purchasing within a given period, credit rating, gross salary, special company promotion program, etc. As in the above, while these various features have been described herein, they are depicted in the drawing simply by showing multiple pages following PRO-GRAM HOMEPAGE **300**.

If a user selects PRODUCT A HOMEPAGE **100A**, the program proceeds to a selection menu **110**, shown in FIG. 2. Incidentally, the routines shown in FIG. 2 are depicted to proceed from the routine of FIG. 1 by the designation Ai. This designation is to alert the reader that this particular routine is generic to all the other products homepage, such as PRODUCT B HOMEPAGE, PRODUCT C HOMEPAGE, etc.

Therefore, while the description provided herein relates to PRODUCT A HOMEPAGE, **100A**, this is only for demon-stration purposes and it will be appreciated by those skilled in the art that similar processing would follow upon selec-tion of a different product homepage.

With continued reference to FIG. 2, selection menu **110** provides the user with the following options: proceed to PROGRAM HOMEPAGE **300**, proceed to PRODUCT i HOMEPAGE, **100**i, (i being any of the number of available products homepage) or proceed to ORDER FORM **130**. Alternatively, the user may change the list of products by choosing the appropriate browsing option or using the search engine to create a new list of products (not shown). Upon selection of PRODUCT i HOMEPAGE, **100**i, the program reverts to step Ai, i.e., to SELECTION MENU **110**. Upon selection of PROGRAM HOMEPAGE **300**, the pro-gram proceeds to step B shown in FIG. 3, which will be described later.

If the user decides to purchase an item, the program proceeds to ORDER FORM **130** and the user is prompted to electronically provide entries to the appropriate queries in the order form. Thereupon, a communication link is estab-lished and the program performs a CREDIT CHECK routine, **140**, to verify the availability of funds for purchase.

At this juncture, a particular feature of the program of the present invention will be described. As noted above and

6,009,412

5

shown in FIG. 1, the user may access the internet using an on-line provider or an internet direct access. If the user is accessing the internet via an on-line provider, his credit information (account number, type of credit card etc.) is available directly from the on-line provider. Accordingly, in performing the CREDIT CHECK routine 140, the information needed for the credit check can be obtained from the on-line provider. Alternatively, if the user gained access via an internet direct method, the CREDIT CHECK routine 140 may provide an inquiry screen requesting the user to enter his credit information.

A related feature of the present invention is that when the user enters ORDER FORM 130 from a particular product homepage describing a particular product, it is very likely that the user wishes to purchase that particular product. Therefore, the relevant information regarding the product can be read from the product's homepage and pasted at the appropriate positions in the ORDER FORM 130. Thus, the user will only have to enter information specific to options such as size, color, quantity, etc.

At step 130, certain predetermined information is striped off from the completed order form and sent to the credit check 140. Such information may be, for example, credit card number and dollar amount. This is because much of the information included in the order form is irrelevant to the person's credit, and the credit institution may be unable to handle the extra information. Furthermore, sending the least amount of information would expedite the credit check.

If the CREDIT CHECK routine 140 result is negative, in step 150N the user is provided with a message to that effect. The program may then prompt the user to enter another credit card number or to exit. However, if the CREDIT CHECK routine 140 result is positive, in step 150P the program proceeds to establish a communication link and places a PRODUCT ORDER, 160, with the product company. As shown in FIG. 2, in the preferred embodiment PRODUCT ORDER 160 is placed by electronic means such as e-mail or facsimile so as to render the program of the present invention fully integrated in an interactive on-line system; however, the ORDER FORM 160 can alternatively be place by conventional means by simply printing and mailing the ORDER FORM 160 to the product company.

As shown in FIG. 2, while the communication link is established to the product company, the program also proceeds to the FREQUENCY DATABASE, 170. In FREQUENCY DATABASE 170 the user's information is checked against the database of enrolled users. If it is determined that the user is an enrolled user, 180E, the program proceeds to step 190 to calculate the award points according to a preprogrammed formula. Thereafter the program proceeds to add the points to the enrolled user's account, 200, and display the account information and the added points to the user, 210. From this point, the program may return to ORDER FORM 130, to step Ai (not shown), to PROGRAM HOMEPAGE 300 to view the awards catalog (not shown) or proceed to SELECTION MENU, 40, (not shown).

The preferred embodiment includes a particular feature wherein in addition to displaying the points added to the account, the program includes a routine to display a selected award or product, and the number of points the user is short of in order to receive that award or product. For example, during particular periods certain awards or products may be designated as under a "special program". Thus, during those periods, the award would require a reduced number of points and/or the product would be available under special favor-

6

able terms. The user may be notified of that fact, to thereby entice the user to purchase additional products in order to qualify for the "special program" terms.

In order to implement the "special program," the information regarding the award/product needs to be read. The number of points required to redeem the particular qualifying award is then fetched. Similarly, the user's account is accessed and the number of points in the user account is fetched. The number of points read from the user's account is subtracted from the number of points read from the award information and the result is displayed as the number of points the user is short of to redeem the particular qualified award. An exemplary flow chart is provided in FIG. 6.

On the other hand, if in step 170 it was determined that the user is a new, unenrolled user, 180N, the program proceeds to step 220 to calculate the award points according to the preprogrammed formula. Thereafter, the program proceeds to step 130, wherein a message is sent to the user identifying how many points he will earn should he enroll in the program. Step 230 also inquires whether the user is interested in joining the program. Accordingly, step 230 may be in a form of a message such as, for example, "By enrolling in the incentive program you will earn [X] points for purchasing the [insert the item purchased]. These points may be redeemed toward exciting awards. Are you interested in enrolling or viewing the award catalog? Y/N."

If in step 240 the user selects NO in response to step 230, the program proceeds to ORDER FORM 130 or to process Ai (not shown), which proceeds to SELECTION MENU 110. Alternatively, after receiving NO in step 240 process may continue to SELECTION MENU 40. At step 240, if it is determined that the user would like to sign up with the award program (join), the program proceeds to step 250 which is a sign up routine. Any conventional sign up routine may be used at this stage of processing. At the end of the sign up routine, the program can return to point Ai, or to the purchase order form. The user may sign off from any of these locations.

For illustration purposes, a general flow of an enrollment routine for signing up is shown in FIG. 5. This routine may be entered from may different places in the program, e.g., after making a purchase, after reviewing information regarding the program, etc. Accordingly, the beginning of the routine of FIG. 5 is shown "floating."

At step 600 the user is prompted either to enter a credit card account number, 610, or to indicate that he wishes to use the same account used to access the internet or to purchase an item, in which case the account number is obtained from within the program, 620. (It should be recognized that the user's name can also be obtained internally from the on-line access program.) At 630 the user is prompted to enter a personal identification code, which can generally be a four letter/number code. At 640 the user is prompted to enter his choice of mailing address—the address indicated on the order form, 660, or a different address, 650. (A different address can be entered in the order form, for example, when purchasing a present to be mailed to the recipient. At 670 the program creates a new account in the database.

In FIG. 2, steps 190 and 220 may be combined and the awards point calculated before reaching step 170. That is, upon obtaining a positive credit check at step 150P, the program can proceed to calculate the award points before proceeding to step 170. Then after performing step 180, process can proceed either to step 200, when it was determined that the user is an enrolled user (180E), or to step 230, when it is determined that the user is not an enrolled user (180N).

6,009,412

7

In the description of the preferred embodiment, the term product also refers to a gift certificate. The following examples are provided in order to make this feature clearer to the reader. When a user accesses the various product homepages, the user has the option to purchase a gift certificate rather than purchasing an actual product. The gift certificate can be directed to a particular merchant, a particular manufacturer/brand, or to all the products available through the program.

In the preferred embodiment the gift certificate is sent electronically to a computer designated by the user to be printed by a printer linked to the designated computer. Thus, for example, if the user knows the account number of the recipient of the gift certificate, the user may purchase the gift certificate and designate the recipient's account as the designated computer. Accordingly, the gift certificate will be electronically sent to the recipient's computer, or electronically added to the recipient's account while electronically informing the recipient of the transaction. Therefore, the user will not have to mail the certificate to the recipient.

It should also be realized that the user will be credited award points corresponding to the price of the gift certificate purchased. Thus, while the recipient will receive the gift certificate for purchases, the user will receive the award points. In addition, the user may use award points from his account as payment for the purchasing of a gift certificate; thus effectively making the award points available for purchases by a recipient. This can be user to entice unenrolled recipients to join the program.

When a user selects PROGRAM HOMEPAGE 300 (e.g., from SELECTION MENU 40 or from SELECTION MENU 110), the program proceeds through to SELECTION MENU 310, shown in FIG. 3. In FIG. 3, SELECTION MENU 310 is shown as three consecutive decision points. This represents the structure in the preferred embodiment wherein each of the options shown branching from the three decision points are available for selection from PROGRAM HOMEPAGE 300.

SELECTION MENU 310 allows the user to exit the program, go to PRODUCT Ai HOMEPAGE 100A (from which program would proceed to Ai in FIG. 2), go to the BROWSING OPTION 60, learn about the award program by selecting ABOUT AWARD PROGRAM 320, apply for membership by selecting MEMBERSHIP APPLICATION 250 (see, FIGS. 2 and 5), review the user's account by selecting the FREQUENCY DATA BASE 340, or review the awards catalog by selecting AWARD CATALOG HOMEPAGE 400 (shown in FIG. 4).

Upon selecting FREQUENCY DATABASE 340, the user will be prompted to enter the account number, the identification code, or both at step 350. In the program of the present invention, the account number and the identification code are linked together, for user for which they are available. Thus, when a user account is established in the frequency database, data is included to link the user's account number to the user's identification code. (It should be noted that account number can refer to a credit card account number, an account number internal to the program, etc.)

If the user has entered the internet via an on-line provider 10, his credit card account number can be obtain on-line from the on-line provider. Therefore, rather than prompting the user to enter his credit card account number or his program account number, the credit card account number can be obtained on line from the on-line provider, and the account can be matched against the accounts in the fre-

8

quency database. If a match is obtained, the program account number can be read from the frequency database. However, for security purposes, it is preferable that the program will not proceed to step 360 to display the account information before the user has been prompted and has entered at least the correct identification code at step 350, which is matched with the account number.

If the user selects AWARD CATALOG HOMEPAGE 400 processing proceeds to the routine shown in FIG. 4. In the preferred embodiment several options are available for viewing the award catalog. This is represented by the SELECTION MENU 410, although those skilled in the art would recognize that other processing can be provided for viewing the award catalog. As shown in FIG. 4, at least two options are made available by SELECTION MENU 410: SHOW QUALIFIED AWARDS 420 (shown continuing at branch E) and VIEWING OPTIONS 450. QUALIFIED AWARDS 420 allows the user a quick access to viewing all the awards the user is qualified for. VIEWING OPTIONS 450 allows the user to view the awards according to the order selected by the user.

If the user selects QUALIFIED AWARDS 420, the frequency database is accessed to determine the award point, 425. Thereafter, the entire award catalog is scanned and a qualified awards database is created for the particular number of award points read from the user's account, 430. Thereafter, the first page of the first award is displayed, 435, and the user can browse through the catalog created in step 430. Alternatively, the user can select QUALIFIED AWARD OPTION 440 for different options of arranging and viewing the qualified awards catalog. These options can be, for example, by alphabetical order, by brands, by product, etc.

While the above method of displaying the qualified awards is workable, it may take too much time to scan all the awards in order to "custom" build a qualified awards catalog. Therefore, other alternatives may be used for creating the qualified award catalog. According to the preferred alternative, point levels are defined. For example, point level 1 can include all awards of value up to 500 points, point level 2, up to 1000 points, etc. When the user's account is read at 425, the highest point level the user is qualified for is determined. At this point a message may be displayed such as "You are qualified for point level 3 and have additional 350 points in your account. To qualify for point level 4 you will need 150 additional points".

If memory size is not a problem, different libraries can be stored, each of which corresponding to a certain point level. Thus, for example, award library 1 can include all the awards which can be redeemed by a number of points defined by point level 1. In the above example, award library 1 will include all awards worth up to 500 points. Thus, when the point level of the user is determined, all the awards in the corresponding library are made accessible as qualified awards. This allows for fast access, since the step 430 of creating the qualified catalog is skipped. However, such system may require large amount of memory, since many libraries may be needed to store the various awards of different point levels.

In the preferred embodiment the award libraries are arranged in a progressive manner, so as to avoid the need for a large memory size. The above example of the point levels will be used to explain this feature. Using the above example, award library 1 should include all awards worth up to 500 points. Award library 2 should include all awards worth from 501–1000 points, etc. Thus, if the user is qualified, for example, for point level 2, access is made to

6,009,412

**9**

award libraries **1** and **2**. Thus, duplication of awards in the various libraries is prevented.

A further option would be to flag the various awards according to the point level for which they are qualified. Accordingly, when the point level of the user has been determined, the awards are scanned for the appropriate flag and the qualified award library is created in this manner. While this feature does not eliminate step **430**, the qualified award library can be built in less time than by scanning the required points and comparing each required point to the available points.

By selecting VIEWING OPTIONS **450**, the user may set the order in which to view the awards. Thus, for example, the user may view the awards by alphabetical order, enter a ceiling point number for viewing all awards up to that ceiling, view awards by product or brand, etc. The award catalog of the program of the preferred embodiment includes a feature whereby when a particular award is shown, it includes information regarding how many points are required to redeem that particular award, and how many points the user is short of in order to redeem that particular award.

To implement the above mentioned feature, the program accesses the user's account in the frequency database and reads the amount of award points the user has in his account. Then, whenever the program displays a particular product, the program subtracts the number of point available in the user's account from the number of points required to redeem the award. The result is displayed as the number of points the user is short of to redeem that award. Of course, if the user is not enrolled in the program or does not have any award points in his account, the number of point the user is short of will be equal to the number of points required to redeem the award. An exemplary flow chart is shown in FIG. 6.

Another particular feature for viewing the award catalog is shown in FIG. 4. The user is provided with an access to the frequency database via FREQUENCY DATABASE **460**. While in FIG. 4 FREQUENCY DATABASE **460** is shown to proceed from VIEWING OPTION **450**, it would be appreciated that access to the frequency database and the routine of the feature described below can be provided in other places in the program.

Upon accessing the frequency database, the user may view the account to verify the amount of redeemable points recorded therein. Thereafter, the user may enter any ceiling awards points of the user's choice, **470**, for viewing the awards worth up to that ceiling, **475**. Processing for displaying the qualified awards can then proceed as shown in steps **435**, **440**, and **500** in branch E of FIG. 4.

In the preferred embodiment, the user may enter the REDEEM routine **500** at any point in the program. In FIG. 4 this feature is represented by the several REDEEM **500** selections depicted at many points of the program. When entering the REDEEM routine, the user may be prompted to enter the account number, the identification code or both, **510**. This is similar to the description provided with respect to step **350** in FIG. 3. Thus, only the identification code may be required if on-line access was gained via an on-line provider. Thereafter, the proper award to be redeemed is determined.

It should be noted that if the REDEEM **500** step has been entered into from an award page, the award described in that particular page may be automatically read into the REDEEM **500** routine as the selected award. However, the user may be prompted to verify that this is the correct award he wished to redeem and enter appropriate selections, such

**10**

as color, size, etc. Otherwise, the user may simply be prompted to enter the award by, for example, an award code. It should also be noted that if the user has designated the ceiling award points, the user's account needs to be accessed to verify that the user has sufficient points to redeem the chosen award, **515**.

The proper amount of points is then subtracted from the user's account and an adjustment is made in the frequency database, **520**. A link is then established to the fulfillment house or directly to the product manufacturer and an award order is communicated, **530**. Thereafter, the program returns to the PROGRAM HOMEPAGE **300**.

In the description of the preferred embodiment, the term "user" also refers to merchants, product manufacturers, award program administrators, etc. These particular users may be provided with a special access code. Upon entering the special code, these particular users may be provided with a privileged access to the program which allows them to make limited changes to the data. Thus, for example, a merchant may use this special access to change a price charged for a particular product. Similarly, a program administrator may gain privileged access to enter newly added awards available through the program. In addition, in the preferred embodiment a report is generated upon each privileged entry so that the changes made can be monitored.

Certain variations would be apparent to those skilled in the art, which variations are considered within the spirit and scope of the claimed invention.

What is claimed is:

1. A method for implementing an on-line incentive program, said method comprising the steps of:

   providing an Internet webpage accessible to at least one user, via a computer system, for on-line interactive communications between said user and said Internet webpage;

   offering, on said Internet webpage, at least one product for sale to said user;

   determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product;

   calculating said award points according to a preprogrammed formula if said user qualifies for said award points; and

   issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

2. The method as set forth in claim 1, further comprising the step of determining whether said user is enrolled in said incentive program.

3. The method as set forth in claim 2, wherein the step of determining whether said user is enrolled in said incentive program comprises the step of checking a frequency database that comprises user enrollment information.

4. The method as set forth in claim 1, further comprising the step of displaying to said user, via said computer system, said award points earned by said user.

5. The method as set forth in claim 1, further comprising the step of displaying to said user, via said computer system, an amount of award points necessary to qualify for an incentive award.

6. The method as set forth in claim 1, further comprising the step of permitting a user to enroll in said on-line incentive program.

7. The method as set forth in claim 1, further comprising the step of providing said user with an on-line order form for ordering a product for purchase.

6,009,412

11

8. The method as set forth in claim 7, further comprising the steps of:

establishing an on-line link to an order computer; and

sending electronically to said order computer information received from said on-line order form.

9. The method as set forth in claim 1, further comprising the steps of:

receiving credit information from said user for purchase of said at least one product;

establishing an on-line link to a computer; and

sending electronically to said computer said credit information to verify available credit for said user.

10. A method for redeeming incentive awards in an on-line incentive program, said method comprising the steps of:

implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award;

implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage;

offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points; and

permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user through said on-line incentive program.

11. The method as set forth in claim 10, wherein the step of permitting said user to initiate a process to receive a redeemable award comprises the steps of:

accessing an account of said user;

redeeming a particular award for said user based on said points issued to said user if said user has earned sufficient points to qualify for said particular award; and

subtracting said points from said account of said user.

12. The method as set forth in claim 10, wherein the step of redeeming a particular award for said user comprises the steps of:

displaying, via said Internet webpage, a catalog of awards redeemable with said award points of said on-line incentive system; and

accepting a selection by said user that indicates an award from said catalog.

13. The method as set forth in claim 12, further comprising the steps of:

providing said user with an on-line redeeming form comprising entries that specify an award for redeeming said award points; and

establishing an on-line link to an award computer; and

sending, via said on-line link, entries of said on-line redeeming form to said award computer.

14. The method as set forth in claim 10, further comprising the step of permitting a user to review an awards catalog from said Internet webpage that comprises awards redeemable for said award points.

15. The method as set forth in claim 10, further comprising the step of permitting a user to review an account from said Internet webpage for said user, wherein said account reflects an amount of said award points credited to said user.

16. The method as set forth in claim 10, further comprising the step of permitting a user to preview information about said on-line incentive program from said Internet webpage.

12

17. The method as set forth in claim 10, further comprising the step of permitting a user to apply for membership to said on-line incentive program from said Internet webpage.

18. A computer readable medium comprising a plurality of instructions, which when executed by a computer, causes the computer to perform the steps of:

providing an Internet webpage accessible to at least one user, via a computer system, for on-line interactive communications between said user and said Internet webpage;

offering, on said Internet webpage, at least one product for sale to said user;

determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product;

calculating said award points according to a preprogrammed formula if said user qualifies for said award points; and

issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

19. The computer readable medium as set forth in claim 18, further comprising the computer to perform the step of determining whether said user is enrolled in said incentive program.

20. The computer readable medium as set forth in claim 19, wherein the step of determining whether said user is enrolled in said incentive program comprises the step of checking a frequency database that comprises user enrollment information.

21. The computer readable medium for as set forth in claim 18, further comprising the step of displaying to said user, via said computer system, said award points earned by said user.

22. The computer readable medium as set forth in claim 18, further comprising the step of displaying to said user, via said computer system, an amount of award points necessary to qualify for an incentive award.

23. The computer readable medium as set forth in claim 18, further comprising the step of permitting a user to enroll in said on-line incentive program.

24. The computer readable medium as set forth in claim 18, further comprising the step of providing said user with an on-line order form for ordering a product for purchase.

25. The computer readable medium as set forth in claim 24, further comprising the steps of:

establishing an on-line link to an order computer; and

sending electronically to said order computer information received from said on-line order form.

26. The computer readable medium as set forth in claim 18, further comprising the steps of:

receiving credit information from said user for purchase of said at least one product;

establishing an on-line link to a computer; and

sending electronically to said computer said credit information to verify available credit for said user.

27. A computer readable medium comprising a plurality of instructions, which when executed by a computer, causes the computer to perform the steps of:

implementing an on-line incentive program that issues award points to users, wherein said award points are redeemable by said user for an award;

implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive program for on-line interactive communications between said user and said Internet webpage;

6,009,412

13

offering, on said Internet webpage, at least one redeemable award available to said user for exchange of said award points; and

permitting said user to initiate a process to receive said at least one redeemable award for exchange of said award points issued to said user through said on-line incentive program.

**28.** The computer readable medium as set forth in claim **27,** wherein the step of permitting said user to initiate a process to receive a redeemable award comprises the steps of:

accessing an account of said user;

redeeming a particular award for said user based on said points issued to said user if said user has earned sufficient points to qualify for said particular award; and

subtracting said points from said account of said user.

**29.** The computer readable medium as set forth in claim **28,** wherein the step of redeeming a particular award for said user comprises the steps of:

displaying, via said Internet webpage, a catalog of awards redeemable with said award points of said on-line incentive system; and

accepting a selection by said user that indicates an award from said catalog.

**30.** The computer readable medium as set forth in claim **29,** further comprising the steps of:

providing said user with an on-line redeeming form comprising entries that specify an award for redeeming said award points; and

establishing an on-line link to an award computer; and sending, via said on-line link, entries of said on-line redeeming form to said award computer.

**31.** The computer readable medium as set forth in claim **27,** further comprising the step of permitting a user to review an awards catalog from said Internet webpage that comprises awards redeemable for said award points.

**32.** The computer readable medium as set forth in claim **27,** further comprising the step of permitting a user to review

14

an account from said Internet webpage for said user, wherein said account reflects an amount of said award points credited to said user.

**33.** The computer readable medium as set forth in claim **27,** further comprising the step of permitting a user to preview information about said on-line incentive program from said Internet webpage.

**34.** The computer readable medium as set forth in claim **27,** further comprising the step of permitting a user to apply for membership to said on-line incentive program from said Internet webpage.

**35.** A computer system for implementing an on-line incentive program, said computer system comprising:

software for offering at least one product for sale to at least one user via an Internet webpage, said Internet webpage being accessible to said user for on-line interactive communications between said user and said Internet webpage; and

software for determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product, for calculating said award points according to a preprogrammed formula if said user qualifies for said award points, and for issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

**36.** A computer system for implementing an on-line incentive program, said computer system comprising software for offering, on an Internet webpage, at least one redeemable award available to said user for exchange of at least one award point, and for permitting said user to initiate a process to receive at least one redeemable award for exchange of said award points, said award points being issued from said on-line incentive program, and said Internet webpage being accessible to said user for on-line interactive communications between said user and said Internet webpage.

\* \* \* \* \*

# EXHIBIT B

## PATENT ASSIGNMENT AGREEMENT

This PATENT ASSIGNMENT AGREEMENT ("Agreement"), dated as of October 17, 2005 ("Effective Date"), is made by and between Trilegiant Loyalty Solutions, Inc. ("Assignor"), a Delaware corporation, and Affinion Net Patents, Inc. ("Assignee"), a Delaware corporation.

WHEREAS, Assignor owns certain Patents (as defined below);

WHEREAS, subject to the terms and conditions of this Agreement, Assignor desires to sell and assign the Assigned Patents (as defined below) to Assignee; and

WHEREAS, Assignee desires to purchase and accept such assignment of the Assigned Patents from Assignor.

NOW THEREFORE, in consideration of the foregoing and mutual promises and covenants made herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Definitions.

    1.1    "Assigned Patents" shall mean the Patents listed on Schedule A attached hereto.

    1.2    "Cendant Patent License" means that certain Patent License Agreement, dated as of October 17, 2005 by and between Assignor and CD Intellectual Property Holdings, LLC.

    1.3    "Patents" shall mean all patents and patent applications in the United States and all equivalents of the foregoing in any other jurisdiction, the underlying inventions described therein, and any continuations, continuations-in-part, divisions, reissues, reexaminations, foreign counterparts or extensions thereof.

2.    Assignment.

In consideration of the amount of one hundred dollars ($100) payable by Assignee to Assignor, Assignor hereby irrevocably assigns, sells, transfers and conveys to Assignee, its successors and assigns, all of Assignor's rights, title and interest throughout the world in and to the Assigned Patents, including all rights to sue or recover for the past, present and future infringement thereof, and any and all causes of action related thereto, subject to any licenses to or encumbrances on the Assigned Patents in effect as of the Effective Date, including those listed on Schedule B. Assignor and Assignee agree that the foregoing assignment, sale, transfer and conveyance shall automatically and without any further action required by either party become effective as of the Effective Date.

3.    Recordation.

Assignor assumes all responsibility and costs for recording this assignment of the Assigned Patents in the United States Patent and Trademark Office, foreign patent and elsewhere, as applicable.

4.    Cendant Patent License Requirement.

Assignee acknowledges that Assignor is a party to the Cendant Patent License, which relates, in part, to the Assigned Patents and pursuant to which Assignor is bound by certain obligations and

TRL-MTZ 45326

Highly Confidential
Outside Counsel Only-
Under Protective Order

restrictions.  As required by Section 6.1(b) of the Cendant Patent License, Assignee agrees to be bound by the terms and conditions of the Cendant Patent License.

5.    Miscellaneous.

    5.1    Governing Law and Forum.  This Agreement shall be governed in all respects by the laws of the State of New York without regard to the conflicts of law provisions thereof.

    5.2    Modification, Amendment and Waiver.  This Agreement and its provisions shall not be modified, amended or waived, except in a writing executed by both parties.

    5.3    Schedules.  Schedules A and B are hereby incorporated by reference herein.

    5.4    Further Actions.  Each party agrees to execute, acknowledge, and deliver such further instruments, and to do all such other acts, as may be necessary or appropriate to carry out the purposes and intent of this Agreement.

*        *        *        *        *

IN WITNESS WHEREOF, each of ASSIGNOR and ASSIGNEE has caused its respective duly authorized officer to execute and deliver this Agreement as of the Effective Date.

**TRL-MTZ 45327**

Highly Confidential
Outside Counsel Only-
Under Protective Order

**ASSIGNOR: Trilegiant Loyalty Solutions, Inc.**

By: _mmg_
Name: _Nathaniel J. Lipman_
Title: _President and Chief Creative Officer_

State of _____
County of _____
On _____ before me, _____
                              Name of Notary Public
Personally appeared _____
                              Name(s) of Signer(s)
            ☐ personally known to me
            ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
                              WITNESS my hand and official seal.
                                                            _____
                              Signature of Notary Public

**ASSIGNEE: Affinion Net Patents, Inc.**

By: _____
Name: _____
Title: _____

State of _____
County of _____
On _____ before me, _____
                              Name of Notary Public
Personally appeared _____
                              Name(s) of Signer(s)
            ☐ personally known to me
            ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
                              WITNESS my hand and official seal.
                                                            _____
                              Signature of Notary Public

TRL-MTZ 45328

**Highly Confidential
Outside Counsel Only-
Under Protective Order**

**ASSIGNOR: Trilegiant Loyalty Solutions, Inc.**

By:_____

Name:_____

Title:_____

State of _____

County of _____

On _____ before me,_____

Name of Notary Public

Personally appeared _____

Name(s) of Signer(s)

☐ personally known to me

☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Signature of Notary Public

**ASSIGNEE: Affinion Net Patents, Inc.**

By: _____

Name: Marc Becker

Title: President

State of _____

County of _____

On _____ before me,_____

Name of Notary Public

Personally appeared _____

Name(s) of Signer(s)

☐ personally known to me

☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Signature of Notary Public

**TRL-MTZ 45329**

**Highly Confidential
Outside Counsel Only-
Under Protective Order**

## SCHEDULE A

### Assigned Patents

| Country and Type | Patent No. / Patent Application No. |
|---|---|
| U.S. Patent | 5,774,870 |
| U.S. Patent | 6,009,412 |
| U.S. Patent | 6,578,012 |
| U.S. Patent Application | 09/854,721 |
| U.S. Patent Application | 09/668,965 |
| U.S. Patent Application | 09/167,315 |
| U.S. Patent Application | 09/637,422 |
| U.S. Patent Application | 09/637,387 |
| U.S. Patent Application | 09/932,588 |
| U.S. Patent Application | 09/717,972[1] |
| U.S. Patent Application | 10/420,901 |

---

[1]    This Patent Application is abandoned, but may have progeny and/or corresponding patents still alive.

MP1:968503.3

4

TRL-MTZ 45330

Highly Confidential
Outside Counsel Only-
Under Protective Order

## SCHEDULE B

**Existing Licensees to and Encumbrances on the Assigned Patents**

1. Patent License Agreement, dated as of October 17, 2005, by and between CD Intellectual Property Holdings, LLC and Trilegiant Loyalty Solutions, Inc.

**TRL-MTZ 45331**

Highly Confidential
Outside Counsel Only-
Under Protective Order

# EXHIBIT C

## ASSIGNMENT OF PATENT APPLICATIONS

This ASSIGNMENT OF PATENT APPLICATIONS is entered into as of December 7, 2001 ("Effective Date") by and among **Netcentives Inc.** ("Assignor"), a Delaware corporation having a principal place of business at 475 Brannan Street, San Francisco, California, 94107, and **Trilegiant Corporation** ("Assignee"), a Delaware corporation having a principal place of business at 100 Connecticut Avenue, Norwalk, Connecticut, 06850.

WHEREAS, Assignor is the sole owner of the entire right, title and interest in and to certain inventions for which the foreign Patent applications listed in the attached SCHEDULE OF ASSIGNED PATENT APPLICATIONS (the "Patent Applications"), have been filed.

WHEREAS, Assignor has, under a Patent and License Purchase Agreement, dated as of December 7, 2001, between Assignor and Assignee (the "Agreement"), agreed to transfer, assign, convey, and deliver to Assignee, all of Assignor's right, title and interest in, to, and under the Patent Applications.

NOW THEREFORE, effective immediately by this document, in consideration of monies provided as part of the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

Assignor hereby transfers, assigns, conveys and delivers to Assignee, and its successors and assigns, Assignor's entire right, title, and interest in and to said inventions in the United States and all foreign countries worldwide, and the entire right, title and interest in and to the Patent Applications and any patents which may be granted thereon in the United States and all foreign countries worldwide, and in and to any and all continuations, continuations-in-part, divisions, reissues, and substitutes thereof, all foreign counterparts thereof, rights of priority and privileges under any and all international agreements, conventions, and treaties to which the United States adheres, all income, royalties, damages, claims and payments now or hereafter due or payable with respect thereto, and all rights to sue, causes of actions, claims and demands or other rights arising from any infringement thereof.

Assignor agrees to execute any papers, additional agreements and instruments and to perform other proper acts as Assignee or its successors or assigns may deem necessary to secure to Assignee or to its successors or assigns, the rights to be transferred under this Assignment of Patent Applications (including, without limitation, all rights with respect to the further prosecution of the patent applications described herein).

123527.01-San Francisco Server 1A                Draft December 7, 2001 - 12:38 pm

**CONFIDENTIAL**          **TRL-MTZ 18801**

WHEREFORE, Assignor has caused this Assignment of Patents to be duly executed below, on the date indicated, by its duly authorized officer.

Netcentives Inc.
("Assignor")

By: _____

Name:    Rodney Gould
Title:    Corporate Counsel and Senior Director of Privacy

STATE OF _CALIFORNIA_ )

                                                     :

COUNTY OF _SAN FRANCISCO_ )

On this _7th_ day of December, 2001, before me, a Notary Public in and for the County of San Francisco in the State of California, personally appeared _RODNEY GOULD_ , to me known to be the Corporate Counsel of Netcentives Inc. and being duly sworn, averred that, being duly authorized, (s)he executed the foregoing Assignment of Patents as the free act and deed of said corporation for the uses and purposes set forth.

_____
NOTARY PUBLIC

My Commission Expires: _4·15·03_

T. A. LOW
Comm. # 1215974
NOTARY PUBLIC · CALIFORNIA
City & County of San Francisco
Expires April 15, 2003

Assignment of Patent Applications

123527.01-San Francisco Server 1A                                    Draft December 7, 2001 – 12:38 pm

CONFIDENTIAL        TRL-MTZ 18802

# EXHIBIT D

## ASSIGNMENT OF PATENT APPLICATIONS

This ASSIGNMENT OF PATENT APPLICATIONS is entered into as of December 7, 2001 ("Effective Date") by and among **Netcentives Inc.** ("Assignor"), a Delaware corporation having a principal place of business at 475 Brannan Street, San Francisco, California, 94107, and **Trilegiant Corporation** ("Assignee"), a Delaware corporation having a principal place of business at 100 Connecticut Avenue, Norwalk, Connecticut, 06850.

WHEREAS, Assignor is the sole owner of the entire right, title and interest in and to certain inventions for which the foreign Patent applications listed in the attached SCHEDULE OF ASSIGNED PATENT APPLICATIONS (the "Patent Applications"), have been filed.

WHEREAS, Assignor has, under a Patent and License Purchase Agreement, dated as of December 7, 2001, between Assignor and Assignee (the "Agreement"), agreed to transfer, assign, convey, and deliver to Assignee, all of Assignor's right, title and interest in, to, and under the Patent Applications.

NOW THEREFORE, effective immediately by this document, in consideration of monies provided as part of the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

Assignor hereby transfers, assigns, conveys and delivers to Assignee, and its successors and assigns, Assignor's entire right, title, and interest in and to said inventions in the United States and all foreign countries worldwide, and the entire right, title and interest in and to the Patent Applications and any patents which may be granted thereon in the United States and all foreign countries worldwide, and in and to any and all continuations, continuations-in-part, divisions, reissues, and substitutes thereof, all foreign counterparts thereof, rights of priority and privileges under any and all international agreements, conventions, and treaties to which the United States adheres, all income, royalties, damages, claims and payments now or hereafter due or payable with respect thereto, and all rights to sue, causes of actions, claims and demands or other rights arising from any infringement thereof.

Assignor agrees to execute any papers, additional agreements and instruments and to perform other proper acts as Assignee or its successors or assigns may deem necessary to secure to Assignee or to its successors or assigns, the rights to be transferred under this Assignment of Patent Applications (including, without limitation, all rights with respect to the further prosecution of the patent applications described herein).

123527.01-San Francisco Server 1A                          Draft December 7, 2001 - 12:38 pm

CONFIDENTIAL        TRL-MTZ 18801

WHEREFORE, Assignor has caused this Assignment of Patents to be duly executed below, on the date indicated, by its duly authorized officer.

Netcentives Inc.
("Assignor")

By: _____
Name:    Rodney Gould
Title:    Corporate Counsel and Senior Director of Privacy

STATE OF _CALIFORNIA_                    )

COUNTY OF _SAN FRANCISCO_ )

On this __7th__ day of December, 2001, before me, a Notary Public in and for the County of San Francisco in the State of California, personally appeared _RODNEY GOULD_ , to me known to be the Corporate Counsel of Netcentives Inc. and being duly sworn, averred that, being duly authorized, (s)he executed the foregoing Assignment of Patents as the free act and deed of said corporation for the uses and purposes set forth.

_____
NOTARY PUBLIC

My Commission Expires: __4.15.03__

T. A. LOW
Comm. # 1215974
NOTARY PUBLIC · CALIFORNIA
City & County of San Francisco
My Comm. Expires April 15, 2003

Page 2 of 4
Assignment of Patent Applications

CONFIDENTIAL        TRL-MTZ 18802

# EXHIBITS E - BB

# Have Been Redacted
# In Their Entirety