IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION NET PATENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-360-JJF |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MARITZ'S RESPONSE TO AFFINION'S STATEMENT OF DISPUTED FACTS
IN RESPONSE TO MARITZ'S MOTION FOR PARTIAL SUMMARY
JUDGMENT OF INVALIDITY OF THE '412 PATENT
UNDER 35 U.S.C. §§ 102(e) AND (g)**

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
Michael J. Hartley
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Dated: July 24, 2006

Attorneys for Maritz Inc.

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. NO MATERIAL FACTUAL DISPUTE EXISTS AS TO WHETHER THE '887 PATENT IS STATUTORY PRIOR ART ............................................................................ 1

III. THERE ARE NO MATERIAL FACTUAL DISPUTES AS TO THE DISCLOSURE OF THE '887 PATENT ............................................................................ 2

    A. Affinion's Argument Regarding Whether the '887 Patent Discloses a "Redeemable Award" is a Legal Dispute Relating to Claim Construction, Not a Disputed Issue of Fact ............................................. 3

    B. There Is No Dispute That The '887 Patent Discloses A Program Homepage ............................................................................................................. 4

    C. There Is No Dispute That the '887 Patent Discloses A Process For Redeeming Points ................................................................................................. 6

IV. THERE IS NO DISPUTE THE BROADVISION SYSTEM WAS CONCEIVED BEFORE THE FILING DATE OF THE '412 PATENT .................................................... 7

    A. The Broadvision Inventors Conceived of an Internet-Based Frequent Buyer Program ....................................................................................................... 7

    **REDACTED**

    B. As Is True of Their Arguments Concerning the '887 Patent, Affinion's "Program Homepage," "Redeemable Award," and "Permitting a User..." Arguments Are Issues of Law, Not Issues of Fact ................................................ 9

    C. There Is No Dispute That the Broadvision Inventors Did Not Abandon, Suppress, or Conceal the Broadvision System ..................................................... 9

    D. The Only Potential Dispute Is Whether the Earlier Invention by Broadvision Satisfies the Reduction to Practice Requirement Necessary to Qualify as Statutory Prior Art under 35 U.S.C. § 102(g)(2) .............................. 10

V. CONCLUSION ................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Cases**

*In re Katz*,
   687 F.2d 450 (CCPA 1982) .................................................................................. 10

*Invitrogen Corp. v. Clontech Labs, Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005) ............................................................................... 2

*Price v. Symsek*,
   988 F.2d 1187 (Fed. Cir. 1993) ............................................................................... 2

*Roberts v. Sears, Roebuck & Co.*,
   671 F. Supp. 671 (N.D. Ill. 1987) .......................................................................... 10

*Sandt Tech. Ltd. v. Resco Metal and Plastics Corp.*,
   264 F.3d 1344 (Fed. Cir. 2001) ............................................................................... 9

*Singh v. Brake*,
   317 F.3d 1334 (Fed. Cir. 2003) ............................................................................... 2

*Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*,
   872 F.2d 978 (Fed. Cir. 1989) ............................................................................... 10

**Statutes**

35 U.S.C. § 102(e) ................................................................................................. 3, 11

35 U.S.C. § 102(g)(2) ................................................................................................ 10

**Rules**

Fed. R. Civ. P. 56(d) ................................................................................................. 11

MARITZ'S RESPONSE TO STATEMENT OF DISPUTED FACTS IN RESPONSE TO
MARITZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY

## I. INTRODUCTION

1. Pursuant to this Court's Memorandum Order on summary judgment procedure, Maritz submits this response to Affinion's counter-statement of disputed facts.

2. Maritz submitted a Statement of Uncontroverted Facts in support of its motion for summary judgment of non-infringement. Notably, Affinion did not directly dispute any of these stated facts.

3. Instead, in its counter-statement, Affinion alleges that disputes of fact exist with respect to three aspects of Maritz's Motion for Summary Judgment. First, Affinion alleges there is a factual dispute as to whether the '887 patent is prior art. Second, Affinion insists that there are three disputes of fact regarding what the '887 patent would have disclosed to a person of ordinary skill in the art. Lastly, Affinion asserts that similar issues of fact exist regarding the Broadvision invention, as well as whether it qualifies as anticipating prior art.

4. Affinion's three purported factual disputes as to what the '887 patent discloses are legal disputes relating to claim construction. As such, they form no impediment to summary judgment.

## II. NO MATERIAL FACTUAL DISPUTE EXISTS AS TO WHETHER THE '887 PATENT IS STATUTORY PRIOR ART

1. As Affinion recognizes, it carries the burden of producing evidence of a date of invention prior to the filing date of the '887 patent. D.I. 181 at 2, ¶3.

2. It is well established that, when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that

1

testimony. *Singh v. Brake*, 317 F.3d 1334, 1340-41 (Fed. Cir. 2003); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993) ("[a]n inventor's testimony, standing alone, is insufficient to prove conception - some form of corroboration must be shown"); *Invitrogen Corp. v. Clontech Labs, Inc.*, 429 F.3d 1052 (Fed. Cir. 2005) ("Indeed, because of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate an inventor's testimony").

3. Affinion alleges that the only named inventor of the '412 patent, Mr. Storey, conceived of his invention in June 1995. D.I. 181 at 2, ¶4. In support, Affinion cites only to Mr. Storey's testimony. *Id.*

4. Affinion also alleges, without any evidentiary support, that Mr. Storey diligently reduced his invention to practice during the summer and fall of 1995. D.I. 181 at 3, ¶5.

5. Affinion submits no evidence to corroborate Mr. Storey's conception testimony. The earliest documents referenced by Affinion are flow charts allegedly prepared by Mr. Storey in September 1995. *Id.*

6. Mr. Storey's uncorroborated testimony is insufficient, as a matter of law, to support a conception date prior to August 29, 1995. *See Price*, 988 F.2d at 1194.

### III. THERE ARE NO MATERIAL FACTUAL DISPUTES AS TO THE DISCLOSURE OF THE '887 PATENT

7. Affinion does not dispute that the '887 patent discloses a points-based frequent buyer program that rewards users with points for making purchases through the system.[1] D.I. 158, Ex. A at ¶¶24-25, 31; D.I. 181 at 3, ¶2.

---

[1] Affinion's only dispute here is that the '887 patent "does not *claim* any invention relating to the use of points-based frequent buyer programs." D.I. 181 at 3, ¶2 (emphasis

2

8.  Affinion does not dispute that the '887 patent discloses communications via the Internet that allow the user to provide and receive information to and from the website. *See* D.I. 158 at 8-9, Ex. A at ¶¶ 26-27.

9.  Affinion only disputes whether three alleged limitations of Claim 10 of the '412 patent are disclosed in the '887 patent: (1) "redeemable award;" (2) a program homepage; and (3) the ability of users to initiate a process to receive a redeemable award. *See* D.I. 181 at 4-8.

### A. Affinion's Argument Regarding Whether the '887 Patent Discloses a "Redeemable Award" is a Legal Dispute Relating to Claim Construction, Not a Disputed Issue of Fact

10. Affinion does not dispute that the '887 patent teaches the ability to redeem points "at various levels to obtain actual price discounts." *Id.* at 5, ¶6.

11. "Redeemable award" is one of the disputed terms that are addressed in the *Markman* briefs. D.I. 139, D.I. 151

12. Affinion states that, "[t]he parties did not dispute during the *Markman* briefing process that a redeemable award was properly defined as 'a product or service that can be obtained as a prize or award in exchange for award points.'" D.I. 181 at 4, ¶5.

13. Though the parties did not dispute this definition, Maritz did dispute Affinion's effort to further limit this claim language to *exclude* products or services obtained in exchange for award points if the mechanism by which redemption was accomplished was a price discount toward the product or service. D.I. 151, Ex. 5. As

---

added). But whether the '887 patent claims something disclosed in the specification is irrelevant to the inquiry, as Section 102(e) requires only that the invention of the '412 patent be "<u>described</u> in ... a patent granted on an application for patent by another filed in the United States before the invention by the applicant ..."

3

Maritz explained in its *Markman* briefing, there is no support in the '412 patent for this odd, exclusionary interpretation of "redeemable award." D.I. 151 at 29.

14.  Essentially, Affinion argues that the '887 patent does not disclose a redeemable award because of the specific award redemption process disclosed in the '887 patent. D.I. at 4-5. Neither the claim language nor the parties agreed-upon interpretation requires any particular process for exchanging points for a product or service. The only support Affinion submits in support of its peculiar limitation is the conclusory testimony of its retained experts. For example, Affinion cites to Mr. Petersen's testimony that there exists "an extreme difference" between the '887 patent's disclosure and his idea of what constitutes a "redeemable award." D.I. 181 at 5, ¶7. Affinion offers no evidence—or even an explanation of this purported difference—in support of its experts' conclusions.

15.  Affinion's argument is premised on a validity-driven claim construction of "redeemable award" that excludes products that can be obtained in exchange for points via a discount. *Id.* This is a legal dispute, not a factual dispute. There is no genuine dispute that the '887 patent discloses exchanging points for products or services.

16.  If the term "redeemable award" is properly interpreted not to exclude products or services obtained in exchange for points via the specific mechanism of a discount, there is no dispute that the '887 patent discloses the redemption of points for a "redeemable award."

**B.  There Is No Dispute That The '887 Patent Discloses A Program Homepage**

17.  Affinion's proposed construction of the term "on-line incentive program" is "a program that uses the award of points that are redeemable for awards to incentivize

4

certain behaviors and which operates a program webpage that permits users to interact with the incentive program on-line."[2] D.I. 139 at 5.

18. Affinion has not defined the phrase "program webpage[3] that permits users to interact with the incentive program on-line."

19. Instead, Affinion has only stated what does not qualify as a program homepage. For example, according to Affinion, the "program homepage" is not the "product homepage" or "award homepage."

20. The '412 Patent describes the "program homepage" as "the main internet address for the incentive program system." Col. 4, ll. 2-5 (emphasis added).

21. Affinion does not dispute that the '887 patent discloses Internet webpages for interactive communications with users. See D.I. 158, Ex. A at ¶¶ 26, 27; D.I. 181 at 6, ¶ 11.

22. Instead, Affinion attempts to minimize the disclosure of the interactive Internet webpages in the '887 patent by arguing that these webpages "are not tied to the incentives aspect of the feature at all, much less to the operation of a points-based incentive program." Id. at 6-7, ¶ 13.

---

[2] As stated in Maritz's Answering *Markman* Brief and its Statement of Facts, Maritz believes that Affinion's interpretation of "on-line incentive program" improperly renders the term "on-line interactive communications" in the second step of Claim 10 superfluous. D.I. 151 at 19; D.I. 158, Ex. A at ¶ 29.

[3] Affinion repeatedly refers to a both "program homepage" and a "program webpage" in its Statement of Disputed Facts. See D.I. 181 at 6, ¶¶ 10-12. Affinion has provided no specific details as to what it means by these terms or whether they are interchangeable. The only position Affinion has taken to date is that Maritz's systems satisfy this limitation and the prior art does not. Affinion cannot avoid summary judgment with such calculated ambiguity, especially as to details relating to the heart of the alleged novelty of the claimed invention.

23. Affinion does not dispute that the '887 patent discloses a system for purchasing products that includes an incentives subsystem which implements, among other things, a point-based frequent buyer program. *See* D.I. 158 Ex. A, ¶¶ 12-14, 24-25.

24. It is indisputable that the "incentive subsystem" disclosed in the '887 patent is part of the overall purchasing system disclosed in the '887 patent. D.I. 158, Ex. B at Fig. 5 (160); Fig. 7 (160), Col. 7:19-23.

25. It further cannot be disputed that the '887 patent discloses that a user, through an Internet webpage, may interact with the various aspects of the system, including the "incentives subsystem (160)." *Id.* at Col. 12:1-9, 34-37; Figs. 2, 5.

26. Though the '887 patent does not use the exact phrase "program homepage," it is inherent that any Internet-based system that uses web pages to communicate with users would have a program homepage or main Internet address. Ex. S.

27. There is no dispute that the '887 patent discloses a program that uses the award of points that are redeemable for awards to incentivize certain behaviors and which operates a program webpage that permits users to interact with the incentive program on-line.

**C. There Is No Dispute That the '887 Patent Discloses A Process For Redeeming Points**

28. Affinion does not dispute that the '887 patent discloses a point-based frequent buyer program wherein users can "redeem points at various levels to obtain actual price discounts" on future product purchases. *See* D.I. 158, Ex. A at ¶ 25; D.I. 181

at 5, ¶6.[4] Maritz's expert explained in detail the '887 patent's disclosure of this fourth step of claim 10. Ex. S, Keller Dep. at 113:12-125:12.

29. The only mechanism disclosed by the '887 patent through which users could purchase products was a "computer driven network capable of providing communications between the supplier and at least one customer site associated with each customer." D.I. 158, Ex. A at ¶12.

30. Because points could be redeemed for actual price discounts on future purchases, and such purchases could only be made through the Internet[5] purchasing system disclosed in the '887 patent, it is inherent that the only way redemption of points could be made was through that Internet system.

## IV. THERE IS NO DISPUTE THE BROADVISION SYSTEM WAS CONCEIVED BEFORE THE FILING DATE OF THE '412 PATENT

### A. The Broadvision Inventors Conceived of an Internet Based Frequent Buyer Program   REDACTED

1. Affinion does not dispute that,                    , the Broadvision inventors

**REDACTED**   D.I. 158, Ex. A at

¶31.

---

[4] Though Maritz unintentionally misquoted the language of the '887 patent in Maritz's Statement of Disputed Fact No. 25 (see D.I. at 3, n. 1), Affinion does not dispute that the '887 patent disclosed the use of points to receive discounted products or services.

[5] Though the '887 patent disclosed several ways of implementing the system disclosed therein, it is undisputed that one of those ways was through the Internet. See D.I. 158, Ex. A at ¶26.

7

2. Affinion does not dispute that, REDACTED , the Broadvision inventors

D.I. 158.

3. Affinion does not dispute that, REDACTED , the Broadvision inventors

D.I. 158.

4. Affinion does not dispute that, REDACTED , the Broadvision inventors

D.I. 158 at 16.

5. Affinion does not dispute that, REDACTED , the inventors of the Broadvision system

D.I. 158 at 17.

6. Affinion does not dispute that, REDACTED , the inventors of the Broadvision system

D.I. 158 at 16. *See also* D.I. 158, Ex. E at 2-3 and Ex. G. at 25.

Affinion does not dispute that, REDACTED

D.I. 158, Ex. A at ¶50.

7. Affinion does not dispute that, REDACTED

D.I. 158, Ex. A at ¶50.

B.  **As Is True of Their Arguments Concerning the '887 Patent, Affinion's "Program Homepage," "Redeemable Award," and "Permitting a User..."Arguments Are Issues of Law, Not Issues of Fact**

8.  Affinion repeats its "program homepage," "redeemable award," and "permitting a user..." arguments discussed above with respect to the system conceived by the Broadvision inventors. D.I. 181 at 12-13.

9.  As discussed above with respect to the '887 patent, Affinion's arguments are legal disputes, not factual disputes.

10. If the Court properly interprets these terms as discussed above, there is no dispute that the Broadvision inventors         **REDACTED**
See D.I. 158 at 11-18.

C.  **There Is No Dispute That the Broadvision Inventors Did Not Abandon, Suppress, or Conceal the Broadvision System**

11. The Federal Circuit has made clear that "an inventor 'may seek to avoid a determination of abandonment by showing that he or she marketed or sold a commercial embodiment of the invention or described the invention in a publicly disseminated document." *Sandt Tech. Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1353 (Fed. Cir. 2001).

12. There is no dispute that the Broadvision system,                **REDACTED**

D.I. 158, Ex. A at ¶40; Ex. L, M, N, O.[6]

---

[6] Affinion attempts to dispute this fact by attacking *one* of the documents, a June 1995 letter addressed to Ameritech by Broadvision, *See* D.I. 181 at 10, ¶9. Affinion does not, however, dispute any of the other marketing materials cited by Maritz. *See id.*

9

13.     There is no dispute that the inventors of the Broadvision system filed the application which led to the issuance of the '887 patent on August 29, 1995. D.I. 158, Ex. A at ¶ 10.

   D.  **The Only Potential Dispute Is Whether the Earlier Invention by Broadvision Satisfies the Reduction to Practice Requirement Necessary to Qualify as Statutory Prior Art under 35 U.S.C. § 102(g)(2).**

14.     As discussed above, there is no dispute that the Broadvision inventors REDACTED

D.I. 158, Ex. A at ¶ 50. Affinion disputes whether  REDACTED

qualifies as an actual reduction to practice.[7] D.I. 181 at 8-11. Maritz acknowledges that there appears to be factual dispute between the parties relating to the limited issue of whether REDACTED

---

[7] Affinion asserts that the August 29, 1995 patent application filing by the Broadvision inventors cannot constitute a "reduction to practice" under 35 U.S.C. § 102(g)(2). D.I. 181 at 11-12. Affinion cites *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 983 (Fed. Cir. 1989). This case, however, was decided about 10 years before 35 U.S.C. § 102(g)(2) was enacted in 1999. The *Sun Studs* court apparently limited § 102(g)'s effect to interferences. *Id.* at 983 ("[b]oth sides appear to have confused interference practice under § 102(g) with prior art status under § 102(e)"). The 1999 revision that divided § 102(g) into two subsections made clear that § 102(g) applies to both interferences and as a separate prior art category. The plain language of § 102(g)(2) does not require an actual reduction to practice. Courts that have applied § 102(g) as a separate prior art category have found that either constructive or actual reduction to practice is sufficient. *In re Katz*, 687 F.2d 450, 454 (CCPA 1982); *Roberts v. Sears, Roebuck & Co.*, 671 F. Supp. 671 (N.D. Ill. 1987) (rejecting plaintiff's argument that constructive reduction cannot apply to the patentability use of § 102(g), "given the numerous cases in which constructive reduction was applied where patentability was at issue"). Maritz suggests that this line of authority is the better interpretation of § 102(g)(2). If the court determines that Broadvision's August 29, 1995 constructive reduction to practice is legally sufficient under 35 U.S.C. § 102(g)(2), then there is no genuine issue of material fact as to whether Broadvision's activities qualify as statutory prior art. If so, summary judgment of invalidity of claims 10, 27, and 36 is justified under § 102(g)(2) in addition to § 102(e).

**REDACTED**

As discussed above, however, there is no genuine dispute fact that Broadvision's system, **REDACTED** constructively reduced to practice on August 29, 1995. If trial is necessary, Maritz will present the jury with evidence relating to Broadvision's system that was developed prior to the August 29, 1995 filing date of the '887 patent to determine whether the factual requisites of actual reduction to practice were satisfied.

## V.  CONCLUSION

No genuine factual dispute exists as to whether the '887 patent is prior art under 35 U.S.C. § 102(e) and discloses each and every element of claims 10, 27, and 36 of the '412 patent. Should the Court adopt Affinion's proposed claim construction, Maritz requests the Court enter summary judgment, finding these claims anticipated by the '887 patent. Because there are no genuine issues of material fact regarding **REDACTED** which, if reduced to practice, would have anticipated claims 10, 27, and 36 of the '412 patent under Affinion's claim construction, Maritz also requests the Court to enter an order under Fed. R. Civ. P. 56(d) specifying the facts that appear without substantial controversy relating to **REDACTED**

11

<table>
<tr><td>

July 14, 2006

**Redacted Version**
**Filed 7/25/06**

</td><td>

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ

*/s/ Patricia S. Rogowski/*

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
Michael J. Hartley
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Attorneys for Maritz Inc.

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I, hereby certify that on **July 14, 2006**, I electronically filed **MARITZ'S RESPONSE TO AFFIONION'S STATEMENT OF DISPUTED FACTS IN RESPONSE TO MARTIZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF THE '412 PATENT UNDER 35 U.S.C. §§ 102(e) AND (g)** with the Court Clerk using CM/ECF which will send notification of such filing(s) to Jack B. Blumenfeld and Maryellen Noreika.

I hereby further certify that on July 14, 2006, I have also served this document on the attorneys of record at the following addresses as indicated:

**Via Hand Delivery**
Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-11347

**Via Federal Express**
Steven Lieberman
Sharon L. Davis
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

**Redacted Version**
Filed 7/25/06

Patricia Smink Rogowski (#2632)