A. KELLER

## U.S. DISTRICT COURT
## FOURTH DISTRICT OF DELAWARE

AFFINION NET PATENTS, INC.,          )
                                     )
    Plaintiff,                       )
                                     ) Cause No.
vs.                                  ) 04-360-JJF
                                     )
MARITZ, INC.,                        )
                                     )
    Defendant.                       )

VIDEO DEPOSITION OF DR. ARTHUR KELLER
Taken on behalf of the Plaintiff
July 7, 2006

Sheryl A. Pautler, CCR 871

A. KELLER

**Page 2**

```
 1  QUESTIONS BY:                    PAGE NO.
 2  Ms. Davis                          6
 3
 4           INDEX OF EXHIBITS
 5  PLAINTIFF'S                     PAGE MKD.
 6  271    Expert report.              7
 7  272    Expert report.              8
 8  273    Rebuttal expert report.     8
 9  274    Patent document.           29
10  275    Book of awards.           138
11  276    The Quinn article.        182
12
13  (Whereupon the exhibits were attached to the original and
    copies.)
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1              U.S. DISTRICT COURT
                FOURTH DISTRICT OF DELAWARE
 2
    AFFINION NET PATENTS, INC.,      )
 3                                   )
       Plaintiff,         .          )
 4                                   ) Cause No.
    vs.                              ) 04-360-JJF
 5                                   )
    MARITZ, INC.,            )       )
 6                           )       )
       Defendant.           )        )
 7
 8      DEPOSITION OF WITNESS, DR. ARTHUR KELLER,
 9  produced, sworn, and examined on the 7th day of July, 2006,
10  between the hours of nine o'clock in the forenoon and seven
11  o'clock in the afternoon of that day, at Senniger Powers,
12  One Metropolitan Square, St. Louis, Missouri, before SHERYL
13  A. PAULTER, a Notary Public and Certified Court Reporter
14  within and for the State of Missouri, in a certain cause
15  now pending before the U.S. District Court, Fourth District
16  of Delaware, wherein AFFINION NET PATENTS, INC. is the
17  Plaintiff, and MARITZ, INC. is the Defendant.
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1           A P P E A R A N C E S
 2  For the Plaintiff:
 3     Ms. Sharon Davis
       Rothwell, Figg, Ernst & Manbeck, P.C.
 4     1425 K Street, NW
       Suite 800
 5     Washington, D.C.  20005
       202-783-6040
 6
 7  For the Defendant:
 8     Mr. Michael Hartley
       Mr. Marc W. Vander Tuig
 9     Senniger Powers
       One Metropolitan Square
10     16th Floor
       St. Louis, Missouri  63102
11     314-231-5400
12  The Video Technician:
13
       Mr. John Niehaus
14     Midwest Litigation Services
       711 North Eleventh Street
15     St. Louis, Missouri  63101
       314-644-2191
16
17  The Court Reporter:
18     Ms. Sheryl Pautler
       Midwest Litigation Services
19     711 North Eleventh Street
       St. Louis, Missouri  63101
20     314-644-2191
21
22
23
24
25
```

**Page 5**

```
 1       IT IS HEREBY STIPULATED AND AGREED, by and
 2  between counsel for Plaintiff and counsel for Defendant,
 3  that the deposition of DR. ARTHUR KELLER may be taken in
 4  shorthand by Sheryl A. Pautler, a notary public and
 5  shorthand reporter, and afterwards transcribed into
 6  typewriting; and the signature of the witness is expressly
 7  reserved.
 8              * * * * *
 9           ARTHUR KELLER,
10  of lawful age, being produced, sworn and examined on
11  behalf of the Plaintiff, deposes and says:
12       THE VIDEO TECHNICIAN:  We're on the record.
13  Today's date is July 7, 2006 and the time is 9:27 a.m.
14  This is the videotaped deposition of Dr. Arthur Keller in
15  the matter of Affinion Net Patents, Inc. versus Maritz,
16  Inc.
17       This deposition is being held at Senniger
18  Powers in St. Louis, Missouri.  The reporter's name is
19  Sheryl Pautler.  My name is John Neihaus.  Will counsel
20  please identify themselves for the record.
21       MS. DAVIS:  Sharon Davis from Rothwell, Figg,
22  Ernst & Manbeck for Plaintiff Affinion Net Patents.
23       MR. HARTLEY:  Mike Hartley, Senniger Powers
24  here on behalf of Defendant Maritz.
25       MR. VANDER TUIG:  Marc Vander Tuig also from
```

2  (Pages 2 to 5)

82

1    On Page 13 and 14 of your report, you compared
2 the elements of claim --
3        A. Which report are you referring to?
4        Q. Of your 272.
5        A. Thank you. Because we were on 273 just a
6 moment ago.
7        Q. 272. You compared the elements of claim 10 of
8 the '412 patent to the disclosure of the '887 patent in
9 order to provide your opinion that the '887 patent
10 anticipated claim 10 of the '412 patent under certain claim
11 constructions, correct?
12       A. That was a long question. Could you repeat
13 it, please? Could you read it back?
14       (Whereupon the reporter read back the previous
15 question.)
16       A. Yes, I believe that's correct.
17       Q. (By Ms. Davis) And when you were doing that
18 comparison, did you include as an element of claim 10 of
19 the '412 patent the use of a Program Homepage?
20       A. My understanding of the idea of a Program
21 Homepage is, as I went through in my longer discourse, that
22 the notion of a Program Homepage is essentially covered by
23 the notion of there being at least one webpage accessible
24 in Step 2 and at least -- and that -- that reference to
25 that webpage in Step 3 and implicit reference to that

83

1 webpage in Step 4.
2        And that the notion of a Program Homepage
3 beyond those references to Internet webpage and a general
4 understanding of how one of ordinary skill in the art at
5 the time the patent was filed about how the web works, how
6 the -- how the Internet -- how webpages are put -- how
7 websites are put together, how the Internet works, would
8 render the notion of a program home -- explicit requirement
9 for the Program Homepage superfluous.
10       THE VIDEO TECHNICIAN: One moment, please. I
11 have to switch tapes. We're going off the record at
12 12:40 p.m.
13       (Whereupon there was a lunch break.)
14       THE VIDEO TECHNICIAN: We're back on the
15 record on Tape 4 at 1:40 p.m.
16       Q. (By Ms. Davis) Dr. Keller, it's your
17 interpretation of the claim 10 of the '412 patent that
18 claim 10 of the '412 patent requires that points be awarded
19 for purchase of products on-line?
20       A. It's my interpretation of Step 1 of claim 10
21 of the '412 patent that the step of implementing an on-line
22 incentive program that issues points to users means that
23 the on-line incentive program includes an on-line product
24 catalog in which users -- in the context of this patent,
25 users purchase products from that on-line product catalog

84

1 and earn points for making those purchases.
2        Q. And is it your opinion that the '887 patent,
3 which you have here if you want to refer to it, that the
4 '887 patent discloses the award of points for on-line
5 product purchases?
6        A. The '887 patent has a frequent buyer's program
7 which is specifically disclosed in, among other places,
8 Column 7, Lines 19 through 23, as well as I believe it's
9 Column 27, Lines approximately 60 through Column 28, Line
10 approximately 17. And that as part of the disclosure in
11 '887 is either explicit or implicit -- or inherent in the
12 disclosure in '887, is the -- has an on-line product
13 catalog from which users may make purchases and earn award
14 points.
15       Q. You said it was either explicit or inherent.
16 Which one is it?
17       MR. HARTLEY: Object to the form of the
18 question.
19       Q. (By Ms. Davis) What is your opinion? Is it
20 your opinion it's explicitly disclosed in the '887 patent
21 or not?
22       A. My opinion is that aspects of that are -- some
23 aspects of that are disclosed explicitly in the '887 patent
24 and some aspects are inherent in the '887 patent, but that
25 the totality of what is meant by implementing an on-line

85

1 incentive program that issues award points to users, and in
2 particular we're now talking about the idea about being
3 able to purchase from an on-line product catalog where a
4 user earns points for making those purchases, the totality
5 of that is in combination -- has a combination of explicit
6 specifications in the '887 patent and implicit --
7 requirements that are inherent in the implementation of the
8 '887 patent.
9        Q. The particular aspect of points being awarded
10 for on-line purchases, is that explicit or inherent?
11       A. You're asking about points being awarded or
12 issued? I'm just trying to understand the exact phrase of
13 your question.
14       Q. I believe that, and correct me if I'm wrong,
15 but as I understand your interpretation of tha -- of claim
16 10 of the '412 patent, it requires that the points must be
17 issued to users for making purchases from an on-line
18 product catalog. That's on Page 11 of your report.
19       A. Yes.
20       Q. So my question is, what I'm asking about
21 specifically is the fact that points are issued for making
22 purchases from an on-line product catalog, that aspect.
23       A. Okay. The issuance of points to users for
24 making purchases from an on-line product catalog involves
25 two aspects. The first of these aspects is the three-step

22 (Pages 82 to 85)

A. KELLER

110

1  disclosure of permitting said user to initiate a process to
2  receive said at least one redeemable award?
3      A.  I'm happy to do -- to call out whatever
4  support there is for that step, the fourth step of claim 10
5  of '887, in the context of a detailed analysis of the
6  patent and I'm happy to do that. It's up to you how you
7  spend the remaining three hours of the deposition.
8      Q.  Answer my question -- can you answer my
9  question, and you can read whatever you want, but I don't
10  want to hear -- what I want to hear is the columns and line
11  numbers that you contend contain any explicit disclosure
12  relating to permitting said user to initiate a process to
13  redeem at least one redeemable award.
14      A.  And I would be happy to go identify those
15  columns and lines as part of an analysis of what's going on
16  and that short of doing that analysis, I -- doing the
17  analysis of that process, which we could do interactively
18  and you would get more information, would basically be the
19  amount of time I would need to figure out the support for
20  the anticipation of Step 4 of claim 10 of the '412 patent,
21  whether that was anticipated by the '412 patent.
22      The process that I would go through would be
23  the same. It wouldn't be simply reading the patent
24  sequentially. Once again, I offer you the opportunity to
25  hear a complete description of how it works or we can move

111

1  on.
2      Q.  All right. Since you seem pretty insistent,
3  why don't you give me your complete description limited to
4  the permitting said user to initiate a process to receive
5  said at least one redeemable award and providing specific
6  citations to the '887 patent for anything you contend is an
7  explicit disclosure of that aspect of Step 4.
8      A.  I have -- I would go through an explicit
9  description of how the '887 patent goes through the process
10  of using the mechanisms described in the process for the --
11  for the process of redeeming an award of that -- the
12  process of redeeming an award.
13      I'm not sure that I can do so limited to the
14  step that you've identified of permitting said user to
15  initiate a process. I can describe the process in detail,
16  but I'm not sure I could do so limiting to your -- to just
17  that step.
18      Q.  Well, you did look at that step and determine
19  whether or not the '887 patent disclosed that step in
20  giving your invalidity analysis, correct?
21      A.  What I did was understand the process of how
22  the '887 patent works. And in the context of understanding
23  the process of how the '887 patent works and how the system
24  described in the '887 patent works, I understood the -- how
25  the '887 patent performs the exact detailed steps of that

112

1  are included in permitting said user to initiate a process,
2  etc.
3      However, I'd have to go and describe that
4  process of how the '887 patent works. Limiting it to this
5  particular step when there's -- when the '887 patent
6  doesn't -- doesn't have this step as a claim element, as
7  far as I understand, it wasn't -- the '887 patent wasn't
8  designed so that the '412 -- so that -- the '887 patent
9  wasn't designed with the claim elements of the '412 in
10  mind.
11      The '887 was designed prior to the '412 patent
12  being filed. This patent was filed prior to the '412 --
13  the parent application that resulted in the '412 patent.
14  And as a result of that, if I describe the process, I need
15  to describe the process, the process of the '887 patent.
16      I'm not going to -- I can't describe the
17  process of the '887 patent that is limited to the small
18  part of the -- limited to the small part of the Step 4 of
19  claim 10 of the '412 patent because it was not -- the
20  algorithms were not designed in a way that they would
21  correspond step by step to the '412 patent.
22      Q.  Tell me what your basis is for concluding that
23  the '887 patent discloses permitting said user to initiate
24  a process to receive at least one redeemable award.
25      A.  Could you repeat the question, please.

113

1      (Whereupon the reporter read back the previous
2  question.)
3      A.  I'd be happy to do so.
4      Q.  (By Ms. Davis) Go ahead.
5      A.  Please let me finish my sentence. I'd be
6  happy to do so and it would require a description -- a
7  discourse on how the '887 patent system works insofar --
8  including in that description an analysis of Step 4 of the
9  claim 10 of the '412 patent. And I just want to make sure
10  before I go into this discourse, that that is what you want
11  me to do.
12      Q.  I want you to tell me your basis for your
13  expert opinion as to Step 4. However you want to do that,
14  you do that and the judge and jury will decide if you were
15  being reasonably responsive to my question or not. So you
16  go ahead.
17      A.  Okay. Great. On the bottom of 27 through the
18  top of 28, it says that another type of in-store incentive
19  is a frequent buyer points program. Here, the in-store
20  incentive takes the form of points issued to a customer's
21  frequent flyer -- frequent buyer account -- sorry -- rather
22  than an instantaneous price discount. The customer may
23  redeem points at various levels to obtain price discounts.
24      We talked earlier about the idea that these
25  price discounts includes the form of discounts on Column 28

29 (Pages 110 to 113)

A. KELLER

114

1  on Line 15 and below. An example of such a discount is the
2  opportunity to get a product free.
3      On column -- I found it earlier. Excuse me.
4  On Column 20, Lines 31 and below, it says that incentive
5  programs might include in-store public price discounts,
6  coupon-based price discounts, point-based frequent buyer
7  discounts, and quantity discount card. Wherein particular
8  for point-based frequent buyer discounts and quantity-based
9  discount cards, we've already talked about how discounts
10  can also include the award of free products.
11      We see that there's an analysis on -- starting
12  on page -- let's see. It says if you look at the next
13  column, column -- sorry -- next line, Line 34 of Column 20,
14  the function of these Incentive Programs 250 invention will
15  first be described with reference to Figures 11 to 13 and
16  in the context of in-store price discounts, which are the
17  most common type of incentive.
18      So and, thereafter, coupon-based price
19  incentive will be discussed as an extension to the general
20  framework. So they're using in-store price discounts as a
21  framework for this and coupon-based price discounts are
22  used as part -- are built using the framework of coupons.
23  Then we have frequent buyer discounts and quantity discount
24  cards are discussed.
25      So in order to understand how these various

115

1  incentive programs work, somebody needs to understand how
2  in-store price discounts work because that's the -- the
3  implementation of in-store price discounts is the basis for
4  implementing coupon-based price incentives. So in-store
5  price discounts are those where a customer need not present
6  a coupon.
7      So you see that they're using the mechanism of
8  coupons as a general, if you will, rule based system for
9  how price discounting occurs.
10      So in-store price discounts are those where a
11  customer need not present a coupon to obtain the price
12  discount and which is contingent only upon the customer
13  being in the store while the incentive is offered. And
14  these are analogous to publicly advertised weekly sales in
15  the physical store.
16      The next description talks about in-store --
17  that from a customer's prospective, the in-store sales are
18  couponless, but from the architecture's prospective where
19  the '887 patent uses coupons as if they were issued to the
20  user when they're entered as a mechanism; in other words,
21  these coupons are in some sense rules that are available
22  that the user can apply.
23      Below, it says on the bottom page -- Column
24  20, Line 65, 64, it says: In-store price discounts are
25  embodied in the incentive program. So as an incentive

116

1  program -- sorry. In-store price discounts are embodied in
2  Incentive Programs 250 created by Incentive Subsystem 160
3  as shown in Figure 10. Each incentive is expressed in the
4  pricing rule of the form.
5      Now, slightly above that, you see that we're
6  explaining this in the concept of -- if you look at Line
7  59, we're explaining this in the concept of in-store coupon
8  for the in-store price discount because it uses -- because
9  it's an incentive framework. So that's the structure that
10  they're creating and using this coupon as a metaphor for
11  this rule-based environment.
12      The -- on Column 21, we have a pricing rule on
13  the top and application count. As you notice below the
14  display, it says: Where application count is number of
15  times that the discount may be applied.
16      So as you can see, it's a pricing rule. The
17  rule has the application count in it. The application
18  count says that maybe the first ten people who walk into a
19  store can get this, maybe the first hundred who walk into a
20  store can get this. This is comparable in an incentive
21  system of the idea that, for example, an airline may say
22  that we only give so many seats on this flight for award
23  travel or a store may give away a certain number of
24  products because -- for free. And after that, that
25  award -- the award of that product is no longer available.

117

1      Then we have a bouillon of valid with others.
2  And that indicates whether or not the incentive only
3  applied to items already subject to a pricing change.
4      And the third thing is this bouillon, this
5  rule, BV adjustment and predicate rule, and below you can
6  see there's more detail of the adjustment and predicate
7  rule. So the adjustment and predicate rule, there is an
8  adjustment, and the adjustment is the change that is being
9  made to the price of an item. And the predicate list is a
10  list of the predicates that would be applied to constrain
11  when this adjustment was valid.
12      So we have a notion that the pricing rules
13  here as described in this framework for price adjustments
14  are, as you see where it says adjustment segment on Line
15  30 -- sorry -- 29 of Column 21, it says an adjustment
16  segment describes how the price of an item is affected if
17  all predicate segments described below are matched. Those
18  are the predicate segments that are the second concept of
19  the adjustment and predicate structure in the second
20  display of Column 21.
21      So the adjustment may either be a simple
22  adjustment or a quantity adjustment. So a simple
23  adjustment can be fixed, for example, a sale price is ten,
24  that could also be, for example, you get the item free if
25  you -- if the item is free, then the fixed adjustment would

30  (Pages 114 to 117)

118

1  be zero. So you'd say the fixed price of this would be
2  zero. It could be absolute $10 off, it could be a
3  percentage, 100 percent off, for example. Instead of
4  10 percent off, it could be 100 percent indicating the item
5  zero.
6      Both of those two mechanisms are here to
7  indicate that an award is free rather than just reduced
8  price.
9      A quantity adjustment includes a price-based
10  discounting of simple adjustment, but also allows for
11  quantity-based discounting. So for example, there's the
12  minimum purchase requirement. If you buy two of those, you
13  get one free or whatever within the same transaction.
14      If it's within -- for example, there are some
15  incentive programs that say that you can travel with a
16  companion. An incentive of that nature that says you can
17  travel with a companion, you get a companion award ticket,
18  for example, on certain airlines. To travel with a
19  companion, you use this minimum purchase requirement if you
20  buy one airline ticket, then you get the companion ticket
21  free. And that is incorporated within this framework.
22      And there's also the requirement -- there's
23  the potential that the thing that you discount is less than
24  or equal to value of the item making the minimum purchase
25  requirement. So if you say you get a free item and that

119

1  free item doesn't necessarily have to be the same as the
2  item that you have to purchase in order to get that free
3  item in part of the same transaction, then there's a
4  potential for a price differential. If the item does have
5  to be the same, then obviously it would be -- the lesser
6  would be false because it would have to be specific to the
7  particular item.
8      Then we have predicate segments if you skip to
9  Column 22, Line 9, it says, predicate segments. A
10  Predicate Segment 264 is a specified condition an item must
11  meet to qualify for the adjustment.
12      So if you have an award that says, for
13  example, this -- the examples -- let me go through the
14  details here before I go into how this would fit to awards.
15      The predicate segment has -- it says it
16  contains at least two fields, a type field, it says the
17  type of test, and the condition field indicates the
18  conditions that have to apply for that particular rule.
19      So what's going on is that we have what is
20  referred to as conjunction. We have the and'ing of a
21  series of predicates, all of which must be satisfied in
22  order for this pricing rule to go into effect.
23      So the predicate, there are examples of time
24  of day, of date, day of week, of particular item. And that
25  item may be -- or an item attribute. So the item may, for

120

1  example, be you can get this particular item specifically.
2  Or an item attribute might say that you can buy items of
3  this type.
4      So an example might be that you can reserve --
5  you can basically obtain a specific item, like say -- let's
6  say the award is for a bicycle or you could say -- a
7  specific bicycle and a specific model number and everything
8  detailed specific about that particular product.
9  Alternatively, you could say that in this environment, you
10  could say that this applies to all bicycles that are priced
11  a hundred dollars or less.
12      As you can see, there's an example. Price is
13  another of the predicates.
14      And then we have qualifier segments which are
15  used to identify additional discounts that are applied for
16  other than an item-by-item basis. So the qualifier
17  segments can be used for things such as -- I would expect
18  that the qualifier segments -- there's very little detail
19  about this for the qualifier segments. But the qualifier
20  segments could be used for something like if the person has
21  a hundred points, then they could use this coupon.
22      So then as you can see, we get to coupon-based
23  price discounts and these are going into much more detail
24  about the price discounts than the ones under Roman numeral
25  I, which started on page -- Column 20 of in-store price

121

1  discounts.
2      So you can see that the basis for this
3  framework of rules of price discounts is implicitly -- is
4  explicitly expanded in the patent to refer to coupon-based
5  price discounts. So what we have here is, for example, the
6  addition of -- so coupon price based discount as it says on
7  Column 23, Lines 14 and following are created as a super
8  set of in-store price discounts because we add the
9  additional -- the total number of coupons and starting
10  serial numbers. So you keep track of how many times --
11  whether somebody can do this once or more than once or
12  whatever is in the notion of coupon price based discounts.
13      The notion is that -- we have this notion that
14  users that -- that these particular coupons are not
15  transferrable because you can't copy it, make it available
16  for another user because of tha serial number. And you
17  also have the notion of a digital signature so that you
18  can't amend a coupon and make it different from what it
19  originally did.
20      What we also have is an environment on Column
21  23, Line 58 of a Dashboard Operation. And in this
22  situation, the store management interacts with the
23  Dashboard so here's where they -- the Dashboard is used to
24  establish the nature of these discounts or awards or
25  coupons or whatever.

31 (Pages 118 to 121)

A. KELLER

122

1      And earlier you asked the question of whether
2  we would expect there to be some other system and I said
3  that that was not the case. Well, the fact that we have
4  this Dashboard here makes clear that it's within the system
5  that all of these awards are and there's no need for some
6  other system to calculate the points or whatever.
7      The existence of this Dashboard system means
8  that even the specification of what the awards are and the
9  conditions under which these awards are to be granted are
10 entered through this Dashboard.
11      In Column 27, Lines 22 and beyond, we refer to
12 this notion of a long-lived sales representative. And the
13 idea here is that information from one particular sales
14 session is retained in terms of a subsequent sales session
15 for the same customer. And you notice that there is this
16 notion of retention from session to session.
17      And here, it talks about in Line 44, the
18 subsequent shopping rip. I assume that that's trip. I'm
19 not sure what a rip is. But a subsequent shopping rip,
20 whatever that is, can be initiated by recalling the
21 particular Sales Representative Program Object assigned to
22 the customer.
23      And so what's happening is that when the
24 customer has identified the particular items that the
25 customer wants to obtain and those -- where is that? That

123

1  is -- there's a mention of this on Column 12 where the
2  customer enters an electronic storefront and is presented
3  with an electronic database in connection with in-store
4  sales, then the customer chooses particular products they
5  want.
6      In particular, that's mentioned in -- it is --
7  there's a mention of this in Column 14, Line 39 which is
8  the sales representative object, Column 14, and
9  instantiates the customer -- is instantiated, the customer
10 may collect an item for purchase. This also is the
11 mechanism that is used by -- because this is an integrated
12 system, this is also a way that the user indicates the
13 product -- can select a product that they wish to obtain
14 through an award.
15      And then information on the product database
16 is obtained on Line 60 of Column 14. It says this is done
17 using a call that interrogates the product database for the
18 product data. And so what we're doing is the person is
19 selecting an item. They haven't necessarily decided that
20 they want to purchase this item or analogously want to
21 obtain this item for free. If you look at -- or other
22 discount.
23      If you look at Line 63, I believe it is, the
24 selection of an item for purchase is not a commitment to
25 purchase. And analogously selecting an item for award is

124

1  not a commitment to get that item for an award. It's
2  analogous to a shopping -- shopper placing item in a
3  shopping cart in preparation for purchase. Just as the
4  shopper may elect not to purchase selected item, user
5  interface may communicate to the Sales Representative
6  Program Object that the customer does not wish to purchase
7  the item. That -- purchase the item that is previously
8  been selected. In response to such call, Sales
9  Representative Program Object removes the corresponding
10 entry from the purchase list.
11      Then what happens is the Sales Representative
12 Object validates the applicable coupons against the
13 redemption database and attains the -- attains the --
14 attains the pricing rules for the incentive programs and
15 this information is presented to the user who then has the
16 opportunity to select whether -- the item he wishes to
17 proceed with the transaction or whether -- by selecting the
18 item or deselecting the item.
19      So by virtue of the user proceeding through
20 this process by selecting an item that is available for
21 award and then getting information back saying that that
22 item is available for award through the process of that
23 incentive program calculations, the user is then given a
24 choice as to whether or not the user wishes to obtain this
25 item. The user may proceed with the transaction to obtain

125

1  the item or the user may decide not to proceed with the
2  transaction and attain the item.
3      So the initiation of the process of attaining
4  the item is essentially the process of choosing items so
5  when the user chooses an item that is for which there is an
6  applicable award, that is the user initiating the process
7  to receive that redeemable award. The system comes back
8  and says, yes, you are eligible for the award and here's
9  what it is. You get this item free or here's what the
10 price is for that item. And the user then decides whether
11 or not they wish to follow through on that -- on the
12 receiving of that award.
13      Q.  Are you done?
14      A.  That's sufficient for my purposes.
15      Q.  Is it your opinion that the '887 patent
16 explicitly discloses permitting said user to initiate a
17 process to receive said at least one redeemable award?
18      A.  It is my opinion that the descriptions that
19 I've given you in this last discourse as I've described
20 them, would be understood by one of ordinary skill in the
21 art to -- in the process of selecting the items, in the
22 process that they have an integrated catalog that is used
23 for both product sales and product awards, that -- and the
24 idea that the system on -- allows for frequent buyer
25 accounts that which users obtain points and frequent

32  (Pages 122 to 125)