IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION NET PATENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-360-JJF |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

MARITZ'S RESPONSE TO STATEMENT OF DISPUTED FACTS IN RESPONSE TO
MARITZ'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

        Rudolf E. Hutz (#484)
        Patricia Smink Rogowski (#2632)
        CONNOLLY BOVE LODGE & HUTZ LLP
        The Nemours Building
        1007 Orange Street
        P.O. Box 2207
        Wilmington, DE 19899
        (302) 658-9141

        J. Bennett Clark
        David W. Harlan
        Jennifer E. Hoekel
        Marc W. Vander Tuig
        Michael J. Hartley
        SENNIGER POWERS
        One Metropolitan Square, 16th Floor
        St. Louis, MO 63102
        (314) 231-5400

Dated: July 24, 2006        Attorneys for Maritz Inc.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. NO MATERIAL FACTUAL DISPUTE EXISTS............................................................ 2

    A. Maritz's VAULT System Does Not Award Points to Users for On-line Product Purchases.................................................................................................. 2

    B. Maritz's VAULT and AwardHQ Systems Do Not Award Points Immediately upon Completion of a Qualifying Purchase............................................................. 4

    C. Maritz's AwardHQ System is Not a Frequency Program ........................................ 9

    D. Maritz's Non-Equity Programs that Use the VAULT System Do Not Issue Award Points............................................................................................................ 9

III. AFFINION'S ONLY DISPUTES ARE LEGAL—CLAIM CONSTRUCTION ARGUMENTS THAT CONTRADICT THE *MARKMAN* BRIEFING............................. 9

IV. CONCLUSION............................................................................................................. 12

## MARITZ'S RESPONSE TO STATEMENT OF DISPUTED FACTS IN RESPONSE TO MARITZ'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

### I.   INTRODUCTION

1.   Pursuant to this Court's Memorandum Order on summary judgment procedure, Maritz submits this response to Affinion's counter-statement of disputed facts.

2.   As set forth in Maritz's Opening Brief, if the Court construes the asserted claims of the '412 patent consistently with the description in the '412 patent specification, there exist three different grounds upon which the Court should find Maritz's systems are non-infringing: (1) Maritz's Vault and AwardHQ systems do not award points to users for qualifying on-line purchases of products or services; (2) Maritz's Vault and AwardHQ systems do not immediately issue points that are immediately redeemable upon completion of a qualifying on-line purchase; and (3) Maritz's AwardHQ system is not a frequency program. *See* Opening Brief of Defendant Maritz Inc. in Support of its Motion for Summary Judgment of Non-infringement (D.I. 161) at 1.

3.   In its counter-statement, Affinion alleges that two disputed issues of fact would remain even if the Court construes the asserted claims consistently with Maritz's position. First, Affinion alleges that a factual dispute exists as to whether Maritz's VAULT system satisfies the "on-line incentive program" element even if this claim term is construed to require a frequency program that awards points to users for on-line product purchases. Second, Affinion insists that a material factual dispute exists as to whether Maritz's VAULT and AwardHQ systems issue award points to a user's account immediately upon completion of a qualifying on-line purchase and whether the points are immediately available for redemption.

4.   Affinion's purported disputes, however, are not factual in nature. Indeed, Affinion does not dispute the dispositive facts: (1) Maritz's VAULT and AwardHQ systems do

1

not award points to users for on-line patronage—i.e., on-line purchases made through the program's website; (2) Maritz's VAULT and AwardHQ systems do not issue points to a user's account immediately upon completion of a qualifying on-line purchase and, therefore, the points are not available for immediate redemption.

5. Significantly, Affinion admits that there is no factual dispute about the following: (1) Maritz's AwardHQ system is not a frequency program;[1] (2) Maritz's non-equity programs use the VAULT system, but do not involve the awarding and redeeming of points.[2] Given these uncontroverted facts, the non-infringing nature of AwardHQ and Maritz's non-equity VAULT systems is plain. Summary judgment of non-infringement for these programs is appropriate, apart from the Court's resolution of the other non-infringement grounds.

## II. NO MATERIAL FACTUAL DISPUTE EXISTS

6. Maritz submitted a Statement of Uncontroverted Facts in support of its motion for summary judgment of non-infringement. Notably, Affinion did not directly dispute any of these stated facts. The only remaining disputes concern claim construction, a question of law for the Court to resolve.

### A. Maritz's VAULT System Does Not Award Points to Users for On-line Product Purchases

7. Maritz does not offer products for sale on-line or award users for making purchases through the VAULT system or related websites. *See* D.I. 161 at 6, 13-14 and related exhibits. Affinion does not dispute this fact. D.I. 183 at ¶¶2-7.

---

[1] *See* D.I. 161 at 7, 13.

[2] *See* D.I. 161 at 6, 13.

8.  Instead, Affinion misrepresents Maritz's claim construction position to manufacture an alleged factual dispute. As discussed below in Section III, Affinion's claim construction dispute is inconsistent with the *Markman* briefing and reflects a mischaracterization of Maritz's requested claim construction. But even using this unjustifiably narrow interpretation of Maritz's claim construction, Affinion only musters two citations in support of its allegation that VAULT awards points for on-line purchases. *Id.* at ¶¶5-6.

9.  First, Affinion points to a non-infringement opinion letter written by Maritz's outside counsel.

**REDACTED**

Therefore, these programs issue points for all credit card purchases, regardless of where the card-based purchases are made. Such a program is not a frequency program that awards points to users for on-line product purchases. And it certainly does not constitute a frequency program that awards points to users for on-line product purchases made through the program's website.

10. Many of the programs that utilize the accused VAULT system are not credit card programs. *See e.g.*, D.I. 183 at 3 (Sprint Business Rewards program). Affinion presents no evidence that non-credit card programs award points to users for on-line purchases. *Id.* The only evidence provided by Affinion that is not limited to credit card programs is a draft document authored by a marketing strategist at Maritz. D.I. 183, Exhibit D (Plaintiff's Deposition Exhibit 77).

**REDACTED**

3

**REDACTED**

Because the marketing document (Exhibit D) does not accurately describe the attributes of the accused VAULT system, it cannot support Affinion's assertion that a genuine issue of material fact exists.

### B. Maritz's VAULT and AwardHQ Systems Do Not Award Points Immediately upon Completion of a Qualifying Purchase

11.     Neither Maritz's VAULT system nor AwardHQ system issues points immediately upon completion of a qualifying on-line purchase. *See* D.I. 161 at 6-8, 14-16. Because of this delay, the points associated with these programs are also not available for immediate redemption. *Id.* To avoid the non-infringement impact of these undisputed facts, Affinion again attempts to exploit what it perceives to be an ambiguity in Maritz's proposed claim construction. Maritz interprets the claims to require that award points be issued to the user's account immediately upon completion of a qualifying on-line purchase and that those points be available for immediate redemption. Affinion complains that, "Maritz's proposed claim construction does not provide a measure as to what constitutes 'immediacy.'" D.I. 183 at ¶8.

12.     Maritz's proposed claim construction is unambiguous. "Immediately" is an adverb that means "at once" and modifies when points are issued to a user's account in relation to a qualifying on-line purchase. Ex. P at 709. And "immediate" is an adjective that means "occurring or done at once" and modifies when issued points are available for redemption in relation to a qualifying on-line purchase. *Id.*

4

13.

**REDACTED**

14.     Although Affinion alleges that there is a genuine issue of fact as to whether or not Maritz's VAULT or AwardHQ systems immediately issue points and make them available for redemption, Affinion does not dispute the fact that the accused systems do not issue points and make them redeemable in "real time." But Affinion alleges that "Maritz is improperly attempting to incorporate a limitation of 'real time' computer processing, a limitation not included in Maritz's proposed claim construction." D.I. 183 at ¶13. This is untrue. Although Maritz summarized its claim construction position using "immediately" rather than "real time," Maritz (correctly) used those phrases interchangeably during *Markman* briefing. *See e.g.,* Maritz's D.I. 138 at 14 (pointing out that the inventor, Mr. Storey, distinguished a prior art batch process from the *real-time* operation of his invention, which allowed *immediate* accumulation of award points).

15.     There is no discernable distinction between "real-time" and "immediately." *See* Ex. P at 1193 (defining "real time" as "relating to or denoting a system in which input data is available virtually immediately as feedback to the process from which it is coming"); Ex. Q at 399 ("Real-time operations are those in which the machine's activities match the human perception of time or those in which computer operations proceed at the same rate as a physical or external process"). And Maritz made clear that its proposed construction excluded the batch processing characteristic of Maritz's accused systems. *See* Ex. S, *Markman* Hearing Transcript at 94:18-96:3.

5

16. To support its position, Affinion alleges that Maritz's VAULT system operates in "near real time." *See* D.I. 183 at ¶¶8-14. But *near* real time, by definition, is not real time or immediate. Further, contrary to Affinion's assertions, Maritz's VAULT system does <u>not</u> operate in "near real time." The documents cited by Affinion to support this allegation all relate to the eVAULT system, which was invented but never commercially implemented by Maritz.[3] For example, Affinion again cites to its Exhibit D. As discussed above,

**REDACTED**

Instead, this description and the other evidence cited by Affinion in support of its assertion that the accused VAULT system operates in "near real time" relates only to the non-accused eVAULT system. For instance, the patent application (inaccurately)[4] quoted by Affinion describes eVAULT's operation, <u>not</u> the accused VAULT system. Ex. T, Bushold Dep. at 168:15-170:24. Similarly, the opinion of counsel cited by

---

[3] Affinion is well aware of this fact. Indeed, in March Affinion represented to the Court that, "it now seems undisputed that eVault was never implemented," to justify dropping the '870 and '012 patents and Maritz's related counterclaims from this case. D.I. 101 at 4.

[4] Affinion's quote of the patent application leaves out the numerical references to the figures. The actual quote, including the figure references and surrounding context, reads as follows:
> In one embodiment, the electronic transaction gathering system 104 operates in near real-time by capturing a specific transaction and immediately transmitting the captured transaction to the loyalty database 102. Later, the business rules are applied to the captured transactions to allocate and issue the reward points to the customer 402. The application of the business rules to the captured transactions occurs after a delay selected by the client. In one embodiment, the application occurs on a nightly basis for all the transactions captured during the day. In another embodiment, the application occurs at a selected interval such as once a month for all the transactions captured during the month.

D.I. 183, Ex. F at 6, ¶0053. It is undisputed that the "electronic transaction gathering system 104" describes a feature of eVAULT and was *never implemented* by Maritz. Ex. T at 168:15-169:18.

6

Affinion relates to the never-implemented eVAULT system. D.I. 183, Ex. C at 1; Ex. O at 183:25-189:17; Ex. U (Plaintiff's Deposition Exhibit 79).

17.

**REDACTED**

18.   The only other evidence cited by Affinion refers to redemption processing, i.e., the process of debiting a user's account after he or she completes an award redemption transaction. This evidence provides no insight into whether or not points are issued to the user's account and available for redemption immediately upon completion of a qualifying on-line purchase. *See* D.I. 183 at ¶11. As such, this evidence is irrelevant to the claim requirements at

issue and fails to create a genuine issue of material fact with respect to the non-infringing nature of Maritz's VAULT system under Maritz's proposed claim construction.

19.    Knowing eVAULT was never implemented, Affinion misleadingly cites these eVAULT descriptions to convince the Court there exists a question of fact with regard to Maritz's VAULT system. *See* D.I. 183 at ¶13 (Since batch processing can be done (and is done by Maritz) in 'near real-time'..."). There is no genuine dispute, however, that the batch processing utilized by Maritz's VAULT system is <u>not</u> immediate or even "near real time," as Affinion asserts.

20.    Maritz's AwardHQ system does not immediately issue points to users upon completion of a qualifying on-line purchase. D.I. 161 at 7-8, 14-15. Affinion does not dispute that the AwardHQ system does not award points for purchases of any kind. Further, AwardHQ does not award points immediately after the behavior being incentivized occurs. Affinion provides no evidence to support its assertion that AwardHQ issues points in "near real time." *See* D.I. 183 at ¶9. Affinion's only cited evidence is testimony that generally describes the process of how redemptions occur with AwardHQ, which has no bearing on the timing of point issuance. D.I. 183, Ex. E. Affinion can provide no evidence to dispute the fact that AwardHQ does not satisfy the "immediacy requirement."

21.    Affinion also complains that Maritz only provides evidence from one client— which issued points *quarterly*. D.I. 183 at 12. Yet Affinion, who bears the burden of proof on this issue, presents *no* evidence, anecdotal or otherwise, to conclude that any AwardHQ system satisfies the "immediacy requirement." There is no genuine issue of material fact with respect to non-immediate nature of AwardHQ's processing.

8

### C. Maritz's AwardHQ System is Not a Frequency Program

22. Maritz's AwardHQ system is not a frequency program that awards points to users for on-line product purchases. *See* D.I. 161 at 7-8, 13. Affinion does not dispute this fact. If the Court adopts Maritz's claim construction, summary judgment is appropriate on this issue regardless of the Court's resolution of any of the other issues raised in Affinion's counter-statement.

### D. Maritz's Non-Equity Programs that Use the VAULT System Do Not Issue Award Points

23. Maritz's non-equity programs that use the VAULT system do not involve the award of points and, therefore, cannot infringe any of the asserted claims of the '412 patent. *See* D.I. 161 at 13. Affinion does not dispute this fact. Under either parties' claim construction, summary judgment is appropriate on this issue regardless of the Court's resolution of any of the other issues raised in Affinion's counter-statement.

### III. AFFINION'S ONLY DISPUTES ARE LEGAL—CLAIM CONSTRUCTION ARGUMENTS THAT CONTRADICT THE *MARKMAN* BRIEFING

24. Affinion attempts to avoid summary judgment by misrepresenting Maritz's requested claim interpretations. Specifically, Affinion alleges that Maritz has not requested the Court to require the claimed "on-line incentive program" to award points for on-line product purchases made from the on-line incentive program's website. *See* D.I. 183 at ¶ 3. Affinion also alleges that Maritz did not request the Court to require a specific time limitation with respect to the "immediacy" requirement. *Id.* at ¶¶ 9, 13.[5] Based solely on these alleged ambiguities in Maritz's requested claim construction, Affinion contends there exist genuine issues of material fact, which preclude summary judgment.

---

[5] The meaning of "immediate" is plain and needs no further "measure," as Affinion alleges.

9

25.    Affinion has misrepresented Maritz's proposed claim construction of "on-line incentive program." Maritz summarized its claim construction of "on-line incentive program" during the *Markman* briefing as, "a frequency program that awards points to users for on-line product purchases." From this, Affinion disingenuously insists that Maritz never asked the Court to require that the on-line product purchases be made from the program's website. This is disproved by the claim construction briefing of both parties that makes plain the dispute between the parties on this point, which Maritz succinctly summarized as follows:

> The parties have a basic disagreement as to the proper scope of the asserted claims. **The heart of the dispute is whether the claimed "on-line incentive program" is properly defined as one which incentivizes on-line loyalty by awarding users for purchasing products at the program's website that can be instantly redeemed at the website for an award.**

D.I. 161 at 3-4 (emphasis added). Maritz's *Markman* briefing made this plain. *See* D.I. 138 at 6 (noting that the users are awarded points for using the on-line incentive program—i.e., making purchases through the program), 7 ("[a]s the specification shows, the only activity that qualifies for the issuance of points is an on-line product purchase *through the frequency program*") (on-line incentive program is "a program that awards a user for on-line patronage"), 8 (quoting the specification's emphasis on the advantages of awarding customers for purchases from an on-line product catalog), 9-10 (quoting the prosecution history showing the examiners based patentability on "the specific combination of an on-line product catalog, frequency database and award catalog"); D.I. 151 at 4 ("the purported invention of the patents-in-suit is a fully-integrated frequency program, with on-line purchasing activity, accompanied by immediate receipt of award points, and the ability to immediately redeem such points for a reward on-line"), 8, n.7 ("the only [on-line incentive program] described in the patent is a fully integrated frequency program, with on-line purchasing activity, accompanied by immediate receipt of award points,

10

and the ability to immediately redeem such points for a reward on-line"), 25 (quoting extrinsic evidence describing the claimed invention in the '412 patent as one that "build[s] strong loyalty relationships between e-commerce buyers and on-line merchants"), 31 ("[t]he on-line product catalog or e-commerce system is the only thing, the use of which earns award points").

26. Affinion's *Markman* briefing also betrays its true understanding of Maritz's requested claim construction. *See* D.I. 139 at 18 ("[i]f implementing an 'on-line incentive program' is construed to mean a program that offers products for sale on a website and immediately awards points for those purchases, then these additional steps in Claim 1 would be superfluous"), 19 ("[t]his distinction – repeatedly made in the Petition to Make Special between the claims that involve the offer of products for sale on an Internet web page and the claims that involve a means to redeem awards form an Internet web page confirms that the latter category of claims does not require that points be awarded immediately for on-line product purchase"); D.I. 152 at 10 (using the same phrase as Maritz's proposed claim construction—"on-line product purchase"—to describe the unasserted claims of the '412 patent, which indisputably require awarding points for on-line product purchases made from the on-line incentive program's website), 18 ("Maritz argues, however, that this phrase carries with it two additional limitations: (1) that the points must be awarded for purchases from an on-line catalog..."). Affinion clearly understood the true scope of Maritz's *Markman* position. And its present attempt to narrow Maritz's *Markman* position reveals that it also understands the non-infringing implications of Maritz's proposed construction.

27. During the *Markman* briefing, the parties' respective positions on this point were clear and unambiguous. Maritz contended that the claimed "on-line incentive program" was limited to the fully integrated system described in the specification that sold products through the

website, awarded points to users for on-line purchases, and allowed users to redeem those point for awards offered through the website. And Affinion insisted that the asserted claims did not require offering products for sale on the system and awarding points to users for on-line purchases, accusing Maritz of improperly importing the on-line purchase requirements of the specification and unasserted claims into the asserted claims. But in light of Affinion's present attempt to exploit an alleged ambiguity in Maritz's proposed claim construction, Maritz shall request leave of this Court to file a supplemental brief concerning claim construction to remove any doubt as to its claim construction position. In it, Maritz requests the Court to construe "on-line incentive program" to mean "a frequency program that awards points to users for on-line product purchases *made through the program's website.*"

## IV.  CONCLUSION

28.  Many dispositive facts are entirely undisputed by Affinion. The only disputes Affinion raises are legal in nature and concern claim construction. No genuine issue of material fact exists as to how the accused VAULT and AwardHQ systems operate. Under Maritz's proposed construction there is no genuine issue of material fact that these systems do not satisfy the claim limitations discussed above. Maritz requests the Court to adopt its proposed claim construction and enter summary judgment of non-infringement in its favor.

|  |  |
|---|---|
| | Respectfully submitted, |
| | CONNOLLY BOVE LODGE & HUTZ |
| July 14, 2006 | By: /s/ Patricia S. Rogowski |
| **Redacted Version**<br>**Filed 7/25/06** | Rudolf E. Hutz (#484)<br>Patricia Smink Rogowski (#2632)<br>The Nemours Building<br>1007 Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899<br>(302) 658-9141 |
| | J. Bennett Clark<br>David W. Harlan<br>Jennifer E. Hoekel<br>Marc W. Vander Tuig<br>Michael J. Hartley<br>SENNIGER POWERS<br>One Metropolitan Square, 16th Floor<br>St. Louis, MO 63102<br>(314) 231-5400 |
| | Attorneys for Maritz Inc. |

## CERTIFICATE OF SERVICE

I, hereby certify that on **July 14, 2006**, I electronically filed **MARITZ'S RESPONSE TO STATEMENT OF DISPUTED FACTS IN RESPONSE TO MARTIZ'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** with the Court Clerk using CM/ECF which will send notification of such filing(s) to Jack B. Blumenfeld and Maryellen Noreika.

I hereby further certify that on July 14, 2006, I have also served this document on the attorneys of record at the following addresses as indicated:

**Via Hand Delivery**
Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-11347

**Via Federal Express**
Steven Lieberman
Sharon L. Davis
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

**Redacted Version**
**Filed 7/25/06**

*Patricia Smink Rogowski*
Patricia Smink Rogowski (#2632)