*Affinion Net Patents   v.*
*Maritz, Inc.*

*Hearing*
*June 7, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File 060706~1.TXT, 121 Pages
Min-U-Script® File ID: 3674544951

**Word Index included with this Min-U-Script®**

```
                          1
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
   AFFINION NET PATENTS,   )
       Plaintiffs,         )
                           ) C.A. No. 04-360-JJF
   v.                      )
   MARITZ, INC.,           )
       Defendant.          )
              Wednesday, June 7, 2006
              12:03 p.m.
              Courtroom 4B
              Markman Hearing
              844 King Street
              Wilmington, Delaware
   BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
            United States District Court Judge
   APPEARANCES:
      MORRIS, NICHOLS, ARSHT & TUNNELL
      BY: JACK B. BLUMENFELD, ESQ.
      BY: MARYELLEN NOREIKA, ESQ.
              -and-
      ROTHWELL, FIGG, ERNST & MANBECK, P.C.
      BY: SHARON L. DAVIS, ESQ.
      BY: R. ELIZABETH BRENNER, ESQ.
      BY: STEVEN LIEBERAN, ESQ. ESQ.
              Counsel for the Plaintiffs
```

**Page 2**

```
   APPEARANCES CONTINUED:
      CONNOLLY, BOVE, LODGE & HUTZ, LLP
      BY: RUDOLF E. HUTZ, ESQ.
      BY: PATRICIA SMINK ROGOWSKI, ESQ.
              -and-
      SENNEGIN POWERS
```

BY: J. BENNETT CLARK, ESQ. 7 BY: MARC VANDER TUIG, ESQ.

BY: MICHAEL HARTLEY, ESQ. 8 Counsel for Defendant 9 10 Also Present: 11 MARITZ, INC.

BY: STEVE GALLANT 12 13 14 15 16 17 18 19 20 21 22 23 24

**Page 3**

[1] **THE CLERK:** All rise.
[2] **THE COURT:** All right. Be seated, [3] please.
[4] Good afternoon.
[5] (Everyone said Good afternoon, Your [6] Honor.)
[7] **THE COURT:** Ready to proceed?
[8] **MS. DAVIS:** Yes, Your Honor.
[9] **MR. CLARK:** Yes, we are, Your Honor.
[10] **MR. BLUMENFELD:** Your Honor, [11] assuming that the plaintiff would go first here, [12] Jack Blumenfeld for the plaintiff, along with my [13] partner, Maryellen Noreika, Sharon Davis, [14] Elizabeth Brenner, and Steve Lieberman from the [15] Rothwell Figg firm.
[16] **THE COURT:** Good afternoon.
[17] **MR. BLUMENFELD:** And Ms. Davis is [18] going to be giving the presentation this [19] morning — this afternoon.
[20] **THE COURT:** All right. Thank you. [21] Ms. Rogowski.
[22] **MS. ROGOWSKI:** Pat Rogowski for [23] defendant Maritz. Also at defendant table, Ben [24] Clark, who will be doing the presentation today.

**Page 4**

[1] And two new faces for you, Michael Hartley and [2] Marc Vander Tuig from the Sennegin Powers firm in [3] St. Louis.
[4] **THE COURT:** Good afternoon.
[5] **MS. ROGOWSKI:** We also have our [6] client representative, Steve Gallant in the back.
[7] **THE COURT:** All right. Thank you. [8] Ms. Davis.
[9] **MS. DAVIS:** Thank you, Your Honor. [10] And we have prepared a power-point presentation [11] for our presentation today.
[12] I've also got hard copies of the [13] presentation, along with a couple of key [14] documents for Your Honor.
[15] May I —
[16] **THE COURT:** Yes, you may.
[17] **MS. DAVIS:** — pass these up? [18] We have an extra copy, if three [19] copies would be more useful.
[20] **THE COURT:** No. I wanted to make a [21] separate copy of Exhibit 15. So everything [22] else — in fact, you have another copy of this?
[23] **MS. DAVIS:** Yes. Would that be [24] helpful?

**Page 5**

[1] **THE COURT:** If you want to pass that [2] up, you can.
[3] (Following a discussion held off the [4] record:)
[5] **THE COURT:** All right.
[6] **MS. DAVIS:** Thank you, Your Honor.
[7] May it please the Court, the patent [8] that's at issue in this case, the '412 patent, [9] owned by plaintiff, Affinion Net Patents, relates [10] to the technology of the operation of incentive [11] programs through the use of various aspects of [12] internet technology.
[13] Incentive programs are programs [14] which reward certain behavior by providing points [15] or some similar type of currency that people [16] collect and then can use to obtain benefits, [17] rewards. The most commonly known type of program [18] I think most of us are very familiar with that [19] runs along these lines is a frequent flyer [20] program where people collect miles based on the [21] miles that they fly.
[22] The key claim construction issue [23] that is raised in this case, although there are [24] multiple claim terms, as Your Honor is aware from

**Page 6**

[1] the briefings that are at issue, the key claim [2] construction issue relates to the construction of [3] the claim term on-line incentive program.
[4] And what is an on-line incentive [5] program as that term is used in the claims of the [6] '412 patent? Affinion's proposed construction of [7] on-line incentive program as set forth here is [8] that it's an incentive program.
[9] We've included a definition of what [10] an incentive program is. I don't think that's — [11] that aspect of the definition is not in a huge [12] amount of dispute. That it includes an incentive [13] program that operates a program home page or what [14] we think of as a web page that uses the internet [15] technology to present the program on a program [16] home page and permits users of the incentive [17] program to interact with the incentive program [18] on-line through internet technology.
[19] Affinion's claim construction is [20] based — as set forth in our briefs, Affinion's [21] claim construction is supported by and based on [22] the claim language itself of the asserted claims, [23] the specification of the patent, and the [24] prosecution history in which the applicant made

**Page 7**

[1] statements concerning the scope of the claims [2] that are asserted in the on-line incentive [3] program.
[4] Maritz is asking the Court to read [5] limitations into on-line incentive program beyond [6] those that are contained in the claim language [7] and to make a much narrower interpretation than [8] what is set forth in the claim language itself.
[9] We start, as we always must in claim [10] interpretation, by looking at the claim itself [11] and what the language of the claim provides. And [12] Claim 10 that is set forth here is exemplary of [13] the claims that are being asserted and contains [14] the disputed claim terms with the exception of a [15] couple of terms that are included only in [16] dependent claims. But all of the terms that are [17] being addressed in the independent claims are [18] included in Claim 10.
[19] We start with a few things to note [20] about the language in Claim 10. First of all, [21] the preamble language describes Claim 10, as in [22] the invention claimed in Claim 10, as a method [23] for redeeming incentive awards on an on-line [24] incentive program. It is the method for

**Page 8**

[1] redeeming the points that are earned in an [2] incentive program.
[3] That's in contrast to other claims [4] which we'll look at of the '412 patent that do [5] not specifically refer to being a method for the [6] redemption part of the invention.
[7] And the second point to make about [8]

[18] I mean, immediacy was one of the [19] advantages described. I think this also appears [20] in the related art section, does it not?

[21] Maybe even more relevantly, again, [22] in order to distinguish prior art programs, the [23] immediacy point was really what — the argument [24] that the applicant made. The word millage at the

Page 94

[1] point — I think that's supposed to be mileage, [2] are not awarded until the traveler actually takes [3] the flight.

[4] You have to wait to get a [5] certificate before you can use it. You know how [6] frequent flyers work.

[7] Another disadvantage, you have to [8] plan ahead. Geez, I want to fly to LA on my [9] frequent flyer of the month. I've got to plan [10] ahead, because they've got to mail it to me. [11] That was a disadvantage. You don't have [12] immediate redemption over opportunities.

[13] And then at the end, in addition, [14] and this is particularly relevant, we think, to [15] this case, the enrollee must allow for processing [16] time before the bonus points are recorded and [17] made available as redeemable credits.

[18] Now, why is this relevant? Because [19] for many years, Maritz has handled its points on [20] a batch process. Batch processing is where you [21] take all the transaction points that are gathered [22] in a batch, in a group. There's a delay in time.

[23] It can be a day. It can be — I [24] think there's some evidence in this case,

Page 95

[1] sometimes it can be quarterly, I mean, every four [2] months where you gather all of these transactions [3] together, where people have been engaged in the [4] conduct, and you give the awards.

[5] But you only award the points after [6] this passage of time. And Maritz has been doing [7] this for many years.

[8] This is part — one of the reasons [9] why Affinion is fighting against the immediacy [10] requirement, because they know that as one of our [11] grounds of non-infringement, we don't immed- [12] iately award points. We do them in batch. Always have.

[13] Done them for years, and that is [14] specifically the aspects of the prior art at the [15] bottom here that they said that their invention [16] overcame, the precise thing that we're doing, [17] and, frankly, Judge, continue to do.

[18] Because it's one of the ways we feel [19] we avoid their patent. Batch pro- cessing is not [20] the hippest 21st century thing to do. Immediacy [21] is where it's at, obviously.

[22] We're still doing this thing in [23] batch, because way back when the patent applicant [24] in 1994 or five said this is old, and I'm going

Page 96

[1] to improve on it, well, that's what we're doing. [2] And that's really what this immediacy fight is [3] all about.

[4] So I'm in a position to bore you for [5] another hour, but I know you don't want me to. [6] We do have other — we've addressed all the other [7] points in the briefs.

[8] I want to ask for this in advance, [9] but if there's something new stated by Sharon, if [10] I could even reserve a minute to sir rebut. They [11] don't bear the burden on this, and so I would [12] like to do that if something new is raised.

[13] I appreciate your attention and good [14] questions. Thank you.

[15] **THE COURT:** Sure. The reason we [16] moved the time and were under some constraints, [17] we have a Delaware Bench and Bfar, and Justice [18] Holland has been very persuasive. He called me [19] up and suggested that we finish everything by two [20] o'clock so Del- aware lawyers would have no excuse [21] for not attending.

[22] He told me on the phone call that he [23] had — he told me to come. Told me to come. I'm [24] still a member of the Delaware Bar, so I'll be

Page 97

[1] there.

[2] And he said that he had met with all [3] the large law firms and told them to come. So I [4] apologize for a little bit — usually I give an [5] hour and a half. But today's a special day, and [6] I had already scheduled this before I got his [7] phone call.

[8] So I —

[9] **MR. CLARK:** This is all.

[10] **THE COURT:** — respectfully re- spond [11] to the Supreme Court. But we'll give you a [12] minute or two.

[13] **MR. CLARK:** It's copious in the [14] briefs. It's not as if any of this is [15] particularly new.

[16] So thank you very much.

[17] **MS. DAVIS:** All right, Your Honor. [18] I think I'll start first addressing some of the [19] issues that were raised at the beg- inning of [20] Mr. Clark's argument with particular respect to [21] the legal stan- dards and the legal decision making [22] process as it stands after Phillips.

[23] And I just want to take issue with [24] some of the things that Mr. Clark said. And just

Page 98

[1] by reference to the Phillips case, I think we are [2] on the same wavelength, that Phillips certainly [3] has to be where we start for the answer to these [4] questions.

[5] And first of all, with respect to [6] where the analysis starts, Phillips, of course, [7] reaffirmed on Page 1312 that the claims are what [8] defines the invention. And the patentee — [9] that's where the patentee defines their [10] invention, and that's where you start your [11] analysis.

[12] And they cite to the example of the [13] Vitronics case. So there's no rejection in the [14] Phillips case, and I think it would be a [15] misreading of the Phillips case to suggest that [16] it departs from the well-established principle [17] that claim language matters.

[18] Maritz doesn't want to talk too much [19] about the claim language in this case because the [20] limitations they're trying to add are not in the [21] claim language. But that does have to be the [22] place where you start.

[23] And then you use the specification [24] and the prosecution history to tell you what the

Page 99

[1] language that is used in the claims means and how [2] you understand that. We did not come into Your [3] Honor and present a claim construction based on [4] looking at a dictionary definition.

[5] We came in and presented a claim [6] construction that is based on starting with the [7] claim language, and then taking that claim [8] language and looking at how it fits into the [9] invention that was described in the [10] specification, which includes a specific [11] description of problems that are focused on [12] redemption, a part of the program of the [13] preferred embodiment that ad- dresses specifically [14] award re- demption, and advantages of the in- vention [15] that are specifically ad- dressed by award [16] redemption.

[17] It is inaccurate to say that the [18] invention described in the specification is [19] limited to a product purchase, on- line product [20] purchase invention.

[21] One more thing from Phillips before [22] I turn more to some of the factual issues is [23] Maritz tries to suggest that the Phillips case [24] has wiped out all of the case law about how you

Page 100

[1] deal with the fact that a patent may list several [2] objectives and doesn't have to include all those [3] objectives in each and every claim.

[4] Well, to Phillips, we usually don't [5] get back this far in the Phillips case. But if [6] you look at the Phillips case, Page 1327 where [7] the Court is actually addressing