**REDACTED**

c. Thus, while a Radisson employee, Mr. Storey learned that Radisson

 . He also learned that Radisson

**REDACTED**

13

d.   In 1993, Prodigy provided not only the EAASY SABRE service to its users, but also provided internet access. Access to the internet through Prodigy was described as a **REDACTED**

The '444 patent was later described by Netcentives (with whom Mr. Storey was then consulting) in the Petition to Make Special filed during prosecution of the '412 patent application (discussed further below) as "not disclos[ing] or suggest[ing] an on-line incentive system that offers products for sale on an Internet web page."[2] However, the referenced Radisson memoranda disclosed to Mr. Storey **REDACTED**

e.   Additionally, Radisson began offering hotel reservations over the internet in 1995.

25.   Thus, Radisson employees besides Mr. Storey contributed to the conception of any invention(s) reflected in the Storey patents (including the '412 patent), a fact well-known to Mr. Storey but never disclosed to the U.S. Patent Office during the prosecution of those patents, or during the later '901 patent application. Nor were serious litigation allegations concerning inventorship (referenced further below) ever disclosed to the Patent Office during the referenced patent prosecutions. The '901 application was pending before the Patent Office during much of the current litigation. Significantly, Mr. Storey has been a paid consultant to the plaintiff during and with respect to this litigation.

---

[2] On June 21, 2000, Radisson filed United States Application No. 09/598,586 ("the '586 application"). The '586 application is a continuation of, and claims priority to, U.S. Pat. App. No. 08/892,563, which is a continuation of U.S. Pat. Appp. No. 08/439,626, which is a continuation of U.S. Pat. App. No. 08/385,381, which issued as the '444 patent. Contrary to Netcentives' characterization of the Radisson patent in its Petition to Make Special, the '586 application claims a "computerized on-line incentive system for awarding points to a user conducting an on-line purchase."

14

...

26.  As a Radisson employee, Mr. Storey had an acknowledged duty to assign ownership of any patentable subject matter conceived during his employment at Radisson to that company. However, Mr. Storey has never acted to assign any interest in the subject matter of the Storey patents to Radisson,    **REDACTED**

Serious litigation allegations concerning ownership (referenced further below) were never disclosed to the U.S. Patent Office during any of the above-referenced patent prosecutions.

27.  On or about May 26, 1994, Radisson filed Patent Cooperation Treaty Application No. WO 95/12175 ("the PCT Application"). The PCT Application has the same specification as the '444 patent. The PCT Application was published on May 4, 1995, over seven months before Mr. Storey filed the '870 patent application.

28.  After leaving Radisson in August 1994, Mr. Storey took a position with Doubletree Hotels. A short time later,    **REDACTED**

**REDACTED**

29.    bore striking similarities to Radisson's Look to Book program, i.e., the program with which Mr. Storey previously had been involved, along with several other Radisson employees.

30.   **REDACTED**   Jacqueline Miller was not named a co-inventor on the '870 patent application that followed. Indeed, in purporting to

**REDACTED**

15