31. Jacqueline Miller contacted a patent attorney -- Joseph Bach -- recommended by a friend to handle the '870 patent application. At the time, Mr. Bach was with the Sughrue Mion, PLLC law firm, **REDACTED**

32. **REDACTED**

Mr. Storey was aware of the Look to Book program and the '444 patent application (on which he was a co-inventor, and with respect to which he had signed an inventor's oath). Nonetheless, neither the Look to Book program, the '444 patent application, nor the '444 patent itself (which issued shortly after the '870 patent application was filed), nor the 95/12175 PCT Application were disclosed to the U.S. Patent Office during the '870 patent prosecution. And only incomplete disclosure was made to the Patent Office during prosecution of the '412 patent application, as discussed below.

33. **REDACTED**

U.S. Patent No. 4,750,119 ("the Cohen patent"), titled "Purchasing System With Rebate Feature." The Cohen patent had issued on June 7, 1988.


a.

**REDACTED**

16

**REDACTED**

b.  The Cohen patent further teaches "a computer program, utilized in combination with a purchasing or transactional system, which allows subscriber-purchasers to buy goods and services and obtain future guaranteed rebates based upon the cost of that purchase" to "motivate the purchaser to patronize vendors who are associated with the purchasing system."

c.  **REDACTED** Mr. Storey affirmatively elected to suppress the Cohen patent during prosecution of the '870 patent application. Nor was the Cohen patent disclosed during prosecution of the '412 patent application.

d.  In an apparent attempt to undo the effects of the previous non disclosure of the Cohen patent, on December 2, 1999, Netcentive's patent counsel Philip Albert disclosed it to the U.S. Patent Office during the prosecution of the '012 patent. To date, no explanation has been offered as to why the Cohen patent was deemed by the applicant to be material to the later-filed '012 patent but not to the '870 and/or '412 patent applications. In fact, it clearly was material to all.

e.  Indeed, the Cohen patent was disclosed to the U.S. Patent Office by Radisson during its prosecution of the '444 (Look to Book) patent application, on which Mr. Storey was a named co-inventor. However, Mr. Storey determined not to disclose it during the prosecution of the first two of his own patent applications.

34.  In his April, 2001 deposition, Mr. Storey contended that

**REDACTED**

17

Mr. Bach has testified that [REDACTED] Moreover, co-pending applications involving the same inventor are of particular interest to the U.S. Patent Office, since under such circumstances an interference proceeding may need to be invoked. MPEP 2001.06(b). [REDACTED]

35.   Mr. Storey's [REDACTED] for the additional reason that thousands of travel agents and other persons had become intimately familiar with the workings of the Look to Book program since its introduction in 1992. [REDACTED] the Look to Book program had been in the public domain since at least 1992 through a variety of media.

36.   Moreover, the '444 patent itself issued a few weeks after filing of the '870 patent application, further undermining the notion that Mr. Storey had a legitimate belief that he needed to keep the '444 patent application and/or Look to Book program confidential. Nor did Mr. Storey advise Mr. Bach of the published PCT Application.

37.   The application leading to the '870 patent was filed on December 14, 1995. As noted, Thomas Storey was listed as the sole inventor. None of the other Radisson inventors nor Jacqueline Miller were listed as co-inventors. None of the Look to Book program, '444 patent application, PCT Application, or Cohen reference were brought to the U.S. Patent Office's attention, at the time of filing or later. Nor was the '444 patent, which issued only three weeks after the '870 patent application was filed.

(a)   As the purported inventor of the '870 patent, Mr. Storey executed a declaration filed with the U.S. Patent Office in which he "acknowledge[d] [his] duty to disclose

18