an on-line incentive system that offers products for sale on an Internet web page." Netcentives also failed to disclose any of the materials concerning the Look to Book commercial embodiment, including, for example, the ability to view awards and award redemption levels on-line. The '412 patent ultimately issued on December 21, 1999, without any indication that the Examiner was aware of Mr. Storey's status as co-inventor of the '444 patent.

     42.    Mr. Philip Albert was also retained by Netcentives to assist in prosecution of the Storey patent applications.

**REDACTED**

and ultimately replaced Mr. Stattler as counsel of record for the completion of the '412 patent prosecution and commencement of the '012 patent prosecution.

    a.    **REDACTED**    Netcentives was cognizant of the earlier non-disclosures (during the '870 patent prosecution) on the patent rights it had purchased, Mr. Albert

**REDACTED**

    b.    However, neither Mr. Albert, Mr. Stattler, or anyone else affiliated with Netcentives took steps to advise the U.S. Patent Office during prosecution of the '412 patent application that (a) Mr. Storey was a co-inventor on the '444 patent along with several others, (b) the Look to Book program itself had been a publicly known prior art program since no later than 1992 or (c) during the prior prosecution of the '870 patent application, the U.S. Patent Office had not been advised of these facts, or of the existence of the '444 patent application, the issuance of the '444 patent, or of the published 95/12175 PCT application.

43. Further, Netcentives did not disclose the Cohen patent to the U.S. Patent Office at any time during the prosecution of the '412 patent. The Cohen patent was not disclosed to the Patent Office until the later prosecution of the '012 patent.

44. The '444 patent application, the issued '444 patent, the published 95/12175 PCT application, the Radisson Look to Book publications, the co-inventor status of the other Radisson employees, Radisson's potential ownership of the subject matter of the '870 patent, and the Cohen patent were all highly material to the patentability of the '870 patent.

45. On information and belief, the failure by Mr. Storey, Netcentives, and/or their patent attorneys to disclose the foregoing items during the prosecution of the '870 patent was motivated by an intent to deceive the U.S. Patent Office.

46. Mr. Storey's status as co-inventor of the '444 patent, the co-inventor status of the other Radisson employees, Radisson's potential ownership of the subject matter of the '870 patent, the published 95/12175 PCT application, Radisson's Look to Book publications, and the Cohen patent and the prior failures to disclose were all highly material to the patentability of the '412 patent.

47. On information and belief, the failure of Mr. Storey, Netcentives, and/or their patent attorneys to disclose the foregoing items during the prosecution of the '412 patent was motivated by an intent to deceive the U.S. Patent Office.

48. On information and belief, Mr. Storey, Netcentives, and/or their patent attorneys intentionally failed to name other Radisson employees as inventors on the '870 and '412 patents.

49. On information and belief, the failure of Mr. Storey, Netcentives, and/or their patent attorneys to name all of the inventors of the '870 and '412 patents was motivated by an intent to deceive the U.S. Patent Office.

22