66. Prior to and after obtaining the blemished patent rights (consisting of the '870 patent, the '412 patent, the '012 patent application, and related rights), Trilegiant/TLS engaged in :

Upon information and belief, **REDACTED**

Maritz's attempt to discover the substance of these conversations during this case have uniformly been blocked on the grounds of privilege, despite that privilege does not protect communications in furtherance of commission of a fraud.

67. Commencing immediately upon purchase by Trilegiant of the Storey patent rights out of the Netcentives bankruptcy proceeding, responsibility for the (a) patent prosecution, (b) and (c) litigation has been assumed by a single law firm.

**REDACTED**

Thus, there has been a continuance of Netcentives' earlier pattern of brandishing patents known to be unenforceable and invalid throughout the industry, while simultaneously continuing to withhold from the U.S. Patent Office material information about inventorship disputes during the prosecution of patent applications ultimately claiming priority back to the original Storey patent application.

68. MPEP §2001.06(c), provides in pertinent part that:

> Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom *must be brought to the attention of the U.S.P.T.O.* Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of fraud, inequitable conduct, and violation of duty of disclosure ... [and] any assertion that is made during litigation which is contradictory to assertions made to the examiner. (Emphasis added).

27

69. Trilegiant, through its counsel, prosecuted the '901 application through an appeal before the Board of Patent Appeals and Interferences, which ruled in its favor in February, 2006. Despite this apparent success, ANP expressly abandoned the patent application. The circumstances suggest that this action was taken because of the allegations and proof advanced by Maritz in this litigation concerning the continuous course of conduct suppressing inventorship, and related issues, throughout the prosecution of the Storey patents. Upon information and belief, recognizing that the intentional suppression of information during the fourth ('901) application likely cast it in the same dim light as the preceding three patents, ANP opted to abandon the allowed case and instead file continuation applications through which it could attempt belatedly to obtain patent rights based on more forthcoming disclosure ... albeit over ten years after the first Storey patent application was filed.

70. In the pending continuation applications, Affinion and its outside counsel finally disclosed to the U.S. Patent Office some of previously-withheld litigation documents and key prior art references.

71. Never during the prosecution of any of the Storey patent applications has the applicant advised the U.S. Patent Office of the previous material non-disclosures, alerted it that further examination may be required, or explained the patentability of the claimed subject matter in light of the previously withheld information. Neither Afffinion nor Trilegiant has disclaimed any of the Storey patents affected by the material non-disclosures.

72. In numerous instances since acquiring the Storey patent rights, the Trilegiant entities and now ANP have asserted one or more of the '412, '870 and '012 patents against, REDACTED various companies, despite the knowledge that the patents were inequitably obtained.

28