IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AFFINION NET PATENTS, INC.,                )
                                           )
                    Plaintiff,             )
                                           )    Civil Action No. 04-360-JJF
MARITZ INC.,                               )
                                           )
                    Defendant.             )

## MARITZ'S PROPOSED JURY INSTRUCTIONS

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
Michael J. Hartley
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Dated: September 11, 2006          Attorneys for Maritz Inc.

**TABLE OF CONTENTS**

FINAL JURY INSTRUCTIONS ................................................................................ 1

   1  Burdens of Proof ...................................................................................... 1

   2.1  Infringement .......................................................................................... 2

   2.2  Patent Claims - Generally .................................................................... 3

   2.3  Independent and Dependent Claims ..................................................... 4

   2.4  Claim Construction ............................................................................... 5

   2.5  Direct Patent Infringement ................................................................... 7

   2.6  Joint Infringement ................................................................................ 8

   2.7  Willful Infringement ............................................................................ 9

   2.8  Willful Infringement - Evidence of Good Faith ................................. 10

   3.1  Doctrine of Equivalents ...................................................................... 11

   3.2  Limitations On the Doctrine of Equivalents ...................................... 13

   4.1  Validity ............................................................................................... 15

   4.2  Written Description ............................................................................. 16

   4.3  Definiteness ........................................................................................ 17

   4.4  The Prior Art ...................................................................................... 18

   4.5  Prior Art—Date of Invention ............................................................. 20

   4.6  Derivation .......................................................................................... 23

   4.7  Anticipation/Lack of Novelty ............................................................ 24

   4.8  Incorrect Inventorship ....................................................................... 26

   5.1  Obviousness ....................................................................................... 27

   5.2  The Scope and Content of the Prior Art ............................................. 29

   5.3  Differences between the Invention of the Claims and the Prior Art ... 30

   5.4  Level of Ordinary Skill ...................................................................... 31

   5.5  Objective Indications Concerning Obviousness ................................. 32

   5.6  Licenses Taken by Others Under the Patent ...................................... 33

   5.7  Independent Invention by Others ....................................................... 34

   5.8  Determination of Obviousness ........................................................... 35

   6.1  Inequitable Conduct - Generally ....................................................... 36

6.2 Inequitable Conduct - Duty of Disclosure ................................................................... 38

6.3 Inequitable Conduct - Materiality.............................................................................. 39

6.4 Inequitable Conduct - Materiality.............................................................................. 40

6.5 Inequitable Conduct - Materiality - Willful Ignorance ................................................ 41

6.6 Inequitable Conduct - Materiality of Inventorship ...................................................... 43

6.7 Inequitable Conduct - Materiality of Litigation........................................................... 44

6.8 Inequitable Conduct - Intent ..................................................................................... 45

6.9 Inequitable Conduct - Balancing Materiality and Intent.............................................. 46

6.10 Inequitable Conduct - Good Faith Explanation .......................................................... 47

6.11 Inequitable Conduct - Infectious Unenforceability...................................................... 48

6.12 Inequitable Conduct - Curing Inequitable Conduct .................................................... 49

7.1 Laches ...................................................................................................................... 50

7.2 Laches - Constructive Knowledge .............................................................................. 51

7.3 Laches - Prejudice to Maritz ...................................................................................... 52

8 Equitable Estoppel ...................................................................................................... 53

9.1 Unclean Hands ......................................................................................................... 54

9.2 Unclean Hands - Not Limited by Any Formula............................................................ 55

10.1 Patent Misuse ........................................................................................................... 56

10.2 Patent Misuse - Bad Faith ......................................................................................... 57

10.3 Patent Misuse - Bad Faith ......................................................................................... 58

11.1 Damages – Generally................................................................................................. 59

11.2 Compensatory Damages in General............................................................................ 60

11.3 Notice Requirement for Patents ................................................................................. 61

11.4 Two Types of Damages—Lost Profits and Reasonable Royalty................................... 62

11.5 Lost Profits—in General ........................................................................................... 63

11.6 Lost Profits Due to Lost Sales ................................................................................... 64

11.7 Manufacturing and Marketing Ability ........................................................................ 65

11.8 Absence of Acceptable Non-infringing Substitutes...................................................... 66

11.9 Reasonable Royalty as a Measure of Damages ........................................................... 67

11.12 Burden of Proof........................................................................................................ 68

12 False Marking ............................................................................................................ 69

13  Unfair Competition ........................................................................................................ 70

FINAL JURY INSTRUCTIONS
PROPOSED JURY INSTRUCTION NO. \_\_\_\_
1  Burdens of Proof

Affinion has the burden to prove its claims of patent infringement, false marking, unfair competition, and its claims of damages by a preponderance of the evidence. That means Affinion must produce evidence that, when considered in light of all the facts, leads you to believe that what Affinion claims is more likely true than not.  To put it differently, if you were to put Affinion's and Maritz's evidence on opposite sides of a scale, the evidence supporting Affinion's claims would have to make the scales tip somewhat on its side.  Affinion must prove its allegation of willful infringement by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

In order to prove its invalidity [and unenforceability][1] claims, Maritz must make that showing by clear and convincing evidence.

Finally, as I explained in my Preliminary Instructions, the standard of "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

---

[1] It must be decided whether and to what extent equitable issues will be submitted to the jury.

1

PROPOSED JURY INSTRUCTION NO. ____
2.1  Infringement

Affinion alleges that Maritz infringes certain claims of the '412 patent.  If any person or entity makes, uses, sells, offers to sell or imports what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

I will now instruct you on the specific rules you must follow in deciding whether Affinion has proven that Maritz has infringed one or more of the claims of the '412 patent.


Authority:  2004 Delaware Model Instructions

PROPOSED JURY INSTRUCTION NO. _____
2.2  Patent Claims - Generally

To decide whether Maritz has infringed the '412 patent, you will have to understand the patent "claims." The claims of a patent are the numbered paragraphs at the end of a patent. The claims define the limits of invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, using or selling. Claims may describe products, such as machines or chemicals, or they may describe methods. Only the claims of the patent -- as contrasted with other parts of the patent -- can be infringed. A patent also includes drawings and a general description of the invention. Neither the drawings of a patent nor other portions of the patent can be infringed. Rather, you must only compare use of Maritz's accused systems with the claims of the '412 patent when making your decision regarding infringement.

Each claim of a patent represents separate patent protection given to a patent owner, and you must individually consider each of the patent claims involved in this case. The law does not require infringement of all the claims in a patent. Affinion is entitled to damages if a single claim of the patent has been infringed.

Authority:  2004 Delaware Model Instructions (modified); ABA 2005 Model Jury
Instructions

3

PROPOSED JURY INSTRUCTION NO. _____
2.3  Independent and Dependent Claims

Claims are typically divided into parts called limitations.  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each separate limitations of the claim.

There are two types of patent claims:  independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  In simple terms, an independent claim stands on its own two feet.  An independent claim is read alone to determine the limitations that must exist to infringe the claim.  Claim 10 of the '412 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes all of the limitations in the claims to which it refers.  Therefore, to determine what a dependent claim covers, you must look at both the dependent claim and the claim or claims to which it refers.

For example, claim 11 is a dependent claim.  It refers to claim 10.  For a method to infringe dependent claim 11, the method must have all the limitations of both claim 10 and claim 11.  Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

Authority:  2004 Delaware Model Instructions

4

PROPOSED JURY INSTRUCTION NO. ____
2.4  Claim Construction

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of terms used in the '412 patent claim.  You must use the meaning that I give you for each defined term used in a claim to decide if the claim is infringed or invalid.

It may be helpful to refer to the copy of the '412 patent that you have been given as I discuss the claims at issue here.  The claims of the '412 patent are toward the end, starting at column 10, line 30.  The claims which Affinion alleges are infringed are 10-17, 27-34 and 36.

I have defined certain terms of the '412 patent as follows:

The term "On-Line Incentive Program" means "A frequency program that awards points to users for on-line product purchases made through the program's website."

The term "On-Line" means "connected to a computer network that allows for the real time exchange of information."

The term "Incentive Program" means a "frequency program" which is a program that awards points to users for making purchases.

The term "Issues Award Points to Users" means (1) determining if the user is an enrolled user; (2) calculating the award points according to a preprogrammed formula; and (3) adding the calculated points to the user's account.

The term "Wherein Said Award Points are Redeemable by Said User for an Award" means issuing award points the user's account immediately upon completion of a qualifying on-line purchase and making those points available for immediate redemption.

5

The term "On-Line Interactive Communication" means communications that allow a user to provide and receive information to and from another computer via a computer network that allows for the real-time exchange of information.

The term "Redeemable Award" means a product or service that can be obtained as a prize or award in exchange for award points.

The term "Users" means persons enrolled in the on-line incentive program or eligible to enroll in the on-line incentive program.

The terms "Awards Catalog" and "Catalog of Awards" mean a list providing details of products or services that can be obtained as a prize or award in exchange for award points.

The term "On-Line Link to an Award Computer" means a real-time link to a computer operated by a fulfillment house or product manufacturer.

The term "On-Line Redeeming Form" means an electronic form that accepts entries during an on-line redemption.

Other terms used in the claims, for example, "Internet webpage," "computer system," "product for sale" are to be interpreted as having their ordinary and customary meaning to those persons of ordinary skill in the art at the time of the invention.

Authority:  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed Cir 2005) (en banc)

6

PROPOSED JURY INSTRUCTION NO. _____
2.5  Direct Patent Infringement

Here, Affinion alleges that Maritz's VAULT and Award HQ systems each infringe at least one claim of the '412 patent.  I will refer to Maritz's systems as the accused systems.

Deciding whether a claim has been directly infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I have previously told you what the key terms of the asserted claims mean as a matter of law.  In the second step, the interpreted claim must be compared to the accused system to determine whether every limitation of the claim can be found in the accused system as used.  The limitation-by-limitation comparison is your responsibility as the jury for this case.  If you find that either or both of Maritz's accused systems omits even a single limitation of an asserted claim, you must find that Maritz has not infringed that claim.  You must consider each of the patent claims separately.

Authority: 2004 Delaware Model Instructions (modified); ABA Model Jury
Instructions for Patent Litigation

PROPOSED JURY INSTRUCTION NO. ____[2]
2.6  Joint Infringement

Affinion also alleges that if Maritz did not individually infringe the asserted claims,

Maritz has jointly infringed those claims.  When infringement results from the participation and

combined action of several parties acting together to perform the patented process, they are all

joint infringers and each is liable for patent infringement.  To show that Maritz is liable for direct

infringement under a joint infringement theory, Affinion must prove that (1) all the steps a

method claim of the '412 patent are being performed by Maritz and one or more entities and (2)

Maritz directs or controls the actions of the other entity or entities.

Authority:    *BMC Resources, Inc. v. Paymentech, L.P.*, 2006 WL 1450480 at *3-6 (N.D. Tex.
2006); *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331,
1344-45 (Fed. Cir. 2006).

---

[2] The theory of "joint infringement" is inapplicable to the method described and claimed in the '412
patent.  In addition, there is no evidence of joint infringement.  As such, no instruction should be given.
Further, finding liability here based on a joint infringement theory would violate the "fundamental
precept" of the invention described in the '412 patent.  *On Demand Machine Corp. v. Ingram Industries,
Inc.*, 442 F.3d 1331, 1345 (Fed. Cir. 2006).

Maritz plans to file a motion *in limine* to preclude testimony and evidence relating to joint infringement.
If the Court, however, finds that testimony on this topic should be permitted and that the joint
infringement doctrine applies to the business method described and claimed in the '412 patent, this
instruction—rather than that proposed by Affinion—should be read to the jury.

PROPOSED JURY INSTRUCTION NO. _____
2.7  Willful Infringement

Affinion contends that Maritz has willfully infringed the '412 patent claims which are at issue.

When a person receives notice that a patent may have relevance to their activities, that person has a duty to exercise due care and investigate whether or not their activities infringe any valid claim of the patent.  If that person does not do so and infringes the patent claims, then the infringement is willful.  As I explained before, Affinion has the highest burden of proof, i.e., by clear and convincing evidence, in order to successfully prove willful infringement.

To establish willful infringement, Affinion must prove two things with clear and convincing evidence:

1.     Maritz was aware of the '412 patent;

2.     Maritz proceeded with its activities without having a reasonable good faith belief that the claims of the patent were not infringed.

Keep in mind that even if you ultimately conclude that Maritz infringed the '412 patent, this does not mean that the infringement was willful.  As I have explained, the infringement is not willful if Maritz had a good faith belief that it did not infringe and its belief was reasonable under all the circumstances.


Authority:  2004 Delaware Model Instructions (modified)

9

PROPOSED JURY INSTRUCTION NO. _____
2.8  Willful Infringement - Evidence of Good Faith

In determining whether or not Maritz acted in good faith, you should consider all of the circumstances, including whether or not Maritz obtained and followed the advice of a competent lawyer. The absence of a lawyer's opinion does not mean that infringement was willful, and you must not conclude that failure to obtain or rely on a lawyer's opinion means that any such opinion would have been unfavorable to Maritz. Conversely the obtaining and following of a lawyer's advice may be evidence that infringement was not willful.

Another factor you should consider in determining whether Maritz acted in good faith is whether or not, in designing the method or system accused of infringement, it believed it did not infringe the patent claims. Evidence that Maritz attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is additional evidence that Maritz acted in good faith and any infringement was not willful.

Authority:  ABA Model Jury Instructions for Patent Litigation § 8;
*Knorr-Bremse Systeme Fur Nutzfahrzeuge GmbH v. Dana Corp.*, 338
F.3d 1360 (Fed. Cir. 2004)

10

PROPOSED JURY INSTRUCTION NO. _____ [3]
3.1  Doctrine of Equivalents

If you do not find literal infringement you may consider infringement under the

"doctrine of equivalents." You may find that Maritz's method infringes claim ___, even if not

all of the method steps of the claim are present in Maritz's method. You may find infringement

in such circumstances if the component method steps of Maritz's method are equivalent to that

claimed in at least one of Affinion's claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule.

Patent claims must be clear enough so that the public has fair notice of what was

patented. Notice permits other parties to avoid actions which infringe the patent and to

design around the patent. On the other hand, the patent owner should not be deprived of

the benefits of his patent by competitors who appropriate the essence of an invention

while barely avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalence is whether

Maritz's method and component steps perform substantially the same function in substantially

the same way to produce substantially the same result compared to Affinion's claimed method

and component steps.

It is not a requirement under doctrine of equivalence infringement that those of

ordinary skill in the art knew of the equivalent when the patent application was filed or

---

[3] Maritz plans to file a motion *in limine* to preclude testimony and evidence relating to the doctrine of
equivalents. If the Court excludes this evidence and testimony, this instruction should not be read to the
jury. The applicability of the doctrine of equivalents and the limitations the law imposes on liability
under this theory are highly fact dependent. Should the Court permit Affinion to rely on the doctrine of
equivalents, Maritz reserves the right to tailor its jury instructions on this topic once Affinion sets forth its
doctrine of equivalents theory.

when the patent issued. The question of whether Maritz's method and its component method steps are equivalent to that defined in Affinion's claims is to be determined as of the time of the alleged infringement.

    Authority:  Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993) (modified)

PROPOSED JURY INSTRUCTION NO. _____[4]
3.2  Limitations On the Doctrine of Equivalents

The patent law places certain limits on the doctrine of equivalents. It is my duty to decide

whether or not any of these limitations applies in this case and to instruct you on my decision.

You must use my instruction in considering both infringement and invalidity.

One limit on the doctrine of equivalents occurs as the result of changes to the patent

claims or arguments that the patent owner made before the United States Patent Office in order

to obtain his or her patent. A patent owner may not include within the patent claims structure or

processes that he or she gave up in order to obtain his or her patent.

In this case, the following limitations apply to the claims of the '412 patent:

[Court to supply any prosecution history estoppel.]

The second limit on the doctrine of equivalents occurs when the patent specification

describes a specific role or function for a claim limitation. When this occurs, any equivalent

structure must fill substantially the same role as that described in the patent for that limitation. In

this case, this limitation applies as follows:

[Court to supply any such limit.]

The final limit on the doctrine of equivalents is the prior art.  The prior art that limits the

doctrine of equivalents is the same prior art that you must consider in determining whether or not

the '412 patent is valid or invalid, a topic that I will instruct you about shortly.  A patent owner

---

[4] Maritz plans to file a motion *in limine* to preclude testimony and evidence relating to the doctrine of equivalents.  If the Court excludes this evidence and testimony, this instruction should not be read to the jury.  The applicability of the doctrine of equivalents and the limitations the law imposes on liability under this theory are highly fact dependent. Should the Court permit Affinion to rely on the doctrine of equivalents, Maritz reserves the right to tailor its jury instructions on this topic once Affinion sets forth its doctrine of equivalents theory.

13

cannot include within patent claims structure or processes that would be anticipated by or

obvious in light of the prior art.

> Authority: Federal Circuit Bar Association Model Patent Jury Instructions, 8.4
> (modified); *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 122 S.Ct.
> 1831 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520
> U.S. 17, 29 (1997); *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344
> F.3d 1359 (Fed. Cir. 2003); *Streamfeeder, L.L.C. v. Sure-Feed
> Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999); *K-2 Corp. v.
> Salomon S.A.*, 191 F.3d 1356, 1366-68 (Fed. Cir. 1999); *Vehicular
> Tech. Corp. v. Titan Wheel Intern., Inc.*, 141 F.3d 1084, 1089-1092
> (Fed. Cir. 1998); *Wilson Sporting Goods v. David Geoffrey & Assoc.*,
> 904 F.2d 677, 683-85 (Fed. Cir. 1999).

PROPOSED JURY INSTRUCTION NO. _____
4.1  Validity

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws.  I will explain these terms to you when we discuss Maritz's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Maritz has challenged the validity of the '412 patent claims on a number of grounds, each of which is an independent ground for invalidity.  Maritz must prove that a patent claim is invalid by the clear and convincing standard.

I will now explain to you each of Maritz's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim of the '412 patent separately.


Authority: ABA Model Jury Instructions for Patent Litigation, § 9 (modified)

15

PROPOSED JURY INSTRUCTION NO. _____
4.2  Written Description

A patent must contain a written description of the subject matter claimed in the patent.  In order to satisfy the written description requirement, the specification of the '412 patent must describe the invention sufficiently to convey to a person of skill in the art that Thomas Storey had possession of the claimed invention at the time of the application; in other words, that Thomas Storey invented what is claimed.  A broad claim is invalid when the specification clearly indicates that the invention is of a much narrower scope.

Maritz contends that claims 10-17, 27-34, and 36 of the '412 patent are invalid for lack of an adequate written description of the claimed invention.  If you find that Maritz has proved by clear and convincing evidence that the '412 patent does not contain a written description of the invention covered by any of these claims, then you must find any such claim to be invalid.

Authority: ABA Model Jury Instructions for Patent Litigation, § 9 (2005) (modified);
*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

PROPOSED JURY INSTRUCTION NO. _____[5]
4.3  Definiteness

The patent laws have requirements for the way in which patent claims are written.  Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover.  A person of ordinary skill is a person of average education and training in the field.  If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent.  A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover.  Simply because claim language may not be precise does not automatically mean that the claim is indefinite.  The claim language need only be as precise as the subject matter permits.

Maritz contends that claims 12, 13, 29, and 30 of the '412 patent are invalid because the language of the claims is indefinite.

If you find that Maritz has proved by clear and convincing evidence that any of these claims are indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.

Authority: ABA Model Jury Instructions for Patent Litigation, § 9.1.4 (2005)

---

[5] As set forth in Maritz's *Markman* briefing, Maritz contends that the definiteness inquiry is a question of law subsumed by the Court's function of construing the claims.  *See* D.I. 151 at 31; *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).  If the Court determines that this is a jury issue, however, Maritz submits that this proposed instruction accurately sets forth the law of indefiniteness under 35 U.S.C. § 112, ¶2.

PROPOSED JURY INSTRUCTION NO. ____
4.4  The Prior Art

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

Maritz is relying on various items of prior art. Maritz and Affinion agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '412 patent:

[List uncontested prior art][6]

Maritz is also relying on items that Affinion does not agree are prior art. Maritz must prove by clear and convincing evidence that these items are prior art. In order to do so, Maritz must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed.

Third, anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

---

[6] The parties will insert the specific prior art references prior to the jury instruction conference. The precise references cannot be identified until the Court issues its *Markman* ruling, which impacts whether or not the '412 patent is entitled to a filing date of December 14, 1995 or June 25, 1998. The *Markman* ruling also impacts the references upon which Maritz will rely in its validity case. The prior art references that may be included in the final instructions read to the jury will be chosen from the references included in the expert reports of Bruce Bolger and Arthur Keller, the references produced to Affinion in discovery, and/or the references in Maritz's § 282 notice.

Fourth, anything that was invented by another person before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

Fifth, anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.

Authority: ABA Model Jury Instructions for Patent Litigation, § 9.3 (2005)

PROPOSED JURY INSTRUCTION NO. ____
4.5  Prior Art—Date of Invention

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice." In this case, that date is June 25, 1998. The '412 patent claims priority as a continuation application to an earlier application that was filed December 14, 1995. Although continuing applications can receive the benefit of the filing date for an earlier-filed application, the earlier application must support the later filed claims sufficiently to satisfy the written description requirement. I described the written description requirement earlier. If you find that the earlier filed application provides sufficient written description of claims 10-17, 27-34, and 36 of the '412 patent, then effective filing date of the '412 patent is December 14, 1995. If, however, you find that the earlier filed application does not provide a sufficient written description of claims 10-17, 27-34, and 36 of the '412 patent, then effective filing date of the '412 patent is June 25, 1998.

[Ordinarily, art that came before the application's filing date is prior art to the patent claims. There are, however, two circumstances under which art dated before the application

filing date is not prior art. The first occurs when the inventor of the patent reduced the invention to practice before the date of the art. In this case, the art is not prior art to the '412 patent.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, the art is not prior art to the '412 patent.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

To establish a date of invention prior to a piece of prior art, Affinion must come forward with evidence of a date of invention prior to the date of that prior art. Mr. Storey's testimony, standing alone, is insufficient to prove conception - some form of independent corroborating evidence is required. When determining whether Mr. Storey's testimony is sufficiently corroborated, you must apply a rule of reason analysis. This means that you must consider all pertinent evidence so that you may make a sound determination of the credibility of Mr. Storey's story.][7]

I will now describe the specific requirements for the prior art categories relied on by Maritz in this case.

Authority:    ABA Model Jury Instructions for Patent Litigation, § 9.3.1 (2005) (modified); 35 U.S.C. §§ 112, 120; *Singh v. Brake*, 317 F.3d 1334, 1340-41 (Fed. Cir. 2003);

---

[7] Affinion cannot produce any evidence to corroborate an earlier date of invention. Maritz plans to file a motion *in limine* to preclude testimony and evidence relating to this point. If the Court excludes this evidence and testimony, the bracketed language should not be read to the jury. Otherwise, however, the bracketed language should be included.

*Mahurkur v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

PROPOSED JURY INSTRUCTION NO. _____
4.6  Derivation

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims.  An inventor on a patent is not the true inventor if he "derived" the invention from someone else.  An invention is said to be "derived" from another person if that other person conceived of the patented invention and communicated that conception to the inventor named on the patent.  Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort.  Derivation may be of the invention itself or of an obvious variation of the invention.

If an inventor derived the patented invention from someone else, then the patent claims covering the invention are invalid.

In this case, Maritz contends that claims 10-17, 27-34, and 36 of the '412 patent are invalid because Thomas Storey derived the invention of those claims from his ex-colleagues at Radisson.  If you find that Maritz has proved by clear and convincing evidence that the inventor on the '412 patent derived the invention covered by claims 10-17, 27-34, and 36, then you must find that the claims are invalid.


Authority: ABA Model Jury Instructions for Patent Litigation, § 9.4 (2005)

PROPOSED JURY INSTRUCTION NO. _____
4.7 Anticipation/Lack of Novelty

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a person skilled in the field of the invention would understand that to be the case.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an

24

invention even if the user did not intend to use the invention, or even realize he or she had done so.

In this case, Maritz contends that claims _____ of the '412 patent are invalid because they are anticipated by _____. If you find that Maritz has proved by clear and convincing evidence that claims _____ are anticipated, then you must find that the claims are invalid.[8]

Authority: ABA Model Jury Instructions for Patent Litigation, § 9.6 (2005)

---

[8] Maritz will insert the specific prior art references and claim numbers prior to the jury instruction conference. The precise references and claim numbers cannot be identified until the Court issues its *Markman* ruling, which impacts whether or not the '412 patent is entitled to a filing date of December 14, 1995 or June 25, 1998. The *Markman* ruling also impacts the references upon which Maritz will rely in its validity case. The prior art references that may be included in the final instructions read to the jury will be chosen from the references included in the expert reports of Bruce Bolger and Arthur Keller, the references produced to Affinion in discovery, and/or the references in Maritz's § 282 notice.