# EXHIBIT 1

**Exhibit 1**

**STATEMENT OF ADMITTED FACTS**

1.      Affinion Net Patents, Inc. ("Affinion" or "Plaintiff") is a corporation organized under the laws of the State of Delaware.

2.      Affinion Loyalty Group, Inc. ("Affinion Loyalty") is a Delaware corporation, with its principal place of business in Richmond, Virginia.  Affinion Loyalty operates loyalty programs that utilize the Internet.

3.      Maritz Inc. ("Maritz" or "Defendant") is a Missouri corporation, with its principal place of business in Fenton, Missouri.  Maritz's business includes the development and operation of loyalty and incentive programs, some of which have Internet-related aspects.

4.      The '412 Patent, entitled "Fully Integrated, On-Line Interactive Frequency and Award Redemption Program," was issued by the U.S. Patent and Trademark Office on December 28, 1999.

5.      Thomas Storey is named as the sole inventor of the '412 Patent.

6.      Maritz uses its VAULT system in the operation of loyalty programs.

7.      Maritz's AwardHQ system does not permit a user to apply for membership on-line.

8.      Thomas Storey is listed as the sole inventor of U.S. Patent No. 5,774,870 ("the '870 patent"), which issued on June 30, 1998 from U.S. Patent Application No. 08/572,017, which was filed on December 14, 1995.

9.      Mr. Storey began working for Radisson Hotels as an Executive Vice President of Sales and Marketing in approximately August 1989 and left Radisson in August 1994.

10.     Mr. Storey is listed as one of five inventors on U.S. Patent No. 5,483,444, entitled SYSTEM FOR AWARDING CREDITS TO PERSONS W HO BOOK TRAVEL-RELATED RESERVATIONS ("the '444 patent").  The '444 patent was filed on February 7, 1995, claims priority to an application filed on October 26, 1993, and issued on January 9, 1996.  The five inventors listed on the '444 patent assigned it to Radisson Hotels.

11.     Mr. Storey took a position with Doubletree Hotels after his employment with Radisson, working for Doubletree Hotels for approximately five and one-half years.

12.     In 1995, while employed by Doubletree Hotels, Mr. Storey established and was co-owner of Interactive Promotions Online, Inc.

13.     Joseph Bach was retained as patent counsel to assist in preparing and filing the application which later issued as the '870 patent.  That application, U.S. Patent Application No. 08/572,017 ("the '017 application"), was filed on December 14, 1995.

14.     On or about July 21, 1997, Mr. Storey assigned the '017 patent application to Netcentives.

15.     On or about March 19, 1999, Mypoints.com, Inc. ("Mypoints") filed a Complaint for Declaratory and Injunctive Relief in the United States District Court for the Northern District of California, alleging that the '870 patent was invalid.

16.     U.S. Patent No. 5,794,210 was filed on December 11, 1995 and issued on August 11, 1998.

17.     U.S. Patent No. 5,592,378 was filed on August 19, 1994 and issued on January 7, 1997.

18.     The book Incentives in Marketing, by George Meredith and Robert Fried, was published in 1977.

19.    The article *Despite Prodigy's Shortcomings, You Can Still Reap Big Bonuses* was published in the September 1990 issue of <u>PC Computing</u>.

20.    The article *Mall Hopping on the Internet* was published in the October 10, 1994 issue of <u>Network World</u>.

21.    The article *Power Vision and LA Online Share a Common Goal: Let Your Fingers do the Shopping* was published in the February 1993 issue of <u>Computer Shopper</u>.

22.    The article *Is It Time for Web Surfers to Fill Out Frequent Browser Point Applications* was published in the November 1995 issue of <u>Adweek</u>.

23.    Hilton released the press release *Welcome to HiltonNet! New Hilton Internet Concierge Rolls Out the "Virtual" Red Carpet* in <u>PR Newswire</u> on August 21, 1995.

24.    The article *The Interactive Revolution—How do you get consumers to respond to your promotions?  Through new high-tech routes on the emerging information superhighway* was published in the February 1994 issue of <u>Incentive</u> magazine.

25.    The article *A Shopping Spree in Cyberspace* was published in the September 1, 1995 issue of <u>Catalog Age</u>.

26.    The article *The Internet – How it Will Change the Way You Do Business* was published in the November 14, 1994 issue of <u>Business Week</u>.

27.    The article *Give Cyber-Ready Consumers the Once Over—Computer-Savvy Home-Shopping Segments May Drive Online Sales, Offer Marketing Clues* was published in the June 23, 1995 issue of Interactive Marketing News.

# EXHIBIT 2

**EXHIBIT 2**
**TO JOINT PRETRIAL ORDER**

**AFFINION'S STATEMENT OF THE ISSUES**
**OF FACT THAT REMAIN TO BE LITIGATED**

Affinion contends that the issues of fact that remain to be litigated at trial are as follows:

•      Whether Maritz's use of its VAULT system infringes at least one valid claim of the '412 patent.

•      Whether Maritz's use of its AwardHQ system infringes at least one valid claim of the '412 patent.

•      Whether Maritz violated 35 U.S.C. § 292 by falsely advertising its VAULT system to customers as patent pending.

•      Whether Maritz violated 15 U.S.C. § 1125(a) (the Lanham Act) by falsely advertising its VAULT system to customers as patent pending.

The subsidiary factual issues underlying these dispositive factual issues are as follows:

**I.     INFRINGEMENT**

     1.      Whether Maritz Loyalty Marketing's VAULT system infringes claims 10-17, 27-34 and 36 of the '412 patent?

     2.      Whether Maritz Incentives' AwardHQ system infringes claims 10-16, 27-33 and 36 of the '412 patent?

     3.      Whether Maritz Loyalty Marketing's VAULT system utilizes a program web page?

     4.      Whether Maritz Incentives' AwardHQ system utilizes a program web page?

## II.    VALIDITY

1.    Whether Maritz has proved by clear and convincing evidence that any or all of the asserted claims of the '412 patent are invalid.

2.    Whether Maritz has proved by clear and convincing evidence that internal Carlson documents relating to the Look to Book program are prior art to the '412 patent.

3.    Whether Maritz has proved by clear and convincing evidence that the internal Broadvision work qualifies as prior art to the '412 patent, including proving that the Broadvision work was not abandoned, suppressed or concealed.

4.    Whether Maritz has proved by clear and convincing evidence that the Maritz Goldmail documents qualify as prior art to the '412 patent, including proving that the Goldmail invention was not abandoned, suppressed or concealed.

5.    Whether Affinion has proved an invention date prior to December 14, 1995.

6.    Whether Maritz has proved by clear and convincing evidence that the '887 patent discloses all of the elements of any of the asserted claims of the '412 patent.

7.    Whether Maritz has proved by clear and convincing evidence that the inventions described and claimed in each, or any, of the asserted claims of the '412 patent would have been obvious to a person of ordinary skill in the art at the time the claimed invention was made, in light of the scope and content of the prior art, the differences between each asserted claim of the '412 patent and the prior art, the level of ordinary skill in the art at that time, and objective indicia of non-obviousness.

8.    Whether Maritz has proved by clear and convincing evidence that the prior art would have suggested to one of ordinary skill in the art that the methods claimed in the '412 patent should be carried out.

2

9.    Whether Maritz has proved by clear and convincing evidence that one of ordinary skill in the art would have been motivated to combine the prior art references relied upon by Maritz.

10.    Whether the acceptance of licenses in the industry, the praise of the invention in the field and the commercial success of Affinion's claimed invention, inter alia, establish the non-obviousness of the invention.

## III.    INEQUITABLE CONDUCT

1.    Whether Maritz has proved by clear and convincing evidence that Tom Storey withheld material information from the U.S. Patent and Trademark Office with the intent to deceive the PTO.

## IV.    WILLFULNESS

1.    Whether Maritz infringed the '412 patent while having knowledge of that patent and without having a reasonable good faith belief for concluding that it did not infringe or that the '412 patent was invalid.

2.    Whether Affinion has proved that Maritz lacked a reasonable good faith belief for concluding that it did not infringe the '412 patent.

3.    To the extent Maritz claims reliance on an opinion of counsel to defend against a charge of willful infringement, whether that opinions was a competent opinion written by independent counsel.

## V.    DAMAGES

1.    Whether Affinion has proved that it is entitled to its lost profits on lost sales resulting from Maritz's infringement of the '412 patent and, if so, in what amount.

2.       What reasonable royalty rate is Affinion entitled to for any infringement of the '412 patent by Maritz for which lost profits damages are not awarded.

3.       What sales revenues are subject to the reasonable royalty rate for any infringement of the '412 patent by Maritz for which lost profits damages are not awarded.

4.       The amount of prejudgment interest to which Affinion is entitled on the damages award.

5.       Whether Affinion should be awarded increased damages, and attorneys' fees, due to Maritz's willful infringement of the '412 patent.

6.       Whether Maritz received notice of its infringement of the '412 patent in 2002.

7.       The nature and scope of the injunction to which Affinion is entitled.

## VI.     FALSE MARKING (35 U.S.C. § 292) AND LANHAM ACT (15 U.S.C. § 1125(a))

1.       Whether Affinion has proved that Maritz falsely advertised or presented its VAULT system as patent pending.

2.       Whether Affinion has proved that Maritz made such misrepresentations concerning the VAULT system intentionally.

3.       Whether Affinion has proved that Maritz's false statements concerning the patent status of the VAULT system were material and created a likelihood of injury to Affinion.

EXHIBIT 3

## EXHIBIT 3

## MARITZ'S STATEMENT OF THE CONTESTED ISSUES OF FACT

1.      Whether any of Maritz's Vault programs perform each and every step set forth in independent claims 10, 27, and 36 and/or dependent claims 11-17 and 28-34 so as to directly infringe the '412 patent.

2.      Whether any of Maritz's AwardHQ programs perform each and every step set forth in independent claims 10, 27, and 36 and/or dependent claims 11-17 and 28-34 so as to directly infringe the '412 patent.

3.      Whether claims 12, 13, 29, and/or 30 are invalid because they are not sufficiently definite.

4.      Whether any or all claims of the '412 patent are invalid because of a failure to name all of the inventors.

5.      Whether any or all claims of the '412 patent are entitled to claim priority to the filing date of U.S. Patent No. 5,774,870.

6.      Whether any or all claims of the '412 patent are invalid because it was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the date of invention of the '412 patent.

7.      Whether any claim or all claims of the '412 patent are invalid because it was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for the '412 patent in the United States.

8.      Whether any or all claims of the '412 patent are invalid because it was described in a patent granted on an application for patent by another filed in the United States before the invention of the '412 patent.

9.      Whether any or all claims of the '412 patent are invalid because it was made by another, prior inventor who did not abandon, suppress, or conceal the invention.

10.     Whether any or all claims of the '412 patent are invalid because it was derived from another or would have been obvious based on a combination of the derived information and the prior art.

11.     Whether any or all claims of the '412 patent are invalid because the difference between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

12.     The scope and content of the prior art.

13.     The differences between the prior art and the claims at issue.

14.     The level of ordinary skill in the art.

15.     Whether any secondary considerations exist, which relate to obviousness, and, if so, whether these considerations have a sufficient nexus with the claimed invention.

16.     Whether the '412 patent is unenforceable because the applicant failed to disclose material information to the U.S. Patent Office during the prosecution of the patent application that issued as the '412 patent.

17.     Whether inequitable conduct occurred during the prosecution of one or more patent applications related to '870 patent, and, if so, whether the '412 patent is unenforceable due to the infectious unenforceability impact of this inequitable conduct.

18.     Whether the '412 patent is unenforceable because the plaintiff and its predecessors in interest have engaged in patent misuse by knowingly enforcing and attempting to enforce the '412 patent while knowing it was unenforceable and/or invalid.

19.     Whether the '412 patent is unenforceable on account of the unclean hands of Affinion and others, which has pervaded the '412 patent and related patents, and continued into this litigation, including but not limited to during the prosecution of the patent application leading to the '412 patent.

20.     Whether plaintiff is barred from enforcing the '412 patent because it and/or its predecessors in interest committed laches in enforcing the '412 patent against Maritz.

21.     Whether plaintiff is estopped from enforcing the '412 patent against Maritz.

22.     Whether plaintiff, its predecessors in interest, and all licensees of the '412 patent gave sufficient notice to the public of the '412 patent by consistently and continuously marking the appropriate subject matter with the word "patent" or the abbreviation "pat.", together with the patent number 6,009,412 and/or by giving Maritz actual notice sufficient under 35 U.S.C. § 287 with respect to VAULT or AwardHQ.

23.     *Arguendo*, if a finding of infringement is made, and the '412 patent is not found invalid and unenforceable, whether Maritz had a good faith belief that is did not infringe, and whether Maritz's belief was reasonable under all the circumstances so as to preclude a finding of willful infringement.

24.     *Arguendo*, if a finding of willful infringement is made, whether enhanced damages are justified.

25.     *Arguendo*, if a finding of willful infringement is made, whether this constitutes an exceptional case.

26.    *Arguendo*, if a finding of infringement is made, and the '412 patent is not found invalid and unenforceable, is plaintiff entitled to any lost profits damages, and, if so for which customers, over what period of time and in what amount.

27.    *Arguendo*, if a finding of infringement is made, and the '412 patent is not found invalid and unenforceable, what is a reasonable rate of royalty.

28.    *Arguendo*, if a finding of infringement is made, and the '412 patent is not found invalid and unenforceable, what is the amount of sales to which the reasonable royalty rate applies.

29.    Whether Maritz falsely marked advertising "patent pending" in connection with its VAULT system.

30.    Whether—if, *arguendo*, Maritz falsely marked advertising "patent pending" in connection with its VAULT system -- Maritz acted with the purpose of deceiving the public.

31.    If, *arguendo*, a finding of false marking is made, whether plaintiff is entitled to any damages.

32.    Whether plaintiff has standing to assert claims of false patent marking.

33.    Whether plaintiff has standing to assert a Lanham Act violation.

34.    Whether—if the '412 patent is found to be unenforceable, invalid, or not infringed—this constitutes an exceptional case.

To the extent any issue of law in Exhibit 5 is deemed to be an issue of fact, it is hereby incorporated as if fully set forth herein.  Maritz also incorporates by reference its Brief Statement of What Maritz Intends to Prove at Trial.