EXHIBIT 4

**EXHIBIT 4**
**TO JOINT PRETRIAL ORDER**

**AFFINION'S STATEMENT OF THE ISSUES OF LAW THAT REMAIN**
**TO BE LITIGATED, AND CITATION OF AUTHORITIES RELIED UPON**

Affinion herein sets forth the issues of law that it believes remain to be litigated at trial, and citation of authorities relied upon.

## Table of Contents

| Issue | | | | | | Page |
|---|---|---|---|---|---|---|
| I. | ISSUES ON WHICH AFFINION BEARS THE BURDEN OF PROOF | | | | | 1 |
| | A. | INFRINGEMENT | | | | 1 |
| | | 1. | LITERAL INFRINGEMENT | | | 2 |
| | | | a) | Claim Construction | | 2 |
| | | | b) | Comparing The Claims To The Accused Methods And Products | | 3 |
| | | 2. | INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS | | | 3 |
| | | 3. | MONETARY RELIEF | | | 4 |
| | | | a) | Actual Damages | | 5 |
| | | | | (1) | Time Frame | 5 |
| | | | | (2) | Lost Profits | 5 |
| | | | | (3) | Reasonable Royalty | 8 |
| | | | b) | Prejudgment Interest Under 35 U.S.C. § 284 | | 10 |
| | | | c) | Increased Damages Under 35 U.S.C. § 284 | | 11 |
| | | | d) | Attorneys Fees Under 35 U.S.C. § 285 | | 12 |
| | | | e) | The Marking Statute, 35 U.S.C. § 287(a) | | 13 |
| | | | | (1) | Marking Requirements | 13 |
| | | | | (2) | Notice In Lieu Of Marking | 16 |
| | | 4. | INJUNCTIVE RELIEF | | | 16 |
| | B. | FALSE MARKING AND FALSE ADVERTISING | | | | 18 |
| | | 1. | FALSE MARKING IN VIOLATION OF 35 U.S.C. § 292 | | | 18 |
| | | 2. | FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(A) | | | 20 |
| II. | ISSUES ON WHICH MARITZ BEARS THE BURDEN OF PROOF | | | | | 22 |
| | A. | WANT OF TITLE | | | | 22 |
| | B. | VALIDITY | | | | 22 |
| | | 1. | NONJOINDER OF INVENTOR(S) | | | 22 |
| | | | a) | Joint Inventorship Standard | | 23 |

|  |  | b) | Correction Of Inventorship | 24 |
|  | 2. |  | 35 U.S.C. § 102—NOVELTY AND STATUTORY BARS | 25 |
|  |  | a) | Description in a Publication | 27 |
|  |  | b) | Knowledge, Use or Invention | 29 |
|  |  |  | (1) Use—§ 102(a) | 29 |
|  |  |  | (2) Knowledge—§ 102(a) | 30 |
|  |  |  | (3) Invention—§ 102(g)(2) | 30 |
|  |  | c) | Patenting—§ 102(a) | 33 |
|  |  | d) | Description in a U.S. Patent—§ 102(e) | 34 |
|  |  | e) | Proof of Pre-Filing Invention | 34 |
|  |  | f) | The § 102(b) Statutory Bar | 35 |
|  | 3. |  | NONOBVIOUSNESS—35 U.S.C. § 103 | 36 |
|  |  | a) | Scope of the Prior Art | 37 |
|  |  | b) | Time Frame—Hindsight | 38 |
|  |  | c) | Reference Teachings | 39 |
|  |  | d) | Prior U.S. Patent Application—§ 102(e) | 41 |
|  |  | e) | Prior Invention in this Country by Another—§ 102(g) | 41 |
|  |  | f) | Level of Ordinary Skill | 41 |
|  |  | g) | Differences Between Prior Art and Claims | 41 |
|  |  | h) | Conclusion As To Obviousness | 42 |
|  |  | i) | Objective Considerations | 43 |
| C. |  |  | INEQUITABLE CONDUCT | 44 |
|  | 1. |  | Materiality | 45 |
|  | 2. |  | Intent | 47 |
|  | 3. |  | Balancing Materiality and Intent | 47 |
|  | 4. |  | Roles of Judge and Jury | 48 |
|  | 5. |  | Infectious Enforceability | 48 |
| D. |  |  | PATENT MISUSE | 50 |
| E. |  |  | UNCLEAN HANDS | 53 |
| F. |  |  | LACHES AND/OR ESTOPPEL | 53 |
|  | 1. |  | Laches | 54 |
|  | 2. |  | Estoppel | 55 |
| G. |  |  | EXCEPTIONAL CASE | 55 |

# I.    ISSUES ON WHICH AFFINION BEARS THE BURDEN OF PROOF

## A.    INFRINGEMENT

35 U.S.C. § 271(a) (2000) provides:

Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

A patent confers the right to exclude others from making, using, selling or offering for sale the patented invention. Id. One making, using or selling matter covered by a patent without authority of the owner infringes regardless of knowledge or intent. Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 645 & 654 n.5 (1999). Knowledge and intent do affect the damages that may be recovered for infringement. If infringement is willful, the court may enhance damages and award attorney fees. 35 U.S.C. §§ 284-85 (2000).

Making a device capable of infringing use constitutes infringement even though it may be capable of noninfringing use. Bell Commc'ns. Research v. Vitalink Commc'ns Corp., 55 F.3d 615, 622-23 (Fed. Cir. 1995).

A process consists of one or more operative steps, Chisum on Patents § 1.03 (Donald S. Chisum ed., 2006), and, accordingly, direct infringement by unauthorized use of a process consists of the performance of all the process's operative steps, Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993).

It is not necessary for the acts that constitute infringement to be performed by one person or entity. On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1344-45 (Fed. Cir. 2006), When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. Id. Infringement of a patented process or method cannot be avoided by having another perform one

step of the process or method. Id.

A patent owner bears the burden of proving infringement either literally or under the doctrine of equivalents. PSC Computer Prods., Inc. v. Foxconn Int'l, Inc. 355 F.3d 1353, 1357 (Fed. Cir. 2004). The burden of persuasion is the usual one in civil litigation—proof by a preponderance of the evidence. Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1367 (Fed. Cir. 2004). A patentee may establish infringement by testimonial or other evidence. Forest Labs., Inc. v. Abbott Labs., 239 F.3d 1305, 1312 (Fed. Cir. 2001), and may rely on appropriate inferences and admissions, San Huan New Materials High Tech., Inc. v. I.T.C., 161 F.3d 1347 (Fed. Cir. 1998).

## 1.    LITERAL INFRINGEMENT

The language of the claim or claims in the specification of a patent is the measure of the exclusive rights conferred by that patent. Thus, an infringement analysis involves two steps. "First, the court determines the scope and meaning of the patent claims asserted… and then the properly construed claims are compared to the allegedly infringing device…." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).

A patent may contain many claims, but each claim is considered individually in determining infringement. Thus, a patent is infringed if any one valid claim is infringed. Mycogen Plant Sci., Inc. v. Monsanto Co., 61 F. Supp. 2d 199, 242 (D. Del. 1999), aff'd, 243 F.3d 1316 (Fed. Cir. 2001).

### a)    Claim Construction

Claim construction is a matter of law, to be decided by the trial judge, not a jury. Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). Claim construction has been briefed in this case, and the parties are currently awaiting a claim construction ruling from the Court.

b)    **Comparing The Claims To The Accused Methods and Products**

Claims in patents are typically drafted in the form of a preamble, transition and one or more elements. Each element constitutes a limitation or narrowing of the scope of the claim. It follows that a claim will not cover or "read on" any device or process unless that device or process contains all the elements of the claim (or an equivalent thereof within the meaning of the doctrine of equivalents). TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C., 375 F.3d 1126, 1138-39 (Fed. Cir. 2004). Court decisions refer to this fundamental patent law principle as the "all elements rule," and a comparable "all steps" rule applies to process and method claims. Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1259 (Fed. Cir. 1989).

An accused device or process may contain all the elements of the claim but also add other matter. A claim using "comprising" as a transition is construed as an "open claim", i.e., it will read on devices or processes that add additional elements. Smith & Nephew, Inc. v. Ethicon, Inc., 276 F.3d 1304, 1311, 1318 (Fed. Cir. 2001). Addition of an element or step to an accused product or process cannot avoid infringement. Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1482 (Fed. Cir. 1984).

Claims are not limited to the preferred embodiment or best mode described in the patent. Fuji Photo Film Co. v. I.T.C., 386 F.3d 1095, 1106 (Fed. Cir. 2004).

"Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit." SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).

### 2.    INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Under the doctrine of equivalents, "a product or process that does not literally infringe

upon [sic] the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements [sic] of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (citation omitted). The "all limitations rule" restricts the doctrine of equivalents by preventing its application when doing so would vitiate a claim limitation. Id. at 29 (stating that the doctrine of equivalents cannot be applied broadly so as to "effectively eliminate that [claim] element in its entirety").

An element in the accused product or process is equivalent to a claim limitation if the differences between the two are insubstantial. One test is whether the element in the accused device or process "performs substantially the same function in substantially the same way to obtain the same result" as the claim limitation. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950) (internal quotation omitted). Whether the element in the accused device or process is known to be interchangeable with the claim limitation is also relevant to determining equivalency. Warner-Jenkinson, 520 U.S. at 37.

### 3.    MONETARY RELIEF

The patent statutes provide for the recover of compensatory damages as the primary monetary remedy for patent infringement. 35 U.S. § 284 (2000) provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

> When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. Increased damages under this paragraph shall not apply to provisional rights under section 154(d) of this title.

> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

The goal of the law of monetary relief for patent infringement is to provide full compensation to the owner of the patent for the infringer's illicit activity. The patent owner is to be restored financially to the position he would have occupied but for the infringement. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

The appropriate measure of compensatory damages may be (1) lost profits, (2) an established royalty, or (3) a reasonable royalty, depending on the circumstances of the case. Smithkline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1163 (Fed. Cir. 1991).

### a)     Actual Damages

#### (1)     Time Frame

Where an assignment of a patent is coupled with an express assignment of a right of action for past infringement, the assignee is entitled to recover money damages for infringement occurring during the time the assignor owned the patent. See Minco Inc. v. Combustion Eng'g, 95 F.3d 1109, 1117 (Fed. Cir. 1996); Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991).

A patent owner may show that it lost profits from a subsidiary's sales because of Defendants' alleged infringement. SEB, S.A. v. Montgomery Ward & Co., 412 F. Supp. 2d 347 n.16 (S.D.N.Y. 2006). Lost profit damages may be recovered for time periods during which the parent company owned the patent and its subsidiary sold the patented product. See Fisher-Price, Inc. v. Safety 1st, Inc., 109 Fed. Appx. 387, 397 (Fed. Cir. 2004). This was briefed in the Opposition of Affinion Net Patents, Inc. to Defendant's Motion For Partial Summary Judgment Limiting Claims For Lost Profits Damages, D. I. 184.

#### (2)     Lost Profits

Lost profits, in the form of sales diversion, price erosion, or increased expense, are an

appropriate basis for recovery when the patent owner exploits the lawful exclusive rights of the patent directly by manufacture, use or sale. <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 72 F.3d 857, 867 (Fed. Cir. 1995).

A patent owner may recover as a measure of damages the lost profits caused by the illicit competition of an infringer. The owner must establish a factual basis for causation, <u>i.e.</u>, that but for the infringer's improper acts, he would have made greater sales of a certain amount, would have charged higher prices, or would have incurred lower expenses. <u>Ericsson, Inc. v. Harris Corp.</u>, 352 F.3d 1369, 1377 (Fed. Cir. 2003); <u>Vulcan Eng'g Co. v. FATA Aluminum, Inc.</u>, 278 F.3d 1366, 1377 (Fed. Cir. 2002); <u>Herbert v. Lisle Corp.</u>, 99 F.3d 1109, 1119 (Fed. Cir. 1996). Causation need be proved only as a reasonable probability. An inference that the patent owner lost sales equal in quantity to those actually made by the infringer may arise if the two were the only suppliers of a unique and demanded product and the owner had or could have acquired the capacity to meet the full demand. <u>Water Techs. Corp. v. Calco, Ltd.</u>, 850 F.2d 660, 671 (Fed. Cir. 1988); <u>Fuji Photo Film Co. v. Jazz Photo Corp.</u>, 249 F. Supp. 2d 434 (D.N.J. 2003).

The patent owner need not demonstrate causation as a certainty; evidence showing a reasonable probability will suffice. <u>Rite-Hite Corp.</u>, 56 F.3d at 1545. A patent owner need not negate every possibility that a purchaser might not have bought another product or might not have bought any comparable product at all. <u>King Instrument Corp. v. Otari Corp.</u>, 767 F.2d 853, 864 (Fed. Cir. 1985). Causation may be inferred from appropriate circumstances. <u>Kaufman Co. v. Lantech, Inc.</u>, 926 F.2d 1136, 1141 (Fed. Cir. 1991).

Courts have long held that an inference that the patent owner lost sales equal in quantity to the infringing sales may arise if the patent owner establishes (1) demand for the patented product, (2) an absence of acceptable non-infringing alternatives, and (3) his own capacity to

have met that demand. <u>Kaufman Co. v. Lantech, Inc.</u>, 926 F.2d 1136 (Fed. Cir. 1991); <u>Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.</u>, 575 F.2d 1152, 1156 (6th Cir. 1978).

Evidence of causation has been found sufficient when the patent owner lost the sales to the infringer under a bidding system. <u>Wallace & Tiernan Co. v. City of Syracuse</u>, 45 F.2d 693, 695 (2nd Cir. 1930) ("The evidence of lost sales was sufficient, since the plaintiff had bid on both jobs, and stood willing to do the work."); <u>Manville Sales Corp. v. Paramount Sys. Inc.</u>, 14 U.S.P.Q.2d 1291 (E.D. Pa. 1989) , <u>further opinion</u>, 14 U.S.P.Q.2d 1299 (E.D. Pa. 1989), <u>aff'd in part and rev'd in part</u>, 917 F.2d 544 (Fed. Cir. 1990); <u>Ortloff Corp. v. Gulsby Eng'g Inc.</u>, 706 F. Supp. 1295 (S.D. Tex. 1988), <u>aff'd</u>, 884 F.2d 1399 (Fed. Cir. 1989).

Lost profits damages can be recovered based on a "market share" theory. <u>State Indus., Inc. v. Mor-Flo Indus., Inc.</u>, 883 F.2d 1573, 1577 (Fed. Cir. 1989). Awarding lost profits based on market share is proper if the patentee shows an established market share in lieu of the absence of acceptable noninfringing alternatives (the second part of <u>Panduit</u>) and meets the other <u>Panduit</u> factors. <u>Id.</u>

In addition to causation, the patent owner must establish a reasonable approximation of the amount of lost profits. <u>Panduit</u>, 575 F.2d at 1156. However, the patent owner must prove only a "reasonable approximation" of what its profits would have been but for the infringement. When the amount of the damages is not ascertainable with precision, reasonable doubt is appropriately resolved against the infringer. <u>Del Mar Avionics, Inc. v. Quinton Instrument Co.</u>, 836 F.2d 1320, 1327 (Fed. Cir. 1987). As to price, the owner may generally use the pre-infringement price level. <u>King Instrument Corp.</u>, 767 F.2d at 864. The owner need deduct only the incremental costs which the additional sales would have required. <u>Paper Converting Machine Co. v. Magna-Graphics Corp.</u>, 745 F.2d 11, 22 (Fed. Cir. 1984).

A patent owner may recover a mixed award with lost profits on some sales and an established or reasonable royalty on other sales. Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1354 (Fed. Cir. 2001); State Indus., Inc., 883 F.2d at 1577.

### (3)    Reasonable Royalty

Absent sufficient evidence of lost profits or an established royalty, the patent owner may in any case recover against the infringer not less than a reasonable royalty. Rite-Hite, 56 F.3d at 1574.

A reasonable royalty for use of the patented invention is judicially defined as that amount which would have been set in a hypothetical negotiation between a willing patent owner and a willing potential user as of the date when the infringement began in fact and on the assumption that the patent was valid and entitled to respect. Id., 56 F.3d at 1554; Panduit, 575 F.2d at 1158; St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc., No. 03-241, 2004 WL 2213562 (D. Del. Sept. 28, 2004). In determining this hypothetical license rate, the courts consider a variety of factors or categories of evidence. The most influential factor is that of prior and existing licenses negotiated under the patent in suit. Mobil Oil Corp. v. Amoco Chems. Corp., 915 F. Supp. 1333, 1353 (D. Del. 1994). The profits or benefits to be anticipated from use of the invention is also given weight as such normally constitutes a limit on the amount a willing user would agree to pay as a royalty.

Courts focus on a number of factors set forth in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970) as probative of what rate would have been set in the license:

1.    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.    The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.    The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6.    The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.    The duration of the patent and the term of the license.

8.    The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.    The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.    The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.    The opinion testimony of qualified experts.

15.    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the

9

> amount which a prudent licensee--who desired, as a business proposition, to
> obtain a license to manufacture and sell a particular article embodying the
> patented invention--would have been willing to pay as a royalty and yet be able to
> make a reasonable profit and which amount would have been acceptable by a
> prudent patentee who was willing to grant a license.

Id. at 1120.

In determining a reasonable royalty rate the court, of necessity, must make an informed

estimate or approximation.  Nevertheless, the rate must be supported by evidence in the record

and not mere conjecture.  Unisplay, S.A. v. Am. Elec. Sign Co., 69 F.3d 512, 517 (Fed. Cir.

1995).  To aid in the proof process, Section 284 expressly affirms the admissibility of expert

testimony.  Courts also admit evidence of subsequent events as a basis for inferring what royalty

rate would have been set in hypothetical negotiations as of the date when the infringement began.

Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689 (1933).

### b)    Prejudgment Interest Under 35 U.S.C. § 284

Section 284 authorizes the award of "interest ... as fixed by the court."  This confers

discretion on the trial judge to award interest on the measure of money damages from a date

prior to the judgment, such as the date when an established or reasonable royalty should have

been paid.  Such prejudgment interest will ordinarily be awarded in order to provide full

compensation to the patent owner:

> In the typical case an award of prejudgment interest is necessary to ensure that the
> patent owner is placed in as good a position as he would have been in had the
> infringer entered into a reasonable royalty agreement.  An award of interest from
> the time that the royalty payments would have been received merely serves to
> make the patent owner whole, since his damages consist not only of the value of
> the royalty payments but also of the foregone use of the money between the time
> of infringement and the date of the judgment.

Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 655-56 (1983).  Denial of prejudgment interest

also grants a windfall to the infringer and creates an incentive to prolong litigation.  Id. at 655

n.10.

The district court has discretion to fix the rate at the statutory rate or at a higher rate based on a proper showing, NTP, Inc. v. Research in Motion, Ltd., 270 F. Supp. 2d 751, 763 (E.D. Va. 2003), and has discretion whether to award compound or simple interest, id.

### c)    Increased Damages Under 35 U.S.C. § 284

The patent remedy statute authorizes the court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284 (2000). The decision to increase damages is discretionary with the trial court. SRI Int'l v. Advanced Tech. Labs., 127 F.3d 1462, 1468-69 (Fed. Cir. 1997).

The most common basis for increased damage awards is willful infringement. State Indus. Inc., 883 F.2d at 1577. The finding of willful infringement is one of fact which the Federal Circuit will not reverse unless clearly erroneous. Spindelfabrik Suessen-Schurr Stahlecker & Grill GmBH v. Schubert & Salzer Maschinenfabric AG, 829 F.2d 1075, 1083 (Fed. Cir. 1987). Willful infringement must be established by clear and convincing evidence, Comark Commc'n, Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998), and the trial court should make explicit findings to provide a basis for appellate review. Read Corp. v. Portec, Inc., 970 F.2d 816, 828 (Fed. Cir. 1992).

Courts should consider the "totality of the circumstances" in determining willfulness. SRI, 127 F.3d at 1465. In Read, the Federal Circuit listed the following nine factors that "assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages and how much damages should be increased":

1.    whether the infringer deliberately copied the ideas or design of another;

2.    whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

3.      the infringer's behavior as a party to the litigation; ….

4.      the Defendant's size and financial condition[;]

5.      the Closeness of the case[;]

6.      the Duration of defendant's misconduct[;]

7.      Remedial action by the defendant[;]

8.      Defendant's motivation for harm[; and]

9.      whether defendant attempted to conceal its misconduct.

Read Corp., 970 F.2d at 827-28 (citations omitted).

A person with actual notice of another's patent rights has an affirmative duty to exercise due care to determine whether his acts will be infringing, including the duty to seek and follow competent legal advice before beginning activity that may constitute patent infringement. Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983); Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577 (Fed. Cir. 1983). Acting on patent counsel's timely advice may shield an infringer from a willful infringement charge. Kalman v. Berlyn Corp., 914 F.2d 1473, 1484 (Fed. Cir. 1990). Absence of counsel's advice suggests, Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1428 (Fed. Cir. 1988), but does not mandate, Nickson Indus., Inc. v. Rol Mfg. Co., 847 F.2d 795 (Fed. Cir. 1988) a willfulness finding.

### d)      Attorneys Fees Under 35 U.S.C. § 285

The patent statute authorizes the court "in exceptional cases" to award "reasonable attorneys fees to the prevailing party." 35 U.S.C. § 285 (2000). The award of such fees is discretionary with the trial court, Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1087-88 (Fed. Cir. 2003), but such discretion may only be exercised upon a specific finding of exceptional circumstances, Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1363 (Fed. Cir.

2003); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1580 (Fed. Cir. 1996). In the case of a

prevailing patent owner, such circumstances consist of willful or deliberate infringement by the

infringer or bad faith continuation of litigation. Tate Access Floors, Inc. v. Maxcess Techs., 222

F.3d 958, 972 (Fed. Cir. 2000); Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d

1547, 1552 (Fed. Cir. 1989); Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1567

(Fed. Cir. 1988). These grounds are similar to those justifying the award of increased damages.

Tristrata Tech., Inc. v. ICN Pharms., Inc., 314 F. Supp. 2d 356, 362 (D. Del. 2004).

e)      **The Marking Statute, 35 U.S.C. § 287(a)**

Compliance with the marking statute is a question of fact upon which the patent holder

bears the burden of proof by a preponderance of the evidence. Nike Inc. v. Wal-Mart Stores, 138

F.3d 1437, 1447 (Fed. Cir. 1998). Section 287 limits only a patentee's ability to recover pre-

notice damages. Wiener v. NEC Elecs., Inc., 102 F.3d 534, 542 (Fed. Cir. 1996). Courts have

"carved out" time periods where § 287(a) was complied with or not implicated and awarded

damages for those time periods, even where those periods were followed by time periods where

§ 287(a) was not complied with. See Tulip Computers Int'l v. Dell Computer Corp., No. 00-981,

2003 WL 1606081, at *13 (D. Del. Feb. 4, 2003); Clancy Sys. Int'l, Inc. v. Symbol Techs., Inc.,

953 F. Supp. 1170, at 1174 (D. Colo. 1997).

(1)      **Marking Requirements**

Patent marking was previously briefed in Opposition Of Affinion Net Patents, Inc. To

Defendant's Motion For Summary Judgment Regarding Presuit Damages, D.I. 188.

The first half of 35 U.S.C. § 287(a) (2000) states:

Patentees, and persons making, offering for sale, or selling within the United
States any patented article for or under them, or importing any patented article
into the United States, may give notice to the public that the same is patented,
either by fixing thereon the word "patent" or the abbreviation "pat.", together with
the number of the patent, or when, from the character of the article, this can not be

done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.

The purpose of § 287(a) is to help avoid innocent infringement by encouraging patentees to give notice to the public that the patented articles it distributes are patented and thereby to help the public identify such patented articles. See Nike Inc., 138 F.3d at 1443 and cases cited therein. That does not mean, however, that a patentee must always mark a product in order to recover damages arising before actual notice. If the patentee does not sell an article, for example, there is no duty to mark. See Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co., 297 U.S. 387, 395 (1936) (the marking statute does not impose a "duty to the public impossible of performance" when no article is sold by the patentee); Am. Med. Sys. v. Med. Eng'g Corp., 6 F.3d 1523, 1537-38 (Fed. Cir. 1993); Tulip Computers, 2003 WL 1606081 at *15 ("Section 287(a) is triggered by the unmarked sale of patented articles by the patentee and precludes recovery of damages from the date of that triggering event until notice is given to the infringer."); Loral Fairchild, 906 F. Supp. at 816. It is only when the patentee is contributing to the problem of innocent infringement by distributing unpatented articles that § 287(a) is implicated and precludes recovery of infringement damages. See Tulip Computers, 2003 U.S. Dist. LEXIS 5409, at *59-60.

Marking also generally is not required to recover damages for infringement of method claims. See Bandag, Inc. v. Gerrard Tire Co., 704 F.2d 1578, 1581 (Fed. Cir. 1983) (citing Wine Ry. Appliance Co.); Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1082-83 (Fed. Cir. 1983). "The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed only to a method or process there is nothing to mark." Am. Med. Sys., 6 F.3d at 1538. The Federal Circuit has carved out a narrow exception to this rule where (1) the asserted patent contains both claims directed to a product and claims directed to

14

methods for making or using the claimed product, and (2) the patentee distributes a product

covered by the product claims to the public.  See id. at 1538-39 (asserted patent contained claims

to the product and of making and sterilizing the patented product); Devices for Med., Inc. v.

Boehl, 822 F.2d 1062, 1063 (Fed. Cir. 1987) (asserted patents contained claims to an apparatus

and methods of using that apparatus).  The Federal Circuit held in these cases that the patentee

must mark the products covered by the product claims to claim lost profits for infringement of

the method claims because marking the distributed product covered by the asserted patent gives

notice of the asserted patent and thus also notice of the method claims in the patent.  See Am.

Med. Sys., 6 F.3d at 1538-39 ("Where the patent contains both apparatus and method claims,

however, to the extent that there is a tangible item to mark by which notice of the asserted

method claims can be given, a party is obliged to do so if it intends to avail itself of the

constructive notice provisions of section 287(a)."); Devices for Med., 822 F.2d at 1066 ("The

claimed method is the use of the product.  Having sold the product unmarked, DFM could hardly

maintain entitlement to damages for its use by a purchaser uninformed that such use would

violate DFM's method patent."); see also Loral Fairchild, 906 F. Supp. at 817 ("American

Medical clarifies that a patentee must mark a product covered by a patent with both method and

product claims.").

  The marking statute contemplates marking on the patented article itself, on a label fixed

to it, or on a label fixed to the package containing it.  See 35 U.S.C. § 287(a) (2000).  When the

patentee is found to have a duty to mark, numerous courts have deemed marking promotional

and other materials associated with the patented product inadequate.  See Stryker Corp. v.

Intermedics Orthopedics, 891 F. Supp. 751, 829 (E.D.N.Y. 1995) (marking product brochures or

advertisements not sufficient); see also Advanced Med. Optics, Inc. v. Alcon Labs., Inc., No. 03-

1095, 2005 U.S. Dist. LEXIS 33369, at *6 (D. Del. Dec. 16, 2005) (marking of owners manuals

not sufficient); Metrologic Instruments, Inc. v. PSC, Inc., No. 99-4876, 2004 U.S. Dist. LEXIS

24949, at *55 (D.N.J. Dec. 13, 2004) (marking of user's guide not sufficient); John L. Rie, Inc.

v. Shelly Bros., Inc., 366 F. Supp. 84, 90-91 (E.D. Pa. 1973) (marking package not sufficient

where article could have been marked).

### (2)    Notice In Lieu Of Marking

The second half of 35 U.S.C. § 287(a) (2000) states as follows:

> In the event of failure so to mark, no damages shall be recovered by the patentee
> in any action for infringement, except on proof that the infringer was notified of
> the infringement and continued to infringe thereafter, in which event damages
> may be recovered only for infringement occurring after such notice. Filing of an
> action for infringement shall constitute such notice.

The second half of § 287(a) permits recovery of damages for infringement occurring after

the date the infringer was notified of the infringement.

"Actual notice requires the affirmative communication of a specific charge of

infringement by a specific accused product or device." Amsted Indus. Inc. v. Buckeye Steel

Castings Co., 24 F.3d 178,187 (Fed. Cir. 1994).

### 4.    INJUNCTIVE RELIEF

The patent statutes empower the courts to "grant injunctions in accordance with the

principles of equity to prevent the violation of any right secured by patent, on such terms as the

court deems reasonable." 35 U.S.C. § 283 (2000); Metabolite Labs., Inc. v. Lab. Corp. of Am.

Holdings, 370 F.3d 1354, 1360 (Fed. Cir. 2004). "[T]he decision whether to grant or deny

injunctive relief rests within the equitable discretion of the district courts, and that such

discretion must be exercised consistent with the traditional principles of equity." eBay Inc. v.

MercExchange, L.L.C., 126 S. Ct. 1837, 1841 (2006).

The Supreme Court has instructed both district courts and the Federal Circuit to apply

"the traditional four-factor framework that governs the award of injunctive relief," Id.  A

plaintiff seeking a permanent injunction must demonstrate:

1.    that it has suffered an irreparable injury;
2.    that remedies available at law, such as monetary damages, are inadequate
      to compensate for that injury;
3.    that, considering the balance of hardships between the plaintiff and
      defendant, a remedy in equity is warranted; and
4.    that the public interest would not be disserved by a permanent injunction.

Id. (paragraphing added).

Irreparable harm is merely a specific application of the general doctrine that equitable

relief cannot be granted unless plaintiff shows that the remedy at law is inadequate.  Chisum

§ 20.04[1][e].  Irreparable harm is presumed when a patent has been clearly shown to be valid

and infringed.  Ranbaxy Pharms., Inc. v. Apotex, Inc., 350 F.3d 1235 (Fed. Cir. 2003);

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).  A "clear

showing" of validity and infringement is satisfied where those issues have been tried and the

fact-finder has determined that the patent in question was infringed and is not invalid.

Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 106 F. Supp. 2d 696, 701

(D.N.J. 2000).  The presumption can be rebutted.  Polymer Techs. Inc. v. Bridwell, 103 F.3d

970, 973 (Fed. Cir. 1996).

It is a paramount right of a patentee to exclude whomever it wishes from practicing the

claimed invention.  See 35 U.S.C. § 154 (2000) (granting patentees the right to exclude others

from making, using, or selling the patented invention).  Where the infringing products will

continue to infringe and thus damage a plaintiff in the future, monetary damages are generally

considered inadequate.  E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 659 F. Supp.

92, 94 (D. Del. 1987), aff'd in part & rev'd in part, 849 F.2d 1430 (Fed. Cir. 1988).  Odetics, Inc.

v. Storage Tech. Corp., 14 F. Supp. 2d 785, 795 (E.D. Va. 1998).

17

> Without this injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined. The patent owner would lack much of the "leverage," afforded by the right to exclude, to enjoy the full value of his invention in the market place. Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.

Smith Int'l Inc. v. Hughes Tool Co., 718 F.2d 1573, 1577-81 (Fed. Cir. 1983).

As to comparative hardship, the court will usually grant relief unless the balance tips decidedly in favor of the defendant. Such may be the case when (1) the defendant merely uses an infringing apparatus and does not compete with the plaintiff in manufacture and sale, (2) the defendant is a small company with little impact on the plaintiff's overall market, or (3) the injunction would idle a substantial manufacturing establishment. See Chisum § 20.04[1][f][1] and cases cited therein. In the words of the Federal Circuit, "one who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." Windsurfing Int'l v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

The public-interest factor often favors the patentee, given the public's interest in maintaining the integrity of the patent system. See Eli Lilly & Co. v. Medtronic, Inc., 1988 US Dist. LEXIS 17587, at *25 (E.D. Pa. 1988), rev'd on other grounds, 872 F.2d 402 (Fed. Cir. 1989). Only rarely will the public interest be seriously affected by the grant or denial of a preliminary injunction in a patent case. See Chisum at § 20.04[1][f][ii] and cases cited therein.

## B.    FALSE MARKING AND LANHAM ACT CLAIMS

### 1.    FALSE MARKING IN VIOLATION OF 35 U.S.C. § 292

35 U.S.C. § 292 (2000) provides in relevant part as follows:

(a) ...  Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—
Shall be fined not more than $ 500 for every such offense.
(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

Id.

False marking requires (1) use of the term "patent" or "patent pending" (2) affixed to or falsely used in advertising in connection with (3) an unpatented article (4) with the intent to deceive the public.  See Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352-53 (Fed. Cir. 2005); Douglas v. Wal-Mart Stores, Inc., 78 U.S.P.Q.2d 1927, 1933 (E.D. Pa. 2005); Cal. Med. Prods. v. Tecnol Med. Prods., 921 F. Supp. 1219, 1261 (D. Del. 1995).

Intent is determined by an objective standard, where "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent."  Clontech Labs., 406 F.3d at 1352 (Fed. Cir. 2005) (citation omitted).  A party can show knowledge of falsity by establishing that the accused did not have a reasonable belief that the articles in question were covered by the patent or application.  Id.  "[T]he mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability.  Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood."  Id.

The remedy for false marking is a fine of $500 for every offense of false marking as defined under the statute.  35 U.S.C. § 292(a) (2000); Clontech Labs., 406 F.3d at 1351-52 ("fine is invoked" at instances of false marking).  The claimant is entitled to one-half the penalty recovered, with the other half going to the United States.  35 U.S.C. § 292(b) (2000).

19

Section 292(b) provides that "any person" may sue for false marking, Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 765 (Fed. Cir. 1990), and a corporation constitutes a "person" for purposes of the statute, Trabon Eng'g Corp. v. Eaton Mfg. Co., 37 F.R.D. 51 (N.D. Ohio 1964); Rembrandt Elecs., Inc. v. Spirling Prods. Co., 137 U.S.P.Q. 870 (E.D.N.Y. 1963). Proof of injury is not required for standing. Fear v. Horner Sales Corp., 84 U.S.P.Q. 267, 268 (W.D. Pa. 1950); Brose v. Sears, Roebuck & Co., 455 F.2d 763, 766 (5th Cir. 1950).

## 2.    FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, provides in relevant part:

> (a)(1) Any person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (2000). The elements of a false advertising claim under the Lanham Act are:

1.    defendant made false or misleading statements as to its product, or those of the plaintiff;

2.    actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3.    the deception was material in that it is likely to influence purchasing decisions;

4.    the advertised goods traveled in interstate commerce; and

5.    a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994); Moore N. Am., Inc. v. Poser Bus. Forms, Inc., No. 97-712, 2000 U.S. Dist. LEXIS 14651, *14-15 (D. Del. Sept. 29, 2000). False marking can constitute literally false statements under the Lanham Act. See M-3 & Assocs. v. Cargo Sys., Inc., No. 3:99-547,

2004 U.S. Dist. LEXIS 6605 (N.D. Ind. Mar. 18, 2004); <u>Blank v. Pollack</u>, 916 F. Supp 165, 172

(N.D.N.Y. 1996) (A claim that a party made misrepresentations that a product is patent pending

falls within the purview of the Lanham Act.).  Intent to mislead is not an element of the false

marking claim.  <u>Johnson & Johnson-Merck</u>, 19 F.3d at 129.

 The remedies for a false marking claim include recovery of (1) defendant's profits, (2)

any damages sustained by the plaintiff, and (3) the cost of the action, 15 U.S.C. § 1117(a)

(2000), as well as an injunction, <u>id.</u> at § 1116.  The claimant can recover both profits and

damages where the offending party's conduct is willful.  <u>Callaway Golf Co. v. Dunlop

Slazenger</u>, 384 F. Supp. 2d 735, 740 (D. Del. 2005).

 To have standing to bring a claim under this provision, "(1) the plaintiff must have

suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct

complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial

decision."  <u>Joint Stock Soc'y v. UDV N. Am., Inc.</u>, 266 F.3d 164, 175 (3rd Cir. 2001), and also

must have a "reasonable interest" in being protected by false advertising.  <u>Thorn v. Reliance Van

Co.</u>, 736 F.2d 929, 933 (3d Cir. 1984).  To determine whether one has a "reasonable interest,"

the following five factors are to be considered:

1. The nature of the plaintiff's alleged injury, i.e., is the injury of a type that Congress sought to redress in providing a private remedy for violations of the Lanham Act?

2. The directness or indirectness of the asserted injury.

3. The proximity or remoteness of the party to the alleged injurious conduct.

4. The speculativeness of the damages claim.

5. The risk of duplicative damages or complexity in apportioning damages.

<u>Joint Stock Soc'y</u>, 266 F.3d at 179; <u>Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.</u>, 165

F.3d 221, 233 (3rd Cir. 1998).

## II.     ISSUES ON WHICH MARITZ BEARS THE BURDEN OF PROOF

### A.     WANT OF TITLE

The owner of record title of a patent is the proper party to bring suit in this court under 28 U.S.C. § 1498. N. V. Montan Export-Metaal Handel-Maatschappij v. U.S., 102 F. Supp. 1016, 1017 (Ct. Cl. 1952). It is well settled that in patent litigation between private parties, equitable rights of a third party to the patent in suit cannot be raised as defenses against the legal titleholder of a patent. FilmTec Corp. v. Hydranautics, 982 F.2d 1546, 1550 (Fed. Cir. 1992); Dorr-Oliver, Inc. v. U.S., 432 F.2d 447, 451 (Ct. Cl. 1970); Mercantile Nat'l Bank v. Howmet Corp., 524 F.2d 1031, 1034 (7th Cir. 1975); Havel v. Cyclops Corp., No. 81-2284, 1983 U.S. Dist. LEXIS 13350, at *4 (W.D. Pa. Sept. 28, 1983).

### B.     VALIDITY

Once issued, a patent is presumed to be valid, and the burden rests on a party attacking it to show invalidity by clear and convincing evidence. Smiths Indus. Med. Sys. Inc. v. Vital Signs Inc., 183 F.3d 1347, 1356 (Fed. Cir. 1999). A patent claim must be construed in order to determine whether it complies with the requirements of patentability. It is axiomatic that a claim must be interpreted the same way in determining infringement and invalidity. Amazon.com Inc., 239 F.3d at 1351.

#### 1.     NONJOINDER OF INVENTOR(S)

Nonjoinder of inventors has long been viewed as a "technical" defect, not to be favored as objections or defenses to patent rights. Canon Computer Sys. v. Nu-Kote Int'l, 134 F.3d 1085, 1089 (Fed. Cir. 1998). An application filed in the Patent and Trademark Office with an oath proper in form is presumed to be correct in its inventorship designation. Van Oteren v. Hafner, 278 F.2d 738, 741 (C.C.P.A. 1960). After the patent issues, the patent is presumed valid, 35 U.S.C. § 282, and the burden is on one attacking the validity of the patent to establish that the

22

inventorship determination is incorrect by clear and convincing evidence.  Caterpillar Inc. v.

Sturman Indus., 387 F.3d 1358, 1377 (Fed. Cir. 2004).

a)    <b>Joint Inventorship</b>

35 U.S.C. § 116, ¶ 1 (2000) provides:

> When an invention is made by two or more persons jointly, they shall apply for
> patent jointly and each make the required oath, except as otherwise provided in
> this title. Inventors may apply for a patent jointly even though (1) they did not
> physically work together or at the same time, (2) each did not make the same type
> or amount of contribution, or (3) each did not make a contribution to the subject
> matter of every claim of the patent.

Sole inventorship occurs when one person conceives the solution to the problem, the

means to the desired end, which constitutes the subject matter of the invention.  Generally, a

joint invention occurs when two or more persons, collaborating together, each contribute to the

conception of the solution to a problem which constitutes the invention.  Eli Lilly & Co. v.

Aradigm Corp., 376 F.3d 1352, 1359 (Fed. Cir. 2004); C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d

1340, 1352 (Fed. Cir. 1998).

Joint inventorship under Section 116 requires collaboration.  Kimberly-Clark Corp. v.

Procter & Gamble Distrib. Co., 973 F.2d 911, 917 (Fed. Cir. 1992).

> [T]he statutory word "jointly" is not mere surplusage. For persons to be joint
> inventors under Section 116, there must be some element of joint behavior, such
> as collaboration or working under common direction, one inventor seeing a
> relevant report and building upon it or hearing another's suggestion at a meeting.
> Here there was nothing of that nature.  Individuals cannot be joint inventors if
> they are completely ignorant of what each other has done until years after their
> individual independent efforts.  They cannot be totally independent of each other
> and be joint inventors.

Id.  Persons cannot be "joint inventors" if they have had no contact whatsoever and are

completely unaware of each other's work.  Id. at 915-16.

In Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466 (Fed. Cir. 1997), the Federal Circuit

23