stated:

> [A] joint inventor must contribute in some significant manner to the conception of the invention. As such, "each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice."
>
> The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, ... does not make one a joint inventor. Therefore, a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art.

Id. at 1473 (internal citations omitted). One does not become an inventor either by suggesting a desired end or result, with no suggestion of means, Eli Lilly, 376 F.3d at 1358-59, or by merely following the instructions of the person or persons who conceive the solution, id. at 1359. "Contributions to realizing an invention may not amount to a contribution to conception if they merely explain what was 'then state of the art,' ... if they are too far removed from the real-world realization of an invention, ... or if they are focused solely on such realization ... ." Id. (internal citations omitted).

An inventor may obtain information and suggestions of a general nature from other persons without thereby impairing the originality of his later invention or making the person providing such information a joint inventor. Hess v. Advanced Cardiovascular Sys., 106 F.3d 976, 981 (Fed. Cir. 1997).

### b)    Correction Of Inventorship

Sections 116 and 256 of the Patent Act provide that where non-joinder occurs through error without deceptive intention, a patent or application may be corrected to reflect the proper inventorship entity without loss of rights.

> Whenever through error a person is named in an application for patent as the inventor, or through an error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director may permit the application to be amended accordingly, under such terms as he prescribes.

35 U.S.C. § 116, ¶ 3 (2000).

> The error of omitting inventors or naming persons who are not inventors shall not
> invalidate the patent in which such error occurred if it can be corrected as
> provided in this section. The court before which such matter is called in question
> may order correction of the patent on notice and hearing of all parties concerned
> and the Director shall issue a certificate accordingly.

35 U.S.C. § 256, ¶ 2 (2000).

The error of omitting inventors or naming persons who are not inventors is presumed to be done in good faith in the absence of a persuasive showing of deceptive intent. Pannu v. Iolab Corp., 155 F.3d 1344, 1350-51 (Fed. Cir. 1998).

### 2.    35 U.S.C. § 102—Novelty and Statutory Bars

35 U.S.C. § 101 requires that a patentable invention be "new." The meaning of "new" is defined by three conditions of patentability in 35 U.S.C. § 102:

- § 102(a) bars a patent on an invention "known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 US.C. § 102(a) (2000).

- § 102(e)(1) bars a patent on an invention described in a patent application published under § 122(b) or a patent "by another filed in the United States before the invention thereof by the applicant for patent." 35 US.C. § 102(e)(1) (2000).

- § 102(g)(2) bars a patent on an invention that "before [a person's] invention thereof ... was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 US.C. § 102(g)(2) (2000).

A prior patent or publication anywhere will negate novelty (or "anticipate"). Prior use, knowledge, or invention must be "in this country."

The standard for lack of novelty, that is, for "anticipation," is one of strict identity. To anticipate a claim of a patent, a single prior source must contain all its essential elements.

Anticipation (lack of novelty) is established only if (1) all the elements of an invention, as stated in a patent claim, (2) are identically set forth, (3) in a single prior art reference. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1188 (Fed. Cir. 2002).

Similarity or identity such as will negate novelty and constitute anticipation is determined by reference to the language of the claim of the patent or application. In this respect, the inquiry as to anticipation is symmetrical with the inquiry as to infringement of a patent. Determining whether a patent is anticipated by prior art under § 102 is a three-step process:

1. Construing the patent claims to determine their meaning in light of the specification and prosecution history;

2. Comparing the properly construed claims with the subject matter described in the prior art reference and showing identity of the corresponding elements disclosed in the allegedly anticipating reference; and

3. Determining whether the prior art reference is enabling, thereby placing the allegedly disclosed matter in the possession of the public.

Mehl/Biophile Int'l Corp. v. Milgraum, 8 F. Supp. 2d 434, 443-44, (D. N.J. 1998), aff'd, 192 F.3d 1362 (Fed. Cir. 1999).

Federal Circuit decisions reject any standard of "substantial identity." In Jamesbury Corp. v. Litton Indus. Prods., Inc., 756 F.2d 1556 (Fed. Cir. 1985), the Federal Circuit held that a jury instruction that a patent is invalid for lack of novelty if the prior art "disclosed substantially the same things" was erroneous. Id. at 1159.

Anticipation cannot be shown by combining more than one reference to show the elements of the claimed invention. Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc., 726 F.2d 724, 726-27 (Fed. Cir. 1984).

The classic test for anticipation provides: "That which will infringe, if later, will anticipate, if earlier." Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1312 (Fed. Cir. 2001). Thus, a claim fails to meet the novelty requirement if it covers or reads on a product or

process found in a single source in the prior art. Kalman v. Kimberly-Clark Corp., 713 F.2d 760, 772 (Fed. Cir. 1983).

An accidental achievement of a product or process does not constitute an anticipation. A true accident gives no assurance that the same result can be reached by others at a later time. On the other hand, anticipation is not avoided where the prior achievement was deliberate or a necessary consequence of what was intended, even though the achiever did not fully appreciate or recognize the uses, purposes, or properties of the product or process. In re King, 801 F.2d 1324, 1326 (Fed. Cir. 1986). Courts and practitioners describe such inevitable though unappreciated anticipation as anticipation "by inherency." MEHL/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999); Atlas Powder Co. v. IRECO Inc., 190 F.3d 1342, 1347 (Fed. Cir. 1999) ("To invalidate a patent by anticipation, a prior art reference normally needs to disclose each and every limitation of the claim. ... However, a prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it. ... Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates.") (internal citations omitted).

a)    **Description in a Publication**

Anticipation by a prior publication occurs where the work adequately describes the invention in question and the work qualifies as a "printed publication." To constitute an anticipation, a printed publication must describe the invention. The description must be adequate to a person with ordinary skill in the art to which the invention pertains. The description must enable such a person not only to comprehend the invention but also to make it. In re Elsner, 381 F.3d 1125, 1128 (Fed. Cir. 2004) ("Prior art under § 102(b) must sufficiently describe a claimed

27

invention to have placed the public in possession of that invention. ... In particular, one must be able to make the claimed invention without undue experimentation.") (internal citations omitted); Advanced Display Sys. Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000) ("invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.").

The concept of a publication requires that a work be circulated to some extent. Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1330 (Fed. Cir. 2004). A distribution to a limited group with an injunction to secrecy is not a publication. N. Telecom, Inc. v. Datapoint Corp., 9 U.S.P.Q.2d 1577, 1601 (N.D. Tex. 1988), aff'd in part, rev'd in part, 908 F.2d 931 (Fed. Cir. 1990). This applies to documents held confidential in a corporate or other organization. Continental Oil Co. v. Cole, 634 F.2d 188, 196 (5th Cir. 1981) ("We cannot ascribe the label 'prior art' to a private intracorporate communication of this nature."); Sw. Aerospace Corp. v. Teledyne Indus., Inc., 702 F. Supp. 870, 881 (N.D. Ala. 1988) (documents passed between parties (customer and supplier) under a confidentiality agreement do not constitute publications); Manville Sales Corp. v. Paramount Sys., Inc., 3 U.S.P.Q.2d 1042, 1046 (E.D. Pa. 1987) ("With respect to the publication issue, the fact of the plaintiff's confidentiality legend challenges the defendant's assertion of publication."); The injunction to secrecy need not be express. Aluminum Co. of Am. v. Reynolds Metals Co., 14 U.S.P.Q.2d 1170, 1172 (N.D. Ill. 1989) ("an understood, even though silent, limitation on access can be every bit as effective as an express one"). It is sufficient that a document is by its nature an "internal" one not intended to be distributed and not in fact distributed beyond the organization or company. In re Kratz, 592 F.2d 1169 (C.C.P.A. 1979) (internal corporate memorandum).

Generally, the date of publication is the date when the work is first received by any member of the public. Amgen, Inc. v. Hoechst Marion Roussel, Inc., 126 F. Supp. 2d 69, 106 (D. Mass. 2001), aff'd in part, vacated in part & remanded, 314 F.3d 1313 (Fed. Cir. 2003) (manuscripts published after patentee's filing date but bearing a notation of "received" and "accepted" at an earlier date; an accused infringer "failed to persuade the Court that either of these earlier dates should be considered the appropriate date of the 'printed publication.' 35 U.S.C. § 102(a) . To qualify as a 'printed publication' under section 102, a party must show accessability and availability to those skilled in the art. Carella v. Starlight Archery & Pro Line Co., 804 F.2d 135, 139 (Fed. Cir. 1986)  The fact that a reference was received by a publication does not evidence that it was either available or accessible. Consequently, neither of these articles constitute a prior art publication.").

### b)      Knowledge, Use or Invention

Knowledge, use, or invention of the product or process in question in this country prior to the applicant's date of invention bars issuance of a valid patent.

### (1)      Use—§ 102(a)

35 U.S.C. § 102(a) bars a patent where "the invention was ... used by others in this country ... before the invention thereof by the applicant for patent."

An anticipating prior use must be accessible to the public.  3M v. Chemque, Inc., 303 F.3d 1294, 1307 (Fed. Cir. 2002).  A use under conditions of secrecy is not sufficient.  Amgen, Inc., 126 F. Supp. 2d at 107.

An anticipating prior use must be of the complete product or process actually reduced to practice.  An experiment that falls short of reduction to practice and is abandoned is not sufficient.  Gen. Am. Transp. Corp. v. Cryo-Trans. Inc., 893 F. Supp. 774, 792 (N.D. Ill. 1995),

aff'd in part, rev'd in part, 93 F.3d 766 (Fed. Cir. 1996); Medtronic, Inc. v. Daig Corp., 611 F.

Supp. 1498, 1508-09 (D. Minn. 1985), aff'd, 789 F.2d 903 (Fed. Cir. 1986).

A prior use must be established by clear and convincing evidence.  Trans-World Mfg. Corp. v.

Al Nyman & Sons, Inc., 750 F.2d 1552, 1559-60 (Fed. Cir. 1984).

### (2)    Knowledge—§ 102(a)

35 U.S.C. § 102(a) bars a patent where "the invention was known ... by others in this

country ... before the invention thereof by the applicant for patent."  Prior knowledge must

consist of a complete and adequate description of the product or process, which is sufficient to

enable one with ordinary skill in the art to practice the invention, and be available to the public.

3M, 303 F.3d at 1306; Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1369 (Fed. Cir.

2000); Freeman v. Minn. Mining & Mfg. Co., 693 F. Supp. 134, 151 (D. Del. 1988), aff'd in

part, rev'd in part, 884 F.2d 1398 (Fed. Cir. 1989) (unpublished).  It is well-established that

private or secret knowledge will not anticipate or constitute prior art.  Lockheed Aircraft Corp. v.

U.S., 553 F.2d 69, 74 (Ct. Cl. 1977); In re Lund, 376 F.2d 982 (C.C.P.A. 1967); In re Schlittler,

234 F.2d 882, 884 (C.C.P.A. 1956); Quantachrome Corp. v. Micromeritics Instrument Corp., 97

F. Supp. 2d 1181, 1187 (S.D. Fla. 2000), aff'd in part, vacated in part and remanded, 15 Fed.

Appx. 848 (Fed. Cir. 2001) (unpublished); Baron v. Bausch & Lomb, Inc., 25 U.S.P.Q.2d 1641,

1662 (W.D.N.Y. 1992).

### (3)    Invention—§ 102(g)(2)

A patent is invalid under section 102(g)(2) if "before [the applicant's] invention thereof,

the invention was made in this country by another inventor who had not abandoned, suppressed,

or concealed it." 35 U.S.C. § 102(g)(2) (2000); Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373,

1381 (Fed. Cir. 2002).

In the litigation context, prior invention by another invalidates a claimed invention under section 102(g)(2) if the prior inventor either:

1.      actually reduced the invention to practice first,[1] or

2.    a.    conceived of the invention first,

        b.    exercised reasonable diligence in reducing the invention to practice from a time just prior to when the first person to reduce to practice entered the field, and

        c.    did not abandon, suppress or conceal the invention.

35 U.S.C. § 102(g)(2) (2000); Dow Chem. Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1339 (Fed. Cir. 2001).

Conception is the mental formulation and disclosure by the inventor of a complete idea for a product or process. Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998). The idea must be of specific means, not just a desirable end or result. Amgen, Inc. v. Chugai Pharm. Co., 927 F.2d 1200, 1206 (Fed. Cir. 1991) ("Conception requires both the idea of the invention's structure and possession of an operative method of making it."). It must be sufficiently complete so as to enable anyone of ordinary skill in the art to reduce the concept to practice. Conception must include all the limitations or elements of a patent claim. Mycogen Plant Sci., Inc. v. Monsanto Co., 252 F.3d 1306, 1314 (Fed. Cir. 2001).

Actual reduction to practice requires (1) construction of an embodiment or performance

---

[1]  Prior invention cannot be shown by constructive reduction to practice in a litigation context. "When patents are not in interference, the effective date of a reference United States patent as prior art is its filing date in the United States, as stated in § 102(e), not the date of conception or actual reduction to practice of the invention claimed or the subject matter disclosed in the reference patent." Sun Studs Inc. v. ATA Equip. Leasing, Inc., 872 F. 2d 978, 983 (Fed. Cir. 1989) (rejecting efforts to claim an earlier invention date for the invention constructively reduced to practice in a patent application based on earlier conception date).

of a process that meets all the limitations of the claim, and (2) determination that the invention works for its intended purpose.  Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1169 (Fed. Cir. 2006); see also Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998).  To achieve actual reduction to practice, an inventor must not only construct an embodiment of the invention (or perform the steps of a process) but must also test the device or process so as to establish its capacity to perform successfully its intended purpose.  Cooper, 154 F.3d at 1327; Newkirk v. Lulejian, 825 F.2d 1581, 1582 (Fed. Cir. 1987).  It is also implicit in the testing requirement that the inventor must appreciate the operability of the embodiment.  Mycogen Plant Sci., Inc. v. Monsanto Co., 61 F. Supp. 2d 199, 238 (D. Del. 1999).

A party that seeks to establish reasonable diligence must do so beginning from a time just prior to when the first person to reduce to practice entered the field.  Mahurkar, 79 F.3d at 1578.  Constant effort is not required, and the inventor need not spend all his time working on the invention.  Mycogen Plant Sci., Inc., 252 F.3d at 1316.

> [I]t is not necessary that an inventor be working on the invention every day. The question of diligence is considered in light of all the circumstances. For example, people may be sick or even take vacations (thereby creating gaps in activity) while still being diligent. ... The question is whether they were pursuing their goal in a reasonable fashion. If they were doing the things reasonably necessary to reduce the idea to practice, then they were diligent even if they did not actually work on the invention each day.

Hybritech, Inc. v. Abbott Labs., 4 U.S.P.Q.2d 1001, 1006 (C.D. Cal. 1987), aff'd, 849 F.2d 1446 (Fed. Cir. 1988) (internal citation omitted).

One who is the first to reduce an invention to practice loses the right to priority of invention if he thereafter abandons, suppresses or conceals the invention.  In determining what kind of delaying conduct constitutes abandonment-suppression-concealment, three factors are especially pertinent:  (1) the length of the delay-period from reduction to practice to either an

32

application for patent or commercialization; (2) the existence and nature of any activity during the delay-period; and (3) the cause of the resumption of activity (including the first inventor's contemporaneous characterizations of that resumption). The intent of the first inventor is also relevant, but a subjective desire to not abandon and to exploit the invention later if circumstances warrant will not necessarily suffice to preclude a finding of abandonment, suppression and concealment. Fujikawa v. Wattanasin, 93 F.3d 1559, 1566 (Fed. Cir. 1996) ("[C]ase law distinguishes between two types of suppression and concealment: cases in which the inventor deliberately suppresses or conceals his invention, and cases in which a legal inference of suppression or concealment is drawn based on 'too long' a delay in filing a patent application.").

### c)    Patenting—§ 102(a)

A patent is invalid under section 35 U.S.C. § 102(a) if "the invention was ... patented ... in this or a foreign country, before the invention thereof by the applicant for patent." A published patent anticipates as to all matter claimed or adequately described therein. In re Sastry, 285 F.3d 1378, 1383 (Fed. Cir. 2002). To constitute an anticipation, a patent must adequately describe the invention. The standard for anticipation by patenting is the same one of a full enabling disclosure that applies to printed publications. Brown v. 3M, 60 U.S.P.Q.2d 1298 (D. Ariz. 2000), aff'd, 265 F.3d 1349 (Fed. Cir. 2001). The enablement requirement for anticipation by a patent reference is the same as for a publication reference. Elan Pharms., Inc. v. Mayo Found., 346 F.3d 1051, 1054 (Fed. Cir. 2003); Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1354 (Fed. Cir. 2003).

All United States patents are published and hence are good references as printed publications under §§ 102(a), 102(b), and 102(e) for all matter disclosed therein. P&G Co. v. Paragon Trade Brands, Inc., 989 F. Supp. 547, 583 (D. Del. 1997).

### d)      Description in a U.S. Patent—§ 102(e)

Under 35 U.S.C. § 102(e), the effective date of a United States patent for purposes of anticipation or obviousness is deemed to be the date of filing the application, rather than the date of issuance. "When patents are not in interference, the effective date of a reference United States patent as prior art is its filing date in the United States, as stated in § 102(e), not the date of conception or actual reduction to practice of the invention claimed or the subject matter disclosed in the reference patent." Sun Studs, Inc. v. ATA Equip. Leasing, Inc., 872 F. 2d 978, 983 (Fed. Cir. 1989) (rejecting efforts to claim an earlier invention date for the invention constructively reduced to practice in a patent application based on earlier conception date).

An applicant or patentee may eliminate a United States patent as prior art by showing a date of invention prior to the filing date of that patent. Kristar Enters., Inc. v. Revel Envtl. Mktg., Inc., No. 98-3094, 1998 WL 886623 (N.D. Cal. Dec. 16, 1998).

### e)      Proof of Pre-Filing Invention

All the novelty provisions relate to the date of invention by the applicant or patentee. Thus, a reference containing "the invention" anticipates if its effective date is "before the invention thereof" by another. The date of invention of the applicant or patentee for purposes of novelty and anticipation is presumed to be the date he files a complete patent application in the Patent and Trademark Office disclosing the invention. Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1371 (Fed. Cir. 2000) (internal citations omitted).

After a patent issues, an infringer may cite a reference with an effective date prior to the patentee's application date in order to show lack of novelty or obviousness of the invention and hence the invalidity of the patent. Moll v. N. Telecom Inc., 37 U.S.P.Q.2d 1133, 1137 n.1 (E.D. Pa. 1995). The applicant or patentee may avoid anticipation under some circumstances by

establishing a pre-filing date of invention.

Normally, a patent is presumed valid and an infringer bears the burden of proving facts showing it to be invalid. However, the burden of proof shifts to the patent owner to prove a pre-filing date of invention in order to avoid a cited item of prior art. Only the burden of production of evidence on a patent owner's prefiling invention date shifts to the patent owner; the ultimate burden of persuasion remains on a challenger to the validity of the patent. Mahurkar, 79 F.3d at 1576; Innovative Scuba Concepts, Inc. v. Feder Indus., Inc., 26 F.3d 1112 (Fed. Cir. 1994).

> By challenging the validity of the ... patent, [a party] bore the burden of persuasion by clear and convincing evidence on all issues relating to the status of [a publication] as prior art.
> ... For [the publication] to constitute prior art ... it must have been published before [the patentee's] filing date.
> Resolution of this point turns on procedural rules regarding burdens of proof as well as several rules of law borrowed from the interference context. [The validity challenger] offered into evidence at trial a document published about three months before the filing date ... disclosing each and every element of the claimed invention. [The patentee] then had the burden to offer evidence showing he invented the subject matter of his patent before the publication date of the document. Had [the patentee] not come forward with evidence of an earlier date of invention, the [document] would have been anticipatory prior art under section 102(a) because [the patentee's] invention date would have been the filing date of his patent ...
> However, [the patentee] offered evidence at trial to show that he invented the subject matter of the patent before publication of the [document]. He met his burden of production. Consequently, this court turns to an evaluation of the evidence offered by [the patentee] under the proper burden of persuasion in this infringement action and the rules of law relating to invention dates.

Mahurkar, 79 F.3d at 1576-77.

### f)    The § 102(b) Statutory Bar

The statutory bar provisions relate to the date of application for a patent, rather than the date of invention. 35 U.S.C. §§ 102(b), (c), (d) (2000). Under § 102(b), a patent, publication, or use or sale activity more than one year prior to the application date bars a patent, regardless of the date of invention.

### 3.    NONOBVIOUSNESS—35 U.S.C. § 103

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title [35 U.S.C. § 102], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103(a) (2000).

While the ultimate question of patent validity is one of law, the § 103 condition ... lends itself to several basic factual inquiries.  Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.  Against this background, the obviousness or nonobviousness of the subject matter is determined."

Graham v. John Deere Co., 383 U.S. 1, 17 (1966).  "Such secondary considerations as

commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give

light to the circumstances surrounding the origin of the subject matter sought to be patented. As

indicia of obviousness or nonobviousness, these inquiries may have relevancy."  Id. at 17-18.

"[S]trict observance of the requirements laid down here will result in that uniformity and

definiteness which Congress called for in the 1952 Act."  Id. at 18.

The conclusion as to obviousness is one of law based on subsidiary fact findings.  Panduit

Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1566-67 (Fed. Cir. 1987); Newell Cos. v. Kenney

Mfg. Co., 864 F.2d 757 (Fed. Cir. 1988).

A § 103 determination involves fact and law. There may be these facts: what a prior art patent as a whole discloses; what it in fact disclosed to workers in the art; what differences exist between the entire prior art, or a whole prior art structure, and the whole claimed invention; what the differences enabled the claimed subject as a whole to achieve, that others for years sought and failed to arrive at the claimed invention; that one of those others copied it; that the invention met on its merits with outstanding commercial success.

With the involved facts determined, the decisionmaker confronts a ghost, i.e., "a person having ordinary skill in the art," not unlike the "reasonable man" and other

36

ghosts in the law.  To reach a proper conclusion under § 103, the decisionmaker must step backward in time and into the shoes worn by that "person" when the invention was unknown and just before it was made.  In light of all the evidence, the decisionmaker must then determine whether the patent challenger has convincingly established ... that the claimed invention as a whole would have been obvious at that time to that person. ...  The answer to that question partakes more of the nature of law than of fact, for it is an ultimate conclusion based on a foundation formed of all the probative facts.  If itself a fact, it would be part of its own foundation.

Panduit, 810 F.2d at 1566 (internal citations omitted).  The process "en route to a § 103

conclusion involves more than answers to the fact inquiries in Graham": "It also involves: (1)

legal determinations; and (2) legal standards for fact-finding."  Id. at 1567.  Examples of legal

determinations are claim interpretation and the determination of what is prior art.  Examples of

legal standards are: (1) "a prior patent must be considered in its entirety", (2) "elements of

separate prior patents cannot be combined when there is no suggestion of such combination

anywhere in those patents", and (3) "a court should avoid hindsight."  Id. at 1568.

The Federal Circuit recommends that if the legal question of obviousness is submitted to

the jury, such submission should be accompanied by (1) detailed special interrogatories designed

to elicit responses to at least all of the factual inquiries enumerated in the Graham decision, and

(2) appropriate instructions tracking the language of Section 103.   Connell v. Sears, Roebuck &

Co., 722 F.2d 1542, 1547 (Fed. Cir. 1983).

### a)        Scope of the Prior Art

Determining whether a particular reference is within the appropriate scope of the art is a

two-step test:  First, it must be determined whether the reference is "within the field of the

inventor's endeavor."  Second, assuming the reference is outside that field, it must be determined

whether the reference is "reasonably pertinent to the particular problem with which the inventor

was involved."  In re Deminski , 796 F.2d 436, 441-42 (Fed. Cir. 1986) (citations omitted).  Prior

art includes both references in the art in question and references in such allied fields as a person

37

with ordinary skill in the art would be expected to examine for a solution to the problem. <u>In re</u> <u>Clay</u>, 966 F.2d 656, 658 (Fed. Cir. 1992).

**b)    Time Frame—Hindsight**

Section 103 specifies that the obviousness of an invention is to be determined as of "the time the invention was made." Thus, prior art for the purpose of applying § 103 includes only references with effective dates before the date of invention. The date of invention (conception and reduction to practice) is presumed to be the filing date of the application for a patent. <u>Weatherchem Corp. v. J.L. Clark, Inc.</u>, 937 F. Supp. 1262, 1286 (N.D. Ohio 1996), <u>aff'd in part,</u> <u>modified in part, vacated in part</u>, 163 F.3d 1326 (Fed. Cir. 1998) ("[T]he art must have existed as of the date of invention, presumed to be the filing date of the application unless an earlier date is proved. Obviousness is determined as of the time the invention was made."). The rule that prior art includes only references with effective dates prior to the date of invention is subject to the caveat that all patents, publications and public uses with an effective date of over one year prior to the inventor's application date may be considered in determining whether the invention is obvious. <u>In re Kaslow</u>, 707 F.2d 1366, 1374 (Fed. Cir. 1983).

The use of hindsight in determining obviousness is improper. <u>Diamond Rubber Co. v.</u> <u>Consolidated Rubber Tire Co.</u>, 220 U.S. 428 (1911). "[D]ecomposing an invention into its constituent elements, finding each element in the prior art, and then claiming that it is easy to reassemble these elements into the invention, is a forbidden ex post analysis." <u>In re Mahurkar</u> <u>Double Lumen Hemodialysis Catheter Patent Litig.</u>, 831 F. Supp. 1354, 1374-75 (N.D. Ill. 1993), <u>aff'd</u>, 71 F.3d 1573 (Fed. Cir. 1985).

> With hindsight the transistor is obvious; but devising the transistor was still a work of genius. An invention lies in a combination of elements that are themselves mundane. ... Unless the prior art itself suggests the particular combination, it does not show that the actual invention was obvious or anticipated.

38

Id. at 1375.

It is impermissible to use the inventor's disclosure as a "road map" for selecting and combining prior art disclosures. "The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time." Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1138 (Fed. Cir. 1985)

> It is impermissible to use the claimed invention as an instruction manual or "template" to piece together the teachings of the prior art so that the claimed invention is rendered obvious. This court has previously stated that, "one cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention."

In re Fritch, 972 F.2d 1260, 1266 (Fed. Cir. 1992)

### c)    Reference Teachings

When the issue is nonobviousness under Section 103, the sources are examined to determine what they teach to a person with ordinary skill in the pertinent art as to the obviousness of the invention. In re Sernaker, 702 F.2d 989, 995 (Fed. Cir. 1983). "[A] prior art reference is relevant for all that it teaches to those of ordinary skill in the art." In re Fritch, 972 F.2d at 1264. "[E]ach prior art reference must be evaluated as an entirety, and ... all of the prior art must be evaluated as a whole." Panduit Corp. v. Dennison Mfg. Co., 774 F.2d 1082, 1093-94 (Fed. Cir. 1985), vacated & remanded, 475 U.S. 809 (1986), on remand, 810 F.2d 1561 (Fed. Cir. 1987).

With novelty, a single prior art reference may anticipate because of what it inherently discloses or embodies. Tyler Refrigeration Corp. v. Kysor Indus. Corp., 777 F.2d 687, 690 (Fed. Cir. 1985). An inherent feature may be relied upon to establish obviousness only if the inherency would have been obvious to one of ordinary skill in the art: "Inherency and

39

obviousness are distinct concepts." <u>Kloster Speedsteel AB v. Crucible, Inc.</u>, 793 F.2d 1565,

1576 (Fed. Cir. 1986), reh'g granted and modified in part, 231 U.S.P.Q. 160 (Fed. Cir. 1986).

"It is impermissible within the framework of section 103 to pick and choose from any

one reference only so much of it as will support a given position, to the exclusion of other parts

necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill

in the art." <u>In re Wesslau</u>, 353 F.2d 238 (C.C.P.A. 1965).  A single line in a prior art reference

should not be taken out of context and relied upon with the benefit of hindsight to show

obviousness.  Rather, a reference should be considered as a whole, and portions arguing against

or teaching away from the claimed invention must be considered.  <u>Bausch & Lomb, Inc. v.</u>

<u>Barnes-Hind/Hydrocurve, Inc.</u>, 796 F.2d 443, 449 (Fed. Cir. 1986).  Statements cannot be taken

out of context and given "meanings they would not have had to one skilled in the art having no

knowledge of appellant's invention, or to anyone else who can read the specification with

understanding." <u>In re Wright</u>, 866 F.2d 422, 426 (Fed. Cir. 1989).

An invention that otherwise might be viewed as an obvious modification of the prior art

will not be deemed obvious in a patent law sense when one or more prior art references "teach

away" from the invention.  <u>Gillete Co. v. S.C. Johnson & Sons, Inc.</u>, 919 F.2d 720, 724 (Fed.

Cir. 1990).  In <u>In re Gurley</u>, 27 F.3d 551 (Fed. Cir. 1994), the court noted:

> A reference may be said to teach away when a person of ordinary skill, upon
> reading the reference, would be discouraged from following the path set out in the
> reference, or would be led in a direction divergent from the path that was taken by
> the applicant.  The degree of teaching away will of course depend on the
> particular facts; in general, a reference will teach away if it suggests that the line
> of development flowing from the reference's disclosure is unlikely to be
> productive of the result sought by the applicant.

<u>Id.</u> at 553.

**d)    Prior U.S. Patent Application—§ 102(e)**

Though not anticipatory, a reference that would otherwise qualify as prior art under § 102(e) is prior art for purposes of § 103. The effective date of the § 102(e) reference is the application filing date, not the patent issuance date. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 255-56 (1965).

**e)    Prior Invention in this Country by Another—§ 102(g)**

Prior invention in this country by another who has not abandoned, suppressed or concealed the invention is prior art for purposes of applying the obviousness standard of § 103, except in the limited circumstance where there is, at the time of the invention, common ownership of the claimed invention and the subject matter of the prior invention by another. Thomson, S.A. v. Quixote Corp., 166 F.3d 1172, 1175 (Fed. Cir. 1999); 35 U.S.C. § 103(c) (2000).

**f)    Level of Ordinary Skill**

In Graham v. John Deere Co., 383 U.S. 1 (1966), the Supreme Court indicated that § 103 "lends itself to several basic factual inquiries" and included as one such factual inquiry "the level of ordinary skill in the art." The issue of obviousness is resolved not by reference to the actual inventor's knowledge and skill but rather by reference to the skill of a hypothetical person of ordinary skill who is presumed to be aware of all of the pertinent art. Bausch & Lomb, Inc., 796 F.2d at 447.

**g)    Differences Between Prior Art and Claims**

Graham requires the decision-maker to ascertain the "differences between the prior art and the claims at issue" in applying the § 103 condition of nonobviousness. In order to make this assessment of differences, the claims first must be construed. State Contr. & Eng'g Corp. v.

Condotte Am., Inc., 346 F.3d 1057, 1068 (Fed. Cir. 2003). The claimed subject matter as a whole is then compared with the prior art. Ruiz v. A.B. Chance Co., 357 F.3d 1270, 1275 (Fed. Cir. 2004).

### h)    Conclusion As To Obviousness

Under Graham, after making the factual inquiries concerning the scope and content of the prior art, the level of ordinary skill in the art, and the differences between the prior art and the claims at issue, the decision-maker must reach a conclusion as to the obviousness of the claimed invention as a whole. Bausch & Lomb, Inc., 796 F.2d at 447-50.

The conclusion as to the obviousness of an invention turns on whether a hypothetical person with ordinary skill and knowledge in the art to which the invention pertains with full knowledge of all the pertinent prior art, when faced with the problem to which the claimed invention is addressed, would be led naturally to the solution adopted in the claimed invention or at least would naturally view that solution as an available alternative. "The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art." Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 962 (Fed. Cir. 1986).

Combining reference teachings is improper unless the prior art suggests such a combination. A showing of a suggestion, teaching, or motivation must be "clear and particular." In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir. 1999).

"[W]hether a particular combination might be 'obvious to try' is not a legitimate test of patentability." In re Fine, 837 F.2d 1071, 1075 (Fed. Cir. 1988) (citations omitted).

The obviousness of a new product is not to be judged solely by the structural modification or difference from the products in the prior art (or in the case of a process by the changes in operational steps). A "simple" or "slight" change may be nonobvious if the change

achieves a new function or solves a known problem the source of which the art had not

theretofore recognized. CMI Corp. v. Metropolitan Enters., Inc., 534 F.2d 874, 880 (10th Cir.

1976). An invention that seems "simple" was not necessarily obvious before it was made. An

invention's simplicity may support a conclusion of unobviousness. Henkel Corp. v. Coral Inc.,

754 F. Supp. 1280, 1315 (N.D. Ill. 1990), aff'd, 945 F.2d 416 (Fed. Cir. 1991) (unpublished)

("The apparent simplicity of a claimed invention does not render it more easily invalidated. ...

[T]o equate simplicity with obviousness is an erroneous concept.").

### i)    Objective Considerations

Objective considerations of nonobviousness must always be considered. Ruiz v. A.B.

Chance Co., 234 F.3d 654, 667 (Fed. Cir. 2000).

> It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called "secondary considerations" must always when present be considered en route to a determination of obviousness ... . Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.

Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) (internal citations

omitted).

Objective considerations include:

- Long-felt need and failure by others to make invention, Knoll Pharm. Co. v. Teva Pharms. USA, Inc., 367 F.3d 1381, 1385 (Fed. Cir. 2004);

- Commercial success of the invention, when the success is attributable to the feature that is the subject of the patent claim, Vulcan Eng'g Co., Inc. v. FATA Aluminum, Inc., 278 F.3d 1366, 1373 (Fed. Cir. 2002); Vandenberg v. Dairy Equip. Co. Div. of DEC Int'l, Inc., 740 F.2d 1560, 1567 (Fed. Cir. 1984), including not only the commercial success of the patent owner, but also the infringer's success as well as others, Syntex (U.S.A.), Inc. v. Paragon Optical, Inc., 7 U.S.P.Q.2d 1001, 1005 (D. Ariz. 1987);

- Acquiescence by competitors to the validity of a patent--generally through acceptance of a license, <u>Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.</u> 976 F.2d 1559, 1578 (Fed. Cir. 1992);

- Professional recognition and approval, <u>Vulcan Eng'g</u>, 278 F.3d at 1373;

- Copying by others, <u>Diamond Rubber Co.</u>, 220 U.S. 428; and

- That a number of other persons, working under the same state of the prior art, arrived at the same or similar solutions to that embodied in a patent claim, <u>Ecolochem, Inc.</u>, 227 F.3d at 1379.

## C.    INEQUITABLE CONDUCT

An applicant for a patent is under a duty of candor in dealing with the U.S. Patent and Trademark Office. The duty of candor applies to all contacts with the Patent and Trademark Office during the course of the prosecution of an application for a patent. 37 C.F.R. § 1.56(a) provides in part:

> (a)    A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. <u>Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.</u> The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98. However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

(1)    Prior art cited in search reports of a foreign patent office in a
counterpart application, and
(2)    The closest information over which individuals associated with the
filing or prosecution of a patent application believe any pending claim
patentably defines, to make sure that any material information contained
therein is disclosed to the Office.
        ...
(c)    Individuals associated with the filing or prosecution of a patent application
within the meaning of this section are:
(1)    Each inventor named in the application;
(2)    Each attorney or agent who prepares or prosecutes the application;
        and
(3)    Every other person who is substantively involved in the
preparation or prosecution of the application and who is associated with the
inventor, with the assignee or with anyone to whom there is an obligation to
assign the application.
(d)    Individuals other than the attorney, agent or inventor may comply with
this section by disclosing information to the attorney, agent, or inventor.
(e)    In any continuation-in-part application, the duty under this section
includes the duty to disclose to the Office all information known to the person to
be material to patentability, as defined in paragraph (b) of this section, which
became available between the filing date of the prior application and the national
or PCT International filing date of the continuation-in-part application..

Rule 56 imposes a duty to disclose information material to patentability. Bd. of Educ. ex

rel. Bd. of Trs. of Fla. State Univ. v. Am. Biosci., Inc., 333 F.3d 1330, 1344 (Fed. Cir. 2003). A

breach may occur by misrepresentation or omission of material information through bad faith or

gross negligence. "Gross negligence" will not suffice to establish inequitable conduct; intent to

deceive must be shown. Baxter Int'l. Inc. v. McGaw, Inc., 149 F.3d 1321, 1327 (Fed. Cir. 1998).

Inequitable conduct must be established by the party charging inequitable conduct by clear and

convincing evidence. Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362 (Fed.

Cir. 2003).

1.    **Materiality**

A misrepresentation or omission must be "material" in order to constitute inequitable

conduct. Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1366-67 (Fed. Cir. 2003)

("Misrepresentations by themselves are not enough to render a patent unenforceable; the

misrepresentations must be intentional and they must be material to patentability."). A

misrepresented or omitted item of information is not material if it had no rational relationship to

a decision a patent examiner must make, whether on the patentability of a claimed invention or

on any other matter, or if it is of the nature that it could not possibly have affected an examiner's

decision. Brasseler, U.S.A.I. L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1380 (Fed. Cir. 2001)

("Information is deemed material if there is a substantial likelihood that a reasonable examiner

would consider it important in deciding whether to allow the application to issue as a patent.");

Life Techs., Inc. v. Clontech Lab., Inc., 224 F.3d 1320, 1325 (Fed. Cir. 2000) ("Information is

material when there is a substantial likelihood that a reasonable Examiner would have considered

the information important in deciding whether to allow the application to issue as a patent.").

> 37 C.F.R. § 1.56(b) provides:
>
> Under this section, information is material to patentability when it is not
> cumulative to information already of record or being made of record in the
> application, and
> (1)    It establishes, by itself or in combination with other information, a prima
> facie case of unpatentability of a claim; or
> (2)    It refutes, or is inconsistent with, a position the applicant takes in:
>    (i)    Opposing an argument of unpatentability relied on by the Office,
>           or
>    (ii)   Asserting an argument of patentability.
> A prima facie case of unpatentability is established when the information compels
> a conclusion that a claim is unpatentable under the preponderance of evidence,
> burden-of-proof standard, giving each term in the claim its broadest reasonable
> construction consistent with the specification, and before any consideration is
> given to evidence which may be submitted in an attempt to establish a contrary
> conclusion of patentability.

An item of prior art is not material if it is cumulative to other items of prior art that the

examiner considered. Regents of Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1574-75 (Fed.

Cir. 1997) ("[E]ven where an applicant fails to disclose an otherwise material prior art reference,

that failure will not support a finding of inequitable conduct if the reference is "simply

cumulative to other references," i.e., if the reference teaches no more than what a reasonable

examiner would consider to be taught by the prior art already before the PTO.").

> The Manual of Patent Examiner Procedure ("M.P.E.P.") makes clear that "if an
> inventor has different applications pending in which similar subject matter but
> patentably indistinct claims are present that fact must be disclosed to the examiner
> of each of the involved applications." M.P.E.P. § 2001.06(b). This court has held
> that under the "reasonable examiner" standard of materiality, "[an] application
> was highly material to the prosecution of [an application, where] it could have
> conceivably served as the basis of a double patenting rejection." The judicially
> created doctrine of obviousness-type double patenting "prohibits an inventor from
> obtaining a second patent for claims that are not patentably distinct from the
> claims of [a] first patent."

Dayco Prods., Inc., 329 F.3d at 1365 (internal citations omitted).

### 2.    Intent

To be guilty of a breach of the duty of candor, the patent applicant must have had some

culpable state of mind with respect to a misrepresentation or omission. A good faith mistake

does not constitute fraud or inequitable conduct. S. Clay Prods., Inc. v. United Catalysts, Inc., 61

U.S.P.Q.2d 1297 (S.D. Tex. 2001), rev'd in part, vacated in part & remanded, 64 U.S.P.Q.2d

1606 (Fed. Cir. 2002) (nonprecedential). "[A] finding that particular conduct amounts to 'gross

negligence' does not of itself justify an inference of intent to deceive.... [T]he involved conduct,

viewed in light of all the evidence, including evidence indicative of good faith, must indicate

sufficient culpability to require a finding of intent to deceive." Kingsdown Med. Consultants,

Ltd. v. Hollister, Inc., 863 F.2d 867, 876 (Fed. Cir. 1988).

### 3.    Balancing Materiality and Intent

> A holding of inequitable conduct requires proof by clear and convincing evidence.
> This proof must include a threshold showing of both materiality and intent to
> mislead or deceive the patent examiner. If the threshold requirements of
> materiality and intent are established, "those fact findings are balanced to make
> the determination whether 'the scales tilt to a conclusion that inequitable conduct

occurred.'" "The more material the omission or the misrepresentation, the lower
the level of intent required to establish inequitable conduct, and vice versa." If ...
either materiality or intent is not found, then no further analysis need be
performed and unenforceability must be denied.

Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1261 (Fed. Cir. 2001) (internal citations

omitted).

Inequitable conduct entails a two-step analysis: first, a determination of whether
the withheld reference meets a threshold level of materiality and intent to mislead,
and second, a weighing of the materiality and intent "in light of all the
circumstances" to determine "whether the applicant's conduct is so culpable that
the patent should be held unenforceable." Both intent and materiality are
questions of fact.

Purdue Pharma L.P. v. Boehringer Ingelheim, GmBH, 237 F.3d 1359, 1366 (Fed. Cir. 2001)

(internal citations omitted).

####     4.     Roles of Judge and Jury

The Seventh Amendment to the U.S. Constitution does not guarantee a right to trial by

jury on the defense of unenforceability because of inequitable conduct and the district court may

properly hold a separate trial solely to the issue of inequitable conduct. Gardco Mfg., Inc. v.

Herst Lighting Co., 820 F.2d 1209, 1211-13 (Fed. Cir. 1987).

####     5.     Infectious Enforceability

Courts have recognized that inequitable conduct in the prosecution of an earlier-filed

patent application can, in some circumstances, "infect" a later-filed application and, if not

"cured," also render the later-filed patent unenforceable. See Consolidated Aluminum Corp. v.

Foseco Int'l, Ltd., 910 F.2d 804, 809-11 (Fed. Cir. 1990) (inequitable conduct infected later-filed

patents with related subject matter); eSpeed, Inc. v. Brokertec U.S.A., L.L.C., 417 F. Supp. 2d

580, 595-96 (D. Del. 2006) (inequitable conduct in parent patent infected patent claiming priority

therefrom); Truth Hardware Corp. v. Ashland Prods., Inc., No. 02-1541, 2003 WL 22005839, at

*1-2 (D. Del. Aug. 19, 2003) (same).

However, it is well-settled that conduct in the prosecution of a later patent application

cannot render an earlier patent unenforceable as a matter of law:

> [Defendant] asserts that one or more of the other patents originally
> asserted by [Plaintiff] were "procured through inequitable conduct" and that such
> activity also taints the '762 patent and renders it wholly unenforceable....
>     The "inequitable conduct" is said to arise from a failure on the part of
> [Plaintiff] to inform the patent examiner of certain acts alleged to constitute a
> possible on-sale bar under 35 U.S.C. § 102(b) to all but the '762 patent. <u>This
> inequitable conduct is not said to have occurred in connection with procurement
> of the '762 patent. Rather, [Defendant] relies solely on the supposition that all of
> the patents are so interrelated that [Plaintiff's] "unclean hands" with respect to the
> later patents renders the '762 patent unenforceable.  We reject this contention as a
> matter of law.</u>
>     <u>The acts which are alleged to have taken place all occurred after the '762
> patent issued</u> and do not deal with the invention claimed in the '762 patent.

<u>SSIH Equip. S.A. v. ITC</u>, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (emphasis added) (internal

citations omitted); <u>see also Pharmacia Corp. v. Par Pharm., Inc.</u>, 417 F.3d 1369, 1374 (Fed. Cir.

2005) ("Par asserts that a terminal disclaimer can bind two related patents together so that

inequitable conduct in procuring a later prosecuted patent will automatically infect an earlier

issued patent.  The district court correctly rejected that assertion."); <u>In re Certain Excimer Laser

Sys. for Vision Correction Surgery</u>, USITC Inv. No. 337-TA-419, 2000 WL 126070 (U.S.I.T.C.

Jan. 2000) (patent not unenforceable due to inequitable conduct or unclean hands as a matter of

law where the conduct complained of occurred after the patent issued and thus lacked the

"immediate and necessary" relationship to the allegedly "infected" patent); <u>Ristvedt-Johnson,

Inc. v. Brandt, Inc.</u>, 805 F. Supp. 549, 556 (N.D. Ill. 1992) (rejecting argument that "a party's act

of inequitable conduct should reach back in time to cancel any patent protection which might

inure to that party's benefit" and finding patents filed before conduct complained of not

unenforceable).  This is perfectly logical because "[i]nequitable conduct is ... the submission of

false material information, during prosecution of a patent with an intent to deceive." <u>Gambro</u>
<u>Lundia AB v. Baxter Healthcare Corp.</u>, 110 F.3d 1573, 1580 (Fed. Cir. 1997).

### D.   PATENT MISUSE

A patent owner cannot be denied relief or found guilty of misuse simply by reason of
seeking to enforce his patent.  The patent statute precludes a finding of misuse when the patent
holder in good faith seeks "to enforce his patent rights against infringement." 35 U.S.C.
§ 271(d)(3) (2000); <u>Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.</u>, 45 F.3d
1550, 1558-59 (Fed. Cir. 1995); <u>Eastman Kodak Co. v. Goodyear Tire & Rubber Co.</u>, 114 F.3d
1547, 1558 (Fed. Cir. 1997).

Patent misuse has two elements:  First, the filing of an infringement claim does not
constitute misuse unless the lawsuit is a sham.  <u>Estee Lauder, Inc. v. Fragrance Counter, Inc.</u>,
189 F.R.D. 269, 273 (S.D.N.Y. 1999) ("Absent proof of a sham, the bringing of litigation cannot,
as a matter of law, form the basis of an antitrust claim or misuse defense.").  The test for sham
litigation requires proof that: (1) the suit was "objectively baseless in the sense that no
reasonable litigant could realistically expect success on the merits," and (2) there was subjective
intent to use the litigation "to interfere directly with the business relationships of a competitor."
<u>See Prof'l Real Estate Investors v. Columbia Pictures Indus.</u>, 508 U.S. 49, 60-62 (1993)
("PRE").  "Under the objective prong . . . sham litigation must constitute the pursuit of claims so
baseless that no reasonable litigant could realistically expect to secure favorable relief." <u>Id.</u> at
62.  "If an objective litigant could conclude that the suit is reasonably calculated to elicit a
favorable outcome, the suit is immunized under [the First Amendment,] and [a] claim premised
on the sham exception must fail." <u>Id.</u> at 60; <u>see also</u> <u>Windsurfing Int'l, Inc. v. AMF, Inc.</u>, 782
F.2d 995, 1001 (Fed. Cir. 1986) (A party asserting a defense of patent misuse must show that the

plaintiff knew at the time it filed its action that the patent was invalid, unenforceable, or not infringed.)

The second element is that the lawsuit must have been brought in an attempt to interfere directly with the business of a competitor. See PRE, 508 U.S. at 60-61; In re Indep. Serv. Orgs. Antitrust Litig., 964 F. Supp. 1479, 1485 (D. Kan. 1997). The doctrine of patent misuse forbids a patentee from taking actions that affect competition in unpatented goods or that otherwise extend the economic effect beyond the physical scope of the patent grant (by charging a royalty on goods not covered under the patent) or the temporal scope of the patent grant (by charging a royalty beyond the patent's expiration date) with anticompetitive effect. C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1372 (Fed. Cir. 1998). Hence, the key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the '244 patent grant with anticompetitive effect. Id.; see also, Monsanto Co. v. Scruggs, No. 04-1532, 2006 U.S. App. LEXIS 20914, at *23 (Fed. Cir. Aug. 16, 2006) (Patent misuse "prevent[s] a patentee from using the patent to obtain market benefit beyond that which inures in the statutory patent right"); Monsanto Co. v. McFarling, 363 F.3d 1336, 1341 (Fed. Cir. 2004); Glaverbel, 45 F.3d at 1558 ("The bringing of a lawsuit to enforce legal rights does not of itself constitute . . . patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade."); Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 1000 (Fed. Cir. 2003) (A threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in a threat to enforce patent rights); ISCO Int'l, Inc. v. Conductus, Inc., 279 F. Supp. 2d 489, 504-06, 510 n.10 (D. Del. 2003) ("'Exactly what constitutes bad faith remains to be determined on a case by case basis.' Nonetheless, a clear case of bad faith exists when 'the patentee knows that the patent is invalid,

unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent.'" "If a pleading alleging inequitable conduct before the PTO were sufficient to impute knowledge of unenforceability and bad faith to the patentee plaintiff, nearly every patent infringement plaintiff would summarily be found liable for unfair competition, as the affirmative defense of inequitable conduct is routinely asserted ....").

Acts of patent misuse include: (1) tying arrangements—royalties on unpatented components, (2) covenants not to deal in competing goods, (3) package licensing, (4) post-expiration royalties and restraints, (5) royalty based on total sales, (6) refusal to license, (7) price fixing, (8) resale restraints, (9) field of use limitations, (10) grant-back clauses, (11) covenants not to license, and (12) compulsory licensing. Chisum § 19.06.

Litigation misconduct does not constitute patent misuse. Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., 380 F. Supp. 2d 457, 467 (D.N.J. 2005); see also Chisum § 19.06 ("Patent law does not recognize or provide a remedy for a patent misuse claim based solely on the bad faith enforcement of a patent. A claim for bad faith enforcement must be based on legal theories that are not patent-specific.").

Patent misuse is a defense to patent infringement, which if proven, renders the patent unenforceable until purged. B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1427 (Fed. Cir. 1997). Monetary damages may not be awarded based on patent misuse. Id. at 1428. Courts have relied on Braun to dismiss counterclaims for patent misuse. See e.g., Bernhardt L.L.C. v. Collezione Europa USA, Inc., No. 01-957, 2002 U.S. Dist. LEXIS 13832, at *2 (M.D.N.C. July 3, 2002); see also, Depuy, Inc. v. Zimmer Holdings, Inc., 343 F. Supp. 2d 675, 684 n.4 (N.D. Ill. 2004) ("patent misuse is an affirmative defense, not a counterclaim").

52

E.     **UNCLEAN HANDS**

Inequitable conduct and patent misuse both derive from the unclean hands doctrine.

Demaco Corp. v. F. Von Langsdorff Licensing, Ltd., 851 F.2d 1387, 1394 (Fed. Cir. 1988); U.S.

Gypsum Co. v. Nat'l Gypsum Co., 352 U.S. 457, 465 (1957). A defense of unclean hands arises

from the equitable maxim, "he who comes into equity must come with clean hands." It prevents

one who is "tainted with inequitableness or bad faith relative to matter in which he seeks relief"

from obtaining relief from a court of equity. Precision Instrument Mfg. Co. v. Auto. Maint.

Mach. Co., 324 U.S. 806, 816 (1945).

While inequitable conduct before the PTO renders the patent unenforceable by any party,

the unclean hands doctrine bars only the offending party. Aptix Corp. v. Quickturn Design Sys.,

Inc., 269 F.3d 1369, 1376 (Fed. Cir. 2001). A finding of unclean hands does not prejudice the

offending party in subsequent cases, but only provides a bar to relief in the case at hand. See

McClintock on Equity § 26 (2d ed. 1948) ("The general principle is that equity will not lend its

aid to enable a party to reap the benefit of his misconduct, or to enable him to continue it, but,

where the misconduct has ceased and the right claimed in the suit did not accrue because of it,

the misconduct will be held to be collateral and not to defeat the right to affirmative relief.");

Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933) ("[Courts of equity] apply

the maxim requiring clean hands only where some unconscionable act of one coming for relief

has immediate and necessary relation to the equity that he seeks in respect of the matter in

litigation.").

F.     **LACHES AND/OR ESTOPPEL**

As discussed in the Motion of Plaintiff to Strike New Affirmative Defenses,

Counterclaim and Allegations, D.I. 213, Affinion does not believe Maritz should be able to prove

its laches and/or estoppel defenses. The law on these defenses is set forth for the Court in the event that Affinion's motion is denied.

Laches and estoppel are two related defenses that limit the patent owner's right to recover for infringement because of delay in filing suit. The usual civil burden of proof, preponderance of the evidence, applies to laches and estoppel fact issues. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1045-46 (Fed. Cir. 1992) (en banc).

### 1.    Laches

Laches arises when the patent owner unreasonably and inexcusably delays filing suit for infringement to the material prejudice of the infringer. Id. at 1032. Delay is measured from the time when the patent owner knew or, in the exercise of due diligence, should have known of the defendant's allegedly infringing activity. Id. at 1033. This time may be at or after (but not before) the date when the patent issued. Id. at 1032. A patent owner may avoid the consequences of otherwise unreasonable delay in filing by establishing a legally adequate excuse. Id. at 1029. The infringer also must prove evidentiary or economic material prejudice. Id. at 1033.

Laches is an equitable defense which involves balancing the equities of both parties. The fairness and reasonableness of the infringer's conduct is as much an issue as that of the patent owner, and a court may reject the laches defense if the infringer has engaged in egregious conduct that would change the equities in the patentee's favor. A.C. Aukerman Co., 960 F.2d at 1033.

When the infringer proves laches, the patent owner may not recover damages for infringements occurring prior to the filing of suit. Adelberg Labs., Inc. v. Miles, Inc., 921 F.2d 1267, 1272 (Fed. Cir. 1990). The owner may still obtain an injunction and damages as to post-

filing infringements unless the infringer further establishes the elements of an equitable estoppel.

Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1272 (Fed. Cir. 1999).

### 2.    Estoppel

The defense of estoppel bars all recovery for infringement when (1) the owner represents

in some way that he will not enforce his patent against the infringer and (2) the infringer

reasonably relies on that representation. A.C. Aukerman Co., 960 F.2d at 1042. Silence alone

will generally not create an estoppel. Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290,

1294-95 (Fed. Cir 1992). When the infringer proves estoppel, the patent owner may not recover

damages for pre- or post-filing infringements and may not obtain an injunction. A.C. Aukerman

Co., 960 F.2d at 1041.

### G.    **EXCEPTIONAL CASE**

The patent statute authorizes the court "in exceptional cases" to award "reasonable

attorneys fees to the prevailing party." 35 U.S.C. § 285 (2000). The award of such fees is

discretionary with the trial court, Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1087-88

(Fed. Cir. 2003), but such discretion may only be exercised upon a specific finding of

exceptional circumstances, Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1363 (Fed. Cir.

2003); Mahurkar, 79 F.3d at 1580. In the case of a prevailing accused infringer, such

circumstances consist of clear and convincing evidence of inequitable conduct by the patentee in

obtaining the patent or bad faith litigation. MacNeil-PPC, Inc. v. L. Perrigo Co., 337 F.3d 1362

(Fed. Cir. 2003); Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050-51 (Fed.

Cir. 1992).