EXHIBIT 5

## **EXHIBIT 5**

## **MARITZ'S STATEMENT OF THE CONTESTED ISSUES OF LAW**

### A.    **Maritz Did Not Infringe the '412 Patent**

1.    An issue that remains to be litigated is whether Maritz literally infringed certain claims of the '412 patent - independent claim 10, 27 and 36 and dependent claims 11-17 and 28-34 (collectively, "the asserted claims").

2.    An infringement analysis entails two steps.  First, the meaning and scope of the asserted patent claims is determined.[1]  *Aquatex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005).  Second, the properly construed claims are compared to the accused product or process.  *Id.*

### 1.    Maritz Did Not Literally Infringe the '412 Patent

3.    Literal infringement can only be found if "every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'"  *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001).

4.    A method or process consists of one or more operative steps, and, accordingly, "[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized."  *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

5.    A dependent claim is properly interpreted to include every limitation of the claim on which it depends.  35 U.S.C. §112 ¶ 4.  Thus, it is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have first been found to be infringed.

*Finnigan Corp. v. International Trade Com'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999).

---

[1] Maritz set forth the legal issues and citations to the controlling law relating to claim construction in its *Markman* submissions.  (D.I. 138, 151, 218).  Issues of law reflected in Maritz's proposed jury instructions and the instructions jointly submitted by the parties are incorporated here by reference.

2.       Maritz Did Not Jointly Infringe the '412 Patent[2]

6.       To show that a specific entity is liable for direct infringement under a joint

infringement theory, plaintiff must show that the specific entity is "connected" to the other

entities performing the other steps.  *BMC Resources, Inc. v. Paymentech, L.P.*,  2006 WL

1450480, *3 (N.D. Tex. 2006).  There must be "a close relationship between the infringer and

the other entity such that the party accused of infringement directs or controls the actions of the

other party."  *Id.* at *4; *Faroudja Laboratories, Inc. v. Dwin Electronics, Inc.*, 1999 WL

111788, *5-6 (N.D. Cal 1999).

3.       The Doctrine of Equivalents Does Not Allow Affinion to Reach Maritz's
         Distinct Technology[3]

7.       If there is no literal infringement, the doctrine of equivalents may be considered to

the extent it is not precluded by the doctrine of prosecution history estoppel.  *Warner-Jenkinson*

*Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997).  The "all limitations rule" restricts

the doctrine of equivalents by preventing its application when doing so would vitiate a claim

limitation.  *Id.* at 29.

8.       "An element in the accused product is equivalent to a claim limitation if the

differences between the two are 'insubstantial' to one of ordinary skill in the art."  *Eagle*

*Comtronics Inc. v. Arrow Communication Labs. Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002).

---

[2] The theory of "joint infringement" is inapplicable to the method described and claimed in the '412 patent.  As such, no instruction should be given.  Finding liability here based on a joint infringement theory would violate the "fundamental precept" of the invention described in the '412 patent.  *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1345 (Fed. Cir. 2006). Maritz plans to file a motion *in limine* to preclude testimony and evidence relating to joint infringement. If the Court, however, finds that testimony on this topic should be permitted and that the joint infringement doctrine applies to the business method described and claimed in the '412 patent, this legal standard—rather than that proposed by Affinion—is applicable.

[3] Maritz asserts that Affinion should not be permitted to present evidence or arguments relating to the doctrine of equivalents and will be filing a motion *in limine* on this topic.  If the Court grants Maritz's motion, this issue becomes moot.  If, however, the Court does not grant Maritz's motion, this is the law controlling this issue.

Relevant is whether the alleged equivalent element in the accused device "performs substantially the same function in substantially the same way to obtain the same result" as that of the missing element of the claimed invention.  *Id.* at 1315 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950), *overruled-in-part on other grounds*, 535 U.S. 722 (2002)).

9.     There are situations in which a patentee is not permitted to rely on the doctrine of equivalents.  Case law has established that the prior art and prosecution history estoppel provide independent "policy oriented" limitations on the doctrine of equivalents.  *Sextant Avionique, S.A. v. Analog Devices, Inc*., 172 F.3d 817, 827 (Fed. Cir. 1999).  Thus, where the accused infringer is merely practicing the prior art, he has a "complete defense" to a charge of infringement.  *Id*.

10.     A patentee also may not use the doctrine of equivalents to recapture that which he disavowed during prosecution of the patent.  *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co., Inc.*, 384 F.3d 1333, 1342 (Fed. Cir. 2004).  Such a disavowal may be made in the specification, statements or arguments made to the examiner, or amendments made during prosecution.  *Id*. at 1341-42; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999).

**B.     The Claims of the '412 Patent are Invalid**

11.     An issue that remains to be litigated is whether the claims of the '412 patent are invalid.  Although an issued patent is presumed valid, it may be shown to be invalid by clear and convincing evidence.  *Iron Grip Barbell Co, Inc. v. USA Sports, Inc*., 392 F.3d 1317, 1320 (Fed. Cir. 2004).

1.    The Prior Art

12.    A patent claim is invalid if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."  35 U.S.C. § 102(a).

13.    A patent claim is invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).

14.    Under § 102(a), the knowledge or use will be prior art if it was: (1) a public use; (2) by someone other than the inventor; (3) before the inventor's date of invention; (4) in the United States.  *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood v. AM. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997).  Under § 102(b), any prior public use or secret commercial use that occurred more than one year before the patent was filed qualifies as prior art.

15.    A prior publication, published before the established invention date or one year prior to the filing date, qualifies as prior art under §§ 102(a) or (b), respectively, if it was reasonably accessible to that portion of the public most likely to use it.  *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989).  The date a printed publication qualifies as prior art is the date it became available to the public.

16.    A prior patent that issued anywhere in the world before the invention of the patent in suit or more than one year before the application leading to the patent in suit qualifies as prior art.  35 U.S.C. § 102(a), (b); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu*, 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999).

17.    Section 102(e)(2) provides that a patent claim is invalid by reason of anticipation if "the invention was described in . . . (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent."  35 U.S.C. § 102(e)(2).

18.    A patent claim is invalid under § 102(g) "if a patentee's invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention." *The Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1339 (Fed. Cir. 2001). Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose.

19.    Reduction to practice under § 102(g)(2) can be constructive or actual reduction to practice.  *In re Katz*, 687 F.2d 450, 454 (CCPA 1982); *Roberts v. Sears, Roebuck & Co.*, 671 F. Supp. 671 (N.D. Ill. 1987) (rejecting plaintiff's argument that a constructive reduction is insufficient under § 102(g), "given the numerous cases in which constructive reduction was applied where patentability was at issue").

### 2.    The '412 Patent is Invalid Because It Is Anticipated

20.    An issue that remains to be litigated is whether the '412 patent is anticipated and/or obvious in view of the prior art.  A person is entitled to a patent only if the teachings of the patent are not obvious to a person of ordinary skill in the field of the invention and the invention is not anticipated.  35 U.S.C. §§102, 103.

21.    Anticipation requires the presence in the reference, either expressly or inherently, each and every limitation of the claimed invention.  *Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1354 (Fed. Cir. 2005); *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1349-1350 (Fed. Cir. 2002).

22.    It is well settled that a prior art reference may anticipate when the claim limitations not expressly found in that reference are nonetheless inherent in it. *Id.* "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *Id.*

23.    An issue that remains to be litigated is whether the asserted claims of the '412 patent are entitled to the filing date of its parent, U.S. Patent No. 5,774,870. Claims in a patent application are entitled to the filing date of a previously filed application only if the earlier application sufficiently disclosed the subject matter of the later filed claims in the manner provided by the first paragraph of 35 U.S.C. § 112. 35 U.S.C. § 120.

24.    Under the first paragraph of 35 U.S.C. § 112, a patent's specification must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed. *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

25.    To prove a date of invention that antedates a piece of prior art, Affinion must come forward with evidence that the named inventor, Thomas Storey, invented the subject matter of his patent before the date of the prior art reference. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996). Such evidence may consist of either a prior reduction to practice or an earlier conception and due diligence until the invention is reduced to practice. *Id.* at 1577. Because the '412 patent was not reduced to practice before the December 15, 1995 filing date of the '870 patent, Affinion must present evidence of earlier conception and due diligence until the effective filing date of the '412 patent.

26.   It is well established that, when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that testimony. *Singh v. Brake*, 317 F.3d 1334, 1340-41 (Fed. Cir. 2003); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993) ("[a]n inventor's testimony, standing alone, is insufficient to prove conception - some form of corroboration must be shown"); *Invitrogen Corp. v. Clontech Labs, Inc.*, 429 F.3d 1052 (Fed. Cir. 2005) ("Indeed, because of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate an inventor's testimony").

### 3.   The Asserted Claims Are Invalid as Obvious

27.   A patent claim is invalid under § 103(a) even if it is not identically disclosed by the prior art if the differences between the subject matter claimed and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  35 U.S.C. § 103(a). The factual considerations underlying the legal determination of obviousness include the scope and content of the prior art, the differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any pertinent secondary considerations.  *Graham v. John Deere*, 383 U.S. 1, 17-18 (1966).

28.   One step in any obviousness analysis is to determine the scope and content of the prior art.  The term "prior art" as used in § 103 refers at least to the statutory material named in 35 U.S.C. § 102.  *Riverwood Int'l Corp. v. R.A. Jones & Co., Inc*. 324 F.3d 1346, 1354 (Fed. Cir. 2003).  Further, under § 103, a reference need not be enabled; it qualifies as prior art, regardless, for whatever is disclosed therein.  *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314 F.3d 1313, 1357 (Fed. Cir. 2003).

29.    Precedent requires that, to find a combination obvious, there must be some teaching, suggestion, or motivation in the prior art to select the teachings of separate references and combine them to produce the claimed combination. *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006). An explicit teaching that identifies and selects elements from different sources and states that they should be combined in the same way as in the invention at issue, is rarely found in the prior art. *Id.* at 1385. Thus, the "motivation-suggestion-teaching" test is not so rigid as to "require[] an actual teaching to combine before concluding that one of ordinary skill in the art would know to combine references." *Alza Corp. v. Mylan Labs, Inc.*, --- F.3d ---- , 2006 WL 2556356, *4 (Fed. Cir. Sep. 6, 2006)

30.    Under the Federal Circuit's "non-rigid motivation-suggesting-teaching test, a suggestion to combine need not be found in the prior art" itself. *Id.* at *7. Rather, it may be found in implicit factors such as "the nature of the problem solved by the claimed invention, or to the knowledge of one of ordinary skill in the art." *Johnston*, 435 F.3d at 1385. "[W]here the testimony of an expert witness is relevant to determining the knowledge that a person of ordinary skill in the art would have possessed at a given time, this is one kind of evidence that is pertinent to [the] evaluation of a *prima facie* case of obviousness." *Alza*, 2006 WL 2556356 at *7.

31.    "As precedent illustrates, many factors are relevant to the motivation-to-combine aspect of the obviousness inquiry, such as the field of the specific invention, the subject matter of the references, the extent to which they are in the same or related fields of technology, the nature of the advance made by the applicant, and the maturity and congestion of the field." *Id.*

32.    Therefore, the "motivation-suggestion-teaching" test asks not merely what the references disclose, but whether a person of ordinary skill in the art, possessed with the

understandings and knowledge reflected in the prior art, and motivated by the general problem

facing the inventor, would have been led to make the combination recited in the claims. *In re*

*Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006).

33.     Merely because a reference discloses more than one alternative does not

constitute a teaching away from the patented system unless the disclosure criticizes, discredits,

or otherwise discourages the solution claimed. *In re Fulton*, 391 F.3d 1195, 1200-01 (Fed. Cir.

2004). Instead, the proper inquiry is "whether there is something in the prior art as a whole to

suggest the *desirability*, and thus the obviousness, of making the combination, not whether

there is something in the prior art as a whole to suggest that the combination is the most

desirable combination available." *Id.*

34.     The secondary considerations may include commercial success, long-felt but

unsolved needs, failure of others, licenses, unexpected results, and simultaneous development

by others. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.* 229 F.3d 1120,

1129 (Fed. Cir. 2000), *Monarch Knitting Machinery Corp. v. Sulzer Morat GMBH*, 139 F.3d

877, 883-84 (Fed. Cir. 1998), *ISCO Int'l, Inc. v. Conductus, Inc*., 279 F. Supp. 2d 489, 498 (D.

Del. 2003). There must be a nexus between the secondary consideration and the claimed

invention to be relevant to the obviousness inquiry. *Brown & Williamson*, 229 F.3d at 1130.

35.     Commercial success of an accused infringer becomes relevant to the obviousness

inquiry only upon a finding that the accused actually infringed the patent. *See Truswal Systems*

*Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1215 (Fed. Cir. 1987) (Judge Rich,

concurring) ("Now as a matter of common sense, the way one proves commercial success of a

patented invention is, first to demonstrate the success of the patentee or one or more licensees.

Second, once an infringer is sued *and proved to be an infringer*, its sales are appropriately proved and added to the others.") (emphasis in original).

36.     The Federal Circuit has made clear that there must be evidence of nexus where the evidence of commercial success presented is a license, because it is often "cheaper to take licenses than to defend infringement suits." *Iron Grip Barbell Co., Inc. v. USA Sports, Inc*., 392 F.3d 1317, 1324 (Fed. Cir. 2004). Thus, while licenses "may constitute evidence of nonobviousness ... only little weight can be attributed to such evidence if the patentee does not demonstrate a nexus between the merits of the invention and the licenses of record." *Id.* Without a showing of nexus, "the mere existence of ... licenses is insufficient to overcome the conclusion of obviousness" when there is a strong prima facie case of obviousness. *Id*.

37.     Just as the failure of others to make the invention may be evidence that an invention would not have been obvious, independent making of the invention by persons other than the inventor at about the same time may be evidence that the invention would have been obvious. *Ecolochem, Inc. v. S. Cal. Edison Co*, 227 F.3d 1361, 1379 (Fed. Cir. 2000).

### 4.     The '412 Patent is Invalid For Failure to Name All of its Inventors

38.     Inventorship is a question of law with underlying factual issues. *Bd. of Educ. v. Am. Bioscience*, 333 F.3d 1330, 1337 (Fed. Cir. 2003). Section 102(f) provides that "[a] person shall be entitled to a patent unless ... he did not himself invent the subject matter sought to be patented." This subsection mandates that a patent accurately list the correct inventors of the claimed invention. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). If nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid. *Id*. at 1349.

39.    Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time; (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.  35 U.S.C. § 116.

40.    While this section does not set an "explicit lower limit on the quantum or quality of invention contribution required," each joint inventor must contribute to the conception of the invention in a way that is not insignificant in quality when measured against the dimension of the full invention.  *Eli Lily & Co.*, 376 F.3d at 1359, *BJ Services Co.* 338 F.3d at 1373; *Caterpillar Inc. v. Sturman Industries, Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004).  Conception occurs "when one of ordinary skill in the art could construct [the invention] without unduly extensive research or experimentation."  *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994).

41.    All that is required to be a joint inventor is that a person: (1) contribute in some significant manner to the conception or reduction to practice of the invention; (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention; and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.  *Pannu*, 155 F.3d at 1351.

42.    A co-inventor need not make a contribution to every claim of the patent; a contribution to one claim is enough.  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  Thus, "the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue."  *Id*.

     5.    <u>The '412 Patent is Invalid Because It Was Derived From the Work of Others</u>

43.     Information derived by an inventor from another is prior art to claims encompassing that information, even though, unlike most other § 102 prior art categories, the derived information may never have been publicly available.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).

44.     "[S]ubject matter derived from another not only is itself unpatentable to the party who derived it under section 102(f), but, when combined with other prior art, may make a resulting obvious invention unpatentable to that party under a combination of sections 102(f) and 103."  *Id*. at 1403-04.

6.     Claims 12, 13, 29 and 30 are Indefinite

45.     A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of the claims.  *Datamize, LLC v. Plumtree Software, Inc*., 417 F.3d 1342, 1347 (Fed. Cir. 2005).  A claim is indefinite if it is not amenable to construction.  *Id*.  A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope.  *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1217 (Fed. Cir. 1991).

C.     **The '412 Patent is Unenforceable Due to the Inequitable Conduct that Occurred during the Prosecution of the Patent Application and Related Patent Applications**

46.     As provided by 37 C.F.R. §1.56(a), "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."  This standard applies not only to the inventor, but also the prosecuting attorney or agent, and anyone else associated with the inventor or the assignee who is substantively involved in the preparation or prosecution of the

application and extends throughout the patent's entire prosecution history. *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 n. 6 (Fed. Cir. 1995).

47.    A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution. *Digital Control Inc. v. The Charles Machine Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006).

48.    Determining whether a party has engaged in such conduct is a two-step analysis: (1) whether the conduct meets a threshold level of materiality; and (2) whether the evidence shows a threshold level of intent to mislead the PTO. *Perspective Biosystems v. Pharmacia Biotech.*, 225 F.3d 1315, 1318-19 (Fed. Cir. 2000). If the materiality and intent thresholds are met, the court must then conduct a balancing test and determine whether the scales tilt to a conclusion that inequitable conduct occurred. *Critickon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

49.    Information is material to patentability where it is not cumulative to information already of record or being made of record in the application, and: (1) if a reasonable examiner would have considered such information important in deciding whether to allow the application; (2) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (3) it refutes, or is inconsistent with, a position the applicant takes in opposing an argument of unpatentability relied on by the Office or asserting an argument of patentability. 37 C.F.R. §1.56(b); *Digital Control*, 437 F.3d at 1314-16.

50.    A withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other

references. *Semiconductor Energy Laboratory Co., v. Samsung Electronics Co.*, 204 F. 3d 1368, 1374 (Fed. Cir. 2000).

51.    A reference is not immaterial simply because the patent claims are eventually deemed by an examiner to be patentable thereover. *Molins PLC v. Textron, Inc*., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

52.    Intent, on the other hand, "need not, and rarely can, be proven by direct evidence." *Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, LTD*, 394 F.3d 1348, 1354 (Fed. Cir. 2005). Instead, intent may be inferred from the surrounding circumstances. *Critikon*, 120 F.3d at 1256. Intent may be inferred where a patent applicant knew, or should have known, that withheld information would be material to the PTO's consideration of the application. *Id*. Additionally, the more material the omission, the lower the level of intent required to establish inequitable conduct, and vice versa. *Id*. A lapse on the part of the Examiner does not excuse the applicant. *KangaROOS U.S.A., Inc. v. Caldor, Inc*., 778 F.2d 1571, 1576 (Fed. Cir. 1985).

53.    In the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information. *Frazier v. Roessel Cine Photo Tech, Inc.*, 417 F.3d 1230, 1235-6 (Fed. Cir. 2005) (quoting *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005).

54.    The fact of misrepresentation, coupled with proof that the party making it had knowledge of its falsity, is enough to warrant drawing the inference that there was a fraudulent intent. *Lipman v. Dickinson*, 174 F.3d 1363, 1370 (Fed. Cir. 1999).

55.    Implied notice of a fact is notice that is inferred from facts that a person had a means of knowing and that is thus imputed to that person; actual notice of facts or circumstances that, if properly followed up, would have led to a knowledge of the particular fact in question.  *Brasseler, U.S.A. v. Stryker Sales Corp.*, 267 F.3d 1370, 1382 (Fed. Cir. 2001).

56.    To avoid a finding of inequitable conduct, doubts concerning whether information is material should be resolved in favor of disclosure.  Where an applicant, his representatives, or other involved in a substantial way with the application knew of information the materiality of which may be so readily be determined, he cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases, you may find that the applicant should have known of the materiality of the information.  *Brasseler, U.S.A. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001).  Close cases should be resolved by disclosure, not unilaterally by the applicant.  *Critkon*, 120 F.3d at 1256, citing *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992).

57.    An applicant, his representative, or others involved in a substantial way with a patent application cannot cultivate ignorance or disregard warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art.  Where one does, deceptive intent may be inferred.  Once an applicant, representative, or others involved has notice that information exists that appears material and questionable, that person cannot ignore that notice in an effort to avoid his duty to disclose.  *Brasseler, U.S.A. v. Stryker Sales Corp.,* 267 F.3d 1370, 1382 (Fed. Cir. 2001).

58.    Attorneys representing patent applicants must conduct meaningful inquiries when the surrounding factual circumstances would cause a reasonable attorney to understand that

relevant and questionable material information should be assessed to determine whether it should be disclosed to the Patent Office.  *Id*. at 1385.

59.    "As a critical requirement for obtaining a patent, inventorship is material." *Perseptive Biosystems*, 225 F.3d at 1321.  *See also* Manual of Patent Examining Procedure § 2001.06(c) (inventorship disputes are material information).  This is true because patent examiners "are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship."  *Perseptive Biosystems*, 225 F.3d at 1321, citing MPEP §§ 2137.01 (titled "Inventorship" and providing the rules for determining inventorship), 2004 (providing a checklist of "Aids to Compliance with Duty of Disclosure," including:  2. It is desirable to ask questions about inventorship.  Who is the proper inventor?  Are there disputes or possible disputes about inventorship?  If there are questions, call them to the attention of the Patent and Trademark Office).  *See also* 35 U.S.C. § 102(f) ("A person shall be entitled to a patent unless … he himself did not invent the subject matter sought to be patented").

60.    Those individuals covered by 37 CFR § 1.56 are also required "to bring to the attention of the examiner ... information within their knowledge as to other copending United States applications which are material to patentability of the application in question."  MPEP § 2001.06(b).  It is improper to "assume that the examiner of a particular application is necessarily aware of other applications 'material to patentability' of the application in question."  *Id*.  *See also Dayco Prod. Inc., v. Total Containment*, 329 F.3d 1358, 1365-69 (Fed. Cir. 2003); MPEP § 2004 at No. 9 ("Do not rely on the examiner of a particular application to be aware of other applications belonging to the same applicant or assignee.  It is desirable to call such applications to the attention of the examiner even if there is only a question that they might be 'material to patentability' of the application the examiner is considering.  It is

desirable to be particularly careful that prior art or other information in one application is cited to the examiner").

61.     A patent is unenforceable if, in bad faith or with deceptive intent, the named inventor(s) fails to correctly name all inventors.  *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363 (Fed. Cir. 2002).

62.     Where withheld information is material and the applicant, his representatives, or others involved in a substantial way with the application knew or should have known of the materiality,  the applicant, representatives, and involved others will have great difficulty in establishing subjective good faith sufficient to overcome an inference of intent to mislead. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003).

63.     Inventors represented by counsel are presumed to know the law.  *Brasseler***,** 267 F.3d at 1385.

64.     Inequitable conduct committed during prosecution of a parent application can "infect" a later filed application.  *See Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990).  To prove infectious unenforceability, an accused infringer must establish two elements: (1) that a related patent is unenforceable due to inequitable conduct; and (2) that the patent(s) at issue bear an immediate and necessary relation to that alleged inequitable conduct."  *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 362 F. Supp. 2d 526 (D. N.J. 2005).

65.     To cure inequitable conduct that occurred in the same or an earlier application, an applicant must (1) expressly advise the PTO of the existence of the misrepresentation, stating specifically wherein it resides; (2) if the misrepresentation is of one or more facts, the PTO is to be advised what the actual facts are, the applicant making it clear that further examination in

light thereof may be required; and (3) on the basis of the new and factually accurate record, the applicant must establish patentability of the claimed subject matter. *Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983); *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 597 (D. Del. 2006).

66.    Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S.P.T.O.  "Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure' .... [and] any assertion that is made during litigation which is contradictory to assertions made to the examiner."  MPEP Section 2001.06(c).  *See also Critikon*, 120 F.3d at 1259.  Litigation is material *per se* to patentability.  *See Daimlerchrysler AG v. Feuling Advanced Tech., Inc*., 276 F. Supp. 2d 1054, 1063 (S.D. Cal. 2003).

### D.    Plaintiff Has Come Before the Court With Unclean Hands

67.    An issue that remains to be litigated is whether Affinion is barred from asserting the '412 patent against Maritz under the doctrine of unclean hands.  Remedies are available under the unclean hands doctrine if some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in litigation.  *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933).

68.    The doctrine of unclean hands is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."  *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245-6 (1933).   Unclean hands is an equitable defense that can be found both with respect to withholding information from the USPTO and with

respect to misconduct in litigation. *See Precision Instrument Mfg. Co. v. Automatic Maintenance Machinery Co.*, 324 U.S. 806, 816 (1945) (unclean hands found where "[t]he history of the patents and contracts at issue is steeped in perjury and undisclosed knowledge of perjury"); *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) (unclean hands can be found both with respect to withholding information from the Patent Office and with respect to conduct in litigation).

69.     An unconscionable act committed during the prosecution of a patent before the PTO has an immediate and necessary relationship to any subsequent attempt to enforce the patent in a court of equity, the court has the discretion under the unclean hands doctrine to dismiss the litigation brought to enforce such a patent. *Hoffman-La Roche, Inc., v. Promege Corp.,* 319 F. Supp. 2d 1011, 1017 (N.D. Cal. 2004).

70.     The Court may consider conduct occurring both before and after the patent was issued in determining whether a party has unclean hands. *Hoffman-La Roche, Inc. v. Promege Corp.,* 319 F. Supp. 2d 1011, 1025 (N.D. Cal. 2004).

71.     If an unconscionable act in question took place during litigation, the Court has authority to use the unclean hands doctrine to dismiss specific causes of action or the lawsuit in its entirety. *Id*. at 1017.

72.     The validity of a patent asserted in a patent infringement action has an immediate and necessary relation to the litigation. *Hoffman-La Roche*, 319 F. Supp. 2d at 1018; *Aptix Corp. v. Quickturn Design Systems, Inc.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001).

**E.     Plaintiff Has Misused the '412 Patent**

.

73.    An issue that remains to be litigated is whether Affinion is barred from asserting the '412 patent against Maritz under the doctrine of patent misuse.  Patent misuse "requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868-71 (Fed. Cir. 1997); *C.R. Bard, Inc. v. M3 Systems, Inc*., 157 F.3d 1340, 1372 (Fed. Cir. 1998).

74.    Patent misuse can arise when conditions of antitrust violation are not met.  *C.R. Bard, Inc. v. M3 Systems, Inc*., 157 F.3d 1340, 1372 (Fed. Cir. 1998).

75.    "The bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995).  Such bad faith may include "knowing either at the time the lawsuit is filed or during its pendency that the particular patent sued upon is invalid."  *See Handguards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 990 (9th Cir. 1979).

76.    "[A] finding of misuse is precluded ... ***only if the patent infringement suit is brought in good faith.***"  *In re Indep. Serv. Org. Antitrust Litig*., 964 F. Supp. 1479, 1484 (D. Kan. 1997), *citing Glaverbel Societe Anonyme v. Northlake Marketing*, 45 F.3d 1550, 1558-59 (Fed. Cir. 1995) (emphasis supplied).  Misuse is established upon contrary evidence – *i.e*., that suit was brought or maintained in bad faith.  *See Glaverbel,* 45 F.3d at 1558 (citing precedent to the effect that suit brought in bad faith and for improper purpose may constitute patent misuse); *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("[I]t is not patent misuse to bring suit to enforce patent rights ***not fraudulently obtained***") (emphasis supplied);

*Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709 (Fed. Cir. 1992) ("[A] patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers").  *See also, McKesson Information Solutions, LLC v. The Trizetto Group, Inc.*, 2005 WL 914776 at *1-2 (D. Del. 2005) (while noting that such motions are "disfavored," court denied motion to strike affirmative defense of patent misuse which alleged that plaintiff had attempted to enforce a patent it "should reasonably know is invalid and not infringed").

### F.    Plaintiff Is Barred From Enforcing the '412 Patent Because It and Its Predecessors Have Committed Laches

77.    An issue that remains to be litigated is whether Affinion is barred from asserting the '412 patent against Maritz under the doctrine of laches.  In order to invoke the laches defense, a defendant must prove two elements:  (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the delay operated to the prejudice or injury of the defendant.  *A.C. Aukerman Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020, 1032 (Fed. Cir. 1992); *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 599 (D. Del. 2006).  Such prejudice may be either economic or evidentiary.  *Aukerman*, 960 F.2d at 1033.

78.    The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit.  -*A.C. Aukerman*, 960 F.2d at 1032.

79.    A patentee cannot avoid the consequences of his laches by transferring the patent. *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997), abrogated on other grounds by *Cybor Corp. v. FAS Tech,, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998).  In determining the length of delay, a transferee of the patent must accept the

consequences of the dilatory conduct of immediate and remote transferors.  *See Raber v. Pittway Corp.,* 1994 WL 374542, *3 (N.D. Cal. 1994), *citing* Donald S. Chisum, *Patents,* § 19.05[2][a][ii] (1994).  In other words, the tacking of predecessor patentees' inaction is universally allowed.  *Id.*

### G.    Plaintiff Is Estopped From Enforcing the '412 Patent Against Maritz

80.    An issue that remains to be litigated is whether Affinion is barred from asserting the '412 patent against Maritz under the doctrine of equitable estoppel.  Equitable estoppel is neither limited to a particular factual situation nor subject to resolution by simple or hard and fast rules.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed. Cir. 1992).

81.    Three elements must be established to bar a patentee's suit by reason of equitable estoppel: (1) The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer ("Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak); (2) The alleged infringer relies on that conduct; and (3) Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.  *Id.* at 1028.  If an alleged infringer establishes these three elements by a preponderance of the evidence, the patentee's claim may be entirely barred.  *Id.*

82.    In order for there to be equitable estoppel, "the alleged infringer must have knowledge of the patentee and its patent and must reasonably infer that the patentee acquiesced to the allegedly infringing activity for some time." *Winbond Elec. Corp. v. Int'l Trade Comm'n,* 262 F.3d 1363, 1374 (Fed. Cir. 2001).

### H.    *Arguendo*, If Infringement is Found, and the '412 Patent Is Not Found Invalid or Unenforceable, Plaintiff Has Insufficient Proof of Lost Profits

**Damages, And Plaintiff's Reasonable Royalty Proof is Overstated and Not Credible.**

83.    An issue that remains to be litigated is the amount of damages owed to plaintiff if, *arguendo*, Maritz is found to have infringed the '412 patent (which Maritz denies).  Upon a finding of infringement, damages are awarded under 35 U.S.C. § 284, which provides that the patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

84.    "Damages is the amount of loss to a patentee.  A patentee may seek to recover actual damages, usually, the amount of profits actually lost, or if unable to prove actual damages, the patentee is entitled to a reasonable royalty." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991) (internal citations omitted).

85.    To recover lost profits, a patentee must show that, but for the defendant's infringement, the patentee would have made the sales and would have made a certain level of profit.  There are four elements required to prove lost profits:  (1) a demand for the patented product; (2) the absence of an acceptable, non-infringing substitute for the patented product; (3) the patent owner's manufacturing and marketing capability to exploit the demand for the patented product; and (4) the amount of profit the patent owner would have expected to make if the patent owner had made the infringer's sales. *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978)).

86.    The recovery of lost profits by a patentee is not limited to the situation in which the patentee is selling the patented device; however, "the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim

damages consisting of lost profits." *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).

87.    The Federal Circuit has held that the existence of a relationship between two companies is not enough to establish damages because separate corporate entities must endure both the benefits and burdens of their chosen corporation form. *See Poly-America,* 383 F.3d at 1311. In other words, companies may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure, such as the patent holder's inability to claim the lost profits of its non-exclusive licensee. *Id*.

88.    Another issue of law that remains to be litigated is the appropriate amount of plaintiff's *arguendo* damages under a reasonable royalty analysis. "A reasonable royalty 'may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee.'" *Philips Elecs. N. Am. Corp. v. Contec Corp*., 418 F. Supp. 2d 470, 478   (D. Del. 2006); *see also Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

89.    A reasonable royalty can only be applied to Maritz's sales which are found to have actually resulted in an infringement. *See* 35 U.S.C. § 284; *Oak Indus., Inc. v. Zenith Elecs. Corp.,* 726 F. Supp. 1525, 1543 (N.D. Ill. 1989) (rejecting theory that royalty rate should be applied to all potentially infringing items sold; only those found to be actually infringing are appropriately taxed). Neither the "entire market value" rule nor the "convoyed sales" rule apply here in determining the sales that are subject to royalty, because, among other reasons, the parties to the hypothetical negotiation under the then-prevailing business circumstances would not have agreed to subject non-infringing conduct or sales to a royalty. *See Georgia-*

*Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).  The parties

would, however, have taken into account in the hypothetical negotiation the presence of non-

infringing alternatives, including but not limited to obtaining rights to practice the patent from

an authorized source other than the plaintiff.  *See Grain Processing Corp. v. American Maize*

*Products, Co*., 185 F.3d 1341 (Fed. Cir. 1999).

I.    **Plaintiff Is Not Entitled to Recover Damages for Any Infringement**
      **Occurring Before the Present Suit Was Filed**

90.    Another issue that remains to be litigated is if plaintiff and/or its predecessors in

interest gave Maritz actual notice of its claim that its VAULT and/or AwardHQ systems

infringed the '412 patent.  To give actual notice, the patent owner must make an "affirmative

communication to the alleged infringer of a specific charge of infringement by a specific

accused product or device."  *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001).  A

communication of infringement regarding one product or device is insufficient to provide actual

notice of other products or devices also made, sold, or used by the accused infringer.  *See id*. at

1346-47 (notice as to defendant's TRACKMAN VISTA products did not provide notice as to

related TRACKMAN MARBLE products).  *See also Mosaid Technolgoies Inc. v. Samsung*

*Electronics Co., Ltd.*, 362 F. Supp. 2d 526, 557-58 (D.N.J. 2005) (holding that naming a

specific product did not give notice as to related products).

J.    **Plaintiff Is Not Entitled To Recover Prejudgment Interest**

91.    Under 35 U.S.C. § 284, a successful patentee may recover damages adequate to

compensate for infringement.  As the Supreme Court has stated, "§ 284 does not require an

award of prejudgment interest whenever infringement is found."  *General Motors Corp. v.*

*Devex Corp.*, 461 U.S. 648, 654 (1983).

92.    Instead, prejudgment interest should be awarded "where necessary to afford the plaintiff full compensation for infringement." *Id*. at 656. Under this standard, the grant or denial of prejudgment interest, the rate of such interest, and whether to award compound or simple interest are all matters within the Court's discretion. *Bio-Rad Labs, Inc. v. Nicolet Instrument Corp*., 807 F.2d 964, 967-69 (Fed. Cir. 1986). In exercising this discretion, the Court may limit prejudgment interest, or deny it altogether, where the patent owner unduly delays prosecuting the lawsuit and that delay results in prejudice to the defendant. *General Motors Corp*., 461 U.S. at 656; *Crystal Semiconductors Corp. v. Tritech Microelectronics Int'l., Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001).

**J.    If Infringement Is Found, Maritz Did Not Willfully Infringe The '412 Patent, And Enhanced Damages Cannot Be Awarded.**

93.    Issues that remain to be litigated – if, *arguendo*, Maritz is found to have infringed the '412 patent – is whether Maritz's alleged infringement was willful and/or whether enhanced damages and/or attorneys' fees should be awarded to plaintiff.

94.    An individual has "an affirmative duty of due care to avoid infringement of the known patent rights of others." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1345-46 (Fed. Cir. 2004).

95.    A finding of willfulness requires a finding "by clear and convincing evidence in view of the totality of the circumstances that [defendant] acted in disregard of the ... patent and lacked a reasonable basis for believing it had a right to do what it did." *WMS Gaming Inc. v. International Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999), *Gustafson, Inc. v. Intersystems Indus. Prods. Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). "There is no evidentiary presumption that every infringement is willful." *Norian Corp. v. Stryker Corp.,* 363 F.3d 1321,

1332 (Fed. Cir. 2004). "Willful infringement is not established by the simple fact of infringement," even where the accused has knowledge of the patents. *Id.*

96.    The Court must weigh the totality of the circumstances in determining whether any infringement was willful. *Knorr-Bremse,* 383 F.3d at 1342. Willfulness of infringement is a finding of fact. *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc*., 1 F.3d 1214, 1222 (Fed. Cir. 1993). The Court recently recognized in *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 360, 365 (D. Del. 2005), that:

> The Federal Circuit has identified several factors that may be considered in determining whether infringement is willful: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) the duration of defendant's misconduct; (7) remedial action taken by defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.
> (citing *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 827 (Fed.Cir.1992)).

97.    The failure to obtain an exculpatory opinion of counsel does not provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable. *Knorr-Bremse*, 383 F.3d at 1341-42.

98.    Courts typically use the *Read* factors to determine whether enhanced damages are appropriate. *See e.g.*, *Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1370-1371 (Fed. Cir. 2004); *Trista Technology, Inc. v. ICN Pharmaceuticals, Inc*., 314 F. Supp. 2d 356, 360-63 (D. Del. 2004). Under the evidence in this case, even if *arguendo* the jury finds Maritz infringed the '412 patent, such infringement was not willful, and enhanced damages to plaintiff are not appropriate.

## K.    Affinion Is Not Entitled to a Permanent Injunction

99.    A plaintiff seeking a permanent injunction must satisfy a four factor test before a court may grant such relief.  *eBay Inc. v. Mercexchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006). A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Id.*

100.    A finding of infringement does not create a presumption of irreparable harm. *Paice LLC v. Toyota Motor Corp*., 2006 WL 2385139, *4 (E.D. Tex. 2006); *z4 Technologies, Inc. v. Microsoft Corp*., 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006).  Instead, the plaintiff must meet its burden of demonstrating that it has suffered an irreparable injury.  *Id.*

101.    Infringing one's right to exclude alone is insufficient to establish that monetary damages are an inadequate remedy.  *Paice*, 2006 WL 2385139 at *5.

**L.    Maritz Is Entitled To Recover Its Attorneys' Fees**

102.    A trial court may, in its discretion, award attorneys' fees in "exceptional" patent cases to the prevailing party.  *See* 35 U.S.C. § 285.

103.     "Exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent."  *Brasseler U.S.A. I, L.P. v. Stryker Sales Corp*., 267 F.3d 1370, 1380 (Fed. Cir. 2001).  "The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement."  *Id.*

104.   In this case, the '412 Patent was inequitably obtained, and Affinion has vexatiously and unjustifiedly attempted to enforce that patent against Maritz and others. This conduct renders this case exceptional, and Maritz is entitled to recover its attorneys' fees.

### L.    Maritz Did Not Falsely Mark Any Advertising Materials

105.   To prove a violation of the false marking statute, 35 U.S.C. § 292, Affinion must prove (1) that Maritz marked upon, or affixed or used in advertising in connection with any article the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, (2) that no application for patent was made, or if made, is not pending, (3) for the purpose of deceiving the public. 35 U.S.C. § 292(a); *see also Arcadia Machine & Total Inc. v. Sturm, Ruger & Co., Inc.,* 786 F.2d 1124, 1125 (Fed Cir 1986).

106.   "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Id.* at 1352. "The standard is whether [plaintiff] prove[s] by a preponderance of the evidence that [defendant] did not have an honest good faith belief in marking its products." *Clontech Laboratories, Inc. v. Invitrogen Corporation,* 406 F.3d 1347, 1355 (Fed. Cir. 2005).

107.   The remedy for false marking is $500 per offense. 35 U.S.C. § 292(a).

### M.    Defendant Did Not Engage In Unfair Competition

108.   To prevail on its claim of unfair competition under the Lanham Act (15 U.S.C. § 1125(a)), the U.S. Court of Appeals for the Third Circuit has said a plaintiff must prove by a preponderance of the evidence that: (1) the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that

it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *Johnson & Johnson Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3rd Cir. 1994).

109. Affinion claims that the same alleged false marking that violated 35 U.S.C. § 292 also violates 15 U.S.C. § 1125(a). Maritz denies these allegations and further asserts that liability cannot arise under either code section unless Affinion can show (i) anticompetitive activity; and (ii) patent false marking. Congress enacted 35 U.S.C. § 292 to specifically address false marking of patent protection. Under the settled canon of statutory construction *lex specialis derogat legi generali*, this specific provision trumps the general false marking provision. Therefore, the elements and penalty for patent false marking are specifically addressed in § 292 and the solitary act of patent false marking is not actionable under 15 U.S.C. 1125(a).

110. If the Court instead finds Congress intended § 1125(a) to encompass patent false marking, it must also require a showing of bad faith. This Court and the Federal Circuit have found that, when a Lanham Act claim is asserted against commercial activities relating to rights arising from the Patent Act, the claimant is required to establish that the patent holder acted in bad faith. *Serio-US Industries, Inc. v. Plastic Recovery Technologies Corp.*, --- F.3d ---,  2006 WL 2290995 *7 (Fed. Cir. August 10, 2006); *Isco Intern., Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 504 (D. Del. 2003); *Moore North America, Inc. v. Poser Business Forms, Inc*.  2000 WL 1480992, *6 (D. Del. 2000) ("The court concludes that it is bound by Federal Circuit law on this issue.  By requiring an element of bad faith in a Lanham Act claim, the Federal Circuit is not "trumping" patent law over the Lanham Act. Rather, the Federal Circuit is merely

accommodating the entitlements under the Patent Act with the obligations under the Lanham Act. Consequently, for defendant to prevail on its counterclaims under the Lanham Act, it must show that plaintiff acted in bad faith").

111.    A finding of bad faith is required due to the tension between federal patent law and a Lanham Act claim for unfair competition.  *Serio*, 2006 WL 2290995 at *7.  "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights."  *Isco*, 279 F. Supp. 2d at 505.  However, the incorrectness or falsity of a statement, without more, is not sufficient to sustain a finding of bad faith.  *Id.*  Affinion has not alleged bad faith on the part of Maritz and cannot satisfy the requirements of § 1125(a).

112.    "The court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  15 U.S.C. § 1117(a)(3).  Again, the damages for patent false marking are specifically provided for in 35 U.S.C. § 292 and Affinion—assuming *arguendo* it could establish Maritz's liability—should be limited to such remedy.  Maritz has found no case in which a court granted damages under § 1117 when the only accused action was patent false marking.

113.    If the Court finds it is not limited to the damages provided by § 292, it should consider whether the challenged conduct was willful when calculating damages.  *Callaway Golf Co. v. Slazenger,* 384 F. Supp. 2d 735, 741 (D. Del. 2005).  This Court has stated, "in the context of a false advertising claim under the Lanham Act, 'willfulness' and 'bad faith' require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense" and that aggravated activity such as "voluntary, knowing and intentional misconduct" is considered an indicator of willfulness.  *Id.*

31

# EXHIBIT 6

# EXHIBIT 6
## TO JOINT PRETRIAL ORDER

## AFFINION'S LIST OF PRE-MAR KED EXHIBITS,
## INCLUDING DESIGNATIONS OF INTERROGATORIES AND
## ANSWERS THERETO, THAT IT INTENDS TO OFFER AT TRIAL

Affinion intends to offer at trial Interrogatory Nos. 1, 3, 6, 7, 8, & 15, & Maritz's answers

thereto as set forth in Maritz's Second Supplemental Responses to Plaintiff Trilegiant Loyalty

Solutions, Inc.'s First Set of Interrogatories.

Affinion intends to offer at trial the following exhibits:

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 1 | Certified U.S. Patent No. 6,009,412 | | | copy at AFF-MTZ 013295 | AFF-MTZ 013311 | | | |
| 2 | Certified File History for U.S. Patent No. 6,009,412--part 1 of 3 parts | | | copy at AFF-MTZ 013312 | AFF-MTZ 013686 | | | |
| 3 | Certified File History for U.S. Patent No. 6,009,412--part 2 of 3 parts | | | copy at AFF-MTZ 013687 | AFF-MTZ 014034 | | | |
| 4 | Certified File History for U.S. Patent No. 6,009,412--part 3 of 3 parts | | | copy at AFF-MTZ 014035 | AFF-MTZ 014533 | | | |
| 5 | Certified U.S. Patent No. 5,774,870 | | | | | | | |
| 6 | Certified File History for U.S. Patent No. 5,774,870 | | | copy at AFF-MTZ 012949 | AFF-MTZ 013294 | | | |
| 7 | Certified U.S. Patent No. 6,578,012 | | | | | | | |
| 8 | Certified File History for U.S. Patent No. 6,578,012 | | | copy at AFF-MTZ 014534 | AFF-MTZ 014828 | | | |
| 9 | Preliminary Statement | PX 218 | 06/25/1998 | | | | | |
| 10 | Petition to Make Special | PX 217 | 10/26/1998 | | | | | |
| 11 | Office Action for Application No. 9105227 | DX 268 | 05/10/1999 | | | | | |
| 12 | U.S. Patent & Trademark Office Assignment Records | | | AFF-MTZ 015701 | AFF-MTZ 015709 | | | |
| 13 | Patent Purchase Agreement between Thomas W. Storey & Netcentives, Inc.--Netcentives Signature | DX 200 | 07/21/1997 | TRL-MTZ 03988 | TRL-MTZ 04000 | | | |
| 14 | Patent Purchase Agreement between Thomas W. Storey & Netcentives, Inc.--Storey signature | DX 201 | 07/21/1997 | TRL-MTZ 04001 | TRL-MTZ 04013 | | | |
| 15 | Assignment to Netcentives, Inc. from Interactive Promotions Online, Inc. | | 07/21/1997 | TRL-MTZ 04034 | TRL-MTZ 04034 | | | |
| 16 | Patent & License Purchase Agreement by & between Trilegiant Corp. & Netcentives, Inc. & other documents | PX 57 | 12/07/2001 | TRL-MTZ 18803 | TRL-MTZ 19009 | | | |
| 17 | Assignment of Patents between Netcentives Inc. & Trilegiant Corp. | DX 58 | 12/07/2001 | TRL-MTZ 16214 | TRL-MTZ 16215 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 18 | Assignment of Patent Applications between Netcentives, Inc. & Trilegiant Corp. | | 12/07/2001 | TRL-MTZ 18801 | TRL-MTZ 18802 | | | |
| 19 | News Release re: Trilegiant Loyalty Solutions Purchases Netcentives Patents | DX 67 | 02/05/2002 | TRL-MTZ 41108 | TRL-MTZ 41109 | | | |
| 20 | PTO Notice of Recordation of Assignment of Patent Nos. 5,774,870 & 6,009,412 from Netcentives to Trilegiant Corp. | | 02/21/2002 | TRL-MTZ 39597 | TRL-MTZ 39603 | | | |
| 21 | Patent Assignment between Trilegiant Corp. & Trilegiant Loyalty Solutions, Inc. | | 01/29/2004 | AFF-MTZ 012943 | AFF-MTZ 012948 | | | |
| 22 | Executed Patent Assignment Agreement between Trilegiant Loyalty Solutions, Inc. & Affinion Net Patents, Inc. | DX 102 | 10/17/2005 | TRL-MTZ 45326 | TRL-MTZ 45331 | | | |
| 23 | Executed Patent License Agreement between Affinion Net Patents, Inc. & Trilegiant Loyalty Solutions, Inc. | DX 99 | 10/17/2005 | TRL-MTZ 45284 | TRL-MTZ 45289 | | | |
| 24 | Maritz's Chart re: Title Chain Per USPTO | | | MAR 115877 | MAR 115877 | | | |
| 25 | Chart re: Netcentives Licensees, Netcentives Patent-Related Agreements | DX 63 | | TRL-MTZ 16894 | TRL-MTZ 16898 | | | |
| 26 | Fax from C. Chaney to B. Rooney re: Netcentives, Inc. Patent Information re: Licensees, Agreements & other information | DX 177 | 02/25/2002 | TRL-MTZ 16905 | TRL-MTZ 16912 | | | |
| 27 | E-mail from P. Gonzalez to M. Beller re: Patent Payments | DX 170 | 02/25/2004 | TRL-MTZ 41939 | TRL-MTZ 41939 | | | |
| 28 | Standard draft Patent License Agreement between Trilegiant Corp. & Licensee | DX 110 | | TRL-MTZ 16913 | TRL-MTZ 16920 | | | |
| 29 | America Online Interactive Marketing & Software Distribution Agreement | | 01/28/2000 | TRL-MTZ 40273 | TRL-MTZ 40318 | | | |
| 30 | America Online Interactive Marketing & Software Distribution Agreement Amendment | DX 121 | 06/05/2001 | TRL-MTZ 18755 | TRL-MTZ 18766 | | | |
| 31 | American Express Incentives Management Program Management | | 11/17/1999 | TRL-MTZ 40319 | TRL-MTZ 40407 | | | |
| 32 | Beenz.com Patent License Agreement | DX 122 | 05/21/2001 | TRL-MTZ 01650 | TRL-MTZ 01661 | | | |
| 33 | Carlson Letter from H. Schrum to T. Chen re: Proposal of licensing patents 5,774,870 & 6,009,412 | DX 32 | 05/01/2000 | TRL-MTZ 44553 | TRL-MTZ 44556 | | | |
| 34 | Carlson Letter from W. Shell to J. Ryan re: Partnership opportunities | DX 33 | 10/23/2000 | TRL-MTZ 44744 | TRL-MTZ 44749 | | | |
| 35 | Carlson Patent License & Settlement Agreement | DX 66 | 01/11/2002 | TRL-MTZ 42974 | TRL-MTZ 42991 | | | |
| 36 | Carlson Patent License & Settlement Agreement | DX 239 | 02/13/2002 | TRL-MTZ 42992 | TRL-MTZ 43014 | | | |
| 37 | Choice Hotels Patent License Agreement | DX 116 | 02/01/2003 | TRL-MTZ 40421 | TRL-MTZ 40428 | | | |
| 38 | Coolsavings.com Incentives Management Program Agreement | | 03/31/2000 | TRL-MTZ 40082 | TRL-MTZ 40172 | | | |
| 39 | CoolSavings.com Incentive Management Program Agreement Addendum | | 06/14/2001 | TRL-MTZ 40078 | TRL-MTZ 40081 | | | |
| 40 | CRC, Inc. Patent License Agreement | | 12/07/2001 | TRL-MTZ 45274 | TRL-MTZ 45282 | | | |
| 41 | eBay Draft Patent License Agreement | DX 118 | 1/1/2003 | TRL-MTZ 44159 | TRL-MTZ 44166 | | | |
| 42 | eBay Patent License Agreement | DX 117 | 01/05/2004 | TRL-MTZ 16412 | TRL-MTZ 16421 | | | |
| 43 | ESC Patent License Agreement | DX 123 | 07/26/2000 | TRL-MTZ 04724 | TRL-MTZ 04733 | | | |
| 44 | FreeRide.com Patent License Agreement | | 02/15/2001 | TRL-MTZ 04734 | TRL-MTZ 04758 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 45 | Lycos Incentives Management Program Agreement | DX 125 | 8/16/1999 | TRL-MTZ 40173 | TRL-MTZ 40232 | | | |
| 46 | Massmedium.com Patent License Agreement | | 05/31/2001 | TRL-MTZ 40486 | TRL-MTZ 40497 | | | |
| 47 | Mypoints check | DX 174 | 04/20/2000 | TRL-MTZ 18157 | TRL-MTZ 18158 | | | |
| 48 | MyPoints Patent License Agreement | PX 263 | 03/31/1999 | TRL-MTZ 04185 | TRL-MTZ 04194 | | | |
| 49 | Mypoints Patent License Agreement | DX 173 | 03/31/1999 | TRL-MTZ 04185 | TRL-MTZ 04194 | | | |
| 50 | Orbitz: Complaint | | 1/10/2003 | TRL-MTZ 16372 | TRL-MTZ 16409 | | | |
| 51 | Orbitz: Stipulation of Dismissal | | 5/17/2004 | TRL-MTZ 16109 | TRL-MTZ 16110 | | | |
| 52 | Orbitz Draft Settlement Agreement | DX 119 | 3/1/2003 | TRL-MTZ 40409 | TRL-MTZ 40420 | | | |
| 53 | Orbitz License Agreement | DX 157 | 04/27/2004 | | | | | |
| 54 | Rewards2k.com Patent License Agreement | DX 53 | 08/02/2001 | TRL-MTZ 44386 | TRL-MTZ 44396 | | | |
| 55 | Sperry & Hutchinson Patent License Agreement | DX 126 | 03/29/2000 | TRL-MTZ 00885 | TRL-MTZ 00893 | | | |
| 56 | Sperry & Hutchinson Patent License Agreement Amendment | DX 127 | 08/29/2001 | TRL-MTZ 17910 | TRL-MTZ 17913 | | | |
| 57 | Webmiles Patent License Agreement | | 07/25/2001 | TRL-MTZ 45039 | TRL-MTZ 45056 | | | |
| 58 | Yahoo! Inc. Patent Cross License Agreement | DX 105 | 10/01/2001 | TRL-MTZ 18348 | TRL-MTZ 18361 | | | |
| 59 | Yahoo! Inc. Patent Cross License Agreement | | 10/01/2001 | TRL-MTZ 18393 | TRL-MTZ 18404 | | | |
| 60 | Yahoo! Patent Cross License Agreement | PX 266 | 10/1/2001 | | | | | |
| 61 | U.S. Patent No. 5,483,444 for System for award credits to persons who book travel-related reservations | DX 296 | 01/09/1996 | MAR 027521 | MAR 027533 | | | |
| 62 | Handwritten notes by Jacqueline Miller | DX 234 | 1995 | TRL-MTZ 14286 | TRL-MTZ 14319 | | | |
| 63 | Handwritten notes by Jacqueline Miller | DX 237 | 1995 | TRL-MTZ 14321 | TRL-MTZ 14323 | | | |
| 64 | Notes by Jacqueline Miller | DX 236 | 1995 | TRL-MTZ 01895 | TRL-MTZ 01902 | | | |
| 65 | Charts with handwritten notes re: Incorporate IPI, Sales Force, On-Line Marketing & other topics | DX 238 | 09/03/1995 | TRL-MTZ 14333 | TRL-MTZ 14348 | | | |
| 66 | Add em Up Flow Chart | DX 258 | 09/05/1995 | TRL-MTZ 14366 | TRL-MTZ 14366 | | | |
| 67 | Flow Chart re: Add Up | DX 259 | 09/05/1995 | TRL-MTZ 14367 | TRL-MTZ 14367 | | | |
| 68 | Statement of Account from The Company Corp. to Interactive Promotions Online, Inc. re: Account | | 9/7/1995 | TRL-MTZ 04127 | TRL-MTZ 04127 | | | |
| 69 | Letter from J. Bach to T. Storey re: Retainer | | 09/28/1995 | AFF-MTZ 012871 | AFF-MTZ 012872 | | | |
| 70 | IPO Bank Expenses | | 03/15/1998 | TRL-MTZ 04128 | TRL-MTZ 04130 | | | |
| 71 | Letter from J. Bach to T. Storey re: Revisions to Application Claims | | 12/11/1995 | AFF-MTZ 012870 | AFF-MTZ 012870 | | | |
| 72 | Letter from J. Bach to T. Storey re: Formal Documents | DX 190 | 12/15/1995 | TRL-MTZ 12564 | TRL-MTZ 12564 | | | |
| 73 | Summary re: Interactive Promotions Online, Inc. | DX 241 | 01/15/1996 | TRL-MTZ 14353 | TRL-MTZ 14355 | | | |
| 74 | Summary re: Interactive Promotions Online, Inc. | DX 242 | 01/15/1996 | TRL-MTZ 14356 | TRL-MTZ 14361 | | | |
| 75 | Summary re: Interactive Promotions Online, Inc. | | 01/15/1996 | TRL-MTZ 04141 | TRL-MTZ 04146 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 76 | Summary re: Interactive Promotions Online, Inc. | | 01/15/1996 | TRL-MTZ 04159 | TRL-MTZ 04165 | | | |
| 77 | Letter from J. Bach to T. Storey re: Stamped Request for Early Notification of Serial Number | | 01/28/1996 | AFF-MTZ 012868 | AFF-MTZ 012869 | | | |
| 78 | Letter from J. Bach to T. Storey re: Notice of Missing Parts | | 03/06/1996 | AFF-MTZ 012866 | AFF-MTZ 012866 | | | |
| 79 | Letter from J. Bach to T. Storey re: Filing Receipt | | 07/03/1996 | AFF-MTZ 012865 | AFF-MTZ 012865 | | | |
| 80 | Letter from T. Storey to C. Nelson re: patent application & AddemUp program | | 09/20/1996 | TRL-MTZ 04040 | TRL-MTZ 04077 | | | |
| 81 | Memorandum from K. Hammond to T. Story re: ADDemUp Frequency Program | | 10/17/1996 | TRL-MTZ 04137 | TRL-MTZ 04138 | | | |
| 82 | Non-Disclosure Agreement between Interactive Promotions Online, Inc. & CoralTree Internet Solutions, Inc. | | 11/1/1996 | TRL-MTZ 04166 | TRL-MTZ 04168 | | | |
| 83 | Letter from T. Storey to J. Bach re: Request to file for International PCT application for unspecified application | | 11/19/1996 | AFF-MTZ 012864 | AFF-MTZ 012864 | | | |
| 84 | Summary re: Interactive Promotions Online, Inc. | DX 240 | 12/12/1996 | TRL-MTZ 14349 | TRL-MTZ 14352 | | | |
| 85 | Summary re: Interactive Promotions Online, Inc. | | 12/12/1996 | TRL-MTZ 04147 | TRL-MTZ 04155 | | | |
| 86 | draft Stock Purchase Agreement between Interactive Promotions Online, Inc., Thomas Storey & Jacqueline Miller & Netcentives, Inc. | | 4/1/1997 | TRL-MTZ 03953 | TRL-MTZ 03973 | | | |
| 87 | Letter from E. Tilenius to J. Miller re: Invitation to serve as a Senior Advisor to Netcentives, Inc. | | 04/07/1997 | TRL-MTZ 03977 | TRL-MTZ 03979 | | | |
| 88 | Letter from E. Tilenius to T. Storey re: Due Diligence Materials: Schedules | | 04/08/1997 | TRL-MTZ 04035 | TRL-MTZ 04039 | | | |
| 89 | Invoice from Joseph Bach | DX 192 | 07/14/1997 | TRL-MTZ 12566 | TRL-MTZ 12566 | | | |
| 90 | Letter from J. Stattler to T. Storey re: Assignment for Application No. 08/572,017 | | 07/17/1997 | AFF-MTZ 012859 | AFF-MTZ 012860 | | | |
| 91 | Letter from J. Stattler to J. Bach re: Power of Attorney, Change of Correspondence Address & Assignments | DX 191 | 09/05/1997 | TRL-MTZ 12565 | TRL-MTZ 12565 | | | |
| 92 | Letter from J. Stattler to T. Storey re: Notice of Allowance & Issue Fee for Application No. 08/572,017 | | 01/23/1998 | AFF-MTZ 012844 | AFF-MTZ 012844 | | | |
| 93 | Letter from J. Longinotti to S. Khare re: Stock Issuance to Thomas Storey & Jaqueline Miller & other documents | | 11/03/1998 | TRL-MTZ 03917 | TRL-MTZ 03934 | | | |
| 94 | Copy of business card for Thomas Storey | DX 181 | | TRL-MTZ 12429 | TRL-MTZ 12429 | | | |
| 95 | ADDemUP Experience - Frequency Program History & Information | | 1996 | TRL-MTZ 04131 | TRL-MTZ 04136 | | | |
| 96 | Netcentives Meeting Summary | DX 34 | 05/01/2000 | TRL-MTZ 40548 | TRL-MTZ 40551 | | | |
| 97 | Cendant Presentation re: A Global Provider of Consumer & Business Services - Discussion with Netcentives | DX 35 | 09/26/2000 | TRL-MTZ 40575 | TRL-MTZ 40626 | | | |
| 98 | Handwritten notes re: Netcentives | DX 36 | 10/10/2000 | TRL-MTZ 17521 | TRL-MTZ 17524 | | | |
| 99 | E-mail from H. Loftus to C. Chaney & others re: Patent license term sheet document | DX 278 | 12/07/2000 | TRL-MTZ 12867 | TRL-MTZ 42875 | | | |
| 100 | E-mail from H. Loftus to C. Chaney & others re: Patent License Term Sheet Document | DX 176 | 12/07/2000 | TRL-MTZ 42867 | TRL-MTZ 42870 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 101 | E-mail from M. Beller to S. Bernstein re: Revised Investment Priorities | DX 175 | 01/05/2001 | TRL-MTZ 41147 | TRL-MTZ 41147 | | | |
| 102 | E-mail from R. Dufour to J. Nichols & others re: Cendant Hotels | DX 42 | 01/10/2001 | TRL-MTZ 42860 | TRL-MTZ 42861 | | | |
| 103 | Article re: Netcentives Launches New Integrated On/Offline Rewards System & ClickRewards: Shop & Earn Print Out | | 02/22/2001 | TRL-MTZ 17505 | TRL-MTZ 17508 | | | |
| 104 | Handwritten Notes re: Netcentives Investor Breakfast Meeting | DX 43 | 03/14/2001 | TRL-MTZ 17513 | TRL-MTZ 17520 | | | |
| 105 | E-mail from M. Beller to S. Lazear & others re: Netcentive News | DX 44 | 04/02/2001 | TRL-MTZ 17569 | TRL-MTZ 17572 | | | |
| 106 | E-mail from M. Beller to S. Lazear & others re: Netcentives News | | 04/02/2001 | AFF-MTZ 17569 | AFF-MTZ 17573 | | | |
| 107 | E-mail from S. Bagley to M. Beller & others re: Excerpts from Netcentives 4/2/01 Annual Report (SEC Filing) | DX 45 | 04/06/2001 | TRL-MTZ 40967 | TRL-MTZ 40969 | | | |
| 108 | E-mail from S. Bagley to M. Beller & others re: Netcentives Q1 Earnings Conference Call Summary & other documents | DX 46 | 04/25/2001 | TRL-MTZ 17476 | TRL-MTZ 17484 | | | |
| 109 | E-mail from M. Beller to S. Bernstein re: Idea for review | DX 280 | 05/14/2001 | TRL-MTZ 42831 | TRL-MTZ 42835 | | | |
| 110 | Chart re: Netcentives Overview | DX 50 | 06/01/2001 | TRL-MTZ 42810 | TRL-MTZ 42815 | | | |
| 111 | E-mail from S. Bagley to M. Beller re: Necentives Overview | DX 52 | 06/04/2001 | TRL-MTZ 42874 | TRL-MTZ 42874 | | | |
| 112 | E-mail from M. Huddle to M. Beller, M. Jaroneski & C. Chaney re: Loyalty Upgrade AFE Inc. Royalties | DX 172 | 06/06/2001 | TRL-MTZ 42780 | TRL-MTZ 42780 | | | |
| 113 | Presentation re: Trilegiant Loyalty Solutions - Business Review | DX 48 | 07/01/2001 | TRL-MTZ 42888 | TRL-MTZ 42907 | | | |
| 114 | Netcentives Inc. Business Asset Catalog | DX 109 | 10/08/2001 | TRL-MTZ 16990 | TRL-MTZ 17103 | | | |
| 115 | Correspondence from M. Beller to J. Chidsey re: Idea | DX 54 | 10/26/2001 | TRL-MTZ 42753 | TRL-MTZ 42753 | | | |
| 116 | E-mail from M. Beller to J. Chidsey re: Idea | | 10/26/2001 | TRL-MTZ 42876 | TRL-MTZ 42877 | | | |
| 117 | Letter from P. McGonagle to B. McGee re: Netcentives Inc. Auction | DX 55 | 11/13/2001 | TRL-MTZ 11349 | TRL-MTZ 11387 | | | |
| 118 | Letter from P. McGonagle to B. McGee re: Netcentives, Inc. Auction | | 11/14/2001 | TRL-MTZ 18972 | TRL-MTZ 18973 | | | |
| 119 | Scott Lazear files re: Netcentives patents & assets in bankruptcy & estimated royalties | DX 108 | | TRL-MTZ 17104 | TRL-MTZ 17154 | | | |
| 120 | Spreadsheet re: Trilegiant Loyalty Solutions - 16 Year Loyalty Growth Analysis | | | TRL-MTZ 17126 | TRL-MTZ 17126 | | | |
| 121 | Competitor Profile: Netcentives | DX 49 | | TRL-MTZ 17537 | TRL-MTZ 17545 | | | |
| 122 | Competitor Profile: Netcentives | DX 51 | | TRL-MTZ 42956 | TRL-MTZ 42967 | | | |
| 123 | E-mail from M. Shipley to K. Kutchins & others re: Information on Trilegiant | PX 80 | 11/04/2001 | MAR 018063 SP00001 | MAR 018071 SP000036 | | | |
| 124 | E-mail from D. Carrithers to M. Shipley re: Thanks for information on Trilegiant | PX 83 | 11/05/2001 | MAR 058382 | MAR 058382 | | | |
| 125 | E-mail from A. Jeffrey to S. Gallant re: Online Redemption Patents | PX 77 | 06/25/2002 | MAR 112499 | MAR 112501 | | | |
| 126 | E-mail from R. Evans to M. Beller re: Maritz Vault Loyalty Program | PX 82 | 06/28/2002 | MAR 017971 | MAR 017975 | | | |
| 127 | Letter from R. Evans to M. Beller re: Representation of Trilegiant Attorneys | PX 9 | 06/28/2002 | MAR 017971 | MAR 017971 | | | |
| 128 | E-mail from R. Evans to S. Gallant to Trilegiant | PX 192 | 06/28/2002 | MAR 112515 | MAR 112515 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 129 | Letter from S. Lieberman to R. Evans re: The Maritz Vault Loyalty Program | DX 287 | 07/03/2002 | | | | | |
| 130 | Letter from S. Lieberman to R. Evans re: Maritz Vault Loyalty Program | | 07/03/2002 | MAR 112502 | MAR 112502 | | | |
| 131 | E-mail from S. Gallant to F. Agovino re: Trilegiant | PX 193 | 07/03/2002 | MAR 112498 | MAR 112498 | | | |
| 132 | E-mail from S. Gallant to M. Shipley re: Trilegiant | PX 194 | 07/08/2002 | MAR 112496 | MAR 112497 | | | |
| 133 | E-mail from S. Gallant to M. Shipley re: Trilegiant | PX 75 | 07/08/2002 | MAR 112496 | MAR 112497 | | | |
| 134 | E-mail from J. McArthur to S. Gallant & M. Shipley re: Trilegiant | PX 195 | 07/17/2002 | MAR 112495 | MAR 112495 | | | |
| 135 | E-mail from J. McArthur to S. Gallant & M. Shipley re: Trilegiant | PX 76 | 07/17/2002 | MAR 112495 | MAR 112495 | | | |
| 136 | Interoffice Correspondence from M. Sewell to J. McArthur & others re: MLM | PX 224 | 11/06/2002 | MAR 024929 | MAR 024929 | | | |
| 137 | E-mail from J. Finelli to M. Shipley re: New Patent for Online Loyalty Program Awarded | PX 197 | 06/16/2003 | MAR 112493 | MAR 112494 | | | |
| 138 | Exhibits to Marion Stewart's Expert Report | | | | | | | |
| 139 | Exhibits to Marion Stewart's Supplemental Expert Report | | | | | | | |
| 140 | Spreadsheets & other Documents re: Affinion & Trilegiant Assumptions & Revenue Information | | 03/13/2006 | TRL-MTZ 47058 | TRL-MTZ 47112 | | | |
| 141 | Cendant Incentives 1999 Financials | DX 161 | 1999 | TRL-MTZ 38400 | TRL-MTZ 38438 | | | |
| 142 | Cendant Incentives 2000 Financials | DX 160 | 2000 | TRL-MTZ 38439 | TRL-MTZ 38455 | | | |
| 143 | Cendent Incentives 2000 Financials | DX 62 | 2000 | TRL-MTZ 40648 | TRL-MTZ 40669 | | | |
| 144 | Cendant Incentives, Inc. 2000 Financials | DX 162 | 2000 | TRL-MTZ 40996 | TRL-MTZ 41041 | | | |
| 145 | Income Statement Consolidated Cendant Incentives, Inc. for the period ending December 31, 2000 | | 03/29/2006 | TRL-MTZ 47113 | TRL-MTZ 47120 | | | |
| 146 | Income Statement Consolidated Cendant Incentives, Inc. for the period of December 31, 2000 | | 03/29/2006 | TRL-MTZ 47121 | TRL-MTZ 47128 | | | |
| 147 | Trilegiant Loyalty Solutions, Inc. 2001 Financials | DX 59 | 2001 | TRL-MTZ 38475 | TRL-MTZ 38510 | | | |
| 148 | Income Statement Consolidated Trilegiant Loyalty Solutions, Inc. for the period of December 31, 2001 | | 03/29/2006 | TRL-MTZ 47129 | TRL-MTZ 47137 | | | |
| 149 | Income Statement Consolidated Trilegiant Loyalty Solutions, Inc. for the period of December 31, 2001 | | 03/29/2006 | TRL-MTZ 47138 | TRL-MTZ 47146 | | | |
| 150 | Trilegiant Loyalty Solutions, Inc. 2002 Financials | DX 60 | 2002 | TRL-MTZ 38511 | TRL-MTZ 38541 | | | |
| 151 | Trilegient Loyalty Solutions, Inc. Consolidated Income Statement for the period ending December 31, 2002 | | 03/29/2006 | TRL-MTZ 47147 | TRL-MTZ 47162 | | | |
| 152 | Departmental Income Statement for Patent 161 for the period ending December 31, 2002 | DX 164 | 2002 | TRL-MTZ 42082 | TRL-MTZ 42105 | | | |
| 153 | E-mail from C. Chaney to M. Beller & S. Lazear re: Patent Forecast | DX 98 | 10/21/2002 | TRL-MTZ 42604 | TRL-MTZ 42630 | | | |
| 154 | Trilegiant Loyalty Solutions, Inc. 2003 Financials | DX 159 | 2003 | TRL-MTZ 38542 | TRL-MTZ 38580 | | | |
| 155 | Trilegiant Loyalty Solutions, Inc. & Cendant Incentives, Inc. Consolidated Income Statement for the period ending December 31, 2003 | | 03/29/2006 | TRL-MTZ 47163 | TRL-MTZ 47198 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 156 | Trilegiant Loyalty Solutions, Inc. & Cendant Incentives, Inc. Consolidated Income Statement for the period ending December 31, 2003 | | 03/29/2006 | TRL-MTZ 47174 | TRL-MTZ 47184 | | | |
| 157 | Departmental Income Statement for Patent 161 for the period ending December 31, 2003 | DX 165 | 2003 | TRL-MTZ 42106 | TRL-MTZ 42139 | | | |
| 158 | Trilegiant Loyalty Solutions, Inc. 2004 Financials | DX 61 | 2004 | TRL-MTZ 38581 | TRL-MTZ 38617 | | | |
| 159 | Departmental Income Statement for Patent 161 for the period ending December 31, 2004 | DX 166 | 2004 | TRL-MTZ 42140 | TRL-MTZ 42173 | | | |
| 160 | Trilegiant Loyalty Solutions, Inc. & Cendant Incentives, Inc. Consolidated Income Statement for the period ending December 31, 2004 | | 2004 | TRL-MTZ 47185 | TRL-MTZ 47191 | | | |
| 161 | Departmental Income Statement for Patent 161 for the period ending December 31, 2005 | DX 167 | 2005 | TRL-MTZ 42174 | TRL-MTZ 42238 | | | |
| 162 | Affinion Loyalty Group 2005 Financials | DX 158 | 2005 | TRL-MTZ 47096 | TRL-MTZ 47112 | | | |
| 163 | Online Member Access Pricing Summary | DX 178 | 04/15/2003 | TRL-MTZ 41576 | TRL-MTZ 41577 | | | |
| 164 | E-mail from T. Thomas to T. Taylor & others re: FY 2005-2007 Patent & TLS Financials | DX 94 | 08/15/2003 | TRL-MTZ 42350 | TRL-MTZ 42602 | | | |
| 165 | Cendant Corp. Valuation of Certain Intangible Assets of Trilegiant Loyalty Solutions | DX 169 | 01/30/2004 | TRL-MTZ 40408 | TRL-MTZ 40408 | | | |
| 166 | Standard & Poor's Determination of the Fair Value of Certain Tangible & Identifiable Intangible Assets of Trilegiant Loyalty Solutions as of January 30, 2004 | DX 168 | 7/6/2004 | AFF-MTZ 012750 | AFF-MTZ 012787 | | | |
| 167 | Trilegiant Loyalty Solutions Combined P&L (Loyalty, Traditional, Insurance) FY02, FY03, FY04 Accruals, FY05 & FY06 Profitability Analysis | | | TRL-MTZ 47199 | TRL-MTZ 47218 | | | |
| 168 | Trilegiant Loyalty Solutions, Inc. - Patent Free Cash Flow Summary 2002-2009 | | | TRL-MTZ 42348 | TRL-MTZ 42349 | | | |
| 169 | Letter from J. O'Donnell to P. McGonagle re: Letter of Intent | DX 96 | 08/18/2003 | TRL-MTZ 16983 | TRL-MTZ 16987 | | | |
| 170 | E-mail from S. Lazear to P. Gonzalez re: Loyalty Patents | DX 95 | 08/19/2003 | TRL-MTZ 44183 | TRL-MTZ 44183 | | | |
| 171 | Marti Beller Notes re: Annual Lost Revenue | DX 68 | 5/19/2006 | TRL-MTZ 45283 | TRL-MTZ 45283 | | | |
| 172 | Handwritten notes by Marti Beller re: Clients | DX 272 | 5/19/2006 | | | | | |
| 173 | Notes by Marti Beller re: Clients | DX 273 | 5/19/2006 | | | | | |
| 174 | E-mail from S. Sigman to T. Erwin & B. Lazarus re: Chase Bank One Planning | PX 84 | 01/28/2004 | MAR 32601 | MAR 32601 | | | |
| 175 | Letter from D. Burton to D. Burton re: Response to Subpoena | | 03/01/2006 | USBANK-FRCP45-0001 | USBANK-FRCP45-0001 | | | |
| 176 | U.S. Bancorp Rewards Partner Request for Proposal | | 10/26/2004 | USBANK-FRCP45-0002 | USBANK-FRCP45-0022 | | | |
| 177 | Maritz & TLS Initial RFP Evaluations, Results of Site Visit, Financial Comparison & other documents | | | USBANK-FRCP45-0026 | USBANK-FRCP45-0034 | | | |
| 178 | RFP References - TLS | | | USBANK-FRCP45-0035 | USBANK-FRCP45-0036 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 179 | Master Service Agreement between Maritz, Inc. & U.S. Bank National Association | | 11/30/2005 | USBANK-FRCP45-0037 | USBANK-FRCP45-0051 | | | |
| 180 | Letter from D. Adams to K. Green re: Request for Proposal for expanded Rewards Program for Discover Financial Services | | 04/25/2006 | DFS-FRCP45-0001 | DFS-FRCP45-0001 | | | |
| 181 | Letter from D. Adams to C. Lerwick re: Request for Proposal for expanded Rewards Programs for Discover Financial Services | | 04/25/2006 | DFS-FRCP45-0002 | DFS-FRCP45-0002 | | | |
| 182 | Discover Financial Services - Request for Proposal Expanded Rewards Program | | 10/21/2002 | DFS-FRCP45-0003 | DFS-FRCP45-0030 | | | |
| 183 | Letter from M. Shipley to D. Adams re: RFP Response for Discover Proposal | | 10/30/2002 | DFS-FRCP45-0031 | DFS-FRCP45-0170 | | | |
| 184 | Documents re: Maritz Collated RFP - General Information | | 04/20/2006 | DFS-FRCP45-0171 | DFS-FRCP45-0236 | | | |
| 185 | Letter from W. Granville to D. Adams re: Response to Discover Financial Services Request for Proposal for Proposal for expanded Rewards Program | | 10/31/2002 | DFS-FRCP45-0237 | DFS-FRCP45-0404 | | | |
| 186 | Article by D. Williamson re: Paying Users to Read Ads on Web Proves Risky Biz | | 09/30/1996 | TRL-MTZ 17318 | TRL-MTZ 17319 | | | |
| 187 | E-mail from B. Greenberg to A. Hodges re: Maritz Competitive Information | | 06/09/2004 | TRL-MTZ 41283 | TRL-MTZ 41285 | | | |
| 188 | Loyalty Programs Industry - Key Information Topics by Organization | | 05/10/2005 | TRL-MTZ 38214 | TRL-MTZ 38280 | | | |
| 189 | Cendant Marketing Group 2005 Competitor profiles | | 1/1/2005 | TRL-MTZ 41150 | TRL-MTZ 41271 | | | |
| 190 | Maritz Loyalty Marketing Strengths & Weaknesses | | | TRL-MTZ 41277 | TRL-MTZ 41280 | | | |
| 191 | Competitor Profile: Maritz, Inc. & Press Releases | | | TRL-MTZ 41329 | TRL-MTZ 41332 | | | |
| 192 | Interoffice Correspondence from S. Kankel to R. Lipovsky re: Netcentives Overview | PX 67 | 03/25/1999 | MAR 000123 | MAR 000167 | | | |
| 193 | ClickRewards Member Profile Topline Report | | 04/01/1999 | MAR 000780 | MAR 000796 | | | |
| 194 | E-mail from S. Kankel to D. Fonstad re: Netcentives/Maritz more background on meting | PX 227 | 04/28/1999 | MAR 000054 | MAR 000054 | | | |
| 195 | E-mail from J. McArthur to L. Plunk re: Netcentives Meeting | PX 228 | 05/05/1999 | MAR 000048 | MAR 000053 | | | |
| 196 | Redacted letter from M. Shipley to R. Lipovsky, S. Maritz & J. McArthur re: Netcentives Review | PX 68 | 06/01/1999 | MAR 000233 | MAR 000234 | | | |
| 197 | Inter-Office Correspondence from J. McArthur to D. Henke & others re: Netcentives Patent | PX 55 | 06/15/1999 | MAR 112691 | MAR 112692 | | | |
| 198 | E-mail from B. Macdonald to S. Maritz re: Netcentives Information | | 06/16/1999 | MAR 107806 | MAR 107806 | | | |
| 199 | Letter from M. Shipley to F. Agovino re: Program Specifics for maintaining a web-based Loyalty Program | DX 56 | 07/02/1999 | MAR 112799 | MAR 112800 | | | |
| 200 | Letter from M. Shipley to F. Agovino re: Specifics for building & maintaining a web-based Loyalty Program | PX 158 | 07/02/1999 | SP00996 | SP00996 | | | |
| 201 | Article by M. Rafter re: Point System - Employers regularly hand out prizes to top sales reps. Now Netcentives wants to take on the job, for a fee | PX 260 | 07/05/1999 | MAR 000085 | MAR 000085 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 202 | Interoffice Correspondence from M. Shipley to D. Henke & others re: Netcentives Meeting on 7/7/1999 | PX 69 | 07/06/1999 | MAR 000068 | MAR 000075 | | | |
| 203 | Document re: Maritz/Netcentives Meeting Notes | PX 230 | 07/07/1999 | MAR 000769 | MAR 000769 | | | |
| 204 | E-mail from M. Lockwood to R. Lipovsky & others re: Netcentives vs. MyPoints | PX 231 | 07/08/1999 | MAR 052945 | MAR 052945 | | | |
| 205 | Letter from C. Ard to J. Harris-Lohse re: File history for U.S. Patent No. 5,774,870 | | 07/08/1999 | SP01228 | SP01229 | | | |
| 206 | Meeting Notes for Netcentives | PX 1 | 07/12/1999 | MAR 000055 | MAR 000055 | | | |
| 207 | E-mail from W. Buttl to M. Shipley re: Netcentives Meeting notes | | 07/14/1999 | MAR 000056 | MAR 000056 | | | |
| 208 | Netcentives/Maritz Fulfillment Meeting Minuets | PX 2 | 07/19/1999 | MAR 000778 | MAR 000778 | | | |
| 209 | Letter from F. Agovino to J. McArthur re: Evaluation of Netcentives for U.S. Patent No. 5,774,870 | DX 57 | 07/19/1999 | SP00978 | SP01034 | | | |
| 210 | E-mail from K. Burger to M. Shipley re: More Loyalty Information | | 07/21/1999 | MAR 052937 | MAR 052940 | | | |
| 211 | E-mail from L. Miller to J. McArthur re: Netcentives Visit | PX 233 | 07/22/1999 | MAR 000062 | MAR 000063 | | | |
| 212 | Inter-Office Correspondence from S. Kankel to S. Maritz re: Netcentives Update | PX 70 | 07/23/1999 | MAR 000044 | MAR 000045 | | | |
| 213 | E-mail from S. Maritz to C. Wofsey re: Netcentives Update | PX 234 | 07/26/1999 | MAR 113103 | MAR 113103 | | | |
| 214 | E-mail from C. Greife to S. Kankel & others re: Netcentives Update | | 07/27/1999 | MAR 113100 | MAR 113100 | | | |
| 215 | E-mail from C. Wofsey to L. Plunk re: Netcentives NDA | | 07/27/1999 | MAR 113107 | MAR 113108 | | | |
| 216 | E-mail from S. Kankel to C. Wofsey re: Netcentives NDA | PX 235 | 07/27/1999 | MAR 113109 | MAR 113110 | | | |
| 217 | Redacted e-mail from S. Kankel to C. Wofsey re: Netcentives NDA | | 07/28/1999 | MAR 113104 | MAR 113106 | | | |
| 218 | Mutual Confidentiality & Executed Non-Disclosure Agreement between Netcentives, Inc. & Maritz, Inc. | | 07/29/1999 | MAR 107807 | MAR 107807 | | | |
| 219 | Fax from B. Rusitzky to C. Wofsey re: Mutual Confidentiality & Non-Disclosure Agreement between Maritz, Inc. & Netcentives, Inc. | PX 236 | 07/29/1999 | MAR 108096 | MAR 108098 | | | |
| 220 | Netcentives Inc. IPO filing | | 07/30/1999 | MAR 107808 | MAR 107821 | | | |
| 221 | Maritz Inter-office correspondence from C. Wofsey to S. Kankel, L. Miller & J. McArthur re: Executed Mutual Confidentiality & Non-Disclosure Agreement between Maritz & Netcentives, Inc. | | 07/30/1999 | MAR 113087 | MAR 113087 | | | |
| 222 | Inter-Office Correspondence from C. Wofsey to S. Maritz & others re: CyberGold & Netcentives Patents | PX 58 | 07/30/1999 | MAR 112479 | MAR 112490 | | | |
| 223 | E-mail from L. Miller to L. Plunk re: Netcentives LOL | PX 209 | 08/03/1999 | SP01211 | SP01222 | | | |
| 224 | Handwritten notes by Frank Agovino re: Netcentives patent | PX 254 | 8/3/1999 | SP01209 | SP01209 | | | |
| 225 | Fax from F. Agovino to C. Wofsey re: Executive Summary of NetCentives' U.S. Patent No. 5,774,870 | PX 210 | 08/04/1999 | SP01200 | SP01203 | | | |
| 226 | Letter from L. Plunk to S. Maritz & others re: Draft of Executive Summary of Netcentives U.S. Patent No. 5,774,870 | PX 59 | 08/05/1999 | MAR 112752 | MAR 112755 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 227 | Fax from F. Agovino to C. Wofsey re: Executive Summary of U.S. Patent No. 5,774,870 | PX 159 | 08/05/1999 | SP01196 | SP01199 | | | |
| 228 | E-mail from F. Agovino to L. Plunk re: Executive Summary of Netcentives Patent | | 08/05/1999 | MAR 112756 | MAR 112759 | | | |
| 229 | Documents re: Maritz/Netcentives Partnership - Action Items, Discussion Highlights & Resolutions | PX 238 | 08/06/1999 | MAR 000223 | MAR 000224 | | | |
| 230 | E-mail from T. Winkler to L. Plunk re: Maritz/Netcentives Partnership Meeting Recap 8/6/99 | | 08/09/1999 | MAR 113094 | MAR 113094 | | | |
| 231 | Netcentives Team Members | | | MAR 000014 | MAR 000014 | | | |
| 232 | Netcentives Team Members | PX 232 | | MAR 000119 | MAR 000119 | | | |
| 233 | Partnership Opportunities Overview | PX 237 | | MAR 000228 | MAR 000232 | | | |
| 234 | Maritz & Netcentives Partnership Opportunities Overview | | | MAR 000039 | MAR 000043 | | | |
| 235 | E-mail from J. McArthur to B. Graham & others re: MyPoints.com | PX 239 | 08/10/1999 | MAR 052976 | MAR 052976 | | | |
| 236 | E-mail from T. Winkler to D. Henke, R. Johnson & others re: Netcentives Meeting Time Change | | 08/11/1999 | MAR 113098 | MAR 113098 | | | |
| 237 | Maritz/Netcentives Partnership - Action Items, Discussion Highlights & Resolutions | PX 71 | 08/13/1999 | MAR 000056a | MAR 000056c | | | |
| 238 | E-mail from J. McArthur to L. Plunk re: Maritz/Netcentives Partnership Meeting Recap 8/13/99 | | 08/17/1999 | MAR 113113 | MAR 113113 | | | |
| 239 | Documents re: Maritz/Netcentives Partnership Meeting Notes | PX 240 | 08/20/1999 | MAR 000208 | MAR 000212 | | | |
| 240 | E-mail from J. McArthur to L. Plunk re: 8/23/99 Meeting Recap | PX 242 | 08/24/1999 | MAR 000008 | MAR 000013 | | | |
| 241 | E-mail from T. Winkler to R. Beining & others re: Maritz/Netcentives Partnership - 8/20/99 Meeting Recap | PX 241 | 08/24/1999 | MAR 113088 | MAR 113090 | | | |
| 242 | E-mail from D. Wehner to D. Henke & others re: Netcentive Alliance | PX 243 | 08/26/1999 | MAR 000046 | MAR 000047 | | | |
| 243 | Draft Netcentives letter of intent | PX 244 | 08/31/1999 | MAR 000094 | MAR 000110 | | | |
| 244 | E-mail from J. McArthur to D. Henke, L. Miller & M. Shipley re: MyPoints | PX 245 | 09/01/1999 | MAR 052970 | MAR 052971 | | | |
| 245 | E-mail from L. Miller to B. Graham & others re: Strategic Alliance | PX 246 | 09/02/1999 | MAR 113171 | MAR 113205 | | | |
| 246 | E-mail from J. McArthur to D. Henke & others re: Internet Advertising | | 09/13/1999 | MAR 112834 | MAR 112834 | | | |
| 247 | E-mail from L. Miller to C. Greife re: Netcentives | PX 248 | 09/16/1999 | MAR 000038 | MAR 000038 | | | |
| 248 | E-mail from L. Miller to C. Wofsey re: Online/Offline Patent | PX 247 | 09/16/1999 | MAR 112821 | MAR 112822 | | | |
| 249 | Netcentives IPO prospectus | | 09/24/1999 | MAR 112976 | MAR 113079 | | | |
| 250 | Documents re: Merchandise Fulfillment System for Netcentives | PX 249 | 09/30/1999 | MAR 000086 | MAR 000093 | | | |
| 251 | Redacted e-mail from M. Glazer to J. Risberg re: Netcentives Directed Share Offering | PX 201 | 10/07/1999 | MAR 112975 | MAR 112975 | | | |
| 252 | E-mail from J. McArthur to J. Risberg re: Netcentives Directed Share Offering | PX 200 | 10/07/1999 | MAR 113081 | MAR 113082 | | | |
| 253 | E-mail from J. McArthur to C. Greife re: Netcentives Data Collector | PX 72 | 11/29/1999 | MAR 000111 | MAR 000117 | | | |

10

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 254 | Inter-office Correspondence from C. Wofsey to G. Hoffman delivering '870 patent | PX 256 | 12/22/1999 | MAR 112732 | MAR 112746 | | | |
| 255 | E-mail from C. Wofsey to L. Miller re: Netcentives Continuation Patent ('412 patent) | PX 60 | 01/10/2000 | MAR 112492 | MAR 112492 | | | |
| 256 | Letter from C. Wofsey to F. Agovino re: U.S. Patent 6,009,412 | PX 211 | 01/11/2000 | MAR 112638 | MAR 112653 | | | |
| 257 | Redacted e-mail from C. Wofsey to M. Shipley re: Patent-Vault | PX 252 | 01/11/2000 | MAR 112815 | MAR 112816 | | | |
| 258 | Redacted e-mail from C. Wofsey to M. Shipley re: Patent - Vault | PX 257 | 01/11/2000 | MAR 112815 | MAR 112819 | | | |
| 259 | E-mail from L. Miller to M. Shipley re: Beenz Partnership | PX 253 | 01/24/2000 | MAR 052845 | MAR 025362 | | | |
| 260 | Faxed letter from C. Wofsey to F. Agovino re: pleading from Netcentives/ Sperry & Hutchinson lawsuit | PX 161 | 07/12/2000 | SP01079 | SP01089 | | | |
| 261 | E-mail from J. Barta to S. Gress re: ordering file History for Patent No. 6,009,412 | 162 | 07/13/2000 | SP00511 | SP00511 | | | |
| 262 | Handwritten notes by Frank Agovino re: Netcentives discussion breakdown, patent issue with Vault or eVault | PX 213 | 07/13/2000 | SP01176 | SP01176 | | | |
| 263 | E-mail from C. Wofsey to S. Maritz & J. Risberg re: Netcentives meeting | PX 202 | 07/17/2000 | MAR 112967 | MAR 112968 | | | |
| 264 | Inter-Office Correspondence from C. Wofsey to M. Shipley re: eVault & Netcentives Patent Issues | PX 62 | 07/19/2000 | MAR 112654 | MAR 112655 | | | |
| 265 | Pacer Print Out re: Docket Information for Netcentives/ Sperry & Hutchinson lawsuit | PX 163 | 07/20/2000 | SP01072 | SP01074 | | | |
| 266 | Handwritten notes of Frank Agovino person re: analysis of '412 Patent, Vault & eVault | PX 164 | 07/21/2000 | SP01177 | SP01179 | | | |
| 267 | E-mail from J. Barta to J. Wagner re: MRZ 8961 - limit to $200-$300 | | 07/24/2000 | SP01078 | SP01078 | | | |
| 268 | Documents re: Guidelines for Maritz Regarding Vault-e Vault | PX 178 | | SP00436 | SP00436 | | | |
| 269 | E-mail L. Plunk re: F. Agovino re: Vault Guidelines Meeting scheduled 8/15/2000 | PX 214 | 07/28/2000 | SP01182 | SP01182 | | | |
| 270 | Handwritten note by James Barta re: scheduling meeting with Joanne Wilken | PX 165 | 08/01/2000 | SP01180 | SP01180 | | | |
| 271 | Handwritten notes by James Barta re: meeting with Joanne Wilken re Vault, LYLS & internal prior art | | | SP01171 | SP01173 | | | |
| 272 | Letter from D. Wright to Copy Station, Inc. re: Request for pleadings from Netcentives/ Sperry & Hutchinson lawsuit | | 08/07/2000 | SP01075 | SP01077 | | | |
| 273 | E-mail from F. Agovino to Carol Wofsey re: Agenda for 8/15/00 meeting--infringement & prior art | PX 166 | 08/14/2000 | SP01169 | SP01169 | | | |
| 274 | Handwritten notes by Frank Agovino from 8/15/00 meeting re: '412 patent, Vault launch dates & prior art | PX 215 | 08/14/2000 | SP01160 | SP01168 | | | |
| 275 | Handwritten notes by James Barta from 8/15 meeting re: '412 patent, Vault launch dates & prior art | PX 216 | 8/15/2000 | SP01156 | SP01159 | | | |
| 276 | E-mail from J. Barta to C. Wofsey re: Internal Prior Art Search | PX 63 | 08/15/2000 | SP01155 | SP01155 | | | |
| 277 | page 9 from handwritten notes by Frank Agovino from 8/15/00 meeting re: '412 patent, Vault launch dates & prior art | PX 175 | 8/15/2006 | SP01168 | SP01168 | | | |

11

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 278 | Letter from D. Wright ordering complaint from Netcentives v. Sperry & Hutchinson lawsuit | | 09/05/2000 | SP01060 | SP01060 | | | |
| 279 | Maritz Interoffice Correspondence from R. Frey to B. Fitzpatrick & M. Shipley re: Mercer research on Netcentives | | 10/12/2000 | MAR 067234 | MAR 067243 | | | |
| 280 | Letter from D. Wright ordering complaint from Netcentives v. Sperry & Hutchinson lawsuit | | 10/19/2000 | SP01057 | SP01059 | | | |
| 281 | E-mail from D. Henke to K. Coffman, G. Hoffman & M. Shipley re: Netcentives/ Carlson lawsuit, prior art | PX 73 | 10/30/2000 | MAR 112433 | MAR 112434 | | | |
| 282 | James Barta's Outline of Clearance Opinion Re: Netcentives patents | PX 170 | 02/08/2001 | SP00885 | SP00898 | | | |
| 283 | E-mail from F. Agovino to J. Risberg re: Purchasing Netcentives assets | PX 204 | 08/16/2001 | SP01145 | SP01147 | | | |
| 284 | 8/16/2001 notes by Frank Agovino re: Netcentives; 8/30/01 Handwritten notes of James Barta re: Opinion Letter | PX 203 | 08/16/2001 | SP01148 | SP01149 | | | |
| 285 | Handwritten notes by Frank Agovino re: patent clearance opinion | | 20-Aug | SP00274 | SP00274 | | | |
| 286 | Handwritten draft infringement opinion by James Barta | PX 174 | | SP00484 | SP00487 | | | |
| 287 | E-mail from D. Carrithers to B. Fitzpatrick & others re: Another One Bites the Dust - Beenz.com | | 08/20/2001 | MAR 052814 | MAR 052814 | | | |
| 288 | Inter-Office Correspondence from J. Risberg to File re: Netcentives patent license | PX 205 | 08/27/2001 | MAR 112621 | MAR 112621 | | | |
| 289 | Summary of the Maritz Loyalty Program Invention for patent clearance opion | | | SP00349 | SP00353 | | | |
| 290 | formal patent Clearance Opinion for '870 patent | PX 8 | 09/06/2001 | SP00001 | SP00036 | | | |
| 291 | formal patent Clearance Opinion for '412 patent | PX 173 | 09/06/2001 | SP00410 | SP00435 | | | |
| 292 | E-mail from S. Gallant to F. Agovino re: The Deal.Com - Netcentives to liquidate via court auction | PX 186 | 10/10/2001 | SP00451 | SP00456 | | | |
| 293 | Handwritten notes by Frank Agovino re: Call with S. Gallant re: Netcentives patents | | 10/12/2001 | SP00457 | SP00457 | | | |
| 294 | Handwritten notes by Frank Agovino re: Netcentives bankruptcy | PX 198 | 10/18/2001 | SP00488 | SP00498 | | | |
| 295 | Letter from S. Gallant to B. McGee re: wiring $100K for due diligence deposit | PX 191 | 11/01/2001 | MAR 000742 | MAR 000744 | | | |
| 296 | Maritz Inc. Emergency Wire Transfer Request by S. Gallant & bidder qualification forms | | 11/01/2001 | MAR 000751 | MAR 000754 | | | |
| 297 | Handwritten notes of Steve Gallant re: Netcentives / Storey patents | PX 177 | | MAR 112504 | MAR 112514 | | | |
| 298 | Letter from S. Gallant to J. Player sending Marit'zs Auction Bid | PX 190 | 11/13/2001 | MAR 112580 | MAR 112585 | | | |
| 299 | Form of Patent License Agreement between Trilegiant Corp. & Netcentives, Inc. | | 11/13/2001 | MAR 000287 | MAR 000293 | | | |
| 300 | Fax from C. Greife to J. McArthur re: List of Highest Bids Received by Debtors & Request for Approval Thereof, Subject to Overbid at Hearing | PX 199 | 11/15/2001 | MAR 000242 | MAR 000245 | | | |
| 301 | Handwritten notes by James barta re: conversation with S. Gallant re: Bankruptcy, settlement & License | PX 179 | 11/15/2001 | SP00450 | SP00450 | | | |
| 302 | Fax from S. Gallant to F. Agovino re: Form of Patent License Agreement between Trilegiant | PX 188 | 11/19/2001 | SP00460 | SP00473 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| | Corp. & Netcentives, Inc. | | | | | | | |
| 303 | Fax from S. Gallant to F. Agovino re: Letter to R. Harris - Summary of Offer to Acquire the Assets of MaxMiles | DX 189 | 11/19/2001 | MAR 112516 | MAR 112540 | | | |
| 304 | Handwritten notes by Frank Agovino re: conversation with Steve Gallant re: agreement details | PX 187 | 11/20/2001 | SP00458 | SP00459 | | | |
| 305 | E-mail from S. Kelly to M. Shipley re: description of Vault/eVault for opinion letter | PX 79 | 09/06/2002 | MAR 112614 | MAR 112617 | | | |
| 306 | formal clearance opinion for '870 patent | PX 180 | 11/01/2002 | SP00037 | SP00080 | | | |
| 307 | formal clearance opinion for '412 patent | PX 181 | 11/01/2002 | SP00121 | SP00168 | | | |
| 308 | E-mail from C. Hogan to K. Bibbins & M. Shipley re: Patent Search | | 02/10/2003 | MAR 112613 | MAR 112613 | | | |
| 309 | E-mail from T. Hale to K. Bibbins & others re: Patent Search for Netcentives & Catuity patents | PX 196 | 03/04/2003 | MAR 112610 | MAR 112611 | | | |
| 310 | Handwritten notes by Frank Agovino re: conversation with Steve Gallant re: opinion for '412 patent | | 07/01/2004 | SP00277 | SP00277 | | | |
| 311 | Handwritten notes by Frank Agovino re: opinion letter | PX 223 | 07/28/2004 | SP00276 | SP00276 | | | |
| 312 | Fax Cover Sheet from F. Agovino to T. Bushold | | 07/28/2004 | SP00275 | SP00275 | | | |
| 313 | formal clearance opinion for '012 patent | | 07/28/2004 | SP00215 | SP00249 | | | |
| 314 | Maritz's 2nd Revised Privilege log | | | | | | | |
| 315 | Maritz's Response to Plaintiff's First Motion to Compel Production of Documents | | 3/7/2006 | | | | | |
| 316 | Maritz's Supplemental Response to Plaintiff's First Motion to Compel Production of Documents | | 4/6/2006 | | | | | |
| 317 | Letter from Rudolph Hutz to Elizabeth Brenner | | 8/15/2006 | | | | | |
| 318 | E-mail from T. Bushold to M. Shipley re: eVault | PX 220 | 10/19/1999 | MAR 025362 | MAR 025362 | | | |
| 319 | E-mail from C. Wofsey to M. Shipley re: Process Patent Presentation | PX 250 | 11/23/1999 | MAR 112820 | MAR 112820 | | | |
| 320 | E-mail from L. Miller to M. Shipley re: Patent Meeting | PX 251 | 12/15/1999 | MAR 112819 | MAR 112819 | | | |
| 321 | Documents re: Maritz Frequency Marketing - e.Vault Business Case | PX 29 | 02/14/2000 | MAR 025307 | MAR 025318 | | | |
| 322 | E-mail from R. Lipovsky to M. Shipley re: eVault Opportunity | PX 81 | 03/21/2000 | MAR 025299 | MAR 025299 | | | |
| 323 | Documents re: System Requirements Document for the Maritz Loyalty Marketing - E-Vault Product | PX 30 | 06/12/2000 | MAR 025222 | MAR 025239 | | | |
| 324 | E-mail from J. Altemueller to T. Bushold & M. Shipley re: Presentation Materials from eVault Design Review | PX 32 | 07/27/2000 | MAR 025143 | MAR 025159 | | | |
| 325 | E-mail from C. Lerwick to J. Allermueller & T. Bushold & M. Shipley re: E-Vault Document for Fleet | PX 222 | 10/10/2000 | MAR 025130 | MAR 025135 | | | |
| 326 | E-mail from C. Lerwick to J. Altemueller & others re: E-Vault Document for Fleet | PX 31 | 10/10/2000 | MAR 025130 | MAR 025135 | | | |
| 327 | E-mail from C. Wofsey to J. Barta re: Claims & Drawings for Vault/eVault patent application | PX 168 | 12/06/2000 | MAR 112826 | MAR 112826 | | | |
| 328 | E-mail from C. Wofsey to T. Bushold & M. Shipley re: Claims & Drawings for Vault/eVault patent application | PX 169 | 12/11/2000 | MAR 112825 | MAR 112826 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admitted |
|---|---|---|---|---|---|---|---|---|
| 329 | U.S. Patent Application Publication No. US 2002/0123926 A1 | PX 78 | 09/05/2002 | | | | | |
| 330 | Prosecution History Documents from U.S. Patent Application Publication No. US 2002/0123926 A1 | | | | | | | |
| 331 | U.S. Patent Application Publication No. US 2004/0230481 A1 | PX 36 | 11/18/2004 | | | | | |
| 332 | Acceptance Test Plan for the Maritz Frequency Marketing Vault Platform Program | | 10/11/1999 | MAR 023121 | MAR 023138 | | | |
| 333 | Advanta Master Service Agreement | | 11/01/2003 | MAR 050456 | MAR 050521 | | | |
| 334 | American Express Travel Related Services Membership Rewards Online Catalog - Statement of Work | | 11/07/2002 | MAR 044640 | MAR 044654 | | | |
| 335 | Article by C. Moloney re: Amazing Customer Loyalty - Ten Compelling Findings from the 2003 Maritz Poll on Customer Loyalty Programs | | 07/01/2003 | MAR 061275 | MAR 061279 | | | |
| 336 | Article re: Maritz Performance Improvement Company - Epiphany & Maritz Form Alliance for Advanced Leading Edge Loyalty Marketing Technology | DX 137 | 09/20/2000 | TRL-MTZ 17379 | TRL-MTZ 17380 | | | |
| 337 | Article re: Maritz Reaches 20 Million Consumers | DX 139 | 11/13/2001 | TRL-MTZ 17381 | TRL-MTZ 17381 | | | |
| 338 | AT&T Universal Card Services Universal Savings Program Systems documentation | | 06/12/1998 | MAR 041423 | MAR 041483 | | | |
| 339 | Bank of America Amendment to Master Service Agreement | | 11/03/2003 | MAR 046348 | MAR 046407 | | | |
| 340 | Bank of America Master Services Agreement | | 11/03/2003 | MAR 046298 | MAR 046347 | | | |
| 341 | Bank One Preliminary Program Recommendations | | | MAR 043114 | MAR 043144 | | | |
| 342 | Chase Statement of work | | 02/03/2004 | MAR 088720 | MAR 088871 | | | |
| 343 | Chase/Palm RFP Response | | 12/10/2001 | MAR 079083 | MAR 079115 | | | |
| 344 | Citi Aadvantage Statement of Work | | 05/31/2002 | MAR 049106 | MAR 049127 | | | |
| 345 | Citi Aadvantage Statement of Work | | 09/24/2004 | MAR 048903 | MAR 048926 | | | |
| 346 | Citi Cards draft Travel Cards Rewards Information Documents | | | MAR 038124 | MAR 038190 | | | |
| 347 | Citi draft Response to RFP | | 06/07/2002 | MAR 038192 | MAR 038273 | | | |
| 348 | Citi New Loyalty Platform Proposal | | 11/17/2004 | MAR 038017 | MAR 038043 | | | |
| 349 | Citi RFP Response | | 07/10/2003 | MAR 071648 | MAR 071683 | | | |
| 350 | Citi/ Home Depot RFP Response | | 02/23/2004 | MAR 038045 | MAR 038114 | | | |
| 351 | Client Systems Team | | | MAR 004242 | MAR 004242 | | | |
| 352 | Core VAULT - Assembly, Namespaces & Objects | | | MAR 007391 | MAR 007396 | | | |
| 353 | Core VAULT Product Description | | 03/07/2003 | MAR 002953 | MAR 002990 | | | |
| 354 | Core Vault Summary - A Sales Resource for Understanding Core VAULT | | 07/30/2004 | MAR 024394 | MAR 024395 | | | |
| 355 | Core VAULT Technology Baseline, Version 1.7 | | 05/28/2003 | MAR 021858 | MAR 021885 | | | |
| 356 | Core VAULT.NET Product Description, Version 1.1 | | 07/19/2004 | MAR 003682 | MAR 003734 | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 357 | Core VAULT.NET Product Description, Version 1.2 | | 09/08/2004 | MAR 003736 | MAR 003811 | | | |
| 358 | Customer Web Application | | | MAR 018323 | MAR 018351 | | | |
| 359 | Customer Web Application & Multi-Channel Customer Interaction with the VAULT System | | | MAR 002714 | MAR 002718 | | | |
| 360 | Customer Web Guidelines, Standard Shopping Workflow & Application File | | 03/14/2003 | MAR 003850 | MAR 003852 | | | |
| 361 | Customer Web Object Model version 1.2 | | 01/20/2003 | MAR 009186 | MAR 009206 | | | |
| 362 | Customer Web Site Map | | 11/21/2001 | MAR 002568 | MAR 002568 | | | |
| 363 | Customer Web Site Map | | | MAR 009149 | MAR 009149 | | | |
| 364 | Customer web: E-mail from J. Altemueller to T. Bushold, M. Shipley & S. Sigman re: Sales Guide for Customer web | PX 35 | 10/30/2000 | MAR 026345 | MAR 026358 | | | |
| 365 | Customer web: Sales/Marketing Guide for the Maritz Loyalty Marketing VAULT Platform Customer Web Application | DX 291 | 10/30/2000 | MAR 026347 | MAR 026358 | | | |
| 366 | Document re: Vault Locks Up New Sales | PX 221 | 01/12/2000 | MAR 015520 | MAR 015521 | | | |
| 367 | Documents re: Maritz Internet Infrastructure | DX 293 | 01/23/2002 | MAR 021740 | MAR 021743 | | | |
| 368 | E-mail from J. Altemueller to M. Banocy & others re: Minutes from MFM Platform Meeting | PX 28 | 05/03/1999 | MAR 026600 | MAR 026605 | | | |
| 369 | E-mail from M. Shipley to Maritz Frequency Marketing re: Frequency System | PX 54 | 02/08/1999 | MAR 016767 | MAR 016767 | | | |
| 370 | E-mail from M. Shipley to MLM-All re: Vault | | 08/06/2004 | MAR 29640 | MAR 29640 | | | |
| 371 | E-mail from T. Hale to K. Bibbins & others re: Vault Core Product Description - Senior Management Review | PX 34 | 04/22/2003 | MAR 024981 | MAR 024981 | | | |
| 372 | Equity Program Description, Version 1.5 | PX 10 | 04/22/2003 | MAR 024983 | MAR 025041 | | | |
| 373 | First Tennessee Technical Statement of Work, Version 1.2 | | 05/18/2005 | MAR 037286 | MAR 037335 | | | |
| 374 | General Motors Dealer Reimbursed Marketing Programs Business Process Outsource - Request for Proposal - PS-4 Transition Charges Pricing Schedules | | 07/19/2004 | MAR 079454 | MAR 079522 | | | |
| 375 | General Motors Response to RFP | | 08/10/2001 | MAR 083604 | MAR 083792 | | | |
| 376 | General Motors RFP | PX 41 | 04/01/2003 | MAR 090875 | MAR 090925 | | | |
| 377 | General Motors Specifications & Request for BID Quotation | | | MAR 091536 | MAR 091540 | | | |
| 378 | Loyalty Points-Based Solution Development - Client Information & Technology Group Findings & Assessment | PX 51 | | MAR 025793 | MAR 025809 | | | |
| 379 | Maritz Application Integration Summary | | | MAR 003548 | MAR 003554 | | | |
| 380 | Maritz Frequency Marketing FY'01 Business Plan | PX 7 | 01/01/2000 | MAR 015150 | MAR 015173 | | | |
| 381 | Maritz Loyalty Marketing - How can you protect your best customers ? | | | TRL-MTZ 17320 | TRL-MTZ 17331 | | | |
| 382 | Maritz Loyalty Marketing - How do you create excitement for your best customers ? | | | TRL-MTZ 17332 | TRL-MTZ 17343 | | | |

15

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 383 | Maritz Loyalty Marketing - Providian School Rewards Program - Technical Statement of Work, Version 1.1 | | 10/21/2002 | MAR 019779 | MAR 019816 | | | |
| 384 | Maritz Loyalty Marketing - The Key to Long-Term Growth? Maximizing Customer Value | | | MAR 000952 | MAR 000963 | | | |
| 385 | Maritz Loyalty Marketing - Three Year Plan FY 2005-2007 | | 03/10/2004 | MAR 29022 | MAR 29114 | | | |
| 386 | Maritz Loyalty Marketing - True North Business Plan | | | MAR 015403 | MAR 015477 | | | |
| 387 | Maritz Loyalty Marketing - What's your strategy for keeping your best customers ? | | | TRL-MTZ 17344 | TRL-MTZ 17359 | | | |
| 388 | Maritz Loyalty Marketing Platform Data Flow Diagram | | | MAR 002547 | MAR 002550 | | | |
| 389 | Maritz Loyalty Marketing Vault Business Case - Three Year Forecast FY05- FY07 | | 03/28/2004 | MAR 29011 | MAR 29018 | | | |
| 390 | Maritz Loyalty Marketing Web Print Out re: Sales | PX 11 | 11/15/2005 | | | | | |
| 391 | Maritz Proposed Approach & Technical Solution | | 08/17/2004 | MAR 056227 | MAR 056269 | | | |
| 392 | Order Management Process & Architecture & Order Management Process | | | MAR 003427 | MAR 003428 | | | |
| 393 | Overview of Real-Time VAULT Web Integrations | | | MAR 003556 | MAR 003562 | | | |
| 394 | Presentation by M. Shipley & S. Wehner re: Maritz Loyalty Marketing Sales & Marketing Activity | PX 52 | 01/01/1998 | MAR 015059 | MAR 015101 | | | |
| 395 | Providian Bancorp Services RFP Follow Up | | 11/10/2003 | MAR 074653 | MAR 074660 | | | |
| 396 | Providian E-mail from T. Bishop to S. Barwick | PX 37 | 12/01/2004 | MAR 031327 | MAR 031328 | | | |
| 397 | Providian RFP Response | PX 5 | 10/24/2003 | MAR 076803 | MAR 076923 | | | |
| 398 | Providian's Rewards Programs - Updated 2003 Plan | PX 6 | | MAR 061307 | MAR 061331 | | | |
| 399 | Screen Shot Print Outs re: Advanta, American Express, FedEx & others | PX 33 | | MAR 000989 | MAR 001027 | | | |
| 400 | Sprint - Business Rewards 2001 - Project Business Requirements | | 11/22/2000 | MAR 020268 | MAR 020318 | | | |
| 401 | TEAM Technology Evolution & AssessMent Project | | 05/07/2004 | MAR 28963 | MAR 28981 | | | |
| 402 | TEAM Technology Evolution AssessMent Project | | 07/29/2004 | MAR 042222 | MAR 042246 | | | |
| 403 | TEAM Technology Evolution AssessMent Project - Generation II - Maritz Business Case | | 02/17/2005 | MAR 033535 | MAR 033559 | | | |
| 404 | Vault 4.3.2 System Documentation , Version 1.0 | PX 226 | 02/15/2005 | MAR 010041 | MAR 010235 | | | |
| 405 | VAULT 4.3.2. System Documentation, Version 1.0 | | 02/15/2005 | MAR 004276 | MAR 004470 | | | |
| 406 | VAULT 4th Generation (.NET) Platform Description, Version 1.4 | | 10/06/2003 | MAR 002932 | MAR 002951 | | | |
| 407 | VAULT 4th Generation(.NET) Platform Description, Version 1.5 | | 12/04/2003 | MAR 009544 | MAR 009570 | | | |
| 408 | VAULT Application Architecture | DX 289 | | MAR 002574 | MAR 002574 | | | |
| 409 | VAULT Demo voice over notes from Presentation Tool | | | MAR 008561 | MAR 008563 | | | |
| 410 | VAULT Developer's Guide, Version 1.0 | | 11/10/2003 | MAR 005987 | MAR 006003 | | | |
| 411 | VAULT Developer's Guide, Version 1.3 | | 01/20/2004 | MAR 004486 | MAR 004507 | | | |

16

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 412 | VAULT Feature Index | | | MAR 004509 | MAR 004514 | | | |
| 413 | Vault Feature Index | PX 235 | | MAR 009849 | MAR 009854 | | | |
| 414 | Vault License-Discussion Document | PX 219 | 07/03/2000 | MAR 015511 | MAR 015519 | | | |
| 415 | VAULT Next Generation Platform Description, Version 1.0 | | 04/30/2003 | MAR 002734 | MAR 002799 | | | |
| 416 | VAULT Next Generation Platform Description, Version 1.1 | | 05/14/2003 | MAR 002801 | MAR 002843 | | | |
| 417 | VAULT Next Generation Platform Description, Version 1.2 | | 05/20/2003 | MAR 002845 | MAR 002887 | | | |
| 418 | VAULT Next Generation Platform Description, Version 1.2 | | 06/03/2003 | MAR 002889 | MAR 002930 | | | |
| 419 | VAULT Next Generation Platform Description, Version 1.4 | | 09/16/2003 | MAR 006007 | MAR 006050 | | | |
| 420 | VAULT/MBS Interaction Overview, Version 1.4 | | | MAR 006166 | MAR 006212 | | | |
| 421 | Wells Fargo Home Mortgage Proposal | | 01/05/2004 | MAR 080205 | MAR 080216 | | | |
| 422 | Wells Fargo letter re: Master Services Agreement | | 10/10/2002 | MAR 065650 | MAR 066136 | | | |
| 423 | Wells Fargo Response to RFP | PX 4 | 04/30/2002 | MAR 075958 | MAR 076029 | | | |
| 424 | Wells Fargo RFP Response | PX 3 | 03/16/2000 | MAR 066252 | MAR 066299 | | | |
| 425 | Wells Fargo RFQ Response | | 06/23/2003 | MAR 076925 | MAR 076947 | | | |
| 426 | Www.Awardhq.com | PX 39 | | MAR 093035 | MAR 093041 | | | |
| 427 | Www.awardhq.com | | | MAR 097803 | MAR 097809 | | | |
| 428 | awardHQ Login Page Customizations & other documents | | | MAR 097428 | MAR 097432 | | | |
| 429 | awardHQ Setting Up a New Catalog for Testing | | | MAR 067123 | MAR 067128 | | | |
| 430 | Online Catalog Home Page Features & Functionality | | | MAR 097855 | MAR 097862 | | | |
| 431 | Web Site Staging & Production Moves | | | MAR 067204 | MAR 067218 | | | |
| 432 | Virtual Awards | | 06/03/1996 | MAR 116008 | MAR 116031 | | | |
| 433 | Awardhq.com 2000 Enhancements Issues Log | | 11/09/1999 | MAR 097530 | MAR 097532 | | | |
| 434 | Presentation by B. Summers re: What's New at AwardHQ? | | 01/25/2000 | MAR 098657 | MAR 098661 | | | |
| 435 | Interoffice Memorandum from B. Summers to D. Haley & others re: AwardHQ 2000-01 Business Plan | PX 38 | 04/25/2000 | MAR 097393 | MAR 097427 | | | |
| 436 | Draft AwardHQ Business Rules | | 02/28/2001 | MAR 098134 | MAR 098135 | | | |
| 437 | E-mail from B. Summers to D. Hill-Jablonski, B. Graham & others re: AwardHQ Additions | | 04/26/2001 | MAR 097601 | MAR 097601 | | | |
| 438 | AwardHQ : Training for the Maritz merchandise award site | PX 277 | 05/01/2001 | MAR 098161 | MAR 098182 | | | |
| 439 | Maritz Incentives - Three Year Plan | | 03/08/2004 | MAR 29118 | MAR 29190 | | | |
| 440 | Team Meeting Notes, eCheck Help, Revised Payment Page with eCheck & other documents | PX 42 | 06/10/2004 | MAR 097900 | MAR 097906 | | | |
| 441 | Maritz Rewards - Direct Logistics, Freight Management & other topics | | 04/11/2005 | MAR 001040 | MAR 001046 | | | |

17

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| 442 | Maritz Rewards - Services, Fulfillment Services & Customer Relationship Management | | 04/11/2005 | MAR 001031 | MAR 001035 | | | |
| 443 | Maritz Rewards WebPages on Web Services, Purchasing, Order Management & Customer Service | PX 281 | 04/11/2005 | MAR 001036 | MAR 001039 | | | |
| 444 | awardHQ - Wishlist Print out | | 05/03/2005 | MAR 014950 | MAR 014951 | | | |
| 445 | awardHQ - Your Rewards Catalog Search Print Out | | 05/03/2005 | MAR 014980 | MAR 014992 | | | |
| 446 | AwardHQ - Your Rewards Print Out | | 05/03/2005 | MAR 014948 | MAR 014949 | | | |
| 447 | Web Print Out Documents from Your Rewards re: Advanced Search Pages | PX 40 | 05/03/2005 | MAR 014952 | MAR 014955 | | | |
| 448 | awardHQ Detail - Maritz Rewards Print Out | | 06/09/2005 | MAR 097793 | MAR 097820 | | | |
| 449 | Maritz Rewards - Current Pricing | | 06/09/2005 | MAR 097812 | MAR 097816 | | | |
| 450 | Maritz Rewards - Target Audience | | 06/09/2005 | MAR 097810 | MAR 097811 | | | |
| 451 | Maritz Rewards WebPages | PX 278 | 06/09/2005 | MAR 097793 | MAR 097820 | | | |
| 452 | Exclusively YOURS Retail Merchants | | 07/05/2005 | MAR 115849 | MAR 115862 | | | |
| 453 | YOUR Choice Retail Merchants | | 07/05/2005 | MAR 115863 | MAR 115876 | | | |
| 454 | Web Page Print out re: Maritz Rewards | DX 292 | 07/14/2005 | MAR 093034 | MAR 093041 | | | |
| 455 | Your Rewards - Online Catalog | | | MAR 001028 | MAR 001029 | | | |
| 456 | Maritz Incentives - Before asking more of your people, ask more of your motivation strategy | | | MAR 001047 | MAR 001058 | | | |
| 457 | Maritz Rewards - Discover world-class award & fulfillment solutions that connect products to people | | | MAR 001059 | MAR 001070 | | | |
| 458 | Maritz Rewards - Merchandise Collection | | | MAR 092871 | MAR 092872 | | | |
| 459 | Loyalty Business Revenue Analysis for Trilegient Case | PX 20 | 08/03/2005 | MAR 107534 | MAR 107551 | | | |
| 460 | Loyalty Business Revenue Analysis for Trilegient Case | PX 21 | 08/02/2005 | MAR 107552 | MAR 107653 | | | |
| 461 | Loyalty Business Revenue Analysis for Trilegient Cases | | | MAR 108483 | MAR 108608 | | | |
| 462 | Loyalty Business Revenue Analysis for Trilegient Case | | 04/25/2006 | MAR 115657 | MAR 115659 | | | |
| 463 | Loyalty Business Revenue Analysis for Trilegient Case | | update to be prod. | | | | | |
| 464 | Incentives Business Revenue Analysis for Trilegient Case | PX 15 | 07/27/2005 | MAR 107654 | MAR 107663 | | | |
| 465 | Incentives Business Revenue Analysis for Trilegient Case | PX 16 | 07/27/2005 | MAR 107664 | MAR 107728 | | | |
| 466 | Incentives Business Revenue Analysis for Triligient Case | PX 19 | 08/25/2005 | MAR 107866 | MAR 107970 | | | |
| 467 | Incentives Business Revenue Analysis for Trilegient Case | PX 280 | 08/26/2005 | MAR 115881 | MAR 115945 | | | |
| 468 | Incentives Business Revenue Analysis for Trilegient Case | | update to be prod. | | | | | |
| 469 | Rewards Business Revenue Analysis for Trilegient Case | PX 13 | 07/29/2005 | MAR 107519 | MAR 107521 | | | |
| 470 | Rewards Business Revenue Analysis for Trilegient Case | PX 14 | 07/29/2005 | MAR 107522 | MAR 107533 | | | |
| 471 | Rewards Business Revenue Analysis for | PX | 07/29/2005 | MAR | MAR | | | |

| Trial Exh. | Description | Depo Exh. | Date | Bates Begin | Bates End | Offered | Marked | Admit-ted |
|---|---|---|---|---|---|---|---|---|
| | Triligient Case | 18 | | 107855 | 107864 | | | |
| 472 | Rewards Business Revenue Analysis for Trilegient Case | | 07/29/2005 | MAR 115950 | MAR 115952 | | | |
| 473 | Rewards Business Revenue Analysis for Trilegient Case | | update to be prod. | | | | | |
| 474 | Maritz Loyalty - Three Year Plan High Level Objectives Tool | PX 23 | 09/10/2004 | MAR 014993 | MAR 014993 | | | |
| 475 | Maritz P&Ls | PX 25 | | MAR 000946 | MAR 000951 | | | |
| 476 | Maritz P&Ls | | | MAR 000951 | MAR 000951 | | | |
| 477 | Maritz P&Ls | PX 26 | | MAR 085107 | MAR 085113 | | | |
| 478 | Maritz P&Ls | PX 24 | | MAR 107729 | MAR 107746 | | | |
| 479 | Maritz P&Ls | | update to be prod. | | | | | |
| 480 | Project Leader with Forecasts | | 02/02/2006 | MAR 113401 | MAR 113541 | | | |
| 481 | Estimation of Relative Order Volume: AwardHQ vs. All Others | PX 17 | | MAR 107971 | MAR 107972 | | | |
| 482 | Estimation of Relative Order Volume: AwardHQ vs. All Others | | update to be prod. | | | | | |
| 483 | Salomon Smith Barney Web Transactions & other documents | PX 27 | | MAR 030233 | MAR 064613 | | | |
| 484 | Draft Documents re: Crystal ICMS - Initial Marketing Requirements | PX 261 | | BV001749 | BV001812 | | | |
| 485 | Documents re: Look to Book | DX 211 | 10/29/1992 | CC003187 | R014735 | | | |
| 486 | What does the Internet Mean to Maritz? | | 4/20/1997 | MAR 116032 | MAR 116280 | | | |

EXHIBIT 7

CONFIDENTIAL EXHIBIT

# EXHIBIT 8

**EXHIBIT 8**
**TO JOINT PRETRIAL ORDER**

**THE NAMES AND ADDRESSES OF ALL WITNESSES**
**AFFINION INTENDS TO CALL TO TESTIFY IN PERSON**

The names and addresses of all witnesses Affinion intends to call to testify in person at trial are set forth below.  Affinion reserves the right to call any witness identified in Maritz's witness list.

| **NAME** | **ADDRESS** |
| --- | --- |
| Fact Witnesses | |
| Beller, Marti | Affinion Loyalty Group, Inc.<br>7814 Carousel Lane<br>Richmond, VA  23294 |
| Chaney, Colleen | Affinion Loyalty Group, Inc.<br>7814 Carousel Lane<br>Richmond, VA  23294 |
| Hodges, Andrew | Affinion Loyalty Group, Inc.<br>7814 Carousel Lane<br>Richmond, VA  23294 |
| Johnson, Chris | Affinion Loyalty Group, Inc.<br>7814 Carousel Lane<br>Richmond, VA  23294 |
| Lazear, Scott | Affinion Loyalty Group, Inc.<br>7814 Carousel Lane<br>Richmond, VA  23294 |
| Miller, Jacqueline | 236 St. Leonard's Ave.<br>Toronto, ON  MN4 1L1<br>Canada |
| Storey, Thomas | 236 St. Leonard's Ave.<br>Toronto, ON  MN4 1L1<br>Canada |

Expert Witnesses

Petersen, Randy                         Frequent Flyer Services
                                        1930 Frequent Flyer Point
                                        Colorado Springs, CO  80915

Stewart, Marion                         National Economic Research Associates
                                        1166 Avenue of the Americas, 34th Floor
                                        New York, NY  10036

Young, Robert, Ph.D.                    Johnson-Laird Inc.
                                        850 NW Summit Ave.
                                        Portland, OR  97210

**<u>Randy Petersen</u>**

> Mr. Petersen is an expert in the loyal and incentives industry.  He will testify concerning the knowledge of the person of ordinary skill in the art and the state of the art in that industry. He will also rebut certain testimony of Maritz's experts, Bruce Bolger and Dr. Arthur Keller. Mr. Petersen's expected testimony is set forth more fully in his March 10, 2006 and April 25, 2006 expert reports and in the transcript of his May 18, 2006 deposition.

> Mr. Peterson will testify on the following subjects:

- The loyalty and frequency industry, including the state of the art in 1995

- The '412 patent, including its specification, claims and file history and secondary indicia of non-obviousness

- The level of ordinary skill in the art to which the inventions of the '412 patent pertain

- The use of the Maritz VAULT system and Award HQ systems

- The activities of Maritz that practice the elements of asserted claims of the '412 patent

- The prior art to the '412 patent, and the disclosures thereof

- The differences between the prior art and the invention claimed in the asserted claims of the '412 patent

- The role of on-line point tracking and redemption in the loyalty and frequency industry and the industry acceptance and commercial success thereof

- The lack of materiality of the '444 patent and the Look to Book documents in the prosecution of the '870 patent

**Robert Young**

Mr. Young is an expert in the computer services industry.  He will testify concerning the operation of Maritz's VAULT and Award HQ systems and to the knowledge of the person of ordinary skill in the art.  He will also rebut certain testimony of Maritz's experts, Bruce Bolger and Dr. Arthur Keller.  Mr. Young's expected testimony is set forth more fully in his March 10, 2006 and April 25, 2006 expert reports and in the transcript of his June 20, 2006 deposition.

Mr. Young will testify on the following subjects:

- The '412 patent, including its specification, claims and file history and secondary indicia of non-obviousness

- The design and operation of Maritz's VAULT system

- The design and operation of Maritz's Award HQ system

- The activities by Maritz that practice the elements of the asserted claims of the '412 patent

- The prior art to the '412 patent, and the disclosures thereof

- The differences between the prior art and the invention claimed in the asserted claims of the '412 patent

- The lack of materiality of the '444 patent and Look to Book documents in the prosecution of the '870 patent

**Marion Stewart, Ph.D.**

Dr. Stewart is an expert in the field of economics.  He will testify concerning the damages Affinion has sustained as a result of Maritz's infringement of the '412 patent.  His testimony is set forth more fully in his March 10, 2006 expert report, his June 26, 2006

supplemental expert report, and his June 30, 2006 deposition testimony.  He may also rebut the

testimony of Maritz's damages expert.

Dr. Stewart will testify on the following subjects:

- Affinion's entitlement to lost profit damages and the calculation of same

- A reasonable royalty for Maritz's infringement of the '412 patent

- The appropriate calculation of the base to which the reasonable royalty should be applied

- Prejudgment interest

EXHIBIT 9

## EXHIBIT 9

## MARITZ'S WITNESS LIST

Maritz may call the following individuals to testify in person at trial, or by deposition if

not available:

Steve Gallant
1400 South Highway Drive
Fenton, MO 63099

John McArthur
1400 South Highway Drive
Fenton, MO 63099

Jeff Altemueller
1400 South Highway Drive
Fenton, MO 63099

Steve Sigman
1400 South Highway Drive
Fenton, MO 63099

Jane Chickey
1400 South Highway Drive
Fenton, MO 63099

Fran Schuster
1400 South Highway Drive
Fenton, MO 63099

Ron Steinkamp
1400 South Highway Drive
Fenton, MO 63099

Sherry Gang
1400 South Highway Drive
Fenton, MO 63099

Janet Lister
1400 South Highway Drive
Fenton, MO 63099

Debbie Pike
1400 South Highway Drive

Fenton, MO 63099

Travis Carpenter
1400 South Highway Drive
Fenton, MO 63099

Carol Wofsey
7171 Kingsbury Blvd.
St. Louis, MO 63130

Robert Johnson
9122 Preserve Trial
Savage, MN 55378

Mark Shipley
1400 South Highway Drive
Fenton, MO 63099

Thomas R. Bushold
1400 South Highway Drive
Fenton, MO 63099

Steve Maritz
1400 South Highway Drive
Fenton, MO 63099

John Risberg
1400 South Highway Drive
Fenton, MO 63099

Dan Henke
1400 South Highway Drive
Fenton, MO 63099

Mark Barbee
1400 South Highway Drive
Fenton, MO 63099

Laura Miller
1857 Winter Run Court
Chesterfield, MO 63017

Arthur Keller, Ph.D
3881 Corina Way
Palo Alto, CA 94303-4507

Bruce Bolger
One Bridge St.
Suite 77
Irvington, NY 10533

Gregory Bell
John Hancock Tower
200 Clarendon Street, T-33
Boston, MA 02116-5092

Frank Agovino
One Metropolitan Square, 16th Floor
St. Louis, MO 63102

James Barta, Jr.
One Metropolitan Square, 16th Floor
St. Louis, MO 63102

Robert M. Evans, Jr.
One Metropolitan Square, 16th Floor
St. Louis, MO 63102

Witnesses associated with plaintiff or its predecessors who are available to testify.

Maritz may call the following witnesses to testify by deposition:

Chih-Cheng Hsu
161 East Evelyn Ave.
Mountain View, CA 94041

Darlene Mann
1820 Gateway Drive
Suite 109
San Mateo, CA 94004

Marti Beller
7814 Carousel Lane
Richmond, VA 23294-4212

Scott Lazear
7814 Carousel Lane
Richmond, VA 23294-4212

Colleen Chaney
7814 Carousel Lane

Richmond, VA 23294-4212

Joseph Bach
401 Castro Street
Suite 220
Mountain View, CA 94041-2007

Andrew Hodges
7814 Carousel Lane
Richmond, VA 23294-4212

Christopher Johnson
7814 Carousel Lane
Richmond, VA 23294-4212

John Stattler
540 University Ave.
Suite 350
Palo Alton, CA 94301

Thomas Storey
236 St. Leonard's Avenue
Toronto, Canada M4N-1L1

Philip Albert
379 Lytton Avenue
Palo Alto, CA 94301-1431

Jacqueline Miller
7700 East Gainey Ranch Road
Unite No. 146
Scottsdale, AZ 85258
(Last Known Address)

Scott Heintzeman
4610 Polaris Lane N.
Minneapolis, MN 55446-2149

Gregory Malark
 2745 East Brookwood Court
Phoenix, AZ 85048-9359
(Last Known Address)

David Gandrud
5037 Windsor Avenue
Edina, MN 55436-2440
(Last Known Address)

Laura Miller
1857 Winter Run Court
Chesterfield, MO 63017

Maritz's expert witnesses' qualifications and specialties are as follows:

1.  <u>Bruce Bolger</u>

Mr. Bolger is an expert in the field of incentive and promotion marketing. Mr. Bolger has been active in this field since 1984, when he joined Incentive Magazine, the industry's leading trade publication at the time, as editor and later publisher of Incentive Magazine. Mr. Bolger subsequently ran the Premium Incentive Show from 1993-1995, the second largest show in the incentive industry.

Mr. Bolger graduated from the University of California at Santa Barbara in 1975, magna cum laude, with a double major in history and French. Mr. Bolger is a founder of the Forum for People Performance Management and Measurement at Northwestern University's Medill School of Integrated Marketing Communications, the nation's leading source of research on motivation in business, which was created in 1993. He has been involved for over a decade with the Society of Incentive and Travel Executives Research Foundation, of which he was a founding trustee and past president, and where he remains on its research committee.

Mr. Bolger has authored two textbooks available on incentive program design, "Strategic Incentive Program Design: Critical Steps to Ensure an Effective Performance Improvement System," published by the Advertising Specialty Institute, and "Principles of Results-Based Incentive Program Design," published by the Incentive Marketing Association. He has written

dozens of articles and spoken extensively on motivation and incentive programs for associations and publications throughout the world, has provided extensive consulting and training to corporations on program design, and continues to write extensively on the field for his company's own publications and others.  Mr. Bolger has also received numerous honors in the field, including Person of the Year awards from Incentive Marketing Association and Society of Incentive Travel and Executives, two of the field's leading associations, as well as Best Speaker designations at industry events.

Bruce Bolger is president of Selling Communications Inc., a company he founded in 1996.  Selling Communications is a target media, marketing, and technology company that assists organizations in maximizing the efficiency of new business development. As publisher of print and e-mail publications in the fields of motivation, incentives, and meetings, including Motivation Strategies, Results Marketing, SMERF Journal, and a consultant on motivation and incentive programs, Mr. Bolger's company is highly active in incentive industry.

2.    Arthur Keller, Ph.D.

Dr. Keller is an expert in the fields of electronic commerce, database management, and evaluating prior art for the purpose of patentability.  Dr. Keller also has extensive experience in the field of promotions, incentives, and loyalty programs.

For about thirty-four years, Dr. Keller has been involved in the field of computer systems.  For twenty-eight of those years, he has been involved in the field of database systems, and for about twelve years has been involved in the field of electronic commerce.  In this regard, Dr. Keller has worked in both commercial and academic settings.

Dr. Keller received a Bachelor of Science *summa cum laude* from Brooklyn College (CUNY) in Mathematics and in Computer and Information Science, with honors in both majors.

He received his Master of Science in 1979 and his Ph.D. in 1985, both in Computer Science from the Stanford University.  Dr. Keller's dissertation was on updating relational databases through views.

Dr. Keller has authored over 70 publications, including scientific articles related to databases, programming, distributed systems, and computerized typesetting.  Dr. Keller has also written one textbook (translated into Spanish, French, Italian, and Japanese) and its instructors' manual on computer programming, as well as several book chapters on database management and electronic commerce.

Since 2001, Dr. Keller has served as Lecturer, Researcher and Visiting Associate Professor of Computer Science at the University of California at Santa Cruz, where he has taught undergraduate and graduate courses in database management and in systems analysis and design. Dr. Keller is also the managing partner of Minerva Consulting, where he advises a variety of companies in the fields of databases, electronic commerce, and distributed systems.  Previously, he was a Senior Research Scientist of Computer Science at Stanford University for approximately 12 years.  Dr. Keller was also a project manager at Stanford for CommerceNet on electronic commerce catalog integration.

From 1998 to 2003, Dr. Keller was a co-founder and board member of Target Mining Corp., which offered an on-line program that rewarded customers for providing the company with information regarding purchases that they had made on the Internet.  Dr. Keller was also a co-founder of Mergent Systems, which was acquired by Commerce One in January 2000. Mergent Systems integrated electronic catalogs from multiple companies through the use of database integration technology.

Dr. Keller is also a co-founder, Board Member, and CEO of Globallinx Network, Inc., which was founded in 2000. Globallinx Network is involved in the hospitality industry and provides Internet to guests as a free amenity which also then provides guests with Internet advertisements about the particular hotel property and surrounding community.

Dr. Keller has testified and been qualified by courts as an expert in several cases, including cases involving patents.

3.    Gregory Bell, Ph.D.

Dr. Bell, group vice president at CRA International, is responsible for business consulting and is the practice leader for pharmaceuticals and intellectual property. As an expert witness, Dr. Bell frequently testifies on damages in intellectual property, finance, and antitrust litigation.

Dr. Bell has a B.A. from Simon Fraser University, an M.B.A. from Harvard Graduate School of Business Administration, and a Ph.D. in Business Economics from Harvard Graduate School of Arts & Sciences/ Harvard Graduate School of Business Administration. Dr. Bell's publications have appeared among other places in *Review of Economics and Statistics* and *Journal of Pain and Symptom Management*. He has also given presentations regarding damages in the intellectual property context: 1) "Patent Damages: Engineering and Regulatory Work-Arounds." Calculating and Proving Patent Damages, Law Seminars International, Reston, Virginia, June 14, 2004; 2) "Reasonable Royalties for Emerging Technologies." Dr. Bell also chaired the Panel for The Third Annual Sedona Conference on Patent Litigation, Sedona, AZ, November, 2002.

As an expert witness, Dr. Bell frequently testifies on damages in intellectual property, finance, and antitrust litigation. His work includes many patent infringement cases conducting lost profits analysis and analyzing reasonable royalty rates.

Dr. Bell's business consulting engagements focus on the economics of business strategy and working with firms to develop sustainable competitive advantages in specific product markets. He has led and consulted numerous projects concerning game theory and competitive strategy, global launch strategy, product pricing and positioning, capital budgeting and real options, and cost-benefit analyses.

4.      Jeffrey Altemueller

Mr. Altemueller is an expert in the fields of web application development and database management, particularly as those technologies apply to the development of solutions in the incentive and loyalty program industry.

For about twenty -four years, Mr. Altemueller has been involved in the field of computer systems. For the last seven of those years, he has been involved in the design, development and support of computer systems supporting the loyalty program industry.

Mr. Altemueller received a Bachelor's degree in Computer Science from the University of Missouri-Columbia in 1982. During a seventeen year career with McDonnell Douglas and Boeing Corporation, Mr. Altemueller extended his skills and expertise into the technologies of database design and management, web development, workflow, and system integration. As his career progressed, he was named as the Chairperson of several ANSI and ISO subcommittees developing domestic and international standards for the exchange of scientific and technical data in the realm of CAD/CAM systems. As chairperson he was responsible for the draft and publication his sub-committee's portions of those technical standards.

Mr. Altemueller is also experienced with both Object Oriented, RDBMS, and web-related tools, products, concepts and languages, such as VisualBasic, MTS/COM, ASP, VBScript,

Javascript, C, C++, Java, Visigenics' CORBA-compliant ORB, Oracle, Microsoft's SQL Server, PowerDesigner and SQL. He is also skilled in a variety of hardware and operating systems ranging from IBM TSO/MVS, to HP and Sun Unix, to Microsoft's Windows environments.

Joining Maritz Loyalty Marketing in 1999, Mr. Altemueller was the Architect responsible for the design and development of the company's new loyalty platform, known as VAULT. Since that time, Mr. Altemueller has remained engaged in the ongoing development and support of that loyalty technology platform. Mr. Altemueller now serves as the Executive Director for Product Development in the Maritz Loyalty Marketing Application Development Group.

# EXHIBIT 10

**EXHIBIT 10**
**TO JOINT PRETRIAL ORDER**

**THE NAMES AND ADDRESSES OF ALL WITNESSES AFFINION INTENDS TO
CALL TO TESTIFY BY DEPOSITION AT TRIAL, A LIST OF DEPOSITION
EXCERPTS THAT IT INTENDS TO OFFER AT TRIAL, AND A LIST OF COUNTER-
DESIGNATIONS TO DEFENDANT'S LIST OF DEPOSITION EXCERPTS**

The names and addresses of all witnesses Affinion intends to call to testify by deposition

at trial are set forth below.  Affinion reserves the right to call any witness identified in Maritz's

witness list.  A list of deposition excerpts that Affinion intends to offer at trial, and a list of

counter-designations to defendant's list of deposition excerpts, are set forth on the following

pages.

| **NAME** | **ADDRESS** |
|---|---|
| Agovino, Frank | Senniger Powers<br>One Metropolitan Sq., 16th Floor<br>St. Louis, MO  63102 |
| Altemueller, Jeffrey | Maritz, Inc.<br>1400 S. Highway Dr.<br>Fenton, MO  63099 |
| Barta, James | Senniger Powers<br>One Metropolitan Sq., 16th Floor<br>St. Louis, MO  63102 |
| Bushold, Thomas | 825 Dogwood Meadows Ct.<br>Ellisville, MO  63021 |
| Carpenter, Travis | Maritz, Inc.<br>1400 S. Highway Dr.<br>Fenton, MO  63099 |
| Chickey, Jane | Maritz, Inc.<br>1400 S. Highway Dr.<br>Fenton, MO  63099 |
| Gallant, Steven | Maritz, Inc.<br>1400 S. Highway Dr.<br>Fenton, MO  63099 |

Lister, Janet

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

McArthur, John

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

Miller, Laura

1857 Winter Run Ct.
Chesterfield, MO  63017

Pike, Debra

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

Risberg, John

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

Schuster, Fran

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

Shipley, Mark

842 Dogwood Meadows Ct.
Ellisville, MO 63021

Sigman, Steven

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

Steinkamp, Ronald

Maritz, Inc.
1400 S. Highway Dr.
Fenton, MO  63099

Wofsey, Carol

7171 Kingsbury Blvd.
St. Louis, MO  63130

**EXHIBIT 10**

**AFFINION'S DEPOSITION DESIGNATIONS AND MARITZ'S OBJECTIONS AND COUNTER-DESIGNATIONS**

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Agovino, Frank | |
| Date of Deposition:  March 1, 2006 | |
| **Page (Line)** | **Objections** |
| 30 (19-25) | |
| 31 (1-25) | |
| 32 (1-25) | 5 (5-11) |
| 33 (1-24) | |
| 34 (8-13) | |
| 42 (7-14) | |
| 53 (13-17, 20-25) | |
| 54 (1-24) | |
| 55 (2-25) | |
| 56 (1-25) | |
| 57 (1-16) | |
| 58 (22-25) | |
| 59 (3-7, 10-23) | |
| 60 (1-3, 13-22, 25) | |
| 61 (1-8) | |
| 66 (4-8, 10-15, 18-23) | |
| 67 (1-25) | |
| 68 (1-7) | |
| 69 (18-25) | |
| 70 (1-4) | |
| 79 (21-25) | |
| 80 (1-22) | 4 (1-7) |
| 84 (19-25) | |
| 85 (1-7, 10-25) | |
| 86 (1-6) | |
| 87 (10-25) | |
| 88 (1-9, 12-14) | |
| 95 (3-25) | |
| 96 (1-25) | 5 (16-17) |
| 97 (1-25) | |
| 98 (1-25) | 5 (5-6, 20-21, 24-25) |
| 99 (1-25) | 5 (8-12, 25) |
| 100 (1, 4-5, 7-21) | 5 (1) |
| 101 (9-21) | |
| 105 (1-13) | 5 (3, 11-12) |

| | |
|---|---|
| 106 (12-25) | |
| 107 (1-16, 19-25) | |
| 108 (1-18, 20-25) | |
| 109 (1-10, 12-15, 17-25) | 5 (6) |
| 110 (1-25) | 5 (3, 13) |
| 111 (1-6, 9) | |
| 115 (14-25) | |
| 116 (1-25) | |
| 117 (1-25) | 5 (10-14) |
| 118 (1-25) | 5 (22) |
| 119 (1-25) | 5 (12-13, 23-25) |
| 120 (1-25) | 5 (1-3, 9) |
| 121 (1-23) | 4 (15-18) |
| 122 (1-25) | |
| 123 (1-25) | 5 (9, 21) |
| 124 (1-25) | 5 (17-18) |
| 125 (1-25) | 5 (17) |
| 126 (1-25) | 5 (10-13, 22) |
| 127 (1-25) | 4 (18-25) |
| 128 (1-25) | 4 (1-3), 5 (22) |
| 129 (1-25) | 5 (2) |
| 130 (1-25) | 5 (16-17) |
| 131 (1-25) | 5 (7) |
| 132 (1-14, 17-24) | |
| 149 (10-24) | |
| 156 (1-25) | 1, 2, 4 (1-25) |
| 157 (1-25) | 1, 2, 4 (1-25) |
| 158 (1-5, 8-13, 15-25) | 1, 2, 4 (1-5, 8-13, 15-25) |
| 159 (1-7) | 1, 2, 4 (1-7) |
| 165 (11-20) | |
| 167 (21-24) | |
| 168 (2-25) | |
| 169 (1-2, 4-9, 11-14) | 3, 4 (12-14) |
| 179 (9-25) | |
| 180 (1-25) | |
| 181 (1-19, 25) | |
| 182 (1-25) | |
| 183 (6-25) | |
| 184 (1-25) | |
| 185 (1-25) | |
| 186 (1-14, 20-25) | |
| 187 (1-25) | 5 (18, 24-25) |
| 188 (1-25) | 5 (1-3, 6-9, 12-13, 19-20, 23) |
| 189 (1-25) | 5 (5-7, 13-17) |

2

| | |
|---|---|
| 190 (1-25) | |
| 191 (1-25) | 5 (18) |
| 192 (1-7, 12-17) | 4 (7), 5 (8-11), 6 (12-17) |
| 194 (1-17, 20, 23-25) | 6 (1-2), 5 (6-8) |
| 195 (1-4, 10-25) | |
| 196 (1-25) | |
| 197 (1-25) | |
| 198 (1-3, 9-25) | |
| 199 (1-25) | 5 (11-12, 17) |
| 200 (1-20) | |
| 201 (2-25) | |
| 202 (1-25) | |
| 203 (1-25) | |
| 204 (1-25) | 1, 4 (3-19), 5 (6-7, 16-17) |
| 205 (1-25) | |
| 206 (1-25) | |
| 207 (1-25) | |
| 208 (1-25) | 5 (19) |
| 209 (1-25) | |
| 210 (1-7, 12-20) | 5 (4) |
| 211 (8-25) | |
| 212 (1-25) | 5 (8-9) |
| 213 (1-25) | 5 (2-3) |
| 214 (1-25) | 5, 6 (15-20) |
| 215 (1-8, 14-25) | 5 (17) |
| 216 (1-25) | |
| 217 (1-25) | 5 (11, 19), 3 (15-25) |
| 218 (1-25) | 3 (1-4, 8-24), 4 (18-24), 5 (5-6, 25) |
| 219 (1-25) | 5 (1-8), 3 (7-25) |
| 220 (1-24) | 5 (10), 3 (25) |
| 222 (16-25) | 4 (23-25) |
| 223 (1-25) | 4 (1, 4), 5 (2-3) |
| 224 (1-25) | 5 (11-16), 4 (25) |
| 225 (1-17) | 4 (1-17), 5 (2, 10) |
| 229 (25) | |
| 230 (1-8, 11-25) | |
| 231 (1-25) | |
| 232 (1-25) | |
| 233 (1-13) | 5 (6) |
| 235 (22-25) | |
| 236 (1-14) | |

| | |
|---|---|
| 242 (15-18) | |
| **Maritz's Counter-Designations**[1] | |
| 15 (8-18, 21-25) | |
| 17 (9-17) | |
| 68 (8-25) | |
| 80 (1-7) | |
| 105 (14-25) | |
| 106 (1-8) | |
| 159 (8-13) | |
| 165 (21-25) | |
| 166 (1-2) | |
| 183 (1-5) | |
| 211 (1-7) | |
| 215 (9-13) | |
| 243 (25) | |
| 244 (1-17, 25) | |
| 245 (1-6, 9-25) | |
| 246 (1-3, 5-25) | |
| 247 (1-5, 9-25) | |
| 248 (1-5, 7-13) | |

---

[1] **As to depositions where Maritz provided original designations, those designations are incorporated by reference into these counter designations. Maritz reserves the right to present to the jury and/or court portions of plaintiff's designations that plaintiff elects not to present.**

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
| --- | --- |
| Deponent:  Altemueller, Jeffrey | |
| Date of Deposition:  December 8, 2005 | |
| **Page (Line)** | **Objections** |
| 6 (23-25) | |
| 7 (1-9, 21-24) | |
| 8 (15-25) | |
| 9 (1-4) | |
| 14 (17-25) | |
| 15 (1-9) | |
| 23 (23-25) | |
| 24 (1-9) | |
| 25 (13-25) | |
| 26 (1-4) | |
| 29 (25) | |
| 30 (1-25) | |
| 31 (1-7) | |
| 37 (16-25) | |
| 38 (1-25) | |
| 39 (1-19, 25) | |
| 40 (1-21) | |
| 41 (13-25) | |
| 42 (1-25) | |
| 43 (1-2) | |
| 47 (25) | |
| 48 (1-3, 14-25) | |
| 49 (1-25) | |
| 50 (1-8) | |
| 53 (14-25) | |
| 54 (1-25) | |
| 55 (1-7, 14-25) | |
| 56 (1-24) | |
| 86 (15-17, 19-23) | |
| 97 (6-25) | |
| 98 (1-7) | |
| 100 (17-20, 24-25) | |
| 101 (1-11, 16-19) | |
| 102 (19-25) | |
| 103 (1-25) | |
| 104 (1-8, 25) | |
| 105 (1-14) | |
| 106 (19-25) | |
| 107 (1-25) | |
| 108 (1-3) | |

| | |
|---|---|
| 113 (10-25) | |
| 114 (1-7) | |
| 117 (8-25) | |
| 118 (1-16) | |
| 121 (21-25) | |
| 122 (1-25) | |
| 123 (1) | |
| 149 (3-25) | |
| 150 (1-25) | |
| 151 (1-10) | |
| 163 (13-25) | 4 (13-25) |
| 164 (1-25) | 4 (1-25), 2 (9-25) |
| 173 (12-16) | |
| 176 (15-25) | 4 (15-25) |
| 177 (1-2) | 4 (1-2) |
| 191 (4-25) | |
| 192 (1-3) | |
| **Maritz's Counter-Designations** | |
| 40 (22-25) | |
| 41 (1-12) | |
| 43 (3-25) | |
| 44 (1-25) | |
| 45 (1-19) | |
| 48 (4-13) | |
| 50 (9-25) | |
| 51 (1-24) | |
| 167 (10-25) | |
| 168 (1-18) | |
| 169 (1-25) | |
| 170 (1-11) | |
| 192 (20-25) | |
| 193 (1-6) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent: Altemueller, Jeffrey | |
| Date of Deposition: July 28, 2006 | |
| **Page (Line)** | **Objections** |
| 23 (16-22) | 1 (16-22) |
| 26 (6-18) | 1 (18) |
| 27 (5-7, 17-25) | 1 (5-7) |
| 28 (1-22) | |
| 29 (3-25) | |
| 30( 1-14) | |
| 32 (24-25) | 1 (24-25) |
| 33 (1-11, 16-20) | 1 (1-11, 16-20) |
| 38 (2-17) | 1 (2-17) |
| 43 (11-25) | |
| 44 (1-25) | |
| 45 (1-25) | |
| 46 (1-25) | |
| 47 (1-16) | |
| 49 (20-25) | |
| 50 (1) | |
| 52 (7-25) | |
| 53 (1-16) | 4 (13-16) |
| 64 (15-25) | |
| 65 (1-3) | |
| 71 (17-25) | |
| 77 (13-25) | |
| 78 (1-8, 24-25) | |
| 79 (1-25) | |
| 80 (1-25) | |
| 81 (1-25) | |
| 82 (1-25) | |
| 83 (1-17) | |
| 84 (17-25) | |
| 85 (1-21) | |
| 86 (17-24) | |
| 92 (3-22) | |
| 94 (15-25) | |
| 95 (1-19) | |
| 101 (7-25) | 5 (11-13) |
| 102 (1-6) | |
| 103 (1-22) | 4 (1-22) |
| 104 (1-9, 23-25) | |
| 105 (1-25) | |
| 106 (1-25) | 1, 4 (23) |

| | |
|---|---|
| 107 (3-25) | 1, 4 (3-25) |
| 108 (1-25) | |
| 109 (1-9) | |
| 111 (13-25) | |
| 112 (1-5) | |
| 114 (4-23) | |
| 115 (1-25) | |
| 116 (1-25) | |
| 117 (1-25) | |
| 118 (1-12) | |
| 119 (1-25) | |
| 120 (1-4) | |
| 125 (2-25) | |
| 126 (1-25) | |
| 127 (1-25) | 3 (24-25) |
| 128 (1-9) | |
| 129 (5-12) | |
| 134 (2-7, 10-25) | |
| 135 (1-21) | |
| 141 (2-25) | |
| 142 (1-24) | |
| 144 (1-3) | |
| 145 (3-25) | |
| 146 (1-25) | 1 (25) |
| 147 (1-7, 15-18) | 1 (1-7, 15-18) |
| 148 (1-25) | 1 (1-5), 4 (17-25) |
| 149 (1-5) | |
| 156 (24-25) | 1, 4 (24-25) |
| 157 (1-7, 10-25) | 1, 4 (1-7, 10-21) |
| 158 (1-5, 20-25) | 4 (2-5, 20-25) |
| 159 (1-3) | 4 (1-3) |
| 162 (16-25) | 4 (16-25) |
| 163 (1-6) | 4 (1-6) |
| 164 (10-25) | |
| 165 (1-25) | |
| 166 (1-25) | |
| 167 (1-3, 19-25) | |
| 168 (1-5) | |
| 170 (19-25) | |
| 171 (1-25) | |
| 172 (1-25) | |
| 173 (1-25) | |
| 174 (1-25) | |
| 175 (1-2) | |
| 179 (21-25) | |

| | |
|---|---|
| 180 (1-25) | |
| 185 (14-25) | |
| 186 (1-25) | |
| 187 (1-2) | |
| 188 (14-25) | |
| 189 (1-17) | |
| 192 (13-25) | |
| 193 (1) | |
| 247 (15-19) | |
| 252 (18-20) | |
| 255 (25) | 1, 4 (25) |
| 256 (1-12, 17-25) | 1, 4 (1-12) |
| 257 (1-25) | |
| 258 (1-24) | |
| 259 (1-25) | |
| 260 (2-11, 25) | |
| 261 (1-25) | |
| 262 (1-25) | |
| 263 (9-25) | |
| 264 (1-2) | |
| 265 (19-25) | |
| 266 (1-25) | |
| 267 (1-8, 21-25) | |
| 268 (1-25) | |
| 269 (1-3) | |
| 303 (4-12, 15-18) | |
| 304 (4-5, 8-10) | |
| 305(19-25) | |
| 306 (1-7) | |
| **Maritz's Counter-Designations** | |
| 23 (23-25) | |
| 24 (1-25) | |
| 25 (1-25) | |
| 26 (1-5) | |
| 39 (14-16, 18-25) | |
| 40 (1-25) | |
| 41 (1) | |
| 47 (17-25) | |
| 48 (1-10) | |
| 50 (2-25) | |
| 51 (1) | |
| 53 (17-25) | |
| 54 (1-25) | |
| 55 (1-25) | |
| 56 (1-25) | |

| | |
|---|---|
| 57 (1-25) | |
| 58 (1-22) | |
| 68 (25) | |
| 69 (1-25) | |
| 70 (1-25) | |
| 77 (7-12) | |
| 78 (9-16) | |
| 83 (18-25) | |
| 84 (1-10) | |
| 85 (24-25) | |
| 86 (1-16) | |
| 88 (1-13) | |
| 109 (10-25) | |
| 110 (1-25) | |
| 111 (1-3) | |
| 112 (13-25) | |
| 113 (1-25) | |
| 114 (1-3) | |
| 120 (5-16) | |
| 124 (19-25) | |
| 125 (1) | |
| 129 (13-25) | |
| 130 (1-25) | |
| 131 (1-25) | |
| 132 (8-16, 18, 21-25) | |
| 133 (1-16) | |
| 158 (6-19) | |
| 159 (4-25) | |
| 160 (1-5) | |
| 167 (4-18) | |
| 175 (3-25) | |
| 176 (1-8) | |
| 247 (20-25) | |
| 248 (1-22) | |
| 252 (8-17) | |
| 253 (2-9) | |
| 270 (1-25) | |
| 271 (1-25) | |
| 272 (1-25) | |
| 273 (1-6) | |
| 287 (5-25) | |
| 288 (1-25) | |
| 289 (1-19) | |
| 291 (10-25) | |
| 292 (1-4) | |

| | |
|---|---|
| 298 (8-14, 16-17, 19-20) | |
| 299 (7-14, 18-24) | |
| 300 (2-7, 9-25) | |
| 301 (1-2, 18-23) | |
| 302 (2-4, 7-20, 25) | |
| 303 1-3, 19-22) | |
| 304 (11-19, 22-25) | |
| 305 (1-4, 7) | |
| 306 (8-12) | |
| 307 (20-25) | |
| 308 (1-22) | |
| 309 (1-17) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Barta, James | |
| Date of Deposition:  February 14, 2006 | |
| **Page (Line)** | **Objections** |
| 40 (3-25) | |
| 41 (1-25) | |
| 42 (1-10, 13-25) | |
| 43 (1-25) | 5 (5-6) |
| 44 (1-25) | |
| 45 (1-2) | |
| 57 (20-25) | |
| 58 (1, 5-25) | |
| 59 (1-25) | 5 (17-19) |
| 60 (1-25) | 5 (24-25) |
| 61 (1-25) | 5 (14-15, 23-25) |
| 62 (1-25) | 5 (21-25) |
| 63 (1-25) | 5 (1-6, 10-11, 13-15) |
| 64 (1-25) | 5 (4-5, 22-23) |
| 65 (1-15) | 5 (12-13) |
| 113 (19-25) | |
| 114 (1-2, 5-10) | |
| **Maritz's Counter-Designations** | |
| 52 (11-14) | |
| 58 (2-4) | |
| 72 (5-14) | |
| 77 (18-25) | |

| Page (Line) | Objections |
|---|---|
| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
| Deponent: Bushold, Thomas | |
| Date of Deposition: March 2, 2006 | |
| 7 (5-18) | |
| 9 (4-11) | |
| 10 (7-19) | |
| 13 (2-4, 6-9, 11-13, 15-19) | 1, 4(2-4, 6-9, 11-15) |
| 27 (14-17) | |
| 28 (19-25) | 1 (19-25) |
| 29 (1-4, 14-17, 20-24) | 1 (1-4), 4 (14-17, 20-24) |
| 30 (5-25) | |
| 31 (1-25) | |
| 32 (1-6) | |
| 33 (8-11) | |
| 35 (18-25) | |
| 36 (1-18) | |
| 37 (7-8, 11-18, 21) | 4 (7-8, 11-13) |
| 38 (9-25) | 2 (13-25) |
| 39 (1-9) | 2 (1-9) |
| 43 (8-25) | 1, 3 (8-25) |
| 44 (1-12, 23-25) | 1 (1-12), 3 (1-12, 23-25), 4 (23-25) |
| 45 (1-4, 6-8) | 3, 4 (1-4, 6-8) |
| 47 (7-25) | |
| 48 (1-4, 14-23) | |
| 51 (20-25) | 5 (22-23) |
| 52 (1-13) | |
| 53 (11-19) | 1 (11-19) |
| 55 (1-4) | 1 (1-4) |
| 57 (18-25) | 1, 4 (18-25) |
| 58 (1-3) | 1 (1-3) |
| 59 (14-16) | 1 (14-16) |
| 62 (17-25) | |
| 63 (1-10) | |
| 74 (1-25) | |
| 85 (22-25) | 1, 3 (22-25) |
| 86 (1) | 1, 3 (1) |
| 101 (21-23) | 1, 3 (21-23) |
| 102 (1-3, 6-7, 11-25) | 1, 4 (1-3, 6-7, 11-25) |
| 103 (1, 5-7, 11-19, 21-23) | 1, 4 (1, 5-7, 11-19, 21-23) |
| 104 (16-17, 19-22, 24-25) | 1, 3 (16-17, 19-22, 24-25) |
| 105 (15-18, 23-25) | 1, 3 (15-18, 23-25) |
| 106 (1-14) | 1, 3 (1-14) |
| 107 (20-25) | |

| | |
|---|---|
| 108 (1-12) | |
| 109 (12-23) | |
| 110 (14-25) | 4 (24-25) |
| 111 (2-17) | 4 (2-17) |
| 122 (11-16) | 1 (14-16) |
| 125 (18-22) | |
| 127 (3-17) | 1, 4 (3-17) |
| 129 (13-15) | 1 (13-15) |
| 148 (5-25) | 3 (5-25) |
| 149 (1-4, 12-20) | 3 (1-4), 1 (12-20), 5 (16-17) |
| 150 (12-14, 17, 20-25) | 1 (12-14, 17, 20-25) |
| 151 (1-25) | 1 (1-25) |
| 152 (1-10) | 1 (1-10) |
| 153 (21-25) | 1 (21-25), 5 (23) |
| 154 (1-12) | 1 (5-12) |
| 162 (2-25) | 1 (2-4, 17-25) |
| 163 (1-6, 20-25) | 1 (1-6, 20-25) |
| 164 (1-13, 18-21, 24-25) | 1,4 (1-13, 18-25) |
| 165 (1-4, 6-7) | 1,4 (1-4, 6-7) |
| **Maritz's Counter-Designations** | |
| 14 (25) | |
| 15 (1-4, 7-25) | |
| 16 (1-12) | |
| 20 (6-20) | |
| 21 (3-7) | |
| 29 (25) | |
| 30 (1-4) | |
| 39 (10-13) | |
| 45 (9-25) | |
| 46 (1-3) | |
| 47 (15-25) | |
| 48 (1-4) | |
| 75 (1-25) | |
| 76 (1-14) | |
| 172 (17-25) | |
| 173 (1-24) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
| --- | --- |
| Deponent:  Carpenter, Travis | |
| Date of Deposition:  May 19, 2005 | |
| **Page (Line)** | **Objections** |
| 9 (8-25) | |
| 10 (1-6, 20-25) | |
| 11 (1-5) | |
| 12 (2-25) | |
| 13 (1-11) | |
| 14 (5-25) | |
| 15 (1, 8-18, 24-25) | |
| 16 (1-12) | |
| 18 (15-18) | |
| 19 (2-10) | |
| 23 (12-25) | 1 (12-14) |
| 24 (1-21) | 1 (6-8) |
| 25 (5-25) | |
| 26 (1-25) | |
| 27 (1-17) | |
| 33 (1-25) | |
| 34 (1-8) | |
| **Maritz's Counter-Designations** | |
| 6 (8-11) | |
| 8 (14-25) | |
| 9 (1-7) | |
| 18 (12-14) | |
| 22 (24-25) | |
| 23 (1-7) | |
| 34 (9-12) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Chickey, Jane | |
| Date of Deposition:  July 20, 2006 | |
| **Page (Line)** | **Objections** |
| 9 (10-16, 21-23) | |
| 11 (8-16) | |
| 21 (10-22) | |
| 25 (15-25) | |
| 26 (1-3, 17-20) | |
| 29 (18-20) | |
| 37 (20-25) | |
| 38 (1-12, 17-25) | |
| 39 (1-25) | |
| 41 (19-25) | |
| 42 (1-11, 13-21, 23-25) | |
| 43 (1-18) | |
| 86 (17-18, 20-25) | |
| 87 (1-5) | |
| 103 (19-25) | 4 (23-25) |
| 104 (1-25) | 4 |
| **Maritz's Counter-Designations** | |
| 9 (24-25) | |
| 10 (1-11) | |
| 26 (4-16, 21-23) | |
| 27 (13-25) | |
| 28 (1-3, 10-12) | |
| 42 (11-14) | |
| 45 (10-12) | |
| 52 (21-22, 24-25) | |
| 53 (1-25) | |
| 54 (1-3, 12-21) | |
| 89 (2-16) | |
| 101 (19-21, 24-25) | |
| 102 (1-7, 25) | |
| 103 (1, 4-12) | |
| 105 (1-15) | |
| 106 (5-11) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
| --- | --- |
| Deponent: Gallant, Steven | |
| Date of Deposition: February 15, 2006 | |
| **Page (Line)** | **Objections** |
| 11 (5-25) | |
| 12 (1-6, 9-23) | |
| 19 (9-13, 21-25) | |
| 20 (1-18) | |
| 27 (17-25) | |
| 28 (1-25) | |
| 29 (1-25) | |
| 30 (1-25) | |
| 31 (1-25) | 5 (21-22) |
| 37 (18-25) | |
| 38 (1-25) | |
| 39 (1-25) | |
| 40 (1-25) | |
| 41 (1-25) | 5 (13-15) |
| 42 (1-25) | |
| 43 (1-25) | |
| 44 (1-19) | 5 (5-6) |
| 45 (4-25) | |
| 46 (1-13, 16-20, 23-25) | |
| 47 (1-9, 12-25) | |
| 48 (1-25) | |
| 49 (1-25) | |
| 50 (1-25) | 1, 4 (20-23), 5 (24-25) |
| 51 (1-25) | 1 (1-11), 4 (1-18) |
| 52 (1-25) | |
| 53 (1-25) | 5 (4-5, 10-11) |
| 54 (1-10, 17-25) | |
| 55 (4-21) | |
| 64 (20-25) | |
| 65 (1-25) | |
| 66 (1-11, 20-25) | |
| 67 (1-11) | |
| 69 (12-25) | |
| 70 (1-25) | 4 (14-18), 5 (16-17, 23) |
| 71 (1-10) | |
| 73 (2-25) | |
| 74 (1-25) | 5 (1-2) |
| 75 (1-25) | |
| 76 (1-8, 12-13) | |
| 77 (4-25) | 5 (24-25) |

| | |
|---|---|
| 78 (1-25) | 5 (1) |
| 79 (1-18) | |
| 80 (5-16, 20-25) | |
| 81 (1-15) | |
| 87 (17-19, 23-25) | |
| 88 (1-25) | 5 (16-17) |
| 89 (1-18, 21-25) | |
| 90 (1-25) | |
| 91 (1-25) | |
| 92 (1-25) | 5 (22) |
| 93 (1-16) | 5 (2-5) |
| 100 (10-25) | |
| 101 (1-7) | |
| 112 (18-25) | |
| 113 (1-6) | |
| 114 (5-7, 17-25) | 5 (18-22) |
| 115 (1) | |
| 117 (18-25) | |
| 118 (1-13) | |
| 119 (22-25) | |
| 120 (1-3, 20) | |
| 121 (2-25) | |
| 122 (1-19) | |
| 123 (7-18) | |
| 124 (6-19, 25) | |
| 125 (1-25) | |
| 126 (1-13) | |
| 127 (11-25) | 5 (22-23) |
| 128 (1-25) | 5 (11-12) |
| 129 (4-5, 7-25) | 5 (19-20, 23-24) |
| 130 (1-25) | |
| 131 (1-13) | |
| 147 (15-20) | |
| 151 (12-25) | 5 (16-18) |
| 152 (1-9) | 5 (2-5, 8-9) |
| 154 (23-25) | |
| 155 (1-18) | |
| 156 (12-25) | 5 (18, 25) |
| 157 (1-8) | 1, 4 (4-8), 5 (6-7) |
| 158 (14-25) | |
| 159 (1-3) | 5 (1) |
| **Maritz's Counter-Designations** | |
| 23 (4-13) | |
| 32 (1-7) | |
| 35 (5-20, 23-25) | |

| | |
|---|---|
| 36 (1-9) | |
| 37 (4-7, 10, 15-17) | |
| 44 (20-25) | |
| 45 (1-3) | |
| 55 (22-25) | |
| 56 (1-7) | |
| 94 (9-25) | |
| 95 (1-17) | |
| 126 (14-16, 19-25) | |
| 127 (1-5) | |
| 147 (21-14) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent: Lister, Janet | |
| Date of Deposition: May 19, 2005 | |
| **Page (Line)** | **Objections** |
| 6 (8-14) | |
| 7 (14-22) | |
| 8 (7-19) | |
| 10 (13-25) | |
| 11 (1-25) | |
| 12 (1-10) | |
| 13 (7-25) | |
| 14 (1, 9-16) | |
| 19 (9-25) | |
| 20 (24-25) | |
| 21 (1-6) | |
| 30 (12-18) | |
| **Maritz's Counter-Designations** | |
| 7 (23-25) | |
| 8 (1-6, 20-24) | |
| 10 (5-8) | |
| 12 (11-25) | |
| 13 (1-6) | |
| 21 (20-22) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent: Lister, Janet | |
| Date of Deposition: December 9, 2005 | |
| **Page (Line)** | **Objections** |
| 14 (10-23) | |
| 16 (19-25) | |
| 17 (1-3) | |
| 20 (5-12) | |
| 22 (17-22) | |
| 23 (5-10, 18-25) | |
| 24 (1-5) | |
| 25 (8-12) | |
| 32 (2-25) | |
| 33 (1-25) | |
| 34 (1-25) | |
| 35 (1-25) | |
| 36 (1-25) | |
| 37 (1-13) | |
| 43 (13-25) | |
| 44 (1-25) | |
| 45 (1-25) | |
| 46 (1-5) | |
| 49 (17-19, 24-25) | 1, 4 (17-19, 24-25) |
| 50 (1-2) | |
| 51 (6-19) | |
| 58 (15-18, 21-24) | |
| 59 (4-8) | |
| **Maritz's Counter-Designations** | |
| 17 (4-7) | |
| 24 (6-20) | |
| 25 (13-20) | |
| 37 (14-18) | |
| 51 (20-23) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
| --- | --- |
| Deponent:  McArthur, John | |
| Date of Deposition:  May 4, 2006 | |
| **Page (Line)** | **Objections** |
| 7 (23-25) | |
| 8 (1-25) | |
| 9 (1-25) | |
| 10 (1-25) | |
| 11 (1-10) | |
| 15 (16-25) | |
| 16 (1-16, 19-25) | |
| 17 (1-22, 25) | 5 (15-16) |
| 23 (15-23) | |
| 24 (1-25) | |
| 25 (1-25) | 5 (20-25) |
| 26 (1-25) | |
| 27 (1-25) | |
| 28 (4-25) | |
| 29 (1-5, 12-24) | |
| 30 (4-15) | |
| 31 (23-25) | |
| 32 (1-25) | |
| 33 (1-21, 24) | |
| 49 (4-25) | |
| 50 (1-7, 23-25) | |
| 51 (1-25) | |
| 52 (1-25) | 5 (9-10) |
| 58 (14-24) | |
| 59 (1-20) | |
| 70 (9-25) | |
| 71 (1-25) | |
| 72 (1-25) | 5 (4-12) |
| 73 (1-25) | |
| 74 (1-25) | |
| 75 (1-25) | |
| 76 (1-25) | 5 (19-20) |
| 77 (1-25) | 5 (12) |
| 78 (1-7, 18-25) | |
| 79 (1-25) | 5 (5-6) |
| 80 (1-25) | |
| 81 (1-25) | |
| 82 (1-25) | |
| 83 (1-25) | 5 (5, 16-17) |
| 84 (1-25) | |

| | |
|---|---|
| 85 (1-3) | |
| 86 (22-25) | |
| 87 (1-25) | |
| 88 (1-25) | 5 (11) |
| 89 (1-7, 20-25) | 5 (6) |
| 90 (1-25) | |
| 91 (1-19) | |
| 92 (1-25) | |
| 93 (1-25) | 5 (22-23) |
| 94 (1-7) | |
| 96 (21-23) | |
| 97 (5-10) | |
| 107 (1-14, 16-21) | 5 (8) |
| 108 (20-25) | |
| 109 (1-3) | |
| **Maritz's Counter-Designations** | |
| 18 (1-6) | |
| 28 (1-3) | |
| 29 (25) | |
| 30 (1-3) | |
| 33 (25) | |
| 34 (1-9) | |
| 53 (18-25) | |
| 54 (1-10) | |
| 60 (17-25) | |
| 61 (1, 4-21) | |
| 85 (21-25) | |
| 86 (1-16) | |
| 94 (8-13, 16-20) | |
| 95 (13-25) | |
| 96 (1-2, 4-14) | |
| 104 (20-25) | |
| 105 (1-25) | |
| 106 (1-16) | |
| 109 (7-15) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent: Miller, Laura | |
| Date of Deposition: March 15, 2006 | |
| **Page (Line)** | **Objections** |
| 22 (3-13, 23-25) | |
| 23 (19-25) | |
| 24 (1-2) | |
| 27 (3-7) | |
| 33 (6-25) | |
| 34 (1-7) | |
| 35 (24-25) | |
| 36 (1-6) | |
| 67 (12-21) | |
| 69 (17-25) | |
| 70 (1-14, 19-25) | |
| 71 (1-14) | |
| 82 (3-23) | |
| 87 (12-15, 17-25) | |
| 88 (1-25) | |
| 89 (1-8) | |
| 96 (7-13, 18-20) | 2 (7-13, 18-20) |
| 110 (14-25) | |
| 111 (14-19) | |
| 112 (16-25) | |
| 113 (1-19) | |
| 118 (12-15, 25) | |
| 119 (1-4, 24-25) | |
| 120 (1-24) | |
| 121 (9-25) | |
| 122 (1-6) | |
| 128 (5-8) | |
| 129 (18-25) | |
| 130 (10-18) | |
| 133 (1-13) | |
| 141 (16-25) | |
| 142 (1, 16-25) | |
| 147 (10-14, 18-24) | |
| 156 (16-22) | |
| 157 (1-10, 20-22) | |
| 163 (1-25) | |
| 164 (1-21) | |
| 165 (2-19) | |
| 168 (1-3, 13-25) | |
| 169 (1-25) | |

| | |
|---|---|
| 170 (1-25) | 5 (21, 24) |
| 171 (1-20) | 5 (17) |
| 173 (7-9, 14-25) | |
| 174 (1-10) | |
| 181 (25) | |
| 182 (1-9) | |
| **Maritz's Counter-Designations** | |
| 68 (20-25) | |
| 69 (1-11) | |
| 71 (15-25) | |
| 72 (1-25) | |
| 73 (1-25) | |
| 74 (1-25) | |
| 111 (8-13) | |
| 129 (25) | |
| 130 (1-10, 19-25) | |
| 131 (1-12) | |
| 133 (14-25) | |
| 149 (18-25) | |
| 150 (1-25) | |
| 151 (2) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent: Pike, Debra | |
| Date of Deposition: November 23, 2005 | |
| **Page (Line)** | **Objections** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Maritz's Counter-Designations** | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

26

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Risberg, John | |
| Date of Deposition:  February 16, 2006 | |
| **Page (Line)** | **Objections** |
| 6 (11-25) | |
| 7 (1-25) | |
| 8 (1-25) | |
| 9 (1-7) | |
| 24 (3-20) | |
| 25 (11-18) | |
| 28 (6-7, 10-11, 14-19) | |
| 29 (2-25) | |
| 30 (1-21) | |
| 35 (4-25) | |
| 36 (1-25) | |
| 37 (1-15) | |
| 39 (10-19, 24-25) | |
| 40 (1-4) | |
| 42 (21-25) | |
| 43 (1-2) | |
| 46 (10-25) | |
| 47 (1-25) | |
| 48 (1-9) | |
| 63 (9-25) | |
| 64 (1-15) | |
| 65 (20-25) | |
| 66 (1-25) | |
| 67 (1-25) | 5 (19-20) |
| 68 (1-13, 21-23) | |
| 69 (6-13) | |
| 70 (7-19) | |
| 78 (1-7) | |
| 90 (21-25) | |
| 91 (1-25) | 5 (15-16) |
| 92 (1-13) | |
| 93 (1-9) | |
| 98 (9-25) | |
| 99 (1-6) | |
| 102 (15-19) | |
| **Maritz's Counter-Designations** | |
| 17 (3-25) | |
| 18 (1-16) | |
| 22 (16-25) | |
| 23 (1-3) | |

| | |
|---|---|
| 24 (21-25) | |
| 25 (1-10) | |
| 26 (8-11) | |
| 27 (7-15) | |
| 31 (21-25) | |
| 38 (5-25) | |
| 39 (1-2, 5-9) | |
| 43 (3-25) | |
| 44 (1-15, 18-25) | |
| 45 (1-25) | |
| 46 (1-9) | |
| 48 (10-12, 15) | |
| 50 (8-15, 18-22) | |
| 51 (17-25) | |
| 52 (1-2, 9-17, 22-24) | |
| 53 (2-7) | |
| 55 (21-24) | |
| 57 (14-20) | |
| 58 (16-22) | |
| 59 (16-22) | |
| 68 (14-17, 20) | |
| 71 (9-19) | |
| 72 (9-13) | |
| 73 (18-23) | |
| 79 (20-25) | |
| 80 (1-8) | |
| 93 (15-23) | |
| 94 (12-18) | |
| 97 (13-25) | |
| 98 (1) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Schuster, Fran | |
| Date of Deposition:  May 19, 2005 | |
| **Page (Line)** | **Objections** |
| 6 (19-25) | |
| 7 (1-2) | |
| 11 (19-25) | |
| 12 (1-25) | |
| 13 (1-16) | |
| 15 (5-25) | |
| 16 (1-13) | |
| 17 (16-25) | |
| 18 (1) | |
| 19 (21-25) | |
| 20 (1-25) | |
| 21 (1-14) | |
| 22 (7-25) | |
| 23 (1-8, 15-25) | |
| 24 (1-24) | |
| 25 (20-25) | |
| 26 (1-5) | |
| 28 (18-25) | |
| 29 (1-11) | |
| 37 (14-19) | 1 |
| 39 (8-16) | 1 |
| 41 (18-25) | |
| 42 (1-10) | |
| 53 (18-28) | |
| 54 (8-22) | |
| **Maritz's Counter-Designations** | |
| 5 (6-13) | |
| 7 (3-11) | |
| 8 (24-25) | |
| 9 (1-25) | |
| 10 (1-25) | |
| 11 (1-18) | |
| 27 (2-18) | |
| 30 (13-16) | |
| 34 (24-25) | |
| 35 (1-22) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent: Shipley, Mark | |
| Date of Deposition: December 19, 2005 | |
| **Page (Line)** | **Objections** |
| 10 (23-24) | |
| 11 (3-24) | |
| 12 (2-8) | |
| 29 (23-25) | |
| 30 (1) | |
| 31 (21-25) | |
| 32 (1-6, 14-25) | |
| 33 (1-2) | |
| 34 (11-15, 22-25) | |
| 35 (1-3) | |
| 37 (7-8) | |
| 46 (20-23) | |
| 47 (9-19) | |
| 48 (17-20) | |
| 50 (6-10) | |
| 56 (2-6, 9-24) | 4 (2-6, 9-10), 1 (17-24) |
| 58 (1-9) | |
| 67 (25) | |
| 68 (1-21) | |
| 69 (1-25) | 1 (16-21) |
| 70 (20-25) | |
| 71 (14-25) | |
| 72 (1-7) | |
| 74 (16-21) | |
| 75 (9-15) | |
| 76 (8-17, 20-21) | 1 (16-17, 21-21) |
| 87 (3-6, 11-21) | |
| 88 (25) | 4 (25) |
| 89 (1-3, 6-8) | 4 (1-3, 6-8) |
| 90 (5-25) | |
| 91 (1, 6-12, 17-24) | 1 (6-12, 17-20) |
| 92 (1-3, 13-15) | 4 (1-3, 13-15) |
| 103 (6-16) | |
| 105 (21-25) | |
| 106 (1-4, 10-24) | |
| 107 (2-6) | |
| 108 (1-10, 15-25) | |
| 109 (3) | |
| 111 (17-25) | |
| 112 (1-3) | |

| | |
|---|---|
| 121 (12-20) | |
| 122 (24-25) | |
| 123 (1-19) | |
| 124 (13-25) | |
| 125 (1-9, 13-25) | |
| 128 (2-7, 25) | |
| 129 (1-25) | |
| 130 (1-6) | |
| 134 (9-25) | |
| 135 (1-7) | |
| 137 (9-15, 19-22) | |
| 138 (3-17) | |
| 144 (1-25) | 3 (1-25) |
| 145 (1-25) | 3 (1-25) |
| 146 (10-14) | 3 (10-14) |
| 147 (3-8) | |
| 148 (1-5, 21-25) | |
| 149 (1-4) | |
| 150 (17-25) | |
| 151 (1-4) | |
| 157 (21-25) | |
| 158 (1-17) | |
| 160 (5-17) | 1, 4 (5-17) |
| 164 (24-25) | 1, 3 (24-25) |
| 165 (1, 11-14) | 1, 3 (1) |
| 167 (22-25) | 3 (22-25) |
| 168 (1-13, 19-25) | 3 (1-13, 19-25) |
| 171 (10-17) | 3 (10-17) |
| 183 (25) | |
| 184 (1-25) | |
| 185 (1-8, 24-25) | |
| 186 (1-9, 25) | |
| 187 (1-17) | |
| 188 (1-17) | |
| 192 (22-25) | 3 (22-25) |
| 193 (1-6) | 3 (1-6) |
| 195 (12-25) | |
| 196 (1-15) | |
| 218 (15-25) | |
| 219 (3-14) | |
| 220 (8-13, 16-21) | |
| **Maritz's Counter-Designations** | |
| 48 (12-16) | |
| 57 (8-17, 20-25) | |
| 71 (14-23) | |

| | |
|---|---|
| 87 (16-21) | |
| 90 (10-25) | |
| 91 (1, 2-5, 13-16) | |
| 101 (11-14, 23-25) | |
| 102 (1-5, 17-19) | |
| 106 (5-9) | |
| 107 (7-21) | |
| 112 (4-10) | |
| 123 (3-19) | |
| 128 (2-7) | |
| 130 (2-6) | |
| 138 (18-25) | |
| 139 (1-2) | |
| 146 (15-17, 24-25) | |
| 147 (1-2) | |
| 149 (5-9) | |
| 150 (17-25) | |
| 151 (1-4) | |
| 158 (9-17) | |
| 164 (24-25) | |
| 165 (1, 11-14) | |
| 167 (22-25) | |
| 168 (1-13, 19-25) | |
| 171 (10-17) | |
| 184 (24-25) | |
| 185 (1-8, 24-25) | |
| 186 (1-9) | |
| 187 (18-21) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Sigman, Stephen | |
| Date of Deposition:  November 22, 2005 | |
| **Page (Line)** | **Objections** |
| 7 (18-24) | |
| 18 (3-20) | |
| 19 (4-17) | |
| 20 (12-25) | |
| 21 (1-25) | |
| 22 (1-25) | |
| 23 (1-25) | 4 (12-21) |
| 24 (1, 25) | |
| 25 (1-25) | |
| 26 (1-25) | |
| 27 (1-25) | |
| 28 (1-25) | 1 (16-20) |
| 29 (1-12) | 1, 4 (3-12) |
| 40 (4-25) | 4 (23-25) |
| 41 (1-8) | 4 (1-8) |
| 43 (3-25) | |
| 44 (1-14, 17-25) | |
| 45 (1-5) | 1 (1-5) |
| 52 (10-25) | |
| 53 (1-12, 25) | 1 (9-12) |
| 54 (1-17) | |
| 55 (6-10, 21-25) | 3 (6-10) |
| 56 (1-22) | |
| 61 (17-25) | |
| 62 (1-22) | |
| 64 (11-25) | |
| 65 (1-6, 15-25) | 4 (1-6) |
| 66 (1) | |
| 71 (19-25) | |
| 72 (1-20) | |
| 77 (19-25) | 1 (22-25) |
| 78 (1-4) | 1 (1-4) |
| 79 (12-16) | |
| 80 (22-25) | |
| 81 (1-2) | |
| 91 (18-25) | 3, 4 (23-25) |
| 92 (1-25) | 3, 4 (1-25) |
| 93 (1-25) | 3, 4 (1-25) |
| 94 (1-25) | |
| 95 (1-25) | |

| | |
|---|---|
| 96 (1-25) | |
| 97 (1-12, 18-25) | 1, 4 (11-12, 18-25) |
| 98 (1-25) | 1, 4 (1-25) |
| 99 (1-6) | 1, 4 (1-6) |
| 121 (15-25) | 1 (24-25) |
| 122 (1-25) | 1 (1-4) |
| 123 (1-15, 25) | |
| 124 (1-12) | |
| 125 (17-25) | |
| 126 (18-25) | |
| 127 (1-25) | |
| 128 (1) | |
| 134 (17-25) | 1 (17-22) |
| 135 (1-25) | |
| 136 (1-25) | |
| 137 (1-19) | |
| 150 (15-23) | |
| 151 (1-25) | 1 (4-10, 18-25) |
| 152 (1-18) | 1 (1-5) |
| **Maritz's Counter-Designations** | |
| 9 (13-25) | |
| 10 (1-7) | |
| 17 (1-25) | |
| 18 (1-2, 21-25) | |
| 19 (1-3) | |
| 41 (9-16) | |
| 72 (21-25) | |
| 73 (1-25) | |
| 74 (1-6) | |
| 79 (17-19) | |
| 81 (3-5) | |
| 123 (16-24) | |
| 162 (188-25) | |
| 163 (1-25) | |
| 164 (1-20, 24-25) | |
| 165 (1-5) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
|---|---|
| Deponent:  Steinkamp, Ronald | |
| Date of Deposition:  December 9, 2005 | |
| **Page (Line)** | **Objections** |
| 6 (17-25) | |
| 7 (1-6) | |
| 8 (22-25) | |
| 9 (1-4, 13-15) | |
| 12 (6-15) | |
| 14 (16-25) | |
| 15 (1-10, 24-25) | |
| 16 (1-4, 16-19) | |
| 19 (14-25) | |
| 20 (1-6) | |
| 24 (1-16) | |
| 25 (2-9) | |
| 49 (11-19) | |
| **Maritz's Counter-Designations** | |
| 7 (7-11) | |
| 16 (24-25) | |
| 17 (1-13) | |
| 18 (3-24) | |
| 24 (17-25) | |
| 25 (1) | |
| 29 (5-17) | |

| Affinion Net Patents, Inc. v. Maritz Inc., CA No. 04-360-JJF | |
| --- | --- |
| Deponent: Wofsey, Carol | |
| Date of Deposition: March 21, 2006 | |
| **Page (Line)** | **Objections** |
| 11 (12-25) | |
| 12 (1-11) | |
| 13 (4-12) | |
| 14 (16-25) | |
| 15 (1-3, 7-25) | |
| 16 (1-25) | |
| 17 (1-25) | |
| 18 (1-25) | |
| 19 (1-24) | |
| 20 (2-3) | |
| 21 (21-25) | |
| 22 (1-25) | |
| 23 (1-25) | |
| 24 (1-2) | |
| 26 (12-16, 23-25) | 4 (12-13) |
| 27 (1-25) | |
| 28 (1) | |
| 31 (2-25) | |
| 32 (1-13) | |
| 34 (18-22, 25) | |
| 35 (1) | |
| 39 (2-25) | |
| 40 (1-4) | |
| 46 (6-25) | |
| 47 (1-25) | |
| 48 (1-17) | |
| 51 (1-2, 5-25) | |
| 52 (1-12) | |
| 61 (8-11, 14-24) | |
| 62 (2-25) | |
| 63 (1-12) | |
| 77 (19-25) | |
| 78 (1-19, 22-25) | |
| 79 (1-15) | |
| 81 (14-25) | |
| 82 (1-25) | |
| 83 (1-15) | |
| 85 (18-21) | |
| 96 (21-25) | |
| 97 (1-25) | |

| | |
|---|---|
| 102 (2-25) | |
| 105 (16-22) | |
| 106 (5-19, 21-25) | |
| 107 (1-4) | |
| 109 (23-25) | |
| 110 (1-4) | |
| 118 (12-19) | |
| 128 (2-5) | |
| 129 (6-25) | |
| 130 (1-2) | |
| **Maritz's Counter-Designations** | |
| 24 (3-15) | |

# EXHIBIT 12

**EXHIBIT 12**
**TO JOINT PRETRIAL ORDER**

**A BRIEF STATEMENT OF WHAT AFFINION INTENDS TO PROVIDE IN SUPPORT OF ITS CLAIMS, IN ADDITION TO THE FACTS NOT IN DISPUTE, INCLUDING THE DETAILS OF THE DAMAGES CLAIMED, AND OF OTHER RELIEF SOUGHT**

Affinion intends to provide in support of its claims, in addition to the facts not in dispute, including the details of the damages claimed, and other relief sought, as follows:

Affinion intends to prove that Maritz infringes the '412 patent by implementing incentive programs using the VAULT system that perform all disputed limitations of claims 10-17, 27-34, and 36 of the '412 patent, literally or under the doctrine of equivalents, and that Maritz infringes the '412 patent by implementing incentive programs using the Award HQ system that perform all disputed limitations of claims 10-16, 27-33, and 36 of the '412 patent, literally or under the doctrine of equivalents.

Affinion intends to prove the amount of actual damages to it has suffered from Maritz's infringement of the '412 patent, including lost profits damages and reasonable royalties in the amounts set forth in the expert reports of Dr. Marion Stewart as updated with more recent financial data from Maritz, entitlement to enhanced damages and attorneys fees under 35 U.SC. §§ 284 and 285 based on Maritz's willful infringement and other factors entitling Affinion to enhanced damages, and entitlement to prejudgment interest under § 284.

Affinion intends to prove entitlement to a permanent injunction prohibiting Maritz from infringement of the '412 patent.

Affinion intends to prove that Maritz has violated the false marking statute, 35 U.S.C. § 292, and made false and misleading statements regarding its products in violation of 15 U.S.C. § 1125(a).

# EXHIBIT 13

# CONFIDENTIAL EXHIBIT

EXHIBIT 14

**EXHIBIT 14**
**TO JOINT PRETRIAL ORDER**

**THE AMENDMENTS OF THE PLEADINGS DESIRED BY**
**AFFINION, AND AFFINION'S OBJECTIONS TO THE**
**AMENDMENTS OF THE PLEADINGS DESIRED BY DEFENDANT**

After the close of discovery and only eight weeks before pretrial conference, defendant

Maritz filed an Answer to Amended Complaint with Affirmative Defenses and Counterclaim

("Answer to Amended Complaint"), D.I. 196, that contains three new infringement affirmative

defenses (estoppel, laches, and patent misuse), a new counterclaim (unclean hands), and 20

pages of new, irrelevant and unsupported allegations in support of its counterclaims for

inequitable conduct, unclean hands, and patent misuse.

Affinion has filed a motion to strike these new affirmative defenses, counterclaim and

factual allegations (1) because they are untimely and Maritz has not complied with the Court's

Scheduling Order and Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure; (2)

pursuant to Rules 8(a) and 12(f) of the Federal Rules of Civil Procedure because the new

allegations are not "short and plain statements" of Maritz's claims and contain irrelevant and

inadmissable matters concerning events occurring after the issuance of the '412 patent; and (3)

because Maritz has made new factual contentions "on information and belief" that lack any

evidentiary support.  This is set forth in Affinion's motion, D.I. 213.

# EXHIBIT 15

## **EXHIBIT 15**

## **MARITZ'S OBJECTIONS TO THE AMENDMENTS OF THE PLEADINGS DESIRED BY AFFINION**

Maritz has answered Affinion's Amended Complaint and filed counterclaims thereto as of right, and these pleadings are already in effect.  Maritz has filed its opposition to Affinion's motion to strike, addressing the unfounded arguments of Affinion.  D.I. 223.

# EXHIBIT 16

**EXHIBIT 16**
**TO JOINT PRETRIAL ORDER**

**A LIST OF MISCELLANEOUS ISSUES THAT AFFINION**
**WISHES TO ADDRESS AT THE PRE-TRIAL CONFERENCE**

1.    The trial schedule, including the time to be allotted for each side.

2.    Whether the Court intends to bifurcate, separate, or order issues for resolution.

3.    Whether Maritz will be permitted to adduce evidence to the jury regarding unenforceability of the '012 patent.  (See D.I. 213, Motion to Strike).  The Seventh Amendment to the U.S. Constitution does not guarantee a right to trial by jury on the defense of unenforceability because of inequitable conduct and the district court may properly hold a separate trial solely to the issue of inequitable conduct.  Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1211-13 (Fed. Cir. 1987).

4.    Maritz's refusal to produce allegedly privileged documents despite the Court's ruling.  (See August 24, 2006 e-mail to the Court from Maryellen Noreika).

# EXHIBIT 17

**EXHIBIT 17**

**MARITZ'S MISCELLANEOUS ISSUES**

1.      The parties and Court should discuss the handling of equitable issues at trial.