IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

_____
                                        )
AFFINION NET PATENTS, INC.,             )
                                        )
                 Plaintiff,             )          C.A. No. 04-360-JJF
                                        )
           v.                           )
                                        )
MARITZ INC.,                            )
                                        )
                 Defendant.             )
_____ )

## AFFINION'S PROPOSED JURY INSTRUCTIONS

Pursuant to D.Del. LR 51.1(a) plaintiff Affinion Net Patents, Inc. submits the

following jury instructions as to which the parties have not been able to reach agreement.  These

instructions are also being submitted on disk in WordPerfect format.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Plaintiff
  Affinion Net Patents, Inc.

Of Counsel:

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

September 11, 2006

# TABLE OF CONTENTS

**Page**

1.  INTRODUCTION ................................................................. 1

    1.1  BURDENS OF PROOF ........................................... 1

2.  INFRINGEMENT.................................................................. 3

    2.1  CLAIM INFRINGEMENT.......................................... 3

    2.2  CONSTRUCTION OF CLAIMS ................................. 4

    2.3  DEPENDENT AND INDEPENDENT CLAIMS .......... 5

    2.4  PATENT INFRINGEMENT – GENERALLY ............. 6

    2.5  DIRECT INFRINGEMENT – KNOWLEDGE OF
         PATENT OR INTENT TO INFRINGE IS IMMATERIAL ..... 7

    2.6  JOINT INFRINGEMENT ........................................... 8

    2.7  LITERAL INFRINGEMENT....................................... 9

    2.8  DOCTRINE OF EQUIVALENTS .............................. 10

    2.9  SITUATIONS WHERE RESORT TO DOCTRINE
         OF EQUIVALENTS IS NOT PERMITTED ............. 12

    2.10 WILLFUL INFRINGEMENT ..................................... 14

3.  VALIDITY DEFENSES........................................................ 16

    3.1  SUMMARY OF INVALIDITY DEFENSE................. 16

    3.2  PRIOR ART DEFINED............................................... 17

    3.3  PRIOR ART – DATE OF INVENTION ..................... 19

    3.4  ANTICIPATION ......................................................... 21

    3.5  OBVIOUSNESS .......................................................... 23

         3.5.1  SCOPE AND CONTENT OF THE PRIOR ART ........ 25

      3.5.2  ANALOGOUS ART ................................................ 27

      3.5.3  DIFFERENCES OVER THE PRIOR ART ................................ 28

      3.5.4  LEVEL OF ORDINARY SKILL ................................ 29

      3.5.5  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS ...... 30

      3.5.6  MOTIVATION TO COMBINE ................................ 32

      3.5.7  HINDSIGHT ................................ 33

      3.5.8  TEACHING AWAY OF PRIOR ART ................................ 34

      3.5.9  INDEPENDENT INVENTION BY OTHERS ................................ 35

4.    UNENFORCEABILITY ................................ 36

    4.1  INEQUITABLE CONDUCT ................................ 36

    4.2  MATERIALITY ................................ 37

    4.3  INTENT ................................ 38

    4.4  BALANCING ................................ 39

5.    DAMAGES ................................ 40

    5.1  COMPENSATORY DAMAGES IN GENERAL ................................ 40

    5.2  FORESEEABILITY ................................ 41

    5.3  REASONABLE CERTAINTY ................................ 42

    5.4  ENTIRE MARKET VALUE RULE ................................ 43

    5.5  LOST PROFITS – LOST SALES ................................ 44

    5.6  REASONABLE ROYALTY AS A MEASURE OF DAMAGES ........... 46

    5.7  THE DATE DAMAGES BEGIN ................................ 48

6.    MARTIZ'S DEFENSES ................................ 49

    6.1  LACHES ................................ 49

|         | 6.2 | EQUITABLE ESTOPPEL | 51 |
| 7.      |     | FALSE MARKING AND LANHAM ACT CLAIMS | 53 |
|         | 7.1 | FALSE MARKING | 53 |
|         | 7.2 | FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a) | 54 |

# I.   INTRODUCTION

## 1.1   BURDENS OF PROOF

This is a civil case in which the Plaintiff Affinion Net Patents, Inc. (which I will refer to as "Affinion"), is seeking damages from Defendant, Maritz, Inc. (which I will refer to as "Maritz") for patent infringement.

Affinion has the burden of proving patent infringement by what is called a preponderance of the evidence. That means Affinion has to produce evidence which, when considered in light of all the facts, leads you to believe that what Affinion claims is more likely true than not. To put it differently, if you were to put Affinion's and Maritz's evidence on the opposite sides of a scale, the evidence supporting Affinion's claims would have to make the scales tip somewhat on its side.

Affinion also contends that Maritz's infringement of its patent was willful. To prove that Maritz's infringement was willful, Affinion must come forward with clear and convincing evidence that Maritz willfully infringed. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probably. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, the Defendant Maritz is urging that Affinion's patent is invalid. A patent, however, is presumed to be valid. Accordingly, Maritz has the burden of proving that the '412 patent is invalid by clear and convincing evidence. As I just mentioned, clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is thus higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Affinion or Maritz have met their burden of proof.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

## 2.    INFRINGEMENT

### 2.1    CLAIM INFRINGEMENT

Before you can decide whether an accused product or process infringes Affinion's patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of a patent. The patent claims involved here are claims 10-17, 24-34 and 36, beginning at column 11, line 13 of the '412 patent which is Plaintiff's Exhibit 1 in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, Affinion need only establish that one claim has been infringed.

When making your decision regarding infringement, you should not compare Maritz's VAULT system or Award HQ system with any specific example set out in the patent-in-suit, or with any product of Affinion or Netcentives. Rather, you must only compare the methods of using Maritz's VAULT system or Award HQ system with the asserted claims of the '412 patent.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

3

## 2.2    CONSTRUCTION OF CLAIMS

It is my job as Judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. You must ignore any different interpretation given to these terms by the witnesses or attorneys. I will now tell you the meanings of the following words and groups of words from the patent claims.


[READ STIPULATIONS AND COURT'S CLAIM CONSTRUCTIONS]


You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.


Source

AIPLA Model Patent Jury Instructions (2005) (citing *Phillips v. AWH Corp.*, 415 F.3d 1301 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)(en banc)).

## 2.3    DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in the patent.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 10 is an independent claim.  You know this because the claim mentions no other claim.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 11, on the other hand, is a dependent claim.  Accordingly, the words of Claims 10 and 11 must be read together in order to determine what the dependent claim, Claim 11, covers.

Some claims of the patent in suit are broader than other claims.  You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

## 2.4    PATENT INFRINGEMENT – GENERALLY

A patent owner may enforce his right to exclude others from making, using or selling the patented invention by filing a lawsuit for patent infringement. Here, Affinion, the patent owner, has sued Maritz, the accused infringer, and has alleged that Maritz's use of its VAULT system and/or Award HQ system infringes one or more claims of Affinion's U.S. Patent No. 6,009,412.

Patent law provides that any person or business entity which makes, uses or sells, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent. In this case, if you find that Affinion has proven by a preponderance of the evidence that Maritz has made, used, sold or offered to sell the invention defined in at least one claim of the '412 patent, Maritz would be liable for infringing that patent.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 2.5    DIRECT INFRINGMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL

Maritz would be liable for directly infringing Affinion's patent if you find that Affinion has proven by a preponderance of the evidence that Maritz has made, used or sold the invention defined in at least one claim of plaintiff's patent.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent.  He may also infringe even though in good faith he believes that what he is doing is not an infringement of any patent.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

## 2.6    JOINT INFRINGEMENT

It is not necessary for the acts that constitute infringement to be performed by one person or entity.  When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement.  Infringement of a patented process or method canot be avoided by having another perform one step of the process or method.  Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.


Source

On Demand Machine Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1344-45 (Fed. Cir. 2006)

## 2.7    LITERAL INFRINGEMENT

There are two ways in which a patent may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For one of the accused products to literally infringe any one of Affinion's patent claims, the subject matter of the patent claim must be found in that accused product.  In other words, Affinion's patent claim is literally infringed if the accused product includes each and every step in Affinion's patent claim.  If Maritz's product omits any single step recited in Affinion's patent claim, Maritz's product does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

Remember, the question is whether the accused product infringes any claim of Affinion's patent, and not whether the accused product is similar or even identical to a product made by Affinion.  Accordingly, you must be certain to compare each of the accused products, and the process used to manufacture those accused products, with the claims they are alleged to infringe and not with any product made by Affinion.


Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

## 2.8    DOCTRINE OF EQUIVALENTS[1]

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term. You may find that defendant's method infringes claim ___, even if not all of the method steps of the claim are present in defendant's method. You may find infringement in such circumstances if the method steps of defendant's method are equivalent to that claimed in at least one of plaintiff's patent claims. This is called the doctrine of equivalents

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalents is whether defendant's method and component steps perform substantially the same function in substantially the same way to produce substantially the same result compared to plaintiff's claimed method and component steps.

It is not a requirement under the doctrine of equivalents that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether defendant's method and its component steps are

---

[1] Whether instructions on the doctrine of equivalents is necessary depends on the Court's claim construction ruling.

equivalent to that defined in plaintiff's claims is to be determined as of the time of the

alleged infringement.


<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the
District of Delaware (1993).

## 2.9    SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED

There are two situations wherein resort to the doctrine of equivalents to find infringement is not permitted.  First, resort to the doctrine of equivalents to find infringement is not permitted if you find that the defendant is merely practicing what was in the prior art to the patented invention or that which would have been obvious in light of what was in the prior art.  This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.  Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to claim ____, but broad enough to literally cover the accused method

Second, resort to the doctrine of equivalents to find infringement is not permitted if you find that the patent owner is trying to recapture that which he gave up in the Patent Office to distinguish the invention from what was in the public domain prior to his invention.  In other words, if plaintiff, when he was in the process of obtaining his patent, limited it in some way in order to argue that it was different from what was in the public domain, then he is not now free to assert a broader view of his invention by broadening the claims through the doctrine of equivalents in an effort to recapture that which he surrendered.

Sometimes patent claims, however, are amended, not to avoid what was in the public domain, but to clarify indefinite or ambiguous terms.  If you find that an amendment was made to clarify a claim for that sort of reason and not in an effort to avoid what was in the public domain, the doctrine of equivalents can still be applied.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 2.10    WILLFUL INFRINGEMENT

If you find on the basis of the evidence and the law as I have explained it that Maritz's product infringes at least one of Affinion's patent claims, you must further decide whether or not Affinion has proven by clear and convincing evidence, that Maritz's infringement was willful. Willful infringement is established where Affinion has proven two things: first, that Maritz was aware of Affinion's patent; and second, that Maritz has no reasonable good faith basis for concluding that it did not infringe Affinion's patent.

For example, if you find Affinion has proven that Maritz knew about the patent and did not exercise due care to determine whether or not it was infringing the patent or whether the patent was valid, you may find that Maritz's infringement was willful.

One factor to consider with respect to Maritz's good faith and due care in determining the infringement and validity issues is whether Maritz obtained and followed competent legal advice from an attorney after becoming aware of Affinion's patent. A good faith opinion means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers. Moreover, you should consider whether defendant actually relied upon and followed its attorney's opinion.

Another factor in determining whether Affinion has proven Maritz willfully infringed Affinion's patent is your assessment of whether or not Maritz copied Affinion's product covered by Affinion's patent claims or whether Maritz, as a competitor of Affinion, tried to match Affinion's product with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found.

14

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993); American Intellectual Property Law Association, Federal Litigation Committee (1990) (revision of ABA's Section of Patent, Trademark and Copyright Law (1987)).

3.    **VALIDITY DEFENSES**

3.1    **SUMMARY OF INVALIDITY DEFENSE**

Defendant contends that the asserted claims of the '412 patent are invalid. The granting of a patent by the Patent Office carried with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matters is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Defendants have the burden of proving by clear and convincing evidence that each claim is invalid.

Nevertheless, claims of an issued patent may be found to be invalid. Once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on law. Thus, you must determine whether each of Affinion's claims is invalid.

Defendant contends that Claims 10-17 and 24-34 of the '412 patent are invalid for one or more of the following reasons:

- Anticipation

- Obviousness

I will now instruct you in more detail why Defendant alleges that the asserted claims of the patent are invalid.

Source

AIPLA Model Instructions, Version 1.1, February 2006; Jury instructions in St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc., No. 03-241 (JJF).

### 3.2     PRIOR ART DEFINED

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

Maritz is relying on items that Affinion does not agree are prior art. Maritz must prove by the clear and convincing evidence standard that these items are prior art. In order to do so, Maritz must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

1. any method that was publicly known or used by others in the United States before the patented inventions were made;

2. patents that issued more than one year before the filing date of the patent or before the invention was made;

3. publications having a date more than one year before the filing date of the patent or before the invention was made;

4. any method that was in public use or on sale in the United States more than one year before the patent was filed;

5. any method that was made by anyone before the named inventor created the patented method where the method was not abandoned, suppressed, or concealed.

In this case, Defendant contends that the following items are prior art:

[IDENTIFY PRIOR ART BY NAME][2]

---

[2] Maritz has refused to identify the specific prior art on which it seeks to rely, or to indicate which items it contends fall within the various categories of prior art.

<u>Source</u>

AIPLA Model Instructions, Version 1.1, February 2006; ABA Model Jury Instructions, Section of Patent Litigation (2005).

### 3.3     PRIOR ART – DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention.  This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention.  The inventor has the idea of the invention.  This is referred to as "conception" of the invention.  A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort.  The actual making of the invention is referred to as "reduction to practice."  An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed.  This is also referred to as a "constructive reduction to practice."  In this case, that date is December 14, 1995.  Ordinarily, art that became before the application's filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art.  The first occurs, when the inventor on the patent reduced the invention to practice before the date of the art.  In that case, the art is not prior art to the '412 patent.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice.  In that case, the art is not prior art to the '412 patent.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirement for the prior art categories relied on by Maritz in this case.

Source

ABA Model Jury Instructions, Section of Patent Litigation (2005)

### 3.4     ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To provide anticipation, Maritz must present clear and convincing evidence showing that the claimed invention is not new.

In this case, Maritz contends that claims 10, 24 and 36 of the '412 patent are anticipated by the '887 patent.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior patent you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular patent.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently occurred as a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that Maritz contends apply in this case.  I will now instruct you about those.

<u>Source</u>

AIPLA Model Instructions, Version 1.1, February 2006.

### 3.5     OBVIOUSNESS

In order to be patentable an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the claimed subject matter of the patent in suit, the following steps should be taken by you:

1.     You should determine the scope and content of the prior art relied upon by the party alleging invalidity of the patent in suit;

2.     You should then identify the difference, if any, between each claim of the patent in suit and the prior art; and

3.     Determine the level of ordinary skill in the pertinent art at the time the invention of the patent in suit was made.

Against this background, you will then make your decision that the claimed subject matter would have been either obvious or unobvious to a person of ordinary skill in the pertinent art. You should also consider such objective considerations as commercial success, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patent by others, and whether the same or similar inventions were made independently by others prior to or at about the same time as the invention of the patent in suit.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 3.5.1   SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonable pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named invention was trying to solve. The prior art includes the following:

1. Prior patents that issued before the date of the invention of the '412 patent;

2. Prior publications having a publication date before the date of invention of the '412 patent;

3. U.S. Patents having a filing date prior to the date of invention of the '412 patent;

4. Anything in public use or on sale in the United States before the date of invention of the '412 patent;

5. Anything that was publicly known or used by others in this country before the date of the invention of the '412 patent; and

6. Anything that was made or built or any process that was used in this country by another person before the date of invention of the '412 patent, where the thing made or built or the process used was not abandoned, suppressed or concealed.

25

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993); Jury instructions in <u>St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.</u>, No. 03-241 (JJF).

### 3.5.2   ANALOGOUS ART

Affinion and Maritz disagree as to whether the [alleged analogous art] is analogous prior art.

An item of prior art is analogous if it comes from the same field in which Tom Storey was working, even if it does not concern the problem Tom Storey was addressing. An item of prior art is also analogous even if it was not from the same field in which Tom Storey was working, so long as it was reasonable pertinent to the particular problem that he was trying to solve.

If you determine that the [alleged analogous art] is not analogous art, then you should ignore it in deciding whether the claimed invention would have been obvious.

Source

AIPLA Model Patent Jury Instructions (2005).

### 3.5.3  **DIFFERENCES OVER THE PRIOR ART**

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed method as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 3.5.4   **LEVEL OF ORDINARY SKILL**

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions encountered by the inventor, the sophistication of the technology and the education of others working in the field.

Affinion contends that the art to which the patent pertains is computer-based loyalty/incentive programs and that the level of ordinary skill in the art of loyalty/incentive programs is about four years experience working with or in the loyalty industry, which may be gained either through work in-house in the companies offering loyalty programs, or at outside vendors who design or operate such programs, or through consulting on loyalty program issues for corporations. Affinion also contends that the level of ordinary skill in the art of computer-based programs in 1985 is a person with a Computer Science degree or equivalent in work experience.

Maritz contends that the level of ordinary skill in the art was _____.

Based on the factors listed and the evidence presented, you must determine the level of ordinary skill in the art.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993); AIPLA Model Patent Jury Instructions (2005).

### 3.5.5   **OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS**

In making your decision as to the obviousness or unobviousness of the claimed invention, you must consider the following objective evidence which may tend to show unobviousness of the claims at issue:

1. Commercial success or lack of commercial success of products covered by the patent in suit;

2. A long felt need in the art which was satisfied by the invention of the patent in suit;

3. The failure of others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by the infringer or others in the field;

7. The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, then any commercial success may have no relation to the issue of obviousness.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness.  Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should be held in abeyance, until all of the evidence has been introduced.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 3.5.6   **MOTIVATION TO COMBINE**

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention.  Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.  The suggestion or motivation to combine and the expectation of success must be found in either: the prior art itself, the knowledge of persons of ordinary skill in the art, or, in some cases, the nature of the problem to be solved.

Source

Draft Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (2003).

### 3.5.7  **HINDSIGHT**

The question of nonobviousness is simple to ask, but difficult to answer.  A person or ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, then you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.  The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 3.5.8   TEACHING AWAY OF PRIOR ART

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence of non-obviousness.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 3.5.9   <u>INDEPENDENT INVENTION BY OTHERS</u>

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the invention was also invented independently by other persons, either before the inventor of the Patent In Suit or at about the same time. Just as the failure of others to make the invention can be evidence of unobviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may or may not be an indication of obviousness when considered in light of all the circumstances.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

4.     **UNENFORCEABILITY**

**4.1     INEQUITABLE CONDUCT**[3]

Every applicant for a patent has a duty of candor and good faith in its dealing with the Patent Office and the examiner's handling of the application. This duty of candor is important because the examiner has only limited information available to determine the state of the art. The time available to the examiner is also limited. Therefore, to prevent an applicant from obtaining a patent he or she does not deserve, the Patent Office requires full disclosure to the Patent Office of all information which is material to examination of the application.

This means that the applicant and his or her attorneys must not intentionally withhold or misrepresent material information concerning the claimed invention. A breach of this duty is called inequitable conduct and renders the patent unenforceable.

To prove inequitable conduct, Maritz must show, by clear and convincing evidence, that the applicants or their attorneys, with intent to mislead or deceive, withheld or misrepresented information that was significant and material to the examiner's evaluation of the patent application.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

---

[3]   Inequitable conduct is an equitable issue for the Court and Affinion does not agree that the issue should be submitted to the jury. These instructions are submitted only for use in the event the Court should determine that this issue should be heard by the jury.

## 4.2    MATERIALITY

In evaluating an allegation that applicants were guilty of inequitable conduct before the Patent and Trademark Office, you must first determine whether there was any withholding or misrepresentation of information at all and, if so, whether the information withheld or misrepresented was indeed material.  Information is not material if it is cumulative or adds little information to what the examiner already knew.  Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application would more likely than not, not meet one of the requirements for a patent, such as the requirements that the invention be new, useful and non-obvious.  Information is also material if it refutes or is inconsistent with the information provided or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection.

If you determine that there was a withholding or misrepresentation of information and that the information was material, then you must consider the element of intent.  If, on the other hand, you find that Maritz have failed to prove by clear and convincing evidence that applicants or their attorneys withheld or misrepresented any material information, then you must find that there was no inequitable conduct.


Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993); AIPLA Model Patent Jury Instructions (2005).

**4.3     INTENT**

Maritz must prove, by clear and convincing evidence, that the applicants or their attorneys withheld or misrepresented material information with the intent to mislead or deceive the patent examiner.  If the withholding or misrepresentation occurred through negligence, oversight, carelessness or an erroneous judgment, then there was no intent and no inequitable conduct.

Intent need not be proved directly because there is no way of scrutinizing the operations of the human mind.  Therefore, you may infer intent from conduct, from acts substantially certain to accomplish a result, but you are not required to infer it.  Any such inference depends upon the totality of the circumstances, including the nature and level of culpability of the conduct and the absence or presence of affirmative evidence of good faith.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 4.4   BALANCING

You must determine whether the withheld information or misrepresentation satisfies a threshold level of materiality.  You must also determine whether the conduct of applicants or their attorneys satisfies a threshold showing of intent to mislead.  Assuming satisfaction of the thresholds, materiality and intent must be balanced.

The more material the withheld or misrepresented information is, the less stringent is the requirement to prove intent by clear and convincing evidence.  In other words, withholding or misrepresentation of a highly material piece of information requires a lower level of proven intent, thereby allowing you to infer intent.  You must be the judge of this balance.

If, you find that Maritz has proven by a clear and convincing evidence that there was a material withholding or a material misrepresentation of information and that applicants or their attorneys acted with intent to deceive the examiner, then you must balance these two factors to determine whether or not, in your view, there was inequitable conduct.


Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

5.      **DAMAGES**

**5.1     COMPENSATORY DAMAGES IN GENERAL**

If after considering all the evidence and the law as I have stated it, you are convinced that the patent is not infringed, invalid, or unenforceable, your verdict should be for Maritz and you need go no further in your deliberations.  On the other hand, if you decide that the patent in suit is not invalid and is enforceable, and that one or more claims of the patent have been infringed by Maritz, you must then turn to the issue of damages.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.  Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Maritz benefited from, realized profits from or even lost money as a result of the acts of infringement.  The only issue is the amount necessary to adequately compensate Affinion for Maritz's infringement.  Adequate compensation should return Affinion to the position it would have occupied had there been no infringement.  You must consider the amount of injury suffered by Affinion without regard to Maritz's gains or losses from the infringement.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

## 5.2     FORESEEABILITY

The fact that Maritz did not foresee that it would cause Affinion's damage at the time it infringed is irrelevant to the computation of damages.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 5.3    REASONABLE CERTAINTY

Once the fact of damages has been proven by a finding of infringement, you must determine the extent of damages.  Under the patent law, Affinion is entitled to all damages that can be proven with "reasonable certainty."  On one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Affinion.  On the other hand, Affinion is not entitled to speculative damages, that is, you should not award any amount for loss, which, although possible, is wholly remote or left to conjecture and/or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against Maritz.  Any incorrectness or confusion in Maritz's records should be held against Maritz, not Affinion.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993); AIPLA Model Patent Jury Instructions (2005).

**5.4    ENTIRE MARKET VALUE RULE**

The "entire market value rule" allows for the recovery of damages based on the value of an entire apparatus containing several features, even though only one feature is patented when: the patentee can normally anticipate sale of the unpatented components with the patented component; that is, the feature patented constitutes the basis for consumer demand of the unpatented feature.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

### 5.5    LOST PROFITS – LOST SALES

In determining damages, you must first determine if Affinion has proven its entitlement to lost profits.

Lost profits may be in the form of diverted sales, eroded prices, or increased expenses. The patent owner must establish a causation between his lost profits and the infringement. A factual basis for the causation is that "but for" the infringement, the patent owner would have made the sales that the infringer made, charged higher prices, and/or incurred lower expenses. In order to show that the patent owner, Affinion, would have made the sales Maritz made, Affinion must show that: (1) there was a demand for the patented product; (2) Affinion had the ability to meet the market demand; and (3) no acceptable non-infringing substitutes were available.

Affinion need not negate every possibility that purchasers of Maritz's products might have bought another product. And, a mere existence of a competing device does not make that product an acceptable substitute. Uniqueness of a patented product suggests that there are no acceptable non-infringing substitutes. A proposed competitive substitute is not an acceptable noninfringing substitute that is different.

In proving its damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonable probability. If in all reasonable probability, the patent owner would have made the sales which the infringer has made, what the patent owner in reasonable probability would have netted from the sales denied to it is the measure of its loss, and the infringer is liable for that. The infringer is not liable, however, for speculative profits.

Source

Uniform Jury Instructions for Patent Cases in The United States District Court for the
District of Delaware (1993).

**5.6    REASONABLE ROYALTY AS A MEASURE OF DAMAGES**

Affinion is entitled to a reasonable royalty on any infringing sales for which lost profit damages are not awarded.  A reasonable royalty is the minimum permissible measure of damages set by the patent laws and is not necessarily the actual measure of damages, but is merely the floor below which the damages should not fall.  Accordingly, you may find damages in excess of the reasonable royalty if you find that the facts so warrant.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owner of the patent and the infringer, with both operating under the assumption that the negotiated patent is valid and is being infringed, *i.e.*, that absent the "reasonable royalty" payment, that the infringer would respect the patent.

In determining a reasonably royalty, you should place yourself at the point in time at which you believe the arms-length negotiation that I just referred to would have been likely to occur.  This is typically just before liability for infringement would begin, which in this case would be when the patent issued on December 28, 1999.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of the defendant, and who was willing to take a license, would have known that plaintiff's patent was valid, was enforceable and was infringed by defendant.  You should also assume that both plaintiff and defendant knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for defendant's use of the patented invention, including the opinion testimony of experts.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in The United States District Court for the District of Delaware (1993).

## 5.8    THE DATE DAMAGES BEGIN[4]

The date that Affinion first gave notice to Maritz of its claim of patent

infringement is the date at which patent damages begin to be calculated.  That date is in

dispute here, and it is up to you to determine what that date is.  Affinion has the burden to

prove by a preponderance of the evidence that it gave notice.

Affinion contends that it provided notice of its patent by communicating to Maritz

a specific charge that the allegedly infringing product infringed the '412 patent.  This

type of notice is effective from the time it is given.  If you find that Affinion, before filing

the lawsuit, did not notify Maritz by communicating a specific charge that the allegedly

infringing product infringed, then Affinion can only recover damages for infringement

that occurred after it sued on June 8, 2004.


Source

AIPLA Model Patent Jury Instructions (2005).

---

[4]    The issue of whether Affinion had any duty to provide notice under the marking
statute is the subject of a pending motion.

48

6.   **MARITZ'S DEFENSES**

6.1   **LACHES**[5]

Maritz has alleged a defense to Affinion's claim of patent infringement called

laches.  The defense of laches, if proven by Maritz by a preponderance of the evidence,

only prevents Affinion from recovering damages prior to the filing of the lawsuit.

Maritz must prove two factors:  first, that Affinion delayed in bringing a lawsuit

for an unreasonable or inexcusable length of time after it knew or should have known of

the potential infringement; and second, that the delay results in material prejudice or

injury to Maritz.

Maritz must show a direct link between Affinion's alleged delay in bringing suit,

and any alleged resulting prejudice.  Prejudice to Maritz can be either economic or

evidentiary.  Economic prejudice is harm that results from a change in Maritz's economic

position during the period of delay.  Evidentiary prejudice is harm that results to Maritz

from the passage of time such that Maritz's ability to present defenses to Affinion's

patent has been impaired.

There are several factors that should be considered when assessing whether a

defense of laches is made, and whether a delay is not unreasonable.  One factor is

whether Affinion was active in Maritz's field or industry, or if the testing of infringement

of Maritz's activities and products were not feasible or involves more than a visual

inspection of the products.  Another factor to consider is called the "other litigation"

excuse.  Affinion may be justified in delaying filing suit against Maritz if it was engaged

---

[5]  As discussed in the Motion of Plaintiff to Strike New Affirmative Defenses, Counterclaim and Allegations, D.I. 213, Affinion does not believe Maritz should be permitted to raise a laches defense.  Proposed jury instructions on laches are set forth for the Court in the event that Affinion's motion is denied.

in litigation with other infringers.  A third factor involves multiple-related patents, as in the case here.

Finally, a defense of laches may be precluded if Maritz engaged in egregious conduct, such as willfulness or copying Affinion's patents.

Source

Jury instructions in St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc., No. 03-241 (JJF).

## 6.2    EQUITABLE ESTOPPEL[6]

Maritz has alleged a defense to Affinion's charge of patent infringement called equitable estoppel. To prove equitable estoppel, Maritz bears the burden of proving by a preponderance of the evidence three factors: first, that Affinion created, through words, conduct or silence, a misleading inference that it did not intend to press an infringement claim against Maritz; second, that Maritz substantially relied upon Affinion's misleading conduct; and third, that Maritz will suffer material economic or evidentiary prejudice if Affinion is permitted to proceed with its infringement claim. Where equitable estoppel is established, relief on a claim may be barred.

With respect to proving the second factor, Maritz must show that it in fact substantially relied on Affinion's alleged misleading conduct in connection with taking some action. There must be a causal connection between Affinion allegedly lulling Maritz into a false sense of security and Maritz's action taken in reliance on Affinion's communication or relationship with them.

With respect to proving the third factor, Maritz must show that any prejudice is economic or evidentiary. Economic prejudice is harm that results from a change in Maritz's economic position as a direct result of Affinion's alleged misleading conduct. Evidentiary prejudice is harm that results to Maritz from the passage of time such that Maritz's ability to present defenses to Affinion's patents have been impaired. Likewise, evidentiary prejudice must be a direct result of Affinion's alleged misleading conduct.

---

[6] As discussed in the Motion of Plaintiff to Strike New Affirmative Defenses, Counterclaim and Allegations, D.I. 213, Affinion does not believe Maritz should be able to raise an estoppel defense. Proposed jury instructions on estoppel are set forth for the Court in the event that Affinion's motion is denied.

Because the defense of equitable estoppel is an equitable defense, egregious conduct by Maritz, such as copying Affinion's patents or willful infringement of Affinion's patents, may be considered in your assessment of whether Maritz has proven the defense of equitable estoppel.

Source

Jury instructions in St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc., No. 03-241 (JJF).

7.    **FALSE MARKING AND LANHAM ACT CLAIMS**

   7.1    **FALSE MARKING**

   False marking requires (1) use of the term "patent" or "patent pending" (2) affixed to or falsely used in advertising in connection with (3) an unpatented article (4) with the intent to deceive the public.

   The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent.  A party can show knowledge of falsity by establishing that the accused did not have a reasonable belief that the articles in question were covered by the patent or application.  The mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability.

   Source

   Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352-53 (Fed. Cir. 2005); Douglas v. Wal-Mart Stores, Inc., 78 U.S.P.Q.2d 1927, 1933 (E.D. Pa. 2005); Cal. Med. Prods. V. Tecnol Med. Prods., 921 F. Supp. 1219, 1261 (D. Del. 1995).

**7.2    FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)**

To establish false advertising, Affinion must prove by a preponderance of the evidence that:

1. Maritz made false or misleading statements as to its product;

2. Maritz's statements caused actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3. the deception was material in that it is likely to influence purchasing decisions;

4. the advertised goods traveled in interstate commerce; and

5. a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

Source

Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994); Moore N. Am., Inc. v. Poser Bus. Forms, Inc., No. 97-712, 2000 U.S. Dist LEXIS 14651, *14-15 (D. Del. Sept. 29, 2000).

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on September 11, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on September 11, 2006 upon the following in the manner indicated:

### BY HAND

> Patricia Smink Rogowski
> Connolly, Bove, Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE  19801

### BY EMAIL

> J. Bennett Clark
> Senniger Powers
> One Metropolitan Square
> St. Louis, MO  63102

> */s/  Maryellen Noreika*
> Maryellen Noreika (#3208)
> mnoreika@mnat.com