IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AFFINION NET PATENTS, INC., )
          )
    Plaintiff,   )  Civil Action No. 04-360-JJF
          )
   v.      )
          )  **PUBLIC REDACTED VERSION**
MARITZ INC.,     )
          )
    Defendant.  )

## MARITZ'S ANSWERING BRIEF ON AFFINION NET PATENT, INC.'S MOTION TO STRIKE NEW AFFIRMATIVE DEFENSES, COUNTERCLAIM AND ALLEGATIONS

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
Michael J. Hartley
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Dated: September 13, 2006    Attorneys for Maritz Inc.

TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDING.....................................1

II.   SUMMARY OF ARGUMENT.....................................................1

III.  ARGUMENT.........................................................................4

      A.   Maritz Is Entitled to File Its Answer and Counterclaim as
           a Matter of Right.................................................................4

      B.   Unclean Hands and Patent Misuse Have Been Matters of
           Defense in this Case for Nearly a Year.....................................5

      C.   Affinion Feigns Surprise at the Detailed Allegations of
           Inequitable Conduct, Unclean Hands and Patent Misuse
           Appearing in the Answer and Counterclaim.............................5

      D.   Events Occurring After Issuance of the '412 Patent Are
           Relevant to Maritz's Defenses and Counterclaims.....................10

      E.   Affinion's "On Information and Belief" Argument Is Frivolous....12

      F.   Affinion's Repeated References to the Close of Discovery Ignore
           Its Own Activity in This Case................................................15

      G.   Maritz Should Be Permitted to Proceed with Its Laches and
           Equitable Estoppel Defenses.................................................16

IV.   CONCLUSION....................................................................17

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                      <u>Page</u>

*Agere Sys. Guardian Corp. v. Proxim Inc.,*
    190 F.Supp.2d 726 (D. Del. 2002)....................................................................14, 15

*Akpan v. N.Y. Div. For Youth, Harlem Valley Secure Center,*
    1999 U.S. Dist. LEXIS 15366 (S.D. N.Y. 1999)......................................13

*Berckeley Investment Group, Ltd. v. Colkitt,*
    455 F.3d 195 (3d Cir. 2006).........................................................3

*Bristol-Meyers v. Rhone-Poulenc Rorer, Inc.,*
    326 F.3d 1226 (Fed. Cir. 2003)......................................................3

*Cepalco, Inc. v. MD Papierfabriken,*
    686 F.Supp. 983 (D. Conn. 1988)....................................................14

*Consolidated Aluminum Corp. v. Foseco Intern. Ltd.,*
    910 F.2d 804 (Fed. Cir. 1990)........................................................10

*C.R. Bard, Inc. v. M3 Systems, Inc.,*
    157 F.3d 1340 (Fed. Cir. 1998)......................................................11

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
    120 F.3d 1253 (Fed. Cir. 1997)..................................................3, 8, 12

*DaimlerChrysler AG v. Feuling Advanced Technology,*
    276 F.Supp.2d 1054 (S.D. Cal. 2003)...............................................8

*E.I. DuPont de Nemours & Co. v. Millenium Chemicals, Inc.,*
    1999 WL 615164 (D. Del. August 2, 1999).......................................4

*eSpeed, Inc. v. Brokertec USA, LLC,*
    417 F.Supp.2d 580 (D. Del. 2006)...............................................9, 10

*Glaverbel Societe Anonyme v. Northlake Marketing,*
    45 F.3d 1550 (Fed. Cir. 1995).......................................................11

*Golan v. Pingel Enterprise, Inc.,*
    310 F.3d 1360 (Fed. Cir. 2002)......................................................11

*In re Independent Serv. Org. Antitrust Litig.,*
    964 F.Supp. 1479 (D. Kan. 1997)...................................................10

*Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,*
    50 F.R.D. 415 (D. Del. 1970)..........................................................4

*Keystone Driller Co. v. General Excavator Co.,*
    290 U.S. 240 (1933)....................................................................10

*Magarl, LLC v. Crane Co.,*
    2004 U.S. Dist. LEXIS 24283 (S.D. Ind. 2004)....................................13

*Mallinckrodt, Inc. v. Medipart, Inc.,*
    976 F.2d 700 (Fed. Cir. 1992)........................................................11

*McKesson Information Solutions, LLC v. The Trizetto Group, Inc.,*
    2005 WL 914776 (D. Del. 2005).....................................................11

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
    165 F.3d 891 (Fed. Cir. 1998)........................................................11

*Owens-Illinois, Inc. v. Lake Shore Land Company, Inc.,*
    610 F.2d 1185 (3d Cir. 1979)...........................................................4

*Perseptive Biosystems v. Pharmacia Biotech,*
    225 F.3d 1315 (Fed. Cir. 2006).........................................................6

*Precision Instrument Mfg. Co. v. Automatic Maintenance Machinery Co.,*
    324 U.S. 806 (1945)....................................................................10

*Rohm & Haas Co. v. Crystal Chemical Co.,*
    722 F.2d 1556 (Fed. Cir. 1983).........................................................9

*Travelers Casualty & Surety Co. v. Jadum Constr., Inc.,*
    2003 U.S. Dist. LEXIS 11861 (D. Mass. 2003)....................................14

**Statutes and Rules**

Fed. R.Civ.P. 9(b).......................................................................14

Fed.R.Civ.P. 12(f)........................................................................3

Fed.R.Civ.P. 15(a)......................................................................4, 5

Fed.R.Civ.P. 15(d).......................................................................4

Fed.R.Civ.P. 30(b)(6)...................................................................16

**Other Authorities**

Manual of Patent Examining Procedure (MPEP) §2001.06(c) ...........................6

## I.    NATURE AND STAGE OF PROCEEDING

On March 8, 2006, Affinion Net Patents, Inc. ("ANP") moved for leave to file an amended complaint. Maritz Inc. ("Maritz") opposed the motion. On June 8, 2006, the Court granted ANP's motion, and Maritz filed its First Amended Answer to Amended Complaint, With Affirmative Defenses and Counterclaim (D.I. 198) on July 19, 2006. In its motion to strike, ANP now complains that Maritz should not be permitted to assert certain defenses and counterclaims (D.I. 213). As set forth in more detail below, ANP misstates the law applicable in this district and feigns surprise and purported prejudice where none exist. The motion to strike should be denied.

## II.    SUMMARY OF ARGUMENT

1.    Through its motion to strike, ANP attempts to restrict proof of the ongoing course of illicit conduct that permeates the Storey patents and spills over into the current litigation. ANP's arguments are misleading in numerous respects, including the following:

> • ANP wrongly suggests that the unclean hands and misuse theories are new to the case. In fact, these theories were first introduced when Maritz filed an amended answer and counterclaim on September 15, 2005 (D.I. 61). ANP has been on notice of these theories for nearly a year, and had full opportunity to take discovery on them.

> • Contrary to ANP's assertions, there is nothing new or surprising about Maritz's inequitable conduct allegations in Maritz's first amended answer and counterclaim (D.I. 198). These allegations were tailored to meet ANP's newly amended complaint, which was filed (over Maritz's

1

opposition) on June 8, 2006 (D.I. 173), and which limited ANP's
infringement allegations to U.S. Pat. No. 6,009,412 ("the '412 patent").

- Maritz's inequitable conduct allegations concerning the '412 patent are
not new. Such allegations are premised (a) in the first instance on
evidence developed in the hotly-contested Netcentives litigation[1]
occurring from 1999-2001, of which plaintiff[2] has been all-too-aware
since acquiring the Storey patents, and evidence of which was *in the files
of plaintiff and produced by it* in this case, (b) on discovery taken in this
case from witnesses associated with plaintiff, with whom plaintiff's
counsel worked closely in preparing and defending depositions, and (c) on
the content of the patent file histories themselves. Moreover, Maritz's
earlier (September 15, 2005) pleading contained much detail which is
reiterated in the present answer and counterclaim.

- ANP's claim that discovery has long been closed ignores the fact that
ANP continued to take deposition discovery *into late July, 2006, after* the
filing of Maritz's first amended answer and counterclaim (D.I. 198).

2.    In this District, the rule is "well-established" that a defendant may include

counterclaims in its answer to an amended complaint. Maritz was not required to seek

leave of Court under Fed.R.Civ.P. 15(a) before filing the First Amended Answer to

Amended Complaint, with Affirmative Defenses and Counterclaim (D.I. 198).

---

[1] The Netcentives cases were all resolved before the inequitable conduct, inventorship,
ownership, or invalidity issues were tried to conclusion or adjudicated through summary
judgment.

[2] The term "plaintiff" is sometimes used to refer to the original plaintiff in this case, Trilegiant
Loyalty Solutions, which while this case was pending changed its name to Affinion Loyalty
Solutions. The Court will recall that the patent rights were sold by Affinion Loyalty to the
current plaintiff, although the Court was not timely advised of this fact by the plaintiff. *See* D.I.
81.

3.     In characterizing Maritz's "on information and belief" allegations as having "no factual support," ANP ignores the highly-detailed factual basis spanning over 20 pages of the answer. "On information and belief" is used by Maritz with respect to inferences that may be drawn from the factual allegations[3] and/or as to information upon which plaintiff invoked the attorney-client privilege (including that of Netcentives, which it has no standing to assert).[4]

4.     Motions to strike under Fed.R.Civ.P. 12(f) are disfavored. The Court should construe all facts in favor of the nonmoving party and deny the motion if the defenses are sufficient under the law.   In short, ANP's claims of prejudice and surprise fall entirely flat. Maritz was entitled to, and did, frame its answer and counterclaim to respond to the late-filed amended complaint. And, as will be shown at trial, the evidence will show a web of deceit, concealment, and commercial misbehavior that renders the '412 patent unenforceable as a matter of equity.

---

[3] The Federal Circuit has repeatedly instructed that the intent to deceive requirement of inequitable conduct law can be proved inferentially, and that in fact direct evidence of such intent is rarely available. *E.g., Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997); *Bristol-Meyers v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003).

[4] In aggressively invoking the privilege in this case, plaintiff has walled itself off from offering explanations of good faith that would rebut the overwhelming evidence of an ongoing intent to deceive the USPTO. *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 222-24 (3d Cir. 2006).

### III.   ARGUMENT

### A.   Maritz Is Entitled to File Its Answer and Counterclaim as a Matter of Right

In this District, the rule is "well-established" that a defendant may include counterclaims in its answer to an amended complaint. *E.I. DuPont de Nemours & Co. v. Millenium Chemicals, Inc.*, 1999 WL 615164, at *4 (D. Del. August 2, 1999) (Exhibit 3) ("Courts in this district have reasoned that, because the amended pleading relates back to the date of the original pleading, the amending pleader 'can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading'") (citing *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D. Del. 1970)).

Neither case cited by ANP is from this District, and neither changes the well-established rule applicable here. Moreover, the Third Circuit's decision in *Owens-Illinois, Inc. v. Lake Shore Land Company, Inc.*, 610 F.2d 1185, 1188 (3d Cir. 1979) did not concern a counterclaim filed in response to an amended complaint under Fed.R.Civ.P. 15(a). Rather, in *Owens-Illinois*, the lower court dismissed a counterclaim filed in response to a supplemental pleading under Fed.R.Civ.P. 15(d). The Third Circuit cited and did not overrule or criticize the holding in *Joseph Bancroft*, which applied to counterclaims filed in response to an amended complaint, such as the case here.

ANP chose to reshape the litigation late in the case, moving to amend the complaint on March 8, 2006. Its request was granted, over objection of Maritz, effective June 8, 2006 (D.I. 173). Maritz pled in response to plaintiff's allegations as amended, with an answer, affirmative defenses and counterclaims tailored to respond to the new

complaint (D.I. 198). Maritz was not required to seek leave under Fed.R.Civ.P. 15(a) before bringing its counterclaims. ANP's motion to strike should be denied.

**B.    Unclean Hands and Patent Misuse Have Been Matters of Defense in this Case For Nearly a Year**

In its amended answer and counterclaim filed September 15, 2005, Maritz pled patent misuse as a counterclaim, and unclean hands as an affirmative defense. D.I. 61 at 4, 23.[5] Nowhere in ANP's moving papers is this disclosed to the Court. If the Court reads carefully, it will see that ANP has carefully worded its arguments[6] to work around a basic fact: *ANP has been on notice of these theories of defense for nearly a year, and has had every opportunity to take discovery on them.*

ANP cannot demonstrate any prejudice whatsoever where Maritz has (a) expanded its unclean hands affirmative defense into a counterclaim form, and (b) included its patent misuse counterclaim also as an affirmative defense. ANP's motion to strike should be denied.

**C.    Affinion Feigns Surprise at the Detailed Allegations of Inequitable Conduct, Unclean Hands, and Patent Misuse Appearing in the Answer and Counterclaim**

The idea that Maritz's pleading contains "new" allegations that somehow prejudice ANP is particularly baseless. Though it is difficult to address each of the

---

[5] In the First Amended Answer to Amended Complaint, with Affirmative Defenses and Counterclaim filed July 19, 2006, patent misuse is *also* asserted as an affirmative defense and unclean hands is *also* asserted as a counterclaim (D.I. 198, at pp. 6, 29-30).

[6] For instance, after implying that ANP will be prejudiced if Maritz is permitted to "raise issues beyond the scope of Affinion's Amended Complaint and inject into this action new affirmative defenses, counterclaims, and allegations at this late date" (D.I. 213 at 2), ANP essentially admits that it was on notice of unclean hands and patent misuse as a matter of defense by listing only laches and estoppel as the matters on which it "did not take discovery." *Id.* at 2 - 3.

In the next breath, ANP misleadingly indicates that permitting Maritz to plead a patent misuse affirmative defense, unclean hands counterclaim, and to amend allegations related to unenforceability "would require Affinion to take additional discovery ..." *Id.* at 3.

counterclaim allegations in this response, collectively they concern basic facts long known to plaintiff and its counsel, many of which were first broached in the Netcentives lawsuit in the 1999-2001 timeframe, and reflected in pleadings, other filings, depositions and exhibits from that case maintained in plaintiff's files and provided by plaintiff to Maritz early in the instant litigation. Exhibit 1. Declaration of J. Bennett Clark, ¶ 2.

That none of Maritz's inequitable conduct allegations are particularly "new" to ANP is reflected by several facts. For starters, ANP fails to mention that Maritz's September 15, 2005 amended answer and counterclaim was highly detailed, and put plaintiff on notice of Maritz's contentions. D.I. 61.

Further, the allegations surrounding prosecution of the '870 (parent) patent were hotly contested in the Netcentives lawsuits. Documents were exchanged, depositions taken, and issues relating to inventorship,[7] patent ownership, inequitable conduct and invalidity were very much at issue.[8]  Exhibit 1 at ¶ 3; D.I. 198 at ¶¶ 51-54; D.I. 61 at ¶¶ 73-102.

---

[7] "As a critical requirement for obtaining a patent, inventorship is material." *Perseptive Biosystems v. Pharmacia Biotech*, 225 F.3d 1315, 1321 (Fed. Cir. 2000); Manual of Patent Examining Procedure, § 2001.06 (c) (Exhibit 7) (inventorship disputes are material information for purposes of disclosure to the USPTO), § 2004.

[8] Mr. Storey and/or his original patent attorney failed to disclose to the USPTO that (a) well before the filing of the '870 patent application, Storey and a group of Radisson employees had developed a program very similar to that later claimed by Storey as his alone in the '870 patent and the later Storey patents; (b) the earlier program (known as "Look to Book") was the subject of a patent application pending at the time the '870 patent application was filed which, if disclosed, would likely have provoked an interference proceeding; (c) the other Radisson employees should have been listed as co-inventors on the '870 patent application, but instead Storey obtained the rights for himself; and (d) as such, Radisson was the rightful owner of the '870 patent and the subsequent patent rights. Exhibit 1 at ¶ 4.

6

REDACTED

The Netcentives
litigation documents were conveyed to Trilegiant, where evidently they have since
resided, through and including this litigation.  Thus, from the time it purchased the patent
rights in 2001, during the litigation of this lawsuit, and through the present, Trilegiant
(and now ANP) have been all too aware of the serious allegations of nondisclosure and
misstatements swirling around the Storey patents.  Exhibit 1 at ¶ 5; *see also* D.I. 198 at ¶¶
51-54, 61-64; D.I. 61 at ¶¶ 73-102.

Moreover, the Netcentives lawsuits involved scrutiny of the prosecution of the
'412 patent in suit.  Once Netcentives obtained the rights from Thomas Storey, it
employed a seldom-used device -- the "petition to make special" -- to rush the second
patent through prosecution, making a superficial disclosure of the Look to Book patent
and failing to point out the earlier non-disclosures.  This activity was scrutinized in the
earlier Netcentives litigation, including for example through the depositions of
prosecuting attorneys John Stattler and Phillip Albert.  (The prosecutor of the '870 patent,
Joseph Bach, was also deposed).  Mr. Storey and several of the Look to Book co-

---

[9] Trilegiant Corp. was the parent of original plaintiff Trilegiant Loyalty Solutions.

inventors were deposed as well. Many of the salient facts have thus been on the table for years (though continually suppressed from the USPTO). Exhibit 1 at ¶ 6. D.I. 198 at ¶¶ 41-49, 51-56, 61-64; D.I. 61 at ¶¶ 73-102.

In the instant case, Messrs. Storey, Bach and Stattler were each deposed. The events surrounding prosecution of the '870 and '412 patents were explored at length, with counsel for ANP present and participating in each deposition. Exhibits used in the questioning were matters from the prosecution history, as well as exhibits produced to Maritz *by plaintiff*, from the files it controls. ANP's counsel represented Stattler and Storey (in fact, Storey is being paid to cooperate with ANP in connection with this case), and was very conversant with the evidence of inequitable conduct. Exhibit 1 at ¶ 7. Against this backdrop, ANP is not and cannot be surprised at allegations concerning the '870 and '412 patents.

ANP (or its predecessor), and their outside counsel are also intimately familiar with post-'412 issuance events, because they orchestrated them. The flagrant failure to disclose the Netcentives' litigation -- and allegations concerning inventorship, ownership, fraud, and invalidity -- to the USPTO during ongoing prosecution of Storey patent rights is manifest inequitable conduct.[10] The eleventh hour decision to remove the '012 patent from this suit is an admission of such. The simultaneous decision to remove the '870 patent from the case is a similar acknowledgment that it was obtained by fraud. For present purposes, the salient point is: as the entity and counsel orchestrating this course of conduct, plaintiff (or its predecessor) and counsel are plainly aware of the underlying

---

[10] Manual of Patent Examining Procedure, § 2001.06 (c) (Exhibit 7); *Critikon Inc., supra,* 120 F.3d at 1259. Litigation is material *per se* to patentability. *Daimlerchrysler AG v. Feuling Advanced Technology, Inc.,* 276 F. Supp. 2d 1054, 1063 (S.D. Cal. 2003).

events.  There is no surprise ... rather, there is acute awareness.  D.I. 198 at ¶¶ 41-49, 51-

56; D.I. 61 at ¶¶ 73-102.

Finally, the decision to menace the marketplace with the three issued Storey

patents, knowing two to be inequitably obtained, is part of Maritz's counterclaims here.

So, too, is the decision to bring this suit alleging infringement of all three patents before

ducking on the first and third of these, but only after Maritz expended considerable sums

disproving infringement, demonstrating invalidity, and building the inequitable conduct,

unclean hands, and patent misuse cases with respect to the now discarded '870 and '012

patents.  Incredibly, these matters were suppressed from the USPTO even after this

lawsuit commenced, during prosecution of the fourth application in the Storey chain.[11]

D.I. 198 at ¶ 69.[12]

These activities are intimately known to ANP, its predecessor, and counsel,

because they are **their** activities.

---

[11]  That patent application was prosecuted from April, 2003 to March, 2006, and was handled by
Trilegiant's (now ANP's) counsel Rothwell Figg.  (That firm has also handled assertion of the
Storey patents against the trade and is the lead firm in the current litigation.)  Thus, the
withholding of highly pertinent material from the USPTO was ongoing for over twenty months
*after* this suit was commenced.  About five months after Maritz filed its amended answer and
counterclaim in September, 2005, and after pursuing the patent application all the way to the
Board of Patent Appeals, ANP successfully obtained a reversal of the examiner's rejection, ...
*only to abandon the application ... never having made disclosure to the USPTO of the material
information that surfaced during the Netcentives litigation.*  Exhibit 1 at ¶ 8.

[12]  The consistent failure of the patent applicants and their attorneys to advise the USPTO of past
misconduct further demonstrates a course of illicit conduct.  *See Rohm & Haas Co. v. Crystal
Chemical Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983) (setting forth steps necessary to cure earlier
inequitable conduct); *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 596-97 (D. Del.
2006).

**D.    Events Occurring After Issuance of the '412 Patent Are Relevant to Maritz's Defenses and Counterclaims**

ANP effectively concedes that events prior to the '412 patent's issuance on December 28, 1999, are relevant to Maritz's defenses and counterclaims. D.I. 213 at 4-8; *see eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 595 (D. Del. 2006) ("Inequitable conduct during the prosecution of a patent application can therefore render unenforceable not only the claims of that patent, but claims that issue from related applications as well").

ANP argues that later events, however, cannot conceivably be relevant to any of Maritz's allegations.[13] This is not correct.

Unclean hands is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245-6 (1933). Unclean hands is an equitable defense that can be found both with respect to withholding information from the USPTO and with respect to (mis)conduct in litigation. *See Precision Instrument Mfg. Co. v. Automatic Maintenance Machinery Co.*, 324 U.S. 806, 816 (1945) (unclean hands found where "[t]he history of the patents and contracts at issue is steeped in perjury and undisclosed knowledge of perjury"); *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) (unclean hands can be found both with respect to withholding information from the Patent Office and with respect to conduct in litigation).

As to misuse, "[A] finding of misuse is precluded ... *only if the patent infringement suit is brought in good faith.*" *In re Indep. Serv. Org. Antitrust Litig.*, 964

---

[13]  ANP's assertions are undermined by its request to strike dozens of "new allegations ... *regarding the enforceability of the '412 patent.*" D.I. 213 at 4 (emphasis supplied). This admission defeats any notion that such paragraphs are irrelevant to the issues in suit.

F. Supp. 1479, 1484 (D. Kan. 1997), *citing Glaverbel Societe Anonyme v. Northlake Marketing*, 45 F.3d 1550, 1558-59 (Fed. Cir. 1995) (emphasis supplied). Misuse is established upon contrary evidence – *i.e.*, that suit was brought or maintained in bad faith. *See Glaverbel*, 45 F.3d at 1558 (citing precedent to the effect that suit brought in bad faith and for improper purpose may constitute patent misuse); *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("[I]t is not patent misuse to bring suit to enforce patent rights *not fraudulently obtained*") (emphasis supplied); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709 (Fed. Cir. 1992) ("[A] patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers").[14] *See also, McKesson Information Solutions, LLC v. The Trizetto Group, Inc.*, 2005 WL 914776 at *1-2 (D. Del. 2005) (Exhibit 5) (while noting that such motions are "disfavored," court denied motion to strike affirmative defense of patent misuse which alleged that plaintiff had attempted to enforce a patent it "should reasonably know is invalid and not infringed").

Events occurring after issuance of the '412 patent plainly relate to Maritz's equitable allegations. We believe that this Court, or the Federal Circuit if it comes to that, will conclude that the misconduct permeating these patents, through and including this litigation, impacts ANP's right to seek to enforce the '412 patent, as a matter of equity.

---

[14] *Cf., Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("Federal precedent is that communication to possible infringers concerning patent rights is not improper if the patent holder has a good faith belief in the accuracy of the representations"); *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("[T]o show bad faith in Pingel's activities, Golan must offer clear and convincing evidence that Pingel had no reasonable basis to believe that the [accused product] infringed Pingel's patents or that Pingel knew it was enforcing an ... unenforceable, patent").

E.    **Affinion's "On Information and Belief" Argument Is Frivolous**

ANP argues that Maritz's allegations of inequitable conduct, unclean hands, and patent misuse "on information and belief" should be struck. This argument lacks merit for at least three reasons.

First, ANP has erroneously suggested to this Court that Maritz "has no factual support for th[e] allegations." D.I. 213 at 9. In fact, the allegations have a highly-detailed factual basis, as described in Maritz's Answer and Counterclaim of July 14, 2006 (D.I. 198). Paragraphs 12-73 span over 20 pages of the counterclaim and describe in detail the numerous acts and omissions constituting inequitable conduct, unclean hands, and patent misuse. They are incorporated by reference into Maritz's defenses of inequitable conduct (Paragraph 74), unclean hands (Paragraph 76), and patent misuse (Paragraph 78). Thus, in suggesting to the Court that Maritz "has no factual support for th[e] allegations" (D.I. 213 at 9), ANP has ignored 62 paragraphs and over 20 pages of factual support in the counterclaim.

In fact, Maritz uses the "information and belief" device as a way of pointing out facts that can be inferred from the surrounding circumstances. *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 125 (Fed. Cir. 1997) (the intent to deceive requirement of inequitable conduct law can be proved inferentially). This device was used also for areas where ANP blocked inquiry based on the attorney-client privilege. Having used the privilege as a shield, ANP and its counsel have walled themselves away from offering purported exculpatory explanations for the challenged conduct.

Second, ANP mischaracterizes all four cases it has cited on this issue. In *Akpan v. N.Y. Div. For Youth, Harlem Valley Secure Center*, 1999 U.S. Dist. LEXIS 15366 (S.D.N.Y. 1999) (Exhibit 2), the plaintiff alleged race and national origin discrimination against his employer. *Id.* at *1. The court granted defendant's motion for summary judgment because "plaintiff has provided none of [the] essential facts" and "[n]o other facts [besides differently-treated coworkers' races] are provided that could reasonably support an inference of disparate treatment." *Id.* at *13-14. In contrast to the plaintiff in *Akpan*, Maritz has provided a highly-detailed set of facts that reasonably supports its defenses and counterclaims.

ANP also mischaracterizes, indeed misstates, *Magarl, L.L.C. v. Crane Co.*, 2004 U.S. Dist. LEXIS 24283, at *34-39 (S.D. Ind. 2004) (Exhibit 4). ANP cited only part of *Magarl's* reliance on Seventh Circuit precedent when it summarized the holding as "defendant's inequitable conduct allegations made 'on information and belief' were insufficient." D.I. 213 at 9. The *Magarl* court cited the Seventh Circuit as follows: "Allegations made upon information and belief are insufficient . . . *unless the plaintiff states the grounds for his suspicions*[.]" *Magarl*, 2004 U.S. Dist. LEXIS 24283, at *35 (*emphasis added*). The *Magarl* court rejected defendant's pleadings, not because of defendant's use of the phrase "upon information and belief," but rather because defendant's factual allegations were insufficient and vague. *Id.* at *38. In contrast, Maritz has sufficiently and clearly stated the grounds for its defenses in pages 9-29 of its counterclaim.[15]

---

[15] Further, the *Magarl* court granted plaintiff's judgment on the pleadings without prejudice, allowing defendants "to replead and provide sufficiently particular factual allegations of inequitable conduct." *Id.* at *40.

ANP simply misapplies *Travelers Casualty & Surety Co. v. Jadum Constr., Inc.*, 2004 U.S. Dist. LEXIS 11861, at *6 (D. Mass. 2003) (Exhibit 6). *Travelers Casualty* pertained to an opposition to a motion for summary judgment on damages based on an allegation of bad faith in incurring excessive damages. *Id.* at *5. The defendant's only evidence of bad faith was that plaintiff hired a contractor outside the bidding process and because he was a personal friend. *Id.* at *6. The court held that the "bald assertions" fell short of creating a genuine issue of material fact in the summary judgment proceeding. *Id. Travelers Casualty* is therefore inapposite to the present action, first because the present action is not a summary judgment proceeding for damages pursuant to an indemnity clause (*id.*), and second because 20 pages of factual basis in Maritz's counterclaim do not constitute "bald assertions."

ANP also mischaracterizes *Celpaco, Inc. v. MD Papierfabriken*, 686 F. Supp. 983, 991 (D. Conn. 1988). The *Celpaco* court did not reject plaintiff's fraud pleading merely because "discovery had commenced more than a year earlier," as asserted by ANP. D.I. 213 at 9. In fact, the *Celpaco* court recognized the well-known exception to the heightened pleading requirement of Fed. R. Civ. P. 9(b): when the matters are "peculiarly within the opposing party's knowledge." *Celpaco*, 686 F. Supp. at 991. ANP has conveniently omitted this portion of the *Celpaco* opinion, especially since ANP has created the situation where certain facts are not available because of ANP's repeated refusals to produce documents or permit witnesses to testify by asserting attorney-client privilege.

Finally, ANP has neglected to cite relevant District of Delaware case law regarding the use of "information and belief." Most notably, in *Agere Sys. Guardian*

14

*Corp. v. Proxim Inc.*, 190 F. Supp. 2d 726 (D. Del. 2002), the defendant alleged that "upon information and belief, the . . . patent does not name all of the inventors of the subject matter and such omission was intentional and with the intent to deceive the USPTO." *Id.* at 730. The defendant then listed the individuals that participated in the development of the claimed invention, and also specified prior art not disclosed to the PTO. *Id.* at 730-31. The court held that defendant's pleading sufficiently specified the grounds for its inequitable conduct defense. *Id.* at 734.

ANP's argument that Maritz's defenses "lack any evidentiary support" sorely lacks merit and is unsupported by ANP's citations.

**F.    Affinion's Repeated References to the Close of Discovery Ignores Its Own Activity in This Case**

ANP alludes repeatedly to "the close of discovery in May 2006." We have already pointed out that ANP has long been on notice of the inequitable conduct, unclean hands, and patent misuse theories and had ample opportunity for discovery before that deadline. It bears note, however, that ANP took multiple depositions past the purported May, 2006 discovery cut-off. The last of these occurred on July 28, 2006 ... *after* the filing of Maritz's amended answer and counterclaim was filed (D.I. 198). Exhibit 1 at ¶ 9.

15

G.    **Maritz Should Be Permitted to Proceed with its Laches and**
      **Equitable Estoppel Defenses**

In one aspect, ANP is correct. Prior to the July 14, 2006 amended answer and counterclaim, Maritz had not previously pleaded laches or equitable estoppel defenses in this case. Nevertheless, as discussed in Section III.A., above, Maritz properly can plead new defenses to an amended complaint as a matter of right.

Further, when counsel for the parties discussed ANP's then-imminent filing of its motion for leave to amend the complaint in March, 2006, counsel for Maritz advised counsel for ANP that Maritz might seek to allege a laches defense in a responsive pleading to an amended complaint. Exhibit 1, ¶ 10.

ANP contends it will be prejudiced by the addition of these two equitable defenses. Maritz disagrees. Nevertheless, despite that ANP has already exceeded the number of depositions permitted under the Scheduling Order, Maritz is willing to permit ANP to depose a witness pursuant to Fed.R.Civ.P. 30(b)(6) to outline the allegations of laches and equitable estoppel.

16

## IV.    CONCLUSION

For the foregoing reasons, Affinion's claims of prejudice and surprise lack merit.

Affinion's motion to strike should be denied.

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ

September 13, 2006

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
The Nemours Building
1007 Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

J. Bennett Clark
David W. Harlan
Jennifer E. Hoekel
Marc W. Vander Tuig
Michael J. Hartley
SENNIGER POWERS
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400

Attorneys for Maritz Inc.