IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION NET PATENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-360-JJF |
| | ) | |
| v. | ) | |
| | ) | **PUBLIC REDACTED VERSION** |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF J. BENNETT CLARK IN SUPPORT OF MARITZ'S OPPOSITION TO AFFINION'S MOTION TO STRIKE

I, J. Bennett Clark, declare as follows:

1. I am counsel of record for defendant Maritz Inc.

2. Maritz's counterclaim allegations at issue concern basic facts well-known to plaintiff and its counsel. Many of these facts were unveiled during litigation in which Netcentives was involved in the 1999-2001 timeframe. The following pleadings, which have been maintained in plaintiff's files and were provided by plaintiff to Maritz early in this case, reflect the various lawsuits in which Netcentives was involved:

   a. Complaint For Declaratory and Injunctive Relief filed in the United States District Court for the Northern District of California by Mypoints.com, Inc. against Netcentives on or about March 19, 1999, alleging invalidity of the '870 patent.

   b. Complaint for Declaratory Judgment filed in the United States District Court for the District of Massachusetts by The Sperry and Hutchinson Company, Inc. against Netcentives on or about February 17, 2000, seeking a declaration that the '870 and '412 patents were invalid.

   c. Complaint filed in the United States District Court for the Northern District of California by Netcentives against S&H and Webmiles.com Corp. on or about February 28, 2000, alleging infringement of the '870 and '412 patents.

   d. Complaint filed in the United States District Court for the Northern District of California by Netcentives against Massmedium.com, Inc., TelAmerica Media

Inc., Smart Net Corp., and Pointsurf.com, Inc. on or about March 21, 2000 alleging infringement of the '870 and '412 patents.

    e.    Complaint filed in the United States District Court for the Northern District of California by Netcentives against Beenz.com, Inc., Carlson Companies Inc., Passpoints, Inc., Freeride.com, LLC, and Stario, Inc. on or about July 21, 2000, alleging infringement of the '870 and '412 patents.

    f.    Complaint filed in the United States District Court for the District of Minnesota by Radisson Hotels International, Inc., *et al.* against Netcentives on or about July 28, 2000, alleging invalidity, unenforceability, and incorrect inventorship of the '870 and '412 patents.

    g.    Complaint for Declaratory Judgment filed in the United States District Court for the Northern District of California by S&H against Netcentives on or about February 23, 2001, alleging the '870 patent was invalid and unenforceable based upon Netcentive's and Mr. Storey's failure to disclose the '444 patent and/or its commercial embodiments to the U.S. Patent Office during the prosecution of the '870 patent.

Materials generated in those lawsuits, including depositions, exhibits, documents and court filings, appear to have been maintained in plaintiff's (or its predecessor's) files -- or those of their counsel -- and were produced to Maritz in this case. This information is the source of many of the facts underlying Maritz's counterclaim allegations.

    3.    The allegations surrounding prosecution of the '870 (parent) patent were hotly contested in the Netcentives lawsuits. Questions and allegations relating to inventorship, patent ownership, inequitable conduct and invalidity were very much at issue.

    4.    I have reviewed the prosecution history for U.S. Patent No. 5,774,870. At no time did Mr. Storey and/or his original patent attorney disclose to the USPTO the facts that (a) well before the filing of the '870 patent application, Storey and a group of Radisson employees had developed a program similar to that later claimed by Storey as his alone in the '870 patent and the later Storey patents; and (b) the earlier program matter (known as "Look to Book") was the subject of a patent application pending at the time the '870 patent application was filed.

REDACTED

6. The Netcentives litigation also involved scrutiny of the prosecution of the '412 patent in suit. I have reviewed the prosecution history for U.S. Patent No. 6,009,412. After Netcentives obtained the rights from Thomas Storey, it filed a "petition to make special." In it, Netcentives made a superficial disclosure of the Look to Book patent and failed to point out the earlier non-disclosures. This activity was examined in the Netcentives litigation, including for example through the depositions of prosecuting attorneys John Stattler and Phillip Albert. The prosecutor of the '870 patent, Joseph Bach, was also deposed. Mr. Storey and several of the Look to Book co-inventors were also deposed during the Netcentives litigation.

7. In the instant case, I personally deposed Messrs. Storey, Bach and Stattler. The events surrounding prosecution of the '870 and '412 patents were explored at length, with counsel for ANP present and participating in each deposition. Exhibits used in the questioning were matters from the prosecution history, as well as exhibits produced to Maritz by plaintiff, from the litigation and prosecution files it controls. ANP's counsel represented Stattler and Storey and was very conversant with the evidence of inequitable conduct. Mr. Storey testified that he has a "compensation arrangement" with Affinion (and Trilegiant before that) under which he has been

paid around $20,000. He also indicated that he expects to receive further compensation under this arrangement for his involvement in this case.

8.  The fourth Storey application (Serial No. 10/420,901) was prosecuted from April, 2003 to March, 2006, and was handled by Trilegiant's (now ANP's) counsel Rothwell Figg. The Rothwell Figg firm also handled assertion of the Storey patents against other entities prior to Maritz and is the lead firm in the current litigation. During the prosecution of this application, the substantial material information that came to light during the Netcentives litigation was not disclosed to the Patent Office. Maritz filed its amended answer and counterclaim alleging inequitable conduct, et al. in September, 2005. About five months later, after pursuing the '901 application all the way to the Board of Patent Appeals and successfully reversing the examiner's final rejection, ANP abandoned the application without having disclosed information from the Netcentives litigation.

9.  ANP took depositions after May 12, 2006. The last of these occurred on July 28, 2006.

10. During discussions related to ANP's then-imminent filing of its motion for leave to amend the complaint (which was filed March 8, 2006), I mentioned to counsel for ANP the possibility of alleging a laches defense in response to the amended complaint.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

EXECUTED September 13, 2006.

_____
J. Bennett Clark