LEXSEE 1999 U.S. DIST. LEXIS 15366

**MICHAEL E. AKPAN, Plaintiff,–against–NEW YORK STATE DIVISION FOR YOUTH, HARLEM VALLEY SECURE CENTER, Defendant.**

97 Civ. 9379 (WHP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1999 U.S. Dist. LEXIS 15366*

September 30, 1999, Decided
September 30, 1999, Filed

**DISPOSITION:** [*1] Defendant's motion for summary judgment dismissing the complaint granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a black male of Nigerian decent, asserted claims of race and national origin discrimination against defendant detention center pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e,* et seq.. Defendant moved for summary judgment.

**OVERVIEW:** Defendant detention center fired plaintiff, a black male of Nigerian decent, after receiving numerous instances in which plaintiff failed to follow security procedures, failed to engage students during class, arrived late to work, had unexplained absences, and endangered students' safety. Plaintiff alleged that he was terminated on the basis his race and national origin. Plaintiff asserted claims of race and national origin discrimination against defendant detention center pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e,* et seq., as a result of his termination. The court found that defendant offered a legitimate, non–discriminatory reason for terminating plaintiff's employment. The court was left with defendant's rather compelling proof of their legitimate, non–discriminatory reasons for ending plaintiff's employment, and nothing of substance from plaintiff's side of the ledger to cast doubt on those reasons. Under such circumstances, summary judgment was warranted.

**OUTCOME:** Defendant's motion for summary judgment dismissing the complaint granted because the court was left with defendant's rather compelling proof of their legitimate, non–discriminatory reasons for ending plaintiff's employment, and nothing of substance from plaintiff's side of the ledger to cast doubt on those reasons.

LexisNexis(R) Headnotes

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN1] Summary judgment must be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c).*

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN2] The burden is on the party moving for summary judgment to establish the absence of any genuine issues of material fact, and any ambiguities must be resolved in favor of the non–movant.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN3] The trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue–finding; it does not extend to issue–resolution.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN4] The party seeking summary judgment bears the

initial burden of informing the district court of the basis for its motion and identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. Thus, the opposing party must do more than simply show that there is some metaphysical doubt as to the material facts. Speculative and conclusory allegations are likewise insufficient to meet this burden.

*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN5] Courts must be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

*Labor & Employment Law > Discrimination > National Origin Discrimination > Coverage & Definitions*
[HN6] Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e*, et seq. provides in relevant part, that it shall be unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin. *42 U.S.C.S. § 2000e-2*(a)(1).

*Evidence > Procedural Considerations > Burdens of Proof > Initial Burden of Persuasion*
*Labor & Employment Law > Discrimination*
[HN7] Under the three-part burden shifting framework, the plaintiff initially bears the burden of establishing a prima facie case of discrimination.

*Labor & Employment Law > Discrimination*
[HN8] To establish a prima facie case under Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e*, et seq., the plaintiff must show membership in an age group and/or protected class, qualification for the position, an adverse employment action, and circumstances that give at least minimal support to an inference of discrimination.

*Labor & Employment Law > Discrimination*
[HN9] The burden that the plaintiff must meet in order to defeat summary judgment at a prima facie stage is de minimus.

*Civil Procedure > Summary Judgment > Evidence*
*Labor & Employment Law > Discrimination > Racial Discrimination > Defenses & Exceptions > General Overview*
*Labor & Employment Law > Discrimination > Racial Discrimination > Employment Practices > Discharges*
[HN10] To survive summary judgment, it is incumbent upon plaintiff to offer evidence that defendant's reasons for firing him are false, and that intentional discrimination on the basis of race and national origin were motivating factors.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Labor & Employment Law > Discrimination > Racial Discrimination > Defenses & Exceptions > General Overview*
[HN11] A plaintiff cannot successfully oppose a summary judgment motion in an employment discrimination case through reliance on unsupported assertions.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*
[HN12] To be "similarly situated", the individuals with whom a plaintiff attempts to compare himself must be comparable in all material respects. For instance, they must generally have been subjected to the same standards governing performance evaluation and discipline, have reported to the same supervisor, and have engaged in conduct similar to the plaintiff's.

*Labor & Employment Law > Discrimination > Racial Discrimination > Defenses & Exceptions > General Overview*
[HN13] Where the court is left with defendants' rather compelling proof of their legitimate, non-discriminatory reasons for ending plaintiff's employment, and nothing of substance from plaintiff's side of the ledger to cast doubt on those reasons, summary judgment is warranted.

*Environmental Law > Environmental Justice*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
[HN14] Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e*, et seq. prohibits conduct requiring people to work in a discriminatorily hostile or abusive environment.

*Labor & Employment Law > Discrimination > Racial Discrimination > General Overview*
*Torts > Intentional Torts > Defamation > Defenses > Fair Comment & Opinion*
[HN15] To be actionable, the workplace environment must be both objectively and subjectively offensive, one

that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. Where such claims are based on racist comments or slurs, a plaintiff must show more than a few isolated incidents of racial enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute. The plaintiff must show more than a few isolated incidents of racial enmity; there must be a steady barrage of opprobrious racial comments.

*Environmental Law > Environmental Justice*
*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*
[HN16] Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e*, et seq. does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of race.

**COUNSEL:** Percy W. Briscoe, Esq., Wappingers Falls, New York, for Plaintiff.

Diana L. Carbonell, Esq., Assistant Attorney General, Office of the Attorney General for the State of New York, New York, New York, for Defendant.

**JUDGES:** WILLIAM H. PAULEY III, U.S.D.J.

**OPINIONBY:** WILLIAM H. PAULEY III

**OPINION:**

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff Michael E. Akpan, a black male of Nigerian decent, asserts claims of race and national origin discrimination against New York State Division For Youth, Harlem Valley Secure Center ("Harlem Valley") pursuant to Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. § 2000e*, et seq., as a result of his termination by Harlem Valley. Harlem Valley moves for summary judgment. For the reasons set forth below, Harlem Valley's motion for summary judgment is granted.

Background

Except where otherwise noted, the following facts are undisputed. Harlem Valley is a secure residential center for male juvenile offenders and delinquents under the age of twenty-one. It is the highest level security facility maintained [*2] by the New York State Office of Child and Family Services.

Harlem Valley hired Akpan as a Building Trades Instructor on a probationary basis on November 27, 1995. Akpan has a masters degree in adult education, and has attended technical institutes in Nigeria, England and the United States. The Building Trades Instructor position requires knowledge of carpentry, masonry, electrical wiring and plumbing. (Def.'s 56.1 Stmt. at P 3)

Akpan's direct supervisor was Donald Holmes, the Supervisor of Education. (Holmes Aff. P 2) Holmes' job included overseeing vocational instructors, making sure that facility procedures were followed, and seeing that the instructors' techniques were safe and effective. (Holmes Aff. P 4)

During Akpan's tenure at Harlem Valley, Holmes documented numerous instances in which Akpan failed to follow security procedures, failed to engage students during class, arrived late to work, had unexplained absences, and endangered students' safety. For example, on December 12, 1995, Holmes observed that Akpan allowed an assortment of tools -- including handsaws, screwdrivers, nails and drills -- to remain on the shop floor. This created both a safety hazard, since the students [*3] could injure themselves, and a security hazard, since the students could easily use these tools as weapons. Holmes counseled Akpan about the safety and security hazards these conditions created. (Def.'s 56.1 Stmt. at PP 7-9) Akpan does not deny the incident, but contends that his actions were proper and that other instructers did the same thing. (Pl.'s 56.1 Stmt. at PP 17-22)

On February 15, 1996, Holmes observed that Akpan's classroom floor was littered with wood scraps, loose nails, and pieces of wood with nails protruding from them. (Holmes Aff. P 16) Akpan responds that another instructor left the mess during a previous shift, and that Holmes did not reprimand other instructors for similar conduct. (Akpan Aff. PP 21, 25)

On April 26, 1996, Holmes looked in on Akpan's tool room and found a drill and two measuring tapes on the floor. He also noticed that a pair of wire snips was missing. (Akpan Aff. PP 22-25) The missing tool presented a serious breach of security, since the students could use it as a weapon and as a means of escape. (Def.'s 56.1 Stmt. PP 22-26) Security considerations required that no tool could be removed from a shop area without a supervisor's approval.

The [*4] facility had a procedure for accounting for tools by use of a "shadow" board and tag method. Each tool had a designated space on a board and when a tool was removed, a tag was put in its place. This allowed staff to recognize at a glance if a tool was missing. Akpan allegedly did not use this method of keeping track of the tools in his classroom.

When Holmes asked Akpan the whereabouts of the

wire snips, Akpan explained that he had inadvertently left them in his coat pocket, and that the coat was in his car. (Pl.'s 56.1 Stmt. at P 33; Def.'s 56.1 Stmt. at PP 32-33) Holmes explained that this was against facility policy and that it was imperative for Akpan to use the shadow board and tag method to monitor his tools. Akpan contends that white instructors were careless with their tools, but Holmes only focused on his mistakes. (Pl.'s 56.1 Stmt. P 33)

Holmes also observed that Akpan's work was shoddy and unsafe. For example, Akpan attempted to repair a chair but left a nail bent over an exposed surface. (Def.'s 56.1 Stmt. PP 15-16) On August 13, 1996, Akpan incorrectly rewired the electrical plug of a vacuum cleaner, reversing the neutral and ground connections. (Def.'s 56.1 Stmt. PP [*5] 15-16)

Holmes also alleges that Akpan did not know the names of the tools with which he worked. During one of Akpan's classes, Holmes corrected Akpan's identification of a tool. Akpan claims that he is familiar with his tools and their names, and that Holmes publicly criticized him because of his Nigerian accent. (Pl.'s 56.1 Stmt. P 34)

Holmes also disagreed with Akpan's teaching style. Holmes claims that Akpan would give students incentive points for non-participation. Akpan claims that he encouraged classroom participation, gave students positive reinforcement, and that Holmes was unreceptive to his different teaching style.

Akpan was also late to work on several occasions. As a result, Holmes sent Akpan a memorandum stating that he had to take positive action to assure his timely arrival at work. Holmes also observed that Akpan's lateness was sometimes not reflected on his time sheet, and he directed Akpan to correct his time sheet to reflect his lateness. (Holmes Aff. PP 90-91; Def.'s Exhibit R)

According to Holmes, Akpan also had a personal hygiene problem which caused students and instructors to complain. (Holmes Aff. P 38) Holmes alleges that he talked to Akpan about the [*6] problem on July 17, 1996, but by November 4, 1996, Akpan had not taken any corrective action. Akpan concedes that he may have had personal hygiene problems "on occasion." (Pl.'s 56.1 Stmt. at 41) He claims, however, that "upon information and belief" other instructors had body odor but were not "written up." (Pl.'s 56.1 Stmt. PP 45, 58)

Holmes recommended that Akpan be fired after Akpan allegedly took an unauthorized leave. Akpan disputes that he left the Harlem Valley premises without permission. In any event, the central office of the NYS Division of Youth and the Office of Affirmative Action reviewed and approved Akpan's termination. On December 17, 1996, he was terminated.

Akpan was thereafter instructed to remove his personal belongings from his office. As Akpan approached his office, Holmes followed him to the office door. Akpan removed his keys from his pocket and was holding them when he claims that Holmes grabbed and squeezed his hand, causing a laceration. Holmes denies having had any physical contact with Akpan.

After his termination, Akpan filed a complaint with the N.Y.S. Division of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC [*7] eventually issued a no probable cause determination. Akpan's position was filled by Lamont Cleare, an African-American male. To date, Cleare is still employed at Harlem Valley.

Discussion

A. Summary Judgment Standard

[HN1] Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. [HN2] The burden is on the party moving for summary judgment to establish the absence of any genuine issues of material fact, see *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)*, and any ambiguities must be resolved in favor of the non-movant, see *Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2, 106 S. Ct. 2548, 2556 n.2, 91 L. Ed. 2d 265 (1986)*.

[HN3] "The trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is [*8] confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994)*.

[HN4] The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex, 477 U.S. at 323, 106 S. Ct. at 2553*. If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. Thus, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)*. Speculative and

conclusory allegations are likewise insufficient to meet this burden. See *Francis v. Coughlin, 891 F.2d 43, 47 (2d Cir. 1989)*.

[HN5] Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination [*9] case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)* (quotation omitted); see also *Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998)*.

B. Plaintiff's Claims

Plaintiff alleges that he was terminated on the basis his race and national origin. He also claims, based largely on the incidents described above, that he was subjected to a hostile work environment. In support of the latter claim, plaintiff also alleges that: (1) Holmes encouraged plaintiff's students to misbehave in the classroom and to attack plaintiff physically (Pl's Aff. P 18, 19); (2) consequently, plaintiff was assaulted by a student on one occasion (Pl.'s Aff. PP 76, 77); and (3) Holmes and/or an assistant director for Harlem Valley called plaintiff a "stupid African" on or about December 17, 1995. (Pl.'s Aff. P 12)

C. Disparate Treatment

[HN6] Title VII provides in relevant part, that "it shall be unlawful [*10] for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1)*.

[HN7] Under the three-part burden shifting framework, the plaintiff initially bears the burden of establishing a prima facie case of discrimination. See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Grady v. Affiliated Central, Inc., 130 F.3d 553, 559 (2d Cir. 1997)*. [HN8] To establish a prima facie case under Title VII, the plaintiff must show membership in an age group and/or protected class, qualification for the position, an adverse employment action, and circumstances that give at least minimal support to an inference of discrimination. See *Fagan v. New York State Electric & Gas Corp., 186 F.3d 127, 1999 WL 557016, at *4 (2d Cir. 1999)*. [HN9] "The burden that the plaintiff must meet in order to defeat summary judgment at a prima facie stage is de minimus." *McNulty v. The New York City Dep't of Finance, 45 F. Supp. 2d 296, 298 (S.D.N.Y. 1999)*. [*11]

Once the plaintiff has established a prima facie case, the defendant bears the burden of articulating a legitimate non-discriminatory reason for the adverse employment action. See *McDonnell Douglas, 411 U.S. at 802-4*. If the defendant meets this burden, then the plaintiff must show that the reason offered by the employer is false, and that discrimination was a motivating factor. See *McDonnell Douglas, 411 U.S. at 802-4; Hollander v. American Cyanamid Co. 172 F.3d 192, 199 (2d Cir. 1999)*.

Plaintiff has arguably established a prima facie case of discrimination, notwithstanding that his qualifications for the position he held at Harlem Valley are sharply disputed. Plaintiff has submitted copies of diplomas and certificates that he allegedly received in the field of adult education. At least one of the certifications appears to relate to carpentry skills, though it was issued in 1976. However, plaintiff's burden at this stage is de minimus, and the Court assumes for purposes of this motion that he has met it.

It is apparent that defendant has offered a legitimate, non-discriminatory reason for terminating plaintiff's employment. In fact, [*12] it would be more accurate to say that defendant has offered numerous independent reasons, together with supporting documentation, to support its decision.

[HN10] To survive summary judgment, it is incumbent upon plaintiff to offer evidence that defendant's reasons for firing him are false, and that intentional discrimination on the basis of race and national origin were motivating factors. Given the abundance of evidence presented by defendant in support of its motion, plaintiff faces "a formidable task in endeavoring to show that the asserted reason for [his termination] . . . was a pretext." *Lieberman v. Gant, 630 F.2d 60, 66 (2d Cir. 1980)*.

Plaintiff failed to offer such evidence. Instead, plaintiff makes a litany of charges that merely echo, albeit with slight amplification, the allegations in his complaint. [HN11] A plaintiff cannot successfully oppose a summary judgment motion in an employment discrimination case through reliance on unsupported assertions. See *Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)*. Yet unsupported assertions is all that [*13] plaintiff musters in support of his claims.

For example, the main thrust of plaintiff's opposition is that other instructors at Harlem Valley made the same mistakes that he did, but were not reprimanded or terminated because they were white. In some instances, evidence of disparate treatment among similarly situated employees may provide powerful circumstantial proof of

1999 U.S. Dist. LEXIS 15366, *13

a discriminatory motive.

However, [HN12] to be "similarly situated", the individuals with whom a plaintiff attempts to compare himself must be comparable in all material respects. For instance, they must generally have been subjected to the same standards governing performance evaluation and discipline, have reported to the same supervisor, and have engaged in conduct similar to the plaintiff's. See *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997); *Francis v. Runyon*, 928 F. Supp. 195, 203 (E.D.N.Y. 1996).

Plaintiff has provided none of these essential facts. The following allegation from plaintiff's affidavit is emblematic of the problem:

> Upon information and belief, none of the white employees have been written up or sanctioned in any way for misplacing tools [*14] or [for] small infractions[;] on the contrary the defendants have done any and every thing possible to condemn me and eventually they discharged me.

Pl.'s Aff. P 41. It is far too late in this case for plaintiff to make such allegations "upon information and belief", which is just another way of saying, "I don't have any facts, but I would like it to be true." In other paragraphs of his affidavit, plaintiff identifies the names of three other instructors with whom he apparently worked. See Pl.'s Aff. P 33. However, nothing more is revealed about these individuals apart from their race. No other facts are provided that could reasonably support an inference of disparate treatment.

[HN13] The Court is left with defendants' rather compelling proof of their legitimate, non-discriminatory reasons for ending plaintiff's employment, and nothing of substance from plaintiff's side of the ledger to cast doubt on those reasons. Under such circumstances, summary judgment is warranted. See *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994).

D. Hostile Environment

[HN14] Title VII has been interpreted to prohibit conduct "requiring people to work in a discriminatorily [*15] hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993). [HN15] To be actionable, the workplace environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998). Where such claims are based on racist comments or slurs, a plaintiff must show "more than a few isolated incidents of racial enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute." *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) (citations omitted); see also *Williams v. County of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) ("The plaintiff must show more than a few isolated incidents of racial enmity; there must be a steady barrage of opprobrious racial comments."). (internal quotations and citations omitted).

Given that Akpan alleges only one racially charged comment, the Court finds that he [*16] has not raised a triable issue of fact as to the objective component of his hostile work environment claim. Plaintiff's hostile environment claim also fails because no reasonable jury could conclude that the other "harassment" alleged by plaintiff was "because of" his race. See *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998) [HN16] ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination ... because of ... [race].'") (first alteration in original); *Clerge v. Consolidated Edison*, 1999 U.S. Dist. LEXIS 5811, 1999 WL 239688, *3 (S.D.N.Y. Apr. 23, 1999)(95 Civ. 9072)(97 Civ. 8554 (MBM)).

Conclusion

For these reasons, defendant's motion for summary judgment dismissing the complaint is granted. The Clerk is directed to close this case.

Dated: September 30, 1999

New York, New York

SO ORDERED:

WILLIAM H. PAULEY III

U.S.D.J.