LEXSEE 2004 U.S. DIST. LEXIS 24283

MAGARL, L.L.C. and LAWLER MANUFACTURING CO., INC., Plaintiffs, vs. CRANE CO. and MARK CONTROLS CORPORATION, both d/b/a POWERS PROCESS CONTROLS; and WATTS INDUSTRIES, INC., d/b/a POWERS, a Watts Industries Co., Defendants; MAGARL, L.L.C. and LAWLER MANUFACTURING CO., INC., Plaintiffs, vs. SLOAN VALVE CO., Defendant.

IP 02-0478-C-T/L, 1:03-CV-01255-JDT-TWL

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2004 U.S. Dist. LEXIS 24283

September 29, 2004, Decided

**SUBSEQUENT HISTORY:** Motion granted by, Dismissed without prejudice by *Magarl, L.L.C. v. Crane Co., 2005 U.S. Dist. LEXIS 37938 (S.D. Ind., June 3, 2005)*

**DISPOSITION:** Defendants' motion for judgment on pleadings as to Count III, granted. Motion to compel filed by Defendant Crane Co., granted in part and denied in part. Plaintiffs' motion for judgment on pleadings, granted in part and denied in part. Defendants' motion to bifurcate and to stay, granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants filed a motion for judgment on the pleadings as to Count III of the amended complaint and a motion to compel plaintiffs' responses to its first set of interrogatories. Plaintiffs filed a motion for judgment on the pleadings and a motion to set a Markman hearing in its action against defendants for claims of patent infringement, breach of contract, misappropriation of trade secrets, and federal and state unfair competition.

**OVERVIEW:** Defendants filed a motion, pursuant to *Fed. R. Civ. P. 12(c)*, for judgment on the pleadings as to Count III of the complaint, which alleged patent infringement. The court granted the judgment as a matter of law on the inducement of infringement claim. Defendants also moved, pursuant to *Fed. R. Civ. P. 37(a)*, for an order that directed plaintiffs to supplement their responses to defendants' first set of interrogatories. Addressing Interrogatory No. 1, the court denied the motion to compel because the information supplied sufficiently complied with defendants' requests. The court granted the motions to compel on the remaining interrogatories. Turning to plaintiffs' motion for judgment on the pleadings on a counterclaim for defamation, and for failure to sufficiently allege certain claims, the court denied the motion as to the defamation counterclaim, but granted the motion as to the counterclaims. The dismissal was without prejudice to allow defendants to replead and provide sufficiently particular factual allegations of inequitable conduct, provided they could do so within the parameters of *Fed. R. Civ. P. 11*. The court also granted plaintiffs' request for a Markman hearing.

**OUTCOME:** The court granted defendants' motion for judgment on the pleadings as to Count III, granted in part, and denied in part the motion to compel, and granted plaintiffs' motion to set Markman hearing.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*
*Patent Law > Infringement Actions > Defenses > Marking*
[HN1] A defendant may use a *Fed. R. Civ. P. 12(c)* motion after the pleadings are closed to raise *Fed. R. Civ. P. 12(b)* defenses regarding procedural defects. When used in this manner, the court applies the same standard applicable to a *Fed. R. Civ. P. 12(b)* motion. The court accepts the facts alleged in the complaint in the light most favorable to plaintiffs, and may grant the *Fed. R. Civ. P. 12(c)* motion only when it appears beyond a doubt that the plaintiffs cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*

[HN2] *Fed. R. Civ. P. 33(d)* provides that in responding to interrogatories, a party may refer to its business records, as opposed to providing a narrative, if those records are clearly identified. *Fed. R. Civ. P. 33(d)*.

*Civil Procedure > Pleading & Practice > Pleadings > Answers*
*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
[HN3] It is well established that an answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
[HN4] The party opposing discovery has the burden of showing that interrogatories are overly burdensome.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*
[HN5] There is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions listed in *Fed. R. Civ. P. 9*. Federal judges are forbidden to supplement the federal rules by requiring heightened pleading of claims not listed in *Fed. R. Civ. P. 9*.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN6] A majority of courts have concluded that claims and defenses of inequitable conduct before the U.S. Patent and Trademark Office based on fraud must be pled with particularity and are subject to the heightened pleading requirements of *Fed. R. Civ. P. 9(b)*. Therefore, the "who, what, when, and where" of the alleged inequitable conduct must be pled. The purpose of the particularity requirement is to give the defendant fair notice of the claim so that he can respond.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN7] Allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions.

*Patent Law > Infringement Actions > Burdens of Proof*
[HN8] Decision of the issue of infringement is based on a two-step analysis. First, the meaning and scope of any disputed terms and limiting expressions in the claims are determined as a matter of law. Then the claims as construed are applied to the accused device or method, a question of fact. The United States Court of Appeals for the Federal Circuit has said that the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case.

*Patent Law > Infringement Actions > Claim Interpretation > Scope*
[HN9] A Markman hearing may assist the court with claim construction, particularly if claim terms are complex, technical and/or ambiguous.

*Civil Procedure > Pretrial Matters > Consolidation of Actions*
*Civil Procedure > Pretrial Matters > Separate Trials*
[HN10] *Fed. R. Civ. P. 42(b)* allows bifurcation in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Bifurcation is appropriate if three conditions are satisfied: (1) separate trials would avoid prejudice to a party or promote judicial economy; (2) the decision to bifurcate would not unfairly prejudice the non-moving party; and (3) separate trials would not violate the Seventh Amendment. The party seeking bifurcation has the burden of proving bifurcation is appropriate. Generally, patent cases are considered for separate trials because the issue of liability and damages may be complex, separable, and the trial of the damage issues can be time consuming and expensive. However, there is no presumption that a case should be bifurcated simply because it is a patent case.

**COUNSEL:** [*1] For Magarl, LLC, Plaintiff: Brad R Maurer, Binqham McHale, LLP, Indianapolis, IN; Daniel L Boots, Bingham McHale, Indianapolis, IN; James M Hinshaw, Bingham McHale LLP, Indianapolis, IN; Kandi Kilkelly Hidde, Bingham McHale, Indianapolis, IN; Danford Royce Due, Due Doyle Fanning Ewing & Metzger, Indianapolis, IN; Michael A Swift, Ice Miller, Indianapolis, IN.

For Lawler Manufacturing Co Inc, Plaintiff: Brad R Maurer, Binqham McHale, LLP, Indianapolis, IN; Daniel L Boots, Bingham McHale, Indianapolis, IN; James M Hinshaw, Bingham McHale LLP, Indianapolis, IN; Kandi Kilkelly Hidde, Bingham McHale, Indianapolis, IN; Danford Royce Due, Due Doyle Fanning Ewing & Metzger, Indianapolis, IN; Michael A Swift, Ice Miller, Indianapolis, IN.

For Sloan Valve Company, Defendant: Greg A Small, Krieg Devault, Indianapolis, IN; Linda Joy Cooley, Krieg Devault, LLP, Indianapolis, IN.

For Lawler Manufacturing Co Inc, Counter Defendant: Danford Royce Due, Due Doyle Fanning Ewing & Metzger, Indianapolis, IN; Michael A Swift, Ice Miller, Indianapolis, IN.

For Magarl, LLC, Counter Defendant: Danford Royce Due, Due Doyle Fanning Ewing & Metzger, Indianapolis, IN; Michael A Swift, Ice Miller, [*2] Indianapolis, IN.

For Magarl, LLC, Plaintiff: Danford Due, Due Doyle Pugh Ewing & Metzger, Indianapolis, IN.

For Lawler Manufacturing Co Inc, Plaintiff: Danford Due, Due Doyle Pugh Ewing & Metzger, Indianapolis, IN.

For Crane Co D/B/A Powers Process, Defendant: Cory Brundage (O1), Indianapolis, IN.

For Mark Controls Corporation D/B/A, Defendant: Cory Brundage (O1), Indianapolis, IN.

For Watts Water Technologies Inc, Defendant: Cory Brundage (O1), Indianapolis, IN; John C Englander, Goodwin Procter, Boston, MA; James R Kype, Kirkpatrick & Lockhart, LLP, Pittsburgh, PA.

**JUDGES:** John Daniel Tinder, Judge.

**OPINIONBY:** John Daniel Tinder

**OPINION:**

### ENTRY ON DISPOSITIVE AND OTHER MOTIONS n1

> n1 This Entry is a matter of public record and may be made available to the public on the court's web site, but it is not intended for commercial publication either electronically or in paper form. Although the ruling or rulings in this Entry will govern the case presently before this court, this court does not consider the discussion in this Entry to be sufficiently novel or instructive to justify commercial publication or the subsequent citation of it in other proceedings.

[*3]

This action was commenced in March 2002. The Plaintiffs Magarl, L.L.C. and Lawler Manufacturing Co., Inc. (collectively "Lawler") bring claims of patent infringement, breach of contract, misappropriation of trade secrets, and federal and state unfair competition. This case has four defendants, three different patents, seven accused products, and several counterclaims. Two separate cases were consolidated for all purposes, including trial. The Defendants have responded, in part, by alleging that the patents in issue are invalid because certain of the claims were made obvious or anticipated by prior art in the field of plumbing valves.

This entry addresses the following motions: (1) Defendants Crane Co.'s and Mark Controls Corporation's (collectively "Crane") Motion for Judgment on the Pleadings as to Count III of the Second Amended Complaint (the "Complaint"); (2) Crane's Motion to Compel Plaintiffs' Responses to Its First Set of Interrogatories; (3) Plaintiffs' Motion for Judgment on the Pleadings; (4) Defendants Crane's and Watts Water Technologies, Inc.'s Motion to Bifurcate Liability from Damages and to Stay Discovery on Damages; and (5) Plaintiffs' Motion to Set *Markman* Hearing. [*4]

## I. DISCUSSION

### A. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Crane and Mark Controls (together "Crane") move, pursuant to *Federal Rule of Civil Procedure 12(c)*, for judgment on the pleadings as to Count III of the Complaint, which alleges patent infringement. [HN1] A defendant may use a *Rule 12(c)* motion after the pleadings are closed to raise *Rule 12(b)* defenses regarding procedural defects. *Alexander v. City of Chi., 994 F.2d 333, 336 (7th Cir. 1993)*. When used in this manner, the court applies the same standard applicable to a *Rule 12(b)* motion. *Id.* Crane contends that Lawler has failed to state a claim — a *Rule 12(b)(6)* defense. Thus, the court accepts the facts alleged in the complaint in the light most favorable to the Plaintiffs, *see Guise v. BWM Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004)*, and may grant the *Rule 12(c)* motion "only when it appears beyond a doubt that the plaintiffs cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id.* (quotation omitted).

Count III alleges the following: "Prior to October 2, 2001, Crane [*5] and Mark Controls controlled and/or were doing business as Powers Process Controls . . . [,] designed and manufactured thermostatic mixing valves for personal safety and process control applications . . . [and] also manufactured control valves" (Compl. P 8) and "Watts . . . acquired Powers Process on or about October 2, 2001, from Crane and/or Mark Controls." (*Id.* P 12.)

Magarl is the owner of *U.S. Patent No. 6,315,210* which issued on November 13, 2001 ("the *210 Patent*"). Magarl licensed the *210 Patent* to Lawler. (Compl. P 57.) "Crane had knowledge of the pending subject matter of the Lawler *210 Patent* and . . . its impending issuance, yet . . . made, used and marketed products, that *upon issuance of the 210 patent*, infringed the *210 patent*." (*Id.* P 59.) "Crane . . . actively induced Watts to infringe the *210 patent* during the time of the acquisition and sale of Powers and the related negotiations." (*Id.* P 60.) "Beginning in October of 2001, Watts . . . by and through Powers . . . [has] manufactured, advertised, and sold the HydroGuard *, Hi/Lo and ES Series valves." (*Id.* P 61.)

Count III alleges that Crane actively induced infringement of the [*6] *210 Patent* by Watts. *35 U.S.C. § 271(b)* provides: "Whoever actively induces infringement of a patent shall be liable as an infringer." As a matter of law, however, there can be no liability for acts of inducement which were taken before the issuance of the patent. *Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1196 (Fed. Cir. 1996)* (holding that "as a matter of law *§ 271(b)* does not reach actions taken before issuance of the adverse patent"). Contrary to Lawler's view, this is bright line rule which applies even if the defendant was aware that the patent was about to issue and intended that it would be infringed. *Id.; National Presto* does not recognize an exception for "particularly egregious actions." The cases cited by Lawler which pre-date *National Presto* are no longer good law as to whether pre-issuance activity can sustain an infringement claim.

Count III alleges inducement of infringement against Crane solely on the basis of acts which took place "during the time of the acquisition and sale of Powers and the related negotiations" which sale occurred "on or about October 2, 2001," which was before the *210 patent* issued [*7] on November 13, 2001. Thus, even assuming that all of the Complaint's allegations are true, Count III fails to state a claim of inducement of infringement against Crane.

In response to Crane's motion, Lawler requested leave to submit additional factual allegations, or alternatively, to supplement its allegations regarding the inducement of infringement. Lawler asserts that the court has discretion to defer ruling on the motion until trial and it would be premature to grant judgment until the full scope and timing of Crane's alleged wrongful activity is known. Given the Complaint's allegation of when Watts acquired Powers Process (Crane) and the *210 patent* issued, the court can discern no additional factual allegations not inconsistent with those already pled which would allow Lawler to state a claim against Crane in Count III. Likewise, the court can conceive of no additional facts which could be uncovered through discovery which would be consistent with the aforementioned allegations and would warrant the denial of the motion for judgment on the pleadings. Accordingly, Crane will be **GRANTED** judgment as a matter of law on the inducement of infringement claim in Count III of [*8] the Complaint.

### B. MOTION TO COMPEL

Crane moves, pursuant to *Rule 37(a)*, for an order directing Lawler to supplement their responses to Crane's First Set of Interrogatories. According to Crane, there are four basic shortcomings in the Plaintiffs' Second Amended Responses to Crane's First Set of Interrogatories: (1) the Plaintiffs have misused *Rule 33(d)* in responding to Interrogatories Nos. 1-3 and 8-12 by identifying a large number of documents with little or no guidance as to how the documents answer the interrogatories; (2) they have failed to identify where their Confidential Information was misappropriated by the Defendants and incorporated into Defendants' products; (3) they have refused to completely describe the tests they claim to have performed to support their false advertising claims; and (4) they have refused to disclose any information concerning Kevin Kline, an inventor listed as the sole or joint inventor on the patents in suit, on the grounds that such information is beyond the scope of discovery.

#### 1. Interrogatory Nos. 1-3, 8-9 and 12

[HN2] *Federal Rule of Civil Procedure 33(d)* provides that in responding to interrogatories, a party may refer to its business [*9] records, as opposed to providing a narrative, if those records are clearly identified. *Fed. R. Civ. P. 33(d)*. Crane contends that Lawler has misused *Rule 33(d)* in failing to specifically identify where in each identified document the answers to the interrogatories may be found. Crane represents that many of the documents identified by Lawler "are impossible to decipher because they consist of notes and/or drawings with no explanation of their content or how that content relates to the interrogatory." (Mem. Supp. Mot. Compel at 4.)

Interrogatory No. 1 asks for identification of the "discussions" and "negotiations" referenced in paragraphs 17-20 and 27-29 of the Complaint and each document and communication relating thereto. Crane argues that the documents identified in Lawler's response does not mention Powers or identify any communication with Powers, or the specific negotiations or discussions referred to in the Complaint. The Interrogatory does not ask for documents mentioning or identifying Powers or these other matters. Rather, it asks for documents "relating" to the discussions and negotiations referenced in specific paragraphs of the Complaint. The Plaintiffs' Third Amended

[*10] Response which explains in very general terms what the identified documents are does give Crane guidance as to how the documents relate to the discussions and negotiations.

Crane complains that Lawler has not linked the documents to their narrative responses, but the Interrogatory does not require this. Crane also complains that the answer leaves open the question of whether all or some of the documents provided were responsive. The problem may lie with the phrasing of the Interrogatory which asks for the identity of each document "relating" to the discussions and negotiations, but does not ask Lawler to point out which part or parts of the document so relate. Nothing in this entry precludes Crane from asking at depositions more specific questions about the documents produced in response to this interrogatory. The Plaintiffs have not engaged in a "document dump" as suggested by Crane. Instead, they have identified the specific documents claimed to be responsive to this interrogatory. Thus, the court is puzzled by Crane's claim that the reference to over 1,300 pages of documents is "unexplained." The motion to compel is **DENIED** as to Interrogatory No. 1.

Interrogatory No. 2 states [*11] in part: "Identify with particularity each item of information' referenced in paragraph 20 of the . . . Complaint, and state whether you contend that each such item of information' was, when obtained by any of the Defendants, a trade secret or confidential information[.]" Paragraph 20 states that "As part of these negotiations [concerning Crane's potential acquisition of Lawler], and prior to Lawler's decline of Crane's acquisition proposal, Crane obtained information about Lawler from Lawler as part of its due diligence review process." (Compl. PP 19-20.) In responding to the Interrogatory, the Plaintiffs made an objection; incorporated by reference their response to Interrogatory No. 1; identified information which was responsive, but did not identify all responsive information (Resp. to Interrog. No. 2 ("By way of example, such information included, but is not limited to, the following. . . .")), and invoked *Rule 33(d)*, referring to documents by Bates number said to be responsive.

Unlike Interrogatory No. 1, Interrogatory No. 2 does not ask for the identity of documents, but asks for identification *with particularity* of items of information. Crane represents that it cannot [*12] know what information in the documents constituted the "information" referenced in paragraph 20 of the Complaint, or what information in the documents the Plaintiffs contend was a trade secret or confidential information.

The court finds that Lawler's response is inadequate. First, the incorporation by reference of the response to Interrogatory No. 1 is improper. *See Fed. R. Civ. P. 33(b)(1)* ("Each interrogatory shall be answered separately[.]"). Further,

> [HN3] It is well established that an answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.

*Scaife v. Boenne, 191 F.R.D. 590, 594 (N.D. Ind. 2000)* (quotation omitted). Also, the Third Amended Responses are somewhat cryptic. For example, Lawler states that documents LM-07593-07637 "are engineering documents and notes containing design, development, and costing information that were discussed with or provided [*13] to Crane in 1996." (Third Am. Resp. Interrog. No. 1.) The response, however, does not identify what information contained within the documents was obtained by Crane. It could be that Crane obtained all, some, or just one piece of information contained within the documents. The response that a document is "depicting technology that was discussed with and/or provided to Crane in 1996" is also insufficient as it fails to specify *what* information contained in the document was obtained by Crane. Again, only some or all of the technology depicted in the document could have been obtained by Crane. Thus, the court finds the motion to compel should be **GRANTED** as to Interrogatory No. 2.

Interrogatory No. 3 seeks the identity of all persons except Lawler or Magarl who have knowledge of each item of "information" identified in response to Interrogatory No. 2, the date each person obtained such knowledge and whether each person was and is obligated not to disclose the information to third parties. In responding, Plaintiffs incorporated by reference their responses to Interrogatory Nos. 1 and 2. This incorporation is an improper response. *See Fed. R. Civ. P. 33(b)(1); Scaife, 191 F.R.D. at 594.* [*14] Thus, the Plaintiffs' argument that the answers to Interrogatory Nos. 1, 2 and 3 when read together respond to Interrogatory No. 3 is unpersuasive.

Further, though there may be some overlap in the appropriate responses to these other interrogatories and Interrogatory No. 3, the interrogatories seek separate types of information. The documents referenced in response to Interrogatory Nos. 1 and 2 do not seem to be responsive to Interrogatory No. 3, which asks for the identify of "persons". The Plaintiffs' answer does identify a number of persons and states they were obligated not to

disclose the information, but the answer does not identify which persons received which particular item of information. Thus, the answer is incomplete.

Lawler's response brief states that they cannot further supplement their response to Interrogatory No. 3 and have provided the best answer they can based on the information known. A statement in a brief is not a proper answer to interrogatory. *See Fed. R. Civ. P. 33(b)(1) and (2)* (requiring answers to be under oath and signed by the person making them). Therefore the motion is **GRANTED** as to Interrogatory No. 3.

Interrogatory No. 8 seeks identification [*15] of each of the valves referenced in paragraphs 27 and 28 of the Complaint, and for each valve, the number of units of the product sold, revenue and the profit from the sales of the product. In response, the Plaintiffs incorporated by reference their responses to Interrogatory Nos. 1 and 2 and identified the Lawler 911 Series valves, hi/lo valves, and thermostatic mixing control valves. With respect to sales, revenue and profits, they invoked *Rule 33(d)* and identified documents by Bates number which were allegedly responsive to the interrogatory. Crane contends that this use of *Rule 33(d)* is inappropriate as it is unable to tell whether the documents specified in response to Interrogatory Nos. 1 and 2 identify any products other than those listed by Lawler in response to Interrogatory No. 8. The Plaintiffs respond that they have supplemented their response by identifying the sub-set of documents which relate to the requested financial information.

The Plaintiffs' responses are confusing to the court. The Second Amended Response, identifies a number of documents which are not identified in the sub-set of documents contained in the Third Amended Responses, for example, LM 07925-07977, 09112-09199, 13262-13269. From [*16] the several responses, the court is unable to understand whether the Plaintiffs have amended their interrogatory response as to no longer include documents such as these in their list of responsive documents. This same problem is presented by the responses to Interrogatory No. 9. Presumably, Crane faces the same difficulty as well. Furthermore, the incorporation of the responses to Interrogatory Nos. 1 and 2 is improper. *See Scaife v. Boenne, 191 F.R.D. at 594*. Therefore, the motion to compel is **GRANTED** as to Interrogatory Nos. 8 and 9.

Interrogatory No. 12 states:

> Identify each specific item of "information regarding the design, development, and manufacture of Lawler's thermostatic mixing valve and hi/lo valves . . . that constitutes trade secret' information . . . referred to in paragraph 79" of the Complaint and "any other trade secret Lawler or Magarl claims it disclosed to Crane or Watts at any time.

Lawler objected to this as duplicative of Interrogatory Nos. 1, 2, 3, 4 and 5, and they incorporated by reference their responses to those interrogatories. The court's reading of these interrogatories leaves it with the conclusion that it is not [*17] wholly duplicative, however.

Paragraph 79 of the Complaint alleges what is quoted in the interrogatory as well as: "This trade secret information included, but is not limited to, the Confidential Information that was provided to Crane by Lawler in 1996 pursuant to the terms of the Confidentiality Agreement." (Compl. P 79.) The "Confidential Information" is defined in paragraph 20 of the Complaint. Interrogatory Nos. 1 through 5 apparently relate to the "Confidential Information". Thus, given the "included, but is not limited to" language, the trade secret information alleged in paragraph 79 must include some information other than the Confidential Information and other than the information which is the subject of Interrogatory Nos. 1 through 5. So, the answer to Interrogatory No. 12 seems incomplete. Even if the Interrogatory were duplicative, it is improper to incorporate by reference answers to other interrogatories anyway. *See Scaife, 191 F.R.D. at 594*. The motion to compel is **GRANTED** as to Interrogatory No. 12.

**2. Interrogatory Nos. 10 and 11**

Interrogatory No. 10 seeks the basis for the allegations in the Complaint that any Defendant copied, used [*18] or misappropriated any trade secret or confidential information of Lawler or Magarl. Interrogatory No. 11 asks for identification of "each of the important and material aspects of the Confidential Information' referred to in paragraph 35 of the" Complaint, which alleges that Crane's valves incorporate such aspects.

The Plaintiffs objected to these, stating that expert witness testimony likely will be necessary to fully answer, and that the requested information is protected by work product, anticipation of litigation, and trial preparation privileges. Lawler continued by stating that the Interrogatories could be answered "in part" by referring to their Claim Infringement Charts, by referring to the prototype and technical drawings provided to Powers by Lawler in about 1996, and by incorporating their responses to Interrogatory Nos. 1-5, specifically identifying various documents.

Expert testimony may provide a more complete answer to these Interrogatory, and, the Plaintiffs have a duty to seasonably supplement their responses to these interrogatories. *Fed. R. Civ. P. 26(e)*. Presumably, how-

ever, Lawler has some factual basis for alleging that the Defendants copied, used or misappropriated [*19] a trade secret or confidential information and that Crane's valves incorporate "important and material aspects of the Confidential Information" obtained from Lawler. The Plaintiffs' answers to Interrogatory Nos. 10 and 11 improperly refer to the Plaintiffs' claim infringement charts and other documents. *E.g., Scaife v. Boenne, 191 F.R.D. 590, 594 (N.D. Ind. 2000)* ("It is well established that an answer to an interrogatory . . . should not refer to . . . or other documents, or to other interrogatories") (quotation omitted). Even if the claim charts can answer the interrogatories, Lawler's response indicates that they do so only "in part." Moreover, the two interrogatories ask for arguably different answers; No. 11 specifically requests identification of "important and material aspects of the Confidential Information," whereas, No. 10 is more general.

Crane argues that the identification of public documents undermines the claim that the information is a trade secret. In answering Interrogatory No. 2 (which answer is incorporated by reference into the answers to Nos. 10 and 11), Lawler stated that they considered all of the information identified in that Interrogatory [*20] to be trade secrets at the time it was provided to Powers. This suggests that the question is not necessarily whether the information is considered a trade secret today but whether it was considered a trade secret at the time it was provided to Crane. On the other hand, the Complaint defines "Confidential Information" as used in paragraph 35 and throughout the Complaint as information that "was and is confidential, proprietary, commercially sensitive, and/or trade secrets." (Compl. P 20) (emphasis added). All of this leads to the conclusion that the answers to the Interrogatories are confusing.

The incorporation by reference to the responses to Interrogatory Nos. 1, 2, 3, 4, and 5 is also problematic. While there is some overlap between No. 2 and Nos. 10 and 11, it is more difficult to make the same conclusion about the other referenced interrogatories. This incorporation thus adds to the confusing nature of the response.

Finally, Lawler has not shown that "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served" which is required under *Rule 33(d)*. Instead, Lawyer simply states that they respond [*21] pursuant to the rule and refer to "the prototype and technical drawings provided to Powers" and incorporate by reference their responses to Interrogatory Nos. 1, 2, 3, 4 and 5 and identify numerous documents by Bates number. Without knowing what these documents are, the court cannot conclude that Lawler has shown that the invocation of *Rule 33(d)* is proper. Accordingly, the motion to compel will be **GRANTED** as to Interrogatory Nos. 10 and 11. The Plaintiffs shall provide full and complete answers to these Interrogatories. However, contrary to what Crane suggests (Mem. Supp. Mot. Compel at 9), the Interrogatories do not seem to ask specifically where in the Defendants' products the aspects of Lawler's Confidential Information have been incorporated; nor do they seem to request identification of specific features and structures Plaintiffs claim embody trade secrets. (This is, unless, this information would be responsive to the request for "the basis for the allegations . . . that any Defendants copied" etc. any trade secret or confidential information of a Plaintiff.) Thus, Lawler is not compelled to give this information in responding to the Interrogatories. This does not preclude [*22] Crane from seeking such information through other available discovery.

### 3. Interrogatory No. 16

Counts VI and VII of the Complaint, asserting federal and state unfair competition claims, allege that the Defendants' HydroGuard * Series Emergency Thermostatic Tempering Valves fail to meet ANSI Standard Z358.1-1998. (Compl. PP 89-91.) Interrogatory No. 16 states: "Identify each test or evaluation, conducted by Lawler or others, to determine whether any valve complies with ANSI Standard Z358.1-1988 or any anticipated version of ANSI Standard Z358.1, and each Document or Communication referring thereto."

The Plaintiffs' Second Amended Responses and Third Amended Responses are vague and incomplete, if not evasive. The responses taken together indicate the testing was performed on a "valve test stand" and identify various characteristics and features of the stand and suggest that the "test" was simply running water through the valves at different flow rates, pressure levels and temperatures. The responses, however, are unclear about what tests or evaluations were conducted. Lawler has the duty to "provide true, explicit; responsive, complete and candid answers to the interrogatories. [*23] " *Alexander v. F.B.I., 192 F.R.D. 50, 52 (D.D.C. 2000)*. They have not done so here.

In the Second Amended Response, Lawler objected on the basis of attorney-client, anticipation of litigation and work product privileges. This objection seems aimed at the "or Communication referring thereto" part of the interrogatory. The fact that tests were performed in the presence of counsel by itself is insufficient to warrant protection under the attorney-client or work product privileges. *See Upjohn Co. v. United States, 449 U.S. 383, 395-96, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)*. Presumably, not every communication referring to each test or evaluation would be protected by such privileges. While the Second Amended Response states that "No documents were gen-

erated as a result of such testing" the Third Amended (that is, supplemental) Response states that "Lawler does not regularly record its observations, and did not create any documents relating to its testing of the Powers emergency valves." This supplemental response raises questions regarding irregular recording of observations and documents relating to testing of valves other than the Powers emergency valves, such as the Lawler 911 series [*24] valves. Also, the Interrogatory seeks identification of "each Document . . . referring" to each test or evaluation, not just documents generated as a result of a test.

The Plaintiffs state in their Second Amended Responses that "The requested information and further detail is overly burdensome, and thus is best discovered through depositions." However, [HN4] the party opposing discovery has the burden of showing that interrogatories are overly burdensome, *see Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 543 (N.D. Ind. 1991); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204, 212 (N.D. Ind. 1990)*, and Interrogatory No. 16 does not strike this court as overly burdensome. Thus, the Plaintiffs have not carried their burden by simply stating that the requested information and detail is overly burdensome. Thus, the motion to compel is **GRANTED** as to Interrogatory No. 16.

Crane moves for an order precluding Lawler from relying on information responsive to this Interrogatory as a factual basis for Counts VI and VII in the event that they fail to fully respond. *Rule 37(b)(2)(B)* authorizes the court to make such an order if Lawler [*25] fails to obey the order that they fully answer the interrogatory. Such an order may be appropriate if they fail to comply with this entry, but would be premature now.

#### 4. Interrogatory Nos. 18 and 19

Lastly, the court turns to Interrogatory No. 18 which provides: "Identify each Communication between Lawler or Magarl and Kline that relates to the reasons for or circumstances of Kline's termination from employment or termination as an officer or owner of Lawler or Magarl including Communications taking place before or after such termination" and Interrogatory No. 19 which provides: "Identify each Communication between Lawler and Kline concerning the patents in suit or any application or assignments relating thereto."

The Plaintiffs' Second Amended Response objects to these interrogatories on the grounds that they seek information from Kline's personnel file maintained by Lawler which is confidential and not subject to discovery, and seek information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. The Plaintiffs also object that No. 19 is so broad as to be unduly burdensome. Then, in response to No. 19, they state that [*26] responsive and nonprivileged documents and information would be made available upon entry of a protective order and they identify a number (approximately 1,400 pages according to the Plaintiffs) of documents by Bates number which are included in the set of documents said to be responsive. The Plaintiffs' Third Amended Response supplements the response to Interrogatory No. 18 by stating that when Kline ended his relationship with Lawler, Kline communicated to Bob Eveleigh that he had gone to work for Bradley in order to make more money, and Kline subsequently relinquished his ownership of Lawler stock as part of a settlement of a lawsuit involving Lawler, Bradley, and Kline, but Kline did not communicate to Eveleigh his reasons for doing so.

A protective order has been entered in this case, thus addressing the confidentiality concerns, and, on January 14, 2004, Judge Lawrence ordered that the documents which Lawler submitted for *in camera* review, the letters from Kline which were in his personnel file, be produced subject to the protective order. Crane represents that Kline is identified as the sole inventor or co-inventor of three of the patents which the Plaintiffs assert were [*27] infringed. Based on these representations, it cannot be said that information regarding communications between Lawler or Magarl and Kline relating to the circumstances of the termination of their relationships would not satisfy the requirement of *Rule 26(b)(1)* or there is "no possibility" that the discovery could lead to relevant information. *See Wauchop, 138 F.R.D. at 548*. It is unclear whether the communication made by Kline to Eveleigh mentioned in the Third Amended Response is the only communication responsive to Interrogatory No. 18. If this is the case, the Plaintiffs should so state under oath. *See Fed. R. Civ. P. 33(b)(1)*. If not, then their answer is incomplete, which is tantamount to a failure to answer, *Fed. R. Civ. P. 37(a)(3)* ("For purposes of this subdivision, an evasive or incomplete . . . answer . . . is to be treated as a failure to . . . answer"), and they must completely respond to Interrogatory No. 18 by identifying all such communications.

Turning to Interrogatory No. 19, it seeks information which is discoverable under *Rule 26(b)(1)*. The objection based on confidentiality is addressed through the protective order. Though the interrogatory [*28] is general, it does not strike the court as overly broad, vague and burdensome. In response to the motion to compel, the Plaintiffs attempt to supplement their response to this interrogatory by stating that there are no documents in Mr. Kline's personnel file reflecting any communications relating to any of the patents in suit. That is improper: interrogatory answers must be given under oath. *Fed. R.*

*Civ. P. 33(b)(1)*. The motion to compel is **GRANTED** as to Interrogatory Nos. 18 and 19 and the Plaintiffs shall properly answer these Interrogatories.

Accordingly, the motion to compel is **GRANTED** in part and **DENIED** in part as set forth above. Therefore, Lawler is **ORDERED** to supplement their responses to Crane's First Set of Interrogatories to Plaintiffs as follows:

(1) as to Interrogatory Nos. 2-3 and 8-12, Lawler shall specifically describe or identify how each document identified under *Rule 33(d)* answers the interrogatory in question, or otherwise fully answer the interrogatory in the form of a self-contained written response;

(2) as to Interrogatory Nos. 10 and 11, Lawler shall provide full and complete answers by (a) stating the basis for their allegations [*29] in the Complaint that any of the Defendants copied, used or misappropriated any trade secret or confidential information of Lawler or Magarl and (b) identifying each of the "important and material aspects" of the Confidential Information obtained from Lawler and disclosed under the protection of the Confidentiality Agreement executed by Crane which aspects are incorporated into Crane's valves identified in paragraph 35 of the Complaint; and

(3) as to Interrogatory Nos. 16, 18 and 19, Lawler shall provide a full and complete response to these interrogatories under oath.

Since the motion to compel is granted in part and denied in part, neither Lawler nor Crane will be required to pay the others' expenses. *See Fed. R. Civ. P. 37(a)(4)(C)*.

### C. PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Plaintiffs move for judgment on the pleadings on Watts' Counterclaim for defamation (Count IV) and Watts', Crane's and Mark Controls' Sixth Affirmative Defenses and Counterclaims based on inequitable conduct (Counts I, II and III), for failure to sufficiently allege such claims. The Plaintiffs argue that Watts has failed to identify the specific words alleged to be defamatory and the [*30] circumstances surrounding the defamatory statements, and thus fails to state a claim for defamation. They argue that claims of inequitable conduct must be alleged with particularity under *Rule 9(b) of the Federal Rules of Civil Procedure*, but that was not done so here.

The court applies the same standards as applied with respect to the Defendants' motion for judgment on the pleadings. However, [HN5] "there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions . . . listed in *Rule 9*." *Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002)*. The Seventh Circuit has said: "Federal judges are forbidden to supplement the federal rules by requiring heightened pleading of claims not listed in *Rule 9*." *Thomson v. Washington, 362 F.3d 969, 971 (7th Cir. 2004)*.

Watts' Counterclaim for defamation alleges in relevant part:

> 27. The Counterclaim Defendants have made statements to Watts's customers, potential customers and others in the marketplace in words or substance that Watts violates Federal law by infringing certain patents and by claiming that Watts's products do not meet certain standards promulgated by [*31] the American National Standards Institute.
>
> 28. The Counterclaim Defendants' statements impute to Watts misconduct in Watts's profession or occupation and otherwise injure Watts's business reputation.

(Answer Def. Watts Indus. & Countercl. at 21, PP 27-28.) These allegations sufficiently state a claim for defamation.

Lawler cites old Indiana case law for the proposition that the specific words alleged to be defamatory must be pled, see *Branaman v. Hinkle, 137 Ind. 496, 37 N.E. 546, 548 (Ind. 1894)* and *Small v. Fisher, 2 Ind. App. 426, 28 N.E. 714, 714 (Ind. Ct. App. 1891)*, as well as *Ernst v. Indiana Bell Telephone Co., 475 N.E.2d 351, 354 (Ind. Ct. App. 1985)*, which is a summary judgment rather than dismissal case. Even if Indiana has a heightened pleading standard for defamation claims, Watts' claim is brought in federal court where notice pleading applies. *See Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 926 (7th Cir. 2003)* (even if claim for defamation per se did not meet Illinois's heightened pleading standard it satisfied notice pleading requirements of *Rule 8*). A defamation claim is not subject to *Rule 9(b)*'s pleading requirements. [*32] *Fed. R. Civ. P. 9(b)*.

The Plaintiffs cite *Perry v. Hartz Mountain Corp., 537 F. Supp. 1387 (S.D. Ind. 1982)* (Dillin, J.), for the proposition that Crane must plead the specific circumstances surrounding the defamatory statements. There, the plaintiff alleged that the defendant defamed him by stating he was "fired for stealing." *Id. at 1391*. The court concluded that the allegation failed to state a claim because it did not indicate when, where or to whom the statement was made. The undersigned respectfully disagrees with *Perry's* conclusion. For support, *Perry* cited one case for the rule that "averments of time and place are material elements of a claim." *Id.* (citing *Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954), cert. denied, 348 U.S. 920, 99 L. Ed. 721, 75 S. Ct. 306 (1955)*). *Kincheloe* did not involve a defamation claim. It relied on *Rule 9(f)* and noted that the reason for

2004 U.S. Dist. LEXIS 24283, *32

the rule "is to make ascertainable whether a cause of action is barred by the statute of limitations, and that where so shown a complaint is properly dismissed on motion." *Kincheloe, 214 F.2d at 605*. Thus, courts have recognized that [*33] "*Rule 9(f)* does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." *Abdulaziz v. City of Phila., 2001 U.S. Dist. LEXIS 10156, Civ. A. 00-5672, 2001 WL 818476, at * 4 (E.D. Pa. June 26, 2001)*. This court therefore concludes that a party need not plead the circumstances surrounding the alleged defamatory statements.

Here, the defamation claim does not allege time and place, so *Rule 9(f)* does not come into play. It is noted that Lawler has not suggested the defamation claim is barred by the statute of limitations or any other defense dependent on the time or place. The allegations of defamation sufficiently allege the substance of the statements and generally to whom the statements were made. Though Lawler claims the allegations of the defamation claim are vague and ambiguous, they were able to formulate specific responses to the allegations of defamation. (See Counter-Defs.' Answer & Affirm. Defs. Def. Watts' Answer & Countercl. at 7-8 PP 27-28.) The remaining details can be obtained through discovery. Accordingly, the motion for judgment on the pleadings is **DENIED** as to Watts' Counterclaim [*34] for defamation.

[HN6] A majority of courts have concluded that claims and defenses of inequitable conduct before the U.S. Patent and Trademark Office based on fraud must be pled with particularity and are subject to the heightened pleading requirements of *Rule 9(b)*. See, e.g., *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003)* (affirming district court's decision not to address the alleged inequitable conduct issue because it was not properly raised); *Rentrop v. The Spectranetics Corp., 2004 U.S. Dist. LEXIS 10312, No. 04 CIV. 0101 (PKC), 2004 WL 1243608, * 1-2 (S.D.N.Y. June 4, 2004)*; *Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc., 14 F. Supp. 2d 1046, 1049 (N.D. Ill. 1998)*. Therefore, the "who, what, when, and where" of the alleged inequitable conduct must be pled. *Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992)* (requiring "the identify of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated"). The purpose of the particularity requirement is to give the [*35] defendant fair notice of the claim so that he can respond. E.g., *MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762, 772 (D. Md. 2003)*.

Upon considering the allegations of inequitable conduct, the court finds that they fail to satisfy the particularity requirements of *Rule 9(b)*, even assuming the time, place and manner are sufficiently pled. First, the subject allegations are made "upon information and belief." The Seventh Circuit has indicated: [HN7] "Allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions[.]" *Uni*Quality, 974 F.2d at 924*; accord *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004)* ("allegations of fraud made on information and belief are also subject to the additional requirement that the complaint set[] forth the facts on which the belief is founded"). It is unclear from Watts' and Crane's pleadings upon what facts they base their belief that Lawler committed inequitable conduct.

Moreover, the allegations fail to state with particularity the *content* of the [*36] misrepresentations. Allegations that Lawler misrepresented "the reasons for Kevin Kline's refusal to sign the patent application and declaration," "withheld material prior art in its possession including . . . prior art concerning Watts's Hydroguard(R) 430 valves," "by submitting an unduly burdensome Information Disclosure Statement to the examiner, thereby obscuring the most material prior art" are less particular allegations of content than those found sufficiently specific in the cases upon which the Defendants rely. See *MedImmune, 271 F. Supp. 2d at 772* (identifying "the Ochi publication" as the prior art); *Safe Bed Techs. Co. v. KCI USA, Inc., 2003 U.S. Dist. LEXIS 8514, No. 02 C 0097, 2003 WL 21183948, at * 2 (N.D. Ill. May 20, 2003)* (alleging the failure to disclose prior art as "patents owned . . . including U.S. Patent 4,769,584 . . . . [and] commercially available therapeutic hospital beds, such as Roto Rest, PulmonAir, [and] Paragon Turn and Tilt"); *DataQuill Ltd. v. Handspring, Inc., 2001 U.S. Dist. LEXIS 15832, No. 01 C 4635, 2001 WL 1183290, at * 3 (N.D. Ill. Oct. 4, 2001)* (allegations sufficient where they identified two types of prior art as a particular product and particular [*37] patent); *In re Eli Lilly & Co., Prozac Prods. Liability Litig., 789 F. Supp. 1448, 1456-57 (S.D. Ind. 1992)* (applying a relaxed standard and finding the pleading sufficient where the plaintiffs alleged the content of the false representation as: "Defendants . . . falsely . . . represented . . . that PROZAC was a drug that had been tested and found to be safe and effective for the treatment of depression."). Other courts have found less particular allegations to be sufficient. See *Scripps Clinic & Research Found, v. Baxter Travenol Labs., Inc., 1988 U.S. Dist. LEXIS 1972, No. CIV.A. 87-140-CMW, 1988 WL 22602, at * 3 (D. Del. March 9, 1988)* (defense of inequitable conduct sufficiently pled when defendant "alleged that [the plaintiff] failed to identify to the PTO

relevant prior art of which it was aware" and defendant clarified its pleading in discovery responses). The court, however, finds the decisions requiring greater particularity to be more persuasive as this serves *Rule 9(b)*'s purpose of giving fair notice.

The allegation of "prior art concerning Watts's Hydroguard(R) 430 valves is a closer question, but the word "concerning" is too general and leaves the reader without [*38] any identification of the "prior art" concerning those valves. The allegations that Bradley's patent counsel submitted an "unduly burdensome Information and Disclosure Statement to the examiner, thereby obscuring the most material prior art" and Lawler failed to resubmit "material prior art contained in Bradley's Information Disclosure Statement" likewise present a closer question, but nonetheless fail to sufficiently identify the alleged prior art. These allegations are less specific than those in *Safe Bed* which identified a particular patent and commercially available therapeutic hospital beds by name. Indeed, the *Safe Bed* court ordered stricken for failing to satisfy *Rule 9(b)*'s heightened pleading requirements the following language: "patents owned" (except for the one identified patent), "such as" (except for the named beds) and "other material prior art". *Safe Bed, 2003 U.S. Dist. LEXIS 8514, 2003 WL 21183948, at * 3-4.* The allegations that "Lawler committed inequitable conduct by, *among other things*" and intentionally withheld material prior art "including, but not limited to" are far too vague. *See id.*

In stating that the particularity requirement is relaxed where the [*39] fraud is on a third party, the court in *Dominicus Americana Bohio v. Gulf & W. Indus., Inc., 473 F. Supp. 680 (S.D.N.Y. 1979)*, meant that the party pleading fraud may rely on information and belief to support its allegations, not that the particularity requirement is inapplicable, which the Defendants seem to suggest. *Dominicus Americana Bohio, 473 F. Supp. at 693*; accord *U.S. ex rel. Karvelas, 360 F.3d at 226*. Crane cannot use their brief to provide the required particularity which is lacking in their pleadings. *See Kennedy v. Venrock Assocs., 348 F.3d 584, 592-93 (7th Cir. 2003), cert. denied, 541 U.S. 975, 158 L. Ed. 2d 470, 124 S. Ct. 1889 (2004).* They attempt to do so, however. (Mem. Supp. Defs.' Opp'n Mot. J. Pldgs. at 8-9, 10-11.) Thus, to an extent some of the purposes of *Rule 9(b)*'s particularity requirement have been fulfilled. This suggests that allowing Crane to replead will not unduly prejudice the Plaintiffs as they apparently have learned through discovery of the more particular factual bases for the alleged inequitable conduct.

In sum, the court concludes that the Defendants' allegations of inequitable conduct are [*40] not sufficiently particular as to satisfy *Rule 9(b)*. Therefore, the motion for judgment on the pleadings will be **GRANTED** as to Watts', Crane's and Mark Controls' Sixth Affirmative Defenses; and Counterclaim Counts I, II and III based on inequitable conduct. This is **WITHOUT PREJUDICE** to allow the Defendants to replead and provide sufficiently particular factual allegations of inequitable conduct, provided they can do so within the parameters of *Rule 11*.

The court notes, though, that the allegations of who (Lawler and patent counsel for Bradley Corporation), when (during prosecution of the patents in issue), where (to the Patent Office) and of general intent (intentionally misrepresented and intentionally withholding), satisfy the particularity requirements, and Crane need not allege why the misrepresented information was material. *See, e.g., MedImmune, 271 F. Supp. 2d at 772* (finding a sufficient allegation of time and place the statement that "during prosecution before the PTO" and concluding the intent to deceive may be alleged generally); *Safe Bed, 2003 U.S. Dist. LEXIS 8514, 2003 WL 21183948, at * 3-4* (rejecting argument that allegation of inequitable conduct [*41] must identify how or why prior art would have been material); *TruePosition v. Allen Telecom, Inc., 2003 U.S. Dist. LEXIS 881, No. C.A. 01-823 GMS, 2003 WL 151227, at * 5 (D. Del. Jan. 21, 2003)* (declining to weigh relevance and materiality of alleged prior art on motion to dismiss).

### D. MOTION TO SET *MARKMAN* HEARING

The Plaintiffs move the court to set a *Markman* hearing, *Markman v. Westview Instruments, Inc., 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996)*, in order to construe the claims of the patents at issue, *U.S. Patent No. 6,042,015* (" 015 Patent"), *U.S. Patent No. 5,379, 936* (" 936 Patent") and *U.S. Patent No. 6,315,210* (" 210 Patent"). They claim that in furtherance of the most efficient resolution of this case, the hearing should be held before they submit their liability expert reports, complete liability expert depositions and submit summary judgment motions on liability issues. The Plaintiffs contend that early claim construction is appropriate because the parties, except Sloan, have exchanged formal Claims Construction and Claim Infringement Charts so the important claim terms are known and focused. n2 They submit that the benefit of the court's construction of the patent terms will make [*42] for more efficient summary judgment motions by avoiding the presentation of alternative summary judgment arguments, opinions and evidence.

> n2 The Plaintiffs anticipate that Sloan's Claim Construction chart will be substantially similar to that submitted by Watts and Crane.

The Defendants, Crane and Watts, oppose the motion,

arguing that it will unnecessarily lengthen this case. They propose combining the claim construction with summary judgment briefing. This, they say, will save the court time and effort by allowing it to limit its claim construction to the patent terms which are "truly dispositive" as informed by the summary judgment motions. The Defendants contend that the summary judgment motions will show that the Plaintiffs lack a good faith basis to proceed with any of their patent claims and no claim construction will support their claims. The Defendants seem to oppose a schedule which would close discovery before the court's, claim construction.

[HN8] "Decision of the issue of infringement is based on a two-step [*43] analysis. First, the meaning and scope of any disputed terms and limiting expressions in the claims are determined as a matter of law. Then the claims as construed are applied to the accused device or method, a question of fact." *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996); *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998)). The Federal Circuit has said that "the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case." *Id.*

The court is not required to hold a *Markman* hearing. E.g., *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 2001 U.S. Dist. LEXIS 2088, No. CIV.A. 3:98-CV-2996D, 2001 WL 204775, at *2 (N.D. Tex. Feb. 27, 2001). However, [HN9] a *Markman* hearing may assist the court with claim construction, particularly if claim terms are complex, technical and/or ambiguous. E.g., [*44] *Krippelz v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 13867, No. 98 C 2361, 2004 WL 1576697, at *3 (N.D. Ill. July 20, 2004). The parties agree that a *Markman* hearing is appropriate in this case, but disagree as to when it should be conducted.

In the court's view, an earlier *Markman* hearing, one held before the summary judgment briefing, would bring many benefits to the court and the parties. Primarily, the summary judgment process could be narrowed and be more efficient with the benefit of the court's claim construction. See *Vivid Techs.*, 200 F.3d at 803 ("the construction of the claims may resolve some or all of the issues of infringement"); *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999) ("by resolving the meaning to be given to disputed claim terms, and by engaging the parties in such a process, trial courts are often able to narrow disputes and provide more efficient trials"). A claim construction which precedes summary judgment could avoid unnecessary alternative briefing and evidentiary submissions, including expert witness testimony addressed to or based on rejected claim constructions. The narrowing of the issues could off-set any added delay [*45] posed by the separate *Markman* hearing. In addition, a more focused summary judgment process could aid the court in the ultimate goal of properly resolving the claims before it. The interest of getting it right overrides the interest of a speedier resolution. Having a *Markman* hearing and briefing separate from briefing on the summary judgment issues also avoids any risk of confusing the issues of claim construction (a matter of law) with patent infringement (a matter of fact) and sharpens the focus on the issues at hand. Finally, if the Defendants truly believe that no claim construction would allow the Plaintiffs to prevail on any of their claims, then they may so inform the court and the Plaintiffs and the case can proceed to summary judgment briefing for which the court would adopt the Plaintiffs' claim constructions.

The court therefore **GRANTS** the motion for a *Markman* hearing. It is anticipated that the parties will fully brief the claim construction issues prior to such hearing and that such hearing will be held, and a *Markman* decision issued, before the summary judgment briefing. It is also anticipated that the parties will have an opportunity to make expert [*46] disclosures and reports on the *Markman* hearing issues. The deadline for fact discovery will be extended for some period after the *Markman* decision is issued to allow any follow-up discovery with the benefit of the court's claim construction. The court envisions that expert disclosures and reports will be due shortly thereafter. This matter will be referred to Magistrate Judge Lawrence for purposes of establishing an amended schedule for this case.

### E. MOTION TO BIFURCATE AND STAY DISCOVERY

Crane and Watts move the court to (1) bifurcate the trial of the issues of (a) liability and (b) damages and willfulness and (2) stay discovery on the issues of damages and willfulness. They contend that bifurcation will streamline the issues for the jury and reduce the risk of jury confusion. According to the Defendants, a stay of discovery is warranted because damages discovery will be costly and complex and may be avoided if the court or jury finds in their favor on some or all of Lawler's claims. They further contend that bifurcation and a stay minimize the risk of inadvertent disclosure to the Plaintiffs, their compretititors, of commercial information and may avoid the risk completely [*47] in the event the Defendants prevail. Finally, they argue that bifurcating willfulness will decrease the risk of a premature or unnecessary waiver of privilege.

[HN10] *Rule 42(b) of the Federal Rules of Civil Procedure* allows bifurcation "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Bifurcation is appropriate if three conditions are satisfied: (1) separate trials would avoid prejudice to a party or promote judicial economy; (2) the decision to bifurcate would not unfairly prejudice the non-moving party; and (3) separate trials would not violate the *Seventh Amendment. Houseman v. United States Aviation Underwriters, 171 F.3d 1117, 1121 (7th Cir. 1999)*. The party seeking bifurcation has the burden of proving bifurcation is appropriate. *See, e.g., Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 620 (N.D. Ill. 2000)*.

Generally, patent cases are considered for separate trials because the issue of liability and damages may be complex, separable, and the trial of the damage issues can be time consuming and expensive. *See F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999)*. [*48] However, there is no presumption that a case should be bifurcated simply because it is a patent case. *Id.*

The Defendants have not persuaded the court that bifurcation for trial is appropriate: They have not shown that bifurcation furthers convenience, avoids prejudice or promotes judicial efficiency. The court recognizes that this patent case involves multiple parties and claims, three different patents, seven accused products, and approximately eighteen claims in the patents at issue. However, the court's claim construction and the anticipated summary judgment motions and ruling will likely narrow the issues remaining for trial and reduce any risk of jury confusion or prejudice to a party. Furthermore, the able lawyers' skilled presentations of evidence at trial, arguments of counsel, limiting instructions where appropriate, and the court's carefully crafted jury instructions also will minimize the risk of juror confusion or prejudice. Of course, bifurcation of liability and damages would avoid the needless expenditure of resources in the event the Defendants prevail. But that can be said in every case. The Defendants suggest that they may rely on an opinion of counsel as a defense [*49] to the willfulness charges, which may require disclosure of the opinion and waiver of attorney-client and work product privileges. They stop short, though, of asserting reliance on opinion of counsel. Their speculation does not warrant bifurcation at this point. *See F & G Scrolling Mouse, 190 F.R.D. at 392*. Finally, separate trials may delay the ultimate resolution of this case. Accordingly, the court finds that the motion to bifurcate trial of liability and damages should be **DENIED**. This is without prejudice and subject to reconsideration following the court's *Markman* ruling.

As for the requested stay of damages and willfulness discovery, the court recognizes that damages discovery may be costly, complex and time consuming. The court also is sensitive to the Defendants' trade secret concerns. The Plaintiffs and the Defendants are competitors and damages discovery would require the disclosure of commercial information. There is a Protective Order in effect in this case, but there is almost always a risk of the inadvertent disclosure of protected information. Further, as noted, the *Markman* ruling likely will narrow the issues for trial and thus may eliminate [*50] the need for some damages discovery.

However, a finding of willfulness must be based on the totality of the circumstances. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, 265 F.3d 1294, 1308 (Fed. Cir. 2001); WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1354 (Fed. Cir. 1999)*. This implies that the evidence of liability and willfulness overlap. *See A.L. Hansen Mfg. Co., 2004 U.S. Dist. LEXIS 8935, 2004 WL 1125911, at * 3 & n.3* (noting that much evidence establishing the totality of the circumstances including evidence on obviousness and similarity between the products would be admitted in the liability phase of the trial). Consequently, the discovery of information related to liability may be intertwined with discovery of information pertaining to willfulness. To delay discovery on willfulness therefore would be inappropriate and inefficient.

Accordingly, the court finds that the motion to stay damages discovery should be **GRANTED** and the motion to stay willfulness discovery should be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Judgment on the Pleadings as to Count III will be **GRANTED** [*51] ; Crane's Motion to Compel is **GRANTED** in part and **DENIED** in part as set forth above; and Plaintiffs' Motion to Set *Markman* Hearing is **GRANTED**. The Plaintiffs' Motion for Judgment on the Pleadings is **DENIED** as to Watts' Counterclaim for defamation and is **GRANTED** as to Watts', Crane's, and Mark Controls' Sixth Affirmative Defenses and Counterclaim Counts I, II and III based on inequitable conduct **WITHOUT PREJUDICE** in order to allow the Defendants within thirty days to replead more particular factual allegations consistent with *Rule 11*. Last but not least, the Defendants' Motion to Bifurcate and to Stay is **GRANTED** in part and **DENIED** in part: the discovery of damages issues is now **STAYED** until further order of the court, but the requests to stay willfulness discovery and to bifurcate the trial of damages and willfulness from liability are **DENIED**.

This matter will be referred to the Magistrate Judge

for purposes of establishing an amended schedule for this case. Given the remaining claims and the close relationship between those claims and Count III of the Complaint, judgment on Count III will not be entered at this time. [*52]

ALL OF WHICH IS ENTERED this 29th day of September 2004.

John Daniel Tinder, Judge

United States District Court