1 of 1 DOCUMENT

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, INC., Plaintiff v. JADUM CONSTRUCTION, INC., ANDREW R. LEVENBAUM, and ANDREA R. LEVENBAUM, Defendants

CIVIL ACTION NO. 02-10581-GAO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2003 U.S. Dist. LEXIS 11861

July 11, 2003, Decided

**DISPOSITION:** [*1] Plaintiff's motion for summary judgment on damages granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer sued defendant insured to recover, pursuant to an indemnity agreement, the costs of completing a construction project the insured had contracted to build. The court had already determined that the insured's voluntary termination of performance of the project triggered its obligation to compensate the insurer under the agreement. The insurer moved for summary judgment on the amount of costs the insured was liable for.

**OVERVIEW:** The insurer moved for summary judgment on the only remaining issue—whether the insured was liable for the full amount of costs the insurer paid to complete the project. The insurer made out a prima facie case of the costs it incurred, so the insured was obligated to pay those costs unless it established that some or all of them were incurred in bad faith. The insured had contracted to complete the project for $8 million. The insurer spent over $9 million to finish the project. The insured argued that the insurer incurred the excess costs in bad faith. The court disagreed. The test for bad faith was whether the insurer acted with a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will. A showing of bad judgment, negligence or insufficient zeal was not sufficient. While excessive payment may have been negligent or even reckless, overpayment by itself did not evince any ill will by the insurer. The insurer's arguments were based only on its information and belief of some conflicts of interest. At this stage of the proceedings, after discovery had occurred, that was insufficient to raise a triable issue of fact.

**OUTCOME:** The court granted the insurer's motion for summary judgment on the issue of damages.

LexisNexis(R) Headnotes

*Contracts Law > Types of Contracts > Guaranty Contracts*
[HN1] The test for the lack of good faith (or bad faith) is whether the surety acted with a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will. A showing of "bad judgment, negligence or insufficient zeal" is not sufficient.

*Contracts Law > Types of Contracts > Guaranty Contracts*
[HN2] The fact that payments made by a surety may have been unnecessary does not demonstrate lack of good faith. Bad faith requires the conscious doing of a wrong because of dishonest purpose or moral obliquity.

*Contracts Law > Types of Contracts > Guaranty Contracts*
[HN3] Even "gross negligence" by a surety does not meet the standard of bad faith because it does not demonstrate improper motive.

**COUNSEL:** For Travelers Casualty & Surety Company of America, PLAINTIFF: Philip M Cronin, Peabody & Arnold LLP, Boston, MA USA.

For Jadum Construction Company Inc, Andrew Levenbaum, Andrea Levenbaum, DEFENDANTS: Bruce D Levin, Peter B McGlynn, Bernkopf, Goodman & Baseman, Boston, MA USA.

**JUDGES:** George A. O'Toole, Jr., DISTRICT JUDGE.

**OPINIONBY:** George A. O'Toole, Jr.

**OPINION:**
MEMORANDUM AND ORDER

July 11, 2003

O'TOOLE, D.J.

Travelers Casualty and Surety Company of America, Inc. ("Travelers") initiated this proceeding against Jadum Construction, Inc., Andrew R. Levenbaum, and Andrea R. Levenbaum (collectively "Jadum"), to recover the costs of completing a construction project that Jadum had contracted to build. This Court has already determined that Jadum's obligation to compensate Travelers under their General Agreement of Indemnity was triggered when Jadum voluntarily terminated performance of the project. Travelers now moves for summary judgment on the only remaining issue: whether Jadum is liable for the full amount of the costs Travelers incurred. For the reasons discussed below, the Court determines that Jadum must pay all [*2] of the costs Travelers incurred in excess of the contract amount.

A. Summary of Facts

Jadum is a New York construction company that conducts business in Massachusetts. In December 1997, Natraj Hospitality L.L.C. ("Natraj") hired Jadum to construct a hotel in Cambridge, Massachusetts for $8 million. In February 1998, Jadum entered into a General Agreement of Indemnity ("Indemnity Agreement") with Travelers. Under the Indemnity Agreement, Travelers agreed to issue bonds guaranteeing Jadum's performance of its contract with Natraj. In return, Jadum promised that it would indemnify Travelers for any claims that Travelers incurred as a consequence of the bonds. On April 14, 1998, Travelers satisfied its obligations by issuing a performance and a payment bond.

In August 2001, Jadum voluntarily terminated its obligation to construct Natraj's hotel and Travelers assumed responsibility for the completion of the project. Ultimately, Travelers spent $9,141,059 to finish the construction. Subtracting from that sum the amount remaining on the contract when Jadum left the project and the value of the change orders by the owner, the total amount Travelers seeks to recover from Jadum [*3] is $6,860,021.

B. Discussion

Travelers' right to repayment from Jadum is established by the Indemnity Agreement. The two key provisions of that agreement read as follows:

> 3. Indemnification and Hold Harmless The Indemnitor [Jadum] shall exonerate, indemnify and save the Company [Travelers] harmless from and against every claim, loss, damage, demand, liability, cost, charge, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having executed, or procured the execution of such Bonds. Expense includes the cost of procuring or attempting to procure release from liability, or in bringing suit to enforce this Agreement against any Indemnitor.
>
> 4. Claim Settlement The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitor whether any claim or suit brought against the Company or the Indemnitor upon any such Bond shall be paid, compromised, settled, defended or appealed, and its decision shall be binding and conclusive upon the Indemnitor. An itemized statement thereof sworn to by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety [*4] and existence of Indemnitor's liability. The Company shall be entitled to reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

Compl., Ex. A. As required in the second paragraph (P 4), Travelers has produced an "itemized statement" of costs, sworn to by an employee, thereby establishing a prima facie case for repayment. See Carlson Aff. (docket no. 27).

The parties agree that once Travelers has made such a prima facie case, Jadum must repay the full amount unless it can establish that some or all of the costs were incurred in bad faith. Both Travelers and Jadum cite *Hartford Accident and Indem. Co. v. Millis Roofing and Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 418 N.E.2d 645 (Mass. App. Ct. 1981) for the proposition that "it was only necessary that the bonding company have acted in good faith" when it made payments to complete the project. *Id.* at 647. [HN1] The test for the lack of good faith (or bad faith) is whether the surety acted with "a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will." *Id.* A showing of "bad judgment, [*5] negligence or insufficient zeal" is not sufficient. Id. See also *American Employers' Ins. Co. v. Horton*, 35 Mass. App. Ct. 921, 622 N.E.2d 283, 284-85 (Mass. App. Ct. 1993) [HN2] (fact that payments made by surety may have been unnecessary did not demonstrate lack of good faith); Black's Law Dictionary 139 (6th ed. 1990) (bad faith requires "conscious doing of a wrong because of dishonest purpose or moral obliquity").

Jadum argues that the sizeable costs Travelers incurred beyond the original $8 million that Jadum had

set as the contract price for the hotel is evidence of bad faith. However, while excessive payment may have been negligent or even reckless, overpayment by itself does not evince any ill will by Travelers. See also *United States Fid. & Guaranty Co. v. Feibus, 15 F. Supp.2d 579, 585 (M.D. Pa. 1998)* [HN3] (even "gross negligence" by surety does not meet standard of bad faith because it does not demonstrate improper motive). The same is true of Jadum's evidence that Travelers allowed deviations from the original contract such as the use of 1-1/4 inch granite pavers instead of 3/4 inch pavers, the use of granite instead of plastic laminate, the [*6] hiring of a separate fire-stopping subcontractor, and copious additional electrical work.

The only evidence Jadum offers to show that Travelers acted with improper motive is the assertion in Levenbaum's affidavit that the granite contractor Travelers hired "is a personal friend" of one of the Travelers' project overseers, and that the granite contractor was hired "without the normal competitive bidding process." Levenbaum Aff. P 10, at 4 (docket no. 35). These assertions are made purely on "information and belief." Id. P 1. At this stage, after discovery is complete, such bald assertions are not enough to raise a genuine issue of fact as to Travelers' motives. See also *Fed. R. Civ. P. 56(e)* (affidavits offered to oppose a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Moreover, Travelers counters Jadum's assertions with evidence that the granite work was performed by several different contractors, and that it did solicit bids for the work. On the whole, there is no evidence that Travelers [*7] acted in bad faith after it assumed Jadum's contract.

C. Conclusion

Since Jadum has not proffered adequate evidence of bad faith, Traveler's motion for summary judgment on damages is GRANTED. Judgment shall enter in Traveler's favor in the amount of $6,860,021.

It is SO ORDERED.

July 11, 2003
DATE

George A. O'Toole, Jr.
DISTRICT JUDGE