# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-874 GMS |
| | ) | |
| ALCATEL USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

1.    On July 16, 2004, the plaintiff, Telcordia Technologies, Inc. ("Telcordia"), filed this action

against Alcatel S.A. ("Alcatel S.A.")[1] and Alcatel USA, Inc. ("Alcatel USA") (collectively,

"Alcatel"), alleging infringement of U.S. Patent No. 4,893,306 (the "'306 patent").[2]

2.    On December 2, 2004, Alcatel filed its answer and counterclaims. (D.I. 13.) Alcatel raised

seven declaratory judgment counterclaims including Patent Non-Infringement (First

Counterclaim), Patent Invalidity (Second Counterclaim), Patent Unenforceability (Third

Counterclaim), Latches (Fourth Counterclaim), License/Acquiescence (Fifth Counterclaim),

Equitable Estoppel (Sixth Counterclaim), and Unclean Hands (Seventh Counterclaim). (Id.

at Alcatel's Counterclaims ¶¶ 9-35.)

3.    On April 14, 2005, the court held a scheduling conference, during which Telcordia indicated

the possibility of adding more patents to the case against Alcatel. Telcordia requested the

court to set November 18, 2005 as the cut-off for amended pleadings so that it would have

sufficient time to determine which, if any, additional patents to bring into the case. (See

---

[1] Alcatel S.A. was subsequently dismissed from the case on May 27, 2005.

[2] On July 16, 2004, Telcordia also filed patent infringement actions against Lucent Technologies, Inc. and Cisco Systems, Inc.

Transcript of Rule 16.2(b) Conference ("Tr."), dated April 14, 2005, at 40:17-20.) In response, Alcatel argued that the court should deny the request, because it would suffer prejudice if Telcordia was permitted to add any new patents into the case. (Id. at 31:21-32:25; 44:14-19.) The court agreed that Alcatel would be prejudiced if it granted Telcordia's request to set the amendment cut-off as November 18, 2005. However, the court decided not to prohibit Telcordia from amending its pleadings. Instead, the court set June 14, 2005 as the amendment cut-off date for all parties, giving Telcordia sixty days to complete its research and determine which patents, if any, it would add to the case. (Id. at 47:6-10; 48:22-23.)

4.      On June 14, 2005, Telcordia filed an amended complaint (D.I. 42, Ex. A), asserting the '306 patent and U.S. Patent No. Re. 36,633 (the "'633 patent") against Alcatel. Pursuant to the parties' agreement (see D.I. 47), Alcatel was to file its answer to the amended complaint on August 10, 2005. On August 10, 2005, Alcatel filed its answer and counterclaims to the amended complaint. (D.I. 49.) Alcatel's answer asserted eleven counterclaims, including the seven counterclaims it had previously asserted. In addition, Alcatel asserted counterclaims for Intervening Rights (Eighth Counterclaim), Breach of Contract (Ninth Counterclaim and Tenth Counterclaim), and Infringement of U.S. Patent No. 6,247,052 (Eleventh Counterclaim).

5.      On September 29, 2005, Telcordia filed a Motion to Dismiss or, in the Alternative, Sever and Stay Alcatel's Patent Infringement Counterclaim (D.I. 54). It is this motion that is presently before the court.

6.      Telcordia contends that the court should dismiss Alcatel's patent infringement counterclaim

because it is untimely. That is, Telcordia contends that Alcatel's infringement counterclaim, filed on August 10, 2005, does not comply with the Scheduling Order (D.I. 33), which set June 14, 2005 as the cut-off date for amending pleadings. In response, Alcatel asserts that Telcordia agreed that it would not oppose counterclaims on the ground that they had to be asserted by the amendment cut-off date. Alcatel further asserts that even if there was no agreement by Telcordia, its motion to dismiss should be denied because the Scheduling Order imposes a deadline only for a "motion" to amend the pleadings, not an answer to the amended complaint.

7.    After having considered the parties submissions (D.I. 54, 55, 58), as well as the transcript of the scheduling conference, the court concludes that Alcatel's patent infringement counterclaim is untimely and, therefore, will dismiss the claim without prejudice to Alcatel's ability to assert it in another action.

8.    At the April 14, 2005 scheduling conference, Alcatel vigorously opposed Telcordia's indication that it might add more patents to the case. Specifically, Alcatel asserted "[w]e're going to have to send people, search for documents, interview potential witnesses and four or five months from now or seven months from now, I don't want to do it again with a new patent. I think that is really prejudicial." (Tr. at 32:16-20.) Alcatel further asserted that it would be "extremely prejudicial . . . to have to go through the process of responding to [discovery] a second or third time as patents get added. I think that should be taken into consideration very heavily." (Id. at 44:15-19.) Thus, Alcatel requested the court to give Telcordia "ten days or two weeks to decide what [patents] they want to add [to the case]." (Id. at 45:6-7.) The court partly acceded to Alcatel's request, giving all parties sixty days

3

to amend the pleadings to add new patents.

9.    Now, after having filed a patent infringement counterclaim almost two months after the amendment cut-off, Alcatel asserts that its counterclaim does not meet the formal "motion" to amend requirement imposed by the scheduling order.  While this may technically be true, the court believes that Alcatel is clearly raising form over substance.  As previously discussed, Alcatel originally objected to Telcordia's indication that it might add more patents to the case because it would be prejudiced by having to go through the discovery process a second time.  When the court agreed and set June 14, 2005 as the amendment cut-off date, it directly pointed out that the deadline would apply to all parties.  (Tr. at 48:18.)  That is, everyone participating in the scheduling conference knew that the court was imposing an early deadline to prevent parties from adding more patents to the case at a late juncture. Given the court's resolution of the issue, it seems disingenuous for Alcatel to assert that its counterclaim was responsive to the amended complaint.  In other words, the court believes that Alcatel is using its counterclaim as a technical loophole to get around the court's amendment deadline.  As such, the court will dismiss the counterclaim.

Therefore, IT IS HEREBY ORDERED that:

1.    Telcordia's Motion to Dismiss (D.I. 54) is GRANTED.

2.    Alcatel's patent infringement counterclaim against Telcordia shall be dismissed without prejudice.

Dated: April 21, 2006                                    /s/ Gregory M. Sleet
                                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

(4)   An English language translation of all the necessary and pertinent parts of any non-English language patent or publication in written form relied upon.

(c)   The submission under this section must be served upon the applicant in accordance with § 1.248.

(d)   A submission under this section shall not include any explanation of the patents or publications, or any other information. The Office will not enter such explanation or information if included in a submission under this section. A submission under this section is also limited to ten total patents or publications.

(e)   A submission under this section must be filed within two months from the date of publication of the application (§ 1.215(a)) or prior to the mailing of a notice of allowance (§ 1.311), whichever is earlier. Any submission under this section not filed within this period is permitted only when the patents or publications could not have been submitted to the Office earlier, and must also be accompanied by the processing fee set forth in § 1.17(i). A submission by a member of the public to a pending published application that does not comply with the requirements of this section will not be entered.

(f)   A member of the public may include a self-addressed postcard with a submission to receive an acknowledgment by the Office that the submission has been received. A member of the public filing a submission under this section will not receive any communications from the Office relating to the submission other than the return of a self-addressed postcard. In the absence of a request by the Office, an applicant has no duty to, and need not, reply to a submission under this section.

[48 FR 2712, Jan. 20, 1983; effective Feb. 27, 1983; removed and reserved, 57 FR 2021, Jan. 17, 1992, effective Mar. 16, 1992; added, 65 FR 57024, Sept. 20, 2000, effective Nov. 29, 2000; para. (f) corrected, 65 FR 66502, Nov. 6, 2000, effective Nov. 29, 2000; paras. (d) and (e) revised, 68 FR 38611, June 30, 2003; effective July 30, 2003]

## EXAMINATION OF APPLICATIONS

### § 1.101   [Reserved]

[29 FR 13470, Sept. 30, 1964; para. (a), 48 FR 2712, Jan. 20, 1983, effective Feb. 27, 1983; para. (a), 50 FR 9381, Mar. 7, 1985, effective May 8, 1985; 52 FR 20046,

May 28, 1987, effective July 1, 1987; para. (a) revised, 60 FR 20195, Apr. 25, 1995, effective June 8, 1995; removed and reserved, 62 FR 53131, Oct. 10, 1997, effective Dec. 1, 1997]

### § 1.102   Advancement of examination.

(a)   Applications will not be advanced out of turn for examination or for further action except as provided by this part, or upon order of the Director to expedite the business of the Office, or upon filing of a request under paragraph (b) of this section or upon filing a petition under paragraphs (c) or (d) of this section with a showing which, in the opinion of the Director, will justify so advancing it.

(b)   Applications wherein the inventions are deemed of peculiar importance to some branch of the public service and the head of some department of the Government requests immediate action for that reason, may be advanced for examination.

(c)   A petition to make an application special may be filed without a fee if the basis for the petition is:

(1)   The applicant's age or health; or

(2)   That the invention will materially:

(i)   Enhance the quality of the environment;

(ii)   Contribute to the development or conservation of energy resources; or

(iii)   Contribute to countering terrorism.

(d)   A petition to make an application special on grounds other than those referred to in paragraph (c) of this section must be accompanied by the fee set forth in § 1.17(h).

[24 FR 10332, Dec. 22, 1959; paras. (a), (c), and (d), 47 FR 41276, Sept. 17, 1982, effective Oct. 1, 1982; para. (d), 54 FR 6893, Feb. 15, 1989, effective Apr. 17, 1989; para. (d) revised, 60 FR 20195, Apr. 25, 1995, effective June 8, 1995; para. (a) revised, 62 FR 53131, Oct. 10, 1997, effective Dec. 1, 1997; para. (d) revised, 65 FR 54604, Sept. 8, 2000, effective Nov. 7, 2000; para. (a) revised, 68 FR 14332, Mar. 25, 2003, effective May 1, 2003; para. (c) revised, 69 FR 56481, Sept. 21, 2004, effective Oct. 21, 2004]

### § 1.103   Suspension of action by the Office.

(a)   *Suspension for cause.* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph for good and suffi-

EXHIBIT 3

(C) Applications for reissues, particularly those involved in stayed litigation (37 CFR 1.176).

(D) Applications remanded by an appellate tribunal for further action.

(E) An application, once taken up for action by an examiner according to its effective filing date, should be treated as special by an examiner, art unit or Technology Center to which it may subsequently be transferred; exemplary situations include new cases transferred as the result of a telephone election and cases transferred as the result of a timely reply to any official action.

(F) Applications which appear to interfere with other applications previously considered and found to be allowable, or which will be placed in interference with an unexpired patent or patents.

(G) Applications ready for allowance, or ready for allowance except as to formal matters.

(H) Applications which are in condition for final rejection.

(I) Applications pending more than 5 years, including those which, by relation to a prior United States application, have an effective pendency of more than 5 years. See MPEP § 707.02.

(J) Reexamination proceedings, MPEP § 2261 >and § 2661<.

See also MPEP § 714.13, § 1207 and § 1309.

# 708.02    Petition To Make Special  [R-3]

*37 CFR 1.102. Advancement of examination.*

(a) Applications will not be advanced out of turn for examination or for further action except as provided by this part, or upon order of the Director to expedite the business of the Office, or upon filing of a request under paragraph (b) of this section or upon filing a petition under paragraphs (c) or (d) of this section with a showing which, in the opinion of the Director, will justify so advancing it.<

(b) Applications wherein the inventions are deemed of peculiar importance to some branch of the public service and the head of some department of the Government requests immediate action for that reason, may be advanced for examination.

**>**

(c) A petition to make an application special may be filed without a fee if the basis for the petition is:

(1) The applicant's age or health; or

(2) That the invention will materially:

(i) Enhance the quality of the environment;

(ii) Contribute to the development or conservation of energy resources; or

(iii) Contribute to countering terrorism.<

(d) A petition to make an application special on grounds other than those referred to in paragraph (c) of this section must be accompanied by the fee set forth in § 1.17(h).

New applications ordinarily are taken up for examination in the order of their effective United States filing dates. Certain exceptions are made by way of petitions to make special, which may be granted under the conditions set forth below.>Any statement in support of a petition to make special must be based on a good faith belief that the invention in fact qualifies for special status. See 37 CFR 1.56 and 10.18.<

## I.    MANUFACTURE

An application may be made special on the ground of prospective manufacture upon the filing of a petition accompanied by the fee under 37 CFR 1.17(h) and a statement by the applicant, assignee or an attorney/agent registered to practice before the Office alleging:

(A) The possession by the prospective manufacturer of sufficient presently available capital (stating approximately the amount) and facilities (stating briefly the nature thereof) to manufacture the invention in quantity or that sufficient capital and facilities will be made available if a patent is granted;

If the prospective manufacturer is an individual, there must be a corroborating statement from some responsible party, as for example, an officer of a bank, showing that said individual has the required available capital to manufacture;

(B) That the prospective manufacturer will not manufacture, or will not increase present manufacture, unless certain that the patent will be granted;

(C) That the prospective manufacturer obligates himself, herself or itself, to manufacture the invention, in the United States or its possessions, in quantity immediately upon the allowance of claims or issuance of a patent which will protect the investment of capital and facilities; and

(D) That the applicant or assignee has made or caused to be made a careful and thorough search of the prior art, or has a good knowledge of the pertinent prior art.

Applicant must provide one copy of each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record.

                                    Rev. 3, August 2005

708.02                      MANUAL OF PATENT EXAMINING PROCEDURE

## II.  INFRINGEMENT

Subject to a requirement for a further showing as may be necessitated by the facts of a particular case, an application may be made special because of actual infringement (but not for prospective infringement) upon payment of the fee under 37 CFR 1.17(h) and the filing of a petition accompanied by a statement by the applicant, assignee, or an attorney/agent registered to practice before the Office alleging:

(A) That there is an infringing device or product actually on the market or method in use;

(B) That a rigid comparison of the alleged infringing device, product, or method with the claims of the application has been made, and that, in his or her opinion, some of the claims are unquestionably infringed; and

(C) That he or she has made or caused to be made a careful and thorough search of the prior art or has a good knowledge of the pertinent prior art.

Applicant must provide one copy of each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record.

Models or specimens of the infringing product or that of the application should not be submitted unless requested.

## III.  APPLICANT'S HEALTH

An application may be made special upon a petition by applicant accompanied by any evidence showing that the state of health of the applicant is such that he or she might not be available to assist in the prosecution of the application if it were to run its normal course, such as a doctor's certificate or other medical certificate. No fee is required for such a petition. See 37 CFR 1.102(c).

>Personal/medical information submitted as evidence to support the petition will be available to the public if the application file and contents are available to the public pursuant to 37 CFR 1.11 or 1.14. If applicant does not wish to have this information become part of the application file record, the information must be submitted pursuant to MPEP § 724.02.<

## IV.  APPLICANT'S AGE

An application may be made special upon filing a petition including any evidence showing that the applicant is 65 years of age, or more, such as a birth certificate or applicant's statement. No fee is required with such a petition. See 37 CFR 1.102(c).

>Personal/medical information submitted as evidence to support the petition will be available to the public if the application file and contents are available to the public pursuant to 37 CFR 1.11 or 1.14. If applicant does not wish to have this information become part of the application file record, the information must be submitted pursuant to MPEP § 724.02.<

## V.  ENVIRONMENTAL QUALITY

The U.S. Patent and Trademark Office will accord "special" status to all patent applications for inventions which materially enhance the quality of the environment of mankind by contributing to the restoration or maintenance of the basic life-sustaining natural elements, i.e., air, water, and soil.

All applicants desiring to participate in this program should petition that their applications be accorded "special" status. **>The petition under 37 CFR 1.102 must state that special status is sought because the invention materially enhances the quality of the environment of mankind by contributing to the restoration or maintenance of the basic life-sustaining natural elements.< No fee is required for such a petition. See 37 CFR 1.102(c). >If the application disclosure is not clear on its face that the claimed invention materially enhances the quality of the environment by contributing to the restoration or maintenance of one of the basic life-sustaining natural elements, the petition must be accompanied by a statement under 37 CFR 1.102 by the applicant, assignee, or an attorney/agent registered to practice before the Office explaining how the materiality standard is met. The materiality standard does not permit an applicant to speculate as to how a hypothetical end-user might specially apply the invention in a manner that could materially enhance the quality of the environment. Nor does such standard permit an applicant to enjoy the benefit of advanced examination merely because some minor aspect of the claimed invention may enhance the quality of the environment.<

## VI.  ENERGY

The U.S. Patent and Trademark Office will, on petition, accord "special" status to all patent applications for inventions which materially contribute to (A) the discovery or development of energy resources, or (B) the more efficient utilization and conservation of energy resources. Examples of inventions in category (A) would be developments in fossil fuels (natural gas, coal, and petroleum), hydrogen fuel technologies, nuclear energy, solar energy, etc. Category (B) would include inventions relating to the reduction of energy consumption in combustion systems, industrial equipment, household appliances, etc.

All applicants desiring to participate in this program should petition that their applications be accorded "special" status. **>The petition under 37 CFR 1.102 must state that special status is sought because the invention materially contributes to category (A) or (B) set forth above.< No fee is required for such a petition, 37 CFR 1.102(c).>If the application disclosure is not clear on its face that the claimed invention materially contributes to category (A) or (B), the petition must be accompanied by a statement under 37 CFR 1.102 by the applicant, assignee, or an attorney/agent registered to practice before the Office explaining how the materiality standard is met. The materiality standard does not permit an applicant to speculate as to how a hypothetical end-user might specially apply the invention in a manner that could materially contribute to category (A) or (B). Nor does such standard permit an applicant to enjoy the benefit of advanced examination merely because some minor aspect of the claimed invention may be directed to category (A) or (B).<

## VII.  INVENTIONS RELATING TO RECOMBINANT DNA

In recent years revolutionary genetic research has been conducted involving recombinant deoxyribonucleic acid ("recombinant DNA"). Recombinant DNA research appears to have extraordinary potential benefit for mankind. It has been suggested, for example, that research in this field might lead to ways of controlling or treating cancer and hereditary defects. The technology also has possible applications in agriculture and industry. It has been likened in importance to the discovery of nuclear fission and fusion. At the same time, concern has been expressed over the safety

of this type of research. The National Institutes of Health (NIH) has released guidelines for the conduct of research concerning recombinant DNA. These "Guidelines for Research Involving Recombination DNA Molecules," were published in the *Federal Register* of July 7, 1976, 41 FR 27902-27943. NIH is sponsoring experimental work to identify possible hazards and safety practices and procedures.

In view of the exceptional importance of recombinant DNA and the desirability of prompt disclosure of developments in the field, the U.S. Patent and Trademark Office will accord "special" status to patent applications relating to safety of research in the field of recombinant DNA. Upon appropriate petition and payment of the fee under 37 CFR 1.17(h), the Office will make special patent applications for inventions relating to safety of research in the field of recombinant DNA. Petitions for special status should be accompanied by statements under 37 CFR 1.102 by the applicant, assignee, or statements by an attorney/agent registered to practice before the Office explaining the relationship of the invention to safety of research in the field of recombinant DNA research. The fee set forth under 37 CFR 1.17(h) must also be paid.

## VIII.  SPECIAL EXAMINING PROCEDURE FOR CERTAIN NEW APPLICATIONS — ACCELERATED EXAMINATION

A new application (one which has not received any examination by the examiner) may be granted special status provided that applicant (and this term includes applicant's attorney or agent) complies with each of the following items:

(A) Submits a petition to make special accompanied by the fee set forth in 37 CFR 1.17(h);

(B) Presents all claims directed to a single invention, or if the Office determines that all the claims presented are not obviously directed to a single invention, will make an election without traverse as a prerequisite to the grant of special status.

The election may be made by applicant at the time of filing the petition for special status. Should applicant fail to include an election with the original papers or petition and the Office determines that a requirement should be made, the established telephone restriction practice will be followed.

**708.02**                 MANUAL OF PATENT EXAMINING PROCEDURE

If otherwise proper, examination on the merits will proceed on claims drawn to the elected invention.

If applicant refuses to make an election without traverse, the application will not be further examined at that time. The petition will be denied on the ground that the claims are not directed to a single invention, and the application will await action in its regular turn.

Divisional applications directed to the nonelected inventions will not automatically be given special status based on papers filed with the petition in the parent application. Each such application must meet on its own all requirements for the new special status;

(C) Submits a statement(s) that a pre-examination search was made, listing the field of search by class and subclass, publication, Chemical Abstracts, foreign patents, etc. The pre-examination search must be directed to the invention as claimed in the application for which special status is requested. A search made by a foreign patent office satisfies this requirement if the claims in the corresponding foreign application are of the same or similar scope to the claims in the U.S. application for which special status is requested;

(D) Submits one copy each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record; and

(E) Submits a detailed discussion of the references, which discussion points out, with the particularity required by 37 CFR 1.111 (b) and (c), how the claimed subject matter is patentable over the references.

In those instances where the request for this special status does not meet all the prerequisites set forth above, applicant will be notified and the defects in the request will be stated. The application will remain in the status of a new application awaiting action in its regular turn. In those instances where a request is defective in one or more respects, applicant will be given *one* opportunity to perfect the request in a renewed petition to make special. If perfected, the request will then be granted. If not perfected in the first renewed petition, any additional renewed petitions to make special may or may not be considered at the discretion of the Technology Center (TC) Special Program Examiner.

Once a request has been granted, prosecution will proceed according to the procedure set forth below;

there is no provision for "withdrawal" from this special status.

The special examining procedure of VIII (accelerated examination) involves the following procedures:

(A) The new application, having been granted special status as a result of compliance with the requirements set out above will be taken up by the examiner before all other categories of applications except those clearly in condition for allowance and those with set time limits, such as examiner's answers, etc., and will be given a complete first action which will include *all* essential matters of merit as to all claims. The examiner's search will be restricted to the *subject matter encompassed by the claims*. A first action rejection will set a 3-month shortened period for reply.

(B) During the 3-month period for reply, applicant is encouraged to arrange for an interview with the examiner in order to resolve, with finality, as many issues as possible. In order to afford the examiner time for reflective consideration before the interview, applicant or his or her representative should cause to be placed in the hands of the examiner at least one working day prior to the interview, a copy (clearly denoted as such) of the amendment that he or she proposes to file in response to the examiner's action. Such a paper will not become a part of the file, but will form a basis for discussion at the interview.

(C) Subsequent to the interview, or responsive to the examiner's first action if no interview was had, applicant will file the "record" reply. The reply at this stage, to be proper, must be restricted to the rejections, objections, and requirements made. Any amendment which would require broadening the search field will be treated as an improper reply.

(D) The examiner will, within 1 month from the date of receipt of applicant's formal reply, take up the application for final disposition. This disposition will constitute either a final action which terminates with the setting of a 3-month period for reply, or a notice of allowance. The examiner's reply to any amendment submitted after final rejection should be prompt and by way of form PTOL-303, by passing the application to issue, or by an examiner's answer should applicant choose to file an appeal brief at this time. The use of these forms is not intended to open the door to further prosecution. Of course, where relatively minor issues

or deficiencies might be easily resolved, the examiner may use the telephone to inform the applicant of such.

(E) A personal interview after a final Office action will not be permitted unless requested by the examiner. However, telephonic interviews will be permitted where appropriate for the purpose of correcting any minor outstanding matters.

After allowance, these applications are given top priority for printing. See MPEP § 1309.

## IX. SPECIAL STATUS FOR PATENT APPLICATIONS RELATING TO SUPERCONDUCTIVITY

In accordance with the President's mandate directing the U.S. Patent and Trademark Office to accelerate the processing of patent applications and adjudication of disputes involving superconductivity technologies when requested by the applicant to do so, the U.S. Patent and Trademark Office will, on request, accord "special" status to all patent applications for inventions involving superconductivity materials. Examples of such inventions would include those directed to superconductive materials themselves as well as to their manufacture and application. In order that the U.S. Patent and Trademark Office may implement this procedure, we invite all applicants desiring to participate in this program to request that their applications be accorded "special" status. Such requests should be accompanied by a statement under 37 CFR 1.102 that the invention involves superconductive materials. No fee is required.

## X. INVENTIONS RELATING TO HIV/AIDS AND CANCER

In view of the importance of developing treatments and cures for HIV/AIDS and cancer and the desirability of prompt disclosure of advances made in these fields, the U.S. Patent and Trademark Office will accord "special" status to patent applications relating to HIV/AIDS and cancer.

Applicants who desire that an application relating to HIV/AIDS or cancer be made special should file a petition and the fee under 37 CFR 1.17(h) requesting the U.S. Patent and Trademark Office to make the application special. The petition for special status should be accompanied by a statement explaining how the invention contributes to the diagnosis, treatment or prevention of HIV/AIDS or cancer.

## XI. INVENTIONS FOR COUNTERING TERRORISM

In view of the importance of developing technologies for countering terrorism and the desirability of prompt disclosure of advances made in these fields, the U.S. Patent and Trademark Office will accord "special" status to patent applications **>for inventions which materially contribute to countering terrorism<.

International terrorism as defined in 18 U.S.C. 2331 includes "activities that - (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; [and] (B) appear to be intended - (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by assassination or kidnapping..." The types of technology for countering terrorism could include, but are not limited to, systems for detecting/identifying explosives, aircraft sensors/security systems, and vehicular barricades/disabling systems.

**>All applicants desiring to participate in this program should petition that their applications be accorded special status. The petition under 37 CFR 1.102 must state that special status is sought because the invention materially contributes to countering terrorism. No fee is required for such a petition. See 37 CFR 1.102(c). If the application disclosure is not clear on its face that the claimed invention is materially directed to countering terrorism, the petition must be accompanied by a statement under 37 CFR 1.102 by the applicant, assignee, or an attorney/agent registered to practice before the Office explaining how the invention materiality contributes to countering terrorism. The materiality standard does not permit an applicant to speculate as to how a hypothetical end-user might specially apply the invention in a manner that could counter terrorism. Nor does such standard permit an applicant to enjoy the benefit of advanced examination merely because some minor aspect of the claimed invention may be directed to countering terrorism.<

Rev. 3, August 2005

## XII. SPECIAL STATUS FOR APPLICATIONS RELATING TO BIOTECHNOLOGY FILED BY APPLICANTS WHO ARE SMALL ENTITIES

Applicants who are small entities may request that their biotechnology applications be granted "special" status. Applicant must file a petition with the petition fee under 37 CFR 1.17(h) requesting the special status and must:

(A) state that small entity status has been established or include a statement establishing small entity status;

(B) state that the subject of the patent application is a major asset of the small entity; and

(C) state that the development of the technology will be significantly impaired if examination of the patent application is delayed, including an explanation of the basis for making the statement.

## FORMAL REQUIREMENTS OF PETITION TO MAKE SPECIAL

Any petition to make special should:

(A) be in writing; and

(B) identify the application by application number and filing date.

## HANDLING OF PETITIONS TO MAKE SPECIAL

Applications which have been made special will be advanced out of turn for examination and will continue to be treated as special throughout the entire prosecution in the Office.

Each petition to make special, regardless of the ground upon which the petition is based and the nature of the decision, is made of record in the application file, together with the decision thereon. The part of the Office that rules on a petition is responsible for properly entering that petition and the resulting decision in the file record. The petition, with any attached papers and supporting affidavits, will be given a single paper number and so entered in the "Contents" of the file. The decision will be accorded a separate paper number and similarly entered. To ensure entries in the "Contents" in proper order, the technical support staff in the TC will make certain that all papers prior to a petition have been entered and/or

listed in the application file before forwarding it for consideration of the petition. Note MPEP § 1002.02 (s). For Image File Wrapper (IFW) processing, see IFW Manual.

Petitions to make special are decided by the Special Program Examiner of the TC to which the application is assigned.

## 708.03    Examiner Tenders Resignation [R-2]

Whenever an examiner tenders his or her resignation, the supervisory patent examiner should see that the remaining time as far as possible is used in winding up the old complicated cases or those with involved records and getting as many of his or her amended cases as possible ready for final disposition.

If the examiner has considerable experience in his or her particular art, it is also advantageous to the Office if he or she indicates (in pencil) in the file wrappers of application in his or her docket, the field of search or other pertinent data that he or she considers appropriate. >For Image File Wrapper (IFW) processing, see IFW Manual.<

## 709    Suspension of Action [R-3]

*37 CFR 1.103. Suspension of action by the Office.*

(a) *Suspension for cause.* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph for good and sufficient cause. The Office will not suspend action if a reply by applicant to an Office action is outstanding. Any petition for suspension of action under this paragraph must specify a period of suspension not exceeding six months. Any petition for suspension of action under this paragraph must also include:

(1) A showing of good and sufficient cause for suspension of action; and

\*\*>

(2) The fee set forth in § 1.17(g), unless such cause is the fault of the Office.<

(b) *Limited suspension of action in a continued prosecution application (CPA) filed under § 1.53(d).* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph in a continued prosecution application filed under § 1.53(d) for a period not exceeding three months. Any request for suspension of action under this paragraph must be filed with the request for an application filed under § 1.53(d), specify the period of suspension, and include the processing fee set forth in § 1.17(i).

(c) *Limited suspension of action after a request for continued application (RCE) under § 1.114.* On request of the applicant, the Office may grant a suspension of action by the Office under this paragraph after the filing of a request for continued examina-