# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AFFINION NET PATENTS, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 04-360-JJF |
| | ) |
| v. | ) |
| | ) |
| MARITZ INC., | ) |
| | ) |
| Defendant. | ) |

**JOINT PRE-TRIAL ORDER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1044)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Plaintiff
Affinion Net Patents, Inc.

CONNOLLY, BOVE, LODGE & HUTZ LLP

Rudolf E. Hutz (#484)
Patricia Smink Rogowski (#2632)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
Attorneys for Defendant Maritz, Inc.

dozens of articles and spoken extensively on motivation and incentive programs for associations and publications throughout the world, has provided extensive consulting and training to corporations on program design, and continues to write extensively on the field for his company's own publications and others. Mr. Bolger has also received numerous honors in the field, including Person of the Year awards from Incentive Marketing Association and Society of Incentive Travel and Executives, two of the field's leading associations, as well as Best Speaker designations at industry events.

Bruce Bolger is president of Selling Communications Inc., a company he founded in 1996. Selling Communications is a target media, marketing, and technology company that assists organizations in maximizing the efficiency of new business development. As publisher of print and e-mail publications in the fields of motivation, incentives, and meetings, including Motivation Strategies, Results Marketing, SMERF Journal, and a consultant on motivation and incentive programs, Mr. Bolger's company is highly active in incentive industry.

2.   Arthur Keller, Ph.D.

Dr. Keller is an expert in the fields of electronic commerce, database management, and evaluating prior art for the purpose of patentability. Dr. Keller also has extensive experience in the field of promotions, incentives, and loyalty programs.

For about thirty-four years, Dr. Keller has been involved in the field of computer systems. For twenty-eight of those years, he has been involved in the field of database systems, and for about twelve years has been involved in the field of electronic commerce. In this regard, Dr. Keller has worked in both commercial and academic settings.

Dr. Keller received a Bachelor of Science *summa cum laude* from Brooklyn College (CUNY) in Mathematics and in Computer and Information Science, with honors in both majors.

# EXHIBIT 2

A. KELLER

U.S. DISTRICT COURT
FOURTH DISTRICT OF DELAWARE

AFFINION NET PATENTS, INC.,       )
                                  )
    Plaintiff,                    )
                                  )
                                  ) Cause No.
vs.                               ) 04-360-JJF
                                  )
MARITZ, INC.,                     )
                                  )
    Defendant.                    )

VIDEO DEPOSITION OF DR. ARTHUR KELLER
Taken on behalf of the Plaintiff
July 7, 2006

Sheryl A. Pautler, CCR 871

VERITEXT/NEW YORK REPORTING COMPANY
212-267-6868                                516-608-2400

A. KELLER

### Page 14

1  Q. (By Ms. Davis) So in your -- your definition
2  of the level of skill for the hypothetical person of
3  ordinary skill in the art is not addressing those aspects
4  of the claims that would be addressed to a person of
5  ordinary skill in the art in incentives or award --
6  frequency award programs?
7       MR. HARTLEY: Object to the form.
8       A. I would expect that the -- that if there were
9  a company who wanted to practice this invention, assuming
10 they were allowed to by appropriate licensing arrangements,
11 that that company would have an implementation team
12 consisting of one or more persons with expertise in
13 frequency and -- interactive, frequency, and award
14 redemptions programs as well as one or more persons whose
15 expertise was in implementation of systems -- computer
16 systems involving business and database systems.
17      My understanding is that based on my
18 experience in teaching students at the college level, is
19 that the students who -- graduates with a bachelor of
20 science degree, who had knowledge of business and database
21 systems and not all bachelor of science degrees and
22 computer science give people knowledge of business and
23 database systems. People who have knowledge of that would
24 be capable of understanding the system description as laid
25 out for implementation of the system as described in terms

### Page 15

1  of the computer science aspects.
2       What I find as a computer scientist are,
3  particularly if they have some background in business, are
4  capable of understanding business system concepts as they
5  are explained to them. There's something about the
6  training of computer science that it makes it easy to
7  understand -- easy to model systems, easier to deal with
8  different levels of abstraction, those are key learning
9  things in -- learning objectives in the teaching of
10 computer science. And those would afford such individuals
11 very valuable training so that they would be capable of
12 understanding all of the technical aspects and their
13 implications that are mentioned in the patents.
14      Q. (By Ms. Davis) Okay. I appreciate that
15 explanation of your view of it. I just want to make sure I
16 understand that your -- your discussion of a hypothetical
17 person of ordinary skill in the art, you're looking at the
18 person of skill in the art with respect to those certain
19 aspects of the claim and there may be other aspects of the
20 claim that are more -- that are addressed more to an expert
21 in incentive programs or frequency award programs and
22 you've distinguished in your definition between those two
23 types of expertise?
24      MR. HARTLEY: Object to the extent it
25 mischaracterizes his prior testimony.

### Page 16

1  A. Excuse me. I had a bug a few weeks ago and
2  I'm still suffering the lingering effects of it. So I
3  apologize if I'm frequently clearing my throat.
4       My understanding is that a practical
5  implementation of such a system would benefit from
6  people -- from interaction between people who are expert
7  in -- who are knowledgeable -- sorry -- who are
8  knowledgeable in interactive frequency and award redemption
9  programs, as well as people who are knowledge about
10 business and database systems or electronic commerce
11 systems. Go ahead.
12      Q. (By Ms. Davis) Okay. And I take it you do not
13 view yourself as being a person with -- who is an expert
14 with respect to interactive, frequency, and award
15 redemption programs?
16      A. The issue of interactive, frequency, and award
17 redemption programs is interesting. I have been a
18 participant in, a user of, frequency and award redemption
19 programs through the airlines, through credit cards, and
20 the like. I have, in terms of my studies of electronic
21 commerce, I have certainly been aware of those kinds of
22 systems and understanding some of the implications of those
23 systems on electronic commerce.
24      And in addition, the notion of interactive
25 frequency and award redemption programs are within the

### Page 17

1  larger field of promotions and frequency -- sorry --
2  promotions, incentives, and loyalty programs. It's a
3  larger field of which -- of which incentive and loyalty
4  programs fit within. And I have expertise and experience
5  within that larger field.
6       Q. So are you saying that you do view yourself as
7  an expert in the field of interactive, frequency, and award
8  redemption programs?
9       A. I see myself as having expertise in a larger
10 field that includes interactive, frequency, and award
11 redemption programs.
12      Q. But within that larger field, do you have
13 expertise in the field of frequency and award redemption
14 programs?
15      A. Let me explain, give you my answer by way of
16 an analogy. Somebody who had expertise in database systems
17 and you say to that person, oh, well, do you know Oracle.
18 And they say, I don't know Oracle, I know Sybase or I know
19 DB2. And you said, well, you have expertise in Oracle.
20 Well, if that person has expertise in Sybase or DB2, they
21 would be capable of understanding a lot of the principles
22 and issues involved in Oracle, independent of whether they
23 actually physically used Oracle for any extended period of
24 time.
25      A lot of the knowledge from using DB2 or

5 (Pages 14 to 17)

A. KELLER

Page 18

1  Sybase would translate over to a knowledge of using Oracle
2  because a lot of the principles and concepts are the same.
3      Q.  Well, what is it that you say you do have
4  expertise with that would make you an expert in the field
5  of frequency and award redemption programs?
6      A.  As I said earlier, I have expertise and
7  experience in the larger field of promotions, incentive
8  programs and loyalty programs.
9      Q.  What have you done -- what specifically have
10 you done in terms of experience or involvement with
11 promotions?
12     A.  My work in promotions involves several
13 different things. One of the things that I've done
14 involves a company called Globallings Network, which I am
15 the CEO of. And Globallings Network is involved in the
16 hospitality industry by providing Internet appliances in
17 hotel rooms to give guests access to the Internet as a free
18 amenity and also provides these guests through the Internet
19 appliance, Internet advertising including information about
20 the particular hotel property and surrounding community.
21     Q.  You said you had some experience with respect
22 to incentive programs. Tell me about that.
23     A.  I have -- I do not at this point recall any
24 specific experience with respect to incentive programs.
25     Q.  And you also mentioned you had experience with

Page 19

1  loyalty programs. Tell me about that.
2      A.  My experience with respect to loyalty programs
3  includes being a participant in a number of frequent flyer
4  programs, being a participant in various reward card
5  programs, as well as a participant in various other loyalty
6  programs operated by stores or chains.
7      Q.  So your experience with respect to loyalty
8  programs is based upon your experience as a user or
9  participant in those programs, not any of your professional
10 experience?
11     A.  As a professional computer scientist with
12 particular expertise in electronic commerce systems, I do
13 reading in the field which has included over the years
14 reading in systems, e-commerce systems, that include
15 reading about such -- reading about examples of e-commerce
16 systems.
17        In addition, as an expert in computer science,
18 when I am a participant in such a system, I often think
19 about how that system might operate, what the benefits and
20 drawbacks of the system are, what's the security
21 implication of that system.
22        I have on occasion found errors in the systems
23 and have reported such errors to the appropriate -- as far
24 as I could tell -- people within the various organizations
25 to report these kinds of errors. So the level of expertise

Page 20

1  that one would -- that I would gain through being involved
2  in these systems would be far in excess of somebody who
3  simply were to use a -- use one of these systems without
4  thinking or understanding anything about how those systems
5  operated.
6      Q.  But you've never done any work in implementing
7  or designing an incentive program or loyalty program?
8          MR. HARTLEY: Object to the form.
9      A.  I've done work in the larger field of
10 promotions, incentives, and loyalty and some of that work
11 may -- crosses the line between the promotion field and the
12 loyalty field.
13     Q.  (By Ms. Davis) What specifically in your mind
14 crossed the line between promotion and loyalty that you
15 were involved in with your work?
16     A.  I was one of the founders and chief technical
17 advisor and a principal -- the lead inventor on technology
18 that involved the use of determining what people were
19 purchasing and giving them coupons that would enable --
20 would give them rewards and discounts in terms of future
21 purchases.
22     Q.  Have you ever designed an incentive program?
23         MR. HARTLEY: Object to the form.
24     A.  I do not believe I've ever specifically
25 designed an incentive program.

Page 21

1      Q.  (By Ms. Davis) Have you ever sold incentive
2  programs?
3          MR. HARTLEY: Object to the form.
4      A.  I'm not a salesperson.
5      Q.  (By Ms. Davis) Have you ever implemented an
6  incentive program?
7          MR. HARTLEY: Same objection.
8      A.  I have never -- I do not believe I've ever
9  implemented a program that was specifically an incentive
10 program.
11     Q.  (By Ms. Davis) Have you ever designed, sold,
12 or implemented a loyalty program?
13         MR. HARTLEY: Object to the form.
14     A.  Earlier, I mentioned my work with the notion
15 of a promotion program that had some loyalty aspects to it.
16 And in that regard, I was involved in the design and -- of
17 that system.
18     Q.  (By Ms. Davis) Are you referring there to the
19 coupon system you were discussing earlier or to the hotel
20 room Internet system?
21     A.  Well, I certainly was involved in both
22 systems.
23     Q.  I just wasn't sure which one you were
24 referring to as being the design of a loyalty program.
25     A.  I believe I refer to a promotion system that

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AFFINION LOYALTY GROUP, INC., | ) |
| Plaintiff, | ) Civil Action No. 04-360-JJF |
| v. | ) |
| MARITZ INC., | ) |
| Defendant. | ) |

# EXPERT REPORT OF ARTHUR M. KELLER, PH.D.

## 1. INTRODUCTION AND BACKGROUND

I have been retained by defendant Maritz Inc. ("Maritz") as an expert. In my capacity as an expert, I was asked to offer my opinion on the validity of Claim 29 of U.S. Patent No. 5,774,870 ("the '870 Patent") and Claim 1 of U.S. Patent No. 6,578,012 ("the '012 Patent"). I understand that the validity of the other claims of the patents in suit are being addressed by another expert. If additional claims are asserted, I reserve the right to opine on the validity of those additional claims as well. I am being compensated at a rate of $450/hour for research and $600/hour for testimony. My compensation is not contingent in any way on the outcome of this case.

A list of the materials I considered is attached as Appendix 1.

## 2. QUALIFICATIONS

In 1977, I received a BS *summa cum laude* from Brooklyn College (CUNY) in Mathematics and in Computer and Information Science, with honors in both majors. I received my MS in 1979 and my PhD in 1985, both in Computer Science from the Stanford University. My dissertation was on updating relational databases through views. I have authored over 70 publications, including scientific articles related to databases, programming, distributed systems, and computerized typesetting. I wrote one textbook (translated into Spanish, French, Italian, and Japanese) and its instructors' manual on computer programming. I wrote several book chapters on database management and electronic commerce. My Curriculum Vitae is attached to this report as Appendix 2.

For about thirty-four years, I have been involved in the field of computer systems, for twenty-eight years, I have been involved in the field of database systems, and for about twelve

years I have been involved in the field of electronic commerce. In this regard, I have worked in both commercial and academic settings. Since 2001, I have served as Lecturer, Researcher and Visiting Associate Professor of Computer Science at the University of California at Santa Cruz, where I have taught undergraduate and graduate courses in database management and in systems analysis and design. I am also managing partner of Minerva Consulting, where I advise a variety of companies in the fields of databases, electronic commerce, and distributed systems. Previously, I was a Senior Research Scientist of Computer Science at Stanford University for approximately 12 years. At Stanford, I was responsible for managing research groups on various aspects of database management and electronic commerce as well as teaching courses on database management. The projects I managed at Stanford include the Penguin project on object interfaces to relational databases, the Paradata project on parallel databases, and the Fauve project on distributed databases, and I was also project manager at Stanford for CommerceNet on electronic commerce catalog integration. I also collaborated with the Tsimmis project on heterogeneous database integration.

  Based on my experience with the Penguin project, I served as Chief Technical Advisor and a member of the Board of Directors of Persistence Software prior to its IPO in June 1999. I provided technical advice to Persistence Software towards the development of their products, including their first product, a database access system for C++ that cached data from relational databases. Based on my work on electronic commerce, I was co-founder of Mergent Systems, which was acquired by Commerce One in January 2000. Mergent Systems integrated electronic catalogs from multiple companies through the use of database integration technology.

  In the last 4 years, I have testified as an expert witness in the following cases: MercExchange v. eBay, et al., for the defense; Business Objects vs. Microstrategy, for the

defense; Trilogy Software, Inc., and Trilogy Development Group, Inc. v. Selectica, Inc., and counterclaims, for the defendant and counterclaimant; Microstrategy v. Business Objects, for the plaintiff; and Hyperion v. OutlookSoft, for the defense of counterclaim.

## 3. LEVEL OF ORDINARY SKILL

I was asked to give an opinion as to the educational and vocational qualifications of one of ordinary skill in the field of electronic catalogs taught by Claim 29 of the '870 Patent and Claim 1 of the '012 Patent at the time of the invention. In the 1995 timeframe, a hypothetical person of ordinary skill in the art to whom the subject claim is addressed would have had a range of knowledge roughly equivalent to that of a person holding the degree of Bachelor of Science in Electrical Engineering, Computer Science, or Computer Engineering with knowledge of database systems. In reaching this opinion as to the qualifications of the hypothetical person of ordinary skill in the art, I have considered the types of problems encountered in the art, the prior art solutions to those problems, the rapidity with which innovations are made, the sophistication of the technology, and the educational level of active workers in the field.

## 4. LEGAL STANDARDS

In formulating my opinions and conclusions in this case, I have been provided with an understanding of the principles of United States patent law as they relate to claim interpretation and invalidity.

I am informed that, according to basic principles of patent law, a validity determination is a two-step process. First, the claim language must be construed to determine its scope and meaning. Second, the construed claim must be compared to the alleged prior art to determine whether the claim is valid.

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION LOYALTY GROUP, INC., | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 04-360-JJF |
| v. | ) ) ) | |
| MARITZ INC., | ) ) | |
| Defendant. | ) | |

# REBUTTAL REPORT OF ARTHUR M. KELLER, PH.D.

## 1. INTRODUCTION AND BACKGROUND

I have been retained by defendant Maritz Inc. ("Maritz") as an expert. In my capacity as an expert, I was asked to offer my opinion on the non-infringement of Claims 1 and 29 of U.S. Patent No. 5,774,870 ("the '870 Patent"), Claim 1 of U.S. Patent No. 6,578,012 ("the '012 Patent"), and Claims 10 through 17, 27 through 34, and 36 of U.S. Patent No. 6,009,412 ("the '412 Patent"). If additional claims are asserted, I reserve the right to opine on the non-infringement of those additional claims as well. I am being compensated at a rate of $450/hour for research and $600/hour for testimony. My compensation is not contingent in any way on the outcome of this case.

A list of the materials I considered is attached as Appendix 1.

## 2. QUALIFICATIONS

My background and qualifications are discussed in both my invalidity expert reports and that discussion is expressly incorporated herein by reference.

## 3. LEVEL OF ORDINARY SKILL

As discussed in my original invalidity report, a hypothetical person of ordinary skill in the art to whom aspects of the subject claims are addressed would have had a range of knowledge roughly equivalent to that of a person holding the degree of Bachelor of Science in Electrical Engineering, Computer Science, or Computer Engineering with knowledge of business and database systems. A hypothetical person of ordinary skill in the art to whom other aspects of the subject claims are addressed would have been a person skilled in the incentive field, specifically the customer loyalty field. It is my understanding that Mr. Bolger is opining on the level of ordinary skill in the incentive field.