# Exhibit 1

J. ALTEMUELLER

ORIGINAL

```
 1           UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
 2
 3
 4   AFFINION NET PATENTS, INC.,  )
                                  )
 5          Plaintiffs,            )
                                  )
 6          vs.                    ) Cause No. 04-360
                                  )
 7   MARITZ, INC.,                 )
                                  )
 8          Defendants.            )
 9
10
11
12
13
14      VIDEOTAPED DEPOSITION OF JEFFREY L. ALTEMUELLER
15           TAKEN ON BEHALF OF THE PLAINTIFFS
16                    JULY 28, 2006
```

J. ALTEMUELLER

252

1   A.   Within the limits of my knowledge, yes.
2   Q.   Okay. Well -- well, what is your
3   knowledge? I mean, I understand your knowledge is to
4   be a person who is knowledgeable in -- about the
5   Maritz Loyalty Marketing programs.
6   A.   That is my strongest area of expertise,
7   yes.
8   Q.   Okay. Now, you don't work for Maritz
9   Incentives; is that correct?
10  A.   No, but I actually, in that level, don't
11  exactly work for Maritz Loyalty Marketing either.  I
12  work, actually, for the IT department that services
13  both organizations.
14  Q.   Do you work in the section of the IT
15  department that services the Maritz incentives
16  programs?
17  A.   I do not work in that department.
18  Q.   Okay. So you have limited knowledge in the
19  incentives programs?
20  A.   That's correct.
21  Q.   Okay. So looking at claim ten of the 412
22  patent, if you turn to that. I see you already have
23  it.
24  A.   Yeah, I'm there.
25  Q.   Which limitations of claim ten do you

J. ALTEMUELLER

253

1  believe Maritz has not infringed?
2     A.   I believe we do not infringe on
3  implementing an on-line incentive program.
4     Q.   Okay.  What is the basis for that opinion?
5     A.   I think that's based on both the Maritz
6  construction of what the definition of an on-line
7  incentive program is and really even based on our --
8  or my understanding of the Affinion construction of or
9  definition of that term.
10    Q.   Okay.  Now, based on Affinion's
11 construction, why do you not make that limitation of
12 the claim?
13    A.   I think in Affinion's construction, they
14 ultimately move to relate that to a program web page,
15 which, as I've been able to find by looking through
16 the documentation, is ultimately used synonymously
17 with the program home page, which is referred to and
18 defined in the specification of the patent.
19         When I go through the specification of the
20 patent for the description of the program home page,
21 then that was where I found, as I was alluding to
22 earlier, that the flow of the system, the sequence,
23 the steps taken and so forth do not match the flow of
24 our systems.  So even if I substitute that definition,
25 then I would still say that we don't meet that system

254

1  design and flow.
2      Q.   Okay.  And what is the system design flow
3  that you believe is required by the claim?
4      A.   The one that's depicted in, I think,
5  figures one through five or six of the patent.
6  Previously in the patent I believe --
7      Q.   Where -- where in the language of that
8  claim do you find a sequence or order?
9      A.   An example of one I think -- I think --
10     Q.   Let me -- I'm sorry.  I think I need to
11 back up.
12          In the phrase implementing an on-line
13 incentive program, you -- you believe that phrase
14 requires a sequence or order of events?  Is that what
15 you're saying?
16     A.   No.  I was stating that in the definition
17 of that term that Maritz is proposing, we feel like we
18 do not infringe on the claim because, per our
19 definition, that carries a sense of product purchase
20 and an immediacy of processing that our systems have
21 never provided.
22          If I look at the definition of that phrase
23 on the Affinion side, then that phrase does not seek
24 to introduce product purchase per se or something, but
25 it will ultimately refer to the definition of a --

J. ALTEMUELLER

255

1  a -- a program home page, or in this case, I think,
2  perhaps a program web page, which I was equating to
3  home page because program web page didn't seem to be
4  defined anyplace.
5       So as I went back to look at what the
6  definition of a program home page was, that was
7  defined extensively in the specification of the
8  patent. When I went back to examine that as the
9  definition for the system, should the judge rule that
10 way, I still feel that we did not infringe because our
11 system implementation does not match that description
12 of a system.
13      Q.  Okay.  So you're saying that the definition
14 in -- proposed by Mar -- by Affinion which requires a
15 program web page means a program home page, which
16 means the sequence described in the figures of the
17 patent?
18      A.  Yes.
19      Q.  Okay.  Is there any other basis for your
20 opinion that Maritz does not infringe the first
21 limitation of claim ten?
22      A.  No.  I think that's --
23      Q.  Okay.
24      A.  -- sufficient.
25      Q.  So other than implementing an on-line

J. ALTEMUELLER

308

1   the first two techniques where we either receive
2   points precalculated by the client in a file form,
3   they will add points as specified here. In those
4   circumstances where we receive the transaction file of
5   consumer behaviors and then we calculate points and
6   then add them to the user's account as specified here,
7   those would comply with this. In the third
8   circumstance where the client systems do both the
9   calculation and the point management, they would not
10  comply with this.
11          Q.   Now if you'll look at the top right box.
12  This is on exhibit -- Defendant's Exhibit 302. This
13  is Affinion's proposed definition of on-line incentive
14  program. Do you see that?
15          A.   Yes.
16          Q.   Did you apply that definition to Maritz's
17  Vault and AwardHQ systems?
18          A.   Yes.
19          Q.   As program home page is used in the 412
20  patent, would Maritz's Vault system satisfy this
21  element?
22          A.   It would not.
23               MS. BRENNER: Objection, vague, calls for a
24  legal conclusion.
25          A.   It would not.

J. ALTEMUELLER

309

```
 1        Q.   (By Mr. Vander Tuig)  And why not?
 2        A.   As I had alluded to previously, the
 3   description and functionality and flow of the program
 4   home page system described in the specification of the
 5   patent does not match the logical flow and
 6   functionality of the Maritz systems.
 7        Q.   Is there anything besides simply the flow
 8   that does not match?
 9        A.   The functionality as well.  Not simply the
10   sequence of things, but as I alluded to previously
11   when I was discussing the high level figures, the --
12   the flow isn't simply one function to the next, but
13   also simply how you -- how can you get to a function
14   or what other functions are required to be performed
15   before you could proceed on.  So in that sense there's
16   both like flow and functional differences between the
17   systems.
18        Q.   In the 412 patent, does it describe
19   functionalities that aren't -- of the program home
20   page that aren't present in Maritz's systems?
21        A.   There is significant discussion in that
22   program home page flow, particularly around things
23   like the product home page that do not exist in any of
24   the Maritz systems.
25             VIDEOGRAPHER:  One moment, please.  I have
```