# Exhibit 2



Office de la propriété
intellectuelle
du Canada

Un organisme
d'Industrie Canada
www.opic.gc.ca

Canadian
Intellectual Property
Office

An Agency of
Industry Canada
www.cipo.gc.ca

April 10, 2003

GOWLING LAFLEUR HENDERSON LLP
2600 - 160 Elgin Street
OTTAWA Ontario
K1P 1C3

| | | |
|---|---|---|
| **Application No.** | : | 2,240,424 |
| **Owner** | : | TRILEGIANT CORPORATION |
| **Title** | : | *FULLY INTEGRATED, ON-LINE INTERACTIVE FREQUENCY AND AWARD REDEMPTION PROGRAM* |
| **Classification** | : | G06F-17/60 |
| **Your File No.** | : | 08-879916CA |
| **Examiner** | : | Leigh Matheson |

*IN ACCORDANCE WITH SUBSECTION 30(2) OF THE PATENT RULES, YOU ARE HEREBY NOTIFIED OF A REQUISITION BY THE EXAMINER. IN ORDER TO AVOID ABANDONMENT UNDER PARAGRAPH 73(1)(a) OF THE PATENT ACT, A WRITTEN REPLY MUST BE RECEIVED WITHIN SIX MONTHS OF THE ABOVE DATE.*

This application has been examined taking into account the applicant's correspondence dated 31 January 2000.

There are 30 claims in this application.

A search of the prior art has revealed the following:

**Applied references**

<u>United States patents</u>
| | | | | |
|---|---|---|---|---|
| 5,287,268 | 15 February 1994 | G07G 1/12 | (364/405) | McCarthy |
| 5,056,019 | 08 October 1991 | G06F 15/21 | (364/405) | Schultz et al. |
| 5,025,372 | 18 June 1991 | G06F 15/21 | (364/406) | Burton et al. |

<u>Publication</u>
*Introduction to data base management in business*
Bradley
CBS College Publishing, 2nd edition, 1987

Canada                                                                 OPIC  CIPO

AFF-MTZ 003544
CONFIDENTIAL

EX. 1334-0125

2,240,424                                  -2-

McCarthy teaches a centralized computer system for awarding incentive points to consumers for point-of-sale transactions with participating merchants. Accounts are maintained at a central location for the consumers, and the value in an account is incremented after each relevant transaction. At selected intervals, consumers are granted access to the value in their accounts.

Schultz et al. teach a card based method for automatically keeping track of customers' purchases and awarding them incentive points therefor. Periodically, account reports and reward certificates are issued to the customers.

Burton et al. teach a credit based incentive award program harnesses data processing, programming, and computer communication networks for accounting, managing, and communicating.

Bradley introduces and gives an overview of the subject of database management in business, discussing the major types, uses, and components of databases.

*Non-patentable subject matter*

Claims 1, 21, and 22 describe a general purpose computer system with various pieces of information (to wit, a product catalogue, an awards catalogue, and an accounts database,) stored in its memory. It is obvious that a computer system can store data in its memory, and stored, non-functional descriptive material is not patentable under section 2 of the Patent Act.

*Lack of unity*

The claims are directed to a plurality of alleged inventions as follows:

   Group A - Claims 1 to 18 and 21 to 30 are directed to systems, methods, and software for managing an online incentives award program; and
   Group B - Claims 19 and 20 are directed to methods for storing and displaying information.

The claims must be limited to one invention only as set out in section 36 of the Patent Act.

AFF-MTZ 003545
CONFIDENTIAL

EX. 1334-0126

2,240,424                                     - 3 -

*Obviousness*

Claims 1 to 18 and 21 to 30 relate to a system for managing and running an online points incentive program that is obvious in view of the common art.

There is nothing new about points based incentive programs in themselves; the applicant even discusses two typical models for such programs (pages 1 and 2). Nor is there anything new about assembling networks of computers so as to quickly and efficiently communicate data between them; this is borne out by the fact that the applicant does not attempt to disclose any new hardware or systems and describes only the functioning of the software in general terms. This leaves as the discovery at the heart of this application the realization that by harnessing the abilities of the Internet, certain efficiencies can be gained in the administration of a points incentive program (page 2, line 17 to page 3, line 17). The incentive award plan itself has not changed, (and even if it had, those details would be left to the professional skill of the marketing people designing it,) it is now simply specifying the use of online communications instead of telephones and mail, web pages instead of paper catalogues, databases instead of paper records, and the use of software to automate a known incentive plan management method. It is held to be obvious that the use of known computers and the Internet would convey certain advantages to the management of such a plan - it is for just these advantages that these computers and networks were first constructed. That is why McCarthy (abstract), Schultz et al. (abstract), and Burton et al. (abstract) all utilized computers and computer networks in their incentive schemes.

Claims 19 and 20 discuss a method of storing and displaying a database of articles that is obvious in view of common knowledge. Articles are sorted into different categories according to value. Upon receiving a request to review certain articles, (the request naming a value,) all articles of the category corresponding to the named value, and all articles of categories corresponding to lower values, are made available. This is the same procedure that happens when a customer walks into a store and requests to see the items available within a certain price range. It is held to be obvious that it could be employed using a database. Bradley gives a few examples of the many possible queries that will return records, provided that the value in one of their fields falls within a defined range (pages 302 to 306).

The subject matter of claims 1 to 30 would have been obvious to a person skilled in the art in view of the common art as demonstrated by the applicant, McCarthy, Schultz et al., Burton et al., and Bradley. Therefore, none of the claims on file comply with section 28.3 of the Patent Act.

Although there is not considered to be any patentable subject matter within this application, the additional objections are made for completeness.

AFF-MTZ 003546
CONFIDENTIAL

EX. 1334-0127

2,240,424                                    - 4 -

### Indefiniteness

Claim 1 describes a computer system comprising only two "memory areas" and a "frequency database". It is not clear how these items could comprise a machine, (which is how a system is viewed under section 2 of the Patent Act,) or how and where they would fit into the overall machine.

Claim 2 in dependent on claim 1 and fails to overcome the objections made for that claim. In addition, claim 2 states that the system is "programmed to perform" certain steps. It is not explained how the system has been programmed, only the steps are described. Also, it is unclear whether the user is local or remote.

Claims 3 to 9 and 26 to 30 are dependent on claim 2 and fail to overcome the objections made for that claim.

Furthermore, The term "striping electronic entries" in claims 3 and 15 is not defined.

Furthermore, the preamble of claim 15 is ambiguous. It is assumed that the preamble was intended to state "A computer-readable medium having recorded thereon statements and instructions for use in the execution in a computer of a method, the method comprising:" and the claim was interpreted accordingly.

Claims 16 to 18 are dependent on claim 15 and fail to overcome the objections made for that claim.

Furthermore, claim 26 is identical to claim 5 and is therefore redundant.

Furthermore, claim 28 is describing a system that further comprises "an access code". It is unclear how a machine can be partly made up of an access code.

Therefore, claims 1 to 9, 15 to 18, and 26 to 30 are indefinite and do not comply with subsection 27(4) of the Patent Act.

### Disclosure

The disclosure does not describe any hardware, and only describes the outcome of running the software in general terms. The disclosure must fully describe all of the hardware, software, data structures, and interactions necessary to construct the system if this application is to comply with subsection 27(3) of the Patent Act.
Page 1, lines 12, 14, and 16, and page 2, line 10 refer to "millage" instead of "mileage".

AFF-MTZ 003547
CONFIDENTIAL

EX. 1334-0128

2,240,424                              - 5 -

Page 3, lines 21 and 25 refer to "merchandize" instead of "merchandise".

Under section 29 of the Patent Rules, the applicant is requested to provide an identification of any prior art cited in respect of the corresponding European application. If the particulars are not available, the reasons why must be stated. The above requested information must be provided regardless of the current status of the European application.

In view of the foregoing defects, the applicant is requested to amend the application in order to comply with the Patent Act and the Patent Rules or to provide arguments as to why the application does comply.

Leigh Matheson
Patent Examiner
(819) 997-1425
2240424A.LAM

AFF-MTZ 003548
CONFIDENTIAL

EX. 1334-0129

# Exhibit 3

Westlaw.

Slip Copy
Slip Copy, 2005 WL 3525681 (D.Del.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
PFIZER INC., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company, LLC, and Warner-Lambert Export, Ltd., Plaintiffs,
v.
RANBAXY LABORATORIES LIMITED and Ranbaxy Pharmaceuticals, Inc., Defendants.
No. Civ.A. 03-209-JJF.

Dec. 22, 2005.

Rudolf E. Hutz, Jeffrey B. Bove, Collins J. Seitz, Jr., and Mary W. Bourke, of Connoly Bove Lodge & Hutz LLP, Wilmington, Delaware for Plaintiffs.
Steven J. Balick, and John G. Day, of Ashby & Geddes, Wilmington, Delaware. Darrell L. Olson, John P. Giezentanner, Douglas G. Muehlhauser, William R. Zimmerman, Payson LeMeilleur, Sheila N. Swaroop, Darryl H. Steensma, and Walter S. Wu, of Knobbe, Martens, Olson & Bear, LLP, Irvine, California, Jay R. Deshmukh, and George E. Heibel, of Ranbaxy, Inc., Princeton, New Jersey, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Pending before the Court are two post-trial motions filed by Plaintiffs, Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company, LLC and Warner-Lambert Export, Ltd. (collectively, "Pfizer"): (1) Pfizer's Rule 37(c)(1) Motion To Exclude Previously Undisclosed Expert Opinions And Exhibits (D.I.314), and (2) Pfizer's Motion To Exclude The Austrian Patent Office Decision Under Federal Rules Of Evidence 402 and 403 (D.I.319). Answer Briefs to the Motions have been filed by Defendants, Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals Incorporated (collectively "Ranbaxy"). For the reasons discussed, the Court will grant-in-part and deny-in-part Pfizer's Rule 37(c)(1) Motion and deny Pfizer's Motion To Exclude The Austrian Patent Office Decision. In addition, the Court will sustain-in-part and overrule-in-part Pfizer's post-trial objections to Dr. Butler's papers.

DISCUSSION

I. Pfizer's Rule 37(c)(1) Motion

A. *The Parties' Contentions*

By its Motion, Pfizer requests the Court to exclude two expert opinions offered by Ranbaxy at trial which Pfizer contends were not previously disclosed, and any findings of fact and conclusion of law offered by Ranbaxy in their post-trial briefs which rely upon these allegedly undisclosed opinions. Specifically, Pfizer seeks to exclude the opinion of Dr. Cooperman regarding the use of nuclear magnetic resonance spectra to determine the alleged impurity of racemic atorvastatin lactone compounds and the opinion of Dr. Bowman regarding an econometric regression analysis that he had performed.

In response, Ranbaxy contends that Dr. Cooperman's expert report indicated that he "expect[ed] to testify [concerning] rebuttal testimony to any testimony offered by witnesses for Pfizer." D.I. 323, Exh. B, DTX 409, ¶ 10. Ranbaxy further contends that Dr. Cooperman's trial testimony concerning the use of nuclear magnetic resonance ("NMR") spectra to determine the alleged impurity of racemic atorvastatin lactone compounds was consistent with the opinions in his expert report that the data provided in the '995 patent was unreliable. Procedurally, Ranbaxy contends that it complied with the provisions of the Pretrial Order which required "each party to provide the other party of a list of witnesses that it intends to call and a list of the non-demonstrative and demonstrative exhibits that the party intends to use with the witness by 6pm two calendar days before the witness is expected to testify." (D.I. 219 at 5, ¶ C). In addition, Ranbaxy points out that Pfizer's expert, Dr. Roush, testified after Dr. Cooperman, and thus, Ranbaxy contends that Pfizer had ample opportunity to prepare for cross-examination of Dr. Cooperman and rebut his testimony through the testimony of Dr. Roush.

As for Dr. Bowman's analysis, Ranbaxy contends that it complied with its disclosure obligations by providing Pfizer with the exhibits in question well

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3525681 (D.Del.)
(Cite as: Slip Copy)

Page 2

before trial. Ranbaxy also contends that Pfizer has not demonstrated any prejudice as a result of Dr. Bowman's testimony, and therefore, exclusion of his testimony and the related exhibits is not warranted.

B. *Analysis*

*2 Pursuant to Federal Rule of Evidence 26(a)(2)(B), an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Failure to disclose information required by this Rule may result in the exclusion of evidence based on that information, unless the failure to disclose is harmless. Fed.R.Civ.P. 37(c)(1). The determination of whether to exclude evidence is committed to the Court's discretion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir.1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard) (internal citations omitted).

1. Dr. Cooperman's testimony and related exhibits

At trial, Pfizer objected to the testimony of Dr. Cooperman to the extent it pertained to impurities of racemic atorvastatin lactone compounds based on NMR spectra. The Court reserved ruling on Pfizer's objection but stated that "[i]f it's not fairly noticed in the report, it gets excluded; if it's in the report, the objection gets overruled." Tr. 1364:20-23. The Court has reviewed Dr. Cooperman's report and finds no mention of alleged impurities of racemic atorvastatin lactone compounds or the use of NMR to measure the impurity content of compounds. At his deposition, Dr. Cooperman testified that he had performed preliminary calculations to determine the effect of the 3% S-isomer contamination of atorvastatin lactone (the R-isomer) in CSI 107. These calculations were later provided to Pfizer, and Dr. Cooperman was made available for second deposition. At no time during his first or second deposition did Dr. Cooperman mention the use of NMR to measure impurities of racemic atorvastatin lactone compounds. Ranbaxy has not provided an explanation for its failure to fulfil its disclosure obligations under Rule 26, and Pfizer was denied the opportunity to prepare for rebuttal to Dr. Cooperman's testimony.[FN1] Accordingly, the Court will exclude Dr. Cooperman's testimony concerning the use of NMR spectra to assess impurities in racemic atorvastatin lactone, and any findings of fact and conclusions of law submitted by Ranbaxy based on this testimony.

> FN1. Ranbaxy contends that Dr. Cooperman's testimony was based on the "newly created" justification for disregarding certain data based on impurities offered by Dr. Roth at trial. Ranbaxy has not indicated to the Court that it objected to Dr. Roth's testimony at trial, and the Court has been unable to locate any such objection in the record. Further, Ranbaxy introduced DTX 3325A during the testimony of Dr. Roth, which suggests to the Court that Ranbaxy was on notice as to Dr. Roth's testimony. However, to the extent that Pfizer seeks to exclude DTX 3325A from the trial exhibits, the Court declines to do so. This exhibit was not objected to when it was introduced through Dr. Roth, and the Court has been unable to locate any trial objection by Pfizer to this exhibit, although Pfizer did timely object to Dr. Cooperman's testimony. Accordingly, the Court will allow the exhibit into evidence to the extent it applied to Dr. Roth's testimony, but strike any testimony from Dr. Cooperman regarding the exhibit.

2. Dr. Bowman's testimony and related exhibits

As for the testimony and exhibits regarding the regression analysis of Dr. Bowman, the Court finds that Ranbaxy complied with its disclosure obligations, and therefore, this testimony and the related exhibits will not be excluded from the trial record. Pfizer was on notice that Dr. Bowman would be performing a new regression analysis if errors were found in the analysis. The corrected analysis was produced to Pfizer during Dr. Rao's deposition in August 2004 as DTX 484 and again in October 2004 as DTX 868. Both of these exhibits were also listed in the Pretrial Order. As for DTX 3477, which Pfizer also seeks to exclude, the Court observes that this exhibit is merely a summary of DTX 868 and contains no new information. Because no new materials were presented to Pfizer on the eve of the witness's testimony and Pfizer had notice well before trial of the exhibits in question, the Court concludes that Ranbaxy has complied with its duties to disclose and supplement insofar as the Bowman materials are concerned. Accordingly, the Court will deny Pfizer's motion to exclude Dr. Bowman's trial testimony and related exhibits.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 3
Slip Copy, 2005 WL 3525681 (D.Del.)
**(Cite as: Slip Copy)**

### 3. Dr. Butler's papers

\*3 In its Supplemental Findings of Fact and Supplemental Conclusion of Law, Pfizer moves the Court to exclude certain documents that were not proffered at trial, but were included in Ranbaxy's Findings of Fact.[FN2] Pfizer contends that these documents should be excluded from the trial record under Federal Rule of Evidence 613(b). Pfizer contends that Ranbaxy is using these documents as prior inconsistent statements to impeach Dr. Daignault, and therefore, Dr. Daignault should have had the opportunity to be presented with these documents.

> FN2. Although the Court will address these matters, the Court notes that the objections should have been lodged separately and not contained within the body of Pfizer's filings.

In response, Ranbaxy contends that the Court should not exclude this evidence. Ranbaxy contends that the manuscript request forms in question are not evidence of any prior inconsistent statement by Dr. Daignault, and that they are proper rebuttal evidence. Ranbaxy also contends that Dr. Butler's letter and manuscript review forms are part of the trial record contained in Defendant's Exhibit 293.

Although Ranbaxy contends that the documents in question are not evidence of prior inconsistent statements, it is clear to the Court that they are being used by Ranbaxy in this manner. Although they may not be prior inconsistent statements *per se,* Ranbaxy urges the Court to view these documents as indicative of Dr. Daignault's awareness and understanding of the '080 patent in an effort to undermine his trial testimony to the contrary. To this extent, the Court concludes that the documents should have been presented to Dr. Daignault under Rule 613(b). Accordingly, to the extent that the documents can be considered prior inconsistent statements, the Court will exclude them from the trial record.

To the extent these documents can be construed differently, the Court will allow their admission into evidence but afford them limited weight. Dr. Daignault was not given the opportunity to discuss the documents, and the documents were raised by way of post-trial briefing.

### II. Pfizer's Motion To Exclude The Australian Patent Office Decision

#### A. *Parties' Contentions*

By its Motion, Pfizer requests the Court to exclude the Australian Patent Office decision relied upon by Ranbaxy in its Opposition Post-Trial Brief. Pfizer contends that the decision of the Nullity Division of the Austrian Patent Office is non-final and irrelevant to the validity of claim 6 of the '995 patent over prior art under United States law.

In response, Ranbaxy contends that this evidence should not be stricken from the record, because it has at least some relevance to this litigation under Federal Rule of Evidence 402. Ranbaxy also contends that Pfizer has not demonstrated unfair prejudice, confusion, undue delay or that the evidence is cumulative under Federal Rule of Civil Procedure 403.

#### B. *Analysis*

Reviewing the challenged evidence in light of the standards for admissibility, the Court concludes that the evidence offered by Ranbaxy should not be stricken. The Federal Circuit does not endorse the *per se* exclusion of evidence related to foreign patent prosecutions. Rather, the Federal Circuit has recognized that such matters may be relevant in certain circumstances. See e.g. *Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n,* 109 F.3d 726, 733 (Fed.Cir.1997); *Caterpillar Tractor Co. v. Berco, S.p.A.,* 714 F.2d 1110, 1116 (Fed.Cir.1983). Indeed, this Court has also recognized the "limited relevance" of proceedings adjudicating patent rights in foreign jurisdictions. See *Bayer AG v. Sony Electronics, Inc.,* 229 F.Supp.2d 332, 369 (D.Del.2002). Because the Court cannot conclude that this evidence is entirely irrelevant, and Pfizer has not advanced any grounds under Rule 403 justifying its exclusion, the Court will admit the evidence and address Pfizer's concerns in terms of the weight to be afforded this evidence. Accordingly, Pfizer's Motion To Exclude The Austrian Patent Office Decision will be denied.

### CONCLUSION

\*4 For the reasons discussed, Pfizer's Rule 37(c)(1) Motion To Exclude Previously Undisclosed Expert Opinions And Exhibits will be granted as it pertains

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3525681 (D.Del.)
**(Cite as: Slip Copy)**

Page 4

to Dr. Cooperman's testimony and the findings of fact and conclusions of law based on that testimony, and denied as it pertains to the testimony of Dr. Bowman and the exhibits, findings of fact and conclusions of law related to his testimony. Pfizer's Objections to Dr. Butler's papers contained in the post-trial briefing will be sustained to the extent that the papers are prior inconsistent statements and overruled to the extent they can be considered other impeachment evidence.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 22 day of December 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Pfizer's Rule 37(c)(1) Motion To Exclude Previously Undisclosed Expert Opinions And Exhibits (D.I.314) is *GRANTED* as it pertains to Dr. Cooperman's testimony and the findings of fact and conclusion of law based on that testimony which were submitted by Ranbaxy, and *DENIED* as it pertains to the testimony of Dr. Bowman and the exhibits, findings of fact and conclusions of law related to his testimony.

2. Pfizer's Motion To Exclude The Austrian Patent Office Decision Under Federal Rules Of Evidence 402 and 403 (D.I.319) is *DENIED*.

3. Pfizer's Objections to Dr. Butler's papers raised in the post-trial briefing are *SUSTAINED* to the extent that the Butler papers are prior inconsistent statements and *OVERRULED* to the extent that they can be considered other impeachment evidence.

D.Del.,2005.
Pfizer Inc. v. Ranbaxy Laboratories Ltd.
Slip Copy, 2005 WL 3525681 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00209 (Docket) (Feb. 21, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 4



UNITED STATES DEPARTMENT OF COMMER
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO |
|---|---|---|---|
|  |  |  |  |

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBE |
|---|---|
|  | 10 |

DATE MAILED:

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trade

FH 00251

EX. 1000-0116

| Office Action Summary | Application No. 09/105,227 | Applicant(s) Storey | |
|---|---|---|---|
| | Examiner Yehdega Retta | Group Art Unit 2764 | |

☒ Responsive to communication(s) filed on _Jun 25, 1998_.

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

Disposition of Claims

☒ Claim(s) _31-66_ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _31, 32, 37-41, 44, 48, 54-58, 61, 65, and 66_ is/are rejected.

☒ Claim(s) _33-36, 42, 43, 45-47, 49-53, 59, 60, and 62-64_ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

Application Papers

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

Priority under 35 U.S.C. § 119

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____.

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____.

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

Attachment(s)

☐ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). _7_

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

FH 00252

--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---

U.S. Patent and Trademark Office
PTO-326 (Rev. 9-95)                    Office Action Summary                   Part of Paper No. _10_

Application/Control Number: 9105227                                                          Page 2

Art Unit: 2764

### DETAILED ACTION

#### *Double Patenting*

1. The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321© may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

2. Claims 31, 32, 37-41, 44, 48, 54-58, 61, 65 and 66 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 17 and 24-27 of U.S. Patent No. 5,774,870. Although the conflicting claims are not identical, they are not patentably distinct from each other because they are obvious variations of each other.

Claims 31 and 32 are similar to claim 17 of patent 5774870. However, claim 17 does not specifically claim the step of determining whether user qualifies for award points based on said user's response to purchase of product or whether user is enrolled in incentive program. Patented claim 17 specifies providing an on-line purchase order form and allowing user to electronically send entries for purchase order and calculating award points based on the purchase of a product.

FH 00253

EX. 1000-0118

Application/Control Number: 9105227  Page 3
Art Unit: 2764

It would have been obvious to a person of ordinary skill in the art at the time of the invention was made to determine whether the user was qualified for ward points or is enrolled in the incentive program before calculating the points and updating the award account of the user. Further, patented claim 17 does not specifically claim Internet webpage for on-line interactive communication. However, patented claim 17 shows providing user on-line access to catalogs and forms. It would have been obvious to a person of ordinary skill in the art at the time of the invention was made to include webpage that links the user to the right catalog or form.

    Claim 40 is similar to patented claim 17. Claim 40 differs from patented claim 17 in that patented claim 17 does not specifically show Internet webpage. However, it would have been obvious to a person of ordinary skill in the art at the time of the invention was made to implement an Internet webpage accessible to a user for interactive communications.

    Claim 48 is similar to patented claims 24-26. Claim 48 differs from patented claims 24-26 in that patented claims 24-26 does not specifically show the step to determine whether user qualifies for award points based on said user's response to purchase of product. Patented claims 24-26 specifies providing an on-line access to product and award program homepage, purchase order form and allowing user to electronically send entries for purchase order, calculating award points based on the purchase of a product and saving the award points in user award account. It would have been obvious to a person of ordinary skill in the art at the time of the invention was made to determine whether the user was qualified for ward points before calculating the points and updating the award account of the user.

Application/Control Number: 9105227                                                                 Page 4
Art Unit: 2764

As per claims 57 and 66, all limitations are found in patented claims 24-27.

As per claim 65, all limitations are found in patented claim 17.

*Allowable Subject Matter*

3.   Claims 33-36, 42, 43, 45-47, 49-53, 59, 60 and 62-64 objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

*Conclusion*

4.   Any inquiry concerning this communication or earlier communications from the examiner should be directed to Yehdega Retta whose telephone number is (703) 305-0436. The examiner can normally be reached on Monday to Friday from 7:00 AM to 4:30 PM. If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Trammell, can be reached on (703) 305-9768.

Examiner
Yehdega Retta
Art Unit 2764
May 10, 1999

James R. Trammell
Supervisory Patent Examiner
Technology Center 2700

FH 00255

EX. 1000-0120