IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFINION LOYALTY GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-360-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| MARITZ INC., | ) | |
| | ) | |
| Defendant. | ) | |

# REBUTTAL REPORT OF ARTHUR M. KELLER, PH.D.



## 1. INTRODUCTION AND BACKGROUND

I have been retained by defendant Maritz Inc. ("Maritz") as an expert. In my capacity as an expert, I was asked to offer my opinion on the non-infringement of Claims 1 and 29 of U.S. Patent No. 5,774,870 ("the '870 Patent"), Claim 1 of U.S. Patent No. 6,578,012 ("the '012 Patent"), and Claims 10 through 17, 27 through 34, and 36 of U.S. Patent No. 6,009,412 ("the '412 Patent"). If additional claims are asserted, I reserve the right to opine on the non-infringement of those additional claims as well. I am being compensated at a rate of $450/hour for research and $600/hour for testimony. My compensation is not contingent in any way on the outcome of this case.

A list of the materials I considered is attached as Appendix 1.

## 2. QUALIFICATIONS

My background and qualifications are discussed in both my invalidity expert reports and that discussion is expressly incorporated herein by reference.

## 3. LEVEL OF ORDINARY SKILL

As discussed in my original invalidity report, a hypothetical person of ordinary skill in the art to whom aspects of the subject claims are addressed would have had a range of knowledge roughly equivalent to that of a person holding the degree of Bachelor of Science in Electrical Engineering, Computer Science, or Computer Engineering with knowledge of business and database systems. A hypothetical person of ordinary skill in the art to whom other aspects of the subject claims are addressed would have been a person skilled in the incentive field, specifically the customer loyalty field. It is my understanding that Mr. Bolger is opining on the level of ordinary skill in the incentive field.

## 4. LEGAL STANDARDS

In formulating my opinions and conclusions in this case, I have been provided with an understanding of the principles of United States patent law as they relate to claim interpretation and infringement.

I am informed that, according to basic principles of patent law, an infringement determination is a two-step process. First, the claim language must be construed to determine its scope and meaning. Second, the construed claim must be compared to the accused device to determine whether the claim is infringed.

In performing my analysis of the proper interpretation to be given to the claims of the '870 Patent, '012 Patent, and '412 Patent, it is my understanding that terms are to be given their plain and ordinary meaning, in light of the specification and file history, as viewed by one of ordinary skill in the art at the time the application was filed. In addition, a person of ordinary skill in the art has knowledge beyond what is written in the specification. This knowledge may be used to understand the meaning of claim terms. I further understand that a patentee can act as his own lexicographer and define any claim term in the specification or file history.

## 5. NON-INFRINGEMENT OF CLAIM 29 OF THE '870 PATENT

Analysis of the infringement or non-infringement of a claim must depend on the proper interpretation of the claim elements. Claim 29 of the '870 Patent provides:

29. A method of storing and displaying a database of articles comprising:
    assigning a value for each article of said database;
    defining a plurality of escalating levels;
    assigning each of said articles to only one of said plurality of escalating levels, depending on the value assigned to each of said articles;
    receiving a request to review said articles, and determining a level to which said request correspond; and,
    making available for review only those articles corresponding to the level to which said request corresponds and any lower level.

The term "article" appears only in the claims. Webster's Ninth New Collegiate Dictionary defines article as "a member of a class of things." However, databases do not directly store "things," but they do store identifiers for or information about things. Therefore, one of ordinary skill in the art at the time the '870 Patent was filed would understand "article" to mean "identifier or information about a thing." One of ordinary skill in the art at the time the '870 Patent was filed would understand "value" to mean "a quantity, such as a number or text string."

The term "level" is used in the specification with reference to menu level ('870 Patent 3:36–40), incentive level ('870 Patent 4:3–15), purchasing level ('870 Patent 4:20–23), and point level ('870 Patent 8:32–9:2). The term "escalating" appears only in the claims, however the term "progressive" is used in the specification ('870 Patent 8:55–57). The patentee in this instance has not acted as his own lexicographer with respect to either of these terms. Thus, one of ordinary skill in the art at the time the '870 Patent was filed would give "escalating level" its plain and ordinary meaning, which is "one of an ordered collection of mutually exclusive sets of values."

The term "database" is used in the specification with reference to a frequency database ('870 Patent 5:36–39 and many others), twice for a database of enrolled users ('870 Patent 5:39–41, and 6:53–54), and only once for a qualified awards database ('870 Patent 8:17–22). One of ordinary skill in the art at the time the '870 Patent was filed would understand the term "database" to mean "an organized collection of mutually related persistent data, manipulated by a software system, and stored on one or more disk drives."

One of ordinary skill in the art would also understand that certain limitations of Claim 29 must be performed in order. Specifically, the claim requires "assigning each of said articles to only one of said plurality of escalating levels, depending on the value assigned each of said

- 3 -

articles." This step would have to occur after each article was assigned a value and after a plurality of escalating levels had been defined. The "receiving a request to review said articles, and determining a level to which said request correspond" (*sic*) must be performed after the "assigning each of said articles to only one of said plurality of escalating levels, depending on the value assigned each of said articles." Lastly, the "making available for review only those articles corresponding to the level to which said request corresponds and any lower level" must occur after the request is received.

I have been informed by counsel that Affinion has stated that it no longer asserts infringement of Claim 29 of the '870 Patent. Neither Mr. Petersen nor Mr. Young have addressed Claim 29 in their expert reports. This omission is consistent with my opinion that Maritz' VAULT and AwardHQ systems do not infringe Claim 29 of the '870 Patent. Based on conversations with Jeff Altemueller and Janet Lister of Maritz, and my analysis of documentation relating to the operation of Maritz' accused systems, it is my opinion that the steps of Claim 29 are not performed by Maritz' VAULT nor AwardHQ systems. I reserve the right to supplement my opinion should Affinion or its experts set forth a position regarding infringement of Claim 29.

## 6.  NON-INFRINGEMENT OF CLAIM 1 OF THE '870 PATENT AND CLAIM 1 OF THE '012 PATENT

Claim 1 of the '870 Patent provides:

1.  A system for an incentive award program, including a computer system accessible for on-line interactive communication with users, said computer system comprising; [*sic*]
     a first memory area for storing product catalog, said product catalog including product descriptions and product prices for each product available for purchase;
     a second memory area for storing an awards catalog, said awards catalog including an award description and award points value for each award; and,
     a frequency database storing account information for each enrolled user of said incentive award program.

- 4 -

Claim 1 of the '012 Patent provides:

1. A system for an incentive award program, including a computer system accessible for on-line interactive communication with users, said computer system comprising; [*sic*] a microprocessor comprising:
   a first memory area for storing a product catalog, said product catalog including product descriptions and product prices for each product available for purchase;
   a second memory area for storing an awards catalog, said awards catalog including an award description and award points value for each award; and
   a frequency database storing account information for each enrolled user of said incentive award program; and
   a display for browsing at least one of said product catalog and said awards catalog.

Neither Mr. Petersen nor Mr. Young have addressed Claim 1 of the '870 Patent nor

Claim 1 of the '012 Patent in their expert reports. This omission is consistent with my opinion

that Maritz' VAULT and AwardHQ systems each do not infringe Claim 1 of the '870 Patent or

Claim 1 of the '012 Patent. Based on conversations with Jeff Altemueller of Maritz, it is my

opinion that the limitations in these claims are not all present in Maritz' VAULT or AwardHQ

systems. Notably, Maritz' systems do not include a separate product catalog from which the

participant may purchase items and earn points. See Bushold Deposition at 144:17–145:10;

Carpenter Deposition at 22:24–23:11, 34:9–12. Therefore Maritz' systems do not satisfy at least

the "first memory area" limitation of these claims. I reserve the right to supplement my opinion

should Affinion or its experts set forth a position regarding infringement of Claim 1 of the '870

Patent or Claim 1 of the '012 Patent.

## 7. NON-INFRINGEMENT OF CLAIMS 1, 18 AND 35 OF THE '412 PATENT

Claim 1 of the '412 Patent provides:

1. A method for implementing an on-line incentive program, said method comprising the steps of:
   providing an Internet webpage accessible to at least one user, via a computer system, for on-line interactive communications between said user and said Internet webpage;

- 5 -

offering, on said Internet webpage, at least one product for sale to said user;

determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product;

calculating said award points according to a preprogrammed formula if said user qualifies for said award points; and

issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

Claim 18 of the '412 Patent provides:

18. A computer readable medium comprising a plurality of instruction, which when executed by a computer, causes the computer to perform the steps of:

providing an Internet webpage accessible to at least one user, via a computer system, for on-line interactive communications between said user and said Internet webpage;

offering, on said Internet webpage, at least one product for sale to said user;

determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product;

calculating said award points according to a preprogrammed formula if said user qualifies for said award points; and

issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

Claim 35 of the '412 Patent provides:

35. A computer system for implementing an on-line incentive program, said computer system comprising:

software for offering at least one product for sale to at least one user via an Internet webpage, said Internet webpage being accessible to said user for on-line interactive communications between said user and said Internet webpage; and

software for determining whether said user qualifies for one or more award points based on said user's response to purchase said at least one product, for calculating said award points according to a preprogrammed formula if said user qualifies for said award points, and for issuing said award points to an account of said user if said user qualifies for said award points, wherein said award points are redeemable by said user for an award.

Neither Mr. Petersen nor Mr. Young have addressed Claims 1, 18, or 35 of the '412

Patent in their expert reports. This omission is consistent with my opinion that Maritz' VAULT

and AwardHQ systems do not infringe Claims 1, 18, or 35 of the '412 Patent. Based on

conversations with Jeff Altemueller of Maritz, it is my opinion that the limitations in these

claims are not all present in Maritz' VAULT or AwardHQ systems. Notably, Maritz' systems do

not offer through an Internet web page any products for sale followed by a determination

whether this purchase earns points. See Bushold Deposition at 144:17–145:10; Carpenter

Deposition at 22:24–23:11, 34:9–12. Therefore Maritz' systems do not satisfy at least the

limitations relating to "determining whether said user qualifies for one or more award points

based on said user's response to purchase said at least one product" present in these claims. I

reserve the right to supplement my opinion should Affinion or its experts set forth a position

regarding infringement of Claims 1, 18, or 35 of the '412 Patent.

## 8. NON-INFRINGEMENT OF CLAIMS 10–17, 27–34, AND 36 OF THE '412 PATENT

### 8.1. Claim 10 of '412 Patent

It is my opinion that Claim 10 of the '412 Patent is not infringed by Maritz.

Claim 10 of the '412 Patent states:

10. A method for redeeming incentive awards in an on-line incentive program, said method
    comprising the steps of:
    implementing an on-line incentive program that issues award points to users, wherein
        said award points are redeemable by said user for an award;
    implementing an Internet webpage accessible, via a computer system, to at least one user
        of said on-line incentive program for on-line interactive communications between
        said user and said Internet webpage;
    offering, on said Internet webpage, at least one redeemable award available to said user
        for exchange of said award points; and
    permitting said user to initiate a process to receive said at least one redeemable award for
        exchange of said award points issued to said user through said on-line incentive
        program.

Affinion's experts allege that every Maritz program that implements VAULT or

AwardHQ practices each of the claim elements of Claim 10. However, it is my opinion that

Maritz does not practice the first element of Claim 10.

## 8.2. Claim Interpretation of Claim 10 of the '412 Patent

As discussed in my original invalidity report, one of ordinary skill in the art would understand the step of "implementing an on-line incentive program that issues award points to users" as requiring issuing points to users for making purchases from an online product catalog.

In the Notice of Allowability, the examiner of the '412 Patent stated "claim 40 [in the application (which became Claim 10)] is similar to patented claim 17 [of the '870 Patent]." '412 File History, Notice of Allowability, May 10, 1999, Page 3. The examiner also stated, "Claims 31, 32, 37–41, 44, 48, 54–58, 61, 65, and 66 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 17 and 24–27 of U.S. Patent 5,774,870. Although the conflicting claims are not identical, they are not patentably distinct from each other because they are obvious variations of each other." *Ibid.*, Page 2.

The examiner of the '870 Patent stated, "It is the specific embodiment of the frequency database, coupled with a product catalog, from which purchases of goods may be made, and an awards catalog, from which awards may[ ]be redeemed, that renders the invention distinct over the prior art. Several references have been cited giving specific embodiments of electronic commerce systems and incentive award programs, however, none suggest or disclose combining the features of both to create the invention of the instant application. For this reason the claim is allowed."

The '870 Patent was clearly granted only because the claims required both product and award catalogs—*i.e.*, combining a frequent buyer program with an electronic commerce system. '870 Patent File History, Notice of Allowability, December 2, 1997, Pages 2–3. The examiner of the '012 Patent further stated, "Quinn teaches an online award catalog..." and "The closest non-

- 8 -

patent prior art is Quinn, which fails to teach or suggest an online product catalog. That is taught

by Peterson, but the combination is not suggested by the prior art."

Thus it is clear from the prosecution histories of the patents-in-suit that the on-line

incentive program described and claimed in the '412 Patent issues award points to users as a

result of making purchases from an online catalog.

This understanding is also dictated by the disclosure of the '412 Patent's specification.

'412 Patent Fig. 1, Fig. 2, Fig. 3, 3:13–5:58. For example, the Summary of the Invention of the

'412 Patent is consistent with this understanding:

> SUMMARY OF THE INVENTION
> In view of the above, the present invention is advantageous in that it provides an on-line, interactive incentive program which is fully integrated.
> The disclosed invention is also advantageous in that it provides an on-line access to product information, product purchases using an on-line electronic order form, award catalogs, and award redemption using an on-line electronic redemption forms [sic].
> Another advantage of the subject invention is that it awards bonus points immediately upon purchase of a merchandise [sic].
> The present invention is further advantageous in that it provides bonus points which are immediately made available for redemption.
> Another advantage of the present invention is that it allows the customer to select a prize immediately upon the award of the bonus points.
> A further advantage of the present invention is that it allows a customer to order a prize and redeem the awarded points towards the ordered prize immediately upon the award of the bonus points, thus enhancing the immediacy effect of the reward program.
> Yet another advantage of the present invention is that it provides an electronic sign-up form for on-line signing up by users.
> The above and other advantages are provided by the disclosed invention which includes provisions for access over the internet. Upon gaining of an access [sic], the customer is able to browse through a merchandize [sic] catalog, an award catalog, view the bonus points available for redemption in the customer's award bonus account, and get information about the products for purchase, the program, and the customer's account. The program also enables the customer to order merchandize [sic] on-line, order prizes on-line and redeem awarded points on-line. Accordingly, the selection of available prizes is expanded by the merchants who join the program, and the bonus award is made instantly redeemable.

'412 Patent 1:60–2:32.

No mention is made anywhere in the specification of the '412 Patent of any manner of earning points other than through the online purchase of products or gift certificates.

The expert reports alleging infringement submitted by Affinion, those of Mr. Petersen and Mr. Young, asserted that every Maritz program utilizing VAULT or AwardHQ "implemented an online incentive program that issues points to users." But neither provided a construction of the "issues points to users" limitation. One of ordinary skill in the art, having read the specification and file history of the '412 patent, would understand that the step of "issu[ing] points to users" would require: (1) determining whether the user is an enrolled member of the online incentive program; (2) calculating the award points to be credited to the user's account; and (3) adding the calculated points to the user's award account. For Step (2), one of ordinary skill in the art would have understood that someone with an extensive history of making purchases might earn more points for the same transaction than someone who made few or no purchases. For example, an "elite" level frequent flyer often earns bonus points for flying when an ordinary frequent flyer does not. Step (3) is not in itself sufficient to issue points to a user, as a user might not be registered or might participate in one of a variety of incentive programs that can vary with respect to the number of points awarded to a user for a given purchase. Step (1) corresponds with Step 180 in the Figure 2 of the '412 Patent; Step (2) corresponds with Step 190 of Figure 2; and Step (3) corresponds with Step 200 of Figure 2. *See also* '412 Patent 5:45–54. This interpretation of "issuing points to users" is consistent with the opinion set forth by Mr. Young. Infringement Analysis Report, Robert D. Young, Exhibit 1, Page 1.

This understanding finds ample support in the specification and the claim language itself. The claim language requires that the "online incentive program" issue award points to "users."

Thus, before award points can be issued, the program must determine whether the user is an enrolled user. '412 Patent 5:44–53. If the program determines the user is enrolled, the program then calculates the award points to be added to the user's account using a predetermined formula and updates the user's award account. *Id. See also* '412 Patent 6:44–63.

Further, as discussed in my invalidity reports, one of ordinary skill in the art would understand the asserted claims of the '412 Patent to require the award points be issued immediately following the online purchase, such that the customer's award account is updated in real time. In other words, the award points are immediately available for redemption after a purchase is made. '412 Patent 1:51–59, 2:3–5, 2:6–17, and 2:30–32. Indeed, in the discussion of Related Art, the '412 Patent distinguishes itself from prior art by complaining, "Thus, the immediacy effect of the reward is lacking in these conventional incentive programs." '412 Patent 1:57–59.

Finally, it is my opinion that one of ordinary skill in the art would understand the term "users" as it appears in this claim to mean individuals participating in the "online incentive program." Though, as noted by Mr. Petersen in his infringement report (p. 5), the specification of the '412 patent states that user "also refers to merchants, product manufacturers, award program administrators, etc.," it is clear from the claim language that the users are participants of the "online incentive program."[1] Nowhere in the specification does the patent refer to issuing points to an "award program administrator" or "product manufacturer." Only participants are awarded points in the specification, and this is consistent with a plain language interpretation of this limitation.

---

[1] It is also clear from Mr. Petersen's report that this is the interpretation he used in determining infringement ("Using these definitions, I then looked to whether Maritz uses its VAULT system to implement the on-line incentive program that its clients wish to offer their customers (users) and whether that program issues award points to users.")

- 11 -

## 8.3. Maritz' VAULT Programs Do Not Infringe Claim 10 of '412 Patent

It is my opinion that none of Maritz' VAULT programs "implement an online incentive program that issues points to users." In the previous section, I discussed the requirement that the points be immediately available for redemption by users once they are earned.

One of ordinary skill in the art would understand there to be two different approaches to applying the points earned to user accounts. The first approach is to gather the requests into a "batch" and then apply each entire batch together. Such an approach would be used for airlines, as "the millage (*sic*) points are not awarded until the traveler actually takes the flight." '412 Patent 1:22–24. One of ordinary skill in the art would use a nightly batch process gathering the flights flown by passengers and then applying all the award points to the users' accounts. One of ordinary skill in the art would also understand the alternative of real-time entry, where the points are applied to each user's account immediately (*i.e.*, "in real time") after being earned. One of ordinary skill in the art would understand that the computer processing the transaction for which the points were earned would make an immediate "real-time" connection to the computer with a frequency database, where the points are added to enrolled user's account.

One of ordinary skill in the art would understand that the '412 Patent requires real-time application of the points to each user's account. '412 Patent 5:44–54.

There are 3 primary variations of Maritz' VAULT system.[2]

1. A client of Maritz periodically sends to Maritz a file of points to be awarded as a batch. The client has already calculated how many points are to be awarded to each user based on that user's transactions. In this case, Maritz does not practice "implementing an on-line incentive program that issues award points to users,"

---

[2] See Carpenter Deposition at 12:7–21, 14:5–14, 26:18–27:17; Altemueller Deposition at 41:2–53:8.

because Maritz does not issue the award points but rather applies the points issued by the client, and the points are not applied immediately after they are earned.

2. A client of Maritz maintains the participant database with each user's point balance, and updates that database directly as points are awarded. Maritz offers the enrolled users a catalog of awards and allows these users to redeem their awards for items in the catalog. When a user redeems an award to obtain an item from an award catalog, Maritz checks with the client's participant database to verify that sufficient points are available, just as an Internet-based merchant would check with the merchant's credit card processor to determine if there is sufficient credit to make the user's purchase transaction. In this case, Maritz does not practice "implementing an on-line incentive program that issues award points to users," because Maritz does not calculate the number of points to be earned nor apply the points issued by the client, but merely allows users to redeem their points for awards.

3. A client of Maritz periodically sends to Maritz as a batch a file of transactions for which points are to be awarded to users. The client has not already calculated how many points are to be awarded to each user based on that user's transactions. Maritz then calculates the number of points to be awarded to each user based on that user's transactions, and then updates the participant balances as a batch. In this case, Maritz does not practice "implementing an on-line incentive program that issues award points to users," because the points are not available for redemption immediately after they are earned.

Furthermore, Maritz' VAULT programs do not include a separate product catalog from which the participant may purchase items and earn points. See Bushold Deposition at 144:17–

- 13 -

145:10; Carpenter Deposition at 22:24–23:11, 34:9–12; correspondence with Janet Lister on April 21, 2006.

For these reasons, it is my opinion that Maritz' VAULT programs do not infringe Claim 10 of the '412 Patent.

## 8.4. Maritz' AwardHQ Programs Do Not Infringe Claim 10 of '412 Patent

It is my opinion that none of Maritz' AwardHQ programs "implement an online incentive program that issues points to users." In Section 8.2, I discussed the requirement that the points be immediately available for redemption by users once they are earned. And as I discussed in Section 8.3, one of ordinary skill in the art would understand there to be two different approaches to applying the points earned to user accounts: "batch" and "real-time" entry. One of ordinary skill in the art would understand that the '412 Patent requires real-time application of the points to each user's account. '412 Patent 5:44–54.

There are two primary variations of Maritz' AwardHQ system.

1. A client of Maritz periodically sends to Maritz a file of points to be awarded as a batch. The client has already calculated how many points are to be awarded to each user based on that user's behavior. Correspondence with Fran Schuster on April 21, 2006. In this case, Maritz does not practice "implementing an on-line incentive program that issues award points to users," because Maritz does not issue the award points but rather applies the points issued by the client, and the points are not applied immediately after they are earned.

2. A client of Maritz periodically sends to Maritz as a batch a file of behaviors (such as sales by employee) for which points are to be awarded to users. The client has not already calculated how many points are to be awarded to each user based on that

- 14 -

user's behaviors. Maritz then calculates the number of points to be awarded to each user based on that user's behaviors, and then updates the participant balances as a batch. Correspondence with Fran Schuster on April 21, 2006. In this case, Maritz does not practice "implementing an on-line incentive program that issues award points to users," because the points are not available for redemption immediately after they are earned.

In neither variation of Maritz' AwardHQ system do participants earn points for *purchasing* items. Rather, the points are earned for behaviors like success in *selling* items. Schuster Deposition at 11:19–12:5, 22:7–24.

Furthermore, Maritz' AwardHQ programs do not include a separate product catalog from which the participant may purchase items and earn points. Correspondence with Janet Lister on April 21, 2006.

For these reasons, it is my opinion that Maritz' AwardHQ programs do not infringe Claim 10 of the '412 Patent.

### 8.5. Claim 11 of '412 Patent

Claim 11 of the '412 Patent states:

11. The method as set forth in claim 10, wherein the step of permitting said user to initiate a process to receive a redeemable award comprises the steps of:
accessing an account of said user;
redeeming a particular award for said user based on said points issued to said user if said user has earned sufficient points to qualify for said particular award; and
subtracting said points from said account of said user.

This claim is dependent on Claim 10, and thus is not infringed by Maritz' VAULT programs nor by Maritz' AwardHQ programs for the same reasons discussed above.

- 15 -

## 8.6. Claim 12 of '412 Patent

Claim 12 of the '412 Patent states:

12. The method as set forth in claim 10, wherein the step of redeeming a particular award for said user comprises the steps of:
   displaying, via said Internet webpage, a catalog of awards redeemable with said award points of said on-line incentive system; and
   accepting a selection by said user that indicates an award from said catalog.

In my Export Report of April 10, 2006, I demonstrated that this claim is invalid due to

indefiniteness. Nonetheless, I observe that this claim is dependent on Claim 10, and thus is not

infringed by Maritz' VAULT programs nor by Maritz' AwardHQ programs for the same

reasons discussed above.

## 8.7. Claim 13 of '412 Patent

Claim 13 of the '412 Patent states:

13. The method as set forth in claim 12, further comprising the steps of:
   providing said user with an on-line redeeming form comprising entries that specify an award for redeeming said award points; and
   establishing an on-line link to an award computer; and
   sending, via said on-line link, entries of said on-line redeeming form to said award computer.

In my expert report of April 10, 2006, I demonstrated that this claim is invalid due to

indefiniteness. Nonetheless, this claim is dependent on Claim 12, which is in turn dependent on

Claim 10, and thus is not infringed by Maritz' VAULT programs nor by Maritz' AwardHQ

programs for the same reasons discussed above with respect to Claim 10. Additionally, it is my

opinion that Maritz' VAULT programs do not provide an "online link to an award computer."

See Altemueller Deposition at 54:13–58:4; Bushold Deposition at 29:5–30:4; correspondence

with Jeff Altemueller on April 21, 2006.

One of ordinary skill in the art, having read the specification and file history of the '412 patent, would understand the claim term "award computer" to mean a computer operated by a fulfillment house or product manufacturer. This understanding is consistent with the only discussion of such a link in the specification:

> The proper amount of points is then subtracted from the user's account and an adjustment is made in the frequency database, 520. A link is then established to the fulfillment house or directly to the product manufacturer and an award order is communicated. Thereafter, the program returns to the PROGRAM HOMEPAGE.
> '412 Patent 10:7-12. Emphasis added.

One of ordinary skill in the art would understand the term online to mean "a device currently connected to another computer or network and is ready to respond to requests, or a person who is actively communicating over a network." This definition is consistent with that of *net.speak—the internet dictionary* by Tom Fahey, edited by Ruffin Prevost, Hayden Books, 1994. Accordingly, one of ordinary skill in the art would understand that the link to the award computer must be a real-time link, where the award computer is connected to the network and ready to respond to requests. This understanding is also supported by the specification, as the claimed system returns the user to the PROGRAM HOMEPAGE after the award order is communicated to the fulfillment house or product manufacturer. Thus, there is no delay between communicating the order and returning the user to the PROGRAM HOMEPAGE.

Mr. Young, in his infringement opinion, argues that this "online link to an award computer" limitation is met in all of Maritz' accused programs because "all user communication with Vault is done through an Internet web browser, and as such, an Internet connection must be established between the user's computer and the Vault computer responsible for accepting user input whenever information needs to be exchanged." Young Report, Exhibit 1, p. 4. This interpretation is not correct, as it would render the second element of Claim 10 superfluous. The

- 17 -

second element of Claim 10 requires "implementing an Internet webpage accessible, via a computer system, to at least one user of said on-line incentive system for on-line interactive communications between said user and said Internet webpage."

### 8.8. Claim 14 of '412 Patent

Claim 14 of the '412 Patent states:

14. The method as set forth in claim 10, further comprising the step of permitting a user to review an awards catalog from said Internet webpage that comprises awards redeemable for said award points.

This claim is dependent on Claim 10, and thus is not infringed by Maritz' VAULT

programs nor by Maritz' AwardHQ programs for the same reasons discussed above.

### 8.9. Claim 15 of '412 Patent

Claim 15 of the '412 Patent states:

15. The method as set forth in claim 10, further comprising the step of permitting a user to review an account from said Internet webpage for said user, wherein said account reflects an amount of said award points credited to said user.

This claim is dependent on Claim 10, and thus is not infringed by Maritz' VAULT

programs nor by Maritz' AwardHQ programs for the same reasons discussed above.

### 8.10.    Claim 16 of '412 Patent

Claim 16 of the '412 Patent states:

16. The method as set forth in claim 10, further comprising the step of permitting a user to preview information about said on-line incentive program from said Internet webpage.

This claim is dependent on Claim 10, and thus is not infringed by Maritz' VAULT

programs nor by Maritz' AwardHQ programs for the same reasons discussed above.

- 18 -

## 8.11.    Claim 17 of '412 Patent

Claim 17 of the '412 Patent states:

17. The method as set forth in claim 10, further comprising the step of permitting a user to apply for membership to said on-line incentive program from said Internet webpage.

This claim is dependent on Claim 10, and thus is not infringed by Maritz' VAULT programs nor by Maritz' AwardHQ programs for the same reasons discussed above. I agree with the assessments of Mr. Peterson and Mr. Young that Maritz' AwardHQ programs do not provide for online enrollment. Further, it is my opinion that Maritz' VAULT programs such as AMEX Membership Rewards, Discover, Providian/Washington Mutual, JP Morgan Chase, Bank One, HSBC, Scotia National Bank, Capitol One, Salomon Smith Barney, UBS – Paine Webber, Bank of America, and Advanta also do not in fact provide for online enrollment. Correspondence with Jeff Altemueller on April 21, 2006.

One of ordinary skill in the art would understand the plain meaning of this claim as requiring users to enroll in the online incentive program through "an Internet webpage accessable, via a computer system, to at least one user of said online incentive program for online interactive communications between said user and said Internet webpage."

This interpretation is also supported by the specification. For example, in the "Summary of the Invention," the applicant stated that "[y]et another advantage of the present invention is that it provides an electronic sign up form for online signing up by users." '412 Patent 2:18–20. Figure 5 also shows the steps required for enrollment in the "online incentive program," which shows the process of enrollment occurring online. *See also* '412 Patent 6:30–58.

- 19 -

## 8.12.    Claims 27–34 of '412 Patent

Claims 27 through 34 of the '412 Patent are comparable to Claims 10 through 17, respectively, of the '412 Patent. The difference is that Claims 10–17 are "method" claims, while Claims 27–34 are for "computer readable medium comprising a plurality of instructions, which when executed by a computer, causes the computer to perform the steps" of the corresponding Claims 10–17, respectively.

The same arguments regarding the non-infringement of Claims 10–17 also apply to Claims 27–34, because Claims 10–17 includes all the elements of Claims 27–34. It is therefore my opinion that Claims 27–34 are not infringed by Maritz' VAULT programs nor by Maritz' AwardHQ programs for the same reasons addressed above for Claims 10–17.

## 8.13.    Claim 36 of '412 Patent

Claim 36 of the '412 Patent is for a "computer system" implementing the "method" of Claim 10. The same arguments regarding the non-infringement of Claim 10 also apply to Claim 36, because Claim 10 includes all the elements of Claim 36. It is therefore my opinion that Claim 36 is not infringed by Maritz' VAULT programs nor by Maritz' AwardHQ programs for the same reasons addressed above for Claim 10.

## 9. TRIAL EXHIBITS

I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions. Examples of these visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition testimony and deposition exhibits, as well as optical components, charts, diagrams, videos and animated or computer-generated video.

- 20 -

Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## 10. SUPPLEMENTATION OF OPINIONS

I expect to testify regarding the matters set forth in this declaration, if asked about these matters by the Court or the parties' attorneys.

I understand that discovery is ongoing in this case. I therefore reserve the right to adjust or supplement my opinions after I have had the opportunity to review deposition testimony or in light of additional documents or arguments that may be brought to my attention. I also reserve the right to adjust or supplement my analysis in light of any critique of my report or alternative opinions advanced by or on behalf of plaintiff. In the event Affinion sets forth a basis alleging that Maritz' VAULT or AwardHQ programs infringe under the doctrine of equivalence, I reserve to supplement my analysis accordingly.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed in Palo Alto, California on April 25, 2006.

ARTHUR M. KELLER, PH.D.

## APPENDIX 1

1. *Webster's Ninth New Collegiate Dictionary*, 1986 Merriam-Webster Inc.
2. *Webster's Third New International Dictionary of the English Language Unabridged*, 1993 Merriam-Webster Incorporated
3. MAR091536-MAR091540
4. MAR001047-MAR001058
5. MAR001059-MAR001070
6. MAR000952-MAR000963
7. MAR002486-MAR002487
8. MAR002489-MAR002490
9. MAR002714-MAR002718
10. MAR003024
11. MAR003556-MAR003562
12. MAR008561-MAR008563
13. MAR009149
14. MAR018323-MAR018351
15. MAR001778-MAR001788
16. MAR003308
17. MAR003546
18. MAR007955-MAR007973
19. MAR011885-MAR011916
20. MAR043114-MAR043144
21. *net.speak -- The Internet Dictionary Spring Business*, 1994 Hayden Books
22. MAR041423-MAR041483
23. MAR023121-MAR023138
24. MAR023725-MAR023803
25. MAR026347-MAR026358
26. MAR020268-MAR020318
27. MAR003222-MAR003227
28. MAR050456-MAR050521
29. MAR021216-MAR021222
30. MAR015013-MAR015019
31. MAR014417-MAR014440
32. MAR098161-MAR098182
33. MAR097793-MAR097820
34. MAR002568
35. MAR021740-MAR021743
36. MAR049106-MAR049127
37. MAR065650-MAR065873
38. MAR019779-MAR019816
39. MAR044640-MAR044654
40. MAR009186-MAR009206
41. MAR003357-MAR003373
42. MAR003850-MAR003852

43.    MAR046298-MAR046347
44.    MAR046348-MAR046407
45.    MAR088720-MAR088871
46.    MAR007358-MAR007362
47.    MAR04222-MAR042246
48.    MAR024394-MAR024395
49.    MAR048903-MAR048926
50.    MAR03817-MAR038043
51.    MAR009430-MAR009467
52.    MAR033535-MAR033559
53.    MAR037286-MAR037335
54.    Deposition of Travis Carpenter, 5/19/05
55.    Deposition of Janet Lister, 5/19/05
56.    Deposition of Fran Schuster, 5/19/05
57.    Deposition of Steve Sigman, 11/22/05
58.    Deposition of Jeffrey Altemueller, 12/8/05
59.    Deposition of Mark Shipley, 12/19/05
60.    Deposition of Thomas Bushold, 3/2/06
61.    Correspondences With Maritz Employees Dated April 21, 2006