**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AFFINION NET PATENTS, INC.,

Plaintiff,

v.

MARITZ INC.,

Defendant.

C.A. No. 04-360-JJF

**REDACTED PUBLIC VERSION**

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* NUMBER 11: TO EXCLUDE STATEMENTS MADE BY THE CANADIAN PATENT OFFICE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff Affinion Net Patents, Inc.*

*Of Counsel:*

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202)783-6040

October 3, 2006

Original Version Filed October 3, 2006
Redacted Public Version Filed October 3, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AFFINION NET PATENTS, INC.,

Plaintiff,

v.

MARITZ INC.,

Defendant.

C.A. No. 04-360-JJF

**CONFIDENTIAL**
**FILED UNDER SEAL**

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* NUMBER 11: TO EXCLUDE STATEMENTS MADE BY THE CANADIAN PATENT OFFICE**

Hearsay opinions of the Canadian Patent Office ("CPO") should not be admitted under the exceptions provided by Federal Rule of Evidence 803(8)(A), (B) or (C). Maritz seeks to offer these opinions to prove the obviousness of the asserted claims of the '412 patent, which Maritz admits is a question of law (D.I. 280 at 2), not because they set forth the "activities" of the CPO, the "matters observed" by the Canadian patent examiner, or the "factual findings" of the CPO as to the state of the prior art, as Maritz contends.

First, Maritz concedes that opinions by a foreign patent office that relate to the ultimate determination of patentability are not relevant and are inadmissible under the authorities set forth in Affinion's opening brief.[1] Id. at 3. Maritz argues that the statements made by the Canadian Patent Office in its objection do not fall in that category, but rather innocuously pertain only to factual statements regarding the "state of the art" and thus are relevant. Id. at 1 ("it

1 In re Terrance Dale Nylen, 97 Fed. Appx. 293 (Fed. Cir. 2004) (unpublished); Medtronic, Inc. v. Daig Corp., 789 F.2d 903 (Fed. Cir. 1986); Timely Prod. Corp. v. Aaron, 523 F.2d 288 (2nd Cir. 1975); Allen v. Howmedica Leibinger, Inc., 197 F. Supp. 2d 101 (D. Del. 2002); Revlon, Inc. v. Carson Prod. Co., 602 F. Supp. 1071 (S.D.N.Y. 1985), rev'd on other grounds, 803 F.2d 676 (Fed. Cir. 1986).

describes the state of the prior art"); 2 ("simply describes the state of the prior art"); 3 ("statement relating to the state of the art"). That is not correct. The examiner is explicitly opining on the "discovery at the heart of the application" and on the obviousness of the claims over the prior art:

> The incentive award plan itself has not changed, … it is now simply specifying the use of online communications instead of telephones and mail, web pages instead of paper catalogues, databases instead of paper records, and the use of software to automate a known incentive plan management method. It is held to be obvious that the use of known computers and the Internet would convey certain advantages to the management of such a plan…. That is why McCarthy (abstract), Schultz et al. (abstract), and Burton et al. (abstract) all utilize computers and computer networks in their incentives schemes.

Exh. 1 at 3.[2] These statements, pertaining to the ultimate determination of patentability under Canadian law, are exactly the type of evidence that the Federal Circuit and other courts have found to be irrelevant when determining validity of a U.S. patent under U.S. law. See, e.g., Medtronic, 789 F.2d at 907-08 (holding that German tribunal's decision is not binding on patentability determinations by a U.S. federal court); Revlon, 602 F. Supp. at 1080-81 (holding that "since there is no international standardized inquiry into patentability, and ... the issuance of a United States Patent carries with it a presumption of validity under 35 U.S.C. § 282[, a U.S. patent] cannot be destroyed by determinations made by foreign patent offices.... [Accordingly] we are compelled to find exhibit 215, which deals with reactions by the Canadian patent office, inadmissible.").

---

2 Even a cursory perusal of the headings in the Canadian office action reveals that the examiner is opining on several matters relating to patentability of the claims. See id. at 2 (non-patentable subject matter, lack of unity); 3 (obviousness); 4 (indefiniteness, disclosure).

Second, Pfizer Inc. v. Ranbaxy Labs. Ltd., No. 03-209-JJF, 2005 WL 3525681 (Slip Op. D. Del. Dec. 22, 2005), and Warner-Jenkinson Co. v. Allied Chemical Corp., 477 F. Supp. 371 (S.D.N.Y. 1979), do not support Maritz's position. The statements at issue in Pfizer are not set forth in the Court's decision, and invalidity was tried to this Court, not to a lay jury unknowledgeable in comparative patent law. The Court denied the motion to exclude because the movant "did not advance any grounds under Rule 403 justifying its exclusion." 2005 WL 3525681 at *3. The Court also recognized that evidence of foreign patent prosecutions have only "limited relevance" in "certain circumstances." Id.[3] This is not such a circumstance. Warner-Jenkinson also was a bench trial, and the court admitted judgments made by German and Dutch patent offices regarding novelty of a patent claim only because there was abundant evidence that the two offices are among the "strictest" in the world in applying standards of novelty and nonobviousness. 477 F. Supp. at 386-87. Maritz has not proffered any evidence regarding the standards for patentability in Canada.

Third, the Canadian patent examiner's opinions are irrelevant and prejudicial because, as discussed in Affinion's opening brief and conceded by Maritz, D.I. 280 at 1, the patent claims before the Canadian Patent Office are not the same as the patent claims that are asserted in this case.[4] Indeed none of the prior art references that underlie the Canadian examiner's opinions are even relied upon by Maritz's experts in their opinions regarding the

---

3 Moreover, the cases relied upon by this Court in Pfizer,—Tanabe Seiyaku Co., Ltd. v. U.S. Int'l Trade Comm'n, 109 F.3d 726 (Fed. Cir. 1997), and Caterpillar Tractor Co. v. Berco, SpA, 714 F.2d 1110 (Fed. Cir. 1983)—are distinguishable in that they both address representations made by the applicant, not by a foreign body. See Tanabe, 109 F.3d at 733; Caterpillar Tractor, 714 F.2d at 1116.

4 Even if the claims were the same, however, the statements at issue still would not be admissible under In re Terrance Dale Nylen, Medtronic, Timely Products, Howmedica and Revlon.

validity of the '412 patent.[5] The prior art that Maritz contends is closest to the claims at issue in this case are U.S. Patent Nos. 5,710,887 and 5,483,444, which are not relied upon by the Canadian patent examiner. Maritz clearly seeks to introduce the opinion of the Canadian Patent Office not because of its relevance to the claims at issue, but because of its prejudicial effect on the jury.

Fourth, the Canadian Patent Office's opinion regarding the "discovery at the heart of the application"[6] also is irrelevant and prejudicial because the examiner is applying a standard for patentability that is different than in the United States. As this Court is aware, U.S. patent law does not recognize a "gist" or "heart" of the invention standard, and a decision of invalidity made with this analysis would be overturned by the Federal Circuit. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 344-45 (1961); Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 684 (1943); Cooper Cameron Corp. v. Kvaerner Oilfield Prods., 291 F.3d 1317, 1322 (Fed. Cir. 2002) (reversing summary judgment of invalidity because "there is no 'legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention" standard in U.S. law). Furthermore, another notable difference between U.S. and Canadian law is that business methods are patentable subject matter in the U.S., see State Street Bank v. Signature Fin. Group, 149 F.3d 1368, 1375 (Fed. Cir. 1998), whereas in Canada they are not patentable subject matter, see Schlumberger Canada Ltd. v. Commissioner of Patents, [1982] F.C. 845 (business method executed by a computer not patentable); see also Teresa Cheung, Is

---

5 See Exh. 2 (March 10, 2006 Expert Report of Bruce Bolger) at 25-30; Exh. 3 (April 10, 2006 Supplemental Expert Report of Bruce Bolger); Exh. 4 (April 10, 2006 Expert Report of Arthur M. Keller, Ph.D.).

6 "This leaves the discovery at the heart of this application the realization that by harnessing the abilities of the Internet, certain efficiencies can be gained in the administration of a points incentive program." Exh. 1 at 3.

There a Method to the Madness? The Persisting Controversy of Patenting Business Methods, Intell. Prop. J. (2005) (analyzing interpretations of patent law in Canada).

Maritz argues that the prejudice that flows from the Canadian examiner's statements could be cured by an instruction to a jury regarding the differences in the standards for patentability in the U.S. and Canada, D.I. 280 at 4, and thereby implicitly acknowledges that the Canadian examiner's analysis is improper under U.S. law. These, however, are not distinctions that a jury can parse. Nor has Maritz offered any jury instructions or expert testimony on Canadian patent law to permit the jury to understand these distinctions. The only course is to exclude the Canadian examiner's statements.

Lastly, none of the U.S. Patent and Trademark Office records that were admitted under Federal Rule of Evidence 803(8) in Standard Havens Products, Inc. v. Gencor Industries, Inc., 953 F.2d 1360 (Fed. Cir. 1991); Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc., No. 03-1431, 2006 WL 1330003 (N.D. Cal. May 15, 2006); and Hay & Forage Industries v. New Holland North America, Inc., 25 F. Supp. 2d 1170 (D. Kan 1998), raised the issues discussed above and are distinguishable on that basis. In Standard Havens the document was a Certificate of Correction. See 953 F.2d at 1372. In Fresenius Medical, the documents were exhibits to a motion for summary judgment and the movant made no showing under Federal Rule of Evidence 403. See 2006 WL 1330003 at *2. In Hay & Forage, the documents were U.S. patents, and were not offered for their truth, but only to show that a disputed term was used as a noun in a variety of contexts. See 25 F. Supp. 2d at 1185 n.2.

**CONCLUSION**

For the foregoing reasons, opinions by the Canadian Patent Office should not be admitted into evidence.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika (#3208)*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Affinion Net Patents, Inc.*

*Of Counsel:*

Steven Lieberman
Sharon L. Davis
R. Elizabeth Brenner
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202)783-6040

October 3, 2006

**CERTIFICATE OF SERVICE**

I, Maryellen Noreika, hereby certify that on October 3, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz

I also certify that copies were caused to be served on October 3, 2006 upon the following in the manner indicated:

**BY HAND**

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801

**BY FEDERAL EXPRESS**

J. Bennett Clark
Senniger Powers
One Metropolitan Square
St. Louis, MO 63102

*/s/ Maryellen Noreika*
Maryellen Noreika (#3208)
mnoreika@mnat.com